Paula K. Colbath (PC-9895)
LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154-0037
212-407-4000

*Attorneys for Petitioner*
*Universitas Education, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
UNIVERSITAS EDUCATION, LLC,

               Petitioner,         :

        -against-                 :      Case No: 11 CV 1590-LTS-HBP

NOVA GROUP, INC.,              :

               Respondent.   :
----------------------------------------------------------------X

**PETITIONER UNIVERSITAS' REPLY TO RESPONDENT NOVA GROUP'S
OPPOSITION AND CROSS-MOTION TO VACATE**

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I. UNIVERSITAS CAN SEEK JUDICIAL CONFIRMATION OF THE PHASE I MONETARY AWARD EVEN THOUGH THE ARBRITRATION CONTINUES ON OTHER ISSUES ................................................................................................ 2

II. THE AAA'S DECISION TO DEFER UNIVERSITAS' PAYMENT OF ADMISTRATIVE FEES WAS PROPER AND IS NOT A GROUND FOR VACATUR ................................................................................................................ 6

III. THE ARBITRATOR PROPERLY CONSIDERED ALL LAW, AND RESPONDENT'S ATTEMPT TO RE-LITIGATE THE ARBITRATION MUST BE REJECTED ................................................................................................................ 7

CONCLUSION .................................................................................................................. 11

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Andrea Doreen, Ltd. v. Building Material Local Union 282*,
   250 F. Supp.2d 107 (E.D.N.Y. 2003) ................................................................................. 4-5

*D.H. Blair & Co., Inc. v. Gottdiener*,
   462 F.3d 95 (2d Cir. 2006) ..................................................................................................... 8

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*,
   333 F.3d 383 (2d Cir. 2003) ................................................................................................ 8-9

*Fluor Daniel Intercontinental, Inc. v. General Electric Co.*,
   No. 06 Civ. 3294 (GEL), 2007 WL 766290 (S.D.N.Y. March 13, 2007) ............................. 3-5

*Goldman v. Architectural Iron Co.*,
   No. 01 Civ. 8875 (DLC), 2001 WL 1705117 (S.D.N.Y. Jan. 15, 2001) ................................ 4

*Marcella v. Capital Dist. Physicians' Health Plan, Inc.*,
   293 F.3d 42 (2d Cir. 2002) .................................................................................................. 10

*Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.*,
   204 Fed. Appx. 40 (2d Cir. 2006) ......................................................................................... 8

*Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*,
   157 F.3d 174 (2d Cir. 1998) .................................................................................................. 5

*Wallace v. Buttar*,
   378 F.3d 182 (2d Cir. 2004) ................................................................................................ 8-9

*Zeiler v. Deitsch*,
   500 F.3d 157 (2d Cir. 2007) ................................................................................................ 3-4

**STATUTES**

9 U.S.C. § 1 *et. seq.* ........................................................................................................................ 6

9 U.S.C. § 9 ................................................................................................................................... 11

9 U.S.C. § 10 ............................................................................................................................. 6, 8

Petitioner Universitas Education, LLC ("Universitas") replies to Nova Group, Inc.'s April 5, 2011 Opposition to Universitas' Petition to Confirm an Arbitration Award and Cross-Motion to Vacate the Award.

Nova Group's cross-motion to vacate the January 24, 2011 Award in Universitas' favor is meritless for several reasons: First, the 14-page Award is well-reasoned and thorough, and indeed Nova Group does not even allege that it gives rise to any of the grounds for vacatur listed in the Federal Arbitration Act (e.g. fraud or corruption). Second, under the terms of the Charter Oak Trust Welfare Benefit Plan – which Respondent Nova Group, Inc. ("Nova Group") unilaterally drafted – "the final decision of the arbitrator shall be final, binding, and non-appealable; and judgment on the award may be entered in any court having jurisdiction thereof." Universitas' March 15 Petition to Confirm an Arbitration Award ("Universitas Pet.") at 8, Ex. 1 at § 8.02(d). Thus, the trust instrument prohibits Nova Group from seeking vacatur of the Award. Third, Nova Group's opposition brief cited to numerous exhibits and hearing transcripts from the underlying arbitration, but Nova Group failed to include them as exhibits.[1] These omissions make it impossible for the Court to evaluate Nova Group's arguments, which in any event are baseless.

Nova Group does not, and indeed cannot, contest this Court's jurisdiction, as the underlying arbitration took place entirely in New York, New York. In filing its motion to

---

[1] Universitas received the Court's order giving Universitas leave to file a full-size opposition brief (Docket Entry No. 17) as it was finalizing this reply. As discussed *infra* in Part III, Universitas will respectfully refrain from re-litigating issues that the parties to this proceeding argued at great length in the underlying arbitration. Universitas respectfully directs the Court's attention to the ten (10) pre-hearing and post-hearing briefs that the parties collectively submitted in the arbitration. Universitas attached these briefs as Exhibits 4-13 to its March 15, 2011 Petition to Confirm the Arbitration Award. In Part III *infra,* Universitas has directed the Court's attention to the specific sections of its arbitration briefs that comprehensively rebut Nova Group's arguments.

1

dismiss or transfer, Nova Group merely seeks to delay paying Universitas the millions of dollars Nova Group owes to Universitas.

I. **UNIVERSITAS CAN SEEK JUDICIAL CONFIRMATION OF THE PHASE I MONETARY AWARD EVEN THOUGH THE ARBITRATION CONTINUES ON OTHER ISSUES**

Nova Group's argument that Universitas cannot seek confirmation of the January 24, 2011 Award (hereinafter the "Phase I Monetary Award" or "Monetary Award") while the arbitration proceeds to a second phase (hereinafter "Phase II") is meritless. Nova Group provides no legal authority for its argument, and indeed its argument runs contrary to longstanding Second Circuit precedent and the Arbitrator's rulings on the subject.

### A. Background

Arbitrator Peter Altieri bifurcated the arbitration on November 3, 2010, pursuant to Nova Group's request and with Universitas' consent. *See* Nova Group's April 5, 2011 Opposition ("Nova Group Opp."), Ex. B at 1 (noting "Respondents' request to bifurcate the proceedings"). Arbitrator Altieri acted pursuant to Rule 30(b) of the American Arbitration Association ("AAA") Commercial Arbitration Rules, which Nova Group unilaterally chose to apply to the Arbitration. Nova Group Opp., Ex. B at ¶1; Universitas Pet. at ¶ 8. In Phase I, Universitas proceeded against three of the six Respondents named in its Amended Statement of Claim – Nova Group, Benistar Admin. Services, Inc. ("BASI") as Administrator of the Charter Oak Trust Welfare Benefit Plan ("Plan") and Wayne Bursey ("Bursey") as Trustee of the Plan. Nova Group Opp., Ex. B at ¶1; Universitas Pet. at ¶ 12. If the Arbitrator found one or more of the Phase I parties liable to Universitas, and if the Phase I Monetary Award was not promptly paid, the November 3 Bifurcation Order provided that "a second phase of the proceedings will promptly be scheduled

2

to address any claims of liability and damages" against the Phase II parties. Nova Group Opp., Ex. B at ¶1.[2]

Following Phase I hearings in December 2010, Arbitrator Altieri issued a Phase I Monetary Award on January 24, 2011 in favor of Universitas, finding Nova Group and the Plan liable to Universitas for a total of **$26,525,535.98** in damages, attorneys' fees and costs, as well as for $32,772.38 in arbitration-related fees. Universitas Pet. at ¶¶14-17, Ex. 14 at 13. Nova Group failed to satisfy the Monetary Award by the deadline set by the Arbitrator, and thus Universitas has commenced Phase II of the arbitration. *See* March 25, 2011 Declaration of Paula Colbath at ¶10 ("March 25 Colbath Decl.").

## B. Longstanding Second Circuit Precedent Permits Confirmation of the Phase I Monetary Award

Nova Group's argument that this Court lacks jurisdiction as to the Phase I Monetary Award is simply contrary to Second Circuit precedent. The Second Circuit has long held that a court can confirm an award issued after the first phase of a multi-phase arbitration, where the award is (1) final, and (2) issued pursuant to a valid bifurcation of the arbitration. *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007). Nova Group simply ignores this precedent in its motion papers.

An award is final when it has "'conclusively disposed of a separate and independent claim' and therefore 'may be confirmed although it does not dispose of all the claims that were submitted to arbitration.'" *Zeiler*, 500 F.3d at 169 (quoting *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2d Cir. 1986)). *See also Fluor Daniel Intercontinental,*

---

[2] The Bifurcation Order also held in abeyance the motions to dismiss filed by all of the Respondents other than Nova Group, who argued that they were not bound to arbitrate. The Bifurcation Order stated that the motions to dismiss were "denied without prejudice subject to renewal should [Universitas] prevail in the initial proceedings and elect to proceed with arbitration rather than seeking judicial recourse." Nova Group Opp., Ex. B at ¶2.

*Inc. v. General Electric Co.*, No. 06 Civ. 3294 (GEL), 2007 WL 766290 at *2 (S.D.N.Y. March 13, 2007); *Andrea Doreen, Ltd. v. Building Material Local Union 282*, 250 F. Supp.2d 107, 112-13 (E.D.N.Y. 2003); *Goldman v. Architectural Iron Co.*, No. 01 Civ. 8875 (DLC), 2001 WL 1705117 at *3-4 (S.D.N.Y. Jan. 15, 2001).

There can be no legitimate dispute that the Phase I Monetary Award is final, because it definitively resolves Nova Group's liability to Universitas for failing to pay Universitas the insurance death benefits to which it is entitled.  The Arbitrator could not have been clearer as to the Monetary Award's finality with respect to Nova Group, saying: "I award Universitas Education, LLC, the sum of $26,525,535.98 against Respondent Nova as Sponsor, Trustee and Administrator of the [Plan] as of the date of this Award."   Universitas Pet., Ex. 14 at 13.

The Arbitrator's characterization of his Monetary Award as an "Interim Award," *see* Universitas Pet., Ex. 14 at 1, does not make it any less final.  Rather, the Monetary Award's interim nature owes to the possibility of Phase II proceedings.  Further, as a matter of law, interim awards can be final so long as they "finally and conclusively dispose[ ] of a separate and independent claim," which is exactly what Arbitrator Altieri did in Phase I.  *See Zeiler*, 500 F.3d at 169 (Second Circuit affirms district court confirmation of interim accounting orders).

In addition to being final, a first-phase award must have also been entered pursuant to a valid bifurcation order.  *Andrea Doreen,* 250 F. Supp.2d at 112-13; *Goldman*, 2001 WL 1705117 at *3-4.  Here, Nova Group requested bifurcation.  *See* Nova Group Opp., Ex. B at  1.  Nova Group also is the party that unilaterally chose to apply the AAA Commercial Arbitration Rules to the Arbitration, *see* Universitas Pet. at ¶ 8, which gives an arbitrator the authority to order bifurcation (even when the parties do not request it).  *See* AAA Commercial Arbitration Rule 30(b).  Given these undisputed facts, Nova Group cannot plausibly argue that the Arbitrator did

4

not validly bifurcate the proceedings with the parties' consent (and, indeed, at Nova Group's request).

With Second Circuit precedent against it, Nova Group is compelled to cite to *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174 (2d Cir. 1998), which is entirely consistent with a court's authority to confirm final awards issued after the first phase of an arbitration. *Rocket Jewelry Box*, the only authority cited to by Nova Group, confirmed the arbitration award at issue and stands for the general principle that for an award to be confirmable, it must resolve the issues "definitively enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication." *Rocket Jewelry Box,* 157 F.3d at 176. Here, the two parties are Universitas and Nova Group, and the arbitration between them definitively resolved whether Nova Group was liable to Universitas and in what amount. That the liability of other parties has yet to be decided does not affect the finality of the Monetary Award as against Nova Group. Indeed, courts citing to *Rocket Jewelry Box* have viewed it as being consistent with the longstanding principle, discussed *supra*, that a first-phase award can be confirmed if it is sufficiently final with respect to the parties to the award. See *Fluor Daniel Intercontinental*, 2007 WL 766290 at *2; *Andrea Doreen,* 250 F. Supp.2d at 111-12.

### C. Nova Group Grossly Mischaracterizes the Arbitrator's Rulings, Which Permit Universitas to Confirm the Phase I Monetary Award and Proceed to Phase II

Contrary to Respondent's assertion, the Arbitrator did not give Universitas a choice of seeking judicial confirmation or proceeding with Phase II, and he did not say that pursuit of one remedy foreclosed the other. Quite to the contrary – the Arbitrator has explicitly rejected Nova Group's argument, ruling on April 7, 2011 that Universitas may proceed simultaneously in court and arbitration. April 12, 2011 Declaration of Paula K. Colbath at ¶8.

5

The Arbitrator merely confirmed what the Phase I Monetary Award makes plain – that Universitas could seek relief "during the PHASE II proceeding and/or any court proceedings" in the event Nova Group did not pay the Phase I Monetary Award.  Universitas Pet., Ex. 14 at 13. The paragraph of the November 3, 2010 Bifurcation Order that Respondents cite to is not to the contrary, and indeed is not even applicable here.  In the Bifurcation Order, the Arbitrator denied the motions to dismiss filed by the Phase II parties, and said he would reconsider them if Universitas prevailed in Phase I and elects "to proceed with arbitration rather than seeking judicial recourse" – that is, Universitas could seek to either pursue arbitration or file suit against the Phase II parties.  See Nova Group Opp., Ex. B at ¶2.  The Arbitrator's statement is not so much a ruling as it is common sense; Universitas could not file suit in court against a Phase II party and pursue arbitration against that party on the same claim.  In the statement that Respondents cite, the Arbitrator did not mention Phase I party Nova Group, and for good reason: Universitas' decision to proceed to Phase II of the arbitration has no bearing on its ability to confirm the final Phase I Monetary Award issued against Nova Group for the monies that Nova Group has wrongfully witheld from Universitas.  Nova Group's "either/or" claim makes no sense in view of the Arbitrator's actual rulings.

## II.    THE AAA'S DECISION TO DEFER UNIVERSITAS' PAYMENT OF ADMINISTRATIVE FEES WAS PROPER AND IS NOT A GROUND FOR VACATUR

Nor does the AAA's decision to defer Universitas' payment of administrative fees provide a basis to vacate the Phase I Monetary Award.  Indeed, the Federal Arbitration Act ("FAA"), at 9 U.S.C. § 1 et. seq., provides extremely limited grounds for vacatur, and a party's receipt of an administrative fee deferral is not one of them.  See 9 U.S.C. § 10.  In June 2010, the AAA granted Universitas a deferral for the payment of arbitration fees, whereby the AAA agreed to defer Universitas' payment of fees to the AAA during the pendency of the arbitration.  See

6

March 25 Colbath Decl., Ex. B.  Contrary to Nova Group's assertions, Nova Group understood the nature and scope of the deferral from the arbitration's outset, as the fee-deferral letter was also addressed to Nova Group General Counsel Jack Robinson.  *See id.*  In order to obtain this deferral, Universitas provided the AAA with the necessary financial documents.  *See* March 24, 2011 Declaration of Sharon Siebert at ¶ 14.  Nova Group has no right to inspect the confidential financial information submitted by Universitas to the AAA.  Further, Nova Group's objection to the fee deferral is particularly galling in view of the fact that Nova Group placed Universitas in the position that necessitated the fee deferral, because of Nova Group's blatant breach of its fiduciary duty to pay Universitas the death benefits to which it was entitled.  In any event, as Nova Group acknowledges, both the AAA and the Arbitrator soundly rejected its objections to the fee deferral, which the AAA granted (not the Arbitrator) in its exclusive discretion pursuant to Rule 49 of the Commercial Arbitration Rules (which Nova Group unilaterally elected to apply to the arbitration, *see* Universitas Pet. at ¶ 8).  Nova Group cannot plausibly argue that a deferral of administrative fees somehow causes it harm, as these are fees to be paid to the AAA, not Nova Group, and Nova Group has yet to pay to Universitas the $26.5 million to which Universitas is entitled.

## III. THE ARBITRATOR PROPERLY CONSIDERED ALL LAW, AND RESPONDENT'S ATTEMPT TO RE-LITIGATE THE ARBITRATION MUST BE REJECTED

Nova Group's attempt to re-litigate issues decided in the arbitration should be rejected.  In his 14-page decision, the Arbitrator thoroughly considered but ultimately rejected seriatim the arguments that Nova Group now raises to this Court.

Nova Group's arguments also fail on the merits.  In its argument to the Court that the Arbitrator disregarded the law and evidence, Nova Group does not cite to a single case that has not already appeared in one of the many briefs that were submitted in the arbitration (the only

7

exception being a case discussing vacatur of an arbitration award). Universitas and Nova Group both submitted pre-hearing legal briefs (Universitas Pet., Exs. 4 and 5); pre-hearing reply briefs (Universitas Pet., Exs. 6 and 7); pre-hearing sur-reply letters (Universitas Pet., Exs. 8 and 9); post-hearing legal briefs (Universitas Pet., Exs. 10 and 11); and post-hearing reply briefs (Universitas Pet., Exs. 12 and 13).

### A.  The Grounds for Vacating an Arbitration Award are Extremely Limited

Nova Group ignores the well-established principle that the grounds for vacating an arbitration award are extremely few. A confirmation proceeding is a "summary proceeding that merely makes what is already a final arbitration award a judgment of the court," *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotations and citation omitted). The FAA only provides four (4) grounds by which an arbitration award may be vacated. *See* 9 U.S.C. § 10. Notably, Nova Group does not meaningfully discuss any of the grounds for vacatur listed in 9 U.S.C. § 10, namely, that the award was procured by corruption, fraud, undue means or misbehavior on the part of the Arbitrator. Instead, Respondent argues that the Arbitrator manifestly disregarded the evidence and the law. Nova Group is barred from arguing that the Arbitrator disregarded the evidence, as that ground is not listed in 9 U.S.C. § 10 and is not otherwise a ground for vacatur. *Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.*, 204 Fed. Appx. 40, 43 (2d Cir. 2006); *Wallace v. Buttar*, 378 F.3d 182, 193 (2d Cir. 2004).

With regard to manifest disregard of the law, a court's review is "severely limited," "highly deferential," and "is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003) (internal quotations and citation omitted). The party seeking vacatur under the manifest disregard standard bears the heavy burden of showing "more than a simple error in law

8

or a failure by the arbitrators to understand or apply it," and indeed, "more than an erroneous interpretation of the law." *Id*. Even if the Court is convinced that an arbitrator "made the wrong call on the law," it should not vacate the award for that reason alone. *Wallace*, 378 F.3d at 190. "On the contrary, the award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." *Id*. (internal quotations and citations omitted).

### B. The Arbitrator Applied the Law, and Nova Group's Attempts to Relitigate the Case Should Be Rejected

Universitas and Nova Group thoroughly argued all of Nova Group's defenses in pre-hearing and post-hearing legal briefs (as well as three days of hearings), and the Arbitrator ultimately (and properly) rejected all of Respondent's arguments (s*ee* Universitas Pet., Ex. 14 at 6), including the following:

**Alleged failure to file timely claim**: the Arbitrator found as a factual matter that Universitas timely notified Nova Group of its claim to the subject death benefits. Universitas Pet., Ex. 14 at 4. Further, as to Universitas' alleged failure to fill out a claim form, the Arbitrator stated that **Nova Group failed to fulfill its duty to supply the claim form**, and that when it did supply the form Universitas filled it out and timely submitted it. Universitas Pet., Ex. 14 at 4. The Arbitrator considered all of Nova Group's arguments, but rejected them. Further, Nova Group's assertions that Universitas needed to fill out a claim form, and even a sworn claim form, were based on insurance law cases, which the Arbitrator properly found to be inapposite since Nova Group is by its own admission not an insurance company. Universitas Pet., Ex. 14 at 5.[3]

---

[3] For Universitas' full arguments as to why it filed a timely claim, and why Nova Group's insurance-law arguments are erroneous as a matter of law, *see* Universitas Pet., Ex. 4 at 9-10; Universitas Pet., Ex. 6 at 6-7; Universitas Pet., Ex. 10 at 16-19; Universitas Pet., Ex. 12 at 3-5.

**Applicability of the Employee Retirement Income Security Act ("ERISA")**: Nova Group claims that the Arbitrator ignored ERISA, even though the Arbitrator, an experienced ERISA litigator (see Universitas Pet., Ex. 2), explicitly held that Universitas was entitled to the death benefits under either the common law or ERISA. Universitas Pet., Ex. 14 at 2. Thus, for instance, even if ERISA applied and pre-empted Universitas' state-law claims, the Arbitrator found Universitas was still entitled to the death benefits under ERISA, as the sole, irrevocable beneficiary of the Plan. Contrary to Nova Group's assertion, Universitas never conceded ERISA's applicability to its benefits claim, and indeed Universitas vigorously contested ERISA applicability in its pre-hearing and post-hearing briefs for the simple reason that the Plan – as Nova Group acknowledges – was not created, established or maintained by an employer. *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 47 (2d Cir. 2002); *see also* Nova Group Opp. at 29 (conceding that the Plan is not "strictly speaking an 'ERISA benefit plan' because it was not created, established, or maintained by an employer").[4]

**Alleged Illegal "Sharing" of the Death Benefit**: Nova Group claimed it could keep Universitas' monies since Universitas planned to "share" the death benefit with a third-party entity and an insurance broker. The Arbitrator, however, found as a matter of fact that no agreement to share the benefits was in effect. Universitas Pet., Ex. 14 at 4. Quite apart from the

---

[4] For Universitas' full arguments as to why ERISA did not apply to its claim, and for why Universitas would still be entitled to the benefits even if ERISA did apply (and even if the arbitrary and capricious standard of review applied), *see* Universitas Pet., Ex. 4 at 4-9; Universitas Pet., Ex. 6 at 1-5; Universitas Pet., Ex. 9 at 3-8; Universitas Pet., Ex. 10 at 28-34; Universitas Pet., Ex. 12 at 9-17.

fact that any "sharing" of the death benefit would not have been illegal, the Arbitrator's finding that no such agreement existed is a finding of fact that Nova Group simply cannot revisit.[5]

**CONCLUSION**

For the foregoing reasons, pursuant to 9 U.S.C. § 9 and the Charter Oak Trust Welfare Benefit Plan, Universitas Education, LLC respectfully requests that this Court grant Universitas' Petition to Confirm the Arbitration Award and deny Nova Group's cross-motion to vacate the Award.

Dated:   New York, New York
         April 12, 2011

                                LOEB & LOEB LLP

                                By: PAULA K. COLBATH
                                    Paula K. Colbath (PC-9895)
                                    345 Park Avenue
                                    New York, New York 10154-1895
                                    *Attorneys for Petitioner*
                                    *Universitas Education, LLC*

---

[5] For Universitas' full arguments as to why no agreement to "share" the death benefits was in effect, and (in the alternative) for why Universitas could do what it wants with its money as a matter of law, *see* Universitas Pet., Ex. 4 at 10-13; Universitas Pet., Ex. 6 at 7-8; Universitas Pet., Ex. 9 at 9-11; Universitas Pet., Ex. 12 at 19-20.