UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
UNIVERSITAS EDUCATION, LLC,

                Judgment Creditor,        :

                -against-               :        Case Nos. 11 CV 1590-LTS-HBP and
                                                    11-8726-LTS

NOVA GROUP, INC., as trustee, sponsor and    :
fiduciary of THE CHARTER OAK TRUST
WELFARE BENEFIT PLAN,                            :

                Judgment Debtor.
---------------------------------------------------------------X

## DECLARATION OF BRYAN I. REYHANI, ESQ.
## IN SUPPORT OF UNIVERSITAS EDUCATION, LLC'S MOTION FOR A
## TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

**BRYAN I. REYHANI**, an attorney admitted to practice law in this Court, declares the following under penalty of perjury pursuant to 28 U.S.C. §1746:

1.     I am a partner in the law firm of Reyhani Nemirovsky LLP, attorneys for Universitas Education, LLC ("Universitas"), the Judgment Creditor in the above-captioned proceeding. I have personal knowledge of the below facts.

### INTRODUCTION

2.     I respectfully make this declaration pursuant to Local Rule 6.1(d) and in support of Universitas' Motion, brought by Order to Show Cause ("OSC"), pursuant to Fed. R. Civ. P. 65(b)(1) and 69, for a Temporary Restraining Order ("TRO"), and for a Constructive Trust and Turnover of Certain Monies. The TRO seeks (1) to enjoin third party USAA, an insurance carrier, from paying any insurance proceeds in connection with any property owned at any point in time by Moonstone Partners LLC ("Moonstone"), and/or Daniel E. Carpenter or Molly Carpenter or a nominee or related party of any of them (collectively, "the Carpenters"), including

1

any property located at 392B Cards Pond Road in South Kingstown, Rhode Island (hereinafter "the Properties"); and (2) to enjoin the Carpenters from effecting any transfer of the Properties. I understand that the Properties sustained flood damage from Hurricane Sandy, and Moonstone, the Carpenters and/or one of their affiliated companies have submitted claims to USAA in order to obtain insurance policy proceeds (hereinafter, "the Proceeds"). On this motion, Universitas ultimately seeks the imposition of a constructive trust over the Proceeds, and an Order of turnover of the Proceeds to Universitas.

3. USAA, as well as the Carpenters and Moonstone, have been on notice of Universitas' TRO application since February 26, 2013, and counsel for Universitas has had extensive communications with USAA, and counsel for Moonstone and Mr. Carpenter, about this application. Respective counsel for Universitas, on the one hand, and Mr. Carpenter and Moonstone, on the other hand, have been discussing a delay of this application pending USAA's agreement to withhold payment of the Proceeds. At the time of this Declaration, however, USAA has not agreed to withhold payment, and has repeatedly emphasized to Universitas' counsel that payment of the Proceeds is imminent.

**UNIVERSITAS FACES IRREPARABLE HARM ABSENT
A TEMPORARY RESTRAINING ORDER**

4. USAA has informed Universitas that absent "an emergency Order from a court," USAA will imminently be paying out the Proceeds. Attached as **Exhibit 1** is a true and correct copy of a February 25, 2013 e-mail from Mark Moorehead, of USAA, informing Universitas' counsel that USAA will pay out the Proceeds imminently, and suggesting that Universitas obtain "an emergency Order from a court."

5. Universitas faces the imminent risk of irreparable harm because the Proceeds are properly payable to Universitas as a Judgment Creditor of Nova Group, Inc. ("Nova"), which is Trustee of the Charter Oak Trust Welfare Benefit Plan ("Charter Oak Trust").

6. As set forth below, the Carpenters, acting through Moonstone, purchased the Properties in July 2009 – and insurance on the Properties – using a portion of the approximately $30.7 million that was paid in May 2009 to the Charter Oak Trust for the benefit of Universitas.

7. None of the $30.7 million has been paid to Universitas, notwithstanding a January 24, 2011 Arbitration Award and a June 7, 2012 judgment in Universitas' favor.

8. At their respective depositions in this action, the Carpenters, who are principals of Nova and Moonstone, asserted their Fifth Amendment rights against self-incrimination in response to all questions regarding the whereabouts of Universitas' money, citing a Connecticut federal grand jury investigation into the Charter Oak Trust. Attached as **Exhibit 2** are true and correct excerpts from the transcription of Mr. Carpenter's October 19, 2012 deposition testimony. Attached as **Exhibit 3** are true and correct excerpts from the transcription of Ms. Carpenter's November 29, 2012 deposition testimony.

9. As Magistrate Judge Pitman has noted, Nova has "resisted all efforts" to enforce Universitas' judgment in this action, and Nova's principals and attorneys have improperly threatened third parties from which Universitas has sought discovery. 11/21/12 Order at 1-2, 8 (dkt. no. 176 in Case No. 11-1590-LTS-HBP).[1] Magistrate Judge Pitman further suggested that Universitas consider bringing Nova's tactics to the attention of the FBI or Department of Justice. Id. at 8.

---

[1] Unless otherwise stated, all docket entries refer to those in Case No. 11-1590-LTS-HBP.

10. Without a TRO, USAA will imminently be paying the Proceeds to Moonstone or the Carpenters (or to an individual or entity affiliated with them). The Carpenters will then refuse to pay these Proceeds to Universitas, just as they have refused to pay any part of the $30.7 million in life insurance monies to Universitas. Universitas faces the imminent risk of irreparable harm because without a TRO, it will be unable to secure the Proceeds while its constructive trust and turnover motion is pending before the Court.

11. Both the timeline prescribed in Local Rule 6.1(b) when a party proceeds on Notice of Motion, and the notice required for a motion for a preliminary injunction (see Fed. R. Civ. P. 65(a)(1)), are not suitable for Universitas' turnover motion, since USAA has indicated that its payment of the Proceeds to the Carpenters is imminent, and that its decision to pay the Carpenters will be stopped, if at all, only by an immediate Order from the Court. Thus, Universitas' turnover motion against USAA will be moot absent immediate, interim relief in the form of a TRO, followed by a constructive trust determination and turnover of the Proceeds.

## FACTUAL BACKGROUND

12. Moonstone is owned and operated by husband and wife Daniel and Molly Carpenter. Attached as **Exhibit 4** is a true and correct copy of a Limited Liability Company Banking Resolution for a TD Bank account standing in Moonstone's name, listing Mr. Carpenter as the Chairman of Moonstone's managing member, and Ms. Carpenter as Moonstone's corporate secretary.

13. Moonstone is a single-purpose entity set up on or about April 20, 2009 for the sole purpose of owning the Properties in Rhode Island. The Carpenters, using an account at TD Bank in Moonstone's name, operated through Moonstone to pay various costs associated with

purchasing, maintaining and living at the Properties, including insurance (procured through USAA), maintenance, and the gas and satellite television bills.

14. The Carpenters are also principals and/or managers of Nova. Attached as **Exhibit 5** are true and correct copies of State of Delaware Annual Franchise Tax Reports filed by Nova, dated February 25, 2010 and February 28, 2011, respectively, showing Mr. Carpenter to be Nova's Chairman. Attached as **Exhibit 6** is a true and correct copy of a Nova filing with the Connecticut Secretary of State, dated August 28, 2012, showing Ms. Carpenter to be Nova's treasurer.

15. The Carpenters used money payable to Universitas to purchase the Properties and obtain insurance on them; as such, the Proceeds payable by USAA should go to Universitas, as a Judgment Creditor of Nova Group.

16. Universitas is the beneficiary of the Charter Oak Trust in relation to two life insurance policies placed into the Trust by the late Sash A. Spencer, formerly CEO of Holding Capital Group, Inc. Mr. Spencer named Universitas the sole, irrevocable beneficiary of a Charter Oak Trust death benefit comprising the proceeds payable under two Lincoln National Life Insurance Company ("Lincoln Life") policies totaling $30 million. 6/5/12 Court Order at 1-2 (dkt. no. 40).

17. In May 2009, following Mr. Spencer's death, Lincoln Life paid more than $30 million (including interest on the policy proceeds) to Nova President Wayne H. Bursey, who purportedly acts, or acted, as Trustee of the Charter Oak Trust. 6/5/12 Court Order at 2. Attached hereto as **Exhibit 7** are true and correct copies of checks issued by Lincoln Life to Mr. Bursey as purported Trustee of the Charter Oak Trust, as payment on the two Lincoln Life policies insuring Mr. Spencer's life.

18. After Lincoln Life's payment to the Charter Oak Trust in May 2009, Nova refused to pay any death benefit to Universitas. 6/5/12 Court Order at 2.

19. By Arbitration Award dated January 24, 2011, Arbitrator Peter L. Altieri, Esq. held Nova liable to Universitas for a total of $26,525,535.88. 6/5/12 Court Order at 2.

20. This Court confirmed the Arbitration Award on June 5, 2012 (dkt. no. 40), awarding Universitas pre-judgment interest at an annual rate of ten percent (10%) and entering judgment on June 7 for Universitas in the amount of $30,181,880.30 (dkt. no. 41). On October 5, 2012, this Court granted Universitas an additional $268,810.01 in attorneys' fees (dkt. no. 162).

21. Following entry of judgment, Universitas still has not been paid, even in part, and neither Nova nor any of its principals has disclosed the whereabouts of the $30.7 million paid out by Lincoln Life in May 2009, which they, as Universitas' fiduciaries, were supposed to be holding in trust for Universitas.

22. At his deposition in October 2012, Mr. Bursey, who is married to Ms. Carpenter's sister, asserted his Fifth Amendment right against self-incrimination in response to all questions about what happened to the money that Lincoln Life paid to him. Attached as **Exhibit 8** are true and correct excerpts from the transcription of Mr. Bursey's October 16, 2012 deposition testimony.

### IMPROPER TRANSFERS OF UNIVERSITAS' MONEY

23. Through subpoenas to TD Bank, Universitas has discovered that Mr. Bursey, the President of Nova, initially deposited the $30.7 million into a TD Bank account standing in the name of the Charter Oak Trust (Account No. 424 277 4548); the deposit occurred on or about May 18, 2009. Mr. Bursey was the only signatory on this account standing in the Charter Oak

Trust's name (Account No. 424 277 4548). Attached as **Exhibit 9** are true and correct copies of TD Bank documents showing Mr. Bursey to be the only signatory on Account No. 424 277 4548, as well as Mr. Bursey's deposit of $30.7 million into Account No. 424 277 4548, on or about May 18, 2009.

24. Although Mr. Bursey was the only signatory on the Charter Oak Trust account, Mr. Carpenter arranged for that account to be opened, or apparently prompted Mr. Bursey to open it. Attached as **Exhibit 10** is a true and correct copy of a May 2009 e-mail exchange, produced by Grist Mill Capital pursuant to Court Order, in which Mr. Carpenter tries and fails to open a Charter Oak Trust account at Bank of America, and informs Bank of America that he has opened a Charter Oak Trust account at other banks.

25. Within 6 months of this May 2009 deposit, Mr. Bursey and Mr. Carpenter transferred almost all of Universitas' money to TD Bank accounts standing in the names of other entities in Mr. Carpenter's control, including Grist Mill Capital, LLC ("Grist Mill Capital"), Grist Mill Holdings, LLC ("Grist Mill Holdings") and Hanover Trust Company ("Hanover"). These other entities share the same business address as Nova (100 Grist Mill Road in Simsbury, Connecticut). These entities' TD Bank accounts all have Mr. Carpenter as a signatory, and were opened within a week of Lincoln Life's payment of $30.7 million to the Charter Oak Trust for Universitas' benefit.

26. Mr. and Ms. Carpenter have refused to disclose the whereabouts of Universitas' money, and each asserted the Fifth Amendment at their respective depositions. They have also caused Nova to fail to comply with Universitas' Information Subpoena, for which Universitas has filed a motion for civil contempt (see dkt. no. 181).

27. While the Carpenters have stayed silent on the location of Universitas' money, documents produced by TD Bank and others – whose production Mr. Carpenter unsuccessfully sought to quash via numerous motions filed in this Court – show how some of this money has been used.

28. One of the apparent uses of Universitas' money was the Carpenters' purchase, in July 2009, of oceanfront property in South Kingstown, Rhode Island ("the Properties"). The Carpenters identified Moonstone as the owner of the purchased Properties.

29. Importantly, Mr. Carpenter's attorney (Anthony J. Siano, Esq.) represented to Universitas' counsel, in the course of discussing Universitas' planned TRO application, that the money used to purchase the Properties came from a TD Bank account standing in the name of Hanover. As discussed below, the money in the Hanover account at TD Bank was actually Universitas' money that Mr. Carpenter transferred to Hanover and then to Moonstone.

30. Moonstone is a Delaware limited liability company that, according to Delaware Secretary of State records, was formed on or about April 20, 2009, with an address at 100 Grist Mill Road in Simsbury, Connecticut. Mr. Carpenter controls Moonstone as the Chairman of Moonstone's managing member. Ms. Carpenter is Moonstone's secretary. See **Exhibit 4** (listing positions of the Carpenters in Moonstone). Attached hereto as **Exhibit 11** is a true and correct copy of a Certificate of Formation from the Delaware Secretary of State, showing Moonstone to have been formed on April 20, 2009.

31. Even though Moonstone was not formed until April 20, 2009, Mr. Carpenter made a $1,200,000.00 offer on the Properties on April 8, 2009, writing on Grist Mill Capital letterhead and claiming to be acting on Moonstone's behalf. Attached as **Exhibit 12** is a true

and correct copy of the April 8, 2009 offer letter on Grist Mill Capital letterhead, furnished to Universitas by Mr. Carpenter's counsel.

32. On or about May 22, 2009, about a month after Moonstone's formation and less than a week after Lincoln Life paid $30 million to the Charter Oak Trust, the Carpenters opened a TD Bank account standing in Moonstone's name, with an account number of 424 277 5455. Mr. and Ms. Carpenter were the only signatories for this account. Attached as **Exhibit 13** is a true and correct copy of the account opening document for the Moonstone account at TD Bank, listing the Carpenters as its only signatories.

33. The Moonstone account was one of at least 9 accounts that Mr. Carpenter arranged to be opened at TD Bank on or about May 22, 2009. Mr. Carpenter opened accounts for 7 additional companies besides Moonstone, including two accounts for Grist Mill Capital, LLC and an account for Grist Mill Holdings. Attached as **Exhibit 14** is a true and correct copy of a May 26, 2009 e-mail sent by Amanda Rossi (Mr. Carpenter's assistant and Nova's corporate secretary) to Mr. Carpenter, showing 8 new TD Bank accounts for which Mr. Carpenter was a signatory.

34. The opening of these myriad accounts in the names of different companies (all of which Mr. Carpenter controls) allowed Mr. Carpenter to widely disperse Universitas' money after Mr. Carpenter received that money from his brother-in-law Mr. Bursey. Mr. Carpenter used a portion of Universitas' money to purchase the Properties, and transferred this money through various of his entities, for which he had just set up accounts at TD Bank. The transfers in question (detailed below) proceeded as follows:



35. Importantly, as discussed in more detail below, all of these accounts were set up following the Charter Oak Trust's receipt of Universitas' money on or about May 15, 2009, and neither the Grist Mill Capital account nor the Grist Mill Holdings account nor the Hanover account had any assets above $1,000 prior to receiving the transfers identified below – meaning that the money used by Moonstone to purchase the Properties **originated solely from the Charter Trust account at TD Bank, which held only the money paid out by Lincoln Life for Universitas' benefit**.

36. On or about May 21, 2009, Mr. Bursey transferred $8,677,276.75 from the Charter Oak Trust's TD Bank account (Account No. 424 277 4548) into a TD Bank account standing in the name of Grist Mill Capital (Account No. 424 277 4712). Attached as **Exhibit 15** are true and correct copies of TD Bank documents showing this transfer of $8,677,276.75.

37. On or about May 26, 2009, Mr. Bursey transferred $2,186,566.00 from the Charter Oak Trust's TD Bank account (Account No. 424 277 4548) into the same Grist Mill Capital account (Account No. 424 277 4712). Attached as **Exhibit 16** are true and correct copies of TD Bank documents showing this transfer of $2,186,566.00.

38. These two deposits, from the Charter Oak Trust account (which held only Universitas' money paid by Lincoln Life) to the Grist Mill Capital account, represent the only two sources of funds for the Grist Mill Capital account during May 2009 and June 2009. Attached as **Exhibit 17** are true and correct copies of the May 2009 and June 2009 monthly account statements for the Grist Mill Capital account (Account No. 424 277 4712), showing that in these months the only monies it had on deposit came from money held by the Charter Oak Trust for the benefit of Universitas. Attached as **Exhibit 18** is a true and correct copy of the

account-opening document for the Grist Mill Capital account at TD Bank with the Account Number 424 277 4712, listing Mr. Carpenter as a signatory on this account.

39. On or about May 22, 2009, Mr. Carpenter transferred $2,100,000.00 from the Grist Mill Capital account (Account No. 424 277 4712) to the Grist Mill Holdings account (Account No. 424-261-7136). Attached as **Exhibit 19** is a true and correct copy of the account-opening document for the Grist Mill Holding account at TD Bank with the Account Number 424-261-7136, listing Mr. Carpenter as a signatory on this account. Attached as **Exhibit 20** are true and correct copies of a TD Bank document showing this transfer of $2,100,000.00.

40. On or about July 11, 2009 (four days before the closing on the Properties), Mr. Carpenter transferred $2,200,000.00 from the same Grist Mill Capital account (Account No. 424 277 4712) to the same Grist Mill Holdings account (Account No. 424-261-7136). Attached as **Exhibit 21** are true and correct copies of TD Bank documents showing this transfer of $2,200,000.00.

41. Attached as **Exhibit 22** are true and correct copies of the May 2009, June 2009 and July 2009 monthly account statements for the Grist Mill Holdings account (Account No. 424-261-7136), showing that in these months the only monies it had on deposit came from money held by Grist Mill Capital, which money in turn (as discussed) came from the Charter Oak Trust account at TD Bank.

42. Continuing the series of transfers culminating in the purchase of the Properties, on or about July 15, 2009, Mr. Carpenter transferred $1,200,000.00 from the Grist Mill Holdings account (Account No. 424-261-7136) to the Hanover account (Account No. 4725 632 940). Attached as **Exhibit 23** is a true and correct copy of a partial TD Bank account statement for Hanover for the month of July 2009 that shows the transfers. This account for Hanover was

opened on or about July 13, 2009 – two days prior to receiving a $1,200,000.00 deposit – as indicated by the statement showing a beginning balance of zero dollars and the account statement only starting on July 13 (in the middle of the month). This account statement also identifies Mr. Carpenter as "Trustee" of Hanover.

43. Finally, on or about July 15, 2009, Mr. Carpenter transferred $1,100,000.00 – the purchase price of the Properties – from the Hanover account (Account No. 4725 632 940) to the Moonstone account (Account No. 424 277 5455). Attached as **Exhibit 24** are true and correct copies of TD Bank documents showing this transfer of $1,100,000.00.

44. Mr. Carpenter thus orchestrated the transfer of a portion of Universitas' money from the Charter Oak Trust to Moonstone, by way of intermediate transfers to accounts standing in the names of Grist Mill Capital, Grist Mill Holdings and Hanover – accounts for which Mr. Carpenter is a signatory.

## PURCHASE OF THE PROPERTIES

45. On or about July 15, 2009, the Carpenters, acting through Moonstone, completed their purchase of the Properties located at 392B Cards Pond Road in South Kingstown, Rhode Island, paying a total of about $1,100,000.00 for the Properties. Attached as **Exhibit 25** is a true and correct copy of the property record (as produced by Lexis) for 392B Cards Pond Road in South Kingstown, Rhode Island. Attached as **Exhibit 26** is a true and correct copy of an August 2010 article (titled "Living on the Edge") that appeared in *Rhode Island Monthly* magazine, identifying the Carpenters as owners of the Properties since July 2009 and quoting Mr. Carpenter as being concerned that the Properties might soon be "reclaimed by the ocean."

46. The Carpenters, acting through Moonstone and using Universitas' money, obtained insurance on the Properties through USAA. Attached as **Exhibit 27** is a true and

12

correct copy of a February 24, 2010 check, drawn on Moonstone's account at TD Bank (Account No. 424 277 5455) and signed by Mr. Carpenter, paying $3,469.37 to USAA.

### USAA REFUSES TO HALT PAYMENT AND REQUESTS THAT UNIVERSITAS SEEK "AN EMERGENCY ORDER FROM A COURT"

47. Hurricane Sandy apparently caused significant damage to the Properties, leading the Carpenters to lodge several damage claims with USAA. See **Exhibit 3** (deposition testimony of Ms. Carpenter).

48. Universitas first wrote to USAA on February 14, 2013, alerting it to the probability that the Carpenters improperly used Universitas' money to purchase the Properties and to obtain insurance on the Properties. Universitas requested that USAA refrain from paying out any Proceeds with respect to the Properties until Universitas could obtain an Order from the Court determining the rightful recipient of the Proceeds. Attached as **Exhibit 28** is a true and correct copy of the February 14, 2013 letter sent by Universitas' counsel to USAA.

49. On the evening of February 25, 2013, following two telephone conversations earlier in the day with Universitas' counsel, Mark Moorehead, a USAA claims administrator, wrote in an e-mail to Universitas' counsel that USAA would be making an insurance payment imminently unless the Court ordered otherwise (see **Exhibit 1**):

> Our legal staff has instructed me [to] inform you that unless we receive an emergency Order from a court instructing USAA to do something differently than what the policy contract obliges us to do we cannot withold payment. However, our legal department will immediately review the Order if you send one to us as soon as possible.

50. Several hours later on the evening of February 25, Universitas' counsel responded to Mr. Moorehead's e-mail, and informed USAA that Universitas intended to seek a TRO:

> Our client, Universitas Education, LLC ("Universitas"), intends to file as soon as possible (1) a motion for a temporary restraining order restraining USAA from paying out insurance proceeds with respect to USAA Account No. ▆▆▆▆

and (2) a motion for turnover of the proceeds to Universitas. Universitas may file this motion as early as tomorrow morning.

We reiterate our request that USAA not make any payouts with respect to USAA Account No. ███████ (or to Moonstone Partners, LLC or the Carpenters, or any person or entity designated by them), and suggest that USAA consider filing an action for interpleader with the U.S. District Court for the Southern District of New York, which would allow the Court to take possession over the insurance proceeds (which USAA would pay into the Court) and decide the proper recipient of the proceeds.

**Exhibit 29** (e-mail from Universitas' counsel to Mr. Moorehead).

## ALL PARTIES ARE AWARE OF TRO APPLICATION

51. As **Exhibits 1** and **29** show, USAA is on notice of Universitas' intention to proceed on an expedited basis with an application for a TRO, and indeed even suggested that Universitas seek "an emergency Order from a court."

52. Moonstone and the Carpenters have also received advance notice of Universitas' intention to seek a TRO. On February 26, 2013, Universitas sent a letter to Moonstone's principals (the Carpenters) and USAA, by e-mail (and copying counsel for the Carpenters in this case), informing them of Universitas' intention to seek a TRO the following day and attaching advanced drafts of this Declaration (exhibits omitted) and the OSC. Attached as **Exhibit 30** is a true and correct copy of this February 26, 2013 letter (attachments to the letter omitted).

53. Mr. Carpenter responded to Universitas' counsel by e-mail several hours later on the evening of February 26, threatening that if "you file this baseless action tomorrow or at any time, we will be suing you, your firm, Ms. Colbath and Loeb for a very long time to come." Attached as **Exhibit 31** is a true and correct copy of Mr. Carpenter's February 26, 2013 e-mail to me.

54. Universitas' counsel responded to Mr. Carpenter the following morning, on February 27, offering to meet and confer on Universitas' planned TRO application. Attached as **Exhibit 32** is a true and correct copy of my February 27, 2013 e-mail to Mr. Carpenter.

55. Mr. Carpenter responded to my e-mail in less than 20 minutes, making various threats and claiming Universitas' counsel had improperly contacted him directly even though he is a principal of Moonstone, then an unrepresented party to Universitas' planned TRO application. Attached as **Exhibit 33** is a true and correct copy of Mr. Carpenter's February 27, 2013 e-mail to me.

56. Counsel for Universitas communicated numerous times with USAA, and with counsel for Mr. Carpenter and Moonstone, but was unable to get USAA to confirm that it would be withholding payment of the Proceeds in view of the facts set forth above.

57. No prior application for the relief sought in Universitas' Motion for a TRO has been made to this or any other Court.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
February 28, 2013

                                                          */s/ Bryan I. Reyhani*
                                                         BRYAN I. REYHANI