```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNIVERSITAS EDUCATION, LLC,                   :
                                              : Case No.: 11 CV 1590-LTS-HBP
                Petitioner,                   :
                                              :
        -v-                                   :
                                              :
NOVA GROUP, INC., as Trustee, Sponsor         :
and Named Fiduciary of the CHARTER OAK        :
TRUST WELFARE BENEFIT PLAN,                   :
                                              :
                Respondent.                   :
----------------------------------------------:
NOVA GROUP, INC., as Trustee, Sponsor         :
and Named Fiduciary of the CHARTER OAK        : Case No.: 11 CV 8726-LTS-RLE
TRUST WELFARE BENEFIT PLAN,                   :
                                              :
                Petitioner,                   :
                                              :
        -v-                                   :
                                              :
UNIVERSITAS EDUCATION, LLC,                   :
                                              :
                Respondent.                   :
-------------------------------------------------------------X
```

**Objections of Respondents Moonstone Partners LLC, Daniel Carpenter,
and Molly Carpenter to Proposed Findings of Fact of Universitas Education, LLC**

Respondents submit these objections to the proposed findings of fact and conclusions of law submitted by Universitas.

**General Objections**

Respondents object generally to the entire submission of proposed findings of fact by Universitas in that it asks the Court to find facts that do not bear on the issues set out in CPLR 5225(b) and to draw conclusions of law unrelated to CPLR 5225(b).

1

## Specific Objections

**Specific Objection 1: Universitas has mis-identified the source of funds used for the acquisition of the Rhode Island property.**

<u>Regarding Proposed Findings of Fact # 75 and #76</u>: Universitas' proposed findings of fact 75 and 76 incorrectly identify a $2,100,000.00 transfer from Grist Mill Capital's TD Bank Account # 4712 to Grist Mill Holdings' TDBank Account #7136 as being relevant to the turnover application. That sum of money has nothing to do with the acquisition of the Rhode Island property.

While Universitas identifies to the Court the deposit of that $2,100,000.00 sum into the Grist Mill Holdings account, Universitas does not identify the fact that those funds were disbursed out of the Grist Mill Holdings account in June 2009. See TD-Universitas # 0490. There is no factual connection of those disbursements to the Rhode Island property.

Having already been disbursed in June 2009, those funds were not available in July 2009 to be the actual source of the funds used to purchase the Rhode Island property.

<u>Regarding Proposed Findings of Fact #78 and #79</u>: Universitas' proposed findings of fact 78 and 79 are materially incomplete because Universitas has not correctly identified the source of the $2,200,000.00 cited by Universitas as the source of the funds to purchase the Rhode Island property.[1]

Under CPLR 5225, the first question this Court must answer is did the judgment debtor have an interest in the property that is the subject of the turnover proceeding. Universitas'

---

[1] Universitas repeatedly identifies this deposit as having been made "on or about July 11, 2009." There was no deposit on July 11, 2009. The deposit ticket has that date <u>handwritten</u> on the face of the ticket. But the actual date of the deposit is machine –recorded on the reverse side of the ticket and it is July 13, 2009. (See Universitas Exhibit 1 at TDU Doc. # 0524.) The monthly bank statement for this transaction confirms that it occurred on July13, 2009. (See TDU Doc. #0492 in Exhibit 1.)

2

proposed findings of fact 78 and 79 do not correctly identify the source of funds used to purchase the Rhode Island property. The actual funds used were not funds in which the judgment-debtor had any interest under CPLR 5225(b).

The funds used to buy the Rhode Island property were drawn from the funds of the Grist Mill Trust. As described at length in respondents' post-hearing brief, the Grist Mill Trust funds were either a) funds unconnected in any way to the Spencer insurance policies or b) were loan repayments to the Trust by Grist Mill Capital from the fees Grist Mill Capital was due contractually under the funding agreements that controlled the Spencer Insurance policies.

In either event, the origination of these funds with Grist Mill Trust contradicts Universitas' Findings 78 and 79 and negates any assertion that the judgment debtor had an interest in the funds disbursed by Grist Mill Trust.

The funds used at the closing of the purchase of the Rhode Island property were $1,040,000.00. That sum was debited from the Moonstone Partners account at TDBank (Acct #5455[2]) on July 15, 2009. (See TD-Universitas Doc # 1008 in Exhibit L.)

As reflected in the same monthly statement, the money in the Moonstone Partners' account was funded by a $1,100.000.00 deposit into the Moonstone Partners account at TDBank (Acct #5455) on July 15, 2009. That sum was withdrawn from Hanover Trust Company account at TDBank (Acct #2940). (See TD-Universitas Doc #1372 in Exhibit K).

The Hanover Trust Company account funded the July 15, 2009, withdrawal of $1,100,000.00 from a "credit" into that account on July 15, 2009 in the sum of $1,200,000.00. (See TD-Universitas Doc #1372 in Exhibit K).

---

[2] For clarity, only the last four digits of each account number is listed.

3

The $1,200,000.00 "credit" into the Hanover Trust account was funded by a "debit" from a Grist Mill Holding account at TDBank (Acct # 7136). (See TD-Univesitas Doc #0492 in Exhibit I). The Grist Mill Holdings account statement reflects a "debit" of $1,200,000.00 on July 15, 2009. (See TD-Universitas Doc. #0492 in Exhibit I.)

The **only, and actual, funds available** for that debit from the Grist Mill Holdings account is a deposit into the Grist Mill Holdings account on July 13, 2009 in the amount of $2,200,000.00. (See TD-Universitas Doc. #0492 in Exhibit I.)

The $2,200,000.00 sum was drawn from Grist Mill Capital's TDBank account (Acct #4712) on July 13, 2009. (See TD-Universitas Doc. #0361 in Exhibit H.)

The **only, and actual, funds available** for that $2,200,000.00 drawn out of the Grist Mill Capital account is a "credit" into the Grist Mill Capital account on July 13, 2009 in the sum of $2,500,00.00. (See TD-Universitas Doc. #0361 in Exhibit H.)[3]

The $2,500,000.00 credited to Grist Mill Capital on July 13, 2009, is reflected as a "debit" in the Phoenix Capital Management account (TD Acct #4671) on July 13, 2009. (See TD Universitas Doc. #0443 in Exhibit J).

The **only, and actual, funds available** for that $2,500,000.00 debit out of the Phoenix Capital Management account is a wire transfer of $2,700,00.00 into the account on June 12, 2009, from Grist Mill Trust. (See TD-Universitas Doc. # 441 in Exhibit J).

The source of the $2,700,00.00 which was wire transferred into the Phoenix Capital Management account (TD Acct #4671) on June 12, 2009, was the Grist Mill Trust account at

---

[3] In its proposed finding of fact #94, Universitas mis-identifies this transaction as having occurred "on or about July 11, 2009." Here again, the actual date of the deposit is machine – recorded on the reverse side of the ticket and it is July 13, 2009. (See Universitas Exhibit 1 at TDU Doc. # 00345.) The monthly bank statement for this transaction confirms that it occurred on July13, 2009. (See TDU Doc. #0361 in Exhibit 1.)

4

JPMorgan Chase Bank (Acct#8488).  (See JPMorgan Chase Bank statement for June 2009, at page 3 of 6—**Exhibit O**).

As described in Respondents' post-hearing memorandum, those fund in the Grist Mill Trust account at JPMorgan Chase in June 2009 were:  a) wholly independent of any funds from Grist Mill Capital and b) funds from Grist Mill Capital that were within the $4.2 million dollars in fees for which Charter Oak Trust was contractually obligated under the Spencer insurance agreements.

**Specific Objection 2:  Universitas has not identified any interest it has in the funding of the USAA insurance policy under which the casualty loss payment is to be made.**

Respondents object to Universitas' proposed finding of fact # 22.  Universitas asks this Court to find as a fact that a check to USAA in February 2010 was a) a payment for the casualty insurance coverage that was in place in October 2012—when the storm struck the Rhode Island property; and b) that the premium was paid with what Universitas describes as "Universitas' money."

There is no proof in this record that the February 2010 check paid for multiple years of casualty insurance.

Universitas offered no proof whatsoever to establish that the Moonstone Partners' bank account in February 2010 was funded with "Universitas' money".  There is no proof as to the purpose for which the February 2010 check (the only item cited by Universitas in support of this proposed finding of fact) was written and no proof that an insurance premium payment in February 2010 was for casualty coverage to be in place in October 2012.

Indeed the proposed factual finding sought in #22 is contradicted by the Universitas proposed factual findings ## 100, 101, and 102, in which the Court is asked to find that all of the

5

alleged Universitas money that was transferred to the Moonstone Partners account at TDBank was used in July 2009 to purchase the Rhode Island property.

CPLR 5225 requires the Court to first determine if the judgment-debtor has an interest in the funds for which a turnover order is sought. Universitas has offered no proof whatsoever to support a factual finding that the judgment debtor had an interest in the payment for the insurance coverage and the claim payment, under that policy, that covered the Rhode Island property in October 2012.

**Specific Objection 3:   The turnover proceeding before this Court is governed by CPLR 5225(b) and not the provisions of the New York Debtor Creditor Law.**

Universitas' proposed conclusions of law ##5, 6 and 7 are inapplicable to the proceeding before this Court.

Federal Rule of Civil Procedure 69 authorizes the use of a post-judgment motion in federal court as a substitute for a special proceeding under CPLR 5225(b). The law Universitas offers to this Court in its proposed conclusions of law ##5, 6 and 7, do not authorize the court to use Rule 69 as a substitute for a plenary fraudulent conveyance action.

If that legal authority is offered to rebut the status of Grist Mill Capital as a creditor of the judgment debtor, the cases offered are inapposite.

In PPG Industries, Inc. v. The Hartford Fire Ins. Co., 531 F.2d 58, 60 (2d Cir. 1976), the Second Circuit held that fire insurance proceeds constituted 'proceeds' of collateral in which the secured creditor (therein, the lender) had interest, and that such proceeds were 'in existence' at time of fire, which was prior to date federal tax liens were filed against debtor, and that creditor thus had prior right to such proceeds over the government. The Circuit Court explained that PPG was owed the money first, and should be paid first, and that the Government would have to wait until PPG was paid their judgment before they could collect from their tax lien.

That case did not address facts, as present herein, where, as a matter of contract, the underlying collateral and funding agreements provide for Grist Mill Capital to be repaid in excess of four million dollars in fees first.

**Specific Objection #4: Universitas did establish that Ms. Carpenter was a trustee of Grist Mill Trust.**

<u>Regarding Proposed Findings of Fact # 47</u>: Universitas does not establish that Molly Carpenter was a Trustee of Grist Mill Trust. In their proposed finding of fact #47, Universitas asserts that Molly Carpenter is a trustee of Grist Mill Trust. The only proof offered for this assertion is Universitas' Exhibit 6. That exhibit is a signature card for the JPMorgan Chase bank account of Grist Mill Trust. On it, Ms. Carpenter is identified only as a "signer", not as a trustee. See Exhibit 6 at COT-JPM000051.

Dated: June 21, 2013
White Plains, New York

                                  Respectfully submitted,

                                  s/Anthony J. Siano
Anthony J. Siano, Esq. (AS8842)
Anthony J. Siano Esq. PLLC
*Attorney for Daniel E. Carpenter and.*
*on this application, for Moonstone Partners LLC*
333 Westchester Avenue, Suite 302
White Plains, New York 10604


                                  s/Daniel E. LaBelle
Dan E. LaBelle, Esq. (DL2779)
Halloran & Sage LLP
*Attorneys for Molly Carpenter*
315 Post Road West
Westport, CT 06880

To:

Brian Reyhani, Esq.
200 Park Avenue, FL 17
New York, New York 10166

Paula K. Colbath, Esq
Michael Barnett, Esq.
345 Park Avenue
New York, New York 10154

Matthew Brief, Esq.
Brief, Carmen, Kleiman, LLP
805 Third Avenue - 11th Floor
New York New York
United States of America 10022

Carole Bernstein, Esq.
41 Maple Avenue North
Westport, Connecticut 06880

Michael Evan Gorelick, Esq.
Abrams, Gorelick, Friedman & Jacobson, P.C.
One Battery Park Plaza, 4th Floor
New York, New York 10004