```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

UNIVERSITAS EDUCATION, LLC,          :

                    Petitioner,      :    11 Civ. 1590 (LTS)(HBP)

     -against-                       :

                                     :

NOVA GROUP, INC.,                    :

                    Respondent.      :
----------------------------------X

NOVA GROUP, INC.,                    :

                    Petitioner,      :    11 Civ. 8726 (LTS)(HBP)

     -against-                       :    OPINION
                                          AND ORDER
                                     :
UNIVERSITAS EDUCATION, LLC,          :

                    Respondent.      :
----------------------------------X
```

PITMAN, United States Magistrate Judge:


I.  Introduction


        These actions arise out of the efforts of Universitas
Education, LLC ("Universitas") to confirm a multimillion dollar
arbitration award entered in its favor and to collect the result-
ing judgment entered against Nova Group, Inc. ("Nova Group").
Universitas has undertaken discovery in aid of execution pursuant

to Rule 69 of the Federal Rules of Civil Procedure.  By notice of motion dated January 25, 2013, non-parties Caldwell Life Strate-gies Corporation, Caldwell Funding Corporation, Caldwell Life Holdings LLC, Caldwell Life Strategies LLC, Ridgewood Finance II LLC, Ridgewood Finance Inc., Plainfield Asset Management LLC, Max Holmes, Steven Segaloff, Adam Balinsky and Veronica Cranny (collectively, the "Movants") move to quash the subpoenas that Universitas served on them (Docket Item 212).[1]

For the reasons set forth below, the Movants' motion to quash is denied in part and granted in part.

II.  <u>Background</u>

The facts underlying the arbitration award are set forth in the Memorandum Order of the Honorable Laura Taylor Swain, United States District Judge, dated June 5, 2012. <u>Universitas Educ., LLC v. Nova Grp., Inc.</u>, 11 Civ. 1590 (LTS)(HBP), 2012 WL 2045942 (S.D.N.Y. June 5, 2012).

Nova Group is the trustee, sponsor and fiduciary of Charter Oak Trust Welfare Benefit Plan ("Charter Oak Trust"). Two life insurance policies on Sash A. Spencer's life -- totaling

---

[1]Unless otherwise stated, all docket references are to 11 Civ. 1590.  Although the actions docketed under 11 Civ. 1590 and 11 Civ. 8726 have been consolidated, the present motion to quash was filed only in 11 Civ. 1590.

approximately $30 million -- were placed in the Charter Oak Trust.  Universitas is the sole, irrevocable beneficiary of the proceeds in the Charter Oak Trust.  After Mr. Spencer's death in 2009, the life insurance carrier paid the insurance proceeds into the Charter Oak Trust.  Universitas then commenced an arbitration against Nova Group to determine its entitlement to the insurance proceeds.  On January 24, 2011, the arbitrator rendered an award in favor of Universitas.

On June 5, 2012, Judge Swain confirmed the arbitration award in favor of Universitas.  Universitas Educ., LLC v. Nova Grp., Inc., supra, 2012 WL 2045942.  Judgment against Nova Group was entered in the amount of $30,181,880.30 on June 7, 2012 (Docket Item 41).

For reasons it has never explained, Nova Group has refused to pay the judgment despite the fact that it had received the proceeds of the policies.  In an effort to locate these insurance proceeds, Universitas served subpoenas duces tecum on non-parties Caldwell Life Strategies Corporation, Caldwell Funding Corporation, Caldwell Life Holdings LLC, Caldwell Life Strategies LLC (collectively, "Caldwell"), Ridgewood Finance II LLC, Ridgewood Finance Inc. (collectively, "Ridgewood") and Plainfield Asset Management LLC ("Plainfield"), and subpoenas ad testificandum on non-party individuals Max Holmes, Steven

Segaloff, Adam Balinsky and Veronica Cranny (collectively, the "Individuals") (Affirmation of Stephen T. Heiser, Esq., dated January 25, 2013 (Docket Item 215) ("Heiser Aff.") Exs. 1-11).

On or about December 31, 2011, Caldwell Life Strategies Corporation sold all of its assets to an unaffiliated company. It currently does not have any employees. Caldwell Funding Corporation, Caldwell Life Holdings LLC, Caldwell Life Strategies LLC, Ridgewood Finance II LLC and Ridgewood Finance Inc. either no longer exist or were fully merged with Caldwell Life Strategies Corporation. According to the Movants, Caldwell Life Strategies Corporation is the only appropriate party upon which a subpoena can be served.

Adam Balinsky was Senior Vice President of Business Development and In-House Counsel for Caldwell Life Strategies Corporation from September 2007 through December 2008, and was President of Caldwell Life Strategies Corporation from January 2009 through April 2012. Mr. Balinsky is no longer employed by Caldwell. Veronica Cranny was Chief Compliance Officer of Caldwell Life Strategies Corporation from October 2006 through April 2012, and she too is no longer employed by Caldwell.

Plainfield Asset Management LLC is in the process of winding down its operations and liquidating its investments. According to the Movants, Plainfield does not have a direct or

4

indirect ownership interest in the Caldwell-related entities or the Ridgewood-related entities; rather, it is the asset manager of another entity that owns Caldwell Life Strategies Corporation. Max Holmes is the Founder and Chief Investment Officer of Plainfield, and was never employed by Caldwell.  Steven Segaloff was Deputy General Counsel of Plainfield, and was never employed by Caldwell.

Ridgewood Finance Inc., Grist Mill Capital, LLC ("Grist Mill") and Avon Capital, LLC ("Avon Capital") entered into an agreement under which Ridgewood Finance Inc. provided financing to Grist Mill Capital and Avon Capital for the premium payments and expenses of life insurance policies held by the Charter Oak Trust and Avon Insurance Trust, including the two insurance policies that were the subject of the underlying arbitration (Declaration of Michael Barnett, Esq. in Support of Universitas' Opposition to the January 25 Motion to Quash Subpoenas (Docket Item 221) ("Barnett Decl.") Ex. F (the "Credit Agreement")). Grist Mill, Avon Capital, Charter Oak Trust and Avon Insurance Trust are entities that are closely related to Nova Group.  As collateral for this loan, Ridgewood Finance Inc. took a security interest in the life insurance policies held by Charter Oak Trust and Avon Insurance Trust.

On or about May 26, 2009, Grist Mill paid Ridgewood a sum of money in connection with the two insurance policies that were the subject of the underlying arbitration. The record does not disclose what motivated Grist Mill to make this payment or what, if anything, Grist Mill received in return for this payment. In any event, Universitas does not appear to suggest that this payment was improper. On March 21, 2010 and July 27, 2010, Ridgewood Finance II LLC (the successor in interest to Ridgewood Finance Inc.) sent notices of default to the attention of Grist Mill, Benistar,[2] Avon Capital, Nova Group and Halloran & Sage LLP[3] (Barnett Decl. Ex. D). On or about September 30, 2010, Grist Mill, Avon Capital, Charter Oak Trust and Avon Insurance Trust entered into a settlement agreement with Ridgewood Finance II LLC (Barnett Decl. Ex. C). Pursuant to this agreement, Grist Mill and Avon Capital transferred to Ridgewood Finance II LLC certain life insurance policies (Barnett Decl. Ex. C). Because the policies that were the subject of the underlying arbitration were paid out in 2009, they were <u>not</u> included among the policies that were transferred as part of the settlement agreement.

---

[2]Like Grist Mill and Avon Capital, Benistar is an entity closely related to Nova Group.

[3]Halloran & Sage is a law firm that has served as counsel to the various entities and individuals associated with Nova Group.

Given Ridgewood's role as a lender to entities closely associated with Nova Group and its role in funding the premium payments for insurance policies held by the Charter Oak Trust, Universitas served identical subpoenas for documents on Ridgewood, Caldwell and Plainfield and served subpoenas for depositions on the Individuals.

In response to Universitas' subpoenas, Ridgewood, Caldwell and Plainfield produced:  (1) the February 2007 Credit Agreement and its closing binder which includes related transaction documents, legal opinions, lien documents, certificates and organizational documents; (2) documents reflecting the May 2009 payment from Grist Mill to Ridgewood concerning the insurance policies that were the subject of the underlying arbitration; (3) the notices of default; (4) the September 30, 2010 settlement agreement and documents demonstrating that no money was exchanged in connection with that agreement; (5) documents sufficient to show all payments made by Nova Group and its related entities to Ridgewood after May 1, 2009; (6) documents sufficient to show payments Ridgewood made in connection with the insurance policies underlying the Credit Agreement between January 30, 2007 and December 30, 2011; (7) documents reflecting the involvement of certain individuals related to Nova Group under the Credit Agreement and (8) documents reflecting all known bank accounts

7

associated with the Movants and Nova Group and entities affili-
ated with it (Memorandum of Law in Support of Motion to Quash
Subpoenas (Docket Item 216) ("Movants' Mem.") at 4-5).  The
Movants also provided Universitas with "several charts and
explanations . . . to further explain everything in a clear and
straightforward manner" (Movants' Mem. at 5).  As detailed below,
Universitas maintains that this production is not sufficient and
that the Movants have failed to produce certain categories of
documents that were requested in its subpoenas.

The Movants also asked that Universitas withdraw the
subpoenas issued to the Individuals.  In exchange, the Movants
offered to submit an affidavit concerning the documents produced
(Heiser Aff. ¶ 28).  They also offered Universitas the opportu-
nity to have an "off the record" conversation with a representa-
tive of the Movants (Heiser Aff. ¶ 30).  Universitas has not
accepted either of these alternatives and has not withdrawn the
subpoenas (Heiser Aff. ¶ 35).

Ultimately, the Movants and Universitas were unable to
informally resolve their disputes, and this motion to quash
followed.

II.  <u>Analysis</u>

    A.  <u>Applicable Law</u>

        Pursuant to Fed.R.Civ.P. 69, "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person -- including the judgment debtor -- as provided in these rules or by the procedure of the state where the court is located."  Fed.R.Civ.P. 69(a)(2); <u>Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.</u>, 10 Civ. 1853 (PGG)(JCF), 11 Civ. 2001 (PGG)(JCF), 2012 WL 4801452 at *11 (S.D.N.Y. Oct. 5, 2012) (Francis, M.J.) ("Rule 69(a)(2) allows a judgment creditor to utilize discovery devices available under both the Federal Rules of Civil Procedure and the laws of the forum state.").  "Broad post-judgment discovery in aid of execution is the norm in federal and New York state courts."  <u>EM Ltd. v. Republic of Argentina</u>, 695 F.3d 201, 207 (2d Cir. 2012).  "In its efforts to enforce a judgment, 'the judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor.'"  <u>GMA Accessories, Inc. v. Elec. Wonderland, Inc.</u>, 07 Civ. 3219 (PKC)(DF), 2012 WL 1933558 at *4 (S.D.N.Y. May 22, 2012) (Freeman, M.J.) (internal citation omitted); <u>see also</u> <u>Banco Central De Paraguay v. Paraguay Humani-tarian Found., Inc.</u>, 01 Civ. 9649 (JFK), 2006 WL 3456521 at *9

(S.D.N.Y. Nov. 30, 2006) (Keenan, D.J.) ("[E]ven if the discovery request is a 'fishing expedition' . . . this Court recognized long ago that 'a judgment creditor is entitled to fish for assets of the judgment debtor.'" (internal citation omitted)).  "A district court has broad latitude to determine the scope of discovery and to manage the discovery process." EM Ltd. v. Republic of Argentina, supra, 695 F.3d at 207.

       Because the scope of Rule 69 discovery includes any information reasonably calculated to lead to the discovery of a judgment debtor's assets, it may necessarily be aimed at non-parties who have information, including financial records, related to those assets.  See EM Ltd. v. Republic of Argentina, supra, 695 F.3d at 207 ("It is not uncommon to seek asset discovery from third parties, including banks, that possess information pertaining to the judgment debtor's assets." (citing cases)); Vazquez v. Ranieri Cheese Corp., No. CV-07-464 (ENV)(VVP), 2013 WL 101579 at *2 (E.D.N.Y. Jan. 8, 2013) ("[T]he breadth of post-judgment discovery with respect to a judgment debtor's assets affords judgment creditors considerable latitude in obtaining documents and information from non-parties.").  "Generally, non-parties may only be examined about the assets of a judgment debtor" and, accordingly, "the general rule is that non-party discovery is limited to a search for the defendant's hidden

assets." <u>Costomar Shipping Co., Ltd. v. Kim-Sail, Ltd.</u>, 95 Civ.
3349 (KTD), 1995 WL 736907 at *3 (S.D.N.Y. Dec. 12, 1995) (Fran-
cis, M.J.); <u>see also</u> <u>Jacobson v. Moller & Moller, Inc.</u>, No. CV
2002-6316 (ERK)(MDG), 2007 WL 1989260 at *1 (E.D.N.Y. July 5,
2007) (pursuant to Rule 69, "discovery is permitted against a
non-party to discover facts relating to the assets of the judg-
ment debtor").

       Rule 45 of the Federal Rules of Civil Procedure applies
in post-judgment discovery and authorizes a party's attorney to
issue both document and deposition subpoenas. <u>GMA Accessories,
Inc. v. Elec. Wonderland, Inc.</u>, <u>supra</u>, 2012 WL 1933558 at *4.
The rule provides, in pertinent part, that "[a] party or attorney
responsible for issuing and serving a subpoena must take reason-
able steps to avoid imposing undue burden or expense on a person
subject to the subpoena." Fed.R.Civ.P. 45(c)(1). Rule 45
requires a court to quash or modify a subpoena in certain circum-
stances, Fed.R.Civ.P. 45(c)(3)(A), and permits it to do so in
other circumstances, Fed.R.Civ.P. 45(c)(3)(B). As relevant here,
Rule 45 provides that "the issuing court must quash or modify a
subpoena that: . . . (iv) subjects a person to an undue burden."
Fed.R.Civ.P. 45(c)(3)(A)(iv). "'Because the burden is on the
party seeking to quash a subpoena, that party cannot merely
assert that compliance with the subpoena would be burdensome

without setting forth the manner and extent of the burden and the
probable negative consequences of insisting on compliance.'"
Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas, 262
F.R.D. 293, 299 (S.D.N.Y. 2009) (Leisure, D.J.) (internal cita-
tion omitted); see also John Wiley & Sons, Inc. v. Doe Nos. 1-30,
284 F.R.D. 185, 189 (S.D.N.Y. 2012) (Cott, M.J.).

>    "An evaluation of undue burden requires the court to
>    weigh the burden to the subpoenaed party against the
>    value of the information to the serving party.  Whether
>    a subpoena imposes an 'undue burden' depends upon 'such
>    factors as relevance, the need of the party for the
>    documents, the breadth of the document request, the
>    time period covered by it, the particularity with which
>    the documents are described and the burden imposed.'"

Bridgeport Music Inc. v. UMG Recordings, Inc., 05 Civ. 6430
(VM)(JCF), 2007 WL 4410405 at *2 (S.D.N.Y. Dec. 17, 2007) (Fran-
cis, M.J.), quoting Travelers Indem. Co. v.  Metro. Life Ins.
Co., 228 F.R.D. 111, 113 (D. Conn. 2005).  Motions to quash under
Rule 45 are "'entrusted to the sound discretion of the district
court.'"  In re Fitch, Inc., 330 F.3d 104, 108 (2d Cir. 2003),
quoting United States v. Sanders, 211 F.3d 711, 720 (2d Cir.
2000).

    B.  Application of the
        Foregoing Legal Principles

        As an initial matter, I note that substantial portions
of the parties' submissions are addressed to the issue of whether

the Movants have a "close relationship" with Nova Group and the Charter Oak Trust and whether there is any evidence of fraudulent transfers between the Movants and Nova Group or the Charter Oak Trust.  This discussion is irrelevant to the issue before me. These factors are relevant only when a judgment creditor seeks to discover information from the third party concerning the third-party's financial assets, as opposed to information concerning the financial assets of the judgment debtor.  See GMA Accessories, Inc. v. Elec. Wonderland, Inc., supra, 2012 WL 1933558 at *5 ("Inquiry into the assets of a non-party is only permitted 'where the relationship between the judgment debtor and the non-party is sufficient to raise a reasonable doubt as to the bona fides of the transfers between them.'" (internal citation omitted)); Koon Chun Hing Kee Soy & Sauce Factory, LTD. v. Star Mark Mgmt., 04 Civ. 2293 (SMG), 2010 WL 3780275 at *3 (E.D.N.Y. Sept. 22, 2010) ("Absent any evidence of transfers of assets to these non-parties, the demands for information with respect to them are overly broad and not 'limited to a search for the defendant's hidden assets.'" (internal citation omitted)); Costomar Shipping Co., Ltd. v. Kim-Sail, Ltd., supra, 1995 WL 736907 at *3-4 (denying discovery of non-party assets where no basis to pierce corporate veil and no evidence of fraud or unjust enrichment); Uniden Corp. of Am. v. Duce Trading Co., Ltd., 89 Civ. 878, 1993

13

WL 286102 at *1 (W.D.N.Y. July 19, 1993) ("Although disclosure concerning the assets of a non-party is not generally contemplated by Rule 69(a), discovery has been allowed against a non-judgment debtor upon a somewhat heightened showing of necessity and relevance -- i.e., at least some demonstration of concealed or fraudulent transfers or alterego relationship with the judgment debtor."). Universitas' requests do not seek to discover information about the assets of the Movants themselves. Thus, the issue of whether there is a "close relationship" or evidence of fraudulent transfers between the Movants and Nova Group is irrelevant. Rather, the requests seek to discover only information that the Movants may have about the financial assets of Nova Group and the Charter Oak Trust. Such requests are plainly within the purview of the broad discovery permissible under Rule 69.[4]

---

[4]To the extent that Universitas' subpoenas can be read as seeking information about the financial assets of the Movants themselves, the subpoenas are quashed. From the evidence presented by Universitas, there is no basis to draw the inference that the Movants have a "close relationship" with Nova Group or the Charter Oak Trust or that the Movants were the recipients of any fraudulent transfers from Nova Group or the Charter Oak Trust.

1.   Subpoenas Ad Testificandum

The Individuals argue that the subpoenas for their depositions should be quashed as unduly burdensome because the documents already produced are sufficient and the Movants have offered to provide an affidavit or representative to informally explain the documents produced.  Universitas claims that it is entitled to take these depositions to question a representative about the documents and the relationship among the Movants and Nova Group and its related entities.

I conclude that, at this point, Universitas is entitled to depose one individual.  While it may be the case that some documents already produced are relatively self-explanatory, it is also likely that Universitas' understanding of these and other documents would benefit from an explanation by an individual who is most knowledgeable about them.  Moreover, a deposition would enable Universitas to ensure that it has the entire universe of responsive and relevant documents.  Although there is always some level of burden involved for a non-party who is deposed, the Individuals have presented no particular facts that establish that a deposition would impose an undue or excessive burden.  The fact that the companies that the Individuals worked for either no longer exist or are in the process of dissolving does not make

the depositions more burdensome than if the companies were still active.  There is no indication that the Individuals' abilities to testify about the relationship between the Movants and Nova Group and its associated entities are tied to the status of their former companies.

The Movants' offer of an informal explanation of the documents is not a substitute for deposition testimony.  See In re Willkie Farr & Gallagher LLP to Quash Subpoena, Misc. No. M8-85, 2008 WL 3884380 at *3 (S.D.N.Y. Aug. 14, 2008) (Sullivan, D.J.) (denying motion to quash Rule 30(b)(6) subpoena served on non-party law firm notwithstanding law firm's submission of declaration addressing a topic set forth in the Rule 30(b)(6) notice of deposition); cf. Aristocrat Leisure Ltd. v. Deutsche Bank Trust Cos. Americas, supra, 262 F.R.D. at 300 (rejecting argument that trial subpoena posed undue burden; "parties who have been served properly under Rule 45 cannot demand that their depositions be used in lieu of live trial testimony").

Universitas has served notices of depositions on the Individuals in their individual capacity.  However, given that Universitas seeks to question these individuals about the rela-tionship between the Movants and Nova Group and its related entities, a Rule 30(b)(6) deposition is a more effective mecha-nism.  Accordingly, the motions to quash the subpoenas to the

16

Individuals are granted without prejudice to Universitas' service of a notice of deposition pursuant to Rule 30(b)(6) upon Caldwell Life Strategies Corporation with properly identified topics for examination.

    2.  <u>Document Subpoenas</u>

      Although Universitas and the Movants do not dispute that the Movants have produced documents responsive to Universitas' subpoenas, they do dispute whether additional documents should be produced. Ridgewood, Caldwell and Plainfield claim that producing additional documents would be unduly burden-some in light of their production to date and the fact that they have provided charts and other explanations concerning these documents. Furthermore, the Movants assert that only Caldwell Life Strategies Corporation -- as the only active business entity that was related to the parties to the Credit Agreement -- is an appropriate source of documents and that the subpoenas to the other Caldwell and Ridgewood entities and Plainfield should, therefore, be quashed.

      According to Universitas, Caldwell, Ridgewood and Plainfield have failed to produce certain categories of documents requested in its subpoenas and contend that these documents are properly discoverable under Rule 69. Because these requests

appear to be the only ones in dispute, I construe the motion to quash as limited to the requests specifically identified in Universitas' opposition (Universitas' Education, LLC's Memorandum of Law in Opposition to January 25 Motion to Quash Subpoenas ("Universitas Mem.") at 14-17).  By the same token, I also assume that the Movants have satisfied the other requests in Universitas' subpoenas.

       With respect to the requests in dispute, the Movants claim that they are burdensome because they have already produced sufficient documents to explain fully their knowledge of the financial assets of Nova Group and its related entities, and that any additional production is unnecessary and irrelevant.  Furthermore, the Movants claim that because Caldwell, Ridgewood and Plainfield are no longer active business entities, the burden of additional production will be significant because they will be required to retain former employees at their own expense to locate the requested documents (Movants' Mem. at 10).  While there is a burden inherent in responding to a subpoena, the burden that the Movants have identified is the same sort of burden that any non-party faces in responding to a subpoena. Notably, the Movants have failed to provide any affidavits to articulate the degree and scope of the burden posed by additional production, and, accordingly, they have not demonstrated that the

18

burden of responding to the subpoenas is so substantial that the subpoena should be quashed.  See Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas, supra, 262 F.R.D. at 300 (rejecting undue burden argument where movants had failed to submit affidavits describing the burden imposed by trial subpoenas (citing cases)).  Finally, as will be explained below, the disputed requests seek information relevant to Universitas' efforts to enforce its judgment and are properly within the broad parameters of discovery allowed under Rule 69.

I now address each request on individual basis below.[5]

a.  Request No. 7

In Request No. 7, Universitas seeks:

7.  Any other documents (not already requested in the requests set forth above) that have or may contain information concerning the identity, location and value of the property, income or assets of Nova Group and/or the Charter Oak Trust, at any time, including all insurance policies held by Nova Group and/or the Charter Oak Trust, and all insurance policies for which Nova Group, the Charter Oak Trust and/or Wayne H. Bursey is or was a beneficiary, owner, transferee or transferor.

The precise nature of the documents sought by this request is unclear.  Universitas explains that this request is intended to

---

[5]Because the document subpoenas to each of the Movants are identical, I need not address each subpoena on an individual basis.

encompass "all documents that [the Movants] collected or created in the course of performing due diligence on the Charter Oak Trust, and its affiliated entities and individuals" (Universitas Mem. at 15).  To the extent that this request seeks "due diligence" documents, such documents are properly discoverable under Rule 69.  Before entering the Credit Agreement with Grist Mill and Avon Capital, it is likely that Ridgewood would have requested and received documents concerning the financial condition of the Charter Oak Trust, Avon Insurance Trust, Grist Mill and Avon Capital, including their assets and liabilities.  Such documents would have been critical to Ridgewood's evaluation of the proposed financing arrangement.  Similarly, these documents are discoverable under Rule 69 because they are likely to bear on the nature and extent of Nova Group's financial assets and liabilities given that (1) these entities are closely associated with Nova Group and (2) the Credit Agreement was entered into, in part, to fund the premium payments of the insurance policies that were the subject of the underlying arbitration.  However, to the extent that this request seeks documents other than these "due diligence" documents, the motion to quash is granted.  If the request is construed to reach documents beyond the due diligence documents, it is unduly broad and provides no real guidance as to the nature of documents that would be responsive.  See Concord

20

Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 50-51 (S.D.N.Y. 1996) (Edelstein, D.J.).

Accordingly, the Movants' motion to quash Request No. 7 is denied, but Request No. 7 is limited to due diligence documents.

### b. Request No. 10

In Request No. 10, Universitas seeks:

10.  All documents evidencing and/or explaining investments of or distributions from the Charter Oak Trust, including without limitation, cash, insurance policies, or other property or assets.

Universitas argues that because the insurance proceeds at issue here were deposited into a bank account in the Charter Oak Trust's name, it is entitled to a complete understanding of the Charter Oak Trust's financial transactions.  In view of the fact that Ridgewood provided financing for insurance policies held in the Charter Oak Trust, it is likely that it would have documents that bear on those assets.  These documents are relevant and discoverable under Rule 69 because the Charter Oak Trust's assets bear on the assets and liabilities of Nova Group given the close relationship between the two.  Accordingly, the motion to quash with respect to Request No. 10 is denied.

c.   <u>Request No. 12</u>

This request seeks:

12.   Copies of all documents that identify any individual or entity that has or once had an ownership interest in Nova Group, Grist Mill Capital or Avon Capital, as well as copies of all documents that identify any individual or entity that is or was a member, shareholder, officer, director of Nova Group, Grist Mill Capital or Avon Capital.

Universitas explains that this request is aimed at the documents concerning the due diligence that Ridgewood performed prior to entering the Credit Agreement.  For the reasons explained above, these documents are discoverable.  Accordingly, the Movants' motion to quash is denied with respect to Request No. 12.

d.   <u>Request No. 15</u>

In Request No. 15, Universitas seeks:

15.   Copies of all communications between an individual representing Plainfield Asset Management[6] or one of its affiliates (including without limitation Adam

---

[6]"Plainfield Asset Management" is defined to include, among others, "Plainfield Direct, Caldwell Funding Corporation, Caldwell Life Strategies Corporation, Caldwell Life Holdings LLC, Caldwell Life Strategies LLC, Ridgewood Finance Inc. and Ridgewood Finance II LLC" (<u>see</u>, <u>e</u>.<u>g</u>., Heiser Aff. Ex. 1).  Thus, to the extent that Movants object that Plainfield was not involved in any transactions with Nova Group or any of the entities related to it, such an objection has no basis.  The manner in which Universitas has defined "Plainfield Asset Management" includes entities -- like Ridgewood Finance Inc. -- that were parties to the Credit Agreement.

Balinsky, Edward Stone, Steven Segaloff and Veronica Cranny) and any individual acting on behalf of, or for the benefit of, Nova Group, the Charter Oak Trust, Grist Mill Capital and/or Avon Capital, including but not limited to the following individuals:

A.  Daniel E. Carpenter;

B.  Wayne H. Bursey;

C.  Jack E. Robinson;

D.  Donald J. Trudeau;

E.  Amanda Rossi;

F.  Molly Carpenter; and

G.  Daniel Drever

The individuals identified in items (A) through (G) are all related to Nova Group and other entities, including the Charter Oak Trust, that are closely associated with it.  According to Universitas, these communications are highly relevant because they "likely contain information about the assets, bank accounts and operations of Nova and Charter Oak Trust" (Universitas Mem. at 17).  Given the lender-borrower relationship between Ridgewood Finance Inc. and Avon Capital/Grist Mill and Nova Group's close connection to the latter two entities, it is reasonable to expect that communications between their representatives would include information about the financial assets of Nova Group and the Charter Oak Trust or could reasonably lead to such information. Accordingly, the motion to quash is denied with respect to

Request No. 15 to the extent that this request seeks communications regarding the financial assets of Nova Group, Charter Oak Trust, Grist Mill and Avon Capital.

In recognition of the fact that Caldwell, Ridgewood and Plainfield are non-parties and that some of these entities are no longer operating and their emails may not, therefore, be easily accessible, I direct that Universitas advance the Movants the costs associated with their review and production of emails stored in their computer servers or other electronic media that are responsive to Request No. 15. This provision for costs does not, however, apply to those emails and other correspondence that are already segregated in independent, hard-copy files.

e.   <u>Universal Production</u>

Finally, I recognize the burden of complying with a subpoena may be particularly heavy when, as here, the subpoenaed party is no longer an active business entity. In view of this concern and because Universitas has agreed to accept such a production (<u>see</u> Barnett Decl. ¶ 7), the Movants are directed to provide one, comprehensive production on behalf of the seven subpoenaed entities. This procedure will also address the Movants' assertion that only Caldwell Life Strategies Corporation is the appropriate recipient of Universitas' subpoenas.

IV.   <u>Conclusion</u>

For the foregoing reasons, the Movants' motion to quash is denied in part and granted in part.  The Movants are directed to respond to Universitas' subpoenas as set forth above within 30 days of this Opinion and Order.  The Clerk of the Court is directed to close Docket Item 212 in 11 Civ. 1590.

Dated:  New York, New York
        July 2, 2013

                              SO ORDERED


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies transmitted to:

All Counsel


25