# ANTHONY J. SIANO, ESQ., PLLC
### A PROFESSIONAL CORPORATION
### 333 WESTCHESTER AVENUE - SUITE 302
### WHITE PLAINS, NEW YORK 10604

**(914) 997-0100**
**FAX (914) 997-4179**

ANTHONY J. SIANO

October 10, 2013

**By E-mail and Federal Express**

Hon. Laura Taylor Swain
United States District Court Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10005

       Re:    <u>Universitas Education LLC, v. Nova Group Inc.</u>
               11 CIV 1560 (LTS)(HBP)

Dear Judge Swain:

       I represent Mr. Daniel Carpenter. I am writing with the permission of the Court to respond to the letter of Michael Barnett, Esq., dated October 9, 2013. When Your Honor's law clerk encouraged Mr. Barnett and me to write these letters, it was for the stated purpose of addressing the scheduling aspects of the draft order. I will limit my response to Mr. Barnett's letter to that subject.

       I have represented Mr. Carpenter since October 2012. In that time, I alone have been his counsel personally in the matter before this Court. The draft order before Your Honor now is the third proposed draft given to counsel for various respondents in the past month. The prior two drafts were materially different. Mr. Barnett argues that the prior discussions on the prior orders somehow render my scheduling issues moot or unworthy of consideration. I respectfully disagree.

       The first draft order to show cause received by me and by counsel for other respondents was much narrower than the current proposed order as to Mr. Carpenter. When I received that first draft order—in early September—I and counsel for the other respondents immediately expressed to Mr. Barnett our willingness to consent to a restraint, during the pendency of that application, on all but one of the corporate respondents' actions. I consented to the restraint of Mr. Carpenter's actions <u>as to those corporate respondents</u>.

I also promptly informed Mr. Barnett in that first conversation of my scheduled travel plans for the period September 20-28. (Other respondents' counsel did likewise as to their schedules.)

In response to the several concessions offered by respondents, Mr. Barnett sent all counsel a second draft order. But rather than just incorporating the agreed upon changes, the second draft order changed materially the restraints Mr. Barnett was seeking. The changes were significant as to my client and were as well as one of the corporate respondents on the proposed order. Discussions between that entity's counsel and Mr. Barnett continued while I was away for a week. In the second proposal, Mr. Barnett added a provision that my client be restrained from any financial transactions whatsoever, as to the corporate respondents and as to himself personally.

That second draft was offered just days before I left the country. I did not just leave this matter unattended as to Mr. Carpenter while I traveled in Italy. Before I left, I obtained a proxy counsel to sign a stipulation--if one was worked out--and allowed the various corporate respondents' counsel to present the concerns I had as to Mr. Carpenter in my stead and to continue the discussions with Mr. Barnett.

No agreement was reached as to the corporate respondent while I was away. The first day I was back at work (September 30), Ms. Colbath rejected both the corporate respondent's concerns, as well as mine.

Only after those events did Mr. Barnett inform all respondents' counsel that he was going to proceed by order to show cause only as to Mr. Carpenter personally and would seek a restraint on Mr. Carpenter only. This was not any part of the original draft order to show cause first tendered to respondents' counsel and was never discussed by me with anyone other than my informing Mr. Barnett before I left on September 20 that this was not anything to which I could agree.

Therefore, I do not believe that the events of September in any way impact on the propriety of my seeking an adjustment of the schedule on the order now submitted to this Court. I also do not think that I should have been drafting a response to the current proposed order before it even existed.[1]

On October 29, 2013, I am commencing a trial by jury in Supreme Court, Dutchess County. The trial date was set by the trial judge in compliance with an order of the Second Department. The case is going to trial and I represent the plaintiff.

---

[1]  Reluctantly, I must express my concern that this sudden pursuit of a remedy only as to Mr. Carpenter now when his counsel has a significant scheduling conflict creates an appearance of seeking an unfair advantage against a solo practitioner. When, in September, this proposed application involved several attorneys, work could be divided. Now Mr. Barnett is suggesting that other counsel should do my work for me.

I ask this Court to recognize my obligations to that client and to the Court before whom I will be trying that case.    Even the most cursory review of the documents supporting Mr. Barnett's proposed order demonstrates that the transactions for which he seeks relief do not involve the financial transactions of Mr. Carpenter **personally**.

Mr. Carpenter is not a judgment debtor.   While the moving papers do spend a considerable amount of energy attempting to discredit my client on matters not before this Court, there is not a single financial transaction by Mr. Carpenter as to his personal affairs that appear anywhere set forth in those papers.

Despite Mr. Barnett's repeated, unsupported, assertions, there has been no adjudication that the conveyances to which he refers were fraudulent under applicable law, or that Mr. Carpenter is the alter ego of all the transferee entities.  His attacks on Mr. Carpenter personally relate back to criminal matters for which Mr. Carpenter stands innocent before the law.

Furthermore, the movements of funds about which the moving papers do speak all occurred in 2009, 2010 and 2011.   All such transactions predate this Court's entry of a judgment. On balance, I submit that events occurring as long as four years ago do not support a restraint on Mr. Carpenter personally now.

Finally, my client remains willing to consent to a temporary restraint on his making any financial transactions in or on behalf of any of the respondent corporate entities identified in the current application as alleged recipients of the Sash Spencer insurance proceeds.

In light of that, I ask the Court to consider setting a schedule that permits me to submit papers by November 15, 2013, and for discovery to occur after November 15, 2013. If the Court is inclined to restrain Mr. Carpenter at all, I ask that it be limited to his actions as to the named corporate respondents only.

I do thank the Court for listening to my concerns.

Respectfully submitted,

Anthony J. Siano

cc:     Michael Barnett, Esq. (by facsimile and e-mail)