**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

UNIVERSITAS EDUCATION, LLC,

                    Judgment Creditor,          :

                  -against-             :

NOVA GROUP, INC., as trustee, sponsor and    :
fiduciary of THE CHARTER OAK TRUST
WELFARE BENEFIT PLAN,              :

                  Judgment Debtor,              Case Nos. 11 CV 1590-LTS-HBP and
                                                11-8726-LTS

                  -and-

Daniel E. Carpenter, Charter Oak Trust Welfare
Benefit Plan, Grist Mill Capital, LLC, Grist Mill
Holdings, LLC, the Grist Mill Trust Welfare
Benefit Plan, Avon Capital, LLC, Hanover Trust
Company, Carpenter Financial Group and Phoenix
Capital Management, LLC,

                  Respondents.
------------------------------------------------------------------X

**UNIVERSITAS EDUCATION, LLC'S MEMORANDUM OF LAW IN SUPPORT**
**OF ITS MOTION FOR A PRELIMINARY INJUNCTION, PERMANENT**
**INJUNCTION AND TURNOVER**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ...................................................................................................ii

I.     PRELIMINARY STATEMENT ................................................................................ 1

II.    STATEMENT OF FACTS ......................................................................................... 6

       a.     Background ..................................................................................................... 6

       b.     Transfer of trust funds to entities controlled by Mr. Carpenter ........................... 10

       c.     Nova efforts to transfer insurance policies to Grist Mill Capital following the
              entry of judgment ....................................................................................... 14

       d.     Nova assets subject to other litigation .............................................................. 15

III.   ARGUMENT .......................................................................................................... 15

       a.     Applicable background law ............................................................................. 15

       b.     Charter Oak Trust assets held by Mr. Carpenter's entities and Mr. Carpenter
              should be turned over to Universitas ................................................................ 17

       c.     This Court should permanently enjoin Respondents from further transfers of
              assets ........................................................................................................... 22

       d.     This Court should preliminarily enjoin Mr. Carpenter from further money
              transfers of assets of any kind ....................................................................... 25

       e.     Any payments related to the policies subject to the Connecticut litigation should
              be paid over to Universitas ............................................................................ 27

IV.    CONCLUSION ....................................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

325 Bleecker, Inc. v. Local Union No. 747, United Bhd. of Carpenters & Joiners of Am.,
500 F. Supp. 2d 110 (N.D.N.Y. 2007) ..............................................................23-24

Bergesen d.y. v. Lindholm,
760 F. Supp. 976 (D. Conn. 1991) ...................................................................... 22

Cartier v. Symbolix, Inc.,
454 F. Supp. 2d 175 (S.D.N.Y. 2006)................................................................. 23

Cordius Trust v. Kummerfeld,
153 F. App'x 761 (2d Cir. 2005) .................................................................. 16, 22

D. Klein & Son, Inc. v. Good Decision, Inc.,
147 F. App'x 195 (2d Cir. 2005) ........................................................................ 17

Fannie Mae v. Olympia Mortg. Corp.,
Case No. 04-4971-NG, 2006 U.S. Dist. LEXIS 70175 (E.D.N.Y. Sept. 28, 2006)................ 19

Iantosca v. Step Plan Servs.,
604 F.3d 24 (1st Cir. 2010).......................................................................... 8, 21

Jones v. Dana,
06 Civ. 0159-RPP, 2006 U.S. Dist. LEXIS 25293 (S.D.N.Y. May 3, 2006).......................... 24

JW Oilfield Equip., LLC v. Commerzbank, AG,
764 F. Supp. 2d 587 (S.D.N.Y. 2011)................................................................. 16

Miramax Film Corp. v. Abraham,
Case No. 01-5202-GBD, 2003 U.S. Dist. LEXIS 21346 (S.D.N.Y. Nov. 24, 2003) ............ 17

Northern Mariana Islands v. Millard,
845 F. Supp. 2d 579 (S.D.N.Y. 2012)................................................................. 16

Ognibene v. Parkes,
671 F.3d 174 (2d Cir. 2011)..........................................................................22-23

Salinger v. Colting,
607 F.3d 68 (2d Cir. 2010)............................................................................. 26

SEC v. Colonial Inv. Mgmt. LLC,
No. 07 Civ. 8849, 2010 U.S. Dist. LEXIS 108063 (S.D.N.Y. Oct. 6, 2010)........................ 16

<u>SEC v. Softpoint, Inc.</u>,
   Case No. 95-2951, 2012 U.S. Dist. LEXIS 187142 (S.D.N.Y. May 8, 2012) ....................... 17

<u>Skiff-Murray v. Murray</u>,
   17 A.D.3d 807 (3d Dep't 2005) .................................................................................. 10, 19

<u>United States SBA v. Haukedahl Found.</u>,
   Case No. 04-1744-JSR, 2004 U.S. Dist. LEXIS 9654 (S.D.N.Y. May 27, 2004) ................. 27

<u>United States v. Evseroff</u>,
   270 F. App'x 75 (2d Cir. 2008) ................................................................................... 18, 20

**Statutes**

N.Y. C.P.L.R. § 302(a)(3)(ii) ........................................................................................... 17

N.Y. C.P.L.R. § 5222 ........................................................................................................ 25

N.Y. Debt. & Cred. Law § 275 ......................................................................................... 17

N.Y. Debt. & Cred. Law § 276 ................................................................................... 18, 20

**Other Authorities**

Fed. R. Civ. P. 65 and 69 .................................................................................................. 25

Fed. R. Civ. P. 69(a)(1) ..................................................................................................... 16

Universitas Education, LLC ("Universitas"), by its counsel Loeb & Loeb LLP, respectfully submits this memorandum of law in support of its motion, brought pursuant to Fed. R. Civ. Pro. 69(a)(1) and N.Y. CPLR § 5225(b), seeking the turnover of fraudulently conveyed monies and assets belonging to Judgment Debtor Nova Group, Inc.

This motion is brought against Daniel E. Carpenter and the following entities – Nova Group, Inc. ("Nova"), the Charter Oak Trust Welfare Benefit Plan (the "Charter Oak Trust" and "Charter Oak Trust 2009"), Grist Mill Capital, LLC ("Grist Mill Capital"), Grist Mill Holdings, LLC ("Grist Mill Holdings"), the Grist Mill Trust Welfare Benefit Plan ("Grist Mill Trust"), Avon Capital, LLC ("Avon Capital"), Hanover Trust Company ("Hanover"), Carpenter Financial Group ("Carpenter Financial") and Phoenix Capital Management, LLC ("Phoenix Capital") (collectively the "Respondents").  In addition, Universitas requests that the Court make the turnover Order applicable to all subsequent transferees of the Respondents that are controlled, directly or indirectly, by Mr. Carpenter.  The October 9, 2013 Declaration of Michael Barnett ("10/9/13 Barnett Decl."), with Exhibits 1-53, supports this motion.

## I.    PRELIMINARY STATEMENT

This is a proceeding brought to enforce a judgment entered by this Court on June 7, 2012 in favor of Universitas and against Judgment Debtor Nova in the amount of $30,181,880 (dkt. no. 41).[1]

For more than two and a half years, Nova's principals have defied the January 2011 Arbitration Award (confirmed to judgment in June 2012) that requires Nova to deposit the Award amount into the escrow account of one of its law firms.  3/15/11 Universitas Petition to

---

[1] Unless otherwise stated, all references to docket entries are for those in Case No. 11-1590-LTS-HBP.

Confirm Arbitration Award, Ex. 14 at 13 (dkt. no. 6).  This Court has now ordered Nova to deposit the judgment amount with the Court by October 4 as a sanction for Nova's litigation tactics – an Order that Nova has failed to comply with.  See Dkt. No. 295; 10/9/13 Barnett Decl., Exhibit 53.

Universitas brings a turnover motion and motion for permanent injunction against all of the Respondents; and, in addition, seeks a preliminary injunction against Daniel E. Carpenter, who misappropriated more than $30 million in trust funds meant for Universitas.  In doing so, Mr. Carpenter purported to act through numerous companies, corporations and trusts, all of which he controls, and all of which primarily exist for the perpetuation of Mr. Carpenter's long-running shell game.  Mr. Carpenter is a suspended attorney who has twice been found guilty of multiple counts of mail and wire fraud (both times the trial judge overturned the verdicts).  He has a well-documented history of hiding behind sham entities.

Universitas is proceeding by Order to Show Cause against Mr. Carpenter, against whom it seeks a preliminary injunction, a permanent injunction, and turnover Order.  Universitas is proceeding by Notice of Motion against the remaining Respondents, against which it seeks permanent, but not preliminary, injunctions, and turnover Orders.

Universitas is the beneficiary of the Charter Oak Trust in relation to two life insurance policies placed into the Trust by the late Sash A. Spencer, formerly CEO of Holding Capital Group, Inc. ("Holding Capital"), who died in June 2008.  10/9/13 Barnett Decl., ¶34.  In May 2009, Lincoln National Life Insurance Company ("Lincoln Life"), the issuer of the two Spencer life insurance policies, paid Wayne H. Bursey, the President of Nova and a purported Trustee of the Charter Oak Trust, more than $30 million so that the Charter Oak Trust could pay Universitas.  Id., ¶36, Exs. 12 and 16.

2

But once Mr. Bursey had the money from Lincoln Life, he and other individuals, especially Mr. Carpenter – who at the time was awaiting sentencing after being found guilty on federal fraud charges –  improperly transferred it to entities in Mr. Carpenter's control.  The transfers of this money, from the Charter Oak Trust to entities that Mr. Carpenter controls, were made without consideration, and have no valid basis, particularly since Mr. Bursey and Mr. Carpenter were supposed to be holding this money in trust for Universitas and instead orchestrated all of the subject transfers across numerous entities.

Despite Mr. Carpenter's creation of the Charter Oak Trust for the ostensible sole purpose of providing death benefits to the designated beneficiaries of high-level business executives, the truth is that no one besides Mr. Carpenter and his affiliates has benefitted from the Charter Oak Trust.

This fact is evident from this turnover motion, in which the key issue is where the Lincoln Life money went after Mr. Bursey deposited it into an account standing in the Charter Oak Trust's name.  Documents produced by third parties (namely, TD Bank) indicate that within 6 months of the May 2009 payment by Lincoln Life to the Charter Oak Trust, Nova Chairman Mr. Carpenter and Nova President Mr. Bursey transferred almost all of Universitas' money to entities entirely in Mr. Carpenter's control.  See 10/9/13 Barnett Decl., ¶¶42-64.  All of these entities share the same business address as Nova (100 Grist Mill Road in Simsbury, Connecticut).  Id., ¶¶44-45, Exs. 24-25, 30, 36, 38, 41, 48.  The TD Bank accounts of these entities all have Mr. Carpenter as a signatory, and were opened soon after Lincoln Life's payment of $30.7 million to the Charter Oak Trust for Universitas' benefit.  Id.  Indeed, in testimony given in this action, Mr. Carpenter has admitted to being the only person affiliated with most of these entities; he even referred to one of them as his "alter ego."  Id., ¶72.

3

Just last week, Nova's counsel, responding to the Court's Order that Nova deposit the judgment amount into the Court no later than October 4, claimed that neither Nova nor the Charter Oak Trust had the assets necessary to comply with the Order; and that the Carpenter-controlled entities to which Mr. Carpenter transferred Universitas' money in 2009 no longer have the money.  10/9/13 Barnett Decl., Ex. 53 ("Such cash and assets are no longer under the control of the judgment debtor or of the transferee entities").  These disclosures reinforce Mr. Carpenter's liability as an alter ego of the transferee entities and the necessity of a preliminary injunction enjoining the transfer of all assets controlled directly or indirectly by Mr. Carpenter, through a shell entity or otherwise.

By this motion, Universitas requests an Order directing the Respondents to each pay (and/or transfer) to Universitas money and/or assets that were improperly transferred to them from Nova/the Charter Oak Trust.  For the reasons set forth below, Universitas requests that the Respondents be ordered to turn over monies or other assets in the following amounts[2]:

- Grist Mill Capital – $31,263,842.75

- Daniel E. Carpenter – $26,776,834.94[3]

- Grist Mill Holdings – $21,000,000.00

- Carpenter Financial – $11,140,000.00

- Avon Capital – $6,710,065.92

---

[2] The total amount actually turned over would of course be limited to Universitas' judgment amount.

[3] The amount sought from Mr. Carpenter is the total amount siphoned from Nova as Trustee of the Charter Oak Trust ($31,263,842.75), less the amount of this money that was improperly transferred to the Grist Mill Trust ($4,487,007.81).  Universitas does not at this time claim that Mr. Carpenter is an alter ego of the Grist Mill Trust, although the transfers of Charter Oak Trust funds to Grist Mill Trust were improper and should result in a turnover Order against the Grist Mill Trust in the amount of $4,487,007.81.

4

- Phoenix – $5,000,000.00

- Grist Mill Trust – $4,487,007.81

- Hanover – $1,200,000.00

Universitas also seeks a preliminary injunction against Mr. Carpenter, enjoining him from, directly or indirectly, causing, making, permitting or suffering any sale, assignment or transfer of, or any interference with, any asset or property of his, and any asset or property of any company, corporation or entity (including any trusts) in which he has a direct or indirect interest or control; provided that Mr. Carpenter be permitted to expend and/or transfer up to $20,000.00 per month for ordinary expenses of his or one of his entities, with any such payments or transfers to be reported, in writing, with supporting documentation, to Universitas' counsel within seven (7) days of such payment/transfer being made.

Additionally, Universitas seeks a permanent injunction prohibiting further transfers of assets of the Respondents – including any asset or property of Mr. Carpenter's, and any asset or property of any company, corporation or entity (including any trusts) in which he has a direct or indirect interest or control – until Universitas' judgment is satisfied in full.  These assets include the following life insurance policies owned or held by the Charter Oak Trust (identifiable by insured last name, insurance carrier and policy number):

- Collins – PHL Variable Insurance Policy No. 975 279 51

- Paulsrud – PHL Variable Insurance Policy No. 975 294 11

- Robertson – PHL Variable Insurance Policy No. 975 295 60

- Zahner – PHL Variable Insurance Policy No. 975 293 42

- Bolton – Lincoln Life Policy No. JJ7121879

- Clinard – Lincoln Life Policy No. JJ7105688

- Lowry – Lincoln Life Policy No. JJ7130995

- Nordin – Lincoln Life Policy No. JJ7075457

The Charter Oak Trust owns (or once owned) policies insuring the lives of several hundred individuals.  These policies are assets of the Charter Oak Trust that can be used to satisfy Universitas' judgment against Nova.  Universitas therefore also seeks an Order directing the retitling of any insurance policies that were previously held by the Charter Oak Trust but improperly transferred to Mr. Carpenter or one of his entities.  One such policy is a policy issued by Sun Life Financial insuring the life of a woman with the last name Amsterdam (Policy Number 020158601).

Finally, as discussed below, there are four (4) Charter Oak Trust policies that were issued by PHL Variable Insurance Company ("PHL") and are the subject of litigation between the Charter Oak Trust and PHL.  Universitas seeks an Order directing that Universitas directly receive any monies or assets that PHL may pay to the Charter Oak Trust, or that the Charter Oak Trust or any of its affiliates receive, in respect of these 4 policies.

## II.    STATEMENT OF FACTS

### *a.    Background*

Nova Chairman Daniel Edgar Carpenter, of West Simsbury, Connecticut, is a suspended attorney who has twice been found guilty of mail and wire fraud for misappropriating money belonging to his clients. He has twice successfully petitioned the District of Massachusetts judge in his case to overturn the guilty verdicts.  (The government is presently appealing the overturning of the second guilty verdict to the First Circuit, with the appeal scheduled for oral argument on November 7.)  10/9/13 Barnett Decl., ¶¶21-22, Ex. 7.

Separately, Mr. Carpenter is a target of a federal grand jury investigation in Connecticut,

6

arising from the activities of the Charter Oak Trust.  10/9/13 Barnett Decl. ¶23, Ex. 8.  Although

Mr. Carpenter in this action once asserted the Fifth Amendment in response to questions about

the Charter Oak Trust, Nova and Grist Mill Capital (10/9/13 Barnett Decl., ¶72), he has also

subsequently given substantive testimony and has acknowledged  controlling most of the entities

to which Universitas' money was ultimately transferred, going so far as to call one of them, Grist

Mill Holdings, his "alter ego."  10/9/13 Barnett Decl., ¶72, Ex. 47 (April 17 Tr. at 47:15-18).

Mr. Carpenter has also admitted to "easily" setting up at least 200 bank accounts over the last

few years.  Id., Ex. 47 (April 17 Tr. at 23:13-16).  He has formed, or arranged for the formation

of, scores if not hundreds of entities.  Id., ¶29.

        Mr. Carpenter has operated like this for quite some time.  After his first guilty verdict on

multiple mail and wire fraud counts in the District of Massachusetts, in 2005, the U.S. Probation

Office submitted a sentencing memorandum accusing Mr. Carpenter of falsely claiming a net

worth of $129,000, and taking improper measures to evade the enforcement of civil judgments

against him and his companies:

> When in April, 2004, the plaintiffs [in another case] finally located and obtained a
> writ of execution against property held by Carpenter in Florida, Carpenter
> promptly conveyed the land to his sister for $0, following which she proceeded to
> encumber it with mortgages held by various Carpenter-controlled businesses,
> presumably in an effort to so dissipate the value that the plaintiffs would
> effectively recover nothing.

10/9/13 Barnett Decl., ¶28, Ex. 9.  Mr. Carpenter has readily acknowledged doing something

similar in this case, arranging for one of his companies, Moonstone Partners, LLC, to give a

mortgage on property it owned to another one of his companies, Hanover, 15 months after the

property was purchased.  Id., ¶72, Ex. 47.  See also Iantosca v. Step Plan Servs., 604 F.3d 24, 27-

28 (1st Cir. 2010) (noting that in 2003, a Massachusetts state court found five entities to be alter

egos of Mr. Carpenter).

Mr. Carpenter is an incorrigible evader of judgments who will likely succeed in his efforts to further victimize Universitas unless the Court enters a turnover Order against him and any entity he directly or indirectly controls.  He is already the subject of a July 12, 2013 report by Magistrate Judge Pitman recommending contempt for his failure to comply with a post-judgment discovery Order (dkt. no. 278).

Universitas is the sole, irrevocable beneficiary of proceeds payable under two Lincoln Life policies totaling $30 million.  10/9/13 Barnett Decl., ¶34; 6/5/12 Court Order at 1-2 (dkt. no. 40).  These policies insured the life of Sash A. Spencer, who placed the policies into the Charter Oak Trust and named Universitas his irrevocable beneficiary under the Trust.  Id. (As will be discussed, the Charter Oak Trust also owns policies that insure the lives of other individuals.)

Nova is the corporate trustee and fiduciary of the Charter Oak Trust.  6/5/12 Court Order at 1.  As Mr. Carpenter recently acknowledged, Nova is a shell corporation. 10/9/13 Barnett Decl., ¶72, Ex. 47.  Mr. Carpenter is Nova's Chairman.  Id., Ex. 14.  Mr. Bursey, who is married to Ms. Carpenter's sister, is Nova's President.  Id., Ex. 13.  See also Id., Ex. 15 (July 12, 2013 Report and Recommendation, issued by Magistrate Judge Pitman, finding Mr. Bursey and Mr. Carpenter to both be officers and/or managers of Nova and recommending that they be held in contempt for Nova's violation of a Court Order on discovery).

In May 2009, following Mr. Spencer's death in June 2008, Lincoln Life paid more than $30 million (including interest on the Spencer policy proceeds) to Mr. Bursey in Mr. Bursey's capacity as Nova President and Trustee of the Charter Oak Trust.  10/9/13 Barnett Decl., ¶36; 6/5/12 Court Order at 2.  Yet following Lincoln Life's payment, Nova refused to pay any part of the trust funds to Universitas.  6/5/12 Court Order at 2.

By Arbitration Award dated January 24, 2011, Arbitrator Peter L. Altieri, Esq. found that Nova breached its fiduciary duties to Universitas, and held Nova liable to Universitas for a total of $26,525,535.88.  6/5/12 Court Order at 2.  The Award required Nova to deposit this amount in the escrow account of its then-lead law firm, Updike Kelly & Spellacy, P.C.; Nova failed to do so. 10/9/13 Barnett Decl., ¶39.

This Court confirmed the Arbitration Award on June 5, 2012 (dkt. no. 40), awarding Universitas pre-judgment interest at an annual rate of ten percent (10%) and entering judgment on June 7 for Universitas in the amount of $30,181,880.30 (dkt. no. 41).  On October 5, 2012, this Court granted Universitas an additional $268,810.01 in attorneys' fees (dkt. no. 162).

To date, Nova has not paid any money it owes on the judgment, even though, as this Court has found, "there is no question" that the trust funds, totaling about $30.7 million, "previously were in Nova Group's possession."  11/21/12 Order at 1-2 (dkt. no. 176).  In addition, as will be discussed, Nova, the Charter Oak Trust and Grist Mill Capital have violated the post-judgment Restraining Notices served upon them by, among other things, attempting to arrange for Nova/Charter Oak Trust assets to be transferred to Grist Mill Capital, a company that Mr. Carpenter controls.  See 10/9/13 Barnett Decl., Exs. 1-2 (copies of Restraining Notices).

As Magistrate Judge Pitman has noted, Nova has "resisted all efforts" to enforce Universitas' judgment in this action, and Nova's principals and attorneys have improperly threatened third parties from which Universitas has sought discovery.  11/21/12 Order at 1-2, 8 (dkt. no. 176).  Mr. Carpenter, for one, wrote  a letter to TD Bank on Sept. 28, 2012, claiming that the bank would be committing a crime if it responded to Universitas' subpoena, which sought information about Grist Mill Capital.  10/9/13 Barnett Decl., Ex. 44.  In addition, Mr. Carpenter has freely admitted to arranging for the transfer of millions of dollars out of the

Charter Oak Trust to Grist Mill Capital, an entity he controls, and arranging for a "mortgage" between two other companies he controls – a transaction that is fraudulent as a matter of law. 10/9/13 Barnett Decl., ¶72, Ex. 47. <u>See</u>, <u>e.g.</u>, <u>Skiff-Murray v. Murray</u>, 17 A.D.3d 807, 808-09 (3d Dep't 2005) (noting that mortgage is void where mortgagee and/or mortgagor knew of prior fraudulent conveyance).

### b.    *Transfer of trust funds to entities controlled by Mr. Carpenter*

Documents produced by TD Bank establish that Mr. Bursey, the President of Nova, initially deposited the $30.7 million into a TD Bank account standing in the name of the Charter Oak Trust (Account No. 424 277 4548); the deposit occurred on or about May 18, 2009.  10/9/13 Barnett Decl., ¶42, Ex. 17.  Mr. Bursey was the only signatory on this account standing in the Charter Oak Trust's name.  <u>Id</u>.

Although Mr. Bursey was the only signatory on the Charter Oak Trust account, Mr. Carpenter either arranged for that account to be opened at TD Bank, or asked Mr. Bursey to open it.  This fact is established by, among other things, e-mails exchanged in May 2009 between Mr. Carpenter and an official at Bank of America, in which Mr. Carpenter withdrew his request to open a Charter Oak Trust account at Bank of America after a Bank of America official requested various information from Mr. Carpenter about the inter-relationships of his numerous companies. <u>See</u> 10/9/13 Barnett Decl., ¶43, Ex. 18.

Within 6 months of the May 2009 deposit at TD Bank of the $30 million paid by Lincoln Life, Mr. Carpenter transferred all of Universitas' money to TD Bank accounts standing in the names of entities in Mr. Carpenter's control, including Grist Mill Capital, Grist Mill Holdings, Hanover, Carpenter Financial, and Phoenix Capital.  10/9/13 Barnett Decl., ¶¶44, 48-65.  These other entities share the same business address as Nova (100 Grist Mill Road in Simsbury, Connecticut).  <u>Id</u>., ¶¶44-45, Exs. 24-25, 30, 36, 38, 41, 48.  The opening of these myriad accounts

in the names of different shell companies (all of which Mr. Carpenter controls) allowed Mr.

Carpenter to widely disperse Universitas' money after Mr. Carpenter received that money from

Mr. Bursey.  During a deposition in this action on April 17, 2013 Mr. Carpenter gave testimony

that establishes his control of the following entities:

- Carpenter Financial, of which Mr. Carpenter is the only officer and director;

- Grist Mill Holdings, which Mr. Carpenter described as his "alter ego";

- Grist Mill Capital, whose sole members are Grist Mill Holdings and Caroline Financial, both of which Mr. Carpenter controls;

- Hanover, of which Mr. Carpenter is the sole officer/director; and

- Phoenix, of which Mr. Carpenter is the sole officer/director.

10/9/13 Barnett Decl., ¶72, Ex. 47.  Additionally, Mr. Carpenter controls Respondent Avon

Capital through his ownership and control of Grist Mill Capital; and Mr. Carpenter, his wife

Molly Carpenter and Mr. Bursey are trustees of the Grist Mill Trust.  Id., ¶¶73-75, Exs. 36, 48-

49.

The key transactions, which collectively involved the transfer of Universitas' money

from the Charter Oak Trust to companies controlled by Mr. Carpenter, were as follows[4]:

| Date | Transferor | Transferee | Amount | Citation to Declaration and Exhibit(s) |
|---|---|---|---|---|
| May 21, 2009 | Charter Oak Trust (TD Bank Account No. 424 277 4548) | Grist Mill Capital (TD Bank Account No. 424 277 4712) | $8,677,276.75 | 10/9/13 Barnett Decl.,¶48, Ex. 21 |

---

[4] These transfers add up to more than $30.7 million because Mr. Carpenter dispersed Universitas' money among his entities and then made multiple transfers of this money in various increments.

11

| Date | Transferor | Transferee | Amount | Citation to Declaration and Exhibit(s) |
|------|-----------|-----------|--------|-----------------------------------------|
| May 22, 2009 | Grist Mill Capital (TD Bank Account No. 424 277 4712) | Grist Mill Holdings (TD Bank Account No. 424 261 7136) | $2,100,000.00 | 10/9/13 Barnett Decl., ¶51, Ex. 25 |
| May 26, 2009 | Charter Oak Trust (TD Bank Account No. 424 277 4548) | Grist Mill Capital (TD Bank Account No. 424 277 4712) | $2,186,566.00 | 10/9/13 Barnett Decl., ¶49, Ex. 22 |
| June 9, 2009 | Grist Mill Capital (TD Bank Account No. 424 277 4712) | Grist Mill Trust (JP Morgan Account No. 904 393 305) | $2,833,568.64 | 10/9/13 Barnett Decl., ¶52, Ex. 27 |
| June 9, 2009 | Grist Mill Capital (TD Bank Account No. 424 277 4712) | Grist Mill Trust (JP Morgan Account No. 904 393 305) | $965,314.17 | 10/9/13 Barnett Decl., ¶53, Ex. 28 |
| July 15, 2009 | Grist Mill Holdings (TD Bank Account No. 424 261 7136) | Hanover (TD Bank Account No. 4725 632 940) | $1,200,000.00 | 10/9/13 Barnett Decl., ¶55, Ex. 29 |
| October 27, 2009 | Charter Oak Trust (TD Bank Account No. 424 277 4548) | Grist Mill Capital (TD Bank Account No. 424 277 4712) | $19,800,000.00 | 10/9/13 Barnett Decl., ¶56, Ex. 31 |
| October 28, 2009 | Grist Mill Capital (TD Bank Account No. 424 277 4712) | Grist Mill Holdings (TD Bank Account No. 424 261 7136) | $19,000,000.00 | 10/9/13 Barnett Decl., ¶58, Ex. 34 |
| November 12, 2009 | Grist Mill Capital (TD Bank Account No. 424 277 4712) | Avon Capital (TD Bank Account No. 424 277 4689) | $6,710,065.92 | 10/9/13 Barnett Decl., ¶59, Ex. 35 |

| Date | Transferor | Transferee | Amount | Citation to Declaration and Exhibit(s) |
|---|---|---|---|---|
| November 12, 2009 | Grist Mill Holdings (TD Bank Account No. 424 261 7136) | Carpenter Financial (TD Bank Account No. 424 277 4697) | $4,140,000.00 | 10/9/13 Barnett Decl., ¶60, Ex. 37 |
| December 3, 2009 | Grist Mill Holdings (TD Bank Account No. 424 261 7136) | Carpenter Financial (TD Bank Account No. 424 277 4697) | $7,000,000.00 | 10/9/13 Barnett Decl.,¶61, Ex. 39 |
| December 3, 2009 | Carpenter Financial (TD Bank Account No. 424 277 4697) | Phoenix Capital (TD Bank Account No. 424 277 4671) | $5,000,000.00 | 10/9/13 Barnett Decl.,¶62, Ex. 40 |
| December 3, 2009 | Grist Mill Capital (TD Bank Account No. 424 277 4712) | Grist Mill Trust (JP Morgan Account No. 904 028 488) | $510,000.00 | 10/9/13 Barnett Decl.,¶63, Ex. 42 |
| December 3, 2009 | Grist Mill Capital (TD Bank Account No. 424 277 4712) | Grist Mill Trust (JP Morgan Account No. 904 952 088) | $178,125.00 | 10/9/13 Barnett Decl., ¶64, Ex. 43 |

And in other instances, Mr. Carpenter arranged for monies belonging to the Charter Oak Trust to bypass the Charter Oak Trust entirely. For instance, in June 2011, the Charter Oak Trust settled a lawsuit that the Penn Mutual Life Insurance Company ("Penn Mutual") brought against it to rescind a life insurance policy. As part of the settlement, Penn Mutual agreed to pay $600,000 in connection with settling its action against the Charter Oak Trust. However, when Penn Mutual issued the $600,000 check, Mr. Carpenter arranged for that check to be made out to his company Grist Mill Capital, even though Grist Mill Capital was not a party to the litigation being settled. 10/9/13 Barnett Decl., ¶78, Exs. 51-52.

Mr. Bursey and Mr. Carpenter made these transfers of Universitas' money, even though they, as Nova's President and Nova's Chairman, respectively, were supposed to be holding this money in trust for Universitas.  By this motion, Universitas seeks a return of the funds that Mr. Bursey and Mr. Carpenter improperly diverted from Nova and the Charter Oak Trust.

       *c.*      ***Nova efforts to transfer insurance policies to Grist Mill Capital following the entry of judgment***

In recent months, following Universitas' effort to cause the turnover of insurance monies payable for damage to a Rhode Island home that was purchased with Universitas' money (see dkt. no. 219), Nova's principals, at Mr. Carpenter's direction, have attempted to transfer to Grist Mill Capital (a company controlled by Mr. Carpenter) insurance policies that are owned by the Charter Oak Trust and, as Trust assets, could be used to satisfy Universitas' judgment against Nova.

For instance, on March 29, 2013, several weeks after this Court issued an Order to Show Cause on Universitas' turnover motion, a Nova representative wrote to Sun Life Financial seeking to change the owner and beneficiary of a Sun Life policy (insuring the life of a woman with the last name Amsterdam), from the Charter Oak Trust to Grist Mill Capital.  10/9/13 Barnett Decl., ¶17, Ex. 3.

On May 16, 2013, a week after the Court held the first day of hearings on Universitas' turnover motion with respect to the Rhode Island property insurance proceeds, Mr. Bursey wrote to Lincoln Life seeking to change the owner and beneficiaries of four Lincoln Life policies, from the Charter Oak Trust to Grist Mill Capital.  10/9/13 Barnett Decl. at ¶18, Ex. 4.  Mr. Bursey was purporting to act on behalf of Nova and the Charter Oak Trust even though Nova had previously represented that Mr. Bursey had resigned his position with Nova and the Charter Oak Trust.  Id., Ex. 5.  Mr. Bursey, although subpoenaed by Universitas to testify at the May 9 hearing, was

permitted to appear by letter sent by his attorney, and asserted his Fifth Amendment right against self-incrimination with regard to all matters pertaining to Nova, the Charter Oak Trust, Grist Mill Capital and the Grist Mill Trust.[5]  Id., Ex. 6.

d.      **Nova assets subject to other litigation**

In addition to the assets identified above that Nova has attempted to transfer to Grist Mill Capital, there are four life insurance policies that are the subject of litigation in Connecticut state court.  These policies are owned by the Charter Oak Trust, issued by PHL Variable Insurance Company and are identifiable by the following insured last name and policy number:

- Collins – Policy No. 975 279 51

- Paulsrud – Policy No. 975 294 11

- Robertson – Policy No. 975 295 60

- Zahner – Policy No. 975 293 42

10/9/13 Barnett Decl., ¶9.  As part of this turnover motion, Universitas seeks an injunction prohibiting Respondents from transferring the Charter Oak Trust's ownership or beneficial interest in these policies.  In addition, any proceeds or payments related to these policies should be turned over directly to Universitas.

## III.    ARGUMENT

a.      **Applicable background law**

A judgment creditor with a federal judgment may bring a proceeding in federal court under N.Y. CPLR § 5225(b) by motion and need not institute a separate plenary action. The Federal Rules of Civil Procedure provide that "[t]he procedure on execution – and in proceedings

---

[5] Based on the July 30, 2013 letter from Lincoln Life to Mr. Bursey (see 10/9/13 Barnett Decl., Ex. 4), we believe that Mr. Bursey was unsuccessful in his attempt to effect a transfer of the policies to Grist Mill Capital.

15

supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located. . . ."  Fed. R. Civ. P. 69(a)(1).

Section 5225(b) of the N.Y. CPLR says in pertinent part:

> Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest…the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor….

A special proceeding in New York state court is akin to a motion in federal court.  JW Oilfield Equip., LLC v. Commerzbank, AG, 764 F. Supp. 2d 587, 591 (S.D.N.Y. 2011) ("Like an action, it ends in a judgment, but the procedure is similar to that on a motion.  Speed, economy and efficiency are the hallmark of this procedure") (quotation omitted).  In federal court, a motion brought pursuant to Fed. R. Civ. P. 69 is a proper means by which to seek a turnover order.  See, e.g., Cordius Trust v. Kummerfeld, 153 F. App'x 761, 762 (2d Cir. 2005) ("veil-piercing actions may be initiated as supplementary special proceedings under New York Civil Practice Law and Rules (CPLR) § 5225(b), rather than as plenary actions"); Northern Mariana Islands v. Millard, 845 F. Supp. 2d 579, 581 (S.D.N.Y. 2012) ("Nearly every court in this Circuit to consider the issue has held that parties can bring a motion under FRCP 69(a), rather than instituting a special proceeding under the New York state law"); SEC v. Colonial Inv. Mgmt. LLC, No. 07 Civ. 8849, 2010 U.S. Dist. LEXIS 108063, at *6 (S.D.N.Y. Oct. 6, 2010) ("a judgment creditor proceeding under N.Y. CPLR section 5225(b) may proceed by motion, and need not institute a separate action") (citation omitted).

Personal jurisdiction exists because each of the Respondents, by engaging in the improper transfer of trust funds, has committed a tort against Universitas.  N.Y. C.P.L.R. § 302(a)(3)(ii).  Additionally, since personal jurisdiction exists over Mr. Carpenter (who has

16

appeared in this action), and all of the other Respondents are his alter egos or controlled by him,

personal jurisdiction exists over all of the Respondents.  See D. Klein & Son, Inc. v. Good

Decision, Inc., 147 F. App'x 195, 196-97 (2d Cir. 2005) (personal jurisdiction can be established

through veil-piercing); SEC v. Softpoint, Inc., Case No. 95-2951-JSR, 2012 U.S. Dist. LEXIS

187142, at *7-8 (S.D.N.Y. May 8, 2012) (in turnover action, finding personal jurisdiction over

corporate entity through reverse veil-piercing); Miramax Film Corp. v. Abraham, Case No. 01-

5202-GBD, 2003 U.S. Dist. LEXIS 21346, at *20-23 (S.D.N.Y. Nov. 24, 2003) (also applying

reverse veil-piercing to assert jurisdiction over corporate defendant).

> *b.*  ***Charter Oak Trust assets held by Mr. Carpenter's entities and Mr. Carpenter should be turned over to Universitas***

The life insurance proceeds that were paid out to the Charter Oak Trust for Universitas'

benefit are not being held in an account standing in the name of the Charter Oak Trust.  Instead,

as Universitas has shown and Nova has now admitted, these monies, totaling about $30.7

million, were transferred out of a TD Bank account standing in the Charter Oak Trust's name

and into accounts standing in the names of other entities that Mr. Carpenter controls.  These

entities include Grist Mill Capital, Grist Mill Holdings, Hanover, Avon Capital, Carpenter

Financial and Phoenix.  None of these entities has (to Universitas' knowledge) provided any

consideration or value in return for the monies it has received from Nova and the Charter Oak

Trust.  N.Y. Debt. & Cred. Law § 275 (conveyances made and obligations incurred "without

fair consideration" are fraudulent, as to both present and future creditors, "when the person

making the conveyance or entering into the obligation intends or believes that he will incur debts

beyond his ability to pay as they mature"); United States v. Evseroff, 270 F. App'x 75, 77 (2d

Cir. 2008) (noting the non-exclusive factors a District Court may consider when determining

pursuant to N.Y. Debt. & Cred. Law § 276 whether there was actual intent to defraud creditors,

17

including "the lack or inadequacy of consideration," "the family, friendship or close associate relationship between the parties," and "the general chronology of the events and transactions under inquiry").

Through three transfers, of $8,677,276.75, $2,186,566.00 and $19,800,000.00, respectively, the Charter Oak Trust transferred all of Universitas' money to Grist Mill Capital. There was no consideration for these transfers, which were carried out by Mr. Carpenter and Mr. Bursey after Mr. Bursey had repeatedly implored Lincoln Life to pay the Spencer insurance proceeds to the Charter Oak Trust so that the Charter Oak Trust could pay Universitas (see 10/9/13 Barnett Decl., Ex. 16).

Peter A. Goldman, an agent of Nova, the Charter Oak Trust and Grist Mill Capital, testified that he could not explain why the Charter Oak Trust was making separate transfers in the amounts of $8,677,276.75, $2,186,566.00 and $19,800,000.00 to Grist Mill Capital in the months following Lincoln Life's payment to the Charter Oak Trust. 10/9/13 Barnett Decl., ¶46, Ex. 19. Mr. Goldman also testified that Grist Mill Capital never loaned the Charter Oak Trust any money for the purposes of making premium payments on the Spencer policies. Id., ¶47, Ex. 20. Therefore, the monies transferred to Grist Mill Capital could not have been repayments on loans that Grist Mill Capital made to finance premium payments for the Spencer policies. And in any event, the total amount sent to Grist Mill Capital in these three transfers, $30,663,842,75, bears no relationship to the total amount of premiums paid in respect of the Spencer policies.

In briefing and testimony on a prior turnover motion, Mr. Carpenter asserted that Grist Mill Capital seized the monies paid out by Lincoln Life because Grist Mill Capital was a secured creditor of Nova/the Charter Oak Trust. But, as Universitas extensively argued on the prior turnover motion pending before the Court, (a) there is no evidence of a "default" on a "loan"

between Nova/the Charter Oak Trust and Grist Mill Capital; (b) any security interest on Charter

Oak Trust assets that benefits Grist Mill Capital is invalid as a matter of law; (c) the only loan

agreement produced by Mr. Carpenter concerns a loan, ostensibly from Grist Mill Capital, to the

Charter Oak Trust, that has been repaid; (d) any transfer from the Charter Oak Trust to Grist Mill

Capital was a fraudulent conveyance (see dkt. nos. 243, 270, 274).[6]

Since the transfers from the Charter Oak Trust to Grist Mill Capital were improper, all

subsequent transfers by Grist Mill Capital to other Carpenter entities were also improper, as

these transfers merely involved Mr. Carpenter transferring Universitas' money from one hand to

the other.  See, e.g., Skiff-Murray, 17 A.D.3d at 808-09 (a mortgage is void where mortgagee

and/or mortgagor knew of prior fraudulent conveyance); Fannie Mae v. Olympia Mortg. Corp.,

Case No. 04-4971-NG, 2006 U.S. Dist. LEXIS 70175, at *34-36 (E.D.N.Y. Sept. 28, 2006)

(fraudulent transfer claims adequately stated where subsequent transferees were closely affiliated

with the initial transferor and initial transferee).

Although all transfers by Grist Mill Capital to the other Carpenter entities were

fraudulent, the transfers by Grist Mill Capital to the Grist Mill Trust warrant additional

discussion because in numerous communications with Universitas' counsel, counsel for the Grist

Mill Trust has asserted that the transfers of $2,833,568.64 and $965,314.17, respectively, from

Grist Mill Capital to Grist Mill Trust on June 9, 2009, were loan repayments.  Exhibit 45 to the

Barnett Declaration contains materials furnished to Universitas' counsel that purport to be

documentation of two loan agreements (dated August 11, 2006 and October 1, 2007,

respectively) between Grist Mill Capital and the Grist Mill Trust.  Exhibit 45 shows that for each

---

[6] By citing these prior filings, Universitas is not attempting to incorporate them by reference.  Rather, Universitas is anticipating an argument that Respondents may make, and reserving its right to respond to this possible argument in subsequent briefing on this motion.

of the two alleged loans, Mr. Carpenter signed on behalf of Grist Mill Capital, and Mr. Bursey

signed on behalf of the Grist Mill Trust.  (Tellingly, Mr. Bursey has asserted his Fifth

Amendment right against self-incrimination in response to all questions about Nova, the Charter

Oak Trust, Grist Mill Capital and the Grist Mill Trust.  10/9/13 Barnett Decl., Ex. 6.)

       Counsel for the Grist Mill Trust has also asserted that the transfers of $510,000.00 and

$178,125.00, respectively, on December 3, 2009, were also loan repayments by Grist Mill

Capital to the Grist Mill Trust.  See 10/9/13 Barnett Decl., Ex. 46 (copies of documents,

provided by counsel for the Grist Mill Trust, purporting to be documentation of loans).

       With respect to the June and December 2009 transfers of Universitas' money (totaling

$4,487,007.81, the amount that Grist Mill Trust should turn over), these transfers were fraudulent

and have no valid basis, since they were made by Mr. Bursey and Mr. Carpenter, who were the

people who made the initial transfers from the Charter Oak Trust to Grist Mill Capital, and who

knew that the money being transferred by Grist Mill Capital to the Grist Mill Trust should have

stayed in the Charter Oak Trust for Universitas' benefit.  See Evereroff, 270 F. App'x at 77

(noting the non-exclusive factors a District Court may consider when determining pursuant to

N.Y. Debt. & Cred. Law § 276 whether there was actual intent to defraud creditors, including

"the lack or inadequacy of consideration," "the family, friendship or close associate relationship

between the parties," and "the general chronology of the events and transactions under inquiry").

       Even if the Grist Mill Trust did loan money to Grist Mill Capital, and Grist Mill Capital

was (via the June 9, 2009 and December 3, 2009 transfers) repaying the Grist Mill Trust, the

assumed fact of a valid loan does not make the transfers any less fraudulent, where Mr. Bursey

and Mr. Carpenter knew they were using Universitas' money to repay the Grist Mill Trust.  The

downstream use of Universitas' money – to repay loans that the Grist Mill Trust allegedly made

to Grist Mill Capital – does not change the conclusion that Universitas' money was improperly transferred out of the possession of Nova and the Charter Oak Trust. The Grist Mill Trust, as a subsequent transferee of the Charter Oak Trust, received Universitas' money in bad faith and with knowledge of its origin as Nova/Charter Oak Trust funds payable to Universitas.

Accordingly, the Grist Mill Trust's receipt of Nova/Charter Oak Trust monies was fraudulent, and the Court should order it and the other Respondents to turn over all improperly transferred monies to Universitas as a judgment creditor of Nova.

Mr. Carpenter, moreover, dominates the Respondent entities[7] to the point where there should be no legal distinction made between him and them.  Indeed, Mr. Carpenter has been previously adjudicated an alter ego of at least five other companies (see Iantosca, 604 F.3d at 27-28), has admitted that Nova is a "shell corp.," has admitted that Grist Mill Holdings is his "alter ego," and has admitted to controlling Grist Mill Capital through two other companies he dominates.  10/9/13 Barnett Decl., ¶72, Ex. 47.  And Mr. Carpenter is the only officer/director of Carpenter Financial Group, Hanover and Phoenix, all of which received transfers from Grist Mill Capital.  Id.  To reiterate, these transfers were essentially Mr. Carpenter transferring money from his left hand to his right hand, and back again.  Indeed, in a recent letter to the Court, Nova's attorney Ira Kleiman discussed how Universitas' money was transferred first to Grist Mill Capital, and then to Grist Mill Holdings, Avon Capital, Carpenter Financial Group, Phoenix Capital and the Grist Mill Trust.  10/9/13 Barnett Decl., Ex. 53.  Mr. Kleiman represented to the Court that "Mr. Carpenter is not in control of at least one of these entities," and then only discussed how Mr. Carpenter does not control the Grist Mill Trust.  Id.  The upshot is that Mr.

---

[7] Universitas does not at this time claim that the Grist Mill Trust is an alter ego of Mr. Carpenter, although the transfers of Charter Oak Trust funds to Grist Mill Trust were improper and should result in a turnover Order against the Grist Mill Trust in the amount of $4,487,007.81.

Carpenter is an alter ego of all of the entities mentioned by Mr. Kleiman, except for the Grist

Mill Trust (which Mr. Carpenter nonetheless controls, as a Trustee, along with his wife and Mr.

Bursey).

Whether adjudged under New York or Connecticut law, Grist Mill Capital, Grist Mill

Holdings, Avon, Hanover, Carpenter Financial and Phoenix are Mr. Carpenter's alter egos, such

that this Court should pierce the corporate veil of each of them, and order Mr. Carpenter to turn

over $26,776,834.94 that he improperly transferred, or arranged to be transferred, out of the

possession of Nova and the Charter Oak Trust.  Cordius Trust, 153 F. App'x at 763 (piercing the

corporate veil under New York law "generally requires a showing that: '(1) the owners exercised

complete domination of the corporation in respect to the transaction attacked; and (2) that such

domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's

injury'" (quoting Morris v. N.Y. State Dep't of Taxation & Fin., 82 N.Y.2d 135, 141 (1993));

Bergesen d.y. v. Lindholm, 760 F. Supp. 976 (D. Conn. 1991) (discussing the two paths for alter

ego liability in Connecticut, the "instrumentality rule" and "identity rule").

Accordingly, the entities' direct and indirect receipt of Nova/Charter Oak Trust monies,

as orchestrated by Mr. Carpenter and his cohort, was fraudulent, and the Court should order these

entities and Mr. Carpenter to turn over these monies to Universitas as a judgment creditor of

Nova.

      *c.*     ***This Court should permanently enjoin Respondents from further transfers of assets***

A party requesting permanent injunctive relief must show (1) actual success on the

merits, and (2) that it faces irreparable harm if injunctive relief is not granted.  Ognibene v.

Parkes, 671 F.3d 174, 182 (2d Cir. 2011); Cartier v. Symbolix, Inc., 454 F. Supp. 2d 175, 186

(S.D.N.Y. 2006).

Universitas satisfies both elements.  First, Universitas will succeed on the merits because it has a judgment against Nova and has shown that Mr. Carpenter, instead of holding the Lincoln Life proceeds in trust as Universitas' fiduciary, improperly transferred this money to entities in his exclusive control.

Second, Universitas has demonstrated that it faces irreparable harm absent an injunction, since the principals of Nova, the Charter Oak Trust and Grist Mill Capital, at Mr. Carpenter's direction, have already attempted to transfer assets out of the possession of Nova/the Charter Oak Trust and to Grist Mill Capital following the entry of judgment and service of Restraining Notices, and will continue to make such attempts absent a Court-ordered prohibition.  For more than a year, Nova, the Charter Oak Trust and Grist Mill Capital have been subject to Restraining Notices that should have prevented them from transferring assets that could be used to satisfy Universitas' judgment.  See 10/9/13 Barnett Decl., Exs. 1-2. Yet, as Universitas has shown, representatives of these companies, including Mr. Bursey, have already contacted insurance companies in an attempt to designate Grist Mill Capital (one of Mr. Carpenter's companies) as the owner of policies that are owned by the Charter Oak Trust.  This is a blatant violation of the Restraining Notices that Universitas has issued, and an attempt to frustrate Universitas' judgment against Nova.  Without an injunction, the Charter Oak Trust, having already been looted of at least $30 million in trust funds that were supposed to benefit Universitas, will be deprived of insurance policies that could be used to satisfy Universitas' judgment.  Universitas faces irreparable harm because each diminishment of trust assets increases the likelihood that Universitas will not be able to collect on its judgment.   See, e.g., 325 Bleecker, Inc. v. Local Union No. 747, United Bhd. of Carpenters & Joiners of Am., 500 F. Supp. 2d 110, 124 (N.D.N.Y. 2007) (granting defendant's motion for permanent injunction prohibiting transfers

from bank account controlled by plaintiff, finding that "if [the plaintiff] were to dissipate the account balance, any recovery in favor of [the defendant] would be illusory"); Jones v. Dana, 06 Civ. 0159-RPP, 2006 U.S. Dist. LEXIS 25293, at *86-88 (S.D.N.Y. May 3, 2006) (finding defendant liable to plaintiff for fraud, breach of fiduciary duty and conversion, and entering permanent injunction prohibiting defendant from transferring plaintiff's funds, finding "there is a real and substantial risk that those funds will be dissipated and/or transferred out of the country to accounts maintained by [the defendant] in Europe or elsewhere").

Mr. Carpenter, a suspended attorney who has twice been found guilty of federal fraud charges, has a well-documented history, including in this case, of hiding assets to thwart judgment creditors and abusing the corporate form.  Without an injunction, Mr. Carpenter will continue to transfer money among his many sham entities with abandon, requiring Universitas to continue to play his costly shell game.  In fact, in a recent letter to the Court, Nova's attorney acknowledged that the entities to which Mr. Carpenter initially transferred Universitas' money, including Grist Mill Capital, no longer have it.  10/9/13 Barnett Decl., Ex. 53.

Adding to the risk to Universitas if an injunction is not granted, Mr. Carpenter himself faces the risk of the reinstatement of a prior, vacated conviction on fraud charges, as well as a grand jury indictment in the District of Connecticut.  Either of these events could cause Mr. Carpenter to further transfer, expend or conceal money that should be used to satisfy Universitas' judgment. Also, since Mr. Carpenter has a demonstrable tendency to commingle the assets of his various entities, there is also the possibility that if his overturned conviction in the District of Massachusetts is reinstated, money that should be used to satisfy Universitas' judgment could be seized by the Government for penal or restitutionary purposes.

Accordingly, Mr. Carpenter, should be permanently enjoined, pursuant to Fed. R. Civ. P.

65 and 69, as well as N.Y. C.P.L.R. § 5222, from directly or indirectly selling, gifting, assigning, encumbering or disposing in any way, or otherwise transferring the ownership of, assets in his control or possession, or in the control or possession of one of his companies, corporations, trusts or other entities until Universitas' judgment is satisfied in full; provided, however, that Mr. Carpenter be permitted to expend and/or transfer up to $20,000.00 per month for ordinary expenses of his or one of his entities, with any such payments or transfers to be reported, in writing, with supporting documentation, to Universitas' counsel within seven (7) days of such payment/transfer being made.  And the other Respondents should be similarly permanently enjoined, pursuant to Fed. R. Civ. P. 65 and 69, as well as N.Y. C.P.L.R. § 5222, from directly or indirectly selling, gifting, assigning, encumbering or disposing in any way, or otherwise transferring the ownership of, their respective assets until Universitas' judgment is satisfied in full.

> d.     **This Court should preliminarily enjoin Mr. Carpenter from further money transfers of assets of any kind**

During the pendency of its motion for a permanent injunction, Universitas requests that the Court preliminarily enjoin Mr. Carpenter from making further transfers of assets of any kind, whether controlled or possessed, directly or indirectly, by him or one of his entities; provided, however, that Mr. Carpenter be permitted to expend and/or transfer up to $20,000.00 per month for ordinary expenses of his or one of his entities, with any such payments or transfers to be reported, in writing, with supporting documentation, to Universitas' counsel within seven (7) days of such payment/transfer being made.

A party requesting a preliminary injunction must show (1) a likelihood of success on the merits; (2) that the plaintiff is likely to suffer irreparable injury in the absence of an injunction; (3) that "the balance of hardships" weighs in the plaintiff's favor; and (4) "that the public interest

would not be disserved by the issuance of a preliminary injunction."  <u>Salinger v. Colting</u>, 607

F.3d 68, 77-80 (2d Cir. 2010).

Universitas has satisfied the standard for obtaining a preliminary injunction.  First, as

discussed, Universitas has shown that it is likely to succeed on the merits of its turnover motion

because Mr. Carpenter has been shown to have improperly transferred Universitas' money out of

a Charter Oak Trust account, and into bank accounts of shell entities that he dominates.  Also, as

discussed in the prior section, Universitas will suffer irreparable injury if Mr. Carpenter is able to

continue transferring money among his numerous sham entities, which will have the effect of

elongating the money trail that Universitas is following.

Additionally, the balance of hardships weighs in Universitas' favor because Universitas is

seeking to effectuate its judgment by halting any further transfers of assets that could be used to

satisfy its judgment.  Universitas has already had to incur hundreds of thousands of dollars in

attorneys' fees in order to determine the location and disposition of its trust funds, and will incur

yet more expenses if a prohibition on additional asset transfers is not issued.  While Mr.

Carpenter will undoubtedly claim hardship if he is prohibited from making further asset transfers

above $20,000 per month for ordinary expenses, he is also the person who misappropriated

Universitas' money, leaving Nova and the Charter Oak Trust unable to satisfy first the

Arbitration Award, then this Court's judgment and finally this Court's October 1 Order that

Nova deposit the judgment amount with the Clerk of the Court.  By transferring Universitas'

money through his thick web of interrelated shell companies, Mr. Carpenter has necessitated any

arguable hardship that an injunction would present.  Broad injunctions, moreover, are

appropriate where, as here, a single person sits in the center of an elaborate corporate shell game.

For instance, in <u>United States SBA v. Haukedahl Found.</u>, Case No. 04-1744-JSR, 2004 U.S.

26

Dist. LEXIS 9654, at *3-4, 9-10 (S.D.N.Y. May 27, 2004), the court preliminary enjoined the transfer of assets belonging to an individual judgment debtor, as well as the transfer of the assets of all entities controlled by the judgment debtor, where there existed a "web of ostensibly independent organizations that were, in actuality, effectively controlled by [the judgment debtor] and used by him not only to further and/or conceal his fraudulent schemes but also to receive fraudulently conveyed funds."

Finally, the public interest would not be disserved by an injunction's issuance because the public has an interest in seeing judgments and Court Orders effectuated, and Universitas only seeks a preliminary injunction in order to preserve assets that can be used to satisfy its judgment.

      *e.*     ***Any payments related to the policies subject to the Connecticut litigation should be paid over to Universitas***

The four insurance policies that are the subject of the Connecticut litigation between the Charter Oak Trust and PHL are assets of the Charter Oak Trust.  Accordingly, in the event that the Charter Oak Trust or any person or entity affiliated with it (or designated by it or its attorneys) receives a payment in connection with the Connecticut litigation, that payment is an asset of the Charter Oak Trust that should be assigned to and/or paid over directly to Universitas, since Universitas is a creditor of Nova in Nova's capacity as Trustee of the Charter Oak Trust.

## IV.   CONCLUSION

For the foregoing reasons, Universitas respectfully requests that the Court enter an Order:

- Directing the Respondents to each pay (and/or assign) to Universitas money and/or assets that were improperly transferred to them from the Charter Oak Trust, in the following amounts:

  - Grist Mill Capital – $31,263,842.75

  - Daniel E. Carpenter – $26,776,834.94

- o Grist Mill Holdings – $21,000,000.00

- o Carpenter Financial – $11,140,000.00

- o Avon Capital – $6,710,065.92

- o Phoenix – $5,000,000.00

- o Grist Mill Trust – $4,487,007.81

- o Hanover – $1,200,000.00

- Until Universitas' judgment is satisfied, permanently enjoining further transfers of the assets of Respondents, including the following insurance policies (identified by insured last name, insurance carrier and policy number):

  - o Collins – PHL Variable Insurance Policy No. 975 279 51

  - o Paulsrud – PHL Variable Insurance Policy No. 975 294 11

  - o Robertson – PHL Variable Insurance Policy No. 975 295 60

  - o Zahner – PHL Variable Insurance Policy No. 975 293 42

  - o Bolton – Lincoln Life Policy No. JJ7121879

  - o Clinard – Lincoln Life Policy No. JJ7105688

  - o Lowry – Lincoln Life Policy No. JJ7130995

  - o Nordin – Lincoln Life Policy No. JJ7075457;

  In the event the Respondents have received any monies or assets in respect of any of these policies (e.g. through a sale or surrender of a policy, or a sale of the beneficial interest in a policy), these monies or assets should be turned over to Universitas as property of Nova and the Charter Oak Trust;

- Directing the retitling of any insurance policies that were previously held by the Charter Oak Trust and improperly transferred to another entity controlled by Mr.

28

Carpenter, including the SunLife policy insuring the life of Ms. Amsterdam (Policy Number 020158601);

- Directing that Universitas directly receive any monies or assets that PHL may pay to the Charter Oak Trust, or that the Charter Oak Trust or any of its affiliates receive, in respect of the 4 policies that are the subject of litigation between the Charter Oak Trust and PHL in Connecticut Superior Court; and

- Preliminarily and permanently enjoining Mr. Carpenter from, directly or indirectly, causing, making, permitting or suffering any sale, assignment or transfer of, or any interference with, any asset or property of his, and any asset or property of any company, corporation or entity (including any trusts) in which he has a direct or indirect interest or control; provided that Mr. Carpenter be permitted to expend and/or transfer up to $20,000.00 per month for ordinary expenses of his or one of his entities, with any such payments or transfers to be reported, in writing, with supporting documentation, to Universitas' counsel within seven (7) days of such payment/transfer being made.

New York, NY
Dated: October 9, 2013

LOEB & LOEB LLP


By: /s/ Paula Colbath          .
    Paula K. Colbath (PC-9895)
    Michael Barnett (MB-7686)
    345 Park Avenue
    New York, New York 10154-1895
    (212) 407-4000

    *Attorneys for Judgment Creditor*
    *Universitas Education, LLC*

29