UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNIVERSITAS EDUCATION, LLC,                    :
                                               : Case No.:  11 CV 1590-
LTS-HBP
                              Petitioner,       :
                                               :
             -v-                               :
                                               :
NOVA GROUP, INC., as Trustee, Sponsor          :
and Named Fiduciary of the CHARTER OAK         :
TRUST WELFARE BENEFIT PLAN,                     :
                                               :
                              Respondent.       :
-------------------------------------------------------------- :
NOVA GROUP, INC., as Trustee, Sponsor          :
and Named Fiduciary of the CHARTER OAK         : Case No.: 11 CV 8726-
LTS-RLE
TRUST WELFARE BENEFIT PLAN,                     :
                                               :
                              Petitioner,       :
                                               :
             -v-                               :
                                               :
UNIVERSITAS EDUCATION, LLC,                     :
                                               :
                              Respondent.       :
-------------------------------------------------------------------X

## AFFIDAVIT OF DANIEL E. CARPENTER

I, Daniel E. Carpenter, being duly sworn, states as follows:

1.      I submit this affidavit in support of the Opposition to the Motion by

Universitas Education, LLC ("Universitas") for a turnover order as well as a preliminary

injunction and a permanent injunction.

2.      I am not a judgment debtor in this case, nor did I participate in the

arbitration that led to the arbitration award in favor of Universitas that was confirmed by

this Court.

3.     I was dismissed as a party to the arbitration after the arbitration had begun.

4.     At all relevant times I have been, and continue to be, the Chairman of the Managing Member of Grist Mill Capital, LLC – Delaware, which owns and controls Grist Mill Capital, LLC - Connecticut ("GMC"), which provided all of the funding through a Split-Dollar Arrangement for all of the life insurance policies purchased by the Charter Oak Trust, including the two policies on the life of Sash Spencer that were the subject of the arbitration.

5.     Neither Grist Mill Capital, LLC (GMC) – Delaware or Connecticut – is a judgment debtor in this case.

6.     Neither Grist Mill Capital – Delaware or Connecticut – participated in the Universitas arbitration. GMC was specifically dismissed from that arbitration, prior to its commencement.

7.     Thus, Grist Mill Capital was not heard at the arbitration.

8.     The $30 million in death proceeds from the two Sash Spencer life insurance policies were distributed in two substantial payouts: Approximately $11 million in May 2009 and $19.8 million in October 2009. Both of these distributions were made in good faith and for legitimate business purposes.

9.     The two payments made to GMC by the Charter Oak Trust in May 2009 equaling just under $11 million included the payments that Sash Spencer had agreed to in a signed agreement with GMC, including the repayment of the premiums paid plus an Origination Fee of 20% of the premiums paid plus a Placement Fee or Premium Funding Fee of 3% and a Termination Fee of 1%. In addition, the Charter Oak Trust document provided that only 80% of the benefit would be paid out under Article 6.01. See Ex. 1.

10.     These various fees were spelled out in detail in a letter sent to Universitas shortly after Mr. Spencer's death. See Ex. 2.

11.     The October payment of $19.8 million made to GMC was based on a collateral assignment extant in 2009. At that time, Charter Oak Trust owed GMC over $50 million and GMC had both a collateral assignment interest in each policy and a UCC filing on all assets of the Charter Oak Trust.

12.     In October 2009, GMC was effectively calling in its debt.

13.     Via this Collateral Assignment Agreement, GMC had a secured collateral assignment on each and every policy in the Charter Oak Trust, at all times, including the Sash Spencer policies. See Ex. 3.

14.     GMC was the designated Power of Attorney for each and every policy in the Charter Oak Trust. See Ex. 4.

15.     The only funds remaining in the Charter Oak Trust from October 2009 to June 2010 when the Charter Oak Trust account was closed were the $1.8 million that Grist Mill Capital had offered to Mr. Spencer (and then to Universitas) to resolve the insurance contracts dispute.

16.     After the above described transfers of funds from the Charter Oak Trust to GMC in May and October 2009, all of the money transfers after that between GMC and its various affiliates and lenders are all bona fide transactions among non-judgment debtors.

17.     Until last week, I believed that there was a Nova Group, Inc., a Delaware Corp formed by Paul Doucette in August 2002, and a Connecticut Nova Group formed by Halloran & Sage in January 2007 listing Wayne Bursey, Molly Carpenter and Amanda Rossi as the officers and directors of that Company. My name is not listed anywhere on the Connecticut filing.

18.     I have signed "zero-income" tax returns for the Delaware Nova Group, Inc. in previous years. I do not believe I am affiliated with Nova Group – CT.

19.     Hanover Trust Company is a Delaware Trust company and is a trust organized under the laws of the State of Delaware. I am the Grantor of the Trust and, under Delaware law; there are no officers or board members.

20.     Phoenix Capital Management Group, LLC is a Delaware Limited Liability Company. I am the Chairman of the Managing Member of the LLC.

21.     Grist Mill Holdings LLC is a Delaware Limited Liability Company. I am the Chairman of the Managing Member of the LLC.

22.     Carpenter Financial Group Inc. (CFG), is a Delaware corporation. I am the Chairman and Secretary of CFG. CFG is 100% owned by its employees through the CFG Employee Stock Ownership Plan (ESOP), which owns 100% of Carpenter Financial Group, Inc.

23.     Carpenter Financial Group LLC is a Delaware Limited Liability Company that is 100% owned by CFG and which has been dormant for nearly ten years.

24.      I have read the Declaration of Michael Barnett, dated October 2013.  None

of the transactions recited by him in ¶¶ 48-66, occurred in New York.   All of the

transactions described therein occurred in Connecticut or Rhode Island.

Dated:          October 25, 2013
                Simsbury, Connecticut

_Daniel E. Carpenter_

DANIEL E. CARPENTER

Sworn to before me this
25th day of October, 2013

_Notary Public_
Notary Public
My commission expires: 3-31-17
(Notary seal/stamp)

JASON J. CONCATELLI
Notary Public, State of Connecticut
My Commission Expires March 31, 2017

# EXHIBIT
# 1

## IV.  DISCLOSURE, ACKNOWLEDGMENT & CERTIFICATION AGREEMENT

**Policy Owner:**  Charter Oak Trust
**Insured:**  SASH SPENCER
**Carrier:**  LINCOLN
**Policy No.:**

In connection with an arrangement ("Funding Arrangement") pursuant to which GRIST MILL CAPITAL, LLC (the "Funder"), will provide premium funding in relation to the acquisition of a life insurance policy or policies (each a "Policy" and collectively, the "Policies") insuring the above-referenced insured (the "Insured"), such Funding Arrangement having been disclosed and explained to the Insured and the Insured's duly licensed insurance broker and/or agent (the "Agent"), each of the Insured and the Agent hereby certifies, represents and warrants to the Funder, for good and valuable consideration (including the issuance of the Policy and the attendant benefits derived therefrom), the receipt and sufficiency of which are hereby acknowledged, as follows:

1.  The Insured seeks to obtain the Policy on his own initiative, as part of the Insured's estate planning.

2.  The Policy shall be solely owned by the Charter Oak Trust (the "Trust"), and the Trust shall be the sole beneficiary of the Policy.  Neither the Insured nor the Insured's beneficiaries shall be the owner or beneficiaries of the Policy.

3.  The Policy is not being purchased with the intent of selling it in a settlement sale, and there have been no offers to sell or buy the Policy.  Neither Agent, Funder, nor the Trust have recommended such a sale.

4.  The benefits of the Policy and the underlying death benefit are understood by the Insured. The Trust, as the Policy owner, may maintain the Policy after the termination of the Funding Arrangement.

5.  If in the future the Trust, as Policy owner, no longer desires to maintain the Policy, the Trust may surrender, lapse or otherwise dispose of the Policy subject to the terms of the Policy, the Funding Arrangement, and the circumstances existing at that time.

6.  No rebate to the Insured or remuneration to the Agent of any kind has been offered.

7.  The Funder shall provide premium payments for so long as the Trust owns the Policy.

8.  The Trust shall hold and maintain the Policy until the death of the Insured or the termination or disposition of the Policy.  All death proceeds from the Policy shall be payable to the Trust so long as the Trust owns the Policy.

9.  The Insured and Agent both understand and agree that the following remittances, fees and expenses shall be due and payable to the Funder upon the maturation, disposition, termination, or change in beneficiary of the Policy:

© 2006 Charter Oak Trust

(a)    repayment of all premiums and related costs regarding the Policy;

(b)    an Origination Fee of twenty percent (20%) of the total premiums funded and paid for the Policy in consideration of the Funding Arrangement having been implemented;

(c)    a Premium Funding Fee of three percent (3%) of the face amount of the Policy in consideration for the funding of such premiums;

(d)    a Termination Fee of one percent (1%) of the face amount of the Policy in consideration of the termination of the Funding Arrangement.

10.    The Insured has the option of acquiring the Policy from the Trust at any time on terms to be mutually determined by the Trust and the Insured.

11.    The Insured has had a full and unhindered opportunity to read, review, consider, and understand (with the Insured's legal counsel) the terms and provisions contained herein. The Insured has been advised to consult with an independent legal counsel of his own choosing, concerning the terms and provisions contained herein.

12.    The Insured has been advised to consult with independent financial advisors of his own choosing, concerning the issuance of the Policy and the terms and provisions contained herein.

13.    The Insured understands and appreciates the nature and magnitude of the risks assumed by him in entering into the transactions contemplated by the Funding Arrangement. The Insured voluntarily and knowingly makes the decision to take those risks, free of any coercion or duress.

14.    At no time has the Funder, the Trust, or any of their affiliated companies or its or their respective officers, employees, agents, representatives, affiliates, trustees, or designees made any express or implied representation or warranty in connection with the transactions contemplated by the Funding Arrangement.

15.    The Insured acknowledges that neither the Funder nor the Trust are encouraging, endorsing or recommending the acquisition of the Policy, the Policy itself, or any of its underlying investments. The Policy is being acquired at the Insured's own initiative and is being effectuated as part of the Insured's estate planning or charitable giving, with the assistance and the advice of the Agent and the Insured's financial and legal advisors.

16.    The Insured understands that the acquisition of the Policy and/or its subsequent disposition by the Trust may affect the Insured's ability to obtain insurance coverage in the future.

17.    The Insured understands that if at some point in the future he wishes for the Policy to be sold, a settlement sale of the Policy may not be appropriate or desirable for various reasons.

18.    Nothing contained herein or in any of the documents relating to the Funding Arrangement shall be deemed or construed as advice or guidance by the Funder or the Trust concerning the Insured's decision to enter into the Funding Arrangement or regarding the issuance of the Policy.

© 2006 Charter Oak Trust

19.     This Disclosure, Acknowledgment & Certification Agreement shall be governed by the laws of the State of New York. Any and all disputes hereunder and/or regarding the Policy and/or the transactions contemplated by the Funding Arrangement between and among the Insured, the Agent, the Funder, and/or the Trust shall be submitted to binding arbitration under the commercial arbitration rules of the American Arbitration Association before a single arbitrator, such arbitration to be held in New York, New York. The arbitrator shall not be empowered to award special or punitive damages. The losing party in the arbitration shall pay all fees and costs (including attorneys' fees and costs, as well as the costs of arbitration) of the prevailing party. The final decision of the arbitrator shall be final, binding, and *non-appealable*, and judgment on the award may be entered in any court having jurisdiction thereof.

The parties hereto evidence their agreement to the provisions above with their signatures below:

INSURED:

_Signature_      12/17/2006
Signature          Date

**SASH SPENCER**
Printed Name        Title

AGENT:

_Signature_      12-17-06
Signature          Date

_Bruce J Mautz_   12-17-06
Printed Name        Title

**ACCEPTED AND AGREED:**
**GRIST MILL CAPITAL, LLC**

_____
Name:
Title:
Date:

© 2006 Charter Oak Trust



CHARTER OAK TRUST

## DISCLOSURE AND ACKNOWLEDGMENT AGREEMENT

_____ and its insurance companies (hereinafter collectively referred to as the "Carrier") have agreed to accept applications for individual insurance policies from the Plan Administrator and/or Sponsor of the CHARTER OAK PLAN & TRUST (hereinafter the "Plan") on Participants in the Plan. Subject to its underwriting requirements and restrictions, the Carrier has agreed to issue policies to the Plan on the lives of eligible employees of the undersigned Participating Employer (hereinafter the "Employer"). Any policy so issued will designate the Plan as the sole owner and beneficiary of the policy, and the exercise of any contract rights under that policy will require the written authorization of the Plan Sponsor.

In issuing its policies, the Carrier represents and warrants only those promises contained within the insurance contract itself, and no other. The Carrier's agreement to issue insurance policies to the Plan does not constitute an endorsement of the Plan. In agreeing to issue a policy on the life of an eligible employee of the Employer, the Carrier reserves the right to underwrite and determine independently whether or not to issue any further coverage on said employee and whether or not to issue any policies on the lives of Employer's other eligible employees. Coverage provided under any insurance policy issued to the Plan is dependent on the continued payment of the requisite premiums.

By accepting applications from the Plan Administrator and/or Sponsor of the Plan or by agreeing to issue any policy to the Plan, the Carrier makes no representations to the Employer or to any if its employees or representatives concerning the federal and state tax consequences of participation in the Plan. No director, officer, employee, agent, General Agent or other person has authority on behalf of the Carrier to provide the Plan, the Employer or any of Employer's employees with any legal or tax advice concerning participation in the Plan, or the termination of participation in the Plan.

In particular, the Carrier, Plan Sponsor, Administrator, and the Trustees make no representations concerning the following issues:

1. Whether or not the Employer will be allowed a current income tax deduction for amounts contributed to the Plan;

2. Whether or not an income tax deduction allowed in any taxable year may again be allowed in any subsequent taxable year for any reason;

3. Whether the Employer or the Covered Employee will recognize any income or gain from participation in the Plan or from the termination of participation in the Plan;

4. Whether any transaction might constitute a reversion of Plan assets to the Employer;

5. What amount is includible in an employee's gross income, or in his wages for Social Security and Medicare tax purposes, as a result of participation in the Plan; and

6. What the gift, estate or generation-skipping transfer tax consequences are with respect to an Employee's participation in the Plan, designation of any beneficiary under the Plan, or assignment of any entitlement under the Plan or insurance policy.

COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 01/19/07

5

*To the extent employer is at fault in causing same* ✗

*reasonable*

CHARTER OAK TRUST

## DISCLOSURE AND ACKNOWLEDGMENT STATEMENT (CONT.)

The undersigned Employer, on its own behalf, and on behalf of its Participating Employees, agrees to indemnify and hold harmless the Plan Sponsor and the Trustees of the Trust from any and all costs including legal fees resulting from the Employer or the Participating Employees' participating in the Plan and hereby acknowledges the following:

1. In determining whether to adopt the Plan and to what extent they would participate, they have sought and relied on legal and tax advice from their own independent advisers;

2. The Employer and Participating Employees are responsible for the tax consequences resulting from adoption and/or participation in the Plan;

3. Neither the Carrier nor any of its directors, officers, employees, agents, General Agents or other representatives have offered or have the authority to offer any legal or tax advice concerning the adoption and/or participation in the Plan. The Plan Sponsor, Administrator, Trustee and Carrier cannot and have not guaranteed or promised any particular legal or tax consequences from the Employer's adoption or participation in the Plan;

4. The Carrier and the Trustee have no responsibility for the administration of the Plan or for the distribution of benefits under the Plan;

5. The Carrier will be responsible solely for the promises contained in its insurance contracts;

6. Any illustrations provided in connection with the sale of the Carrier's policy do not constitute a guarantee or warranty of the policy's value, nor are such illustrations either estimates or projections of the policy's future performance or dividend scale;

7. The Plan provides for certain welfare benefits for Participating Employees and cannot be used as a vehicle for deferred compensation or retirement income.

8. Due to the possibility of future changes in the tax laws, there can be no guarantee or representation of any sort as to the future tax deductibility of any contribution to the Plan. Specifically, neither the Sponsor nor the Administrator can make any representation or warranty of any tax deductibility of any contributions to the Plan.

9. Any unresolved disputes or claims involving the Plan shall be settled by final, binding and non-appealable arbitration under the commercial arbitration rules of the American Arbitration Association, with such arbitration to be conducted in New York, New York, and be governed by the laws of the State of New York.

The undersigned Employer, for itself, its successors, assigns and its Participating Employees, hereby asserts that it has read this statement in full, understands its provisions or has sought legal advice concerning its provisions, and agrees to be bound by the same.

Signature of Participating Employer _____     Date: 3-19-07

Name and Title: SASH A. SPENCER, CEO

COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 01/19/07

6



CHARTER OAK TRUST

## ADMINISTRATION FEE AGREEMENT

This Agreement, effective as of the date below, is entered into by and between the undersigned Employer (hereinafter called the "Employer") and Nova Group, Inc. (hereinafter called the "Administrator"). In consideration of the mutual covenants and agreements contained herein, it is hereby agreed as follows:

SECTION 1. The Employer has signed an Adoption Agreement to participate in the Charter Oak Plan & Trust (hereinafter the "Plan"). The Administrator shall administer the Plan and shall also perform some duties assigned to the Plan Sponsor and Trustee in the Plan documents as their agent. Such services shall include, but not be limited to, the following:

   a)   Determine contributions, bill employers, and process all deposits;
   b)   Claims administration;
   c)   Approval and selection of appropriate insurance contracts to fund benefits;
   d)   Preparation of annual financial report and tax return; and
   e)   Provision of summary plan description.

SECTION 2. The Administrator shall process all benefit claims on behalf of Plan Participants in strict accordance with the claims procedures, rules and regulations for the administration of the Plan as formulated by the Plan Sponsor. The Administrator shall have sole responsibility to determine a Participant's status and eligibility for benefits under the Plan, based on information provided by the Employer.

SECTION 3. In performing its obligations under this Agreement, the Administrator neither assumes nor underwrites any liability of the Plan. The Sponsor is the fiduciary of the Plan and exercises discretionary authority and control over the assets of the Plan and the Administration of the Plan. The Employer also acknowledges that the Trustee will only follow the written instructions of the Administrator and/or Sponsor.

SECTION 4. The Employer agrees to indemnify the Administrator and hold it, its directors, officers, and employees, harmless from all amounts and expenses (including reasonable attorneys' fees and court costs) for which the Administrator may become liable as a result of any acts or omissions by the Employer with respect to the administration of the Plan, including, but not limited to, the determination of an employee's eligibility for benefits, the decision to pay benefits to a beneficiary under the Plan, and the determination of the amount of benefits payable to any beneficiary, except for any act or omission attributed to the Administrator's grossly negligent failure to perform its obligations under the Plan and this Agreement or the Administrator's willful misconduct. This indemnification covenant shall survive the termination of this Agreement.

SECTION 5. As compensation for its services under this Agreement, the Administrator may receive $1,500 upon the signing of the Adoption Agreement. Thereafter, the Plan Administration fees are payable as of March 31 for every subsequent Plan Year in advance at $750 per year. Plan Administration fees will not be pro-rated in the event of an Employer's termination from the Plan, which must be done with 60 days advanced written notice with a termination fee payable of $500. Specific fees for additional services will be quoted on a case-by-case basis upon request.

SECTION 6. This Agreement shall be terminated upon the Employer's withdrawal from the Plan by giving the Administrator at least sixty (60) days written notice of termination and payment of the $500 termination fee. The Administrator may terminate this Agreement and the Employer's participation in the Plan immediately if the Administrator fails to receive the contributions required by the Plan or its administrative fees, with such termination to be accomplished by written notice from the Administrator or the Sponsor to the Employer.

SECTION 7. Any notice required to be given hereunder shall be given to the Administrator at its current address and to the Employer at its address as set forth in the Adoption Agreement or to such other address as either party may advise the other in writing from time to time. Notice shall be delivered by facsimile or by certified mail, return receipt requested.

SECTION 8. This Agreement may be assigned by the Administrator to any other party, including any successor to the business of the Administrator by merger, consolidation, purchase of assets or otherwise. The Administrator reserves the right to increase its annual administration fee by giving the Employer notice by January 15th of each year.

SECTION 9. This Agreement shall be governed by the laws of the State of New York.

SECTION 10. The Employer shall be responsible for the following matters with respect to the Plan:

   a)   All legal and tax consequences of the Employer's and Employees' participation in the Plan;
   b)   Prompt remittance of contributions to the Plan upon receiving notice from the Administrator;
   c)   Timely payment of the Administrator's fee upon receipt of an invoice for the same;
   d)   Providing Covered Employees with information about the Plan supplied by the Administrator; and
   e)   Providing the Administrator with a list of Covered Employees and their Welfare Benefit amounts at the beginning of each year.

SECTION 11. Any dispute or controversy arising under or in connection with this Agreement or with respect to the Employer's participation in the Plan shall be settled by binding arbitration, conducted by a single arbitrator in New York, New York in accordance with the rules of the American Arbitration Association then in effect. The expense of the arbitrator shall be shared equally by the Employer and the Administrator. The decision of the arbitrator shall be final, binding, and non-appealable, and judgment may be entered on the arbitrator's award in any court having jurisdiction thereof. The Parties evidence their agreement to the provisions by their signatures below.

Employer: **HOLDING CAPITAL GROUP, INC.**          Administrator: Nova Group, Inc.

By: _[signature]_          7-19-07          By: _[signature]_

**SASH H. SPENCER**          _Wayne H. Bursey_
Printed Name and Title          Printed Name and Title

COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 01/19/07

7

# EXHIBIT
# 2

July 23, 2008

**FOR SETTLEMENT PURPOSES ONLY**
**VIA FEDERAL EXPRESS**

Mary M. Spencer                                    Holding Capital Group, Inc.
251 Crandon Boulevard, Unit 164                    7 Ridgewood Drive
Key Biscayne, FL 33149                             Bridgewater, CT 06752

Donna J. Vasser                                    Arthur M. Michaelson, Esq.
Sharon Siebert                                     Hofheimer Gartlir & Gross, LLP
Universitas Education, LLC                         530 Fifth Avenue
404 East 55th Street, Suite 13A                    New York, NY 10036
New York, NY 10022

Re:   **Charter Oak Trust and Sash A. Spencer**

Ladies & Gentlemen:

I write this letter on behalf of the Charter Oak Trust (the "Trust"), Nova Group, Inc. ("Nova," the Plan Sponsor of the Trust), and Grist Mill Capital, LLC ("GMC"). The purpose of this letter is to correct what appear to be serious misunderstandings among the parties regarding policy numbers 7305475 and 7320809 (the "Policies") issued by The Lincoln National Life Insurance Company ("Lincoln") on the life of Sash A. Spencer (the "Insured"), having a total face amount (death benefit) of $30 million.

As you are all undoubtedly aware, the Trust is the sole owner and beneficiary of the Policies. Nova, as GMC's designee, received from the Insured a durable and irrevocable power of attorney coupled with an interest authorizing Nova "to take any and all actions on the [Insured's] behalf with respect to the Polic[ies]." After the Insured's untimely death in June 2008, Nova—pursuant to its power of attorney from the Insured and the fact that the Trust is the sole owner and beneficiary of the Policies—filed a death claim with Lincoln with respect to the Policies. Nova expects Lincoln to pay the full net death benefit to the Trust (approximately $30 million, plus cash value accumulations and minus policy charges) within the next 90 days.

Pursuant to irrevocable beneficiary designation forms executed by the Insured dated May 9, 2008 (approximately one month before his death) and delivered to the Trust, the Insured designated Universitas Education, LLC ("Universitas") as the sole and exclusive irrevocable beneficiary of all benefits payable pursuant to the Trust (the "Net Trust Benefits").

I understand, based on drafts of settlement documentation that have been forwarded to me, that Universitas and Mary M. Spencer, the executrix of the Insured's estate ("Mary"), have reached an agreement whereby Mary and Universitas have agreed to share the Net Trust Benefits in some manner. The Trust has no objection to such an arrangement, **provided**, **however**, that Universitas agrees to such an arrangement in writing and releases the Trust, Nova, GMC, Lincoln, and their affiliates from any and all claims regarding the Trust's payment of the Net Trust Benefits (to which Universitas is currently the sole beneficiary) to any person or entity *other* than Universitas.

Before outlining the necessary steps to effectuate such an arrangement, I want to describe exactly how the Net Trust Benefits are calculated:

| | | | |
|---|---|---|---|
| Death benefit payable by Lincoln: | | | $ 30,000,000 |
| Less: | 1) | 20% of death benefit retained by the Trust (pursuant to Trust § 6.01) | 6,000,000 |
| | 2) | Reimbursement of all premiums paid by GMC (pursuant to Disclosure Agreement § 10(a)) | 4,055,537 |
| | 3) | Origination fee of 20% of total premiums paid (pursuant to Disclosure Agreement § 10(b)) | 811,107 |
| | 4) | Placement fee of 2% of the total death benefit (pursuant to Disclosure Agreement § 10(c)) | 600,000 |
| **Net Trust Benefits** [1] | | | $   18,533,356 |

Because the Trust is required by law to pay the **entire** amount of the Net Trust Benefits directly to Universitas, the Trust will not pay the Net Trust Benefits to any other person or entity unless directed to do so in writing by Universitas, with appropriate releases and indemnifications for the benefit of the Trust, Nova, GMC, Lincoln, and their affiliates.

All parties are undoubtedly aware that all of the premiums for the Policies were paid solely by GMC, so no other party has any legal or equitable claims in that regard. Furthermore, I hasten to remind all parties of the following Trust provisions:

Section 13.06  Applicable Law.  This Declaration of Trust shall be construed, regulated and administered by and under the laws of the State of Connecticut, where the Trust is created.

Section 13.07  Disputes. Any and all disputes regarding the Trust or the Plan shall be settled by Arbitration. Any Arbitration between the Plan and any Participant or Employer shall be limited to the Participant's or the Employer's individual claims, and no claims arising out of this Agreement shall be asserted or arbitrated on a classwide basis. *Any court litigation brought against the Plan, or threatened against the Plan either on an individual or a classwide basis, will result in the immediate termination from the Plan of the individual Participant(s) or Employer(s) bringing such action or litigation or threatening such action or litigation.* (Emphasis added).[2]

---

[1] Less additional attorneys' fees and costs incurred by the Trust to consummate receipt of the death benefit from Lincoln.

[2] The Disclosure Agreement executed by the Insured, and to which Mary as the executrix of the Insured's estate is legally bound, calls for binding arbitration before a single arbitrator in New York, New York. The final decision of the arbitrator shall be final, binding, and *non-appealable*.

Thus, any litigation, or threat of litigation, brought against the Trust, Nova, GMC, or Lincoln, will cause all of the Net Trust Benefits otherwise payable to Universitas **to automatically and entirely forfeit to the Trust**. Consequently, all parties would be well-advised to govern themselves accordingly.

In light of the foregoing, neither the Trust, nor Nova, nor GMC, shall execute the proposed "settlement agreement" or "escrow agreement" that have been recently circulated, notwithstanding any oral or written statements of intention that may have been previously communicated to the contrary. The **only** arrangement to which the Trust will agree, other than payment of the entire Net Trust Benefits directly to Universitas, is the following:

1) Execution by Universitas of an irrevocable instruction letter and release drafted by the Trust directing the Trust to pay the Net Trust Benefits to a designated escrow account;

2) Neither the Trust, nor Nova, nor GMC, will be parties to any "settlement agreement" or "escrow agreement" governing such escrow account; and

3) The escrow agent must either be a nationally reputable bank or financial institution (such as JP Morgan Chase or PNC Bank), or a law firm of the Trust's choosing (such as Halloran & Sage LLP in Hartford, Connecticut, but not Hofheimer Gartlir & Gross LLP, due to its lack of presence in Connecticut).

Therefore, unless and until Universitas informs me in writing that it agrees to this arrangement, then neither the Trust, nor Nova, nor GMC, shall take any actions or execute any documents to alter their existing legal obligations to pay the entirety of the Net Trust Benefits directly to Universitas.

Sincerely,

Jack E. Robinson
Vice President

cc: Bruce J. Mactas
Mactas Alper & Szrolovits
292 Madison Avenue, 7th Floor
New York, NY 10017

3

# EXHIBIT
# 3

# COLLATERAL ASSIGNMENT AGREEMENT

FOR VALUE RECEIVED, this COLLATERAL ASSIGNMENT AGREEMENT, dated as of March 19, 2007 (as amended, supplemented or otherwise modified from time to time, this "Assignment") is entered into by CHRISTIANA BANK & TRUST COMPANY, acting solely in its capacity as the Insurance Trustee (the "Trustee") of the CHARTER OAK TRUST, a trust created and existing under the laws of the State of Connecticut (the "Assignor") pursuant to that certain trust instrument dated as of October 1, 2006 (the "Trust Agreement"), in favor of GRIST MILL CAPITAL, LLC, a limited liability company organized under the laws of the State of Connecticut (individually or collectively, the "Assignee"), its successors and assigns. Capitalized terms not defined herein have the same meaning as described in that certain Amended and Restated Line of Credit and Security Agreement dated as of February 12, 2007, by and among Assignee, Avon Capital, LLC and the Lender therein (as it may be amended, modified, supplemented or restated from time to time, the "Loan Agreement").

1.     <u>Assignment</u>. Assignor hereby assigns, transfers, pledges and grants all of Assignor's claims, options, privileges, rights, titles and interests in, to and under (except as provided in Section 2 hereof) the life insurance policies described on <u>Exhibit A</u> attached hereto and made a part hereof to Assignee and any and all additions, renewals and supplementary contracts issued in connection therewith and any and all proceeds thereof (said policies and contracts and proceeds are hereinafter collectively referred to as the "Insurance Policy"), subject to all the terms and conditions of this Assignment. This Assignment includes, without limitation (except as provided in Section 2 hereof), Assignor's assignment of the following rights to Assignee:

        (a)     The sole right to collect from the insurer(s) issuing the Insurance Policy (the "Insurer") the net proceeds of the Insurance Policy due to the death of the insured or maturity (subject to the covenants herein);

        (b)     The sole right to cancel or surrender the Insurance Policy and receive the surrender value thereof at any time provided by the terms of the Insurance Policy and at such other times as the Insurer may allow;

        (c)     The sole right to obtain one or more loans or advances on Assignee's interest in the Insurance Policy at any time, either from the Insurer or from other persons, and to pledge or assign Assignee's interest of the Insurance Policy as security for such loans or advances;

        (d)     The sole right to collect and receive all distributions or shares of surplus, dividend deposits or additions to the Insurance Policy now or hereafter made or apportioned thereto, and to exercise any and all options contained in the Insurance Policy with respect thereto; <u>provided</u>, that unless and until Assignee shall notify the Insurer in

COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07

writing to the contrary, the distributions or shares of surplus, dividend deposits and additions shall continue on the plan in force at the time of this Assignment;

(e)     The right to exercise all non-forfeiture rights permitted by the terms of the Insurance Policy or allowed by the Insurer and to receive all benefits and advantages derived therefrom;

(f)     The right to exercise any and all voting rights or privileges to the extent created or endowed by the Insurance Policy; and

(g)     The right, upon the exercise of the Default Sale Right as set forth herein, to sell, transfer and assign the interest of the Insurance Policy conveyed to Assignee pursuant to Section 8.

2.     <u>Rights Reserved</u>. The parties agree that, so long as the Insurance Policy has not been surrendered, Assignor shall have the right to collect from the Insurer any disability benefit payable in cash that does not reduce the amount of insurance. The reservation of this right shall in no way impair the right of the Assignee to surrender the Insurance Policy completely with all of its incidents or impair any other rights of the Assignee hereunder, and any designation or change of beneficiary or election of a mode of settlement shall be made subject to this Assignment and to the rights of the Assignee hereunder.

3.     <u>Obligations Secured</u>. This Assignment is made, and the Insurance Policy is to be held, as collateral security for any and all obligations and liabilities of Assignor, either now existing or that may hereafter arise, under the Assigned Fee Agreements, all of which obligations and liabilities in respect of the Assigned Fee Agreements, secured or to become secured, are herein called the "Liabilities". Subject to the terms of this Assignment, Assignee shall apply money received under the Insurance Policy to pay the Liabilities as and when they become due in the order in which they become due.

4.     <u>Representations and Warranties of Assignor</u>. Assignor hereby represents and warrants to Assignee and the Insurer: (a) the execution, delivery and performance of this Assignment by Assignor is within Assignor's power and do not conflict with, violate, create a lien or default under or require a consent under any document or agreement to which Assignor is a party or by which it is bound; (b) the insured under the Insurance Policy has the financial ability, but not the obligation, to make subsequent contributions to the Assignor to allow the Assignor to pay the insurance premiums required to be paid for the Insurance Policy following the no less than twenty-five (25) nor more than thirty (30) months anniversary of the Client Transaction; (c) the Assignor has an insurable interest in the life of the insured under the Insurance Policy; (d) the Insurance Policy is in full force and effect; (e) the Assignor is the sole owner of the Insurance Policy and has full authority to assign the Insurance Policy to Assignee; (f) the Assignor has neither assigned, nor granted or suffered any lien or security interest against, the Insurance Policy to any other entity, except as provided in this Assignment; (g) this Assignment constitutes a legal, valid and binding obligation of the Assignor enforceable by Assignee against the Assignor in accordance with its terms (subject to applicable bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally); and (h) none of the proceeds of the Assigned Fee

COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07

Agreements will be used for personal, family or household purposes or any purpose other than the payment of life insurance premiums and related fees and expenses for the Insurance Policy. Assignor further represents and warrants to Assignee that no proceedings in bankruptcy or any other insolvency law are pending or, to its knowledge, threatened against Assignor and that no grounds exist for any such proceedings.

5. <u>Covenants</u>. Assignor and Assignee covenant and agree as follows:

(a)  Unless Assignee shall have elected to exercise the Default Sale Right (as defined below), any balance of sums received hereunder, including loans and cash withdrawals, from the Insurer remaining after payment of the then existing Liabilities, matured or unmatured, shall be paid in full by Assignee to the persons entitled thereto under the terms of the Insurance Policy;

(b)  Assignor shall not surrender, cancel, or otherwise terminate the Insurance Policy or allow the Insurance Policy to lapse or terminate. Assignor shall do or cause to be done all things necessary to preserve and keep in full force the Insurance Policy until the Liabilities have been satisfied in full under the terms and conditions of the Assigned Fee Agreements.

(c)  Assignee shall not consent to the exercise of either the right to surrender or lapse of the Insurance Policy or the right to obtain policy loans from the Insurer, unless and until there has been a Default Sale Event;

(d)  After a Default Sale Event, upon Assignor's request, Assignee shall forward to the Insurer, without unreasonable delay, the Insurance Policy for endorsement of any designation or change of beneficiary or any election of an optional mode of settlement;

(e)  The Insurer is hereby authorized and instructed by Assignor to recognize Assignee's claims to rights hereunder (including the exercise of the Default Sale Right) without investigating the reason for any action taken by Assignee, or the validity or the amount of the Liabilities or the existence of any Default Sale Event, or the giving of any notice hereunder, under applicable law or otherwise, or the application to be made by Assignee of any amounts to be paid to Assignee. The signatures of Assignee shall be sufficient for the exercise of any rights under the Insurance Policy assigned hereby and the receipt by Assignee of any sums shall be a full discharge and release therefore to the Insurer. Checks for all or any part of the sums payable under the Insurance Policy and assigned herein shall be paid to the exclusive order of Assignee if, when, and in such amounts as may be requested by Assignee;

(f)  Assignor shall at no time change the mode of premium payment or otherwise modify the timing of any such premium payments from the signed Insurance Policy illustration provided by Assignor to Assignee. Assignee shall be under no obligation to pay any premium, or the principal of or interest on any loans or advances on the Insurance Policy, whether or not obtained by Assignee, or any other charges on the Insurance Policy, but such amounts so paid by Assignee from its own funds, shall

COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07

become a part of the Liabilities hereby secured and shall be subject to the terms of the Assigned Fee Agreements and shall be secured by this Assignment;

(g)     The exercise of any right, option, privilege or power given by Assignor to Assignee under this Assignment shall be at the option of Assignee, and Assignee may exercise any such right, option, privilege or power without notice to, or assent by, or affecting the liability of, or releasing any interest hereby assigned by Assignor;

(h)     Assignee shall promptly notify Assignor in writing if Assignee shall assign any of its rights under the Assigned Fee Agreements or this Assignment, and Assignee shall provide Assignor with the name and address of Assignee, and such other information as Assignor may request; and

(i)     Assignee shall promptly provide Assignor with copies of all documents, instruments, correspondence and other written materials received by Assignee from the Insurer, and promptly (but in no event later than fifteen (15) days following receipt) remit to Assignor Assignee's share of any proceeds received by Assignee from the Insurer that are payable by Assignee to Assignor.

6.     Termination. This Assignment shall automatically terminate on the date on which the Liabilities have been paid and performed in full.

7.     Further Assurances. Assignee and Assignor each hereby covenant and agree to execute any and all documents, instruments, certificates and agreements that may be necessary to give effect to the matters contemplated herein.

8.     Default Sale Right; Default Sale Event. Each of the following shall constitute a "Default Sale Event" as that term is used in this Assignment: the occurrence and continuation of an event of default under the Assigned Fee Agreements which has not been remedied within the time period, if any, set forth in the Assigned Fee Agreements, (b) the occurrence and continuation of any breach by Assignor of any material covenant or obligation of Assignor contained in the Assigned Fee Agreements, and (c) the occurrence and continuation of any breach by Assignor of any material covenant or obligation of Assignor contained in this Collateral Assignment; provided that no event of default or breach of covenant or obligation shall be deemed to be a Default Sale Event unless, on or after the occurrence thereof, Assignee shall have given Assignor written notice of such event of default or breach of covenant or obligation, which notice shall state that Assignee has determined to exercise its Default Sale Right (the "Default Sale Notice") and thus foreclose on the Insurance Policy. Upon receipt of a Default Sale Notice, Assignor shall immediately transfer and assign Assignor's ownership, claims, options, privileges, rights, titles and interests, without limitation, in, to and under the Insurance Policy to Assignee (or its designee) and thereby forever relinquish any and all rights Assignor may have under this Assignment or the Note (the "Default Sale Right"). Assignor shall execute any and all documents necessary to effect the Default Sale Right. Upon the exercise of this Default Sale Right, Assignee shall notify the Insurer in writing and the Insurer shall thereafter recognize Assignee as the sole lawful owner of the Insurance Policy, and Assignee, acting in its sole and absolute discretion, shall have full power and authority (a) to sell or

4
COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07

otherwise dispose of the Insurance Policy and to receive all consideration obtained in connection with such sale or other disposition, (b) to receive all payments due from the Insurer with respect to the Insurance Policy, and (c) otherwise to enjoy all rights and benefits of the Insurance Policy. Monies or other proceeds received by Assignee upon exercise of the Default Sale Right or otherwise in exercise of its rights and remedies by the giving of a Default Sale Notice following a Default Sale Event shall be applied as follows: first to payment of all costs and expenses, including fees and expenses of Assignee's counsel, incurred by the Assignee in connection with the Default Sale Event and exercise of its rights and remedies; second, to the payment of all amounts due and owing with respect to the Assigned Fee Agreements; and third, to the extent of any excess, the balance also to the Assignee, it being understood that such balance of any payments of death benefits or other amounts on the Insurance Policy, following application of the proceeds thereof to the items in paragraphs first through fourth, shall be remitted to the Assignor during the period prior to the Assignor's receipt of the Default Sale Notice declaring the Assignee's exercise of the Default Sale Right upon the occurrence of a Default Sale Event, but such balance shall be irrevocably retained by the Assignee (or its assigns) and not remitted to the Assignor if received during the period from and after the date the Assignor receives the Default Sale Notice declaring Assignee's exercise of the Default Sale Right upon the occurrence of a Default Sale Event.

9. Assignee's Appointment as Attorney-in-Fact.

(a) Assignor hereby irrevocably constitutes and appoints Assignee and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of Assignor and in the name of Assignor or in its own name, from time to time in Assignee's discretion, for the limited purpose of carrying out all terms of this Assignment, to take any and all appropriate action and to execute and deliver any and all documents and instruments which Assignee may deem necessary or desirable to accomplish the purposes of this Assignment and, without limiting the generality of the foregoing, hereby gives Assignee the power and right, on behalf of Assignor, without notice to or assent by Assignor to do the following:

(i) to take possession of and endorse and collect any checks, drafts, notes, acceptances or other instruments for the payment of monies due under the Insurance Policy and to file any claim or to take any other action or proceeding in any court of law or equity or otherwise deemed appropriate by Assignee for the purpose of collecting any and all such monies due under the Insurance Policy whenever payable and to file any claim or to take any other action or proceeding in any court of law or equity or otherwise deemed appropriate by Assignee for the purpose of collecting any and all such monies due under the Insurance Policy whenever payable; and

(ii) (A) to direct any party liable for any payment under the Insurance Policy to make payment of any and all monies due, and to become due there under, directly to Assignee or as the Assignee shall direct; (B) to receive payment of and receipt for any and all monies, claims and other amounts due, and to become due at any time, in respect of or arising out of the Insurance Policy; (C)

COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07

to commence and prosecute any suits, actions or proceedings at law or in equity in any court of competent jurisdiction to collect amounts due under the Insurance Policy or any part thereof and to enforce any other right in respect of the Insurance Policy; (D) to defend any suit, action or proceeding brought against Assignor with respect to the Insurance Policy; (E) to settle, compromise or adjust any suit, action or proceeding described above and, in connection therewith, to give such discharges or releases as Assignee may deem appropriate; and (F) generally to sell, transfer, pledge, make any agreement with respect to or otherwise deal with the Insurance Policy as fully and completely as though Assignee were the absolute owner thereof for all purposes, and to do, at Assignee's option, at any time, or from time to time, all acts and things that Assignee reasonably deems necessary to protect, preserve or realize upon the Insurance Policy and Assignee's lien therein, in order to effect the intent of this Assignment, all as fully and effectively as Assignor might do.

(b) Assignor hereby ratifies, to the extent permitted by law, all that any said attorney shall lawfully do or cause to be done by virtue hereof. The power of attorney granted pursuant to this Assignment, being coupled with an interest, shall be irrevocable until the Liabilities are indefeasibly paid in full (in the case of payment obligations) and otherwise satisfied and discharged.

(c) The powers conferred on Assignee hereunder are solely to protect Assignee's interests in the Insurance Policy and shall not impose any duty upon it to exercise any such powers. Assignee shall be accountable only for amounts that it actually receives as a result of the exercise of such powers and neither it nor any of its officers, directors, employees or agents shall be responsible to Assignor for any act or failure to act, except for its own gross negligence or willful misconduct.

(d) Assignor also authorizes Assignee, at any time and from time to time upon the occurrence and during the continuance of a Default Sale Event, to execute, in connection with the sale provided for herein, any endorsements, assignments or other instruments of conveyance or transfer with respect to the Insurance Policy.

10. No Waiver. Any forbearance or failure or delay by Assignee in exercising any right, power or remedy hereunder shall not be deemed to be a waiver of such right, power or remedy, and any single or partial exercise of any right, power or remedy shall not preclude the further exercise thereof. Assignee may take or release other security, may release any party primarily or secondarily liable for any of the Liabilities, may grant extensions, renewals or indulgences with respect to the Liabilities, or may apply to the Liabilities in such order as Assignee shall determine, the proceeds of the Insurance Policy hereby assigned or any amount received on account of the Insurance Policy by the exercise of any right permitted under this Assignment, without resorting or regard to other security or any guaranty. No waiver of any provision hereof shall be effective unless it shall be in writing and signed by Assignee.

11. Successors and Assigns. All of the terms and provisions of this Assignment shall be binding upon, and inure to the benefit of, and be enforceable by, the respective successors, executors, administrators and assigns of the parties hereto.

COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07

12.     Entire Agreement. This Assignment and Assigned Fee Agreements are the entire agreement and understanding of the parties with respect to the subject matter hereof and supersede all prior agreements or understandings between or among such parties with respect to such subject matter. This Assignment may not be altered or amended except by subsequent written agreement duly executed by all of the parties. The unenforceability of any provision of this Assignment shall not affect the enforceability or validity of any other provision hereof. No delay or omission on the part of Assignee in exercising any rights hereunder or under the Assigned Fee Agreements shall operate as a waiver of such right or of any other right under this Assignment, or the Assigned Fee Agreements.

13.     Notices. All notices and other communications required or permitted hereunder shall be given in writing and shall be deemed effectively given (a) upon delivery, when delivered personally against receipt therefor, (b) upon delivery when sent by certified mail, postage prepaid and return receipt requested, (c) upon transmission, when transmitted by telecopier, facsimile, telex or other electronic transmission method, provided that receipt is confirmed and notice is sent by certified or registered mail, postage prepaid and return receipt requested, or (d) upon delivery, when sent by Federal Express or other nationally recognized overnight delivery service:

If to Assignee:          Grist Mill Capital, LLC
                         100 Grist Mill Road
                         Simsbury, Connecticut 06070
                         Telephone:(860)408-7000
                         Facsimile: (860)408-7005


If to Assignor:          Charter Oak Trust
                         100 Grist Mill Road
                         Simsbury, Connecticut 06070
                         Telephone: (860) 408-7000
                         Facsimile: (860) 408-7005

With a copy to:          Christiana Bank & Trust Company
                         300 Delaware Avenue, Suite 714
                         Wilmington, DE 19801
                         Telephone: (302) 888-7438
                         Facsimile: (302) 421-3628
                         Attention: Deborah L. Lutes, Trust Officer

14.     Governing Law. This Assignment shall be governed by and construed in accordance with the internal laws of the State of New York, without giving effect to conflicts of law provision or rule (whether of the State of New York or any other jurisdiction) that would result in the application of the laws of any jurisdiction other than the State of New York.

COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07

15.    Consent to Jurisdiction and Waiver of Jury. EACH PARTY HERETO AGREES TO THE EXCLUSIVE JURISDICTION OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT OR THE CONNECTICUT SUPERIOR COURT, STAMFORD/NORWALK DIVISION, WITH RESPECT TO ANY CLAIM OR CAUSE OF ACTION, WHETHER IN LAW OR EQUITY, INCLUDING SPECIFIC PERFORMANCE, ARISING UNDER OR RELATING TO THIS AGREEMENT, AND WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS UPON IT, AND CONSENTS THAT ALL SERVICES OF PROCESS MAY BE MADE BY CERTIFIED OR REGISTERED MAIL, POSTAGE PRE-PAID AND RETURN RECEIPT REQUESTED, TO THE ADDRESS OF THE PARTIES SET FORTH HEREIN. EACH PARTY HERETO WAIVES ANY OBJECTION BASED ON FORUM NON-CONVENIENS AND WAIVES ANY OBJECTION TO VENUE OF ANY ACTION INSTITUTED HEREUNDER. EACH PARTY HERETO WAIVES TRIAL BY JURY IN ANY ACTION BROUGHT HEREUNDER. EACH PARTY HERETO AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN ANY OTHER JURISDICTION BY SUIT ON A JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW. NOTHING IN THIS SECTION SHALL AFFECT THE RIGHT OF ANY PARTY HERETO TO SERVE LEGAL PROCESS IN ANY OTHER MANNER PERMITTED BY LAW. TO THE EXTENT THAT ANY PARTY HERETO HAS OR HEREAFTER MAY ACQUIRE ANY IMMUNITY FROM JURISDICTION OF ANY COURT OR FROM ANY LEGAL PROCESS WITH RESPECT TO ITSELF OR ITS PROPERTY, SUCH PARTY HEREBY WAIVES (TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW) SUCH IMMUNITY IN RESPECT OF ITS OBLIGATIONS HEREUNDER.

16.    Heading.  The headings of the sections of this Assignment are inserted for convenience only and shall not be deemed to constitute a part hereof.

17.    Severability. In the event any one or more of the provisions contained in this Assignment shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and this Assignment shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

18.    Counterparts. This Assignment may be executed in any number of separate counterparts by one or more of the parties hereto and all of said counterparts taken together shall constitute one and the same instrument.

19.    Limited Liability. It is expressly acknowledged and agreed that the liabilities and obligations under this Assignment are the sole obligations of the Assignor and are not the individual liabilities or obligations of the Trustee or of any settlor or beneficiary of the Assignor.

[Signatures appear on following pages.]

8
COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment in favor of Assignee as of the date first written above.

ASSIGNOR:

CHARTER OAK TRUST

By: Christiana Bank & Trust Company,
     Insurance Trustee

By: _____
    Name:
    Title:

Date: _____

---

State of Delaware
County of New Castle

UNDER MY HAND AND NOTARIAL SEAL, _____ day of _____ 200__.

_____
Notary Public
My Commission Expires: _____

---

IN WITNESS WHEREOF, the undersigned assignee has accepted and acknowledged this Assignment as of the date first written above:

**ASSIGNEE:**

GRIST MILL CAPITAL, LLC, a Connecticut limited liability company

By: _Daniel E Carpenter_____
    Daniel E. Carpenter, Chairman of Managing Member

Date: _March 19 2007_____

---

State of Connecticut
County of ~~Fairfield~~ Hartford

UNDER MY HAND AND NOTARIAL SEAL, 19 day of March 2007

_Deborah Thomas_
Notary Public
My Commission Expires: Nov 30, 2010

---

9
COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07

The undersigned, _____, without assuming any responsibility for the validity or the sufficiency of the attached Collateral Assignment of Life Insurance Policy (this "Collateral Assignment"), hereby acknowledges and consents to this Collateral Assignment and agrees to pay all amounts due under the Insurance Policy specified herein directly to the Assignee, to the extent of amounts payable to the Assignee by the Assignor pursuant to the Assigned Fee Agreements and this Collateral Assignment (as such terms are defined in the preceding agreement) with the balance thereunder (if any) payable to the beneficiaries designated therein.

CONSENT AND ACKNOWLEDGEMENT:

_____, Insurer

COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07

## Exhibit A

### Assigned Life Insurance Policies

Policy No.: 7320809                    Issued By: Lincoln National ("Insurer")

# COLLATERAL ASSIGNMENT AGREEMENT

FOR VALUE RECEIVED, this COLLATERAL ASSIGNMENT AGREEMENT, dated as of April 4, 2007 (as amended, supplemented or otherwise modified from time to time, this "Assignment") is entered into by CHRISTIANA BANK & TRUST COMPANY, acting solely in its capacity as the Insurance Trustee (the "Trustee") of the CHARTER OAK TRUST, a trust created and existing under the laws of the State of Connecticut (the "Assignor") pursuant to that certain trust instrument dated as of October 1, 2006 (the "Trust Agreement"), in favor of GRIST MILL CAPITAL, LLC, a limited liability company organized under the laws of the State of Connecticut (individually or collectively, the "Assignee"), its successors and assigns. Capitalized terms not defined herein have the same meaning as described in that certain Amended and Restated Line of Credit and Security Agreement dated as of February 12, 2007, by and among Assignee, Avon Capital, LLC and the Lender therein (as it may be amended, modified, supplemented or restated from time to time, the "Loan Agreement").

1.     Assignment. Assignor hereby assigns, transfers, pledges and grants all of Assignor's claims, options, privileges, rights, titles and interests in, to and under (except as provided in Section 2 hereof) the life insurance policies described on Exhibit A attached hereto and made a part hereof to Assignee and any and all additions, renewals and supplementary contracts issued in connection therewith and any and all proceeds thereof (said policies and contracts and proceeds are hereinafter collectively referred to as the "Insurance Policy"), subject to all the terms and conditions of this Assignment. This Assignment includes, without limitation (except as provided in Section 2 hereof), Assignor's assignment of the following rights to Assignee:

(a)     The sole right to collect from the insurer(s) issuing the Insurance Policy (the "Insurer") the net proceeds of the Insurance Policy due to the death of the insured or maturity (subject to the covenants herein);

(b)     The sole right to cancel or surrender the Insurance Policy and receive the surrender value thereof at any time provided by the terms of the Insurance Policy and at such other times as the Insurer may allow;

(c)     The sole right to obtain one or more loans or advances on Assignee's interest in the Insurance Policy at any time, either from the Insurer or from other persons, and to pledge or assign Assignee's interest of the Insurance Policy as security for such loans or advances;

(d)     The sole right to collect and receive all distributions or shares of surplus, dividend deposits or additions to the Insurance Policy now or hereafter made or apportioned thereto, and to exercise any and all options contained in the Insurance Policy with respect thereto; provided, that unless and until Assignee shall notify the Insurer in

COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07

writing to the contrary, the distributions or shares of surplus, dividend deposits and additions shall continue on the plan in force at the time of this Assignment;

(e) The right to exercise all non-forfeiture rights permitted by the terms of the Insurance Policy or allowed by the Insurer and to receive all benefits and advantages derived therefrom;

(f) The right to exercise any and all voting rights or privileges to the extent created or endowed by the Insurance Policy; and

(g) The right, upon the exercise of the Default Sale Right as set forth herein, to sell, transfer and assign the interest of the Insurance Policy conveyed to Assignee pursuant to Section 8.

2.     Rights Reserved. The parties agree that, so long as the Insurance Policy has not been surrendered, Assignor shall have the right to collect from the Insurer any disability benefit payable in cash that does not reduce the amount of insurance. The reservation of this right shall in no way impair the right of the Assignee to surrender the Insurance Policy completely with all of its incidents or impair any other rights of the Assignee hereunder, and any designation or change of beneficiary or election of a mode of settlement shall be made subject to this Assignment and to the rights of the Assignee hereunder.

3.     Obligations Secured. This Assignment is made, and the Insurance Policy is to be held, as collateral security for any and all obligations and liabilities of Assignor, either now existing or that may hereafter arise, under the Assigned Fee Agreements, all of which obligations and liabilities in respect of the Assigned Fee Agreements, secured or to become secured, are herein called the "Liabilities". Subject to the terms of this Assignment, Assignee shall apply money received under the Insurance Policy to pay the Liabilities as and when they become due in the order in which they become due.

4.     Representations and Warranties of Assignor. Assignor hereby represents and warrants to Assignee and the Insurer: (a) the execution, delivery and performance of this Assignment by Assignor is within Assignor's power and do not conflict with, violate, create a lien or default under or require a consent under any document or agreement to which Assignor is a party or by which it is bound; (b) the insured under the Insurance Policy has the financial ability, but not the obligation, to make subsequent contributions to the Assignor to allow the Assignor to pay the insurance premiums required to be paid for the Insurance Policy following the no less than twenty-five (25) nor more than thirty (30) months anniversary of the Client Transaction; (c) the Assignor has an insurable interest in the life of the insured under the Insurance Policy; (d) the Insurance Policy is in full force and effect; (e) the Assignor is the sole owner of the Insurance Policy and has full authority to assign the Insurance Policy to Assignee; (f) the Assignor has neither assigned, nor granted or suffered any lien or security interest against, the Insurance Policy to any other entity, except as provided in this Assignment; (g) this Assignment constitutes a legal, valid and binding obligation of the Assignor enforceable by Assignee against the Assignor in accordance with its terms (subject to applicable bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally); and (h) none of the proceeds of the Assigned Fee

COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07

Agreements will be used for personal, family or household purposes or any purpose other than the payment of life insurance premiums and related fees and expenses for the Insurance Policy. Assignor further represents and warrants to Assignee that no proceedings in bankruptcy or any other insolvency law are pending or, to its knowledge, threatened against Assignor and that no grounds exist for any such proceedings.

5.     Covenants. Assignor and Assignee covenant and agree as follows:

(a)     Unless Assignee shall have elected to exercise the Default Sale Right (as defined below), any balance of sums received hereunder, including loans and cash withdrawals, from the Insurer remaining after payment of the then existing Liabilities, matured or unmatured, shall be paid in full by Assignee to the persons entitled thereto under the terms of the Insurance Policy;

(b)     Assignor shall not surrender, cancel, or otherwise terminate the Insurance Policy or allow the Insurance Policy to lapse or terminate. Assignor shall do or cause to be done all things necessary to preserve and keep in full force the Insurance Policy until the Liabilities have been satisfied in full under the terms and conditions of the Assigned Fee Agreements.

(c)     Assignee shall not consent to the exercise of either the right to surrender or lapse of the Insurance Policy or the right to obtain policy loans from the Insurer, unless and until there has been a Default Sale Event;

(d)     After a Default Sale Event, upon Assignor's request, Assignee shall forward to the Insurer, without unreasonable delay, the Insurance Policy for endorsement of any designation or change of beneficiary or any election of an optional mode of settlement;

(e)     The Insurer is hereby authorized and instructed by Assignor to recognize Assignee's claims to rights hereunder (including the exercise of the Default Sale Right) without investigating the reason for any action taken by Assignee, or the validity or the amount of the Liabilities or the existence of any Default Sale Event, or the giving of any notice hereunder, under applicable law or otherwise, or the application to be made by Assignee of any amounts to be paid to Assignee. The signatures of Assignee shall be sufficient for the exercise of any rights under the Insurance Policy assigned hereby and the receipt by Assignee of any sums shall be a full discharge and release therefore to the Insurer. Checks for all or any part of the sums payable under the Insurance Policy and assigned herein shall be paid to the exclusive order of Assignee if, when, and in such amounts as may be requested by Assignee;

(f)     Assignor shall at no time change the mode of premium payment or otherwise modify the timing of any such premium payments from the signed Insurance Policy illustration provided by Assignor to Assignee. Assignee shall be under no obligation to pay any premium, or the principal of or interest on any loans or advances on the Insurance Policy, whether or not obtained by Assignee, or any other charges on the Insurance Policy, but such amounts so paid by Assignee from its own funds, shall

3
COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07

become a part of the Liabilities hereby secured and shall be subject to the terms of the Assigned Fee Agreements and shall be secured by this Assignment;

(g)     The exercise of any right, option, privilege or power given by Assignor to Assignee under this Assignment shall be at the option of Assignee, and Assignee may exercise any such right, option, privilege or power without notice to, or assent by, or affecting the liability of, or releasing any interest hereby assigned by Assignor;

(h)     Assignee shall promptly notify Assignor in writing if Assignee shall assign any of its rights under the Assigned Fee Agreements or this Assignment, and Assignee shall provide Assignor with the name and address of Assignee, and such other information as Assignor may request; and

(i)     Assignee shall promptly provide Assignor with copies of all documents, instruments, correspondence and other written materials received by Assignee from the Insurer, and promptly (but in no event later than fifteen (15) days following receipt) remit to Assignor Assignee's share of any proceeds received by Assignee from the Insurer that are payable by Assignee to Assignor.

6.     Termination. This Assignment shall automatically terminate on the date on which the Liabilities have been paid and performed in full.

7.     Further Assurances. Assignee and Assignor each hereby covenant and agree to execute any and all documents, instruments, certificates and agreements that may be necessary to give effect to the matters contemplated herein.

8.     Default Sale Right; Default Sale Event. Each of the following shall constitute a "Default Sale Event" as that term is used in this Assignment: the occurrence and continuation of an event of default under the Assigned Fee Agreements which has not been remedied within the time period, if any, set forth in the Assigned Fee Agreements, (b) the occurrence and continuation of any breach by Assignor of any material covenant or obligation of Assignor contained in the Assigned Fee Agreements, and (c) the occurrence and continuation of any breach by Assignor of any material covenant or obligation of Assignor contained in this Collateral Assignment; provided that no event of default or breach of covenant or obligation shall be deemed to be a Default Sale Event unless, on or after the occurrence thereof, Assignee shall have given Assignor written notice of such event of default or breach of covenant or obligation, which notice shall state that Assignee has determined to exercise its Default Sale Right (the "Default Sale Notice") and thus foreclose on the Insurance Policy. Upon receipt of a Default Sale Notice, Assignor shall immediately transfer and assign Assignor's ownership, claims, options, privileges, rights, titles and interests, without limitation, in, to and under the Insurance Policy to Assignee (or its designee) and thereby forever relinquish any and all rights Assignor may have under this Assignment or the Note (the "Default Sale Right"). Assignor shall execute any and all documents necessary to effect the Default Sale Right. Upon the exercise of this Default Sale Right, Assignee shall notify the Insurer in writing and the Insurer shall thereafter recognize Assignee as the sole lawful owner of the Insurance Policy, and Assignee, acting in its sole and absolute discretion, shall have full power and authority (a) to sell or

COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07

otherwise dispose of the Insurance Policy and to receive all consideration obtained in connection with such sale or other disposition, (b) to receive all payments due from the Insurer with respect to the Insurance Policy, and (c) otherwise to enjoy all rights and benefits of the Insurance Policy. Monies or other proceeds received by Assignee upon exercise of the Default Sale Right or otherwise in exercise of its rights and remedies by the giving of a Default Sale Notice following a Default Sale Event shall be applied as follows: first to payment of all costs and expenses, including fees and expenses of Assignee's counsel, incurred by the Assignee in connection with the Default Sale Event and exercise of its rights and remedies; second, to the payment of all amounts due and owing with respect to the Assigned Fee Agreements; and third, to the extent of any excess, the balance also to the Assignee, it being understood that such balance of any payments of death benefits or other amounts on the Insurance Policy, following application of the proceeds thereof to the items in paragraphs first through fourth, shall be remitted to the Assignor during the period prior to the Assignor's receipt of the Default Sale Notice declaring the Assignee's exercise of the Default Sale Right upon the occurrence of a Default Sale Event, but such balance shall be irrevocably retained by the Assignee (or its assigns) and not remitted to the Assignor if received during the period from and after the date the Assignor receives the Default Sale Notice declaring Assignee's exercise of the Default Sale Right upon the occurrence of a Default Sale Event.

9. Assignee's Appointment as Attorney-in-Fact.

(a) Assignor hereby irrevocably constitutes and appoints Assignee and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of Assignor and in the name of Assignor or in its own name, from time to time in Assignee's discretion, for the limited purpose of carrying out all terms of this Assignment, to take any and all appropriate action and to execute and deliver any and all documents and instruments which Assignee may deem necessary or desirable to accomplish the purposes of this Assignment and, without limiting the generality of the foregoing, hereby gives Assignee the power and right, on behalf of Assignor, without notice to or assent by Assignor to do the following:

(i) to take possession of and endorse and collect any checks, drafts, notes, acceptances or other instruments for the payment of monies due under the Insurance Policy and to file any claim or to take any other action or proceeding in any court of law or equity or otherwise deemed appropriate by Assignee for the purpose of collecting any and all such monies due under the Insurance Policy whenever payable and to file any claim or to take any other action or proceeding in any court of law or equity or otherwise deemed appropriate by Assignee for the purpose of collecting any and all such monies due under the Insurance Policy whenever payable; and

(ii) (A) to direct any party liable for any payment under the Insurance Policy to make payment of any and all monies due, and to become due there under, directly to Assignee or as the Assignee shall direct; (B) to receive payment of and receipt for any and all monies, claims and other amounts due, and to become due at any time, in respect of or arising out of the Insurance Policy; (C)

COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07

to commence and prosecute any suits, actions or proceedings at law or in equity in any court of competent jurisdiction to collect amounts due under the Insurance Policy or any part thereof and to enforce any other right in respect of the Insurance Policy; (D) to defend any suit, action or proceeding brought against Assignor with respect to the Insurance Policy; (E) to settle, compromise or adjust any suit, action or proceeding described above and, in connection therewith, to give such discharges or releases as Assignee may deem appropriate; and (F) generally to sell, transfer, pledge, make any agreement with respect to or otherwise deal with the Insurance Policy as fully and completely as though Assignee were the absolute owner thereof for all purposes, and to do, at Assignee's option, at any time, or from time to time, all acts and things that Assignee reasonably deems necessary to protect, preserve or realize upon the Insurance Policy and Assignee's lien therein, in order to effect the intent of this Assignment, all as fully and effectively as Assignor might do.

(b)     Assignor hereby ratifies, to the extent permitted by law, all that any said attorney shall lawfully do or cause to be done by virtue hereof. The power of attorney granted pursuant to this Assignment, being coupled with an interest, shall be irrevocable until the Liabilities are indefeasibly paid in full (in the case of payment obligations) and otherwise satisfied and discharged.

(c)     The powers conferred on Assignee hereunder are solely to protect Assignee's interests in the Insurance Policy and shall not impose any duty upon it to exercise any such powers. Assignee shall be accountable only for amounts that it actually receives as a result of the exercise of such powers and neither it nor any of its officers, directors, employees or agents shall be responsible to Assignor for any act or failure to act, except for its own gross negligence or willful misconduct.

(d)     Assignor also authorizes Assignee, at any time and from time to time upon the occurrence and during the continuance of a Default Sale Event, to execute, in connection with the sale provided for herein, any endorsements, assignments or other instruments of conveyance or transfer with respect to the Insurance Policy.

10.     No Waiver. Any forbearance or failure or delay by Assignee in exercising any right, power or remedy hereunder shall not be deemed to be a waiver of such right, power or remedy, and any single or partial exercise of any right, power or remedy shall not preclude the further exercise thereof. Assignee may take or release other security, may release any party primarily or secondarily liable for any of the Liabilities, may grant extensions, renewals or indulgences with respect to the Liabilities, or may apply to the Liabilities in such order as Assignee shall determine, the proceeds of the Insurance Policy hereby assigned or any amount received on account of the Insurance Policy by the exercise of any right permitted under this Assignment, without resorting or regard to other security or any guaranty. No waiver of any provision hereof shall be effective unless it shall be in writing and signed by Assignee.

11.     Successors and Assigns. All of the terms and provisions of this Assignment shall be binding upon, and inure to the benefit of, and be enforceable by, the respective successors, executors, administrators and assigns of the parties hereto.

COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07

12. Entire Agreement. This Assignment and Assigned Fee Agreements are the entire agreement and understanding of the parties with respect to the subject matter hereof and supersede all prior agreements or understandings between or among such parties with respect to such subject matter. This Assignment may not be altered or amended except by subsequent written agreement duly executed by all of the parties. The unenforceability of any provision of this Assignment shall not affect the enforceability or validity of any other provision hereof. No delay or omission on the part of Assignee in exercising any rights hereunder or under the Assigned Fee Agreements shall operate as a waiver of such right or of any other right under this Assignment, or the Assigned Fee Agreements.

13. Notices. All notices and other communications required or permitted hereunder shall be given in writing and shall be deemed effectively given (a) upon delivery, when delivered personally against receipt therefor, (b) upon delivery when sent by certified mail, postage prepaid and return receipt requested, (c) upon transmission, when transmitted by telecopier, facsimile, telex or other electronic transmission method, provided that receipt is confirmed and notice is sent by certified or registered mail, postage prepaid and return receipt requested, or (d) upon delivery, when sent by Federal Express or other nationally recognized overnight delivery service:

If to Assignee:      Grist Mill Capital, LLC
                     100 Grist Mill Road
                     Simsbury, Connecticut 06070
                     Telephone:(860)408-7000
                     Facsimile: (860)408-7005


If to Assignor:      Charter Oak Trust
                     100 Grist Mill Road
                     Simsbury, Connecticut 06070
                     Telephone: (860) 408-7000
                     Facsimile: (860) 408-7005

With a copy to:      Christiana Bank & Trust Company
                     300 Delaware Avenue, Suite 714
                     Wilmington, DE 19801
                     Telephone: (302) 888-7438
                     Facsimile: (302) 421-3628
                     Attention: Deborah L. Lutes, Trust Officer

14. Governing Law. This Assignment shall be governed by and construed in accordance with the internal laws of the State of New York, without giving effect to conflicts of law provision or rule (whether of the State of New York or any other jurisdiction) that would result in the application of the laws of any jurisdiction other than the State of New York.

COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07

15.     Consent to Jurisdiction and Waiver of Jury. EACH PARTY HERETO AGREES TO THE EXCLUSIVE JURISDICTION OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT OR THE CONNECTICUT SUPERIOR COURT, STAMFORD/NORWALK DIVISION, WITH RESPECT TO ANY CLAIM OR CAUSE OF ACTION, WHETHER IN LAW OR EQUITY, INCLUDING SPECIFIC PERFORMANCE, ARISING UNDER OR RELATING TO THIS AGREEMENT, AND WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS UPON IT, AND CONSENTS THAT ALL SERVICES OF PROCESS MAY BE MADE BY CERTIFIED OR REGISTERED MAIL, POSTAGE PRE-PAID AND RETURN RECEIPT REQUESTED, TO THE ADDRESS OF THE PARTIES SET FORTH HEREIN. EACH PARTY HERETO WAIVES ANY OBJECTION BASED ON FORUM NON-CONVENIENS AND WAIVES ANY OBJECTION TO VENUE OF ANY ACTION INSTITUTED HEREUNDER. EACH PARTY HERETO WAIVES TRIAL BY JURY IN ANY ACTION BROUGHT HEREUNDER. EACH PARTY HERETO AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN ANY OTHER JURISDICTION BY SUIT ON A JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW. NOTHING IN THIS SECTION SHALL AFFECT THE RIGHT OF ANY PARTY HERETO TO SERVE LEGAL PROCESS IN ANY OTHER MANNER PERMITTED BY LAW. TO THE EXTENT THAT ANY PARTY HERETO HAS OR HEREAFTER MAY ACQUIRE ANY IMMUNITY FROM JURISDICTION OF ANY COURT OR FROM ANY LEGAL PROCESS WITH RESPECT TO ITSELF OR ITS PROPERTY, SUCH PARTY HEREBY WAIVES (TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW) SUCH IMMUNITY IN RESPECT OF ITS OBLIGATIONS HEREUNDER.

16.     Heading. The headings of the sections of this Assignment are inserted for convenience only and shall not be deemed to constitute a part hereof.

17.     Severability. In the event any one or more of the provisions contained in this Assignment shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and this Assignment shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

18.     Counterparts. This Assignment may be executed in any number of separate counterparts by one or more of the parties hereto and all of said counterparts taken together shall constitute one and the same instrument.

19.     Limited Liability. It is expressly acknowledged and agreed that the liabilities and obligations under this Assignment are the sole obligations of the Assignor and are not the individual liabilities or obligations of the Trustee or of any settlor or beneficiary of the Assignor.

[Signatures appear on following pages.]

8
COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 01/17/07

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment in favor of Assignee as of the date first written above.

ASSIGNOR:

CHARTER OAK TRUST

By: Christiana Bank & Trust Company,
     Insurance Trustee

By: _____
     Name:
     Title:

Date: _____

State of Delaware
County of New Castle

UNDER MY HAND AND NOTARIAL SEAL, _____day of _____200__.

_____
Notary Public
My Commission Expires: _____

IN WITNESS WHEREOF, the undersigned assignee has accepted and acknowledged this Assignment as of the date first written above:

**ASSIGNEE:**

GRIST MILL CAPITAL, LLC, a Connecticut limited liability company

By: _Daniel E. Carpenter_ _____
Daniel E. Carpenter, Chairman of Managing Member

Date: _4/04/07_ _____

State of Connecticut
County of Hartford

UNDER MY HAND AND NOTARIAL SEAL, 4ᵗʰ day of April 200 7

_____
Notary Public
My Commission Expires: 1·31·08

COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07

The undersigned, _____, without assuming any responsibility for the validity or the sufficiency of the attached Collateral Assignment of Life Insurance Policy (this "Collateral Assignment"), hereby acknowledges and consents to this Collateral Assignment and agrees to pay all amounts due under the Insurance Policy specified herein directly to the Assignee, to the extent of amounts payable to the Assignee by the Assignor pursuant to the Assigned Fee Agreements and this Collateral Assignment (as such terms are defined in the preceding agreement) with the balance thereunder (if any) payable to the beneficiaries designated therein.

CONSENT AND ACKNOWLEDGEMENT:

_____, Insurer

COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07

<u>Exhibit A</u>

Assigned Life Insurance Policies


Policy No.:    7305475                    Issued By: Lincoln National ("Insurer")

# EXHIBIT
# 4

| Date: | April 4, 2007 |
| Insured: | Sash Spencer |
| Carrier: | Lincoln National |
| Policy No. | 7305475 |

# CHARTER OAK TRUST

## FUNDING OBLIGATION AGREEMENT AND POWER OF ATTORNEY

THIS POWER OF ATTORNEY AND FUNDING OBLIGATION AGREEMENT ("Agreement"), dated as of the date first above written, is by and between the Charter Oak Trust (the "Trust") and Grist Mill Capital, LLC (the "Funder").

Whereas, the Trust has been established to provide for the acquisition of and investment in various types of insurance policies to provide a welfare benefit fund or estate planning benefits for certain specified participants; and

Whereas, Funder conducts a life insurance premium funding business pursuant to which Funder applies for and obtains a life insurance policy or policies (collectively, the "Policy") issued on the life of the insured (the "Insured"), with such Policy at all times being owned by the Trust; and

Whereas, in consideration of Funder managing the Policy application process by which the Policy shall be issued to and/or acquired by the Trust, Funder shall receive certain fees from the Trust as outlined herein; and

Whereas, all parties hereto agree to operate the Trust and the financial investment in the Policy in such a way as to not violate any state or federal laws in the United States of America or to do anything to jeopardize the Trust or any specific entity's tax exempt status;

NOW, THEREFORE, the parties hereto hereby agree, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, to the following provisions:

1. For so long as the Trust owns the Policy, the Trust shall be the sole owner and beneficiary of the Policy.

2. The Trust hereby agrees to pay the Funder (i) repayment of all payments and contributions funded regarding the Policy, (ii) an Origination Fee of twenty percent (20%) of the total amount funded, and (iii) a placement fee of no more than ten percent (10%) of the face amount (or death benefit) of the Policy (collectively, the "Payments"), in consideration of the Funder managing the application for and issuance of the Policy and the funding arrangement.

3. In the case of a newly issued Policy, the Trust shall be the applicant for all Policy application purposes.

1

COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07

4. The Trust hereby agrees that the Payments shall be due and payable within ninety (90) days of receipt by the Trust of the proceeds from the maturation, disposition, or termination of the Policy.

5. The Funder hereby agrees to obtain on an as-needed basis a current HIPAA compliant authorization executed by the Insured authorizing the Funder to obtain current medical records from the Insured's medical providers. The Trust shall render all reasonable necessary assistance to the Funder in obtaining such authorizations.

6. The Trust hereby grants to Funder and its designee an unconditional power of attorney coupled with an interest in favor of the Funder and its designee authorizing the Funder and its designee to take any and all actions on the Trust's behalf with respect to the Policy and its attendant benefits. Such power of attorney shall be irrevocable for so long as Funder owes any amounts to Ridgewood Finance, Inc. ("Ridgewood") with respect to the Policy. Funder hereby irrevocably and unconditionally makes Ridgewood its designee under such power of attorney for so long as Funder owes any amounts to Ridgewood with respect to the Policy.

7. As security interest for the due and punctual payment of any and all Payments or other obligations of the Trust hereunder, the Trust hereby assigns, mortgages, pledges, hypothecates, transfers, sets over, and grants to the Funder a first priority lien and a first priority security interest in and to all properties, assets, and rights of the Trust, wherever located, whether now owned or hereafter acquired or arising, including, without limitation, the Policy (including all proceeds thereof, such proceeds to encompass, among other things, any premium refunds, cash value, death proceeds or other payments by the insurer with respect to such Policy or any proceeds from the sale thereof), and all certificates and other writings representing or evidencing any of such life insurance policies, property or rights in and to the same, including, without limitation, each original manuscript policy, all personal and fixture property of every kind and nature, all goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts (including healthcare insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter of credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, supporting obligations, any other contract rights or rights to the payment of money, insurance claims or proceeds, tort claims, and all general intangibles including, without limitation, all payment intangibles, patents, patent applications, trademarks, trademark applications, trade names, copyrights, copyright applications, software, engineering drawings, service marks, customer lists, goodwill, and all licenses, permits, agreements of any kind or nature, pursuant to which the Trust possesses, uses or has authority to possess or use property (whether tangible or intangible) of the Trust, and all recorded data of any kind or nature, regardless of the medium of recording including, without limitation, all software, writings, plans, specifications and schematics, and any and all additions and accessions to the foregoing, all substitutions and replacements therefor, and all products and proceeds thereof. All terms defined in the Uniform Commercial Code of the State of New York and used herein shall have the same definitions herein as now specified therein and as such terms may hereafter be amended; provided, however, the term "instrument" shall be such term as defined in Article 9 of the Uniform Commercial Code of the State of New York rather than Article 3 thereof. The Funder shall have the right to file one or more financing statements pursuant to the Uniform Commercial Code or other notices appropriate under applicable law in form satisfactory to the Funder, in all public offices where filing or recording is deemed by the Funder to be necessary or desirable. The Trust hereby authorizes the Funder to take all action (including, without limitation, the filing of any Uniform Commercial Code Financing Statements or

2

COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07

amendments thereto, without the signature of the Trust) that the Funder may deem necessary or desirable to perfect or otherwise protect the liens and security interests created hereunder and to obtain the benefits of this Agreement.

8. This Agreement may be amended or modified only by a written instrument signed by both parties. The terms of this Agreement cannot be orally waived, but only by a writing signed by the waiving party. Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

9. This Agreement shall be governed by the laws of the State of New York. Any and all disputes regarding this Agreement and/or the Policy shall be submitted to binding arbitration before a single arbitrator under the commercial arbitration rules of the American Arbitration Association, and such arbitration shall take place in New York, New York. The arbitrator shall not be empowered to award special or punitive damages. The losing party in the arbitration shall pay all fees and costs (including attorneys' fees and costs, as well as the costs of arbitration) of the prevailing party. The final decision of the arbitrator shall be final, binding, and non-appealable, and judgment on the award may be entered in any court having jurisdiction thereof.

The parties hereto hereby evidence their agreement to the provisions above with their signatures below.

**CHARTER OAK TRUST**                      **GRIST MILL CAPITAL, LLC**

_____              _____
Wayne H. Bursey                           Daniel E. Carpenter
President                                Chairman of Managing Member
Nova Group, Inc.
Trustee of the Charter Oak Trust

STATE OF CONNECTICUT  )
COUNTY OF HARTFORD    )    ss:

Personally appeared Wayne H. Bursey, signer and sealer of the foregoing document on behalf of the Charter Oak Trust, and acknowledged the same to be his free act and deed before me on this 4ᵗʰ day of April , 20 07.

_____
NOTARY PUBLIC
My commission expires: 1·31·08

COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07

STATE OF CONNECTICUT )
COUNTY OF HARTFORD ) ss:

Personally appeared Daniel E. Carpenter, signer and sealer of the foregoing document on behalf of the Grist Mill Capital, LLC, and acknowledged the same to be his free act and deed before me on this 4ᵗʰ day of April , 20 07.

NOTARY PUBLIC
My commission expires: 1·31· 08

4
COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07