**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- x

| | |
|---|---|
| **UNIVERSITAS EDUCATION, LLC,** : | **Case No.: 11 CV 1590-LTS-HBP** |
| : | |
| **Petitioner,** : | |
| **v.** : | |
| : | |
| **NOVA GROUP, INC., as Trustee, Sponsor** : | |
| **and Named Fiduciary of the CHARTER OAK** : | |
| **TRUST WELFARE BENEFIT PLAN,** : | |
| : | |
| **Respondent.** : | |

-------------------------------------------------------------- x

| | |
|---|---|
| **NOVA GROUP, INC., as Trustee, Sponsor** : | **Case No.: 11 CV 8726-LTS-RLE** |
| **and Named Fiduciary of the CHARTER OAK** : | |
| **TRUST WELFARE BENEFIT PLAN,** : | |
| : | |
| **Petitioner,** : | |
| **v.** : | |
| : | |
| **UNIVERSITAS EDUCATION, LLC,** : | |
| : | |
| **Respondent.** : | |

-------------------------------------------------------------- x

## MEMORANDUM OF LAW IN OPPOSITION TO UNIVERSITAS EDUCATION, LLC'S MOTION FOR TURNOVER AND PERMANENT INJUNCTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................ii

I.      STATEMENT OF FACTS ..................................................................... 1

II.     ARGUMENT ......................................................................................... 4

        A.  Universitas must commence a separate proceeding against Grist
            Mill Trust .............................................................................................. 4

        B.  Connecticut's Uniform Fraudulent Transfer Act applies ..................... 8

            1.  Connecticut's four-year statute of repose creates material
                Conflict of law .............................................................................. 8

            2.  The Court should apply Connecticut law ..................................... 10

        C.  Universitas cannot meet its burden under C.P.L.R. § 5225(b) ......... 11

            1.  Nova no longer retains interest in money transferred to Grist
                Mill Trust .................................................................................... 12

            2.  Universitas' rights to transferred funds are not superior to those
                of Grist Mill Trust ....................................................................... 13

        D.  Universitas is not entitled to injunctive relief .................................... 16

            1.  Universitas will not succeed on the merits ................................. 16

            2.  Universitas does not face irreparable harm ............................... 16

III.    CONCLUSION .................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*325 Bleecker, Inc. v. Local Union No. 747*,
  500 F. Supp. 2d 110 (N.D.N.Y. 2007) .............................................................. 16

*Alliance Bond Fund, Inc. v. Grupo Mexicano De Desarrollo, S.A.*,
  190 F.3d 16 (2d Cir. 1999) .................................................................................. 5

*Amoco Production Co. v. Village of Gambell*,
  480 U.S. 531 (1987) .......................................................................................... 16

*Atlanta Shipping Corp., Inc. v. Chem. Bank*,
  818 F.2d 240 (2d Cir. 1987) .............................................................................. 15

*Baker v. Power Sec. Corp.*,
  948 F. Supp. 255 (W.D.N.Y. 1996) ................................................................... 13

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
  171 F.3d 779 (2d Cir. 1999) ........................................................................... 6, 7

*Beauvais v. Allegiance Sec., Inc.*,
  942 F.2d 838 (2d Cir. 1991) ....................................................................... 12, 16

*Citibank N.A. v. Citytrust*,
  756 F.2d 273 (2d Cir.1985) ............................................................................... 17

*Comer v. Titan Tool, Inc.*,
  875 F. Supp. 255 (S.D.N.Y. 1995) .................................................................... 10

*Crimmins v. Am. Stock Exch., Inc.*,
  346 F. Supp. 1256 (S.D.N.Y. 1972) .................................................................. 17

*Drenis v. Haligiannis*,
  452 F. Supp. 2d 418 (S.D.N.Y. 2006) ................................................................. 9

*Epperson v. Entm't Exp., Inc.*,
  159 F. App'x 249, 252 (2d Cir. 2005) ................................................................. 9

*Gelbard v. Esses*,
  465 N.Y.S.2d 264 (1983) .................................................................................. 13

*Gen. Fireproofing Co. v. Wyman*,
  444 F.2d 391 (2d Cir. 1971) ............................................................................. 17

*GFL Advantage Fund, Ltd. v. Colkitt*,
No. 03-CIV-1256-JSM, 2003 WL 21459716 (S.D.N.Y. June 24, 2003)............. 9, 10

*GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*,
449 F.3d 377 (2d Cir. 2006) ........................................................................... 10

*HBE Leasing Corp. v. Frank*,
48 F.3d 623 (2d Cir. 1995) ....................................................................... 14, 16

*HSH Nordbank AG New York Branch v. Street*,
No. 11-CIV-9405-DLC, 2012 WL 2921875 (S.D.N.Y. July 18, 2012) ................ 7

*In re Sharp Int'l Corp.*,
403 F.3d 43 (2d Cir. 2005) ............................................................................... 9

*In re Sol Goodman Co.*,
5 F. Supp. 517 (S.D.N.Y. 1932), *aff'd sub nom. In re Sol Goodman, Inc.*,
68 F.2d 1014 (2d Cir. 1933) ........................................................................... 14

*JSG Trading Corp. v. Tray–Wrap, Inc.*,
917 F.2d 75 (2d Cir.1990) .............................................................................. 17

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487 (1941) ......................................................................................... 9

*Mareno v. Rowe*,
910 F.2d 1043 (2d Cir. 1990) ........................................................................... 6

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996) ............................................................................... 8

*MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co.*,
910 F. Supp. 913 (S.D.N.Y. 1995) .............................................................. 14, 15

*New York State Nat. Org. for Women v. Terry*,
886 F.2d 1339 (2d Cir. 1989) ......................................................................... 16

*Orr v. Kinderhill Corp.*,
991 F.2d 31 (2d Cir. 1993) ............................................................................... 9

*Padula v. Lilarn Properties Corp.*,
84 N.Y.2d 519 (1994) ..................................................................................... 11

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
609 F.3d 30 (2d Cir. 2010) ............................................................................... 6

iii

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
    446 F. Supp. 2d 163 (S.D.N.Y. 2006) .................................................................. 9

*Runaway Dev. Grp. v. Pentagen Technologies Int'l Ltd.*,
    396 F. Supp. 2d 471 (S.D.N.Y. 2005) ............................................................. 4, 5

*Tanges v. Heibelberg North America, Inc.*,
    93 N.Y.2d 48 (1999) ........................................................................................ 10

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*,
    216 F. Supp. 2d 198 (S.D.N.Y. 2002) ............................................................. 10

*United States v. McCombs*,
    30 F.3d 310 (2d Cir. 1994) .............................................................................. 14

*Wasserman Media Group, LLC v. Bender*,
    No. 10-CIV-8783-SAS, 2012 WL 1506181 (S.D.N.Y. Apr. 26, 2012) ................. 4

*Whitaker v. Fresno Telsat, Inc.*,
    87 F. Supp. 2d 227 (S.D.N.Y. 1999), *aff'd sub nom. Whitaker v. Am.*
    *Telecasting, Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001) .............................. 8

**Statutes**

Conn. Gen. Stat. § 52-552a ................................................................................... 8

Conn. Gen. Stat. § 52-552j ............................................................................. 9, 11

N.Y. C.P.L.R. § 213 ............................................................................................... 9

N.Y. C.P.L.R. § 302(a)(3)(ii) .......................................................................... 5, 6, 7

N.Y. C.P.L.R. § 5225(a) ......................................................................................... 5

N.Y. C.P.L.R. § 5225(b) ...................................................................... 4, 5, 11, 12, 16

N.Y. Debt. & Cred. Law, § 270 ............................................................................... 9

N.Y. Debt. & Cred. Law, § 276 ....................................................................... 14, 16

**Other Authorities**

Fed. R. Civ. P. 69 ................................................................................................... 5

Fed. R. Civ. P. 69(a) ............................................................................................ 12

Respondent, Grist Mill Trust Welfare Benefit Plan ("Grist Mill Trust") files this Memorandum of Law in Opposition to Universitas Education, LLC's ("Universitas") Motion for Turnover and Permanent Injunction (Doc. 308)[1] and Memorandum of Law in Support (Doc. 309) dated October 21, 2013. The Declaration of Kathy Kehoe ("Kehoe Decl."), with Exhibits A – EE, and the Declaration of Glenn A. Duhl ("Duhl Decl.") , with Exhibits A–B, support this Opposition.

## I.    STATEMENT OF FACTS

Grist Mill Trust is a multiple employer trust organized under the laws of the State of Connecticut that provides death benefits, as well as other welfare benefits, to certain specified covered individuals. Wayne H. Bursey is signatory trustee of NOVA Benefit Plans, LLC, which is the trustee and plan sponsor of Grist Mill Trust. Kehoe Decl. at ¶¶5–8, Exhibits A–C.

In 2006, 2007 and 2008, Grist Mill Trust and Grist Mill Capital, LLC ("Grist Mill Capital") entered into several loan agreements that predated: (i) the death of Sash Spencer in June, 2008; (ii) the disbursement of life insurance proceeds from Lincoln Life Insurance Company to Charter Oak Trust in May, 2009; (iii) the demand for arbitration made by Universitas in June, 2010; and (iv) the action commenced by Universitas to confirm the arbitration award filed in January, 2011.[2]

On August 11, 2006, Grist Mill Capital and Grist Mill Trust entered into a loan agreement and promissory note (the "August 2006 Agreement") whereby Grist Mill Trust agreed to loan to Grist Mill Capital the total sum of $802,335.00 for premium payments

---

[1]Unless otherwise specified, all references to docket entries are for those in Case No. 11 CV 1590-LTS-HBP.
[2]One loan agreement for which Grist Mill Capital repaid Grist Mill Trust in December, 2009, took place in July, 2009. Universitas cannot show, however, that the funds transferred by Grist Mill Capital to Grist Mill Trust as repayment for this loan originated from the Charter Oak Trust account.

on a certain life insurance policy (the "Policy"). Id. at ¶8, Exh. D. In accordance with the August 2006 Agreement, on August 18, 2006, Grist Mill Trust wired $289,889.00 from Grist Mill Trust's JP Morgan account to a Phoenix Life Insurance Company account for payment of the first year premium of the Policy. Id. at ¶10, Exh. E. On August 25, 2006, Grist Mill Trust wired $17,000.00 from Grist Mill Trust's JP Morgan account to a Phoenix Life Insurance Company account for a subsequent payment of the first year premium of the Policy. Id. at ¶11, Exh. F.

On August 1, 2007, Grist Mill Trust wired $298,889.00 from Grist Mill Trust's JP Morgan account to a Phoenix Life Insurance Company account for payment of the second year premium of the Policy. Id. at ¶12, Exhs. G–H. As this amount exceeded the amount due for the second year premium of the Policy, Phoenix Life Insurance Company refunded Grist Mill Trust in the amount of $93,889.00. Id. at ¶13, Exh. I.

In accordance with the August 2006 Agreement, on December 31, 2008, Grist Mill Trust issued a check in the amount of $281,446.00 to the insured of the Policy to purchase the Policy from the insured. Id. at ¶14, Exhs. J–L.

Pursuant to the August 2006 Agreement, Grist Mill Capital was to pay Grist Mill Trust the sum of the total amount borrowed to pay the Policy premiums on demand, but no later than August 14, 2009, with interest computed at one percent per month or twelve percent per annum. Id. at ¶15, Exh. D. On June 9, 2009, Grist Mill Capital paid Grist Mill Trust the sum of $965,314.17 for the premium payments and purchase of the Policy, plus interest of twelve percent per annum. Id. at ¶16, Exhs. M–O.

On October 1, 2007, Grist Mill Capital and Grist Mill Trust entered into a loan agreement and promissory note (the "October 2007 Agreement") whereby Grist Mill

Trust agreed to loan Grist Mill Capital the sum of $2,500,000.00. Id. at ¶17, Exh. P. In accordance with the October 2007 Agreement, on October 4, 2007, Grist Mill Trust wired $2,500,000.00 from Grist Mill Trust's JP Morgan account to Grist Mill Capital's Bank of America account. Id. at ¶18, Exhs. Q–R. Pursuant to the October 2007 Agreement, Grist Mill Capital was to pay Grist Mill Trust the sum of the amount borrowed on demand, but no later than October 4, 2010, with interest computed at one percent per month or eight percent per annum. Id. at ¶19, Exh. P. On June 9, 2009, Grist Mill Capital paid Grist Mill Trust the sum of $2,833,568.64, including interest, in satisfaction of the October 2007 Agreement. Id. at ¶20, Exhs. S–T.

On February 13, 2008, the Sickness Accident Disability Indemnity Plan & Trust (the "S.A.D.I. Trust") advanced the sum of $178,125.00 to Fidelity & Guaranty Life Insurance Company for payment of overdue policy premiums on behalf of Grist Mill Capital. Id. at ¶21, Exhs. U–V. Grist Mill Capital was to reimburse the S.A.D.I. Trust for said payment. Id. at ¶22, Exh. W. On December 3, 2009, Grist Mill Capital wired the sum of $178,125.00 to S.A.D.I. Trust's account as repayment for said payment. Grist Mill Trust was not the recipient of this transfer. Id. at ¶23, Exhs. X–Y. As it was the S.A.D.I. Trust that advanced these funds on behalf of Grist Mill Capital, and the S.A.D.I. Trust that received repayment by Grist Mill Capital, Grist Mill Trust disputes Universitas' contention that this transfer be imputed to Grist Mill Trust. See id. at ¶24.

On July 23, 2009, Grist Mill Capital requested that Grist Mill Trust loan Grist Mill Capital the sum of $500,000.00 on behalf of a client. Id. at ¶25. In accordance with this request, on July 23, 2009, Grist Mill Trust wired the sum of $500,000.00 from Grist Mill Trust's JP Morgan account to Grist Mill Capital's Bank of America account. Id. at ¶26,

Exhs. Z–AA. On December 3, 2009, Grist Mill Capital paid Grist Mill Trust the sum of $510,000.00, representing the principal amount loaned to Grist Mill Capital plus six percent interest. Id. at ¶27, Exhs. BB–EE.

Each of the payments made by Grist Mill Capital to Grist Mill Trust in June, 2009, and December, 2009, were made in satisfaction of legitimate loan agreements entered into between Grist Mill Capital and Grist Mill Trust. See id. at ¶28. Notwithstanding, Universitas brings the present motion seeking turnover of the payments made by Grist Mill Capital to Grist Mill Trust in the total amount of $4,487,007.81 as alleged fraudulent conveyances.

## II.    ARGUMENT

### A.   <u>Universitas must commence a separate proceeding against Grist Mill Trust</u>.

The Court should deny Universitas' motion for turnover for the reason that a separate action is necessary both to conform to the statutory requirements set forth in C.P.L.R. § 5225(b), and in order to acquire personal jurisdiction over Grist Mill Trust, a non-party transferee.

Universitas asserts that pursuant to Fed. R. Civ. P. 69, a judgment creditor may bring a proceeding in federal court under C.P.L.R. § 5225(b) by motion and need not bring a separate action against the Respondents. See Universitas Education, LLC's Memorandum of Law in Support of its Motion for a Preliminary Injunction, Permanent Injunction and Turnover (Doc. 309) ("Universitas' Mem.") at p. 15. Contrary to this assertion, a separate proceeding must be brought, particularly when personal jurisdiction over the non-party transferee is at issue. *See Runaway Dev. Grp. v. Pentagen Technologies Int'l Ltd.*, 396 F. Supp. 2d 471, 473–74 (S.D.N.Y. 2005)

(denying motion for turnover order as improper vehicle for seeking relief); *Wasserman Media Group, LLC v. Bender*, No. 10-CIV-8783-SAS, 2012 WL 1506181 (S.D.N.Y. Apr. 26, 2012) (dismissing turnover action brought pursuant to Rule 69 motion because separate legal proceeding necessary to establish personal jurisdiction over non-party garnishee).

Section 5225(b), as distinguished from C.P.L.R. § 5225(a),[3] requires that the judgment creditor *commence an action* against someone, other than the judgment debtor, who is in possession of the property sought by the creditor, instead of merely filing a motion. *See Alliance Bond Fund, Inc. v. Grupo Mexicano De Desarrollo, S.A.*, 190 F.3d 16, 21 (2d Cir. 1999) (finding that judgment creditor pursuing property in possession of someone other than judgment debtor must commence action against person in possession); *see also Runaway Dev. Grp.*, 396 F. Supp. 2d at 473–74.

This is particularly true when, as in the present case, the court lacks personal jurisdiction over the non-party transferee, Grist Mill Trust. Universitas asserts that personal jurisdiction over each of the Respondents, including Grist Mill Trust, exists pursuant to New York's long arm statute, C.P.L.R. § 302(a)(3)(ii). Section 302(a)(3)(ii) provides for personal jurisdiction over a non-domiciliary who "commits a tortious act without the state causing injury to person or property within the state . . . if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]" To establish jurisdiction under § 302(a)(3)(ii), a plaintiff must demonstrate that:

---

[3]C.P.L.R. § 5225(a) permits a judgment creditor to seek turnover of property held by the judgment debtor "[u]pon motion" in the original action. By its motion for turnover, Universitas seeks property in the possession of entities other than the judgment debtor, Nova Group, Inc., who are not parties to the original action. As such, a special proceeding is required. *See* C.P.L.R. § 5225(b).

> (1) the defendant's tortious act was committed outside New York, (2) the cause of action arose from that act, (3) the tortious act caused an injury to a person or property in New York, (4) the defendant expected or should reasonably have expected that his or her action would have consequences in New York, and (5) the defendant derives substantial revenue from interstate or international commerce.

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010).

In the present case, the alleged fraudulent conveyances did not cause injury to Universitas in New York, as is required to establish personal jurisdiction under § 302(a)(3)(ii). Instead, any alleged injury took place in Connecticut.

> [C]ourts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the 'original event which caused the injury.'. . . This 'original event' is, however, generally distinguished not only from the initial tort but from the final economic injury and the felt consequences of the tort.

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999) (citation omitted); *see also Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990) ("An injury . . . does not occur within the state simply because the plaintiff is a resident."). Under the situs-of-injury test, the "original event" alleged to have caused harm to Universitas, namely the transfer of funds from Grist Mill Capital to Grist Mill Trust in June, 2009, and December 2009, took place solely in Connecticut between two Connecticut entities. These transfers were the first step in the process alleged to have resulted in economic loss for Universitas. *See id.* at 791–93.[4] For the purposes of jurisdiction under § 302(a)(3)(ii), Universitas' alleged injury took place in Connecticut, not New York.

Moreover, the link between the alleged tortious acts committed by Grist Mill Trust

---

[4]"In the case of fraud . . . committed in another state, the critical question is thus where the first effect of the tort was located that ultimately produced the final economic injury." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 792 (2d Cir. 1999).

out of state and any injury Universitas may have felt in New York is too attenuated to have been reasonably foreseeable to Grist Mill Trust. Each alleged fraudulent conveyance occurred in either June, 2009, or December, 2009. These transfers long preceded any demand for arbitration or suit filed by Universitas: Universitas did not make a demand for arbitration until June, 2010, nor did it bring an action to confirm the arbitration award until January, 2011. Likewise, it was not reasonably foreseeable at the time of the transfers that their effect would be to frustrate the enforcement of the judgment entered years later, in June, 2012. *See HSH Nordbank AG New York Branch v. Street*, No. 11-CIV-9405-DLC, 2012 WL 2921875, at *5–6 (S.D.N.Y. July 18, 2012) (finding plaintiff failed to establish personal jurisdiction over defendants pursuant to § 302(a)(3)(ii) as effect of alleged fraudulent transfers not reasonable foreseeable at time of conveyance).

Finally, in the present case, the exercise of jurisdiction under C.P.L.R. § 302(a)(3)(ii) is not consistent with federal due process requirements.[5] As explained by the Second Circuit:

> The due process requirement for personal jurisdiction, enunciated by the Supreme Court in the seminal case of *International Shoe Company v. Washington,* 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945), protects a person without meaningful ties to the forum state from being subjected to binding judgments within its jurisdiction . . . . The due process test for personal jurisdiction has two related components: the "minimum contacts" inquiry and the "reasonableness" inquiry. The court must first determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction.

---

[5]"District courts resolving issues of personal jurisdiction must therefore engage in a two-part analysis. First, they must determine whether there is jurisdiction over the defendant under the relevant forum state's laws—which, in this case, are the various subsections of New York's C.P.L.R. § 302(a) . . . . Second, they must determine whether an exercise of jurisdiction under these laws is consistent with federal due process requirements." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (citation omitted). Universitas fails to establish, or even allege, that Grist Mill Trust has any contacts with the State of New York, much less minimum contacts so as to justify haling it into court in New York. As such, the absence of minimum contacts precludes the court from exercising personal jurisdiction over Grist Mill Trust. *See Whitaker v. Fresno Telsat, Inc.*, 87 F. Supp. 2d 227, 230 (S.D.N.Y. 1999), *aff'd sub nom. Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001).

Universitas further asserts that personal jurisdiction exists over Grist Mill Trust, as well as the other Respondents, by virtue of the fact that personal jurisdiction exists over Daniel E. Carpenter, and all of the Respondents are his alter egos or controlled by him. Despite this blanket assertion, Grist Mill Trust is not an alter ego of Carpenter. In fact, Universitas expressly disclaims that Grist Mill Trust is an alter ego of Carpenter. See Universitas' Mem. at p. 21 n.7. Consequently, establishing personal jurisdiction using reverse veil-piercing is ineffective as to Grist Mill Trust.

As the Court lacks personal jurisdiction over Grist Mill Trust through New York's long-arm statute or by reverse veil-piercing, Universitas must commence a separate proceeding against Grist Mill Trust as a non-party transferee.

**B. Connecticut's Uniform Fraudulent Transfer Act applies.**

Connecticut law governing fraudulent transfers, the Uniform Fraudulent Transfer Act, Conn. Gen. Stat. § 52-552a *et seq.*, should apply as the source of substantive law instead of New York Debtor & Creditor Law.

### 1. Connecticut's four-year statute of repose creates material conflict of law.

As this is a diversity case brought in New York, New York choice-of-law rules

apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The first step in applying these rules is to determine whether there is an actual conflict between the laws of the jurisdictions involved. *Drenis v. Haligiannis,* 452 F. Supp. 2d 418, 426 (S.D.N.Y. 2006). If a conflict of law exists in tort actions, New York's choice-of-law rules use an "interest analysis," applying the laws of the jurisdiction with the greatest interest in the application of its law based on the occurrences within each jurisdiction, or contacts of the parties with each jurisdiction, that relate to the purpose of the particular law in conflict. *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 192 (S.D.N.Y. 2006).

In the present case, there is a material conflict between the laws of New York and Connecticut governing this claim. New York adopted the Uniform Fraudulent Conveyance Act, N.Y. Debt. & Cred. Law, § 270 *et seq. See*, *e.g.*, *In re Sharp Int'l Corp.*, 403 F.3d 43, 53 (2d Cir. 2005). Connecticut, by contrast, adopted the Uniform Fraudulent Transfer Act, Conn. Gen. Stat. § 52-552a *et seq.* While these acts are similar in some ways, Connecticut's law is entirely dissimilar in that it contains a provision that states:

> A cause of action with respect to a fraudulent transfer or obligation under sections 52-552a to 52-552*l*, inclusive, *is extinguished unless action is brought*:
>
> (1) Under subdivision (1) of subsection (a) of section 52-552e, *within four years after the transfer was made or the obligation was incurred* or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant . . . .

Conn. Gen. Stat. § 52-552j (emphasis added).[6] This four-year statute of repose[7] is considered substantive law rather than procedural. *See GFL Advantage Fund, Ltd. v.*

---

[6] New York, by contrast, has a six-year statute of limitations for actions to set aside a fraudulent conveyance. C.P.L.R. § 213; *see*, *e.g.*, *Orr v. Kinderhill Corp.*, 991 F.2d 31, 35 (2d Cir. 1993) (under New

*Colkitt*, No. 03-CIV-1256-JSM, 2003 WL 21459716, at *3 (S.D.N.Y. June 24, 2003) ("An extinguishment provision is substantive law, rather than a statute of limitations." [*citing Tanges v. Heibelberg North America, Inc.,* 93 N.Y.2d 48, 55–56 (1999)]). This material conflict of substantive law between New York and Connecticut law governing fraudulent conveyances requires a choice of law analysis.

### 2. *The Court should apply Connecticut law.*

"In the modern formulation of New York's interest analysis, the two factors said to be most important are the parties' domiciles and the locus of the tort." *Comer v. Titan Tool, Inc.*, 875 F. Supp. 255, 259 (S.D.N.Y. 1995). When the law is one which regulates conduct, such as fraudulent conveyance statutes, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 384 (2d Cir. 2006) (internal quotation marks omitted); *see also GFL Advantage Fund, Ltd.*, 2003 WL 21459716, at *3 (finding fraudulent conveyance statute is conduct regulating rather than loss allocating). Likewise, "parties engaging in those activities would have a reasonable expectation that their activities would be governed by the law of the state in which they are located and reside." *GFL Advantage Fund, Ltd.*, 2003 WL 21459716, at *3.

In the present case, the alleged fraudulent conveyances at issue took place in Connecticut. Since Universitas' claim concerns laws regulating this alleged fraudulent conduct, the Court should apply Connecticut law, as it is the jurisdiction where the alleged tort occurred. *See United Feature Syndicate, Inc. v. Miller Features Syndicate,*

York law, actions by judgment creditor against debtor to set aside fraudulent conveyance are governed by six-year statute of limitations).
[7] *See*, *e.g.*, *Epperson v. Entm't Exp., Inc.*, 159 F. App'x 249, 252 (2d Cir. 2005).

*Inc.*, 216 F. Supp. 2d 198, 215–16 (S.D.N.Y. 2002) (finding Canadian law applied where parties domiciled in different jurisdictions and alleged fraudulent conveyance took place in Canada). Moreover, Connecticut's "interests [1] in protecting the reasonable expectations of the parties who relied on it to govern their primary conduct and [2] in the admonitory effect that applying its law will have on similar conduct in the future assume critical importance and outweigh any interests" that New York may have in applying its law to Universitas' claim. *Id.* at 216 (internal quotation marks omitted) (*citing Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 522 (1994)). These considerations point to the application of Connecticut substantive law.

As Connecticut substantive law applies in the present case, Universitas' claim to set aside as fraudulent the transfers between Grist Mill Capital and Grist Mill Trust in June, 2009, was extinguished in June, 2013. *See* Conn. Gen. Stat. § 52-552j.[8] Accordingly, Universitas is precluded from bringing its present claim against Grist Mill Trust.

**C. Universitas cannot meet its burden under C.P.L.R. § 5225(b).**

Even if the Court were to determine that New York law governs the present action, Universitas cannot meet its burden under C.P.L.R. § 5225(b) so as to set aside the legitimate transfers from Grist Mill Capital to Grist Mill Trust in June, 2009, and December, 2009.

---

[8]With respect to the December 2009 transfer, Universitas fails to show that the source of the $510,000.00 transferred from Grist Mill Capital to Grist Mill Trust on December 3, 2009, was, in fact, the Charter Oak Trust account that received the proceeds from the Spencer life insurance policies. Grist Mill Capital's TD account that transferred $510,000.00 to Grist Mill Trust on December 3, 2009, received numerous deposits in the period of June, 2009 through December, 2009, from sources *other than* the Charter Oak Trust account that received the proceeds from the Spencer life insurance policies. See Duhl Decl., Exh. A. More importantly, these deposits have not been identified by Universitas as having originated from the Charter Oak Trust account. Therefore, while Universitas' claims with respect to these conveyances are not extinguished by § 52-552j, Universitas cannot show, as a matter of law, that these transfers were fraudulent.

Pursuant to Fed. R. Civ. P. 69(a), this action is governed by C.P.L.R. § 5225(b), which provides a procedure by which a judgment creditor may obtain property of the debtor in the possession of a third party.[9]  C.P.L.R. § 5225(b) sets forth a two-step analysis in determining whether property belonging to a judgment debtor—but in the possession of a third party—should be turned over to a judgment creditor:

> First, it must be shown that the judgment debtor "has an interest" in the property the creditor seeks to reach.  Where this first step is satisfied, the trial court must, second, then make one of two findings: it must find either that the judgment debtor is "entitled to the possession of such property," *or* it must find that "the judgment creditor's rights to the property are superior" to those of the party in whose possession it is.

*Beauvais v. Allegiance Sec., Inc.*, 942 F.2d 838, 840 (2d Cir. 1991).  In the present case, Universitas cannot establish that Nova Group, Inc. ("Nova") retains an interest in the funds Universitas seeks to turnover nor can it establish that its rights are superior to those entities in possession of said funds.

### 1. *Nova no longer retains interest in money transferred to Grist Mill Trust.*

With respect to the first step of the analysis, Universitas cannot establish that the judgment debtor, Nova, retains an interest in the funds Universitas alleges were fraudulently conveyed by Grist Mill Capital.  *See Beauvais*, 942 F.2d at 840.

Universitas has not shown that the funds transferred from Charter Oak Trust to Grist Mill Capital in May, 2009, were not funds due to Grist Mill Capital pursuant to the

---

[9]C.P.L.R. § 5225(b) provides in relevant part: "Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff."

contractual provisions of the insurance agreement entered into by Mr. Spencer.  In fact, pursuant to the arbitration award, the amount of $4,020,453.23 was payable to Grist Mill Capital from the life insurance proceeds.  See Duhl Decl., Exh. B.

As this amount was due Grist Mill Capital by Charter Oak Trust, once those sums were paid by Charter Oak Trust, Nova and/or Charter Oak Trust no longer retained an interest in said funds.  Any potential interest retained by Nova and/or Charter Oak Trust in the funds was extinguished in May, 2009, long before Universitas made the demand for arbitration in June, 2010, and commenced the action to confirm the arbitration award in January, 2011.  Similarly, Nova and/or Charter Oak Trust no longer retained an interest in the funds Grist Mill Capital subsequently transferred to Grist Mill Trust in satisfaction of the August 2006 Agreement and the October 2007 Agreement.

### 2. Universitas' rights to the transferred funds are not superior to those of Grist Mill Trust.

In a proceeding brought pursuant to C.P.L.R. § 5225, the creditor has the burden of establishing that his rights are superior to those of the transferee.  *Baker v. Power Sec. Corp.*, 948 F. Supp. 255, 260 (W.D.N.Y. 1996).  "Whether such rights are superior is a matter to be determined by applying the fraudulent conveyance provisions of the Debtor and Creditor Law []."  *Gelbard v. Esses*, 465 N.Y.S.2d 264, 268 (1983).

Pursuant to § 276 of the New York Debtor and Creditor law, "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."  As such, a transfer made with actual intent to defraud is fraudulent regardless of whether the debtor receives fair

consideration. *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 635 (2d Cir. 1995). The

burden of proving actual intent is on the party seeking to set aside the conveyance.

*See United States v. McCombs,* 30 F.3d 310, 328 (2d Cir. 1994); *see also In re Sol*

*Goodman Co.*, 5 F. Supp. 517 (S.D.N.Y. 1932), *aff'd sub nom. In re Sol Goodman, Inc.*,

68 F.2d 1014 (2d Cir. 1933) (creditor seeking to recover from transferee of debtor's

property must prove transfer was not made in satisfaction of debt which his debtor owed

transferee). Such intent must be demonstrated by clear and convincing evidence. *See*

*HBE Leasing*, 48 F.3d at 639.

In determining whether a conveyance is fraudulent, courts will consider "badges

of fraud," which are circumstances that give rise to an inference of intent. "Such factors

include (1) a close relationship among the parties to the transaction; (2) a secret and

hasty transfer not in the usual course of business; (3) inadequacy of consideration; (4)

the transferor's knowledge of the creditor's claim and the transferor's inability to pay it;

(5) the use of dummies or fictitious parties; and (6) retention of control of property by the

transferor after the conveyance." *MFS/Sun Life Trust-High Yield Series v. Van Dusen*

*Airport Servs. Co.*, 910 F. Supp. 913, 935 (S.D.N.Y. 1995). Depending on the context,

badges of fraud will vary in significance, though the presence of multiple indicia will

increase the strength of the inference. *Id.*

In the present case, Universitas fails to demonstrate fraudulent intent on the part

of Grist Mill Trust. The transfers from Grist Mill Capital to Grist Mill Trust in June, 2009,

and December, 2009, were for the repayment of pre-existing debts that predated the

death of Mr. Spencer.[10] Grist Mill Trust and Grist Mill Capital entered into these loan

---

[10]The one exception being the $500,000.00 loan made from Grist Mill Trust to Grist Mill Capital in July, 2009.

agreements for legitimate business reasons, and Grist Mill Capital sought to satisfy these debts with the payments it made to Grist Mill Trust. The repayment of these loans constituted fair consideration for the conveyance, extinguishing any potential "badge of fraud" for inadequacy of consideration. *See Atlanta Shipping Corp., Inc. v. Chem. Bank*, 818 F.2d 240, 248–49 (2d Cir. 1987) (repayment of antecedent debt constitutes fair consideration unless transferee is officer, director, or major shareholder of transferor).

Moreover, Universitas has not adduced any evidence that Grist Mill Capital retained control over the funds once they were transferred to Grist Mill Trust. *See MFS/Sun Life Trust-High Yield Series*, 910 F. Supp. at 935–36 ("[T]he critical question for purposes of inferring fraudulent intent is whether the *transferor* retained control over the assets that creditors seek to recover."). Likewise, the familial relationship between Wayne Bursey and Dan Carpenter, standing alone, is not itself determinative of fraud.

Lastly, Universitas cannot show that the transfer(s) Grist Mill Capital made to Grist Mill Trust in December, 2009, originated from the Charter Oak Trust accounts. Grist Mill Capital's bank account statements demonstrate that Grist Mill Capital received deposits from sources other than Charter Oak Trust during the period of June, 2009, to December, 2009. As such, Universitas cannot conclusively show that the funds transferred to Grist Mill Trust in December, 2009, originated from Charter Oak Trust, as opposed to any other source that deposited funds in Grist Mill Capital's account during that time period. Consequently, Universitas cannot show that the December 2009 transfers were fraudulent, or made with the intent to defraud Universitas. *See* N.Y. Debt. & Cred. Law § 276.

**D. Universitas is not entitled to injunctive relief.**

In order to obtain permanent injunctive relief, a party must show the absence of an adequate remedy at law and irreparable harm if the relief is not granted. *New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1362 (2d Cir. 1989). In addition, the movant must demonstrate actual success on the merits rather than a likelihood of success. *325 Bleecker, Inc. v. Local Union No. 747*, 500 F. Supp. 2d 110, 123 (N.D.N.Y. 2007) (*citing Amoco Production Co. v. Village of Gambell,* 480 U.S. 531, 546 n. 12 (1987)). Universitas is not entitled to a permanent injunction as to Grist Mill Trust for the reason that: (1) it will not succeed on the merits of the fraudulent conveyance claim; and (2) it does not face irreparable harm.

*1. Universitas will not succeed on the merits.*

In the present case, Universitas will not succeed on the merits of its claim because it cannot meet its burden under C.P.L.R. § 5225(b). Universitas cannot show that Nova and/or Charter Oak retain an interest in the funds transferred by Grist Mill Capital to Grist Mill Trust. *See Beauvais*, 942 F.2d at 840. Moreover, Universitas cannot show that the transfers from Grist Mill Capital to Grist Mill Trust in June, 2009, and December, 2009, were made with actual intent to defraud. *See HBE Leasing*, 48 F.3d at 639.

*2. Universitas does not face irreparable harm.*

Irreparable harm is that injury which is so serious that a monetary award cannot adequately compensate the injured party. *See Citibank N.A. v. Citytrust,* 756 F.2d 273, 275 (2d Cir.1985). The mere possibility of harm is not sufficient, as the harm must be imminent and the movant must show that he is likely to suffer irreparable harm if

equitable relief is denied.  *JSG Trading Corp. v. Tray–Wrap, Inc.,* 917 F.2d 75, 79 (2d Cir.1990).

"Injunctions are not granted against prospective violations and prospective injuries which have not yet occurred and which, indeed, may never occur."  *Crimmins v. Am. Stock Exch., Inc.*, 346 F. Supp. 1256, 1262 (S.D.N.Y. 1972).  "[M]ore than an abstract or nebulous plan to possibly commit a wrong sometime in the future, must be shown before the broad and potentially drastic injunctive power of the court will be exercised."  *Gen. Fireproofing Co. v. Wyman*, 444 F.2d 391, 393 (2d Cir. 1971).

In the present case, Universitas has not shown that irreparable harm by the actions or conduct of Grist Mill Trust is imminent.  All transfers made by Grist Mill Capital to Grist Mill Trust took place in 2009, four years ago.  Universitas fails to show any subsequent or contemporaneous transfers between the entities.  Moreover, Universitas has not shown that Grist Mill Trust dissipated or diminished any of its assets at any time either prior to or after being identified by Universitas as a potential source to satisfy its judgment.  Universitas seeks to permanently enjoin Grist Mill Trust based on entirely prospective actions that it *believes* Grist Mill Trust will take in an effort to dissipate funds that it legitimately received as repayment for pre-existing loans over four years ago.  Such allegations are highly attenuated and do not meet the burden for injunctive relief.  *See Crimmins*, 346 F. Supp. at 1262; *Gen. Fireproofing Co.*, 444 F.2d at 393.  Therefore, Universitas' claim for permanent injunctive relief as to Grist Mill Trust should be denied.

**III.** **CONCLUSION.**

For the foregoing reasons, Grist Mill Trust respectfully submits that the Court

deny Universitas' motion for turnover and permanent injunction as to Grist Mill Trust.


Dated: Hartford, CT                              **GRIST MILL TRUST WELFARE**
      November 20, 2013                    **BENEFIT PLAN**

                                      By:  /s/ Glenn A. Duhl
                                          Glenn A. Duhl #GD9576
                                        Siegel, O'Connor
                                                O'Donnell & Beck, P.C.
                                        150 Trumbull Street
                                        Hartford, CT 06103
                                        Tel.: (860) 280-1215
                                        Fax: (860) 527-5131
                                        gduhl@siegeloconnor.com