UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
UNIVERSITAS EDUCATION, LLC,

<table>
<tr><td></td><td>Case No.: 11 CV 1590-LTS-HBP</td></tr>
</table>

Case No.: 11 CV 1590-
LTS-HBP
and
11-8726-LTS

                        Judgment Creditor,

            -against-

NOVA GROUP, INC., as Trustee, Sponsor
and Named Fiduciary of the CHARTER OAK
TRUST WELFARE BENEFIT PLAN,

                  Judgment Debtor.


                  -and-

Daniel E. Carpenter, Charter Oak Trust Welfare Benefit
Plan, Grist Mill Capital, LLC, Grist Mill Holdings, LLC
The Grist Mill Trust Welfare Benefit Plan, Avon Capital
LLC, Hanover Trust Company, Carpenter Financial
Group and Phoenix Capital Management, LLC

                  Respondents.

------------------------------------------------------------------------X


**MEMORANDUM OF LAW OF RESPONDENTS' GRIST MILL CAPITAL, LLC,
AVON CAPITAL, LLC, CHARTER OAK TRUST WELFARE BENEFIT PLAN,
GRIST MILL HOLDINGS, LLC, HANOVER TRUST COMPANY, CARPENTER
FINANCIAL GROUP AND PHOENIX CAPITAL MANAGEMENT, LLC
IN OPPOSITION TO UNIVERSITAS EDUCATION, LLC'S MOTION FOR
<u>TURNOVER AND PERMANENT INJUNCTION</u>**

## Table of Contents

| | Page |
|---|---|
| TABLE OF AUTHORITIES……………………………………………… | iii |
| PRELIMINARY STATEMENT…………………………………………. | 2 |
| FACTUAL BACKGROUND……………………………………………… | 2 |

ARGUMENT

POINT I
UNIVERSITAS MUST COMMENCE A SEPARATE
PROCEEDING AGAINST HOLDINGS, HANOVER, CFG
AND PHOENIX…………………………………………………………… 10

POINT II
CONNECTICUT'S UNIFORM FRAUDULENT TRANSFER
ACT APPLIES……………………………………………………………… 14

   1. Connecticut's four-year statute of repose creates material
     conflict of law…………………………………………………………. 14

   2.   The Court should apply Connecticut law……………………… 15

POINT III
UNIVERSITAS CANNOT MEET ITS BURDEN UNDER
C.P.L.R. § 5225(b)……………………………………………………… 17

   1. COT/Nova no longer retains interest in money transferred
     to Grist Mill Trust……………………………………………… 18

   2. Universitas' rights to the transferred funds are not
     superior to those of Respondents……………………………… 19

POINT IV
UNIVERSITAS IS NOT ENTITLED TO INJUNCTIVE RELIEF…….. 21

   1. Universitas will not succeed on the merits………………………… 21

**Table of Contents (cont'd)** <u>Page</u>

2.  Universitas does not face irreparable harm……………………    21

CONCLUSION …………………………………………………………..    23

## Table of Authorities

**Cases**                                                                    **Page**

*325 Bleecker, Inc. v. Local Union No. 747,*
    500 F. Supp. 2d 110 (N.D.N.Y. 2007)………………………………..   21

*Alliance Bond Fund, Inc. v. Grupo Mexicano De Desarrollo, S.A.,*
    190 F.3d 16 (2d Cir. 1999)…………………………………………..   11

*Amoco Production Co. v. Village of Gambell,*
    480 U.S. 531 (1987)………………………………………………...   21

*Atlanta Shipping Corp., Inc. v. Chem. Bank,*
    818 F.2d 240 (2d Cir. 1987)…………………………………………..   20

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
    171 F.3d 779 (2d Cir. 1999) ………………………………………….   12,13

*Baker v. Power Sec. Corp.,*
    948 F. Supp. 255 (W.D.N.Y. 1996)…………………………………..   19

*Beauvais v. Allegiance Sec., Inc.,*
    942 F.2d 838 (2d Cir. 1991). ………………………………………….   18,21

*Citibank N.A. v. Citytrust,*
    756 F.2d 273 (2d Cir.1985)…………………………………………..   21

*Comer v. Titan Tool, Inc.,*
    875 F. Supp. 255 (S.D.N.Y. 1995)…………………………………..   15

*Crimmins v. Am. Stock Exch., Inc.,*
    346 F. Supp. 1256 (S.D.N.Y. 1972)…………………………………   22

*Drenis v. Haligiannis,*
    452 F. Supp. 2d 418 (S.D.N.Y. 2006)…………………………………   14

*Gelbard v. Esses,*
    465 N.Y.S.2d 264 (1983)……………………………………………   19

*Gen. Fireproofing Co. v. Wyman,*
    444 F.2d 391 (2d Cir. 1971)…………………………………………   22

## Table of Authorities (cont'd)

**Cases**                                                                                  **Page**

*GFL Advantage Fund, Ltd. v. Colkitt,*
    2003 WL 21459716 (S.D.N.Y. June 24, 2003)......................................... 15, 16

*GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.,*
    449 F.3d 377 (2d Cir. 2006)............................................................. 15

*HBE Leasing Corp. v. Frank,*
    48 F.3d 623 (2d Cir. 1995).............................................................. 19, 21

*HSH Nordbank AG New York Branch v. Street,*
    2012 WL 2921875 (S.D.N.Y. July 18, 2012)......................................... 13

*International Shoe Company v. Washington,*
    326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945).................................... 12

*JSG Trading Corp. v. Tray–Wrap, Inc.,*
    917 F.2d 75 (2d Cir.1990)............................................................... 21, 22

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
    313 U.S. 487 (1941)...................................................................... 14

*MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co.,*
    910 F. Supp. 913 (S.D.N.Y. 1995)..................................................... 20

*Mareno v. Rowe,*
    910 F.2d 1043 (2d Cir. 1990)........................................................... 12

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
    84 F.3d 560 (2d Cir. 1996).............................................................. 13

*New York State Nat. Org. for Women v. Terry,*
    886 F.2d 1339 (2d Cir. 1989)........................................................... 21

*Padula v. Lilarn Properties Corp.,*
    84 N.Y.2d 519 (1994).................................................................... 16

*Penguin Grp. (USA) Inc. v. Am. Buddha,*
    609 F.3d 30 (2d Cir. 2010).............................................................. 11

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,*
    446 F. Supp. 2d 163 (S.D.N.Y. 2006)................................................. 14

**Table of Authorities (cont'd)**

**Cases**                                                                                           **Page**

*Runaway Dev. Grp. v. Pentagen Technologies Int'l Ltd.,*
    396 F. Supp. 2d 471 (S.D.N.Y. 2005)......................................   10, 11

*In re Sharp Int'l Corp.,*
    403 F.3d 43 (2d Cir. 2005)................................................   14

*Sol Goodman Co.,*
    5 F. Supp. 517 (S.D.N.Y. 1932)...........................................   19

*Tanges v. Heibelberg North America, Inc.,*
    93 N.Y.2d 48 (1999).......................................................   15

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.,*
    216 F. Supp. 2d 198 (S.D.N.Y. 2002)......................................   16

*United States v. McCombs,*
    30 F.3d 310 (2d Cir. 1994)................................................   19

*Wasserman Media Group, LLC v. Bender,*
    2012 WL 1506181 (S.D.N.Y. 2012)..........................................   10

*Whitaker v. Fresno Telsat, Inc.,*
    87 F. Supp. 2d 227 (S.D.N.Y. 1999).......................................   13

**Rules and Regulations**

C.P.L.R. § 302(a)(3)(ii).......................................................   11, 12, 13

C.P.L.R. § 5225(a)............................................................   10

C.P.L.R. § 5225(b)............................................................   *passim*

Conn. Gen. Stat. § 52-552a....................................................   14, 15

Conn. Gen. Stat. § 52-552e....................................................   16

Conn. Gen. Stat. § 52-552j....................................................   15, 16

Fed. R. Civ. P. 69............................................................   10, 17

Internal Revenue Code Reg. 1.61-22............................................   2,  fn. 1

## Table of Authorities (cont'd)

**Rules and Regulations**                                                                 **Page**

N.Y. Debt. & Cred. Law, § 270……………………………………………   14

N.Y. Debt. & Cred. Law, § 276 ……………………………………………   19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
UNIVERSITAS EDUCATION, LLC,

                                                    Case No.: 11 CV 1590-LTS-HBP
                                                    and
                              Judgment Creditor,     11-8726-LTS

                    -against-

NOVA GROUP, INC., as Trustee, Sponsor
and Named Fiduciary of the CHARTER OAK
TRUST WELFARE BENEFIT PLAN,

                         Judgment Debtor.


                         -and-

Daniel E. Carpenter, Charter Oak Trust Welfare Benefit
Plan, Grist Mill Capital, LLC, Grist Mill Holdings, LLC
The Grist Mill Trust Welfare Benefit Plan, Avon Capital
LLC, Hanover Trust Company, Carpenter Financial
Group and Phoenix Capital Management, LLC

                         Respondents.

-------------------------------------------------------------------------X


**MEMORANDUM OF LAW OF RESPONDENTS' GRIST MILL CAPITAL, LLC,
AVON CAPITAL, LLC, CHARTER OAK TRUST WELFARE BENEFIT PLAN,
GRIST MILL HOLDINGS, LLC, HANOVER TRUST COMPANY, CARPENTER
FINANCIAL GROUP AND PHOENIX CAPITAL MANAGEMENT, LLC
IN OPPOSITION TO UNIVERSITAS EDUCATION, LLC'S MOTION FOR
TURNOVER AND PERMANENT INJUNCTION**


        Respondents, Grist Mill Capital, LLC ("GMC"), Avon Capital, LLC ("Avon"), Charter

Oak Grist Welfare Benefit Plan ("COT"), Grist Mill Holdings, LLC ("Holdings"), Hanover Trust

Company ("Hanover"), Carpenter Financial Group ("CFG") and Phoenix Capital Management

("Phoenix"), (collectively referred to herein as "Respondents") by the undersigned attorneys,

jointly submit this Memorandum of Law in Opposition to Universitas Education, LLC's ("Universitas") Motion for Turnover and Permanent Injunction (Doc. 214 and Doc. 308) dated October 21, 2013.

## Preliminary Statement

The instant motion should be denied because Universitas is seeking to have Respondents turn over assets to it even though any transactions transpiring between the Judgment Debtor and the Respondents in question were in payment of legitimate obligations that pre-existed any debt arising in favor of Universitas.

## Factual Background

We respectfully refer the Court to the accompanying Affidavit of Daniel Carpenter ("Carpenter Aff."), for a comprehensive recitation of the facts and circumstances of this proceeding and the various transfers to which Universitas refers on this motion.

Daniel Carpenter is and has been the Chairman of the Managing Member of Grist Mill Capital, LLC – Delaware, which owns and controls GMC, which provided all of the funding through a Split-Dollar Arrangement[1] for all of the life insurance policies purchased by the

---

[1] Split-Dollar Arrangements are not just between an employer and employee and, in fact, can be between a funder of the policy (GMC) and the owner and beneficiary of the policy, which in this case was the Charter Oak Trust. The Internal Revenue Code Reg. 1.61-22 defines Split-Dollar:

> The final regulations generally define a split-dollar life insurance arrangement as any arrangement between an owner of a life insurance contract and a non-owner of the contract under which either party to the arrangement pays all or part of the premiums, and one of the parties paying the premiums is entitled to recover (either conditionally or unconditionally) all or any portion of those premiums and such recovery is to be made from, or is secured by, the proceeds of the contract.

Charter Oak Trust, including the two policies on the life of Sash Spencer that were the subject of the underlying arbitration. Carpenter Aff. ¶ 2.

None of these Respondents are judgment debtors in this case. None of these Respondents were parties in the arbitration or parties to the Universitas litigation. Neither Grist Mill Capital (Delaware or Connecticut) nor any of the other Respondents participated in the Universitas arbitration. In fact, both GMC and Mr. Carpenter were specifically dismissed from that arbitration, prior to its commencement. GMC was dismissed prior to the arbitration beginning. Carpenter Aff. ¶¶3-5, Ex. A. Thus, Grist Mill, Avon, and the other Respondents were not heard from at the arbitration. Mr. Carpenter was dismissed after the arbitration was over, which dismissal was therefore effectively with prejudice Carpenter Aff. ¶¶6-7, Ex. B.

Universitas seeks to recover, via the instant turnover motion, in excess of $30 million from Grist Mill, Avon, and the other Respondents. That sum, Universitas claims constitutes transfers of monies to which it is entitled to from the proceeds of Sash Spencer's two insurance policies. Carpenter Aff. ¶ 8. As set forth below all of the transactions about which Universitas claims were *bona fide* transactions involving legitimate antecedent debts.

### The Central Transactions at Issue

At its core, this claim by Universitas against Respondents concerns three major transactions of $8,677,276.75 and $2,186,566 in May 2009 and a $19.8 million foreclosure distribution paid from the Charter Oak Welfare Benefit Plan ("Charter Oak Trust" or "COT") to GMC in October 2009. The May transactions and the October transaction are all extensively documented and were *bona fide* payments based on the contractual and financial arrangements between COT and GMC. Carpenter Aff. ¶ 9.

3

As a participant in the Charter Oak Trust, Sash Spencer was the named insured on two life insurance policies owned by COT, which policies have face value amounts totaling $30 million. Carpenter Aff. ¶ 10.

The premiums for the Spencer policies – *as well as nearly 85 other policies in the* *Charter Oak Trust--* **were paid by Charter Oak Trust with funds advanced from Grist Mill** **Capital using a split dollar arrangement.** Carpenter Aff. ¶ 11, Ex. C.

GMC, in turn, had a financing agreement with Ridgewood Finance, Inc. ("Ridgewood") whereby Ridgewood advanced funds to GMC, which GMC then used to make Split-Dollar loans for the funding of premiums for the policies held by the Charter Oak Trust. Carpenter Aff. ¶ 12, Ex. C, *supra.*.     Ridgewood was a secured creditor of GMC. Carpenter Aff. ¶ 13.

The funding agreement between Grist Mill Capital and Charter Oak Trust with respect to the Spencer life insurance policies (as well as other life insurance policies) contained a provision whereby Grist Mill Capital (the "Funder") was given:

> A first priority lien and a first priority security interest in and to all properties, assets and rights of the trust, wherever located, whether now owned or hereafter acquired or arising, including, without limitation the Policy (including all purposes thereof, such proceeds to encompass, among other things, the premium refunds, cash value, death proceeds or their payment by the insurer with respect to such Policy or any proceeds from the sale hereof…

Carpenter Aff. ¶ 14, Ex. D.

On December 27, 2006, GMC recorded a UCC 1 Financing Statement against all assets of the Charter Oak Trust, and all proceeds thereof and including after acquired assets. Carpenter Aff. ¶ 15, Ex. E.

The funding arrangement for the Spencer policies was part of the insurance agreement

entered into by Mr. Spencer in December 2006 and March 2007.   Grist Mill Capital was specifically listed as the primary beneficiary of the Beneficiary Designation Forms signed by Mr. Spencer.  Carpenter Aff. ¶ 16, Ex. F.

When Mr. Spencer enrolled in the Charter Oak Trust, he executed a Disclosure, Acknowledgment & Certification Agreement which contained the following provision:

> 9.   [Spencer] and Agent both understand and agree that the following remittances, fees and expenses shall be due and payable to the Funder upon the maturation, disposition, termination, or change in beneficiary of the Policy:
>
> (a) repayment of all premiums and related costs regarding the Policy;
>
> (b) an Origination Fee of twenty percent (20%) of the total premiums funded and paid for the Policy in consideration of the funding Arrangement heaving been implemented;
>
> (c) a premium Funding Fee of three percent (3%) of the face amount of the Policy in consideration for the funding of such premiums;
>
> (d) a Termination Fee of one percent (1%) of the face amount of the Policy in consideration other termination of the Funding Arrangement.

Carpenter Aff. ¶ 17, Ex. G.

Sash Spencer died on June 10, 2008.  Carpenter Aff. ¶ 18.

The Charter Oak Trust received the proceeds of the Spencer policies from Lincoln Life Insurance Company ("Lincoln") only after COT sued Lincoln, a case which COT finally dismissed the case against Lincoln in December 2009. Ex. Carpenter Aff. ¶ 19, Ex. H.

The two payments made to GMC by the Charter Oak Trust in May 2009 equaling just under $11 million included the payments that Sash Spencer had agreed to in a signed agreement with GMC, including the repayment of the premiums paid plus an Origination Fee of 20% of the

premiums paid plus a Placement Fee or Premium Funding Fee of 3% and a Termination Fee of 1%. Carpenter Aff. ¶20, Ex. G.

In addition, the Charter Oak Trust document provided that only 80% of the benefit would be paid out under Article 6.01. Carpenter Aff. ¶21, Ex. I.

Before the May 2009 disbursement of approximately $11 million to GMC, Charter Oak Trust has borrowed well in excess of $50 million from GMC. Carpenter Aff. ¶22, Ex. C.

These various fees were spelled out in detail in a letter sent to Universitas shortly after Mr. Spencer's death. Carpenter Aff. ¶23, Ex. J.

Inasmuch as the payments in the amount of approximately $11 million to GMC represented amounts owed to GMC contractually as well as a partial repayment on loans to Charter Oak Trust, what GMC did with the monies after that is of no legal consequence. Nevertheless, after GMC received approximately $11 million, it then paid various creditors, for loans made prior to the death of Mr. Spencer. For instance, on June 9, 2009, GMC paid the Grist Mill Trust the total some of $3,798,882.81. Grist Mill Trust was a creditor of Grist Mill Capital. Carpenter Aff. ¶24, Ex. K.

On or about May 22, 2009, GMC transferred $2.1 million to Grist Mill Holdings to repay some of the money owed by GMC to Grist Mill Holdings. Grist Mill Holdings owns 99% of GMC. Grist Mill Holdings LLC is a Delaware Limited Liability Company. Mr. Carpenter is the Chairman of the Managing Member of both LLCs. That transfer was a repayment of money that Grist Mill Holdings had advanced to GMC. Carpenter Aff. ¶25, Ex. L.

On July 13, 2009, Grist Mill Capital transferred $2.2 million to Grist Mill Holdings. This transfer was made because GMC owed substantial sums to Grist Mill Holdings. Carpenter Aff. ¶26, Ex. L.

On July 13, 2009, Phoenix disbursed $2.5 million to Grist Mill Capital. Phoenix is a Delaware Limited Liability Company. Mr. Carpenter is the Chairman of the Managing Member of the LLC. This disbursement was made because Phoenix is the lending arm of Carpenter Financial Group, Inc. Carpenter Aff. ¶27.

Two days later, on or about July 15, 2009, Grist Mill Holdings transferred $1.2 million to Hanover Trust Company. Hanover Trust Company is a Delaware Trust company and is a trust organized under the laws of the State of Delaware. This transfer was made to facilitate a loan to Moonstone Partners LLC. Universitas is incorrect that this $1.2 million originated with the Charter Oak Trust. This $1.2 million originated from Phoenix. Carpenter Aff. ¶28.

On July 15, 2009, Hanover Trust Company disbursed $1,100,000.00 to Moonstone Partners LLC for the purchase of a home in South Kingstown, Rhode Island. This loan is backed by a mortgage note secured by the property. Carpenter Aff. ¶29, Ex. M.

On or about October 28, 2009, Charter Oak disbursed to GMC the sum of $19,800.000, the payment of which represented only a portion of the more than $50,000,000 owed by COT to GMC, as payment on a collateral assignment extant in 2009. See Carpenter Aff. ¶30, Ex. C. GMC was effectively calling in its debt Carpenter Aff. ¶31, Ex. N.

GMC had a secured collateral assignment on each and every policy in the Charter Oak Trust, at all times, including the Sash Spencer policies. Carpenter Aff. ¶32, Ex. O.

GMC was also the designated unconditional Power of Attorney for each and every policy in the Charter Oak Trust, including the Sash Spencer policies via the signed Funding Agreement attached to every policy before it was funded. Carpenter Aff. ¶33, Ex. D.

The only funds remaining in the Charter Oak Trust from October 2009 to June 2010

when the Charter Oak Trust account was closed were the $1.8 million that Grist Mill Capital had offered to Mr. Spencer (and then to Universitas to resolve the insurance contracts dispute). Carpenter Aff. ¶34.

After the above described transfers of funds from the Charter Oak Trust to GMC in May and October 2009, all of the money transfers after that between GMC and its various affiliates and lenders are all bona fide transactions among non-judgment debtors. All of these transactions were between non-judgment debtors outside of New York. Carpenter Aff. ¶35.

For instance, on October 28, 2009, GMC transferred the sum of $19 million to Grist Mill Holdings. This transfer was made to Grist Mill Holdings to preserve the tax free nature of the death benefit received by Grist Mill Capital from the Charter Oak Trust. As is clear from the Sash Spencer Beneficiary Designation Form, GMC was the primary beneficiary of the death proceeds to be paid from the Charter Oak Trust. In the event that the tax free nature of these proceeds was challenged, GMC wanted to upstream the $19 million in death proceeds to preserve its tax free status because all of the owners of Grist Mill Holdings are tax exempt entities themselves. In this manner, GMC would be certain that the $19 million would retain its tax free status for the purpose of GMC's other financial transactions. Carpenter Aff. ¶36.

The Barnett declaration at Paragraph 59 is incorrect when it states that "on or about November 12, 2009, [Mr. Carpenter] transferred $6,710,065.92 from … [GMC] … to … Avon." This is untrue. On November 12, 2009, Grist Mill Holdings transferred $6,710,065.92 to GMC. GMC then transferred the sum of $6,710,065.92 (which it received from Grist Mill Holdings) to Avon. This transfer was made because GMC was funding the payment of premiums for policies owned by **Charter Oak Trust 2009**, a separate entity from the judgment debtor Charter Oak Trust. Carpenter Aff. ¶¶37, 44, Ex. Q.

8

On November 12, 2009, Grist Mill Holdings transferred the sum of $4,140,000.00 to CFG. CFG is a Delaware corporation. Mr. Carpenter is the Chairman and Secretary of CFG. CFG is 100% owned by its employees through the CFG Employee Stock Ownership Plan (ESOP), which owns 100% of Carpenter Financial Group, Inc.   This transfer was done because CFG is one of the owners of Grist Mill Holdings. Carpenter Aff. ¶38.

On December 3, 2009, two transfers were made to the Grist Mill Trust from the Grist Mill Capital account in the total sum of $688,125.00. That transfer was made to repay Grist Mill Trust for having made a payment to the IRS for a client of Grist Mill Capital, having nothing to do with the Charter Oak Trust. Carpenter Aff. ¶39.

The purported basis upon which Universitas seeks a turnover order and a permanent injunction against, among others, Grist Mill Capital and the other Respondents, is that neither Grist Mill Capital nor any other Respondent has provided any consideration or value in return for the monies it has received from Nova/Charter Oak Trust. As demonstrated *supra,* this allegation is incorrect—these were repayments of antecedent debts. GMC was the funder for the policies held in the Charter Oak Trust regardless of whether a different company loaned GMC the funds or not, the amounts were still due to be paid back to GMC so that GMC could repay the entities that loaned money to GMC. To this date, GMC is owed more than $60 million.

However, in sum, nothing has transpired since the confirmation of the arbitration award to justify or warrant the extreme remedy now sought by Universitas – this is an effort to vitiate transfers to bona fide transferees that had legitimate pre-existing obligations from the judgment debtor—and which no longer even have funds as Counsel for Universitas well knows remotely approaching the amount of the judgment.

## ARGUMENT

### POINT I

### UNIVERSITAS MUST COMMENCE A SEPARATE PROCEEDING AGAINST HOLDINGS, HANOVER, CFG AND PHOENIX

The Court should deny Universitas' motion for turnover for the reason that a separate action is necessary both to conform to the statutory requirements set forth in C.P.L.R. § 5225(b), and in order to acquire personal jurisdiction over some of the Respondents-non-party transferees.

Universitas asserts that pursuant to Fed. R. Civ. P. 69, a judgment creditor may bring a proceeding in federal court under C.P.L.R. § 5225(b) by motion and need not bring a separate action against the Respondents. *See* Universitas Education, LLC's Memorandum of Law in Support of its Motion for a Preliminary Injunction, Permanent Injunction and Turnover (Doc. 215 and Doc. 309) ("Universitas' Mem.") at p. 15. Contrary to this assertion, a separate proceeding must be brought, particularly when personal jurisdiction over the non-party transferee is at issue. *See Runaway Dev. Grp. v. Pentagen Technologies Int'l Ltd.*, 396 F. Supp. 2d 471, 473–74 (S.D.N.Y. 2005) (denying motion for turnover order as improper vehicle for seeking relief); *Wasserman Media Group, LLC v. Bender*, No. 10-CIV-8783-SAS, 2012 WL 1506181 (S.D.N.Y. Apr. 26, 2012) (dismissing turnover action brought pursuant to Rule 69 motion because separate legal proceeding necessary to establish personal jurisdiction over non-party garnishee).

Section 5225(b), as distinguished from C.P.L.R. § 5225(a),[2] requires that the judgment creditor *commence an action* against someone, other than the judgment debtor, who is in

---

[2] C.P.L.R. § 5225(a) permits a judgment creditor to seek turnover of property held by the judgment debtor "[u]pon motion" in the original action. By its motion for turnover, Universitas seeks property in the possession of other entities *in addition to* the judgment debtor, Nova Group, Inc., none of which are parties to the original action. As such, a special proceeding is required. *See* C.P.L.R. § 5225(b).

possession of the property sought by the creditor, instead of merely filing a motion. *See Alliance Bond Fund, Inc. v. Grupo Mexicano De Desarrollo, S.A.*, 190 F.3d 16, 21 (2d Cir. 1999) (finding that judgment creditor pursuing property in possession of someone other than judgment debtor must commence action against person in possession); *see also Runaway Dev. Grp.*, 396 F. Supp. 2d at 473–74.

This is particularly true when, as in the present case, the court lacks personal jurisdiction over non-party transferees Holdings, Hanover, CFG and Phoenix. Universitas asserts that personal jurisdiction over these Respondents exists pursuant to New York's long arm statute, C.P.L.R. § 302(a)(3)(ii). Section 302(a)(3)(ii) provides for personal jurisdiction over a non-domiciliary who "commits a tortious act without the state causing injury to person or property within the state . . . if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]" To establish jurisdiction under § 302(a)(3)(ii), a plaintiff must demonstrate that:

> (1) the defendant's tortious act was committed outside New York, (2) the cause of action arose from that act, (3) the tortious act caused an injury to a person or property in New York, (4) the defendant expected or should reasonably have expected that his or her action would have consequences in New York, and (5) the defendant derives substantial revenue from interstate or international commerce.

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010).

In the present case, the alleged fraudulent conveyances did not cause injury to Universitas in New York, as is required to establish personal jurisdiction under § 302(a)(3)(ii). Instead, any alleged injury took place in Connecticut.

> [C]ourts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the 'original event which caused the injury.'. . . This 'original event' is, however, generally distinguished not only from the

11

initial tort but from the final economic injury and the felt consequences of
the tort.

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999)

(citation omitted); *see also Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990) ("An injury . . .

does not occur within the state simply because the plaintiff is a resident."). Under the situs-of-

injury test, the "original event" alleged to have caused harm to Universitas, namely the transfer

of funds from Charter Oak to GMC and the transfers thereafter (see Barnett Decl., ¶48 *et seq.)*

took place solely in Connecticut between two Connecticut entities. These transfers that have

been identified by Universitas as causing Universitas economic loss took place in the State of

Connecticut. *See id.* at 791–93.[3]   For the purposes of jurisdiction under § 302(a)(3)(ii),

Universitas' alleged injury took place in Connecticut, not New York.

Moreover, the link between the alleged tortious acts committed by Respondents  out of

state and any injury Universitas may have felt in New York is too attenuated to have been

reasonably foreseeable by the Respondents.   Many of the alleged fraudulent conveyances

occurred in May, 2009, and October, 2009. These transfers preceded any demand for arbitration

or suit filed by Universitas: Universitas did not make a demand for arbitration until June, 2010,

nor did it bring an action to confirm the arbitration award until January, 2011.  Likewise, it was

not reasonably foreseeable at the time of the transfers that their effect would be to frustrate the

enforcement of the judgment entered years later, in June, 2012. *See HSH Nordbank AG New*

*York Branch v. Street*, No. 11-CIV-9405-DLC, 2012 WL 2921875, at *5–6 (S.D.N.Y. July 18,

2012) (finding plaintiff failed to establish personal jurisdiction over defendants pursuant to §

302(a)(3)(ii) as effect of alleged fraudulent transfers not reasonable foreseeable at time of

---

[3]"In the case of fraud  . . . committed in another state, the critical question is thus where the first effect of the tort
was located that ultimately produced the final economic injury." *Bank Brussels Lambert v. Fiddler Gonzalez &
Rodriguez*, 171 F.3d 779, 792 (2d Cir. 1999).

conveyance).

Finally, in the present case, the exercise of jurisdiction under C.P.L.R. § 302(a)(3)(ii) is not

consistent with federal due process requirements.[4]  As explained by the Second Circuit:

> The due process requirement for personal jurisdiction, enunciated by the
> Supreme Court in the seminal case of *International Shoe Company v.*
> *Washington,* 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945), protects a
> person without meaningful ties to the forum state from being subjected to
> binding judgments within its jurisdiction . . . . The due process test for
> personal jurisdiction has two related components: the "minimum contacts"
> inquiry and the "reasonableness" inquiry.  The court must first determine
> whether the defendant has sufficient contacts with the forum state to justify
> the court's exercise of personal jurisdiction.

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (citation omitted).

Universitas fails to establish, or even allege, that Respondents  have any contacts with the State

of New York, much less minimum contacts so as to justify haling it into court in New York.  As

such, the absence of minimum contacts precludes the court from exercising personal jurisdiction

over Respondents.  *See Whitaker v. Fresno Telsat, Inc.*, 87 F. Supp. 2d 227, 230 (S.D.N.Y.

1999), *aff'd sub nom. Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001).

     As the Court lacks personal jurisdiction over Holdings, Hanover, CFG and Phoenix

through New York's long-arm statute or by reverse veil-piercing, Universitas must commence a

separate proceeding against them as non-party transferees.

---

[4]"District courts resolving issues of personal jurisdiction must therefore engage in a two-part analysis.  First, they
must determine whether there is jurisdiction over the defendant under the relevant forum state's laws—which, in this
case, are the various subsections of New York's C.P.L.R. § 302(a) . . . .  Second, they must determine whether an
exercise of jurisdiction under these laws is consistent with federal due process requirements."  *Bank Brussels*
*Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).

## POINT II

## CONNECTICUT'S UNIFORM FRAUDULENT TRANSFER ACT APPLIES

Connecticut law governing fraudulent transfers, the Uniform Fraudulent Transfer Act, Conn. Gen. Stat. § 52-552a *et seq.*, should apply as the source of substantive law instead of New York Debtor & Creditor Law.

### *1. Connecticut's four-year statute of repose creates material conflict of law.*

As this is a diversity case brought in New York, New York choice-of-law rules apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The first step in applying these rules is to determine whether there is an actual conflict between the laws of the jurisdictions involved. *Drenis v. Haligiannis,* 452 F. Supp. 2d 418, 426 (S.D.N.Y. 2006). If a conflict of law exists in tort actions, New York's choice-of-law rules use an "interest analysis," applying the laws of the jurisdiction with the greatest interest in the application of its law based on the occurrences within each jurisdiction, or contacts of the parties with each jurisdiction, that relate to the purpose of the particular law in conflict. *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 192 (S.D.N.Y. 2006).

In the present case, there is a material conflict between the laws of New York and Connecticut governing this claim. New York adopted the Uniform Fraudulent Conveyance Act, N.Y. Debt. & Cred. Law, § 270 *et seq. See, e.g., In re Sharp Int'l Corp.*, 403 F.3d 43, 53 (2d Cir. 2005). Connecticut, by contrast, adopted the Uniform Fraudulent Transfer Act, Conn. Gen. Stat. § 52-552a *et seq.* While these acts are similar in some ways, Connecticut's law is entirely dissimilar in that it contains a provision that states:

> A cause of action with respect to a fraudulent transfer or
> obligation under sections 52-552a to 52-552*l*, inclusive, *is*

14

*extinguished unless action is brought*:

(1) Under subdivision (1) of subsection (a) of section 52-552e, *within four years after the transfer was made or the obligation was incurred* or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant . . . .

Conn. Gen. Stat. § 52-552j (emphasis added).[5] This four-year statute of repose[6] is considered substantive law rather than procedural. *See GFL Advantage Fund, Ltd. v. Colkitt*, No. 03-CIV-1256-JSM, 2003 WL 21459716, at *3 (S.D.N.Y. June 24, 2003) ("An extinguishment provision is substantive law, rather than a statute of limitations." [*citing Tanges v. Heibelberg North America, Inc.*, 93 N.Y.2d 48, 55–56 (1999)]). This material conflict of substantive law between New York and Connecticut law governing fraudulent conveyances requires a choice of law analysis.

### 2. *The Court should apply Connecticut law.*

"In the modern formulation of New York's interest analysis, the two factors said to be most important are the parties' domiciles and the locus of the tort." *Comer v. Titan Tool, Inc.*, 875 F. Supp. 255, 259 (S.D.N.Y. 1995). When the law is one which regulates conduct, such as fraudulent conveyance statutes, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 384 (2d Cir. 2006) (internal quotation marks omitted); *see also GFL Advantage Fund, Ltd.*, 2003 WL 21459716, at *3 (finding fraudulent conveyance statute is conduct regulating rather than loss allocating). Likewise, "parties engaging in those activities would have a reasonable expectation that their

---

[5]New York, by contrast, has a six-year statute of limitations for actions to set aside a fraudulent conveyance. C.P.L.R. § 213; *see, e.g., Orr v. Kinderhill Corp.*, 991 F.2d 31, 35 (2d Cir. 1993) (under New York law, actions by judgment creditor against debtor to set aside fraudulent conveyance are governed by six-year statute of limitations).
[6]*See, e.g., Epperson v. Entertainment Exp., Inc.*, 159 Fed. App'x 249, 252 (Connecticut's Fraudulent Transfer Act contains four-year repose period).

activities would be governed by the law of the state in which they are located and reside." *GFL Advantage Fund, Ltd.*, 2003 WL 21459716, at \*3.

In the present case, the alleged fraudulent conveyances at issue took place in Connecticut. Since Universitas' claim concerns laws regulating this alleged fraudulent conduct, the Court should apply Connecticut law, as it is the jurisdiction where the alleged tort occurred. *See United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 215–16 (S.D.N.Y. 2002) (finding Canadian law applied where parties domiciled in different jurisdictions and alleged fraudulent conveyance took place in Canada). Moreover, Connecticut's "interests [1] in protecting the reasonable expectations of the parties who relied on it to govern their primary conduct and [2] in the admonitory effect that applying its law will have on similar conduct in the future assume critical importance and outweigh any interests" that New York may have in applying its law to Universitas' claim. *Id.* at 216 (internal quotation marks omitted) (*citing Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 522 (1994)). These considerations point to the application of Connecticut substantive law.

Since Connecticut substantive law applies in the present case, Universitas' claim to set aside any of the transfers that occurred prior to October 21, 2009 are barred. *See* Conn. Gen. Stat. § 52-552j. As such, Universitas is precluded from bringing any claims for turnover against Respondents GMC, Avon, Holdings, Phoenix and Hanover prior to October 21, 2009.

As to any alleged fraudulent conveyances by Respondents after October 21, 2009, Conn. Gen. Stat. 52-552e states in relevant part:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay or

defraud any creditor of the debtor.

As set forth above, many of the alleged fraudulent conveyances occurred in May, 2009, and October, 2009.  Indeed, as those payments from the Charter Oak Trust to GMC were proper, this entire application fails.  These transfers preceded any demand for arbitration or suit filed by Universitas: Universitas did not make a demand for arbitration until June, 2010, nor did it bring an action to confirm the arbitration award until January, 2011.   Furthermore, each and every transfer alleged to be a fraudulent conveyance by Universitas was made for legitimate business purposes and to satisfy antecedent debts that incurred long before Sash Spencer passed away and about which Sash Spencer was made aware.  Carpenter Aff. ¶16.

Moreover, Universitas has not and cannot demonstrate that bona fide transfers made to repay antecedent debts were done so with the actual intent do hinder, delay or defraud any creditor of Nova's since the transfers were done well in advance of any demand for arbitration, the arbitration itself, or motion to confirm any such arbitration award.

## POINT III

## UNIVERSITAS CANNOT MEET ITS BURDEN UNDER C.P.L.R. § 5225(b)

Even if the Court were to determine that New York law governs the present action, Universitas cannot meet its burden under C.P.L.R. § 5225(b) so as to set aside the legitimate transfers from COT to Respondents.

Pursuant to Fed. R. Civ. P. 69(a), this action is governed by C.P.L.R. § 5225(b), which provides a procedure by which a judgment creditor may obtain property of the debtor in the

possession of a third party.[7] C.P.L.R. § 5225(b) sets forth a two-step analysis in determining whether property belonging to a judgment debtor—but in the possession of a third party—should be turned over to a judgment creditor:

> First, it must be shown that the judgment debtor "has an interest" in the property the creditor seeks to reach. Where this first step is satisfied, the trial court must, second, then make one of two findings: it must find either that the judgment debtor is "entitled to the possession of such property," *or* it must find that "the judgment creditor's rights to the property are superior" to those of the party in whose possession it is.

*Beauvais v. Allegiance Sec., Inc.*, 942 F.2d 838, 840 (2d Cir. 1991). In the present case, Universitas cannot establish that COT/Nova retains an interest in the funds Universitas seeks to turnover nor can it establish that its rights are superior to those entities in possession of said funds.

### *1. COT/Nova no longer retains interest in money transferred to Grist Mill Trust.*

With respect to the first step of the analysis, Universitas cannot establish that the judgment debtor, Nova, retains an interest in the funds Universitas alleges were fraudulently conveyed by Grist Mill Capital. *See Beauvais*, 942 F.2d at 840.

Universitas has not shown that the funds transferred from Charter Oak Trust to Grist Mill Capital in May and October, 2009, were not funds due to Grist Mill Capital pursuant to the contractual provisions of the insurance agreement entered into by Mr. Spencer. In fact, pursuant to the arbitration award, the amount of $4,020,453.23 was payable to Grist Mill Capital from the

---

[7]C.P.L.R. § 5225(b) provides in relevant part: "Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff."

life insurance proceeds. As this amount was due Grist Mill Capital by Charter Oak Trust, once those sums were paid by Charter Oak Trust, Nova and/or Charter Oak Trust no longer retained an interest in the funds. As Grist Mill Capital subsequently transferred such funds, any potential interest retained by Nova and/or Charter Oak Trust in the funds is extinguished.

### 2. *Universitas' rights to the transferred funds are not superior to those of Respondents.*

In a proceeding brought pursuant to C.P.L.R. § 5225, the creditor has the burden of establishing that his rights are superior to those of the transferee. *Baker v. Power Sec. Corp.*, 948 F. Supp. 255, 260 (W.D.N.Y. 1996). "Whether such rights are superior is a matter to be determined by applying the fraudulent conveyance provisions of the Debtor and Creditor Law []." *Gelbard v. Esses*, 465 N.Y.S.2d 264, 268 (1983).

Pursuant to § 276 of the New York Debtor and Creditor law, "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." As such, a transfer made with actual intent to defraud is fraudulent regardless of whether the debtor receives fair consideration. *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 635 (2d Cir. 1995). The burden of proving actual intent is on the party seeking to set aside the conveyance. *See United States v. McCombs,* 30 F.3d 310, 328 (2d Cir. 1994); *see also In re Sol Goodman Co.*, 5 F. Supp. 517 (S.D.N.Y. 1932), *aff'd sub nom. In re Sol Goodman, Inc.*, 68 F.2d 1014 (2d Cir. 1933) (creditor seeking to recover from transferee of debtor's property must prove transfer was not made in satisfaction of debt which his debtor owed transferee). Such intent must be demonstrated by clear and convincing evidence. *See HBE Leasing*, 48 F.3d at 639.

In determining whether a conveyance is fraudulent, courts will consider "badges of

19

fraud," which are circumstances that give rise to an inference of intent. "Such factors include (1) a close relationship among the parties to the transaction; (2) a secret and hasty transfer not in the usual course of business; (3) inadequacy of consideration; (4) the transferor's knowledge of the creditor's claim and the transferor's inability to pay it; (5) the use of dummies or fictitious parties; and (6) retention of control of property by the transferor after the conveyance." *MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913, 935 (S.D.N.Y. 1995). Depending on the context, badges of fraud will vary in significance, though the presence of multiple indicia will increase the strength of the inference. *Id.*

In the present case, Universitas fails to demonstrate fraudulent intent on the part of Respondents. The transfers from COT/Nova to Grist Mill Capital was for the repayment of pre-existing debts that predated the death of Mr. Spencer. Carpenter Aff. ¶24. The repayment of these loans constituted fair consideration for the conveyance, extinguishing any potential "badge of fraud" for inadequacy of consideration. *See Atlanta Shipping Corp., Inc. v. Chem. Bank*, 818 F.2d 240, 248–49 (2d Cir. 1987) (repayment of antecedent debt constitutes fair consideration unless transferee is officer, director, or major shareholder of transferor).

Moreover, Universitas has not adduced any evidence that Grist Mill Capital or any other Respondent retained control over the funds once they were transferred to any of the alleged transferees set forth in the Barnett Declaration. *See MFS/Sun Life Trust-High Yield Series*, 910 F. Supp. at 935–36 ("[T]he critical question for purposes of inferring fraudulent intent is whether the *transferor* retained control over the assets that creditors seek to recover.").

20

## POINT IV

## UNIVERSITAS IS NOT ENTITLED TO INJUNCTIVE RELIEF

In order to obtain permanent injunctive relief, a party must show the absence of an adequate remedy at law and irreparable harm if the relief is not granted. *New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1362 (2d Cir. 1989). In addition, the movant must demonstrate actual success on the merits rather than a likelihood of success. *325 Bleecker, Inc. v. Local Union No. 747*, 500 F. Supp. 2d 110, 123 (N.D.N.Y. 2007) (*citing Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 546 n. 12 (1987)). Universitas is not entitled to a permanent injunction as to Grist Mill Trust for the reason that: (1) it will not succeed on the merits of the fraudulent conveyance claim; and (2) it does not face irreparable harm.

### 1. *Universitas will not succeed on the merits.*

In the present case, Universitas will not succeed on the merits of its claim because it cannot meet its burden under C.P.L.R. § 5225(b). Universitas cannot show that Nova and/or Charter Oak retain an interest in the funds transferred to Grist Mill Capital which Grist Mill Capital transferred thereafter in payment of legitimate debts. *See Beauvais*, 942 F.2d at 840. Moreover, Universitas cannot show that the transfers from Grist Mill Capital to any of the other Respondents were made with actual intent to defraud. *See HBE Leasing*, 48 F.3d at 639.

### 2. *Universitas does not face irreparable harm.*

Irreparable harm is that injury which is so serious that a monetary award cannot adequately compensate the injured party. *See Citibank N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir.1985). The mere possibility of harm is not sufficient, as the harm must be imminent and the movant must show that he is likely to suffer irreparable harm if equitable relief is denied. *JSG*

*Trading Corp. v. Tray–Wrap, Inc.,* 917 F.2d 75, 79 (2d Cir.1990).

"Injunctions are not granted against prospective violations and prospective injuries which have not yet occurred and which, indeed, may never occur." *Crimmins v. Am. Stock Exch., Inc.,* 346 F. Supp. 1256, 1262 (S.D.N.Y. 1972). "[M]ore than an abstract or nebulous plan to possibly commit a wrong sometime in the future, must be shown before the broad and potentially drastic injunctive power of the court will be exercised." *Gen. Fireproofing Co. v. Wyman*, 444 F.2d 391, 393 (2d Cir. 1971).

In the present case, Universitas has not shown that irreparable harm by the actions or conduct of the Respondents is imminent. All transfers made by Respondent GMC to the purported transferees took place in 2009, four years ago. Universitas fails to show any subsequent or contemporaneous transfers between the entities. The single transaction it cites in 2013 involves the Charter Oak Trust 2009, which is a separate and distinct entity from the Judgment Debtor Charter Oak Trust, Carpenter Aff. ¶37, 44. Moreover, Universitas has not shown that the Respondents dissipated or diminished any of its assets at any time either prior to or after being identified by Universitas as a potential source to satisfy its judgment. Universitas seeks to permanently enjoin the Respondents based on entirely prospective actions that it *believes* Respondents will take in an effort to dissipate funds that it legitimately received as repayment for pre-existing loans over four years ago. Such allegations are highly attenuated and do not meet the burden for injunctive relief.[8] *See Crimmins*, 346 F. Supp. at 1262; *Gen. Fireproofing Co.*, 444 F.2d at 393. Therefore, Universitas' claim for permanent injunctive relief as to the Respondents should be denied.

---

[8] Moreover, as demonstrated in a letter dated October 18, 2013 to the Court (Docket No. 307), the so-called "transferee entities" lack funds or any amount remotely close to the judgment amount to turn over to Universitas. While Counsel for Nova urged Counsel for the transferee entities to turn over funds to the Court pending the resolution of this matter, those amounts were miniscule compared to the judgment and in any event should not be subject to this application as the transfers were legitimate.

## CONCLUSION

For the foregoing reasons, Respondents Grist Mill Capital, LLC, Avon Capital, LLC, Charter Oak Grist Welfare Benefit Plan, Grist Mill Holdings, LLC, Hanover Trust Company, Carpenter Financial Group and Phoenix Capital Management respectfully request that the Court deny Universitas' motion for turnover and permanent injunction in its entirety.

Dated: New York, New York
      November 20, 2013

LAW OFFICES OF CAROLE R. BERNSTEIN

By: _____ s/ _____
      Carole R. Bernstein (CB 8343)
      Law Offices of Carole R. Bernstein
      41 Maple Avenue North
      Westport, Connecticut 06880
      203-255-8698
      Attorneys for Grist Mill Capital, LLC and
      Avon Capital LLC

BRIEF CARMEN & KLEIMAN, LLP

By: _____ s/ _____
      Ira Kleiman (IK 6657)
      805 Third Avenue, 12th Floor
      New York, New York 10022
      212-832-5570
      Attorneys for Nova Group, Inc. and Charter
      Oak Trust Welfare Benefit Plan

ANTHONY J. SIANO, ESQ.

By: _____ s/ _____
      Anthony J. Siano (AS8842)
      300 Westchester Avenue, Suite 302
      White Plains, New York 10604
      914-997-0100
      Attorneys for Grist Mill Holdings, Hanover
      Trust Company, Carpenter Financial Group
      and Phoenix Capital Management LLC