**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

| | |
|---|---|
| UNIVERSITAS EDUCATION, LLC, | : |
| | : |
| Judgment Creditor, | : |
| | : |
| -against- | : |
| | : |
| NOVA GROUP, INC., as trustee, sponsor and fiduciary of THE CHARTER OAK TRUST WELFARE BENEFIT PLAN, | : : : |
| | : |
| Judgment Debtor, | : |
| | : |
| -and- | : |
| | : |
| Daniel E. Carpenter, Charter Oak Trust Welfare Benefit Plan, Grist Mill Capital, LLC, Grist Mill Holdings, LLC, the Grist Mill Trust Welfare Benefit Plan, Avon Capital, LLC, Hanover Trust Company, Carpenter Financial Group and Phoenix Capital Management, LLC, | : : : : : |
| | : |
| Respondents. | : |

Case Nos. 11 CV 1590-LTS-HBP and 11-8726-LTS

---------------------------------------------------------------X


**UNIVERSITAS EDUCATION, LLC'S MEMORANDUM OF LAW ON**
**RES JUDICATA AND COLLATERAL ESTOPPEL ISSUES**


LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154-1895
(212) 407-4000


*Attorneys for Judgment Creditor*
*Universitas Education, LLC*

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................................... ii

I.   PRELIMINARY STATEMENT ....................................................................................... 1

II.  STATEMENT OF FACTS ................................................................................................ 2

    a.  Mr. Carpenter's control of Nova ................................................................................. 2
    b.  Mr. Carpenter's status at the arbitration ..................................................................... 4
    c.  Mr. Carpenter's concealment of his fraudulent transfers ............................................ 5

III. ARGUMENT ..................................................................................................................... 8

    a.  Applicable law ............................................................................................................ 8
    b.  *Res judicata* and collateral estoppel apply to Mr. Carpenter's defenses ..................... 11
    c.  Mr. Carpenter fraudulently concealed the looting of the Trust .................................. 12

IV. CONCLUSION ................................................................................................................ 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Alpert's Newspaper Delivery, Inc. v. New York Times Co.,
    876 F.2d 266 (2d Cir. 1989) .......................................................................................... 10, 11

Bancol y Cia. S. en C. v. Bancolombia S.A.,
    280 F. App'x 85 (2d Cir. 2008) ............................................................................................ 9

Cameron v. Church,
    253 F. Supp. 2d 611 (S.D.N.Y. 2003) ............................................................................. 9, 10

Donovan v. Lewnowski,
    Case No. 03-2985-DLI, 2005 U.S. Dist. LEXIS 34268 (E.D.N.Y. Aug. 30, 2005) ............... 11

Eagle Transport, Ltd. v. O'Connor,
    470 F. Supp. 731 (S.D.N.Y. 1979) .................................................................................. 10, 11

Ferris v. Cuevas,
    118 F.3d 122 (2d Cir. 1997) ............................................................................................ 10, 11

Jean-Gilles v. County of Rockland,
    463 F. Supp. 2d 437 (S.D.N.Y. 2006) ................................................................................. 13

King v. Galluzzo Equip. & Excavating, Inc.,
    Case No. 00-6247-ILG, 2001 U.S. Dist. LEXIS 18344 (E.D.N.Y. Nov. 8, 2001) ........... 13, 14

Malcolm v. Bd. of Educ. of the Honeoye Falls-Lima Cent. Sch. Dist.,
    506 F. App'x 65 (2d Cir. 2012) ............................................................................................ 9

New York Dist. Council of Carpenters Pension Fund v. KW Constr., Inc.,
    Case No. 07-8008, 2010 U.S. Dist. LEXIS 99643 (S.D.N.Y. Sept. 8, 2010) ......................... 9

Pike v. Freeman,
    266 F.3d 78 (2d Cir. 2001) .................................................................................................... 9

Siegel v. Daiwa Sec. Co.,
    842 F. Supp. 1537 (S.D.N.Y. 1994) ..................................................................................... 9

Stichting Ter Behartiging Van De Belangen Van Oudaandeelhouders in Het Kapitaal Van
    Saybolt Int'l B.V. v. Phillippe S.E. Schreiber, 327 F.3d 173 (2d Cir. 2003) ......................... 10

In re Teltronics Services, Inc.,
    762 F.2d 185 (2d Cir. 1985) ............................................................................................ 10, 11


Tibbetts v. Stempel,
　　354 F. Supp. 2d 137 (D. Conn. 2005) ................................................................................... 9

United States v. Carpenter,
　　Case No. 11-2131, 2013 U.S. App. LEXIS 23678 (1st Cir. Nov. 25, 2013) ........................... 6

United States v. Ramirez,
　　291 F. Supp. 2d 266 (S.D.N.Y. 2003) ................................................................................. 15

Universitas Educ., LLC v. Nova Grp., Inc.,
　　2013 U.S. Dist. LEXIS 1720 (S.D.N.Y. Jan. 4, 2013) ............................................................ 7

Universitas Educ., LLC v. Nova Grp., Inc.,
　　2013 U.S. Dist. LEXIS 99957 (S.D.N.Y. July 11, 2013) ....................................................... 3

Petitioner/Judgment Creditor Universitas Education, LLC ("Universitas"), through its counsel Loeb & Loeb LLP, respectfully submits the following memorandum of law responding to the Court's request, made in an Order dated November 26 (dkt. no. 344), to brief "the issue of whether any of the claims or defenses raised in this proceeding are barred by the doctrines of *res judicata* or collateral estoppel in light of" the January 24, 2011 Arbitration Award, this Court's June 5, 2012 judgment thereon, and the March 4, 2013 decision of the Second Circuit affirming the judgment.

**I.      PRELIMINARY STATEMENT**

Responding to Universitas' preliminary injunction motion, Daniel E. Carpenter asserts that his company Grist Mill Capital, LLC ("GMC") validly seized the entirety of the Sash Spencer proceeds pursuant to a security interest it purportedly held in the proceeds and following the Charter Oak Trust Welfare Benefit Plan's default on $60 million in alleged loans provided by GMC.  Aside from this defense having no basis in the factual record, the doctrine of *res judicata* precludes Mr. Carpenter from making it.   The Arbitration Award, which this Court confirmed to judgment on June 7, 2012 (dkt. no. 41), found that GMC was only entitled to $4.2 million from the Spencer proceeds.  Universitas Exhibit 18 at 5-6, 9.

Mr. Carpenter knew about the security interest "defense" during the arbitration.  Yet, despite controlling Nova Group, Inc. ("Nova"), directing its arbitration strategy and paying its attorneys, Mr. Carpenter failed to disclose the supposed security interest and loan default  – presumably because the security interest was bogus, the loans never happened, and by asserting the defense Mr. Carpenter would have thereby disclosed his fraudulent seizure of the Spencer proceeds, a fact he wanted to conceal from the Arbitrator and from Universitas.  Since Mr. Carpenter controlled Nova during the arbitration and was therefore in privity with it, he cannot assert a security interest defense here.  Similarly, because he is in privity with Nova,

Mr. Carpenter is collaterally estopped from raising any issue that was actually litigated in the arbitration, including his defense that GMC had a deal with Mr. Spencer to purchase Mr. Spencer's beneficial interest in the insurance policies. The Arbitrator found no evidence to support this defense, and this finding is binding on Mr. Carpenter.

On the other hand, Universitas is not precluded from seeking to make Mr. Carpenter liable for his fraudulent transfers of the Spencer proceeds to shell entities that he controls. Universitas did not know about these transfers during the arbitration, because Nova did not disclose them and prevented Universitas from otherwise learning about them. In fact, Nova's principals and attorneys repeatedly affirmed (to the Arbitrator, and in sworn statements) that Nova could satisfy an arbitration award of more than $30 million. Nova, as controlled by Mr. Carpenter, thus fraudulently concealed the money transfers to Mr. Carpenter, and defrauded the Arbitrator by representing otherwise. Having uncovered Mr. Carpenter's fraudulent actions through post-judgment discovery (which Mr. Carpenter sought to block), Universitas is permitted to litigate fraudulent transfer and alter ego claims against Mr. Carpenter.

## II.   STATEMENT OF FACTS

### a.   *Mr. Carpenter's control of Nova*

As this Court has found, Mr. Carpenter has, at all relevant times, "directly controlled material aspects of the affairs of Nova and the Charter Oak Trust." 11/20/13 Opinion and Order at 5. Before, during and after the underlying arbitration, Mr. Carpenter was the Chairman of Nova or otherwise an officer of Nova. Signed documents, including a tax return and filings with the Delaware Secretary of State, indicate that Mr. Carpenter was a Nova officer from at least

2

2008 to 2011.  11/20/13 Opinion and Order at 5; Universitas Exhibits 7-10[1]; see also Universitas Educ., LLC v. Nova Grp., Inc., 2013 U.S. Dist. LEXIS 99957 (S.D.N.Y. July 11, 2013) (report of Magistrate Judge Pitman recommending that Carpenter, as a Nova officer or manager as of July 2013, be sanctioned for Nova's failure to comply with the Court's August 17, 2012 Order on post-judgment discovery).

At the arbitration, Nova was represented by the law firm of Updike Kelley & Spellacy, P.C. ("Updike").  Mr. Carpenter was the only person who paid Nova's legal bills.  See Universitas Exhibit 54 at COT_UPDIKE00053-56.  Updike's November 2010 invoice alone, even in the heavily redacted form in which it was produced, shows Mr. Carpenter's intimate involvement in the arbitration (the arbitration ran from June to December 2010, with hearings taking place December 6-8).  See, e.g., Universitas Exhibit 54 at COT_UPDIKE00029-39.  There were Updike communications with Mr. Carpenter on November 5, 8, 11, 14, 15, 19, 24, 27 and 29, leading up to the start of the arbitration hearing on December 6.  Id.  Mr. Carpenter even drafted a letter to the Arbitrator, Peter L. Altieri, for Updike's review.  Id. at COT_UPDIKE00030 (November 5 billing entry for Richard S. Order).

Mr. Carpenter's dominance of Nova's litigation strategy preceded the arbitration.  A year before, he had initiated and funded the Charter Oak Trust's litigation against the Lincoln National Life Insurance Company ("Lincoln Life") to recover more than $30 million in life insurance proceeds for which Universitas was represented to the District of Connecticut as the beneficiary – even though neither he nor GMC was a party to that litigation.  November 22, 2013

---

[1] The Court admitted Exhibits 1 through 35, and Moonstone Exhibits A through R, into evidence during the May 9, 2013 hearing on Universitas' first turnover motion (dkt. no. 219).
   The Court admitted Exhibits 36 through 61, and Carpenter Exhibits A through S, into evidence during the November 22, 2013 hearing on the instant motion for a preliminary injunction.

3

Transcript of Evidentiary Hearing ("November 22 Hearing Tr.") at 32:21-25, 33:1-9 ("I was the one that paid for and launched litigation when we sued in May of 2009")[2]; Exhibit 57 at ¶8.

### b. Mr. Carpenter's status at the arbitration

While Mr. Carpenter stood silently behind Nova at the arbitration, directing its litigation strategy and paying its attorneys, he fought Universitas' attempts to make him a party to the arbitration. The Arbitrator, in response, bifurcated the arbitration into two phases. Phase I, the Arbitrator said, would be against Nova, Wayne H. Bursey is his capacity as Trustee of the Charter Oak Trust, and another entity in its capacity as Administrator of the Trust. 11/3/10 Arbitrator Order at ¶1, Exhibit B to the July 17, 2012 Declaration of Michael Barnett (dkt. no. 77-2). Phase II, he said, which Universitas could pursue instead of "judicial recourse," would assess the arbitrability of Universitas' claims against other Respondents, including Mr. Carpenter, as well as the Respondents' liability if the dispute was found to be arbitrable. Id. at ¶¶1-2.

Mr. Carpenter was thus not a Phase I party to the arbitration, and the Arbitrator noted that Universitas could seek "judicial recourse" against him. In a letter to the Arbitrator concerning Phase II, Universitas' counsel said it withdrew its "arbitration claims" against Mr. Carpenter "without prejudice." 11/20/13 Affidavit of Daniel Carpenter ("11/20/13 Carpenter Aff.," dkt no. 338), Exhibit B at footnote 1.[3] Mr. Carpenter was, however, an active participant in Phase I of the arbitration, because he controlled Nova, directed Nova's litigation strategy, and paid for its attorneys.

---

[2] Universitas understands that Southern District Reporters has provided the Court with transcripts of both the May 9, 2013 and November 22, 2013 hearings.

[3] Universitas attempted to commence Phase II against other Respondents, but they refused to participate any longer in the arbitration.

4

   *c.*  *Mr. Carpenter's concealment of his fraudulent transfers*

  Mr. Carpenter stood behind Nova, and directed and financed its arbitration against Universitas.  Yet neither he nor anyone else ever claimed in the arbitration that GMC held a security interest in all of the Spencer proceeds for any loans that GMC made to the Charter Oak Trust.  These secured loans have never been documented.  <u>See</u>, <u>e.g.</u>, 11/20/13 Opinion and Order at 11, 17-18 ("[A]lthough the Moonstone Respondents allege that Grist Mill loaned Charter Oak Trust $60 million, they offered no evidence of the existence of the loan other than the testimony of Mr. Carpenter, which was not at all credible").

  In the arbitration, GMC's only basis for claiming the Spencer proceeds for itself was a supposed deal in which Mr. Spencer agreed to sell his beneficial interest in the insurance policies to GMC in exchange for $1.8 million. No one asserted that GMC had the right to the Spencer proceeds as a result of the Charter Oak Trust's having defaulted on purported loans provided by GMC in the aggregate of $60 million.  <u>See</u> Universitas Exhibit 18 at 3 (listing Nova defenses); <u>see also</u> 11/20/13 Opinion and Order at 12 ("In the arbitration proceeding, Nova had proffered five reasons for the denial of Petitioner's claim to the Life Insurance proceeds. Not one of those reasons had anything to do with a purported loan repayment obligation to Grist Mill").

  After initially naming GMC as a Respondent, Universitas dismissed it in August 2010, shortly after the arbitration began, because "among other reasons, no arbitration agreement exists between Universitas and Grist Mill Capital."  11/20/13 Carpenter Aff., Exhibit A.  Since Universitas understood Mr. Carpenter to stand behind both Nova and GMC, it further understood that it could challenge GMC's supposedly competing claim in the arbitration against Nova – especially since Nova continued to assert GMC's claim even after Universitas dismissed GMC from the arbitration.  And, indeed, after hearing testimony on this issue, Arbitrator Altieri disposed of GMC's "competing claim":

<center>5</center>

> There is no credible evidence that any agreement was ever consummated arising out of the discussions Mr. Spencer had before he died with Grist Mill Capital regarding the possible assignment of the beneficial interest under the policies to Grist Mill Capital in return for a $1.8 million payment to Universitas. Even [Jack E.] Robinson acknowledged that there was no written evidence of such an agreement. According to Respondents' position, such agreement, if entered into, may have constituted a life settlement transaction which would not have been permitted in any event. Finally, there was no evidence that in accordance with that agreement the Trust intended to pay such benefits to Grist Mill Capital.

Universitas Exhibit 18 at 5-6 (internal citation omitted). Neither Nova nor GMC nor Mr. Carpenter nor anyone else disclosed that Mr. Carpenter, by the time of the arbitration, had long since seized the entirety of the Spencer proceeds and fraudulently transferred the money to his various shell companies while awaiting sentencing on multiple mail and wire fraud convictions.[4] See 11/20/13 Opinion and Order at 15.

In the voluminous communications and briefs generated prior to and during the arbitration, no one mentioned that GMC claimed a security interest in the entirety of the Spencer proceeds that purported to secure GMC for any and all loans it may have made to the Charter Oak Trust. See Universitas Exhibit 38, Exhibit 52, and Exhibits 56-58; see also November 22 Hearing Tr. at 30:3-25, 31:1-25, 32:1-25, 33:1-9, 33:16-21, 49:25, 50:1-25, 51:1-25, 52:1-19. The security interest that GMC now claims in the Spencer proceeds was never disclosed to Mr. Spencer; nor was it disclosed to Lincoln Life. See, e.g., Universitas Exhibit 38; 11/20/13 Carpenter Aff. at Exhibits F, G and S; November 22 Hearing Tr. at 79:12-25, 80:1-14.

Far from disclosing Mr. Carpenter's seizure of the funds pursuant to a supposed security interest, Nova's attorneys and representatives were doing exactly the opposite, repeatedly

---

[4] At the time the $30.7 million was transferred, Mr. Carpenter was awaiting sentencing following multiple guilty verdicts in July 2008. The trial judge overturned the verdicts in September 2011. The First Circuit recently reversed the trial judge's decision, reinstating the guilty verdicts and remanding the case for Mr. Carpenter's "prompt sentencing." United States v. Carpenter, Case No. 11-2131, 2013 U.S. App. LEXIS 23678 (1st Cir. Nov. 25, 2013).

representing that Nova and the Charter Oak Trust had sufficient assets to satisfy an award of more than $30 million. In the arbitration, Universitas made a preliminary injunction motion to freeze the trust funds, because Nova had refused to disclose the funds' whereabouts (Nova's refusal, in retrospect, is attributable to Mr. Carpenter's improper seizure of the funds). In response, Nova repeatedly (and falsely) represented that sufficient assets existed to satisfy an award in Universitas' favor, in an effort to prevent the Arbitrator from granting Universitas' preliminary injunction request.

More specifically, on October 28, 2010, during oral argument on Universitas' motion for a preliminary injunction requiring Nova to place the insurance proceeds in an escrow account at its law firm, the Arbitrator asked Nova's lead attorney, Updike partner Richard S. Order, whether Nova and the Charter Oak Trust had assets sufficient to satisfy the award sought by Universitas (approximately $35 million) and in whose name the money was held. Mr. Order represented to the Arbitrator that Nova and the Charter Oak Trust did have sufficient assets to satisfy any award in Universitas' favor. Based on Mr. Order's representation, Arbitrator Altieri denied Universitas' request for a preliminary injunction, stating:

> While Trustees' counsel's [Richard Order] unwillingness to divulge the location and amount of Trust assets is of concern, counsel [Richard Order] did state that the Trust would be able to satisfy any award to [Universitas].

Universitas Educ., LLC v. Nova Grp., Inc., 2013 U.S. Dist. LEXIS 1720, at *9-10 (S.D.N.Y. Jan. 4, 2013) (noting Mr. Order's representation); see also 11/3/10 Arbitrator Order at ¶4, Exhibit B to the July 17, 2012 Declaration of Michael Barnett (dkt. no. 77-2).

Although Arbitrator Altieri issued an Order that Nova provide an "accounting," it continued to refuse to provide documentary evidence of its assets, producing instead an Affidavit by Nova's President, Wayne H. Bursey, that stated that the Charter Oak Trust had assets of $35

7

million.  See 11/12/10 Bursey Affidavit, attached as Exhibit C to the July 17, 2012 Declaration of Michael Barnett (dkt. no. 77-3).

After Universitas complained that Mr. Bursey's affidavit failed to note whether Nova's assets were net of liabilities, Nova submitted a sworn declaration from its General Counsel, Mr. Robinson, which stated, in pertinent part, that "I am familiar with [the Trust's] operations, assets, liabilities, and financial condition, and state that [it] has the current ability to satisfy a judgment of $30 million."  11/30/10 Robinson Declaration, attached as Exhibit D to the July 17, 2012 Declaration of Michael Barnett (dkt. no. 77-4).

Mr. Bursey's and Mr. Robinson's respective representations constituted fraud on the Arbitrator, and the purpose for making the representations was to conceal Mr. Carpenter's fraudulent transfer of the trust funds.  Indeed, even after this Court entered judgment for Universitas, Mr. Carpenter continued to attempt to conceal what he had done with Universitas' money.  For instance, in September 2012, he wrote a letter to TD Bank threatening it with criminal prosecution if it complied with Universitas' subpoenas. Universitas Exhibit 19.  This and other tactics led Magistrate Judge Pitman to conclude that Nova has "resisted all efforts" to enforce Universitas' judgment in this action, and that Nova's principals and attorneys had improperly threatened third parties from which Universitas sought discovery.  11/21/12 Order at 1-2, 8 (dkt. no. 176).

## III.   ARGUMENT

### a.   *Applicable law*

The doctrine of *res judicata* bars a party or its privy from litigating a claim or defense that was litigated, or could have been litigated, in a prior action.  The doctrine of collateral estoppel bars a party or its privy from re-litigating an issue that was actually decided in a prior action.  These doctrines are both applicable when the prior action is an arbitration.

8

Bancol y Cia. S. en C. v. Bancolombia S.A., 280 F. App'x 85, 86-87 (2d Cir. 2008); New York Dist. Council of Carpenters Pension Fund v. KW Constr., Inc., Case No. 07-8008, 2010 U.S. Dist. LEXIS 99643, at *13 (S.D.N.Y. Sept. 8, 2010); Siegel v. Daiwa Sec. Co., 842 F. Supp. 1537, 1542 (S.D.N.Y. 1994).  New York law, Connecticut law and federal law do not appear to conflict with respect to the doctrines of *res judicata* and collateral estoppel.  Pike v. Freeman, 266 F.3d 78, 90-91 n. 14 (2d Cir. 2001); Tibbetts v. Stempel, 354 F. Supp. 2d 137, 145 n.17 (D. Conn. 2005).

*Res judicata*, or claim preclusion, "'applies to preclude later litigation if the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same [claim, or] cause of action,'" or claims that could have been brought in the prior litigation or arbitration and arise out of the same "'operative nucleus of fact'" as the current litigation.  Cameron v. Church, 253 F. Supp. 2d 611, 619 (S.D.N.Y. 2003) (quoting Teltronics Services, Inc. v. Hessen, 762 F.2d 185, 190 (2d Cir. 1985) and Olmstead v. Amoco Oil Co., 725 F.2d 627, 632 (11th Cir. 1984)).  "To determine whether two actions arise from the same nucleus of operative facts, [a court] consider[s] whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations."  Malcolm v. Bd. of Educ. of the Honeoye Falls-Lima Cent. Sch. Dist., 506 F. App'x 65, 67-68 (2d Cir. 2012) (internal quotations omitted).  Applying *res judicata* with respect to a claim not asserted in an earlier arbitration proceeding requires a finding that the claim could have actually been brought in the prior arbitration.  Pike, 266 F.3d at 91.

Collateral estoppel, or issue preclusion, applies to bar re-litigation of an issue already decided.  For it to take hold, a court must find the following: "'(1) the issues in both proceedings

9

must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.'" Cameron, 253 F. Supp. 2d at 618 (S.D.N.Y. 2003) (quoting Gelb v. Royal Globe Ins. Co., 798 F.2d 38, 44 (2d Cir. 1986)).

*Res judicata* and collateral estoppel apply to both parties and their privies. Stichting Ter Behartiging Van De Belangen Van Oudaandeelhouders in Het Kapitaal Van Saybolt Int'l B.V. v. Phillippe S.E. Schreiber, 327 F.3d 173, 184 (2d Cir. 2003); Ferris v. Cuevas, 118 F.3d 122, 126 (2d Cir. 1997).  Privity exists when a party to a prior action represented the interests of another party in the pending action.  Ferris, 118 F.3d at 128.  In making this determination, "[t]he issue is one of substance rather than the names in the caption of the case; the inquiry is not limited to a traditional privity analysis." Alpert's Newspaper Delivery, Inc. v. New York Times Co., 876 F.2d 266, 270 (2d Cir. 1989).

Thus, "[a] judgment against a corporation bars later litigation on the same cause of action by an officer, director, or shareholder of the corporation if the individual participated in and effectively controlled the earlier case." In re Teltronics Servs., Inc., 762 F.2d 185, 191 (2d Cir. 1985); see also Eagle Transport, Ltd. v. O'Connor, 470 F. Supp. 731, 733 (S.D.N.Y. 1979) (president, sole director and sole shareholder bound by prior arbitration award even if he was not a party to it).

In In re Teltronics Servs., the Second Circuit applied *res judicata* to bar claims brought by an individual who was Chief Executive Officer and President of the company that was a party in the prior litigation.  Id.  In light of the individual's "continuous and active 'non-party' participation and his apparent day-to-day leadership role in the prior litigation," his claims were

10

barred and he was bound by the result in the prior litigation.  Id.  Similarly, in Alpert's Newspaper Delivery, 876 F.2d at 270, the Second Circuit barred a newspaper delivery company from asserting antitrust and other claims against The New York Times, where these claims were brought in a prior litigation by other delivery companies, and both litigations were the idea of the same "mastermind and financier," who was not a party to either litigation.

### b.     Res judicata *and collateral estoppel apply to Mr. Carpenter's defenses*

Mr. Carpenter's defenses, which are unsupported in any event, are also precluded since Nova could have raised them at the arbitration.  Mr. Carpenter, from at least 2008 to 2011, "directly controlled material aspects of the affairs of Nova and the Charter Oak Trust."  11/20/13 Opinion and Order at 5.  At the time of the arbitration, Mr. Carpenter was Nova's Chairman.  He paid for the attorneys who represented Nova, as well as directed its strategy against Universitas and, previously, against Lincoln Life.  He was the "mastermind and financier" of Nova's claims and defenses at the arbitration.  Alpert's Newspaper Delivery, 876 F.2d at 270.  Accordingly, Mr. Carpenter is in privity with Nova; along with his many other entities, Mr. Carpenter and Nova are "one cohesive unit."  See Ferris, 118 F.3d at 126 ("[p]rivity has also been found where a person so controlled the conduct of the prior litigation in which they were interested such that the result is *res judicata* against them"); Donovan v. Lewnowski, Case No. 03-2985-DLI, 2005 U.S. Dist. LEXIS 34268 (E.D.N.Y. Aug. 30, 2005) (applying *res judicata* to the claims of spouses and several entities that they operated, where several of their entities were involved in a prior litigation, and they and their entities operated as "one cohesive unit").

In the arbitration, Nova could have, but failed to, raise the issue of GMC having a security interest in all of the Spencer proceeds for all loans it made to the Charter Oak Trust.  Operating as "one cohesive unit" with GMC and Mr. Carpenter, Nova had asserted, as a defense, that GMC had a "competing claim" to the proceeds because it had contracted to purchase

11

Mr. Spencer's beneficial interest in the insurance policies for $1.8 million. Yet even though he had already seized the Spencer proceeds by the time of the arbitration, Mr. Carpenter failed to assert GMC's security interest – a defense that arises from the same "operative nucleus of fact" as Nova's other defenses, including Mr. Spencer's suppose sale of his beneficial interest to GMC. As the person controlling Nova, Mr. Carpenter could have asserted, but failed to assert, this defense as yet another (albeit unsupported) reason to deny Universitas' claim. *Res judicata* therefore prevents Mr. Carpenter, as a privy of Nova, from raising a defense that he could have raised through Nova at the arbitration.

The doctrine of collateral estoppel serves to bar Mr. Carpenter, as a privy of Nova, from relitigating any issue that the Arbitrator decided. As did Nova in the arbitration, Mr. Carpenter asserts in this Court that Mr. Spencer agreed to sell his beneficial interest in the Lincoln Life insurance policies to GMC for $1.8 million. The Arbitrator concluded there was "no credible evidence" of an agreement between Mr. Spencer and GMC, and noted that even Mr. Robinson acknowledged, in testimony, that there was no written evidence of such an agreement. Universitas Exhibit 18 at 5-6 (internal citation omitted).

Mr. Carpenter is precluded from relitigating this issue, as he is asserting a defense that (1) is identical to that of Nova, his privy, (2) was actually litigated and decided, (3) was the subject of a full and fair opportunity for litigation in the prior proceeding, and (4) was necessary to the final judgment in this action, since had the Arbitrator found that Mr. Spencer made an agreement with GMC, Universitas presumably would not have been entitled to the insurance proceeds upon Mr. Spencer's death.

    c.    ***Mr. Carpenter fraudulently concealed the looting of the Trust***

On the other hand, *res judicata* cannot bar Universitas' claims against Mr. Carpenter because during the arbitration, he and others fraudulently concealed his looting of the Charter

12

Oak Trust.  A party is not barred from bringing a claim that it could not have brought in a prior action.  A claim could not be brought in a prior action where a party was fraudulently prevented from discovering the facts giving rise to the claim, or could not have discovered the facts through ordinary due diligence.  Jean-Gilles v. County of Rockland, 463 F. Supp. 2d 437, 457-58 (S.D.N.Y. 2006); King v. Galluzzo Equip. & Excavating, Inc., Case No. 00-6247-ILG, 2001 U.S. Dist. LEXIS 18344, at *33 (E.D.N.Y. Nov. 8, 2001) ("'A defendant cannot justly object to being sued on a part or phase of a claim that the plaintiff failed to include in an earlier action because of the defendant's own fraud'") (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 26 cmt. j (1982)).

In the arbitration, there was no disclosure that any trust funds had been taken.  Just the opposite – Nova's attorney, Mr. Order, represented to the Arbitrator that his client could satisfy a $35 million award.  Two Nova officers, Mr. Bursey and Mr. Robinson, submitted sworn statements with similar assertions in response to Arbitrator Orders.  At the same time, Nova, its principals and its attorneys refused to disclose the whereabouts of the Spencer proceeds (which, unbeknownst to Universitas, had long since left the Charter Oak Trust's TD Bank account).  Even after the entry of judgment, Nova, as controlled by Mr. Carpenter, continued to attempt to prevent Universitas from understanding what had been done with the money.  11/21/12 Order at 1-2, 8 (dkt. no. 176); Exhibit 19.  In its November 20, 2013 decision, this Court aptly summed up Nova's conduct when it noted:

> the transfers [of money] were done in secret. Neither Nova, nor any other of Mr. Carpenter's other entities, informed Petitioner that it was removing the Life Insurance Proceeds from the Charter Oak Trust. Despite the fact that Mr. Bursey had earlier acknowledged a fiduciary duty to pay Petitioner the trust funds, he proceeded to transfer the entire amount of the Life Insurance Proceeds to Grist Mill over a period of six months while wrongly denying Petitioner's claims. Petitioner was forced to engage in extensive, fiercely resisted, discovery to uncover the transfers.

11/20/13 Opinion and Order at 18.

In light of Mr. Carpenter's fraudulent conduct, as well as the representations made by individuals who were supposed to be fiduciaries for a trust, Universitas did not know that Mr. Carpenter had fraudulently conveyed the Spencer proceeds first to GMC, and then to a slew of other sham entities he controls.  As such, Universitas could not have asserted fraudulent conveyance claims against Mr. Carpenter in the arbitration.  See King, 2001 U.S. Dist. LEXIS 18344 (finding that plaintiffs, ERISA-governed trust funds, did not need to assert claims in prior action because they were entitled to rely on defendant-employer's reporting of contributions to the funds).

And even if Universitas knew that Mr. Carpenter had looted the Charter Oak Trust at the time of the arbitration, Mr. Carpenter refused to submit to arbitration, and was not a Phase I party.  Following the entry of judgment, he even persisted in claiming to be an improper deponent on the issue of the whereabouts of the Spencer insurance proceeds.  See July 13, 2012 Memorandum of Law in Support of Mr. Carpenter's Motion to Quash at 6 (dkt. no. 67-1) ("Who better to testify as to 'all matters relevant to the satisfaction of [a] judgment' against it than a corporate designee of Nova? Why would Universitas seek discovery from a non-party witness who is not an officer of the corporation before seeking discovery from the entity itself?").

Having unraveled Mr. Carpenter's fraudulent scheme, Universitas has, since the entry of judgment, been pursuing the "judicial recourse" against Mr. Carpenter that the Arbitrator provided as one of Universitas' options, and which Universitas reserved when it dismissed Mr. Carpenter without prejudice.  See 11/20/13 Carpenter Aff., Exhibit B at footnote 1 (noting that Universitas was withdrawing its "arbitration claims" against Mr. Carpenter "without prejudice").

Moreover, the bare U.C.C. filing by GMC was insufficient to give notice to Universitas of Mr. Carpenter's looting of the Charter Oak Trust, especially when Nova repeatedly represented that it had the funds to pay Universitas. The U.C.C. financing statement that GMC filed did not and cannot establish the amount in GMC "loans" that the Spencer policies purportedly secured. See United States v. Ramirez, 291 F. Supp. 2d 266, 269 (S.D.N.Y. 2003) ("While the filing of a Financing Statement perfects a security interest, see N.Y.U.C.C. § 9-403, a Financing Statement alone cannot create a valid security interest") (citing PaineWebber Inc. v. Nwogugu, Case No. 98 CIV. 2441-DLC, 1998 U.S. Dist. LEXIS 5602 (S.D.N.Y. Apr. 22, 1998)).

If anything, GMC was only secured up to the amount in loan repayments and fees that Mr. Spencer agreed to pay GMC.[5] See Carpenter Exhibits D-G and S; Universitas Exhibit 18 at 9. These loan repayments were promptly made following the Charter Oak Trust's receipt of the Spencer life insurance proceeds from Lincoln Life. Universitas Exhibit 18 at 9. No one claimed that GMC held a security interest in all of the Spencer proceeds for any loans that GMC allegedly made to fund premiums on other Charter Oak Trust policies. See Universitas Exhibit 18 at 3 (listing Nova defenses); see also 11/20/13 Opinion and Order at 12; see also Universitas Exhibit 38, Exhibit 52, and Exhibits 56-58.

In sum, Universitas could not have brought fraudulent conveyance claims because Mr. Carpenter fraudulently concealed his looting of the Charter Oak Trust, and there was no proof that the Spencer proceeds secured repayments unrelated to Mr. Spencer. Mr. Carpenter, moreover, refused to submit to arbitration, and was not a Phase I party. Universitas' fraudulent

---

[5] As discussed in Universitas' accompanying Proposed Findings of Fact, the loans for the Spencer premium payments actually came from Ridgewood Finance, Inc., not GMC, and with various fees the repayment obligation did not exceed $4.2 million. See also Carpenter Exhibit R at 8.

conveyance and alter ego claims against Mr. Carpenter are therefore properly brought in this action.

## IV. CONCLUSION

For the foregoing reasons, Respondent Daniel E. Carpenter, as a privy of Judgment Debtor Nova Group, Inc. ("Nova"), is precluded under the doctrine of *res judicata* from raising any claim or defense that could have been raised in the underlying arbitration, including but not limited to any alleged default on a secured loan entitling him or one of his entities to take part or all of the Sash Spencer life insurance proceeds. Mr. Carpenter, as a privy of Nova, is also collaterally estopped from re-litigating any issue that was decided in the arbitration, including but not limited to his or one of his entity's entitlement to the Spencer insurance proceeds pursuant to a claimed (but undocumented) agreement with Mr. Spencer.

Dated: December 2, 2013
New York, NY

        LOEB & LOEB LLP

        By: /s/ Paula Colbath                                    /
            Paula K. Colbath (PC-9895)
            Michael Barnett (MB-7686)
            345 Park Avenue
            New York, New York 10154-1895
            (212) 407-4000

            *Attorneys for Judgment Creditor*
            *Universitas Education, LLC*