UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
UNIVERSITAS EDUCATION, LLC,                                    :
                                                              : Case No.:  11 CV 1590-LTS-HBP
                                      Petitioner,             :
                                                              :
                          -v-                                 :
                                                              :
NOVA GROUP, INC., as Trustee, Sponsor                         :
and Named Fiduciary of the CHARTER OAK                        :
TRUST WELFARE BENEFIT PLAN,                                   :
                                                              :
                                      Respondent.             :
------------------------------------------------------------- :
NOVA GROUP, INC., as Trustee, Sponsor                         :
and Named Fiduciary of the CHARTER OAK                        : Case No.: 11 CV 8726-LTS-RLE
TRUST WELFARE BENEFIT PLAN,                                   :
                                                              :
                                      Petitioner,             :
                                                              :
                          -v-                                 :
                                                              :
UNIVERSITAS EDUCATION, LLC,                                   :
                                                              :
                                      Respondent.             :
-----------------------------------------------------------------------X

## RESPONSES OF RESPONDENT DANIEL E. CARPENTER TO THE PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW OF UNIVERSITAS

## AND HIS RESPONSE TO UNIVERSITAS' BRIEF ON RES JUDICATA AND COLLATERAL ESTOPPEL

### Introduction

Respondent Daniel E. Carpenter ("Mr. Carpenter") submits, as directed by the Court, this response to the post-hearing submissions of Petitioner Universitas.

I

## UNIVERSITAS HAS NOT DEMONSTRATED THAT IT IS ENTITLED TO A PRELIMINARY INJUNCTION IN THAT IT HAS FAILED TO SHOW IRREPARABLE INJURY ABSENT THE ISSUANCE OF AN INJUNCTION.

A party seeking a preliminary injunction must show irreparable harm absent injunctive relief, and either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in plaintiff's favor. Almontaser v. New York City Dep't of Educ., 519 F.3d 505, 508 (2d Cir. 2008) (internal quotation marks omitted). A preliminary injunction is an extraordinary remedy that should not be granted as a routine matter. JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 80 (2d Cir. 1990).

The district court has wide discretion in determining whether to grant a preliminary injunction. Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007). A district court abuses its discretion when it rests its decision on a clearly erroneous finding of fact or makes an error of law. Id.

To satisfy the irreparable harm requirement, plaintiffs must demonstrate that absent a preliminary injunction they will suffer "an injury that is neither remote nor speculative, but actual and imminent," and one that cannot be remedied "if a court waits until the end of trial to resolve the harm." Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005) (*quoting* Rodriguez ex rel. Rodriguez v. DeBuono, 175 F.3d 227, 234–35 (2d Cir. 1999)). Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction. Id. Accordingly, the moving party must first demonstrate that such injury is *likely* (emphasis supplied) before the other requirements for the issuance of an injunction will be considered" Id.

2

The standard for preliminary injunctive relief requires a *threat* of irreparable harm, not that irreparable harm already has occurred.  Mullins v. City of New York, 626 F.3d 47, 55 (2d Cir. 2010).

To demonstrate a likelihood of irreparable harm, a moving party bears the burden of showing that "the injury it will suffer is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages."  N.A.A.C.P., Inc. v. Town of E. Haven, 70 F.3d 219, 223 (2d Cir. 1995).

The injury must be one requiring a remedy of more than mere money damages.  A monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation.  Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989).  An irreparable injury is one that cannot be redressed through a monetary award.  See, e.g., Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd., 339 F.3d 101, 113–14 (2d Cir. 2003).

It is true that demonstration of intent to frustrate a judgment may be found to satisfy the requirement of a showing of irreparable harm.  Signal Capital Corp. v. Frank, 895 F. Supp. 62, 64 (S.D.N.Y.1995) (*citing* Feit & Drexler, Inc. v. Drexler, 760 F.2d 406, 416 (2d Cir.1985)). "[A]lthough injuries compensable by monetary damages ordinarily do not give rise to irreparable harm . . . '[a] preliminary injunction may issue to preserve assets as security for a potential monetary judgment where the evidence shows that a party intends to frustrate any judgment on the merits by making it uncollectible.'"  Pashaian v. Eccelston Properties, Ltd., 88 F.3d 77, 87 (2d Cir. 1996) (citation omitted) (citing Gelfand v. Stone, 727 F. Supp. 98, 100 (S.D.N.Y.1989)). However, this exception has not been applied where efforts to render a defendant judgment-proof may be remedied by enforcing the judgment against other companies through corporate veil-

piercing and other mechanisms.  Sea Carriers Corp. v. Empire Programs, Inc., No. 04-CIV-7395-RWS, 2006 WL 3354139, at *5 (S.D.N.Y. Nov. 20, 2006);  see also Pac. Elec. Wire & Cable Co., Ltd. v. Set Top Int'l Inc., No. 03-CIV-9623-JFK, 2003 WL 23095564, at *5 (S.D.N.Y. Dec. 30, 2003)

In the instant case, Universitas has simply failed to meet its burden.  Universitas has not identified any transfers of funds from any corporate respondent to Mr. Carpenter personally. Universitas has not identified any transfers of funds from any corporate respondent to Carpenter Financial Group ("CFG") or Grist Mill Holdings ("GMH") after December 2009.  The transfer of funds leading to the acquisition of the Rhode Island real property (hereinafter "the Moonstone transaction") all occurred in 2009.  Universitas has not identified any transfers of any funds as to the Moonstone transaction since 2010.  Universitas further admits that despite wide ranging discovery obtained from numerous financial institutions and various named respondents, it has not located other funds or assets which it claims to be proceeds of the Sash Spencer insurance policies.  The last financial transaction involving the proceeds of the Spencer insurance policies which is identified in Universitas' moving papers occurred in October 2011.

While Universitas' moving papers identify Mr. Carpenter with the formation and operation of numerous unnamed corporate entities (see e.g. Barnett Declaration at 10, par. 29), Universitas does not identify any movement of funds or assets originating from the judgment debtor to any of these unnamed corporate entities or to Mr. Carpenter.  Indeed, Universitas has not proven that any sum of money from the Spencer insurance proceeds or any asset of the judgment debtor is currently in the possession, custody or control of Mr. Carpenter.

Thus, Universitas has failed to show irreparable harm, such that without the drastic remedy requested - and there can be nothing more drastic than a total freeze on all of Mr.

4

Carpenter's assets - Universitas will suffer imminent and actual injury. Simply put, despite the one effort (and not by Mr. Carpenter) to transfer an insurance policy, which effort was unsuccessful, Universitas has not shown that anything has changed here since 2011. Absent irreparable injury, the motion cannot be granted.

Mr. Carpenter's responses to the findings of fact proposed by Universitas will be presented in separate points, identified by topic.

1. The Absence of Proof of Present Risk of the Transfer of Funds.

Universitas is asking this Court to preliminarily enjoin Mr. Carpenter from engaging in any financial transaction as to any company or business with which he is associated, regardless of Universitas' total inability to even identify such entities of businesses and regardless of a total absence of proof connecting these "invisible" businesses to any portion of the Spencer insurance proceeds.

In support of its application, Universitas consumes vast portions of its submissions reciting negative information and pejorative speculations as to Mr. Carpenter personally. Assuming arguendo that any of the recitations (some of which are repeated three or more times) relate to any element of an application for a preliminary injunction, they do not identify any risk of immediate harm.

There is simply no proof anywhere in this record that any of the Spencer insurance proceeds are, at the present time, in the possession, custody or control of Mr. Carpenter.

2. The Discovery Universitas Has Conducted Contradicts its Position on this Application.

The Docket Report in this matter reflects that subpoenas to the following third-party entities/people, among others, were issued by Universitas at one time or another for the stated

purpose of obtaining documents that would permit Universitas to identify assets and funds of the judgment debtor:

- M&T Bank (see e.g., Dkt # 56),

- Sovereign Bank (see e.g., Dkt # 56),

- Peoples United Bank (see e.g., Dkt # 56),

- WSFS Bank (see e.g., Dkt # 56),

- Christiana Trust (see e.g., Dkt # 56),

- TD Bank (see e.g., Dkt # 56),,

- JP Morgan Chase (see e.g., Dkt # 56),

- Bank of America (see e.g., Dkt # 56),

- Wells Fargo Bank (see e.g., Dkt # 56),

- Ballard Spahr LLP (see e.g., Dkt # 82),

- Fox Rothschild LLP (see e.g., Dkt # 82),

- Halloran & Sage LLP (see e.g., Dkt # 82),

- Updike Kelly & Spellacy, P.C. (see e.g., Dkt # 82),

- Smith, Gambrell & Russell, LLP (see e.g., Dkt # 82),

- Carmen Macca (see e.g., Dkt # 89),

- Malkin Properties (see e.g., Dkt # 119),

- Lincoln Financial Group and Lincoln National Life Insurance Company. (see e.g., Dkt # 121),

- The Penn Mutual Life Insurance Company(see e.g., Dkt # 123),

- Caldwell Life Strategies Corporation ((successor to Ridgewood Financial) (see e.g., Dkt # 212),

- Mr. Donald Trudeau (see e.g., Dkt # 74),

Universitas conducted this widespread discovery and identified to this Court only a combined total of nine insurance policies allegedly owned or controlled by the judgment debtor or any other respondent in 2013.

Nothing in the proceeds of this discovery identifies a single dollar in funds or any asset beyond the insurance policies as to which Universitas is making a claim of "imminent harm".

Equally significant is that nothing Universitas has received in discovery from these many third parties contradicts the disclosures by Nova and Charter Oak Trust (and by Mr. Carpenter individually) that the Spencer insurance proceeds were used to pay insurance premiums.

Nothing Universitas has received in discovery from Caldwell Life Strategies Corporation(see e.g. Dkt # 212), which entity is the successor in interest to Ridgewood Financial Group LLC, contradicts the disclosures by Nova and Charter Oak Trust (and by Mr. Carpenter individually) that the vast majority of the insurance policies in the Charter Oak Trust were transferred to Ridgewood to satisfy that creditor for the sums advanced through Nova Group Inc. to pay insurance premiums.

And lest this Court be inclined to construe the absence of third-party proof on these fact issues against respondents, Universitas has not provided, as yet, to the respondents copies of the disclosures made by these many third-parties from which Universitas has obtained discovery.

Universitas has the burden of proof under the law controlling the issuance of an order for a preliminary injunction. Universitas has done this self-proclaimed vast amount of discovery from third parties. And Universitas has not offered any proof from any source that identifies any of the Spencer proceeds currently in the possession custody or control of Mr. Carpenter.

As Mr. Carpenter has testified, the Spencer insurance proceeds were used to pay back lenders to the Charter Oak Trust and, after being repaid, those lenders funded additional insurance premiums after 2009.

3. The Testimony of the Agent for Nova Group does not Establish that Mr. Carpenter has any of the Spencer Insurance proceeds.

Nova Group Inc., in its efforts to comply with an Information Subpoena served on it by Universitas engaged an agent, Mr. Peter A Goldman, to respond to the questions asked in the information subpoena.   Nova Group did so because of the assertions then of  Fifth Amendment rights by various person affiliated with Nova and Charter Oak Trust.  The questions in the Information Subpoena were addressed to the then-present assets of Nova Group and Charter Oak Trust.  (See Dkt # 183-2).  Mr. Goldman reviewed the books and records of Nova and Charter Oak Trust and responded, in writing and in his deposition, that Nova and Charter Oak Trust had no current assets.

Then, during the deposition of Mr. Goldman taken by Universitas, its counsel chose to ask Mr. Goldman questions beyond the scope of Mr. Goldman's engagement.  Mr. Goldman repeatedly told Universitas counsel that he was not engaged on such subjects and did not know the answers to the questions posed.

On the current motion, Universitas' attempt to bootstrap the agent's ignorance on various subjects into proof that Mr. Carpenter is presently holding the Spencer proceeds.   This is an utter *non sequitur*.   The agent was tasked with a specific assignment and testified that the records of the companies reflected the payment of insurance premiums and the payment of debts to creditors.

The agent was tasked with searching for then-current assets of Nova and Charter Oak Trust and he reported what he looked for, how he conducted his inquiry and what he did and did not find.

While Universitas is free to argue that the explanation received from the agent is insufficient, that arguable insufficiency does not provide proof that Mr. Carpenter has the money which counsel for Universitas deems not to have been used to pay premiums and creditors.

And here again, nothing Universitas had obtained from third-party discovery is offered to this Court either: 1) to contradict the respondents' position that the money was used to pay premiums, or 2) to demonstrate an alternative location for or use of the insurance proceeds.

4.   The Absence of Fully Executed Documents Does Not Contradict their Existence.

Respondent Mr. Carpenter has submitted to the Court documents that confirm the transactions between Charter Oak Trust and the decedent about which he testified or described in his affidavit.   Mr. Carpenter has provided these documents to the Court to explain the rationale for the actions taken by him before there was an arbitration or before there was a judgment against Nova Group, Inc.

Universitas argues to this Court that the failure of Mr. Carpenter to provide fully executed documents somehow renders the documents nonexistent.  While the absence of a fully executed document may limit the legal impact of the document after-the –fact, Mr. Carpenter's presentation of them to the Court still does corroborate his explanations for why Nova and Charter Oak acted as they did in 2009.

Furthermore, as to all the documents that were part of the funding packages, Universitas subpoenaed Christiana Bank (see Dkt # 56) and if any of the funding packages were incomplete

or non-existent, the Court should expect Universitas to point that out in the documents it received from Christiana Bank in discovery.

Mr. Carpenter is not capable of forcing Universitas to produce the funding files Universitas subpoenaed so as to obtain fully executed documents contained in Christiana Bank's files.   But here again, if the third-party records contradicted Mr. Carpenter, one would expect to see such a contradiction presented by Universitas.

5.   <u>The actions  taken as to one or more insurance policies in the Charter Oak Trust 2009 is not an attempt to hide Spencer proceeds.</u>

Universitas offers the correspondence of Mr. Wayne Bursey in May 2013 as claimed proof of Universitas' need for an injunction and proof that Mr. Carpenter attempted to hide Spencer insurance proceeds.  Neither argument is factually correct. (See Barnett Exhibit 42).

Universitas' memorandum characterizes correspondence of Mr. Bursey in May 2013 as "recent attempts" by Nova and Charter Oak Trust to transfer assets to Grist Mill Capital. Universitas, without proof, ascribes Mr. Bursey's correspondence to Mr. Carpenter. No proof supports that assertion.

The policies described in the Bursey correspondence were held in a trust that was a separate entity.  That trust, the Charter Oak Trust 2009, did not own policies originating in the Charter Oak Trust. Universitas does not present any proof that the policies of Charter Oak Trust 2009 was ever owned by Charter Oak Trust.

Universitas admits to the Court that it had served a Restraining Notice on the Lincoln National Insurance Company:  which company issued the policies being discussed in the Bursey correspondence of May, 2013. (See Barnett Hearing Exhibit 4).

The Restraining Notices prevented the occurrence of any action of the type Universitas complains of now as to the policies then discussed.

What Universitas does not disclose in its papers is that its Restraining Notice led directly to Universitas being paid a cash settlement of its claim as to at least one of the policies, to wit, the Wisda policy. See Point 6, below. Universitas also has not disclosed to the Court that it permitted the transfer of the specific policy after it was paid a sum of between fifty and one hundred thousand dollars.

A full description of the facts as to the policies described in the Bursey correspondence would have demonstrated to this Court is that: a) Universitas already has restraints in place to protect its judgment; b) the only movement of a policy in 2013 was with its consent; and c) Universitas has obtained some money in the enforcement of its judgment (a contradiction of its claim that it has not received any money at all).

6.    Universitas' Proposed Finding of Fact Number 11 is known by Universitas to be false.

Universitas' Proposed Finding of Fact #11 states:

**"Following entry of judgment, Universitas still has not been paid any portion of its judgment amount. 11/20/13 Opinion and Order (dkt no. 340) at 3."**

Despite Universitas' citation to this Court's recent decision, this proposed finding of fact is not true and that untruth has been known to counsel for Universitas since approximately August 2013.

In its papers on the current application, counsel for Universitas described certain actions by Wayne Bursey in May 2013 relative to four insurance policies, identified in Mr. Bursey's correspondence by policy numbers. See Proposed Findings of Fact # 11 and Universitas Hearing Exhibit 42.

The identified policy numbers in Mr. Bursey's letter are JJ7098098, JJ7075457, JJ7105688 and JJ7121879.

11

One of the enumerated policies, to wit Policy # JJ7098098 was in the name of the insured "Wisda".

What Universitas has not disclosed in its papers is that a previously served Restraining Notice led directly to Universitas being paid a cash settlement of its claim as to the Wisda policy. Universitas also has not disclosed to the Court that it permitted the transfer of the specific policy after it was paid a sum of money totaling between fifty thousand and one hundred thousand dollars.

Counsel for Mr. Carpenter submits today copies of documents written by counsel for Universitas confirming its acceptance of the sum of money in return for allowing the "Wisda" policy to be transferred as Mr. Bursey requested and Lincoln's consent to the transfer after that payment was arranged.  See Siano Affidavit of December 12, 2013 and Exhibits thereto.

The documents submitted by counsel for Mr. Carpenter today demonstrate that:

1 –At least one of Universitas' proposed findings of fact is false and was known by Universitas to be false;

2 – The enforcement devices already being used by Universitas-Restraining Notices- were effective to protect its interests in various disputed assets; and

3 – Nothing in the events of 2013 as to the disputed insurance policies established a rish of imminent harm to Universitas warranting a preliminary injunction as to Mr. Carpenter individually.

7.  <u>The inability to deposit funds in Court as an escrow does not prove that secreted funds exist</u>

Universitas points to the letter of Ira Kleiman, Esq. of October 4, 2013, as some sort of proof that the Spencer proceeds are being withheld.  Mr. Kleiman does not say any such thing in

his letter. The letter merely reports to the Court, in a letter responsive to the Court's decision of September 30, 2013, that no such funds are available. (See Dkt # 296).

If Universitas' third-party discovery had revealed the actual presence of actual funds in any of the various corporate respondents' bank accounts in September or October 2013, then such would be proof of "withholding" funds. Mr. Kleiman's letter only states that there are no such funds.

8.   The Mere Repetition of the Accusation that Mr. Carpenter is holding the Insurance proceeds is not proof of anything.

Universitas' post-hearing papers repeat innumerable times the single accusation that Mr. Carpenter should be enjoined because Universitas claims he is holding  the Spencer insurance proceeds.  Petitioner's innumerable repetitions of the same accusation is not proof.

Substituting Mr. Carpenter's name into transactions under taken by various corporate respondents does not put funds into his hands.  Universitas simply omits references to the actual corporate uses of funds.  Instead it chooses in its motion to define all these businesses as synonymous with what Mr. Carpenter and then claim that he is therefore in possession of the Spencer insurance proceeds.

None of the financial records of the corporate respondents show that any of those entities are in possession of the Spencer insurance proceeds in 2011 or 2012 or 2013. And none of those records show that Mr. Carpenter received funds from those entities.

Not a single bank statement, check, credit memo, debit memo, withdrawal slip or deposit ticket identifies even a single dollar of funds from the corporate respondents flowing to Mr. Carpenter personally.

Not a single bank statement, check, credit memo, debit memo, withdrawal slip or deposit ticket identifies even a single dollar of funds from the Spencer insurance proceeds as being passed to any respondent whatsoever after 2010.

9.     The representation of the various respondents by counsel is not proof that the Spencer proceeds are being used to pay counsel.

Counsel for Universitas makes the *ipse dixit* argument that because the various corporate respondents appear in this Court by counsel that this is proof that the Spencer proceeds are being consumed. The mere appearance of counsel for a corporation does not prove anything as to the source of funds for the payment of fees.

Universitas offers no proof of their melodramatic yet empty assertion that counsel now before the Court are being paid with the Spencer insurance proceeds.

The facts show that this argument by Universitas is unsupported by proof. First, corporate entities can only appear by counsel. Much as petitioner may wish for the corporations to default, such default is not required by the Federal Rules of Civil Procedure.  And counsel before this Court have demonstrated by their actions an appreciation of the Court's authority and a desire to comply with both the applicable law and the orders of this Court.

Universitas did not establish in the hearing or in any of its submissions that there are any funds from the Sash Spencer insurance proceeds now in the possession of Daniel Carpenter. Contrary to the allegations of petitioner's counsel, respondents' counsel have stated to counsel for Universitas, no counsel have been paid by funds arising from the judgment debtor and discovery has been provided on this question.

14

10. <u>The Attacks on Mr. Carpenter's credibility do not prove that he is holding any of Spencer insurance proceeds.</u>

While Universitas has submitted lengthy, and often redundant, proposed findings of fact that attack Mr. Carpenter personally and seek to undermine his credibility, these proposed findings of fact do little more than support some form of impermissible "propensity" arguments regarding Mr. Carpenter.

The events of Mr. Carpenter's trial and conviction in the U.S. District Court of Massachusetts were based on transactions that have no impact on the matter before this Court. In the Massachusetts case (<u>United States</u> v. <u>Carpenter</u>, 80 F.Supp 366 (D. Mass. 2011)), the matter in dispute centered on investment decisions made by Mr. Carpenter's business as to certain funds he held as an intermediary in so-called "1031 exchanges" in 1998 through 2000.

In that case, Mr. Carpenter did not expend or secrete funds. As the record reflects, he invested the funds he held—which course of conduct was disclosed to the depositors—and the investments failed. The charges against Mr. Carpenter arose from questions as to the adequacy of Mr. Carpenter's disclosures to the investors regarding the funds.

That case did not then and does not now involve any factual issue even remotely similar to the claims being made by Universitas in its turnover motion.  While the fact of Mr. Carpenter's conviction might be of evidentiary value, the details of the case are clearly inadmissible.

Mr. Carpenter was convicted in the Massachusetts case.  That conviction was twice overturned and only recently was re-instated by the First Circuit Court of Appeals in November 2013.  Until that happened, Mr. Carpenter was convicted of nothing.

The accusations against Mr. Carpenter in Massachusetts were pending for nearly a decade. He remained free on bail without any instances of a violation of his bail conditions. The prosecutors' arguments as to sentencing issues have no relevance in this case.

Universitas alleges that Mr. Carpenter's re-instated conviction supports injunctive relief but offers no proof that the Massachusetts case had any impact whatsoever on the enforcement of Universitas' judgment.

It is not within Mr. Carpenter's control whether or not the government may seize his property in the Massachusetts case. But Universitas treats its speculation that this will occur as if it is a fact that somehow demonstrates that Mr. Carpenter will dissipate his property now. There is no support for either the premise or the conclusion.

Also, the new existence of a grand jury investigation in Connecticut does not support any factual finding whatsoever against Mr. Carpenter.

11.    The Court's earlier decision regarding the Moonstone property does not provide a factual basis for the issuance of a preliminary injunction as to Mr. Carpenter.

Universitas attempts to rely heavily on the Court's November 20, 2013 memorandum of decision regarding the turnover motion for the Moonstone property as the "factual" basis for many of its proposed findings of fact. The "facts" derived from the Moonstone proceeding should be limited to that proceeding, since they were presented on a specific factual question involving a single series of transactions in 2009.

In at least one instance, Universitas seeks (See Universitas' Proposed Finding of Fact #11) to have the Court repeat as a "finding" now a "fact" from the Moonstone decision that Universitas' counsel knows to be false today. See Point # 6, above.

On the current application, Universitas has named new respondents and seek to reach the assets of those respondents. Evidence presented during proceedings on the current application

16

the show cause hearing on November 22, 2013 may alter the Court's conclusion(s). For instance, in the Moonstone proceeding, the Court found there was no documentary evidence presented to support the legitimacy of the transfers between the entities, including Grist Mill Capital and Grist Mill Trust (such as loan documents pre-dating the death of Spencer). See 11/20/13 Opinion and Order at p. 8–9. As such, while the Court may have reached that conclusion during the Moonstone proceeding with respect to the legitimacy of those transfers, this does not automatically become a "fact" when new evidence is presented in a separate proceeding to refute the Court's conclusion, such as the loan documents executed by Grist Mill Trust and Grist Mill Capital.

    12.    <u>Universitas' proposed preliminary injunction is fatally overbroad in its reach.</u>

        Nowhere in either post-hearing submission does Universitas identify proof to support this Court issuing an order that reaches unidentified businesses of Mr. Carpenter and precludes any action by Mr. Carpenter even in the absence of any proof of a connection to the Spencer insurance proceeds.

        In bringing the latest turnover proceeding, Universitas could only identify certain specific corporate respondents as recipients of funds from the proceeds of the Spencer insurance policies. Universitas did not identify Mr. Carpenter receiving any such proceeds in his own name or accounts.

        But Universitas did not ask this Court to restrain his actions as to entities that actually received funds from the proceeds of the Spencer insurance policies. Such a finite reach for interlocutory relief would at least bear some connection to the actual evidence before the Court.

In the relief it demands, Universitas goes beyond any fact alleged in its moving papers, beyond anything in any exhibit entered into evidence at the hearing, and beyond any subject matter about which Mr. Carpenter testified.

Nowhere in its post-hearing submissions does Universitas provide any legal or factual justification for the Court to enter an order freezing all of Mr. Carpenter's interests from any source whatsoever.  There is no proof sufficient to justify such an order anywhere in this record.

II

## APPLICATION OF THE DOCTRINES OF RES JUDICATA OR COLLATERAL ESTOPPEL DO NOT RESOLVE THE ISSUES AS TO THE TURNOVER RESPONDENTS

Universitas, in its memorandum to this Court on the doctrines of Res Judicata and Collateral Estoppel take the unique position that every person and entity on Nova Group Inc.'s side of the arbitration are bound by these doctrines and that Universitas is not.  Undersigned counsel has not been able to locate any case that supports that completely one-sided application of these doctrines.

Universitas' papers also do not seem to be certain if Grist Mill Capital was or was not in or out of the arbitration and to what degree Mr. Altieri did nor did not rule on issues as to Grist Mill Capital.

As to Mr. Carpenter, Universitas' argument is that since Mr. Carpenter was responsible for the compensation of counsel, he thereby became a party to the arbitration.  Then, some pages later in its brief Universitas acknowledges that it dismissed the arbitration as to Mr. Carpenter and Grist Mill Capital.   Nowhere does Universitas point out to this Court where it argued to Mr. Altieri that the payment of fees bound Mr. Carpenter into the arbitration.

Finally, Universitas argues that Grist Mill Capital could have been subjected to the "Phase II" arbitration offered by the arbitrator  and that this mere possibility somehow binds Grist Mill Capital to the findings in the Phase I arbitration in which it did not participate.  Of course, Universitas also argues that it chose to pursue judicial remedies instead of the Phase II arbitration.  So the Universitas argument is that Grist Mill Capital is bound by an arbitration that it wasn't a party in and cannot have an arbitration that the arbitrator offered to Universitas and which Universitas declined.

Nowhere in its paper on res judicata and collateral estoppel does Universitas explain how its litigation decisions have no force under these doctrines and that only the decisions that might have been adverse to Grist Mill Capital and Mr. Carpenter do.

Universitas does argue that Grist Mill Capital was in privity with Nova Group Inc.  It cannot point to the Arbitrator making that determination.  Universitas offers no explanation how Grist Mill Capital—a creditor--its debtor –Nova Group, Inc—had an identity of interests in an arbitration into which only Nova contractually bound itself.

As Mr. Carpenter has pointed out to this Court, the Second Circuit has held in National Union Fire Insurance Company of Pittsburgh, P.A. v. Belco Petroleum corporation, 88 F.3d 129 (2d Cir. 1996), and in United States Fire Insurance Company v. National Gypsum Company, 101 F.3d 813 (2d Cir. 1996), that the reach of the doctrines of res judicata and collateral estoppel are within the powers of the arbitrator and that such determinations lie first with the arbitrator and not with the District Court.

19

As such, the issues of res judicata and collateral estoppel should be referred to the arbitrator with the decision on Universitas' motion held in abeyance pending the arbitrator's review.

Dated: December 6, 2013
       White Plains, New York

                                    Respectfully submitted,

                                    ___s/Anthony J. Siano_____
                                    Anthony J. Siano, Esq. (AS8842)
                                    Anthony J. Siano, Esq., PLLC
                                    333 Westchester Avenue, Suite 302
                                    White Plains, New York 10604

To:

Paula K. Colbath,Esq
Michael Barnett, Esq.
Loeb & Loeb
345 Park Avenue
New York, New York 10154

Matthew Brief, Esq.
Ira Kleiman, Esq.
Brief, Carmen, Kleiman, LLP
805 Third Avenue - 12th Floor
New York New York
United States of America 10022

Carole Bernstein, Esq.
41 Maple Avenue North
Westport, Connecticut 06880

Glenn A. Duhl, Esq.
Siegel, O'Connor, O'Donnell & Beck, P.C.
150 Trumbull Street
Hartford, CT 06103