UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNIVERSITAS EDUCATION, LLC,

       Petitioner,

  -v-                                          Nos.   11 Civ. 1590 (LTS) (HBP)
                                                           and
                                                            11 Civ. 8726 (LTS) (HBP)

NOVA GROUP, INC., as trustee, sponsor and
fiduciary of THE CHARTER OAK TRUST
WELFARE BENEFIT PLAN,

       Respondent.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

       Following entry of judgment in its favor in the above captioned-actions, Universitas Education, LLC ("Petitioner") seeks, pursuant to New York Civil Practice Law and Rules ("CPLR") section 5225(b) and Federal Rule of Civil Procedure 69, the turnover of assets by respondent Daniel E. Carpenter and certain of his affiliated entities (docket entry no. 308), as well as preliminary injunctive relief pending determination of the turnover motion. The Court entered an order to directing Mr. Carpenter to show cause as to why he should not be preliminarily enjoined, pending determination of the turnover motion, from "directly or indirectly, causing, making, permitting or suffering any sale, assignment or transfer of, or any interference with, any asset or property of his, and any asset or property of any company, corporation or entity (including any trusts) in which he has a direct or indirect interest or control: provided that Mr. Carpenter be permitted to expend and/or transfer up to an aggregate amount of $20,000.00 per month for ordinary expenses of his or one of his entities with any such payments

or transfer to be reported, in writing, with supporting documentation to [Petitioner's] counsel within seven (7) days of such payment/transfer being made."

The Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1332(a)(1) and 1441.

The Court held an evidentiary hearing on the preliminary injunction motion on November 22, 2013. Post-hearing submissions were completed on December 16, 2013. The Court has considered carefully all of the submissions and arguments of the parties, the documentary evidence, including transcripts of deposition testimony, and the courtroom testimony.

In accordance with Federal Rules of Civil Procedure 52(a) and 65, this Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law. To the extent any finding of fact includes conclusions of law it is deemed a conclusion of law, and vice versa. For the following reasons, the motion for a preliminary injunction is granted.

## FINDINGS OF FACT

These cases arise out of a longstanding dispute over the payment of the proceeds of two life insurance policies obtained by the now-deceased Sash A. Spencer, the former Chief Executive Officer of Holding Capital Group, Inc., in connection with the Charter Oak Trust Welfare Benefit Plan ("Charter Oak Trust," or "Plan"). Mr. Spencer named Petitioner the sole, irrevocable beneficiary of his Plan death benefit comprising the proceeds payable under the two life insurance policies, whose face values totaled $30 million (the "Life Insurance Proceeds"). Nova Group, Inc. ("Nova") served as trustee and plan administrator of Charter Oak Trust. In May 2009, after receiving payment of the Life Insurance Proceeds, Nova denied Petitioner's death benefit claim. Petitioner challenged the denial through a binding arbitration proceeding

commenced on June 17, 2010 (the "Arbitration"). The arbitrator awarded Petitioner the entire proceeds, less $4.02 million in policy financing-related fees and expenses owed to Grist Mill Capital, LLC ("Grist Mill"), an affiliate of Nova, Charter Oak Trust and Mr. Carpenter, plus 10% prejudgment interest. (Ex. 18 at pg. 14, January 2, 2011). On June 7, 2012, this court entered judgment confirming the $26,558,308.36 arbitration award issued on January 24, 2011, plus interest at an annual rate of ten percent, for a total judgment against Nova of $30,181.880.30 (the "Judgment"). Following the entry of the Judgment, Nova filed a motion to dismiss Universitas' confirmation petition for lack of subject matter jurisdiction; this Court summarily denied that motion as "wholly without merit" on October 5, 2012. The Second Circuit denied Nova's subsequently-filed appeal, summarily as well. Universitas Educ., LLC v. Nova Grp., Inc., No. 12-3504, 513 F. App'x 62, 64 (2d Cir. 2013).

On March 4, 2013, the Court entered an order to show cause regarding Petitioner's application for turnover of the proceeds of property and casualty insurance on certain real property purchased by a Carpenter-affiliated entity with funds traceable to a portion of the portion of Life Insurance Proceeds. The property and casualty insurer, Mr. Carpenter, his wife, and their affiliated entity, Moonstone Partners, LLC, appeared as respondents to the order to show cause. After evidentiary proceedings, this Court granted relief in an order entered on November 20, 2013. Universitas Educ., LLC v. Nova Grp., Inc., 11 Civ. 1590, 2013 WL 6123104 (S.D.N.Y. Nov. 20, 2013) (the "November Order").

The November Order addressed some of the same transactions that are the subject of this proceeding. In the November Order, the Court found that Mr. Carpenter controlled, during the periods relevant to these transactions, Nova, Charter Oak Trust, Grist Mill, Grist Mill Trust ("GM Trust"), Grist Mill Holdings ("GM Holdings"), Phoenix Capital Management, LLC

("Phoenix"), and Caroline Financial Group, Inc. ("Caroline Financial"), as well as hundreds of other related entities. In the November Order, the Court held that two May 2009 transfers, aggregating more than $10.8 million, from Charter Oak Trust to Grist Mill were fraudulent conveyances of a portion of the Life Insurance Proceeds. November Order at *12. The Court also found that Mr. Carpenter, through a variety of entities he controlled, retained that portion of the Life Insurance Proceeds for his own benefit. November Order at *2-3. The Court hereby incorporates by reference all of the findings of fact set forth in the November Order. On October 27, 2009, a further $19.8 million was transferred from Charter Oak Trust to Grist Mill. (Ex. 1 at 348-349.) At the evidentiary hearing on the earlier turnover application, Peter A. Goldman, Esq., testifying on direct examination by Petitioner in his capacity of "agent to Grist Mill," stated that he could not explain the second transfer from Charter Oak Trust to Grist Mill, and that it was listed in Grist Mill's ledger as an "unknown deposit." (May 9 Tr. at 118:17-25.)

<u>Mr. Carpenter's Role in the Underlying Arbitration Proceeding</u>

The instant preliminary injunction and turnover proceedings constitute efforts by Petitioner to enforce and realize upon the judgment that was entered against Nova upon confirmation of the Arbitration award. Among other defenses, Mr. Carpenter asserts that he is not bound by the decision rendered by the Arbitrator because he was not a party to the Arbitration, noting that he had originally been named as a party to the Arbitration but that the petition had been dismissed as against him before the award was rendered. (Nov. 22 Tr. at 42:2-9.)[1] Petitioner has presented persuasive evidence that Mr. Carpenter was nonetheless deeply

---

[1] Petitioner withdrew its claims against Mr. Carpenter in the Arbitration without prejudice to renewal of those claims. (Ex. B at n. 1.) The arbitrator noted that Petitioner could either pursue the claims against Mr. Carpenter in a second phase of the Arbitration or seek further judicial action against Mr. Carpenter. (Docket entry no. 77 at Ex. B.)

involved in the arbitration, as architect and financier of Nova's claims and defenses. Indeed, Mr. Carpenter admitted that he had paid for the litigation through which Nova had obtained payment to Charter Oak Trust of the Life Insurance Proceeds to which Petitioner made claim in the Arbitration. (Nov. 22 Tr. at 33:2-12.) Mr. Carpenter was initially named as a party to the Arbitration, and he communicated with Nova's attorneys, Updike Kelley & Spellacy P.C. ("Updike"), no fewer than nine times in the month leading up to the December 2010 Arbitration hearings. (Ex. 54.) In fact, portions of the fees for the Arbitration were paid to Updike with checks from Audit Risk Indemnity Association, LLC, and Grist Mill that were signed by Mr. Carpenter. (Ex. 54 at 53-56.) Updike's records reflect that these payments were "For Payment [sic] of Nova Group, Inc." (Id.) The Court finds that Mr. Carpenter controlled material aspects of the affairs of Charter Oak Trust and Nova prior to and during the Arbitration and, in particular, that he controlled Nova's litigation strategy. Furthermore, insofar as Nova raised defenses and claims of rights to payment in the arbitration that are substantially identical to such claims and defenses raised here by Mr. Carpenter, the record of the Arbitration proceeding confirms that Mr. Carpenter's interests were represented through Nova, notwithstanding the dismissal of the petition as against him for that phase of the proceeding.

    Mr. Carpenter's Testimony Regarding the Transfers of the Life Insurance Proceeds to Grist Mill

    Mr. Carpenter has offered several explanations as to why his transfer and retention (directly and/or through his controlled entities) of Life Insurance Proceeds – the $10.8 million transfers in May 2009, and the $19.8 million transfer in October 2009 – were proper. (See, e. g., Nov. 22 Tr. at 26:22 - 27:24.) Mr. Carpenter testified, among other things, that Charter Oak Trust owed Grist Mill $60 million before the transfers of money it received in May

and October 2009. (Nov. 22 Tr. at 23:25; 24:1-3.) He further testified that Grist Mill had a security interest in all of the assets of Charter Oak Trust. Mr. Carpenter had proffered testimony to the same effect in the earlier turnover proceeding. In the November Order, the Court explicitly rejected Mr. Carpenter's testimony regarding the $60 million loan and security interest as incredible, and his more recent testimony is no more persuasive. See November Order at *10. At the November 22, 2013, hearing, Mr. Carpenter again testified that the debt and security interest allowed Grist Mill to retain the benefit of the Spencer life insurance policies. Mr Carpenter's testimony in this regard was neither consistent with the documents of record nor credible. The arbitrator had rejected similar contentions advanced by Nova, and held, in the confirmed Arbitration award, that the total amount payable to Grist Mill from the Life Insurance Proceeds was only $4.02 million, and that the remainder of the Life Insurance Proceeds, plus interest, were payable to Petitioner. (See Ex. 18 at 5-6, 9, 13-14.)

Taking another tack entirely, Mr. Carpenter also testified at the preliminary injunction hearing that Universitas was entitled at best to only $1.8 million because Mr. Spencer had entered into a secret deal with Grist Mill, in which he had agreed to sell his interest in the life insurance polices to Grist Mill for $1.8 million. (Nov. 22 Tr. at 49:18-22.) Nova had also proffered this theory during the Arbitration, and it was explicitly rejected. (Ex. 18 at 5.) The arbitrator found that "there is no credible evidence that any agreement was ever consummated arising out of the discussions Mr. Spencer had before he died with Grist Mill Capital regarding the possible assignment of the beneficial interest under the policies to Grist Mill Capital in return for a $1.8 million payment to [Petitioner]." (Ex. 18 at 5.) The only evidence offered in support of the theory in the instant proceeding was Mr. Carpenter's testimony, which was not credible.

### Mr. Carpenter and His Affiliated Entities

Mr. Carpenter's testimony, to the extent that it is credible, demonstrates that he frequently engages, directly or indirectly, in inter-company transfers between entities that he creates and controls. Documentation of the transfers, and the business justifications if any therefor, is more often than not nonexistent. The evidence received by this Court concerning the actions of Mr. Carpenter and his affiliates demonstrates an absence of respect for distinctions among his business entities, for his obligations to creditors, and for the orders of this Court. See, e.g., November Order at *7 ("Mr. Carpenter caused the Life Insurance Proceeds to be transferred to and through entities that he controlled, either directly or indirectly, including Moonstone, for the personal benefit of Mr. Carpenter and his affiliates.").

### Frustration of Petitioner's Asset Location and Collection Efforts

Mr. Carpenter, through the entities he controls, has evaded discovery of the disposition of the Life Insurance Proceeds following the transfers of money from Charter Oak Trust. E.g., November Order at *11 ("Mr. Carpenter was able to hide the Carpenters' taking of the Life Insurance Proceeds for years because of the complexity of the bank transfers, Mr. Carpenter's creation of a new entity to hold title to the [real] Property [that he purchased indirectly with part of the Life Insurance Proceeds], and Nova's resistance to efforts to locate the Life Insurance Proceeds through discovery litigation.").

Furthermore, Mr. Carpenter's affiliates and controlled entities have continued to transfer assets away from the judgment-debtor, Nova, and Charter Oak Trust. Following entry of the Judgment, representatives of Nova and Charter Oak Trust contacted an insurance carrier in an attempt to transfer to Grist Mill ownership of a life insurance policy in the name of Judith

Amsterdam. (Ex. 39-43). The record also shows that Wayne H. Bursey, Mr. Carpenter's brother-in-law who serves as president of Nova and trustee of Charter Oak Trust, attempted to transfer the ownership of four other policies from Charter Oak Trust to Grist Mill as late as May 2013. (Ex. 42.)[2] It appears that the life insurance company denied Mr. Bursey's requests. (See Ex. 42.) Nova and Mr. Bursey attempted to accomplish the insurance policy transfers despite Petitioner's June 2012 service of restraining notices on Mr. Carpenter's entities, Grist Mill, Charter Oak Trust, and Nova, prohibiting the alienation of assets from Nova and Charter Oak Trust. (Exs. 39, 40.) When Mr. Bursey was unable to transfer ownership of the four insurance policies, Charter Oak Trust ceased payment of premiums, and the policies lapsed, rendering them valueless. (See Exs. 42 & 43.) Mr. Carpenter and his entities have also resisted discovery efforts into the whereabouts of the Life Insurance Proceeds. See also November Order at *2.

## CONCLUSIONS OF LAW

A court determining whether to grant a preliminary injunction must consider three factors: "(1) irreparable harm absent injunctive relief; (2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor; and (3) that the public's interest weighs in favor of granting an injunction." Red Earth LLC v. United States, 657 F.3d 138, 143 (2d Cir. 2011). The party seeking the injunction must demonstrate "by a clear showing" that the necessary elements are satisfied. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).

### Likelihood of Success on the Merits

---

[2] The Court found in the November Order that Mr. Bursey had assisted in Mr. Carpenter's fraudulent conveyances of the Life Insurance Proceeds.

A judgment creditor may use CPLR section 5225(b) as the means to set aside a transfer made by a judgment-debtor to defraud his creditors. <u>Leser v. U.S. Bank Nat. Ass'n</u>, 09 Civ. 2362, 2013 WL 3788877, at *8 (E.D.N.Y. July 18, 2013) (quoting <u>Gelbard v. Esses</u>, 465 N.Y.S.2d 264, 267 (App. Div. 2d Dep't 1983)).

Under the New York Debtor and Creditor Law, a conveyance may be avoided as actually fraudulent or constructively fraudulent. <u>See</u> N.Y. Debt. & Cred. Law § 273, 275 (McKinney 2012). A debtor's conveyance made with the "actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." N.Y. Debt. & Cred. Law § 276 (McKinney 2012). A transfer that is without fair consideration and occurs at a time when the debtor "believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors." N.Y. Debt. & Cred. Law § 275 (McKinney 2012).

Petitioner has clearly demonstrated that it will likely prevail on the merits of the turnover motion with respect to Mr. Carpenter and his affiliated entities. This Court has already found that the transfers from Charter Oak Trust to Grist Mill in May 2009 of $10.8 million were fraudulent conveyances under New York law, and that Mr. Carpenter caused those transfers for his own benefit. November Order at *11-13. Petitioner has also demonstrated that it is likely to succeed in proving that the transfer of $19.8 million from Charter Oak Trust to Grist Mill in October 2009 was fraudulent. First, Mr. Carpenter has relied on the same inconsistent and incredible explanations for the propriety of both the October 2009 transfer that he relied on for the propriety of the May 2009 transfers, which were fraudulent. Furthermore, Mr. Goldman, as agent of Grist Mill, testified that he could not explain the October 2009 transfer. It is also clear

that Mr. Carpenter continued to control material aspects of the affairs of Charter Oak Trust, Nova, and Grist Mill well beyond October 2009, as demonstrated by his control of the arbitration proceedings on behalf of Nova, and the official filings that he made on behalf of Nova through 2011, as discussed in the November Order.  See November Order at *12.  The Court finds all of Mr. Carpenter's November 22, 2013, testimony regarding the propriety of the transfers incredible.

Moreover, Mr. Carpenter's proffered defenses to Nova's liability for the Life Insurance Proceeds and claims that Grist Mill had legitimate interests in those proceeds over and above the $4.02 million awarded by the arbitrator are barred by the doctrine of res judicata.

The doctrine of res judicata, literally "a thing adjudged," bars a party to a prior litigation from raising a claim or defense in a later suit that was or should have been litigated in that prior proceeding.  See Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 345 (2d Cir. 1995).  Only final judgments on the merits are given preclusive effect.  See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 400 (1981).  Similarly, "[c]ollateral estoppel or issue preclusion also operates to bar adjudication of issues that have been previously determined." Pajooh v. Dep't of Sanitation City of New York, 11 Civ. 03116 (LTS), 2012 WL 4465370 (S.D.N.Y. Sept. 27, 2012), aff'd, 12-4252-CV, 2013 WL 6570706 (2d Cir. Dec. 16, 2013). "[C]ourts apply collateral estoppel . . . if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action."  LaFleur v. Whitman, 300 F.3d 256, 271 (2d Cir. 2002) (quotation marks omitted).  Collateral estoppel "promotes judicial economy by reducing the burdens associated with revisiting an issue already decided."

Securities Exch. Comm'n v. Monarch Funding Corp., 192 F.3d 295, 303 (2d Cir. 1999) (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979)).

Res judicata and collateral estoppel may be applied against not only parties to the prior litigation but also against their privies. Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber, 327 F.3d 173, 184 (2d Cir. 2003). "When an asserted claim is identical to one that has been previously litigated, relitigation may be barred to conserve judicial resources and to allow the prevailing party to enjoy the benefits of its victory and avoid further costs." Celotex, 56 F.3d at 345. Consequently, "one whose interests were adequately represented by another vested with the authority of representation is bound by the judgment, although not formally a party to the litigation." Expert Elec., Inc. v. Levine, 554 F.2d 1227, 1233 (2d Cir. 1977). To determine whether a non-party was adequately represented in an earlier litigation, the court looks to "substance rather than the names in the caption of the case; the inquiry is not limited to a traditional privity analysis." Alpert's Newspaper Delivery, Inc. v. New York Times Co., 876 F.2d 266, 270 (2d Cir. 1989). A party need not be represented by a fiduciary or agent in the proceeding to be found a party's privy, if "it exercised some degree of actual control over the presentation of a party's case at the previous proceeding." Schreiber, 327 F.3d at 185.

Petitioner has demonstrated that Mr. Carpenter was actively involved in, and controlled, Nova's litigation efforts in the Arbitration, having communicated with Nova's attorneys no fewer than nine times the month before the hearings and paid their legal fees from, among other places, Grist Mill's account. Moreover, as previously determined in the November Order, Nova and Charter Oak Trust were controlled by Carpenter at all relevant times. The

Court finds that, under these circumstances, Mr. Carpenter was clearly a privy of Nova as to the issues he seeks to raise here and that he was adequately represented in the Arbitration.

The arguments and defenses that Mr. Carpenter raises in response to Petitioner's claim to the Life Insurance Proceeds were either resolved explicitly in the Arbitration award, which was confirmed by this Court in a final order, or should have been raised in the Arbitration proceeding and are now barred. The Arbitration award held that Grist Mill was due only $4.02 million from the Life Insurance Proceeds pursuant to the terms of the funding agreement.[3] The arbitrator's award reflected an offset for that liability, and the judgment confirming the award is final.

Mr. Carpenter argues, unpersuasively, that the issue of whether <u>res judicata</u> applies to bar his defenses to liability should be arbitrated. The decisions upon which he relies in advancing this argument are inapposite. While parties to an arbitration agreement may well be required to arbitrate the impact of the resolution of a prior dispute under an agreement when a new claim is asserted in connection with that agreement, no such situation is presented here. <u>Cf. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.</u>, 88 F.3d 129, 135 (2d Cir. 1996) (holding applicability of <u>res judicata</u> based on a prior arbitration pursuant to an agreement was itself arbitrable under the agreement in a later arbitration); <u>U.S. Fire Ins. Co. v. Nat'l Gypsum Co.</u>, 101 F.3d 813, 817 (2d Cir. 1996) (holding applicability of <u>res judicata</u> based on a prior order was arbitrable under the same arbitration agreement in a later arbitration). In this proceeding, however, Petitioner merely seeks to enforce the award rendered by the arbitrator and

---

[3] The arbitrator further found that there was no evidence to support the claim that Grist Mill paid either Petitioner or Mr. Spencer $1.8 million for ownership of the beneficial interest in the two life insurance policies at issue.

subsequent court judgment against controlling persons and affiliates of the judgment-debtor, who were recipients of allegedly fraudulent transfers of the assets that were the subject of the arbitrator's decision. Nova's liability and Grist Mill's claim against the Spencer proceeds have already been adjudicated. See, e.g., In re Teltronics Servs., Inc., 762 F.2d 185, 191 (2d Cir. 1985) ("[J]udgment against a corporation bars later litigation on the same cause of action by an officer, director, or shareholder of the corporation if the individual participated in and effectively controlled the earlier case."). There is no evidence or claim that Mr. Carpenter or any of his affiliates are parties to any arbitration agreement with Petitioner that would require the arbitration of Petitioner's fraudulent conveyance and veil-piercing claims in these turnover proceedings. Mr. Carpenter's claims as to the propriety of transfers to Grist Mill in excess of the $4.02 million are barred.

### Likelihood of Irreparable Harm

Irreparable harm is injury so serious that a monetary award cannot adequately compensate for it. See Citibank N.A. v. Citytrust, 756 F.2d 273, 275 (2d Cir. 1985). The mere possibility of harm is not sufficient, as the harm must be imminent and the applicant must demonstrate that it is likely to suffer the harm if equitable relief is denied. JSG Trading Corp. v. Tray–Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1990).

The requisite irreparable harm may be established where purposeful dissipation of the assets of a judgment-debtor would render a monetary damages award illusory. See, e.g., Republic of Phillipines v. Marcos, 806 F.2d 344, 356 (2d Cir. 1986); AngioDynamics, Inc. v. Biolitec AG, 711 F.3d 248, 250 (1st Cir. 2013) (upholding district court's determination of irreparable harm where assets would be transferred to a country where judgment would be unenforceable). Additionally, courts have found irreparable harm "where the party to be

enjoined is shown to be insolvent or imminently insolvent." Sea Carriers Corp. v. Empire Programs, Inc., 04 Civ. 7395, 2006 WL 3354139, at *4 (S.D.N.Y. Nov. 20, 2006).

Petitioner has shown a likelihood of irreparable harm.  As found in the November Order, Mr. Carpenter's entities received fraudulent conveyances of the Life Insurance Proceeds, and he has taken great pains to hide the funds.  Mr. Carpenter has offered no credible evidence to overcome the strong inference that he is further dissipating these funds, or their proceeds, to defeat Petitioner's efforts to satisfy the Judgment.  In fact, the record before the Court demonstrates that Mr. Carpenter's entities have continued to seek to transfer assets from the judgment-debtor to Grist Mill, despite the Judgment and the service of restraining notices.

Mr. Carpenter argues, in essence, that imminent harm cannot be shown because Petitioner has not offered evidence proving that Mr. Carpenter or his entities remain in possession of the Life Insurance Proceeds.  This argument is irrelevant to the irreparable harm analysis, however, because courts have authority under CPLR 5225(b) to enter judgment against a recipient who is no longer in possession of the proceeds of a fraudulent conveyance.  See F.D.I.C. v. Conte, 204 A.D.2d 845, 846 (N.Y. App. Div. 1994).  Thus, even if Petitioner fails the show that Mr. Carpenter, or one of his many entities, is currently in possession of the Life Insurance Proceeds, Petitioner may nonetheless seek entry of a money judgment against them, and execution may be had upon assets in their possession.  Without protection against continued dissipation of assets, however, even such a money judgment remedy may be rendered illusory.

Petitioner has clearly demonstrated that it is likely to suffer imminent and irreparable harm if Mr. Carpenter is allowed, directly or through his affiliated entities, to continue to dissipate assets.

Balance of Hardships and the Public Interest

The Court recognizes that restrictions on alienation of property place significant hardship on a party; however, in this case, Petitioner has demonstrated that the balance of hardships tips decidedly in its favor, as its efforts to recoup the millions of dollars of Life Insurance Proceeds, to which it is entitled, have largely been foiled for years by apparently fraudulent activity on the part of Mr. Carpenter and his affiliates.

A broad temporary injunction is proper where, as here, a party purposefully frustrates collection of a judgment through fraudulent conveyances.  See, e.g., United States SBA v. Haukedahl Found., No. 04 Civ.1744, 2004 WL 1192396, at *3-4 (S.D.N.Y. May 27, 2004).  The public has a strong interest in preventing fraudulent avoidance of judgment collection.  See 7-Eleven, Inc. v. Upadhyaya, 926 F. Supp. 2d 614, 631 (E.D. Pa. 2013) (holding fraud prevention is in the public interest).

The Court finds that the balance of hardships favors Petitioner, and that granting of the preliminary injunction is in the public interest.

CONCLUSION

For the foregoing reasons, Petitioner's application for a preliminary injunction is granted.  Mr. Carpenter, his and his entities' officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with them are hereby enjoined, pending resolution of Petitioner's turnover motion, from directly or indirectly causing, making, permitting or suffering any sale, assignment or transfer of, or any interference with, any asset or property of Mr. Carpenter, and any asset or property of any company, corporation or other entity (including any trusts) in which Mr. Carpenter has a direct or indirect interest or control; provided that Mr. Carpenter may expend or transfer up to an aggregate amount of $20,000.00 per month

solely for ordinary expenses of himself and all of the entities are subject to this injunction. Any single such payment or transfer of assets exceeding $1500.00, and each such payment or transfer to the extent that payments and transfers in the aggregate exceed $5,000.00 in any calendar month, must be reported in writing with supporting documentation to Petitioner's counsel within seven days of such payment or transfer being made.

        The Order resolves docket entry no. 303.

        SO ORDERED.

Dated: New York, New York
       January 13, 2014

                                       /S
                                LAURA TAYLOR SWAIN
                                United States District Judge