**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

UNIVERSITAS EDUCATION, LLC,

                Judgment Creditor,

        -against-

NOVA GROUP, INC., as trustee, sponsor and
fiduciary of THE CHARTER OAK TRUST
WELFARE BENEFIT PLAN,

                Judgment Debtor,

        -and-

Daniel E. Carpenter, Charter Oak Trust Welfare
Benefit Plan, Grist Mill Capital, LLC, Grist Mill
Holdings, LLC, the Grist Mill Trust Welfare
Benefit Plan, Avon Capital, LLC, Hanover Trust
Company, Carpenter Financial Group and Phoenix
Capital Management, LLC,

                Respondents.

-------------------------------------------------------------X

:
:
:
:
:
:
:
:
:
:
:

Case Nos. 11 CV 1590-LTS-HBP and
11-8726-LTS

 

**UNIVERSITAS EDUCATION, LLC'S REPLY MEMORANDUM IN FURTHER**
**SUPPORT OF MOTION FOR TURNOVER AND PERMANENT INJUNCTION**

 

LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154-1895
(212) 407-4000

*Attorneys for Judgment Creditor*
*Universitas Education, LLC*

# TABLE OF CONTENTS

**Page**

**INTRODUCTION**.................................................................................................................... 1

**I.   FACTUAL STATEMENT AND PROCEDURAL BACKGROUND** ............................. 5

   a.   Mr. Carpenter controls the GM Trust ................................................................. 5

   b.   The GM Trust, in the form of Ms. Kehoe, has no knowledge concerning the transactions at issue.................................................................................................................... 6

**II.  ARGUMENT**..................................................................................................... 9

   a.   This action may be brought by motion ............................................................... 9

   b.   Respondents are subject to jurisdiction in this Court......................................... 12

      i.   Respondents' tortious acts caused injury in New York ................................. 13

      ii.  Respondents are also subject to jurisdiction as Mr. Carpenter's alter egos................. 16

      iii. Respondents should have reasonably expected to be sued in New York ................ 17

      iv.  Jurisdiction over Respondents comports with constitutional due process.................... 18

   c.   Universitas has timely turnover claims under New York and Connecticut law ............... 19

      i.   New York's statute of limitations applies to Universitas' claims................................ 19

      ii.  Universitas has timely claims under Connecticut law ................................... 22

   d.   Universitas is entitled to a turnover Order and damages judgments against all Respondents ........................................................................................................ 24

   e.   Universitas is further entitled to permanent injunctive relief against all Respondents..... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

325 Bleecker, Inc. v. Local Union No. 747, United Bhd. of Carpenters & Joiners
of Am.,
500 F. Supp. 2d 110 (N.D.N.Y. 2007) ........................................................................29

Alliance Bond Fund, Inc. v. Grupo Mexicano de Desarrollo, S.A.,
190 F.3d 16 (2d Cir. 1999) ........................................................................................10

Atlanta Shipping Corp. v. Chemical Bank,
818 F.2d 240 (2d Cir. 1987) ......................................................................................26

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
171 F.3d 779 (2d Cir. 1999) ................................................................................14, 16

Bank of Commc'ns v. Ocean Dev. Am., Inc.,
No. 07-4628, 2010 U.S. Dist. LEXIS 21061 (S.D.N.Y. March 8, 2010) ................14

Beck v. Levering,
947 F.2d 639 (2d Cir. 1991) ........................................................................................1

In re Bernard L. Madoff Inv. Sec. LLC,
No. 08-01789, 2012 Bankr. LEXIS 1088 (Bankr. S.D.N.Y. Mar. 14, 2012) ..........27

Cadle Co. v. Ogalin,
495 F. Supp. 2d 278 (D. Conn. 2007) .......................................................................22

Carney v. Lopez,
933 F. Supp. 2d 365 (D. Conn. 2013) .......................................................................24

Chloe v. Queen Bee of Beverly Hills, LLC,
616 F.3d 158 (2d Cir. 2010) ......................................................................................18

CNN, L.P. v. GoSMS.com, Inc.,
No. 00-4812, 2000 U.S. Dist. LEXIS 16156 (S.D.N.Y. Nov. 6, 2000) ...................18

Connell v. Colwell,
214 Conn. 242 (Conn. 1990) .....................................................................................23

Cordius Trust v. Kummerfeld,
No. 99-3200, 2004 U.S. Dist. LEXIS 5027 (S.D.N.Y. Mar. 30, 2004), aff'd by
summary order, 153 F. App'x 761 (2d Cir. 2005) ................................................9, 10

D. Klein & Son, Inc. v. Good Decision, Inc.,
147 F. App'x 195 (2d Cir. 2005) ...............................................................................16

ii

# TABLE OF AUTHORITIES

Page(s)

Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co.,
    375 F. Supp. 2d 257 (S.D.N.Y. 2005) .......................................................................20

Epperson v. Entm't Express, Inc.,
    338 F. Supp. 2d 328 (D. Conn. 2004), aff'd, 159 F. Appx. 249 (2d Cir. 2005) ............... 22-23

FDIC v. Conte,
    204 A.D.2d 845 (3d Dep't 1994) ............................................................................4

FDIC v. Heilbrun,
    167 A.D.2d 294 (1st Dep't 1990) ..........................................................................4

In re Gaming Lottery Secs. Litig.,
    No. 96-5567, 2000 U.S. Dist. LEXIS 17537 (S.D.N.Y. Dec. 5, 2000) ...................................11

Geron v. Seyfarth Shaw LLP,
    736 F.3d 213 (2d Cir. 2013).......................................................................19, 20, 21

GFL Advantage Fund, Ltd. v. Colkitt,
    No. 03 Civ. 1256, 2003 U.S. Dist. LEXIS 10643 (S.D.N.Y. June 23, 2003)..........................21

Global Fin. Corp. v. Triarc Corp.,
    715 N.E.2d 482 (N.Y. 1999)...............................................................................20

Globalnet Financial.com, Inc. v. Frank Crystal & Co.,
    449 F.3d 377 (2d Cir. 2006)...............................................................................21

Hargrave v. Oki Nursery, Inc.,
    636 F.2d 897 (2d Cir. 1980)...............................................................................15

HBE Leasing Corp. v. Frank,
    48 F.3d 623 (2d Cir. 1995)..............................................................................1, 26

HSH Nordbank AG N.Y. Branch v. Street,
    No. 11-9405, 2012 U.S. Dist. LEXIS 99830 (S.D.N.Y. July 18, 2012) ........................... 17-18

Jones v. Dana,
    06 Civ. 0159, 2006 U.S. Dist. LEXIS 25293 (S.D.N.Y. May 3, 2006)...................................29

JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs.,
    295 F. Supp. 2d 366 (S.D.N.Y. 2003).....................................................................20

Kelly v. MD Buyline, Inc.,
    2 F. Supp. 2d 420 (S.D.N.Y. 1998) ................................................................... 15-16

Kernan v. Kurz-Hastings, Inc.,
    175 F.3d 236 (2d Cir. 1999)...............................................................................18

Page(s)

LaMarca v. Pak-Mor Mfg. Co.,
  95 N.Y.2d 210 (2000) ............................................................................................13

Levisohn v. Med. Taping Sys.,
  10 F. Supp. 2d 334 (S.D.N.Y. 1998)......................................................................15

Lyman Commerce Solutions, Inc. v. Lung,
  No. 12-4398, 2013 U.S. Dist. LEXIS 124689 (S.D.N.Y. Aug. 30, 2013).............20

Mareno v. Rowe,
  910 F.2d 1043 (2d Cir. 1990)................................................................................16

Miramax Film Corp. v. Abraham,
  No. 01-5202-GBD, 2003 U.S. Dist. LEXIS 21346 (S.D.N.Y. Nov. 24, 2003) ......17

Mitchell v. Lyons Prof'l Servs.,
  727 F. Supp. 2d 120 (E.D.N.Y. 2010) ...................................................................12

Neshewat v. Salem,
  365 F. Supp. 2d 508 (S.D.N.Y. 2005), aff'd, 194 F. App'x 24 (2d Cir. 2006).........4

Northern Mariana Islands v. Millard,
  845 F. Supp. 2d 579 (S.D.N.Y. 2012)................................................................9, 10

Nova Grp., Inc. v. Universitas Educ., LLC,
  No. 3:11CV342, 2011 U.S. Dist. LEXIS 132028 (D. Conn. Nov. 16, 2011).........13

Padula v. Lilarn Props. Corp.,
  84 N.Y.2d 519 (1994) ............................................................................................22

Patterson v. Bushkin,
  No. 99-3449, 1999 U.S. Dist. LEXIS 19604 (S.D.N.Y. Dec. 20, 1999) ..........15, 17

Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,
  446 F. Supp. 2d 163 (S.D.N.Y. 2006).............................................................. 20-21

Robinson v. Coughlin,
  266 Conn. 1 (Conn. 2003)........................................................................................4

Runaway Dev. Grp. v. Pentagen Technologies Int'l Ltd.,
  396 F. Supp. 2d 471 (S.D.N.Y. 2005)................................................................9, 10

Saregama India, Ltd. v. Mosley,
  Leading Case No. 12-mc-45-P1, 2012 U.S. Dist. LEXIS 39322 (S.D.N.Y.
  Mar. 20, 2012)........................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

SEC v. Colonial Inv. Mgmt. LLC,
 No. 07 Civ. 8849, 2010 U.S. Dist. LEXIS 108063 (S.D.N.Y. Oct. 6, 2010) ...................... 9-10

SEC v. Softpoint, Inc.,
 No. 95-2951-JSR, 2012 U.S. Dist. LEXIS 187142 (S.D.N.Y. May 8, 2012).................... 16-17

Stuart v. Stuart,
 112 Conn. App. 160 (Conn. App. Ct. 2009), partially reversed on other
 grounds by, 297 Conn. 26 (Conn. 2010)....................................................................................4

Sunrise Indus. Joint Venture v. Ditric Optics,
 873 F. Supp. 765 (S.D.N.Y. 1995) ..................................................................................14, 17

TLC Merch. Bankers, Inc. v. Brauser,
 No. 01-3044-GEL, 2003 U.S. Dist. LEXIS 3564 (S.D.N.Y. Mar. 6, 2003) .............................4

U.S. v. Carpenter and Bursey,
 Case No. 13-CR-226-RNC (D. Conn.) .....................................................................................2

United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.,
 216 F. Supp. 2d 198 (S.D.N.Y. 2002)................................................................................. 21-22

United States v. Henshaw,
 388 F.3d 738 (10th Cir. 2004) ................................................................................................27

Universitas Educ., LLC v. Nova Grp., Inc.,
 Nos. 11 Civ. 1590 & 8726, 2013 U.S. Dist. LEXIS 165803 (S.D.N.Y. Nov.
 20, 2013) ......................................................................................................................... passim

Universitas Educ., LLC v. Nova Grp., Inc., Nos. 11 Civ. 1590 & 8726, 2014 U.S.
 Dist. LEXIS 3983 (S.D.N.Y. Jan. 13, 2014)......................................................................... 4-5

Wasserman Media Grp., LLC v. Bender,
 10 Civ. 8783, 2012 U.S. Dist. LEXIS 60844 (S.D.N.Y. Apr. 26, 2012)....................10, 11, 12

**Statutes & Rules**

Rule 69(a)(1) ..........................................................................................................................9

Conn. Gen. Stat. 52-552e(a)(1)..............................................................................................24

Conn. Gen. Stat. 52-552j.............................................................................................22, 23, 24

Conn. Gen. Stat. § 52-552i(b)...................................................................................................4

Conn. Gen. Stat. §52-595 ................................................................................................. 22-23

CPLR § 302(a)(3)(ii)........................................................................................................ passim

# TABLE OF AUTHORITIES

**Page(s)**

CPLR §5225(b) ................................................................................................................ 9-10

NY CLS Dr & Cr § 276 ..................................................................................................26

Local Civil Rule 1.6.......................................................................................................12

Local Division of Business Rule 13(a)(1) and (a)(2)(B) ..............................................12

Petitioner/Judgment Creditor Universitas Education, LLC ("Universitas"), through its counsel Loeb & Loeb LLP, respectfully submits the following reply brief in further support of its motion for turnover and a permanent injunction against each of the Respondents. With Respondents' consent, Universitas respectfully seeks the Court's leave to file this single, 29-page reply brief, in lieu of filing multiple 10-page reply briefs in response to the eight Respondents' overlapping arguments. The Supplemental Declaration of Michael Barnett, dated January 24, 2014 ("1/24/14 Barnett Decl."), with Exhibits 62-76, further supports Universitas' motion.

## INTRODUCTION

Universitas brings this motion to compel the turnover of assets that belong to Judgment Debtor Nova Group, Inc. ("Nova") as Trustee of the Charter Oak Trust Welfare Benefit Plan ("Charter Oak Trust"). Daniel E. Carpenter, and others acting with him, transferred these assets to other entities in Mr. Carpenter's control, including the Respondent entities to this motion. Many of the facts pertinent to this motion have already been aired during two prior evidentiary hearings. There are no disputes of material fact, and this Court may decide Universitas' motion for turnover and permanent injunction as a matter of law. HBE Leasing Corp. v. Frank, 48 F.3d 623, 633 (2d Cir. 1995); Beck v. Levering, 947 F.2d 639, 641-42 (2d Cir. 1991).[1]

In their opposition briefs (dkt. nos. 337 and 339), Respondents mainly raise procedural and jurisdictional defenses. These defenses, which Universitas addresses below, can be decided as a matter of law: (1) this turnover action may be litigated as a motion in this case, (2) this Court has personal jurisdiction over all Respondents, and (3) Universitas' claims are not time-barred regardless of whether New York or Connecticut law applies.

In addition to there being no disputes of material fact, Respondents have barely adduced

---

[1] Universitas would likely not oppose a request by any Respondent for oral argument and/or an evidentiary hearing, although no such request has been made.

any facts at all. Their affiants are Daniel E. Carpenter and Kathy Kehoe, neither of whom is a competent witness.

The Court is familiar with Mr. Carpenter. On December 12, 2013, Mr. Carpenter and Wayne H. Bursey were indicted in the District of Connecticut on multiple counts of mail and wire fraud, in connection with insurance policies procured through the Charter Oak Trust (although not the policies insuring the life of Sash A. Spencer). See U.S. v. Carpenter and Bursey, Case No. 13-CR-226-RNC (D. Conn.) Mr. Carpenter and Mr. Bursey were arraigned and made bail on January 17.

Apparently as a result of these developments, Mr. Carpenter decided, on January 22, to re-assert his Fifth Amendment right against self-incrimination rather than submitting to a substantive deposition on this motion. 1/24/14 Barnett Decl., Ex. 62. Mr. Carpenter started these judgment enforcement proceedings by asserting the Fifth Amendment, only to provide substantive testimony at a deposition and two evidentiary hearings, and has now come back, full circle, to the Fifth Amendment. See, e.g., Universitas Educ., LLC v. Nova Grp., Inc., 2013 U.S. Dist. LEXIS 165803, at *8-9 n. 1 (S.D.N.Y. Nov. 20, 2013) (noting that Mr. Carpenter had agreed to testify as to certain issues "in an apparent attempt to assert fabricated defenses to the paper trail that [Universitas] had uncovered"). Since the claims in Mr. Carpenter's affidavit cannot be tested through deposition or (presumably) cross-examination at hearing, his affidavit is likely not competent testimony (he was cross-examined on it on November 22). In any event, his testimony is false, and incredible, as this Court has found in two Opinions after twice hearing Mr. Carpenter's live testimony on issues relevant to this motion.

Ms. Kehoe was Grist Mill Trust Welfare Benefit Plan's ("GM Trust") sole designee pursuant to a Rule 30(b)(6) subpoena that Universitas served on it. She testified in this action

once before, as a Rule 30(b)(6) designee for Grist Mill Capital, LLC ("GMC") – an entity Mr. Carpenter controls.  1/24/14 Barnett Decl., Ex. 63 (excerpt of transcription of Ms. Kehoe's April 30, 2013 deposition in this matter); 2013 U.S. Dist. LEXIS 165803, at *8 (finding Mr. Carpenter to control GMC).

Ms. Kehoe's Declaration in opposition to this motion (dkt. no. 234-3, "Kehoe Decl.") is inadequate.  For instance, it fails to even mention a significant transfer that shows Mr. Carpenter's control of GM Trust – a $2.7 million transfer from the GM Trust to Phoenix Capital Management, LLC ("Phoenix") on June 12, 2009.  This transfer also goes unmentioned in the Respondents' two opposition briefs, even though GM Trust produced the $2.7 million "loan document" (1/24/14 Barnett Decl., Ex. 71), and this alleged loan was at the center of the May 9, 2013 evidentiary hearing on a prior turnover motion.

Further, at her deposition, Ms. Kehoe, GM Trust's only designee, confirmed that she – and by extension, GM Trust – does not know anything about any of the "loans" to Mr. Carpenter's entities asserted in the opposition brief submitted by GM Trust's attorneys.  In fact, prior to being named GM Trust's sole designee for deposition, Ms. Kehoe – who has helped administer the GM Trust for years, and since well before all of the transfers at issue – had not even known that the GM Trust had loaned any money to anyone, ever.   She further stated that any "loans" were disbursed solely by Molly Carpenter, Mr. Carpenter's wife.  The GM Trust "loans" claimed by Respondents are, at most, "loans" on paper only, and intended solely to conceal Mr. Carpenter's control of the GM Trust as well as his use of that Trust as his personal piggy bank.

The thrust of GM Trust's arguments is that since it has real participants and beneficiaries it is somehow insulated from Universitas' turnover motion.  Of course, the caselaw on fraudulent

transfers is filled with turnover orders, and sometimes damages judgments, entered against entities with some legitimate operations. Whether GM Trust has any legitimate operations is not the issue. The issue is whether Mr. Carpenter and Mr. Bursey used GM Trust in a way that caused it to be a link in a chain of transfers that were made either with the actual intent of defrauding Universitas, or that were constructively fraudulent. The fact that (a) Mr. Bursey received more than $30 million in life insurance proceeds intended to benefit Universitas; yet (b) with Mr. Carpenter, arranged for these proceeds to be transferred to other entities, including the GM Trust (of which he is the Trustee); and (c) is now taking the Fifth Amendment as to his and Mr. Carpenter's actions with respect to Universitas, the Charter Oak Trust and GM Trust, is enough on its own to justify a turnover Order against GM Trust.

Respondents make the flawed suggestion – and without any documentary evidence – that their not having sufficient funds to pay Universitas is a reason to deny Universitas' turnover motion. See, e.g., Carpenter et al. Br. at 9 (dkt. no. 339). This Court has already noted that damages judgments can be entered on a turnover motion (2014 U.S. Dist. LEXIS 3983, *21, (S.D.N.Y. Jan. 13, 2014)), and New York and Connecticut law give the Court the authority to do just that when a fraudulent transferee is found or appears to have disposed of the property targeted by a turnover motion. See, e.g., Conn. Gen. Stat. § 52-552i(b); Neshewat v. Salem, 365 F. Supp. 2d 508, 521-22 (S.D.N.Y. 2005), aff'd, 194 F. App'x 24 (2d Cir. 2006); TLC Merch. Bankers, Inc. v. Brauser, No. 01-3044-GEL, 2003 U.S. Dist. LEXIS 3564, at *9 (S.D.N.Y. Mar. 6, 2003); FDIC v. Conte, 204 A.D.2d 845, 846 (3d Dep't 1994); FDIC v. Heilbrun, 167 A.D.2d 294, 294 (1st Dep't 1990); Robinson v. Coughlin, 266 Conn. 1, 8-9 (Conn. 2003); Stuart v. Stuart, 112 Conn. App. 160, 179-80 (Conn. App. Ct. 2009), partially reversed on other grounds by, 297 Conn. 26 (Conn. 2010).

## I. FACTUAL STATEMENT AND PROCEDURAL BACKGROUND

Universitas incorporates by reference the Declaration of Michael Barnett, dated October 9, 2013, with exhibits thereto ("10/9/13 Barnett Decl."), submitted in support of this motion. On reply, Universitas draws the Court's attention to additional facts pertaining to Mr. Carpenter and Ms. Kehoe, which Respondents' oppositions and affidavits put into issue. Mr. Carpenter's control over the entity Respondents is not in dispute except as to GM Trust.

### a. Mr. Carpenter controls the GM Trust

The uncontroverted documentary evidence shows, and this Court has already found, that Mr. Carpenter controlled the GM Trust at the time of the 2009 transfers at issue. 2013 U.S. Dist. LEXIS 165803, at *14; 2014 U.S. Dist. LEXIS 3983, at *8. Additional uncontroverted evidence establishes that Mr. Carpenter continues to control the GM Trust. For instance, in June 2010, Mr. Carpenter opened a bank account at People's United Bank, in the name of "GMT," and using the GM Trust's unique Taxpayer Identification Number ("TIN"). 1/24/14 Barnett Decl., Ex. 64 (account opening document), Ex. 65 at 89-92 (Ms. Kehoe's testimony confirming Mr. Carpenter used GM Trust's TIN in opening the account). The account opening document identifies Mr. Carpenter as GM Trust's owner and chairman; Mr. Bursey also signed the account opening document, as GM Trust's ostensible Trustee. Id., Ex. 64 at COT_PEOPLES0000200. This account was still open as of April 30, 2013 (see id., Ex. 66), and is likely still open today. Mr. Carpenter appears to use the account to pay GM Trust's legal bills and possibly other expenses. Id., Ex. 64 at COT_PEOPLES0000214, 218 and 219 (showing payments to the Halloran & Sage law firm); Ex. 65 at 96:6:15.

Further, by an office memorandum dated October 20, 2010 (and signed by Molly Carpenter), Amanda Rossi, Mr. Carpenter's assistant, asked the GM Trust to transfer more than $1 million to a Carpenter-controlled entity called Audit Risk Indemnity Association ("ARIA"),

as "reimbursement" for "legal fees." 1/24/14 Barnett Decl., Ex. 67. GM Trust made this payment. Id. at 3.

Ms. Kehoe's Declaration identifies Nova Benefit Plans, LLC as the trustee and plan sponsor of the GM Trust. Kehoe Decl., ¶¶ 3, 8. What it does not say is that Mr. Carpenter is the Chairman of Nova Benefit Plans' managing member, and thereby controls it, as demonstrated by an engagement letter he signed, on that entity's behalf, in September 2011 with the law firm of Smith Gambrell & Russell LLP. 1/24/14 Barnett Decl., Ex. 68.

Ms. Kehoe herself is not a Trustee of GM Trust, and in fact works for another company located at 100 Grist Mill Road in Simsbury – Benistar Admin. Services, Inc., of which Molly Carpenter is the chairperson and Ms. Kehoe's supervisor. 1/24/14 Barnett Decl., Ex. 65 at 5:1-8, 96:6-15; Ex. 69 at 9, 11. Mr. Bursey is the only other person Ms. Kehoe identifies as being associated with GM Trust; but he is identified merely as "the signatory trustee of Nova Benefit Plans" (Kehoe Decl., ¶ 8), without explaining what a "signatory trustee" does, or whether Mr. Bursey has any authority as a "signatory trustee" of Nova Benefit Plans, a company that Mr. Carpenter controls. In response to being subpoenaed to testify regarding this motion, Mr. Bursey has asserted his Fifth Amendment right against self-incrimination in response to all questions regarding, among other things, his and Mr. Carpenter's involvement in the GM Trust. 1/24/14 Barnett Decl., Ex. 70. Based on the evidence before this Court, the only conclusion can be that Mr. Carpenter, having already been found to control GM Trust in 2009, controls GM Trust to this day.

**b. The GM Trust, in the form of Ms. Kehoe, has no knowledge concerning the transactions at issue**

The inescapable conclusion that Mr. Carpenter controls the GM Trust is reinforced by the

fact that Ms. Kehoe, GM Trust's only Rule 30(b)(6) deposition designee in response to Universitas' deposition notice, knew nothing about the issues and events implicated by Universitas' motion.

Prior to being named a designee about two months ago, Ms. Kehoe did not know that the GM Trust had made any loans to anyone, ever. 1/24/14 Barnett Decl., Ex. 65 at 109-110 and 116-117. And she only found out about the "loans" when talking to GM Trust's attorneys, or to Mr. Carpenter's wife, Molly, who approved the "loans" to her husband. See id. at 12, 22-25 (only preparation Ms. Kehoe did for her deposition was to speak with counsel and Ms. Carpenter). But GM Trust did not designate Ms. Carpenter as a Rule 30(b)(6) designee, and this Court has already found Ms. Carpenter's testimony on other issues to be "wholly self-serving and unreliable." Universitas Educ., LLC, 2013 U.S. Dist. LEXIS 165803, at *8 n. 1.

Ms. Kehoe could not testify about the nature of the funds drawn on by GM Trust to make "loans." 1/24/14 Barnett Decl., Ex. 142:25, 143:1-3. She could not say who negotiated the loans on behalf of GM Trust, whether Mr. Carpenter had to fill out any loan applications, whether a Carpenter entity had ever been turned down for a loan request, whether GM Trust conducted criminal history and/or credit checks on Mr. Carpenter prior to loaning money to one of his companies, why GM Trust was loaning money only to Mr. Carpenter and no one else, whether GM Trust considered any other uses of the money loaned to Mr. Carpenter, or whether GM Trust disclosed the loans to its employer participants. Id. at 119-124 and 143-145.

In other words, the GM Trust, testifying solely through Ms. Kehoe, knew nothing about the things it was supposed to know. And nothing about these loans makes sense – for instance, why a trust in June 2009 would lend millions of dollars to a man who the year before had been convicted of mail and wire fraud, and who was at the time of a June 2009 "loan" awaiting

7

sentencing on these convictions; or why GM Trust would permit one Carpenter company (GMC) to "repay," 16 months early, a $2.5 million "loan" accruing 8% annual interest, only to "loan" another Carpenter company (Phoenix) $2.7 million, at 6% annual interest, a mere three days later. Compare Kehoe Decl., Ex. P at GMT-000134 (8% interest) to 1/24/14 Barnett Decl., Ex. 71 at 1 (6% interest).

Ms. Kehoe's Declaration does not even mention the $2.7 million "loan" to Phoenix in June 2009. At her deposition, Ms. Kehoe disclaimed any knowledge about the $2.7 million transfer from GM Trust to Phoenix, and when asked why her Declaration did not address it, asserted attorney-client privilege instead of answering the question. 1/24/14 Barnett Decl., Ex. 65.

Ms. Kehoe claims that Mr. Carpenter had no involvement with the GM Trust, yet could not explain why Mr. Carpenter, in 2010, opened a bank account in GMT's name, with GMT's Taxpayer Identification Number, and signed as the entity's "owner" and "chairman." 1/24/14 Barnett Decl., Ex. 65 at 89-95; compare Ex. 64. She did not know about this particular GM Trust bank account until two months ago, when Mr. Bursey asked her to testify on GM Trust's behalf. Id. at 82-83. She did not know why the GM Trust paid more than $1 million as alleged reimbursement for legal fees supposedly incurred by ARIA, one of Mr. Carpenter's many companies. Id. at 88.

Ms. Kehoe identified Donna Dawson as someone who would be knowledgeable about all of the transfers into and out of the GM Trust, including all loans. See, e.g., 1/24/14 Barnett Decl., Ex. 65 at 111-12. Yet, inexplicably, Ms. Kehoe did not speak to Ms. Dawson in preparation for her deposition (even though she is Ms. Dawson's supervisor, see id), and GM Trust did not designate Ms. Dawson as a deponent. In sum, the GM Trust has been unable to

explain the transactions at issue in this motion, and it certainly has not offered any evidence, documentary or testimonial, to refute the considerable documentary evidence establishing that Mr. Carpenter controls the GM Trust, notwithstanding his claims that he does not.

## II. ARGUMENT

### a. This action may be brought by motion

Respondents argue that New York procedural law requires Universitas to start a new proceeding against several of them, including the GM Trust. <u>See</u>, <u>e.g.</u>, GM Trust Br. at 4-5 (dkt. no. 337). This argument is wrong, and ignores Circuit precedent and the vast majority of district court decisions on this issue. Further, this Court has already decided a post-judgment turnover motion in this case, rather than requiring Universitas to file a new case. <u>See</u> <u>Universitas Educ.,</u> <u>LLC</u>, 2013 U.S. Dist. LEXIS 165803.

CPLR §5225(b) talks about a "special proceeding," which does not exist at the federal level. Rule 69(a)(1) states that in proceedings "in aid of judgment," the procedural law of the forum state governs, "but a federal statute governs to the extent it applies." As federal procedural law does not permit "special proceedings" (<u>see</u> Rule 2), but does permit a prevailing party to enforce its federal judgment in federal court, the predominant rule is that a court may hear a §5225(b) application as part of post-judgment proceedings.[2] <u>See</u>, <u>e.g.</u>, <u>Cordius Trust v.</u> <u>Kummerfeld</u>, No. 99-3200, 2004 U.S. Dist. LEXIS 5027 (S.D.N.Y. Mar. 30, 2004), <u>aff'd by</u> <u>summary order</u>, 153 F. App'x 761, 762 (2d Cir. 2005) ("veil-piercing actions may be initiated as supplementary special proceedings under New York Civil Practice Law and Rules (CPLR) § 5225(b), **<u>rather than as plenary actions</u>**") (emphasis added); <u>Northern Mariana Islands v.</u> <u>Millard</u>, 845 F. Supp. 2d 579, 581 (S.D.N.Y. 2012); <u>SEC v. Colonial Inv. Mgmt. LLC</u>, No. 07

---

[2] Alternatively, this Court could hold that "proceedings supplementary to and in aid of judgment or execution" (Fed. R. Civ. P. 69(a)) qualify as "special proceedings" under §5225(b). See <u>Universitas</u>, 2013 U.S. Dist. LEXIS 165803, at *24.

Civ. 8849, 2010 U.S. Dist. LEXIS 108063, at *6 (S.D.N.Y. Oct. 6, 2010).

Respondents do not discuss any of these cases – all of which are cited in Universitas'
moving brief – and instead cite primarily to Runaway Dev. Grp. v. Pentagen Technologies Int'l
Ltd., 396 F. Supp. 2d 471 (S.D.N.Y. 2005) for the proposition that Universitas must commence a
new proceeding against several of the Respondents.   To be sure, Runaway supports
Respondents' position, but, respectfully, its erroneous conclusion appears to be driven entirely
by the circumstances in which the turnover motion in that case arose – namely, that the party
seeking turnover was enjoined, as a vexatious litigant, from filing further litigation without the
Court's permission.  In response, in 2005, the enjoined party filed a turnover motion in a case it
won in 1993.   The court in Runaway was justifiably concerned that the party was improperly
trying to circumvent the injunction against it by trying to revive an action decided 12 years prior.
These facts are far afield from this case, and also Runaway is at odds with "[n]early every court
in this Circuit[.]"  Northern Mariana Islands, 845 F. Supp. 2d at 581, 582 n. 1 (further noting that
"the court in Runaway did not provide any explanation for its decision on this issue").

Alliance Bond Fund, Inc. v. Grupo Mexicano de Desarrollo, S.A., 190 F.3d 16 (2d Cir.
1999), which Runaway and Respondents cite, does not go against this current.   Alliance, in
which a §5225(b) motion was not even at issue, notes in passing that "[u]nder §5225(b), a
judgment creditor pursuing property in the possession of someone other than the judgment
debtor must commence an action against the person in possession."  Id. at 21.  This merely
paraphrases §5225(b), substituting "action" for "special proceeding"; it does not answer the
question of how an action or special proceeding should be commenced when §5225(b) is being
used in federal court.   Compare Cordius Trust, 153 F. App'x at 762.

The third and final case that Respondents cite, Wasserman Media Grp., LLC v. Bender,

10 Civ. 8783, 2012 U.S. Dist. LEXIS 60844 (S.D.N.Y. Apr. 26, 2012), indeed holds that when personal jurisdiction over a transferee is at issue, a new case must be commenced. But this case cites no law for its conclusion, and does not explain why a new action is needed in order to acquire personal jurisdiction over a transferee. If there was a reason that a new case had to be commenced in <u>Wasserman</u>, the court did not disclose it. Whatever that reason could be, it is not implicated here. There is no rule that a "separate proceeding" must be commenced in order for jurisdiction to obtain; pursuant to Rules 14 and 15(a), for instance, a party can be added to a case years after it has started. <u>Wasserman Media Grp.</u> also ignores that other courts have determined personal jurisdiction issues in the course of deciding turnover motions brought in the case in which judgment has been entered. <u>See</u>, <u>e.g.</u>, <u>Saregama India, Ltd. v. Mosley</u>, Leading Case No. 12-mc-45-P1, 2012 U.S. Dist. LEXIS 39322 (S.D.N.Y. Mar. 20, 2012) (noting that judgment creditor had no choice but to bring a turnover motion in the action in which judgment was entered, and finding that there had been insufficient service of process).

<u>In re Gaming Lottery Secs. Litig.</u> is particularly instructive. In that case, in a post-judgment turnover proceeding similar to this one, the Court first concluded that it needed to hold a hearing in order to decide whether it had personal jurisdiction over a transferee. <u>In re Gaming Lottery Secs. Litig.</u>, No. 96-5567, 2000 U.S. Dist. LEXIS 17537, at *14-15 (S.D.N.Y. Dec. 5, 2000). While there is no subsequent decision discussing whether such a hearing took place, the Court took the correct approach in permitting a turnover motion to be brought against a transferee in the case in which judgment was entered, while allowing the transferee to challenge personal jurisdiction. In this case, there has also been discovery, including jurisdictional discovery, which distinguishes <u>Wasserman Media Grp.</u> and shows that its conclusion is premised on the erroneous belief that personal jurisdiction issues cannot be determined in a motion such as

11

the instant one.

Respondents have not been prejudiced by the instant motion, nor have they claimed prejudice. Respondents, including GM Trust, have made their respective personal jurisdiction arguments, and if they want they can seek oral argument and/or an evidentiary hearing on this issue – which would be their options had a new case been commenced against them. At bottom, Respondents' argument is pure formalism. See <u>Mitchell v. Lyons Prof'l Servs.</u>, 727 F. Supp. 2d 120, 125 (E.D.N.Y. 2010) (noting that no party contested jurisdiction, but also that no party claimed prejudice and "other than the generation of an additional filing fee for the commencement of a separate proceeding in this Court, there seems no reason to compel plaintiffs to start over when there is a vehicle for relief presently pending"). Respondents want Universitas to start a new case in this Court, so that it can make the same personal jurisdiction argument they have already made. Any new case, moreover, would be closely connected to this one, would be presumed to be related, and the Court could accept it as a related case.[3] See Local Division of Business Rule 13(a)(1) and (a)(2)(B). In fact, were Universitas to file a new case, its counsel would be required to disclose this case as related, or risk sanctions. See Local Civil Rule 1.6. Respondents' argument is wrong as a matter of law, and wrong as a matter of logic.

### b. Respondents are subject to jurisdiction in this Court

Respondents are subject to long-arm jurisdiction pursuant to CPLR § 302(a)(3)(ii), which provides that a person is subject to jurisdiction when it:

> commits a tortious act without the state causing injury to person or property within the state. … if he … (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

---

[3] The court in <u>Wasserman</u> informed the judgment creditor that it could mark its new case as related, 2012 U.S. Dist. LEXIS 60844, at *8 n. 20.

This is precisely what Respondents have done here – they orchestrated fraudulent conveyances, in Connecticut, with the knowledge, expectation and intent that these torts would cause injury to Universitas in New York.

CPLR § 302(a)(3)(ii)'s standard is generally divided into the five following elements: (1) commission of a tortious act outside the state; (2) a cause of action arising from that act; (3) injury to a person or property within the state as a result of that act; (4) the tortfeasor expected or should have reasonably expected its act to have consequences in the state; and (5) the tortfeasor derives substantial revenue from interstate or international commerce. LaMarca v. Pak-Mor Mfg. Co., 95 N.Y.2d 210, 214 (2000). Respondents only contest whether their conduct establishes elements three and four, and whether it satisfies the independent but related requirement of "minimum contacts." See, e.g., GM Trust Br. at 5-8.

### i. *Respondents' tortious acts caused injury in New York*

Respondents' attempts to skirt the statute's plain language are unavailing. Their principal argument is that their tortious acts did not injure a person or property in New York. They claim that Universitas' injury occurred in Connecticut. As a matter of common sense, this assertion is implausible – Universitas is based in New York, has no offices outside of New York and has no investments or business interests in Connecticut. Respondents, in the course of engaging in a metaphysical inquiry into the site of Universitas' injury, do not offer a single fact supporting its contention that Universitas was injured in Connecticut. See also Nova Grp., Inc. v. Universitas Educ., LLC, No. 3:11CV342, 2011 U.S. Dist. LEXIS 132028, at *5-6 (D. Conn. Nov. 16, 2011) (ordering case transferred to this Court, in part because "the locus of operative facts" was in New York, not Connecticut).

The site of tortious injury was New York. The torts at issue are fraudulent conveyances.

13

See Bank of Commc'ns v. Ocean Dev. Am., Inc., No. 07-4628, 2010 U.S. Dist. LEXIS 21061, at

*9 (S.D.N.Y. March 8, 2010) ("A cause of action for fraudulent conveyance is a species of

tort."); Sunrise Indus. Joint Venture v. Ditric Optics, 873 F. Supp. 765, 770 (S.D.N.Y. 1995)

(same). The fraudulent conveyances can be presumed to have been executed in Connecticut.

The resulting injury to Universitas occurred entirely in New York. Universitas is based in New

York, and the arbitration, at Mr. Bursey and Mr. Carpenter's insistence (and as per the Charter

Oak Trust instrument), took place in New York. See 3/15/11 Petition to Confirm Arbitration

Award, Ex. 1 at §8.02(d) (dkt. no. 6). The fraudulent conveyances had the effect, and intent, of

harming Universitas in New York, and of undermining any award that Universitas would obtain

in the New York arbitration, which Nova told Universitas it must initiate if Universitas would

have any chance of receiving any money. In July 30, 2009, for instance, Mr. Bursey informed

Universitas that it could pursue arbitration if it was unhappy that Nova had rejected Universitas

as a beneficiary – even though, by this time, Mr. Bursey and Mr. Carpenter had already

transferred more than $11 million of the Spencer proceeds out of the Charter Oak Trust. 1/24/14

Barnett Decl., Ex. 76 at 2. Universitas commenced arbitration in June 2010 – at which point,

Respondents had transferred all of the Spencer proceeds out of the Charter Oak Trust. See

10/9/13 Barnett Decl., ¶¶42-56.

Respondents correctly note that this Court should not find the injury to have occurred in

New York solely because Universitas is located here. They ask the court to apply "a situs-of-

injury test, which asks [courts] to locate … the original event which caused the injury … This

original event is, however, generally distinguished not only from the initial tort but from the final

economic injury and the felt consequences of the tort." GM Trust Br. at 6 (quotations omitted,

citing Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 792 (2d Cir.

1999)).

The situs of the injury is New York, for the reasons stated above; but this quest for finding the "original event which caused the injury" is beside the point where Respondents engaged in fraudulent transfers intending and knowing that they were injuring Universitas in New York – and thus, "commit[ing] a tortious act without the state causing injury to person or property within the state."  CPLR § 302(a)(3)(ii).

The Second Circuit established this principle more than 30 years ago, in <u>Hargrave v. Oki Nursery, Inc.</u>, 636 F.2d 897 (2d Cir. 1980).  <u>Hargrave</u>, the Second Circuit noted, was not a case where jurisdiction is predicated on the plaintiff "fortuitously" being located in the forum state. <u>Id</u>. at 900.  Instead, jurisdiction was based on the "immediate consequence[s]" of the defendant's acts, which it was aware would occur in New York.  <u>Id</u>.  Nothing, the court held, could be a "'closer' or more 'direct' result" from the defendant's actions in another state.  <u>Id</u>.

The <u>Hargrave</u> holding is straightforward – where a defendant knows or intends that its tortious conduct will take place in New York, that is more than sufficient to establish that the situs of injury is New York, and/or that CPLR § 302(a)(3)(ii) is satisfied.  See <u>Patterson v. Bushkin</u>, No. 99-3449, 1999 U.S. Dist. LEXIS 19604, at *2-3 (S.D.N.Y. Dec. 20, 1999) (finding personal jurisdiction adequately pled where, among other things, "plaintiff has alleged that defendant's tortious actions were directed at and intended to avoid an obligation to plaintiff, a New York entity"); <u>Levisohn v. Med. Taping Sys.</u>, 10 F. Supp. 2d 334, 342-43 (S.D.N.Y. 1998) (same holding where plaintiff alleged that "the individual defendants' tortious conduct was intended to avoid an obligation to a New York entity … [t]he tortious conduct was therefore designed to injure LLBL in New York"); <u>Kelly v. MD Buyline, Inc.</u>, 2 F. Supp. 2d 420, 437 (S.D.N.Y. 1998) (it "was evident at the time of the alleged fraud that the injury to [plaintiff] …

would be felt here if anywhere").

The cases that Respondents cite do not hold to the contrary. First, these cases address situations where the plaintiff was fortuitously located in New York and there was not much of a New York connection to the tort. Their principal case, Bank Brussels Lambert, 171 F.3d at 792, ultimately found jurisdiction to exist and, in so doing, held that the site of an injury was "where the first effect of the tort was located that ultimately produced the final economic injury." Here, the only effects of the tort occurred in New York. Respondents' other case, Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir. 1990), has the same holding. The plaintiff in Moreno was fired from his job in New Jersey, and suffered consequences in New York because he happened to live there. "[T]he exercise of personal jurisdiction," the Second Circuit held, "must be based on a more direct injury within the state and a closer expectation of consequences within the state than the type of indirect financial loss alleged" by the defendant. Mareno, 910 F.2d at 1046. Here, there is much more – the first effect of the fraudulent transfers was to prevent Nova and the Charter Oak Trust from satisfying an arbitration award rendered in New York, following a hearing in New York, which injured Universitas, an entity in New York. This is not a case where the tort's only connection to New York is the injured party's residence here.

### ii. Respondents are also subject to jurisdiction as Mr. Carpenter's alter egos

Since personal jurisdiction exists over Mr. Carpenter (who has appeared in this action and does not contest personal jurisdiction), and Respondents are his alter egos, personal jurisdiction exists over them as well. See D. Klein & Son, Inc. v. Good Decision, Inc., 147 F. App'x 195, 196-97 (2d Cir. 2005) (personal jurisdiction can be established through veil-piercing); SEC v. Softpoint, Inc., No. 95-2951-JSR, 2012 U.S. Dist. LEXIS 187142, at *7-8 (S.D.N.Y. May 8,

2012) (in turnover action, finding personal jurisdiction over corporate entity through reverse veil-piercing); Miramax Film Corp. v. Abraham, No. 01-5202-GBD, 2003 U.S. Dist. LEXIS 21346, at *20-23 (S.D.N.Y. Nov. 24, 2003) (personal jurisdiction can be established through reverse veil-piercing).

### iii. Respondents should have reasonably expected to be sued in New York

Respondents dubiously argue that their being sued in New York was not reasonably foreseeable. One could argue that Respondents, had they foreseen a lawsuit, could have only reasonably foreseen a New York lawsuit. But one need not go that far; it is enough that Respondents executed fraudulent conveyances with the intent and knowledge that the conveyances would harm Universitas, an entity based in New York known as of May 2008 to be Mr. Spencer's irrevocable beneficiary. 11/20/13 Carpenter Aff., Ex. F (dkt. no. 235-6). Universitas' location in New York is not merely incidental to the question of whether Respondents could have reasonably anticipated being sued here; since Respondents knew that their transactions would harm Universitas, they should have anticipated that harm to occur in New York, the site of the arbitration that Nova demanded take place. See, e.g., Patterson, 1999 U.S. Dist. LEXIS 19604, at *3 ("by allegedly engaging in fraudulent conveyances, defendant knew that its actions were directed at avoiding a financial obligation and judgment owed to a New York entity, and either expected or should have reasonably expected that its actions would have consequences in New York"); Sunrise Indus. Joint Venture, 873 F. Supp. at 770-71 (same).

The only case that Respondents cite, HSH Nordbank AG N.Y. Branch v. Street, No. 11-9405, 2012 U.S. Dist. LEXIS 99830 (S.D.N.Y. July 18, 2012), holds no different, and notes that at the time of the fraudulent conveyances at issue in that case, the defendants could not have anticipated that their fraudulent conveyances would undermine a New York judgment in a case

17

that had not even been commenced at the time of the transfers. Here, the facts are different – there was no judgment at the time of the transfers, but Mr. Carpenter and Mr. Bursey knew that the money they were transferring was payable to Universitas under the Charter Oak Trust and per Mr. Spencer's directive, and that the effect of the transfers would be to make it difficult, if not impossible, for Universitas to receive this money.

#### iv. *Jurisdiction over Respondents comports with constitutional due process*

The Constitution's Due Process Clause, as applied to personal jurisdiction, requires a party to have had "minimum contacts" with the forum state and that the exercise of jurisdiction be reasonable under the circumstances. Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 171 (2d Cir. 2010). Respondents have minimum contacts with New York for the same reasons they are subject to long-arm jurisdiction under C.P.L.R. § 302(a)(3)(ii) – they engaged in fraudulent transfers that caused injury solely in New York, and which they knew and intended to have effects in New York. See Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 243 (2d Cir. 1999) (satisfaction of C.P.L.R. § 302(a)(3)(ii) also establishes "minimum contacts"); CNN, L.P. v. GoSMS.com, Inc., No. 00-4812, 2000 U.S. Dist. LEXIS 16156, at *14-16 (S.D.N.Y. Nov. 6, 2000) (same).

Further, the exercise of jurisdiction over Respondents is reasonable, and does not offend notions of "fair play and substantial justice." Respondents do not claim any burden specific to litigating in New York (as opposed to next-door Connecticut), and they have proven themselves perfectly capable of litigating in this court. Indeed, lawyers for all of the Respondents appeared at the November 22, 2013 hearing on Universitas' preliminary injunction motion, even though the motion was brought against Mr. Carpenter. 1/24/14 Barnett Decl., Ex. 72. And GM Trust requires arbitration in New York for a dispute with a beneficiary or participant. Kehoe Decl.,

Ex. C at § 8.02(d).  This Court, moreover, has a strong interest in effectuating its judgment, which Mr. Carpenter and Mr. Bursey have sought to undermine by improperly transferring funds to the GM Trust and other Carpenter-controlled entities.

### c.  Universitas has timely turnover claims under New York and Connecticut law

Respondents seek the application of Connecticut law for the sole purpose of availing themselves of that state's four-year statute of limitations ("SOL") on fraudulent conveyances (as compared to New York's six-year SOL).[4]  They do not assert any other difference between the states' respective fraudulent transfer laws.  See, e.g., GM Trust Br. at 8-11.  Accordingly, in this section (c), Universitas will explain why its claims are timely under either state's law.  In the next section (d), it will address the merits of its claims under New York law only.

### i.  New York's statute of limitations applies to Universitas' claims

New York law applies to Universitas' claims for two reasons.[5]  First, it is the agreement between Mr. Spencer and GMC that – according to Mr. Carpenter – gave GMC the right to seize the entirety of the Spencer proceeds, which it then transferred to the other Respondents.  11/20/13 Carpenter Aff., Ex. G at p. 3 ¶ 19.  New York law governs this agreement (id.), and it therefore governs the propriety of Mr. Carpenter's transfers to and from the various Respondents.  This Court, moreover, has already applied New York law to determine the validity of many of these transfers.  Universitas Educ., LLC, 2013 U.S. Dist. LEXIS 165803, at *25 n.6.

The contractual provision for New York law is dispositive.  The application of New York law is also mandated by a choice of law analysis.  The court should apply New York's interest-analysis test to determine which state's law should apply to Universitas' fraudulent conveyance

---

[4] Connecticut's time limit for asserting fraudulent transfers is often referred to as a statute of repose.

[5] Universitas assumes that Connecticut's SOL is substantive law and not procedural.

claims. <u>Geron v. Seyfarth Shaw LLP</u>, 736 F.3d 213, 219 (2d Cir. 2013). "Under this formulation, the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." <u>Id</u>. at 219-20 (internal quotations and citation omitted). Further, for conduct-regulating laws such as those regarding fraudulent conveyances, the law of the state in which the tort occurred will generally apply. <u>Id</u>. at 220. "For claims based on fraud, **the locus of the tort is generally deemed to be the place where the injury was inflicted, rather than where the fraudulent act originated**." <u>Id</u>. (emphasis added). Injury was inflicted on Universitas in New York, and nowhere else. Since the parties are domiciled in New York and Connecticut, respectively, the New York locus of the tort mandates the application of New York's SOL. <u>See also</u> <u>Lyman Commerce Solutions, Inc. v. Lung</u>, No. 12-4398, 2013 U.S. Dist. LEXIS 124689, at *9-10 (S.D.N.Y. Aug. 30, 2013) (applying New York law to fraudulent conveyance claims, because "[a] tort occurs in the place where the injury was inflicted, which is generally where the plaintiffs are located"); <u>Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co.</u>, 375 F. Supp. 2d 257, 267-68 (S.D.N.Y. 2005) (applying New York law to fraudulent conveyance claims, as New York was the situs of injury, and "it is established that New York has an especially strong interest in applying its law when one of its domiciliaries alleges that it has been defrauded," even when the debtor is situated in another state) (internal citation, quotations omitted); <u>JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs.</u>, 295 F. Supp. 2d 366, 381-82 (S.D.N.Y. 2003) (finding that Russian law applied to constructive fraud claims because that was "where the plaintiff resides and incurred the economic injury"); <u>Global Fin. Corp. v. Triarc Corp.</u>, 715 N.E.2d 482, 485 (N.Y. 1999) (applying same principle).

In asserting that Connecticut law applies, Respondents first cite to <u>Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC</u>, 446 F. Supp. 2d 163, 192 (S.D.N.Y.

2006), which says that the law governing a tort is that of "the place where the injury was inflicted, which is generally where the plaintiffs are located" (internal quotations, citation omitted). This supports Universitas' argument that New York law applies. Their next substantive citation is to Globalnet Financial.com, Inc. v. Frank Crystal & Co., 449 F.3d 377, 384-85 (2d Cir. 2006), which affirmed the district court's application of New York law to a tort claim of professional negligence, finding that the tort occurred in New York. Again, this supports Universitas' position, where, as established by the Second Circuit's recent decision in Geron, 736 F.3d at 219, as well as a host of other cases, the tort of fraudulent conveyance occurred in New York because that is where injury was inflicted; where a professional negligence tort occurs is irrelevant to this case. Respondents cite GFL Advantage Fund, Ltd. v. Colkitt, No. 03 Civ. 1256, 2003 U.S. Dist. LEXIS 10643, at *9-10 (S.D.N.Y. June 23, 2003), for the proposition that "parties … have a reasonable expectation that their activities would be governed by the law of the state in which they are located and reside." But this, standing alone, is not helpful since Universitas and Respondents reside in different states. GFL Advantage Fund, moreover, applied Pennsylvania law where the fraudulent conveyance occurred in Pennsylvania, and the only other option was to apply the law of the British Virgin Islands or the Netherland Antilles, where the petitioner was domiciled, and which seemed to have no relationship to the claims at issue. To the extent GFL Advantage Fund goes against the weight of caselaw holding that "the locus of the tort is generally deemed to be the place where the injury was inflicted, rather than where the fraudulent act originated," it has been superseded by the Second Circuit's recent holding in Geron, 736 F.3d at 219. Geron should also drain any import from Respondents' final citation, to United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc., 216 F. Supp. 2d 198, 215-16 (S.D.N.Y. 2002), which found Canadian law to apply to

fraudulent transfers executed in Canada but causing injury in New York.

The application of New York law can come as no surprise to Respondents, since (1) New York law governed the agreement between Mr. Spencer and GMC (which Mr. Carpenter claims gave him the right to seize the Spencer proceeds), and (2) Respondents were knowingly and intentionally causing injury to a New York-based entity. In fact, given that Mr. Carpenter claims that GMC's agreement with Mr. Spencer sanctioned the transfers at issue, it would be an injustice to apply any other state's law since Mr. Carpenter has purported to rely on New York law to govern his conduct. Padula v. Lilarn Props. Corp., 84 N.Y.2d 519, 522 (1994).

### *ii. Universitas has timely claims under Connecticut law*

Even if Connecticut law applied, Universitas would have timely claims, for two independent reasons that Respondents do not even address in their briefs. First, even if Connecticut's time limit on filing fraudulent transfer claims is four years, that limit is tolled where a fraudulent conveyance has been fraudulently concealed; in such a case, the time period in which a plaintiff/petitioner must file a claim only begins to run when it discovers the transfer. This is statutory law:

> If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence.

Conn. Gen. Stat. §52-595. This statutory provision has been applied to the statute of repose for fraudulent transfers, at Conn. Gen. Stat. 52-552j. See, e.g., Cadle Co. v. Ogalin, 495 F. Supp. 2d 278, 287, 289 (D. Conn. 2007) (upholding jury verdict applying fraudulent concealment statute to the fraudulent conveyance statute); Epperson v. Entm't Express, Inc., 338 F. Supp. 2d 328, 345 (D. Conn. 2004) (dismissing fraudulent transfer claims, while noting that "[g]iven the Connecticut Supreme Court's reluctance to draw a distinction between statutes of repose and

statutes of limitation …, and its mandate to broadly apply Section 52-595, the court finds that plaintiffs may request the relief afforded by Section 52-595 despite the fact that Section 52-552j is a statute of repose"), aff'd, 159 F. Appx. 249 (2d Cir. 2005); see also Connell v. Colwell, 214 Conn. 242, 246 (Conn. 1990) (applying fraudulent concealment statute to toll a statute of repose).

Mr. Carpenter and Mr. Bursey went to great lengths to conceal the fraudulent transfers of Universitas' money for years. See, e.g., 10/9/13 Barnett Decl. at ¶¶42-65. This was accomplished by fraud – for example, by the submission of sworn statements in the underlying arbitration, by Mr. Bursey and Jack E. Robinson, in November 2010, in which they swore that Nova had assets sufficient to satisfy an award of at least $30 million. 1/24/14 Barnett Decl., Exs. 73-74. Further, as this Court has found in two Opinions (dkt. nos. 340 and 366), Mr. Carpenter orchestrated an elaborate shell game in order to fraudulently divert Universitas' money to himself, and then perpetuated the fraud by concealing these transfers.

Universitas did not even begin to discover the fraudulent transfers until November 30, 2012, when TD Bank made a document production following a Court Order dated November 21 that found that Nova had "resisted all efforts" to enforce Universitas' judgment in this action, and Nova's principals and attorneys had improperly threatened third parties from which Universitas had sought discovery. 11/21/12 Order at 1-2, 8 (dkt. no. 176). See also 1/24/14 Barnett Decl. Ex. 75 (November 30, 2012 letter from TD Bank attorney indicating transmission to Universitas' counsel of documents showing the transfers of a total of $30.7 from the Charter Oak Trust to GMC). Since Universitas only began to uncover the fraudulent transfers in November 2012 at the earliest, its' turnover motion, made in October 2013, falls well within the four-year time limit prescribed by Conn. Gen. Stat. 52-552j.

The Connecticut statute of repose for fraudulent conveyances provides a second and independent reason why Universitas' claims are not time-barred even if Connecticut law applies. Section 52-552j provides that where a transfer is made with actual intent to defraud (and thus falls within Conn. Gen. Stat. 52-552e(a)(1)), the time limitation is either "four years after the transfer was made or the obligation was incurred **or, if later, within one year after the transfer or obligation was or could have reasonably have been discovered by the claimant**" (emphasis added).  See also Carney v. Lopez, 933 F. Supp. 2d 365, 386 (D. Conn. 2013) (denying defendant's motion to dismiss actual fraud claim brought in 2012, within one year of discovery of a fraudulent transfer that occurred in 2008).

As Universitas has demonstrated, and as this Court has found, Mr. Carpenter transferred funds with the actual intent to defraud Universitas.  2013 U.S. Dist. LEXIS 165803, at * 28-34. Further, as already discussed in this brief, Universitas could have only reasonably discovered the transfers at the time it actually discovered the transfers, in November 2012,  when – over Mr. Carpenter's vociferous objections and attempts to stop it – TD Bank produced documents that allowed Universitas to begin to uncover what Mr. Carpenter had done.  Since Universitas filed this motion in October 2013 (less than a year from November 30, 2012), and the transfers in question were made with actual intent to defraud Universitas, this action complies with the time limit prescribed by Section 52-552j.

### d. Universitas is entitled to a turnover Order and damages judgments against all Respondents

Tellingly, Respondents spend much of their briefs arguing for the dismissal of Universitas' motion on baseless procedural and jurisdictional grounds.  They pay scant attention to the transfers at issue.  To the extent the merits are addressed, Respondents mainly rehash

arguments the Court has already rejected.

**Respondents' "$4 million transfer" argument**.  Respondents argue that the fact that the Arbitrator found GMC to have validly received about $4 million from the Spencer proceeds means that Respondents somehow cannot be made liable for any of the money – totaling more than $30 million – transferred to them.  See, e.g., GM Trust Br. at 12-13.  The Court rejected this argument at the May 9, 2013 hearing in this action, and reiterated that rejection in its November 20, 2013 Order.  Universitas Educ., LLC, 2013 U.S. Dist. LEXIS 165803, at *38 (describing this argument as "illogical").

**Respondents' "antecedent debt" argument**.  Respondents assert that the Charter Oak Trust owed GMC $50 million or $60 million at the time the Trust received the Spencer proceeds (Carpenter et al. Br. at 7, dkt. no. 339), but offer no evidence to (a) support a debt in any amount (other than $4 million owed to GMC, which the Trust repaid) or (b) to establish that the Spencer proceeds were validly transferred to GMC in consideration of this "debt."  The Court has rejected Mr. Carpenter's "antecedent debt" argument before (see, e.g., 2013 U.S. Dist. LEXIS 165803, at * 37-38), and, respectfully, should do so again.

**GM Trust's "antecedent debt" argument**.  GM Trust argues that since it "loaned" money to GMC in 2006 and 2007 (before Mr. Spencer died), GMC's transfers of money to GM Trust in 2009 were valid repayments of antecedent debts.  GM Trust Br. at 14-15.  This argument ignores what Universitas has said all along about any alleged loans – that even if there were repayments of real debts, the money used to repay these debts was stolen from Nova and the Charter Oak Trust, and both GMC (aka Mr. Carpenter) and the GM Trust (aka Mr. Carpenter and Mr. Bursey) obviously knew it at the time of the "loan repayments."  See, e.g., 10/9/13 Barnett Decl. at ¶¶ 66-70.

A conveyance of improperly transferred funds is not insulated from attack simply because the funds are subsequently used to pay an antecedent debt. Conveyances made with actual intent to defraud, for instance, are fraudulent regardless of whether a conveyance was supported by consideration in the form of an antecedent debt. See NY CLS Dr & Cr § 276; HBE Leasing, 48 F.3d at 633-34.

Additionally, GM Trust has failed to establish that any of the transfers between it and Mr. Carpenter's various entities were legitimate and, as such, support a finding of fair consideration. It is obvious that all of these transfers (even the ones in 2006 and 2007), while papered as "loans," were in actuality unlawful transfers to and from Mr. Carpenter, from and to Ms. Carpenter. 1/24/14 Barnett Decl., Ex. 65 at 12 (only Ms. Carpenter's approval was needed for GM Trust wire transfers). Since Mr. Carpenter was an insider of GM Trust and GMC, any "loans" to GMC cannot qualify as antecedent debts and therefore cannot support a finding of "fair consideration." GM Trust even cites a case that supports this conclusion. See Atlanta Shipping Corp. v. Chemical Bank, 818 F.2d 240, 248-49 (2d Cir. 1987) ("[i]n general, repayment of an antecedent debt constitutes fair consideration unless the transferee is an officer, director, or major shareholder of the transferor").

**GM Trust's "other funds" argument**. GM Trust argues that since GMC had received funds from other sources by December 2009, when GMC transferred $688,125.00 to GM Trust, that money cannot be definitively said to have come from Nova and/or the Charter Oak Trust. GM Trust Br. at 15. This argument is unsupported by factual assertions, let alone evidence – GM Trust does not identify the other funds it is talking about – and in any event ignores the standards for money-tracing when funds are commingled. The commingling of misappropriated monies with funds that may have legitimate sources does not "clean" the former, and cannot

defeat a creditor's tracing of misappropriated monies.  See United States v. Henshaw, 388 F.3d

738, 741 (10th Cir. 2004); In re Bernard L. Madoff Inv. Sec. LLC, No. 08-01789, 2012 Bankr.

LEXIS 1088, at *8 (Bankr. S.D.N.Y. Mar. 14, 2012).

 **Universitas has established Respondents' fraudulent intent.**  GM Trust argues that

"Universitas has not adduced any evidence that Grist Mill Capital retained control over the funds

once they were transferred to Grist Mill Trust."  GM Trust Br. at 15.  This is incorrect.  For

instance, after GMC (aka Mr. Carpenter) made a $3.8 million "loan repayment" to GM Trust on

June 9, 2009, GM Trust made another "loan," of $2.7 million, to Phoenix (Mr. Carpenter) on

June 12, with Phoenix, in turn, sending $2.5 million of this "loan" right back to GMC (aka Mr.

Carpenter).  See 2013 U.S. Dist. LEXIS 165803, at *15-16.

 This is, of course, the $2.7 million "loan" to Phoenix that enabled Mr. Carpenter to

purchase a $1.1 million vacation property in Rhode Island.  See 2013 U.S. Dist. LEXIS 165803,

*15-16.  Tellingly, this $2.7 million "loan" is not mentioned in Ms. Kehoe's Declaration, nor in

GM Trust's opposition brief, nor in the other Respondents' brief.  This is just one example of

how Mr. Carpenter – whether he's called GMC, Phoenix, etc. – retained control over

Universitas' money at all times, including when the Grist Mill Trust received part of it.

 Beyond these facts, the badges of actual fraud are many, and Universitas has also

established that the transfers to Respondents, as orchestrated by Mr. Carpenter and Mr. Bursey,

were constructively fraudulent.   The transfers of the Spencer insurance proceeds that Mr.

Carpenter orchestrated, which initially were transfers from the Charter Oak Trust to GMC, were

made without any consideration being provided to Nova and/or the Charter Oak Trust.  2013

U.S. Dist. LEXIS 165803, *18.  And neither Mr. Carpenter nor anyone else has offered any

legitimate rationale for these transfers.  Id. at 9.  Mr. Carpenter asserts that he (acting through

GMC) validly seized the entirety of the Spencer life insurance proceeds ($30.7 million paid by Lincoln Life) pursuant to a security interest that GMC purportedly held on all of Nova and the Charter Oak Trust's assets. Yet Mr. Carpenter has not established that GMC loaned any amount to the Charter Oak Trust that has gone unpaid, especially as of May 2009 and October 2009, when he seized the Spencer insurance proceeds. 2013 U.S. Dist. LEXIS 165803, at *37.

Respondents' assertions do not hold up to even superficial scrutiny. For instance, Respondents claim that "[o]n or about May 22, 2009, GMC transferred $2.1 million to GMH "to repay some of the money owed by GMC to Grist Mill Holdings." Carpenter et al. Br. at 6 (dkt. no. 339). Yet Mr. Carpenter has testified to controlling both of these entities, going so far as to say GMH is his alter ego. Universitas Educ., LLC, 2013 U.S. Dist. LEXIS 165803, at *11-12. Respondents do not explain how Mr. Carpenter could owe money to himself, and their blithe assertion that GMC (aka Mr. Carpenter) repaid GMH (aka Mr. Carpenter) is troubling.

### e. Universitas is further entitled to permanent injunctive relief against all Respondents

If this case has established anything, it is that, unfortunately, a monetary judgment cannot adequately compensate Universitas where Mr. Carpenter has sought to undermine that judgment at every juncture. Universitas already has a monetary judgment, against Nova, and yet Nova itself has not paid a dime of the judgment, and Universitas has demonstrated how Mr. Carpenter defrauded Universitas by transferring trust funds to other entities, including to GM Trust and the other Respondents. As Mr. Carpenter has dispersed Nova's assets to Respondents and to parts unknown, has shown no willingness to stop frustrating Universitas' judgment enforcement efforts (see, e.g., 10/9/13 Barnett Decl. at ¶¶12-20), and is awaiting sentencing in one criminal case and has just been indicted in another, Universitas faces irreparable harm in that its existing

judgment, and any other damages judgment it receives, may never be satisfied unless Mr. Carpenter and the other Respondents are permanently enjoined from further transfers of assets. See, e.g., 325 Bleecker, Inc. v. Local Union No. 747, United Bhd. of Carpenters & Joiners of Am., 500 F. Supp. 2d 110, 124 (N.D.N.Y. 2007); Jones v. Dana, 06 Civ. 0159, 2006 U.S. Dist. LEXIS 25293, at *86-88 (S.D.N.Y. May 3, 2006).

There are no prospective or theoretical injuries here. The injuries are well-documented. Mr. Carpenter has already undermined this Court's judgment, and the judgment will be further undermined unless (a) a turnover Order and damages judgment is entered against all Respondents, and (b) a permanent injunction Order is issued against all Respondents.

Dated: January 24, 2013
New York, New York

LOEB & LOEB LLP

By: /s/ Michael Barnett                    .
     Paula K. Colbath (PC-9895)
     Michael Barnett (MB-7686)
     345 Park Avenue
     New York, New York 10154-1895
     (212) 407-4000

     *Attorneys for Judgment Creditor*
     *Universitas Education, LLC*