**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X
UNIVERSITAS EDUCATION, LLC,

                 Judgment Creditor,

       -against-

NOVA GROUP, INC., as trustee, sponsor and
fiduciary of THE CHARTER OAK TRUST
WELFARE BENEFIT PLAN,

                 Judgment Debtor,

--------------------------------------------------------------X

                       Nos. 11 CV 1590-LTS-HBP and
                       11-8726-LTS


## UNIVERSITAS EDUCATION, LLC'S OPPOSITION TO CARPENTER FINANCIAL GROUP'S MOTION TO MODIFY THE COURT'S PRELIMINARY INJUNCTION


                       LOEB & LOEB LLP
                       Paula K. Colbath (PC-9895)
                       Michael Barnett (MB-7686)
                       345 Park Avenue
                       New York, New York 10154-1895
                       (212) 407-4000

                       *Attorneys for Judgment Creditor*
                       *Universitas Education, LLC*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

I.    PRELIMINARY STATEMENT............................................................................... 1

II.   CARPENTER FINANCIAL GROUP LACKS STANDING................................... 2

III.  THE PI ORDER DOES NOT VIOLATE MR. CARPENTER'S RIGHTS ........... 3

   A.   Mr. Carpenter Has No Right To Supreme Court Counsel .................................. 4

   B.   The PI Order Does Not Violate Mr. Carpenter's Sixth Amendment Rights....... 4

   C.   The PI Order Does Not Violate Mr. Carpenter's Fifth Amendment Rights ....... 6

IV.  THE MOTION IS LACKING IN SEVERAL OTHER RESPECTS.................... 7

V.   CONCLUSION.......................................................................................................... 8

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

100,000 Victim Families Note Holders Owners of Secs. in Towers Fin. Corp. v.
    Schulte Roth & Zable, 108 F. Supp. 2d 252 (S.D.N.Y. 2000) ................................................... 3

In re Application of Dow Jones & Co.,
    842 F.2d 603 (2d Cir. 1988) .................................................................................................... 3

Bank of Crete, S.A. v. Koskotas,
    No. 88-8412, 1988 U.S. Dist. LEXIS 14199 (S.D.N.Y. Dec. 19, 1988) ................................ 5

Caplin & Drysdale v. United States,
    491 U.S. 617 (1989) ......................................................................................................... 4, 6, 7

In re Grand Jury Subpoena Served on Doe,
    781 F.2d 238 (2d Cir. 1986) .................................................................................................. 6-7

Johnson v. Columbia Univ.,
    No. 99 Civ. 3415 (GBD), 2003 U.S. Dist. LEXIS 20932 (S.D.N.Y. Nov. 18,
    2003) ........................................................................................................................................ 3

McCray v. Bennet,
    No. 02-0839-LTS-HBP, 2005 U.S. Dist. LEXIS 30572 (S.D.N.Y. Nov. 21,
    2005) ........................................................................................................................................ 4

Pa. v. Finley,
    481 U.S. 551 (1987) ................................................................................................................. 4

United States v. Galante,
    No. 06-CR-161-EBB, 2006 U.S. Dist. LEXIS 86440 (D. Conn. Nov. 28,
    2006) ........................................................................................................................................ 5

United States v. Marrero,
    651 F.3d 453 (6th Cir. 2011) ................................................................................................... 4

United States v. Monsanto,
    491 U.S. 600 (1989) ................................................................................................................. 6

United States v. Stein,
    541 F.3d 130 (2d Cir. 2008) ................................................................................................. 5, 6

Universitas Educ., LLC v. Nova Grp., Inc.,
    Nos. 11 Civ. 1590 & 8726, 2013 U.S. Dist. LEXIS 165803 (S.D.N.Y. Nov.
    20, 2013) .............................................................................................................................. 2, 6

**TABLE OF AUTHORITIES** (CONTINUED)

**Page(s)**

Waterbury v. Liberty Life Assur. Co.,
   202 F. App'x 477 (2d Cir. 2006) ...................................................................................... 4

**Rules**

Fed. R. Civ. P. 65(d)(2)............................................................................................................. 7

iii

Petitioner/Judgment Creditor Universitas Education, LLC ("Universitas"), through its

attorneys Loeb & Loeb LLP, submits the following memorandum in opposition to Carpenter

Financial Group, Inc.'s Motion to Modify the Court's January 13, 2014 Preliminary Injunction

Order ("PI Order," Dkt. No. 366).

## I.     PRELIMINARY STATEMENT

The PI Order restricts, among other things, the transfer of certain money paid to the

Boston Property Exchange Transfer Company ("BPETCO") – an entity that is simply another

alter ego for Daniel E. Carpenter.

Yet another company, Movant Carpenter Financial Group ("CFG") – not Mr. Carpenter

or BPETCO – seeks a modification of the PI Order in order to effect a transfer to Mr. Carpenter

that it admits would otherwise violate the PI Order, as confirmed by the Court in a March 12,

2014 Order (collectively, the "PI Order," Dkt. Nos. 366 and 400).

Mr. Carpenter has never before raised with the Court the issue of needing money to pay

attorneys.  He did not raise it during the five weeks between an Order to Show Cause's issuance

(Dkt. No. 303) and the November 22, 2013 preliminary injunction hearing.  He did not raise it

during the six weeks between the First Circuit's reinstatement of his fraud convictions, on

November 25, and the entry of the PI Order.  And he did not raise it in the month following his

December 12 indictment in Connecticut federal court but before the issuance of the PI Order.

Mr. Carpenter never sought reconsideration of the PI Order, nor has he appealed it.  And

Mr. Carpenter is still not putting the attorneys' fees issue before the Court; CFG is, even though

it lacks standing to do so.

In addition to lacking standing, CFG's constitutional claims – which are based on a

citation to a single, off-point case – are meritless.  CFG claims only that Mr. Carpenter is unable

to hire an attorney to file writs of *certiorari* with the Supreme Court.  But Mr. Carpenter has no constitutional right to Supreme Court counsel, let alone counsel of his choice.

The Fifth and Sixth Amendments, moreover, give Mr. Carpenter the right only to court-appointed counsel and only in criminal cases; to the extent Mr. Carpenter has the right to criminal counsel of his choice, he can only pay such counsel with lawfully available funds – and no such funds are available, as far as his assets and the assets of his entities are concerned.  The PI Order, which lawfully restrains certain assets, is constitutional though Mr. Carpenter is unhappy with the consequences.

Boiled down, Mr. Carpenter's argument is not based on the Constitution at all, but is instead this: as he is going to prison for fraud in one case, and has been indicted for fraud in a second case, he should be able to tap funds that were lawfully restrained by this Court after it found Mr. Carpenter to have engaged in fraud in a third case.  See Nos. 11 Civ. 1590 & 8726, 2013 U.S. Dist. LEXIS 165803 (S.D.N.Y. Nov. 20, 2013).  Perversely, this is an appeal to fairness and justice – the very things Mr. Carpenter denied to Universitas, and in doing so engendered this litigation, which led to the entry of the PI Order.  This is a situation entirely of Mr. Carpenter's own making, and CFG presents no valid reason for altering it.  If anything, the fact that CFG and not Mr. Carpenter is making this motion underscores the injunction's necessity.

## II.     CARPENTER FINANCIAL GROUP LACKS STANDING

Mr. Carpenter is still playing shell games.  For reasons that go unexplained, it is CFG, not Mr. Carpenter, which has brought this motion.  CFG is asking the Court to release an injunction on the transfer of monies payable to BPETCO, so that BPETCO can presumably transfer money to Mr. Carpenter, so that Mr. Carpenter can defend himself in several criminal and civil

litigations.  But CFG has no standing to seek the release of monies payable to BPETCO; nor can it assert the constitutional rights of Mr. Carpenter.

In order for a party to have standing, they must prove:

(1) a personal injury in fact, (2) a violation of his or her own, not a third-party's, rights, (3) that the injury falls within the zone of interests protected by the constitutional guarantee involved, (4) that the injury is traceable to the challenged act, and (5) that the courts can grant redress for the injury.

In re Application of Dow Jones & Co., 842 F.2d 603, 606 (2d Cir. 1988).  See also Johnson v. Columbia Univ., No. 99 Civ. 3415 (GBD), 2003 U.S. Dist. LEXIS 20932, at *37-38 (S.D.N.Y. Nov. 18, 2003).

Personal injury in fact requires the party to demonstrate that he/she/it has suffered some concrete and direct injury as a result of the alleged illegal action.  See 100,000 Victim Families Note Holders Owners of Secs. in Towers Fin. Corp. v. Schulte Roth & Zable, 108 F. Supp. 2d 252, 255 (S.D.N.Y. 2000).  The injury must be real and immediate, as opposed to conjectural or possible.  See In re Application of Dow Jones & Co., 843 F.2d at 606.

Here, CFG has not alleged that it suffered any injury.  Instead, CFG claims that Mr. Carpenter is injured as a result of the PI Order.  The Motion does not address any harm to CFG that this Court may redress.  Thus, the motion can be denied for lack of standing alone.

## III.    THE PI ORDER DOES NOT VIOLATE MR. CARPENTER'S RIGHTS

CFG argues that the Order should be modified to allow Mr. Carpenter to access funds to "defend himself in the various civil and criminal actions to which he is currently a party."  See Motion at 1 (Dkt. No. 409).  CFG further claims that the PI Order is "directly and negatively affecting Mr. Carpenter's Fifth and Sixth Amendment rights to defend himself and to due process in criminal matters and his right to a full and fair adjudication of his civil claims and

3

defenses."  See Motion at 1.  These allegations raise no constitutional claim, as they are outside

the scope of what the Constitution protects and prohibits.

> A.      *Mr. Carpenter Has No Right To Supreme Court Counsel*

Mr. Carpenter makes sweeping claims about being deprived of counsel in all of his

various actions, but a parsing of his motion shows that he claims only to have been unable to hire

an attorney to file *writs of certiorari* to the Supreme Court.   But there is no right to counsel for

Supreme Court appeals, let alone the right to Supreme Court counsel of one's choice.  Pa. v.

Finley, 481 U.S. 551, 555 (1987); McCray v. Bennet, No. 02-0839-LTS-HBP, 2005 U.S. Dist.

LEXIS 30572, at *9 (S.D.N.Y. Nov. 21, 2005) (no Sixth Amendment right to counsel for an

appeal to New York State's highest court, and noting that "[t]here is no constitutional right to

counsel for discretionary appeals").

> B.      *The PI Order Does Not Violate Mr. Carpenter's Sixth Amendment Rights*

The Sixth Amendment provides in pertinent part that "[i]n all criminal prosecutions, the

accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S.

CONST. amend. VI.  This right, however, "does not guarantee that a criminal defendant will be

represented by a particular attorney."  United States v. Marrero, 651 F.3d 453, 464 (6th Cir.

2011).  And a defendant may not "insist on representation by an attorney he cannot afford."

Caplin & Drysdale v. United States, 491 U.S. 617, 624 (1989) (citations and internal quotation

marks omitted).  See also Waterbury v. Liberty Life Assur. Co., 202 F. App'x 477, 479 (2d Cir.

2006) ("It is settled law that the Sixth Amendment right to counsel does not apply in civil cases .

. . .").

Further, the right to counsel of one's choice "is limited by the financial ability of the

defendant to pay the costs of such counsel from funds lawfully available to him."  United States

v. Galante, No. 06-CR-161-EBB, 2006 U.S. Dist. LEXIS 86440, at *6-7 (D. Conn. Nov. 28, 2006).

The PI Order itself is lawful, and CFG does not claim otherwise.  As the PI Order lawfully restrains certain funds, Mr. Carpenter cannot use them to pay for counsel.  Universitas respectfully submits that this is all the legal analysis that is needed.

CFG inappropriately compares Universitas's conduct in this case to the Justice Department's apparent conduct in United States v. Stein, 541 F.3d 130 (2d Cir. 2008).  Stein is the only case to which CFG cites.  In it, the government forced the defendants' employer to place conditions and restrictions on the amount of legal fees (if any) advanced to defendants for their defense.  Id. at 138.  The government insisted that the policy included a condition that the defendants' right to legal fees would terminate upon indictment.  Id. at 153.  The Second Circuit held that the government's actions violated the defendants' Sixth Amendment right to select counsel of their choice using lawfully available funds.  Id. at 157-58.

These facts are far afield from the instant case.  In Stein, the Justice Department interfered with the defendants' funding to obtain counsel, presumably in an effort to pressure them to accept criminal liability.  Here, by contrast, the Court issued an Order without any intention of affecting Mr. Carpenter's rights to criminal counsel or seeking to coerce him into a plea deal (which is necessarily the case since the Department of Justice, not the Court, is prosecuting Mr. Carpenter).  See Bank of Crete, S.A. v. Koskotas, No. 88-8412, 1988 U.S. Dist. LEXIS 14199, at *7 (S.D.N.Y. Dec. 19, 1988).  In fact, Mr. Carpenter never even informed the Court about his apparent need to pay attorneys in his criminal actions.  The PI Order issued as a result of Mr. Carpenter's conduct in a civil action, not as a result of some coercive plan on the part of the judicial branch.

Additionally, in the context of forfeited assets at the outset of a criminal case, the Supreme Court has established that "a pretrial restraining order does not 'arbitrarily' interfere with a defendant's 'fair opportunity' to retain counsel." United States v. Monsanto, 491 U.S. 600, 616 (1989).  Where assets are restrained based on probable cause that they are forfeitable, the government does not violate a defendant's Fifth or Sixth Amendment rights to counsel. Id. at 614-15.  And neither the Fifth nor Sixth Amendment allows a defendant to use forfeitable assets to pay attorneys' fees. See id.  See also Caplin & Drysdale, 491 U.S. at 634-35.

This is the well-established rule when the government preliminarily seizes assets at the outset of a prosecution related to those assets, and based on the relatively low probable cause standard.  Here, in a civil case unrelated to Mr. Carpenter's criminal cases in other jurisdictions, the PI Order issued on the much higher standard for entry of a preliminary injunction, and also after the Court had previously found by clear and convincing evidence that Carpenter had fraudulently transferred millions of dollars out of the Charter Oak Trust. See 2013 U.S. Dist. LEXIS 165803.

C.      *The PI Order Does Not Violate Mr. Carpenter's Fifth Amendment Rights*

The Fifth Amendment guarantees due process, and Mr. Carpenter has received it in droves.  This Court entered the PI Order after giving Mr. Carpenter five weeks to prepare for an evidentiary hearing, and after the parties engaged in pre-hearing briefing, a full-blown evidentiary hearing and post-hearing submissions.  To the extent Mr. Carpenter argues that his Fifth Amendment right to counsel has been violated, this claim fails for the same reasons his Sixth Amendment claim falls short.  Similar to the Sixth Amendment, the Fifth Amendment does not protect "a defendant's decision to retain particular counsel." In re Grand Jury Subpoena Served on Doe, 781 F.2d 238, 246 (2d Cir. 1986).  An individual's "due process rights under the

6

Fifth Amendment are [not] more expansive than the protection which the Sixth Amendment affords . . . ." Id. See also Caplin & Drysdale, 491 U.S. at 633-34 (holding that the Fifth Amendment did not provide a defendant with more protection than his Sixth Amendment right to counsel).

## IV.    THE MOTION IS LACKING IN SEVERAL OTHER RESPECTS

CFG fails to explain why the restrained BPETCO monies are the only funds available for Mr. Carpenter's defense (for instance, Mr. Carpenter's siblings or friends might be able to fund his defense out of their own money). It does not explain how Mr. Carpenter financed his legal defense in various litigations prior to February 2014, when the BPETCO monies suddenly came into existence as a result of a settlement with Merrill Lynch. Nor has Mr. Carpenter ever adequately explained, and documented, where Universitas's $30 million in trust funds went – other than to explain how he used part of it to purchase an oceanfront vacation home in Rhode Island, and to vaguely claim that the remainder was used to finance insurance premium payments.

While suggesting it to be improper, Mr. Carpenter does not actually explain how Universitas erred in "zeal[ously]" providing notice of the PI Order to potentially affected people. The PI Order, by its language and by federal law, binds those other than Mr. Carpenter, but only if they have actual notice of it. See Fed. R. Civ. P. 65(d)(2). And providing notice is the only thing Universitas was doing in its communications with Mr. Carpenter's various attorneys. The letter to former Solicitor General Gregory Garre (Motion, Exhibit B), for instance, sets forth the language of the PI Order, informs him that "[t]his letter does not seek to collect a debt," that the PI Order "may bind you," and that Universitas's counsel urges him to speak to his law firm's

attorney about the letter.  Mr. Garre and Latham & Watkins obviously drew their own

conclusions about what to do; and, as a top law firm, they were well-positioned to do so.

Finally, Mr. Carpenter's claim to not be able to retain *any* Washington, D.C. law firm[1],

while dubious given the number of attorneys in that city, is also irrelevant, and could not be

attributed to Universitas anyway as the only letter Universitas sent to a D.C. law firm is Exhibit

B.  If any other D.C. firm refused to accept Mr. Carpenter's business, it may have learned about

the PI Order on its own, or was concerned, given Mr. Carpenter's history of fraud and shell

games (on display even in this motion), of taking him on as a client.

## V.      CONCLUSION

For the foregoing reasons, Petitioner/Judgment Creditor Universitas Education, LLC

respectfully requests that the Court deny Carpenter Financial Group's Motion for a Modification

of the January 13, 2014 Preliminary Injunction Order.

Dated: April 22, 2014
New York, New York

LOEB & LOEB LLP

By: /s/ Michael Barnett            .
    Paula K. Colbath (PC-9895)
    Michael Barnett (MB-7686)
    345 Park Avenue
    New York, New York 10154-1895
    (212) 407-4000

    *Attorneys for Judgment Creditor*
    *Universitas Education, LLC*

NY1271703.1

---

[1] CFG does not explain why Mr. Carpenter needs a D.C. law firm to file a petition for *certiorari*.