UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNIVERSITAS EDUCATION, LLC,

        Judgment Creditor,

    -against-

NOVA GROUP, INC., as trustee, sponsor and fiduciary of THE CHARTER OAK TRUST WELFARE BENEFIT PLAN,

        Judgment Debtor,

    -and-

Daniel E. Carpenter, Charter Oak Trust Welfare Benefit Plan, Grist Mill Capital, LLC, Grist Mill Holdings, LLC, the Grist Mill Trust Welfare Benefit Plan, Avon Capital, LLC, Hanover Trust Company, Carpenter Financial Group and Phoenix Capital Management, LLC,

        Respondents.
------------------------------------------------------------X

Case Nos. 11 CV 1590-LTS-HBP and 11-8726-LTS

**PETITIONER'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS APPLICATION FOR TURNOVER AND PERMANENT INJUNCTION**

LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154-1895
(212) 407-4000

*Attorneys for Judgment Creditor
Universitas Education, LLC*

Petitioner/Judgment Creditor Universitas Education, LLC ("Universitas"), through its attorneys Loeb & Loeb LLP, submits this supplemental memorandum in further support of its motion for a turnover and permanent injunction against the Respondents. Universitas submits this memorandum pursuant to the Court's Order dated May 23 (Dkt. No. 441).

A. **UNIVERSITAS HAS MET THE STANDARD FOR A PERMANENT INJUNCTION**

The standards for a preliminary injunction and a permanent injunction, respectively, are the same, except that a party requesting permanent injunctive relief must show actual success on the merits. Entergy Nuclear Vt. Yankee, LLC v. Shumlin, 733 F.3d 393, 422-423 (2d Cir. 2013); Ognibene v. Parkes, 671 F.3d 174, 182 (2d Cir. 2011), cert. denied, 133 S. Ct. 28 (2012). That is, in addition to showing actual success, a petitioner for a permanent injunction must show that it has or is likely to suffer irreparable injury absent injunctive relief, that monetary damages are consequently inadequate, and that the balance of equities and the public interest favor, or do not weigh against, an injunction. See Entergy Nuclear Vt. Yankee, 733 F.3d at 422-423.

Universitas satisfies all elements. Universitas first assumes for the purposes of this brief that it has succeeded on the merits of its turnover claims. Second, as the Court already found in granting Universitas's preliminary injunction motion, Universitas has shown that it will suffer irreparable harm absent injunctive relief. Universitas Educ., LLC v. Nova Group, Inc., 2014 U.S. Dist. LEXIS 3983, at *23-26 (S.D.N.Y. Jan. 13, 2014). This Court found that Respondent Daniel E. Carpenter has, through the Respondent entities, "received fraudulent conveyances of the Life Insurance Proceeds," "has taken great pains to hide the funds," and "has offered no credible evidence to overcome the strong inference that he is further dissipating these funds, or their proceeds, to defeat Petitioner's efforts to satisfy the Judgment." Id. at *24-25. These same

findings, made less than five months ago, support the entry of a permanent injunction, as there has been no abatement in Mr. Carpenter's persistent efforts to frustrate Universitas.  See NML Capital, Ltd. v. Republic of Arg., 699 F.3d 246, 262 (2d Cir. 2012) (affirming entry of permanent injunction and order of specific performance, noting that an award of monetary damages is inadequate where "a party[ ] [engages in] persistent efforts to frustrate the collection of money judgments") (citing Pashaian v. Eccelston Props., Ltd., 88 F.3d 77, 87 (2d Cir. 1996)).[1]

If anything, Mr. Carpenter's efforts to frustrate Universitas have increased since the Court entered its January 13, 2014 Preliminary Injunction Order ("PI Order"), for which Mr. Carpenter has repeatedly shown contempt.

In February, the Court was compelled to hold an emergency hearing because Mr. Carpenter, acting through his entity Grist Mill Partners, LLC ("GMP"), initially refused to consent to the submission and entry of a proposed Order modifying the PI Order so that certain monies paid by Curaleaf, LLC ("Curaleaf") to GMP could be secured during the pendency of Universitas's permanent injunction and turnover motion.  See Dkt. No. 375.  In fact, it was Curaleaf that first sought the Court's approval of the transaction, having fortuitously found out about the PI Order (and not from Mr. Carpenter).  See Dkt. No. 260 at 5 in Case No. 11-8726 ("Late on February 5, 2014, Curaleaf learned for the first time of the Injunction issued on January 13, 2014").  It is apparent that Mr. Carpenter would have completed the Curaleaf

---

[1] The Supreme Court's decision in Grupo Mexicano, which was inapplicable to Universitas's preliminary injunction motion, is also inapplicable to an application for a permanent injunction.  In fact, in that case, the Supreme Court appeared to endorse the use of a permanent injunction (as opposed to a preliminary injunction) to secure payment of a money judgment.  See Grupo Mexicano De Desarrollo v. Alliance Bond Fund, Inc., 527 U.S. 308, 317-318 (1999) ("Petitioners do not contest the District Court's power to issue a permanent injunction after rendering a money judgment against them,  but they do contest its power to issue a preliminary injunction, and they do so on a ground that has nothing to do with the validity of the permanent injunction").

NY1278361.1                               2

transaction – in which Curaleaf has now received, with the Court's permission, an exclusive option to purchase a commercial building worth millions – without mentioning the PI Order to it, or informing the Court or Universitas.

Also in February, one of Mr. Carpenter's many companies (the Boston Property Exchange Transfer Company, or "BPETCO") received a monetary settlement in a litigation with Merrill Lynch. Merrill Lynch issued a check to BPETCO and sent it to BPETCO's attorney, Joseph M. Pastore. Notwithstanding the PI Order, Mr. Carpenter immediately pressed Mr. Pastore to transfer the check to him, even though he could not demonstrate that a bank account in BPETCO's name even existed. In response to Mr. Pastore's application to transfer the check to Mr. Carpenter (which Universitas opposed), the Court found that the settlement amount payable to BPETCO was subject to the PI Order, and ordered Mr. Pastore to maintain custody of the check and to confer with Universitas regarding where the check should be deposited. Dkt. No. 400.

Then in April, another Carpenter entity, Carpenter Financial Group, Inc. ("CFG"), petitioned the Court to release $900,000 from the BPETCO-Merrill settlement proceeds so that Mr. Carpenter could pay for attorneys to represent him in various criminal and civil litigations. Dkt. No. 409. This petition (which is *sub judice*) was itself further evidence of the PI Order's necessity, as it showed Mr. Carpenter to still be playing shell games by having CFG ask the Court to release an injunction on the transfer of monies payable to BPETCO, so that BPETCO can presumably transfer money to Mr. Carpenter, so that Mr. Carpenter can defend himself in several criminal and civil litigations.

The strong likelihood of irreparable harm is bolstered by Mr. Carpenter's criminal troubles. Mr. Carpenter is scheduled to report to a minimum-security prison this month to begin

NY1278361.1     3

a three-year sentence on fraud convictions.  <u>See</u> Exhibit A to the June 15, 2014 Declaration of Michael Barnett ("6/15/14 Barnett Decl.").   He has also been indicted on 57 counts in an insurance fraud case in the District of Connecticut – including for acts committed in this case.  According to a May 14, 2014 superseding indictment, Mr. Carpenter and his brother-in-law Wayne H. Bursey face the following charges for acts committed in this case – one count of conspiracy to commit money laundering, 10 counts of money laundering, and 13 counts of illegal monetary transactions.  <u>See</u> 6/11/14 Barnett Decl. Ex. B (showing counts 34 through 57 of the indictment, all relating to this case).

There is thus the likelihood that Mr. Carpenter will not be sufficiently deterred from frustrating Universitas's judgment(s), as he will already be in prison, and faces the possibility of being there for many years to come as a result of, among other things, his misappropriation of Universitas's money.

With success assumed and Universitas having demonstrated a strong likelihood of irreparable harm, the balance of equities and the public interest also strongly favor a permanent injunction.  As to the equities, Mr. Carpenter has fraudulently transferred money payable to Universitas, and continues to seek to undermine Court Orders and Universitas's efforts to recover money.  Any arguable hardship to Mr. Carpenter results from his own conduct, which is now the subject of an indictment.  The public interest, moreover, favors the satisfaction of judgments and the effectuation of Court Orders.

While permanent injunctions are not granted as a matter of course, an injunction is available and warranted where, as here, the judgment debtor to-be has committed himself to defrauding creditors and/or has a track record of taking actions to frustrate judgments.  <u>See</u>, <u>e.g.</u>, <u>NML Capital</u>, 699 F.3d 246 at 262 (citing <u>Pashaian</u>, 88 F.3d at 87); <u>Yukos Capital S.A.R.L. v.</u>

Samaraneftegaz, Case No. 10-6147-PAC, 2014 U.S. Dist. LEXIS 2831, at *9-11 (S.D.N.Y. Jan. 9, 2014) (entering restraining order pursuant to N.Y. C.P.L.R. § 5222 and a permanent injunction);[2] Global Naps v. Verizon New Eng., 706 F.3d 8, 11-14 (1st Cir. 2013) (affirming issuance of permanent injunction where, among other things, the principal person sought to be restrained had "[o]ver the past decade … repeatedly … employed nefarious tactics to avoid meeting his responsibilities to others").

For the foregoing reasons, and for those stated in Universitas's moving and reply briefs, this Court should enter a permanent injunction against Mr. Carpenter and all entities that he controls or owns, directly or indirectly; such entities include but are not limited to all Respondent entities.

B. **RESPONDENTS SHOULD BE ORDERED TO RETITLE ANY INSURANCE POLICIES IMPROPERLY TRANSFERRED OUT OF THE TRUST**

Universitas has asked the Court to:

Direct[ ] the retitling of any insurance policies that were previously held by the Charter Oak Trust and improperly transferred to another entity, including the SunLife policy insuring the life of a woman with the last name Amsterdam (Policy Number 020158601).

Dkt. No. 308.

To be clear, Universitas asks the Court to direct the retitling of improperly or fraudulently transferred insurance policies to the extent any of these policies is active and now nominally owned by another Respondent. As of the date of its motion papers, Universitas had identified

---

[2] As Yukos Capital demonstrates, Universitas's application for a permanent injunction is equivalent to a court's enforcement or upholding of a restraining notice. See also Motorola Credit Corp. v. Uzan, No. 02 Civ. 666 (JSR), 2013 U.S. Dist. LEXIS 118882, at *27-29 (S.D.N.Y. Aug. 1, 2013) (under N.Y. C.P.L.R. § 5222, the judgment creditor was entitled to an injunction against the release of the judgment debtors' assets pending appeal of a third-party restraint issue).

one such policy, issued by Sun Life Financial insuring the life of a woman with the last name Amsterdam (Policy Number 020158601).

As Universitas has documented, and as the Court has found, this policy was transferred to Respondent Grist Mill Capital, LLC ("GMC") in March 2013, nine months after Universitas obtained a judgment against Nova in its capacity as trustee of the Charter Oak Trust, and after Universitas had served restraining notices on Nova, the Charter Oak Trust and GMC. Universitas, 2014 U.S. Dist. LEXIS 3983, at *14-15. Accordingly, the Charter Oak Trust and Grist Mill Capital should be ordered to retitle the Amsterdam policy – assuming it is still active – back into the name of the Trust. (If Universitas discovers an additional policy that requires retitling, it will bring any such policy to the Court's attention.)

## C. UNIVERSITAS IS ENTITLED TO PROCEEDS THAT THE TRUST RECEIVES IN ANY LITIGATION IN WHICH THE TRUST IS A PARTY

Universitas has also identified a pending Connecticut litigation – comprised of four related cases, each involving a separate insurance policy – in which the Charter Oak Trust is a defendant. The four insurance policies that are the subject of the Connecticut litigation between the Charter Oak Trust and PHL Variable Insurance Company are assets of the Charter Oak Trust. Accordingly, in the event that the Charter Oak Trust or any person or entity affiliated with it (or designated by it or its attorneys) receives a payment in connection with a settlement of the Connecticut litigation, that payment is an asset of the Charter Oak Trust that should be assigned to and/or paid over directly to Universitas, as any settlement monies are likely to be transferred out of the Trust by Mr. Carpenter or someone acting in concert with him. Accordingly, the Charter Oak Trust should be ordered to assign to Universitas its interest in any monies or assets the Trust receives in connection with any of the following actions pending in Connecticut

Superior Court (Hartford County):

- PHL Variable Insurance Company v. Charter Oak Trust, Case No. 10-6009432

- PHL Variable Insurance Company v. Charter Oak Trust, Case No. 10-6010842

- PHL Variable Insurance Company v. Charter Oak Trust, Case No. 10-6011360

- PHL Variable Insurance Company v. Charter Oak Trust, Case No. 10-6012621


Dated: June 15, 2014
New York, New York

                LOEB & LOEB LLP

        By: /s/ Michael Barnett            .
            Paula K. Colbath (PC-9895)
            Michael Barnett (MB-7686)
            345 Park Avenue
            New York, New York 10154-1895
            (212) 407-4000

            *Attorneys for Judgment Creditor*
            *Universitas Education, LLC*