UNIVERSITAS EDUCATION, LLC V. NOVA GROUP, INC., CASE NO. 11-1590-LTS-HBP (S.D.N.Y.)

# September 25, 2014 Declaration of Michael Barnett

# Exhibit 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---------------------------------

UNIVERSITAS EDUCATION, LLC,

         Plaintiff,    Civil Action Nos.

   vs.                  11-1590-LTS-HBP

NOVA GROUP, INC., as     11-8726-LTS

Trustee, Sponsor and Fiduciary

of the CHARTER OAK TRUST

WELFARE BENEFIT PLAN,

        Defendant.

---------------------------------


DEPOSITION OF DONALD TRUDEAU

Wednesday, February 6, 2013

10:00 a.m.


Reported by:

Joan Ferrara

[Page 2]

1
2
3                    February 6, 2013
                     10:00 a.m.
4                    New York, New York
5
6
7         Deposition of DONALD TRUDEAU,
8    held at the offices of Loeb & Loeb, 345
9    Park Avenue, New York, New York, Pursuant
10   to Notice, before Joan Ferrara, a Notary
11   Public of the State of New York.
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
                                                      [Page 3]
 1

 2    A P P E A R A N C E S:

 3

 4    LOEB & LOEB, LLP

 5    Attorneys for Plaintiff

 6           345 Park Avenue

 7           New York, New York 10154

 8       BY:   PAULA COLBATH, ESQ.

 9             pcolbath@loeb.com

10             MICHAEL BARNETT, ESQ.

11             mbarnett@loeb.com

12

13

14    MOSKOWITZ & BOOK, LLP

15    Attorneys for Defendants

16           345 7th Avenue

17           New York, New York 10001

18       BY:   AVRAHAM C. MOSKOWITZ, ESQ.

19

20

21

22

23

24

25
```

[Page 4]

```
 1
 2          IT IS HEREBY STIPULATED AND AGREED,
 3     by and between the attorneys for the
 4     respective parties herein, that filing
 5     and sealing be and the same are hereby
 6     waived.
 7          IT IS FURTHER STIPULATED AND
 8     AGREED that all objections, except as
 9     to the form of the question, shall be
10     reserved to the time of the trial.
11          IT IS FURTHER STIPULATED AND
12     AGREED that the within deposition may
13     be sworn to and signed before any
14     officer authorized to administer an
15     oath, with the same force and effect as
16     if signed and sworn to before the
17     Court.
18
19
20
21
22
23
24
25
```

[Page 5]

```
 1
 2    D O N A L D   T R U D E A U,
 3        called as a witness, having been duly
 4        sworn by a Notary Public, was examined
 5        and testified as follows:
 6    EXAMINATION BY
 7    MS. COLBATH:
 8        Q.    Good morning, Mr. Trudeau.
 9        A.    Good morning.
10        Q.    My name is Paula Colbath.  I'm a
11    lawyer here with Loeb & Loeb and we
12    represent Universitas Education LLC in this
13    matter.
14              Could you state your full name
15    for the record.
16        A.    Donald, D-O-N-A-L-D, J, Trudeau,
17    T-R-U-D-E-A-U.
18        Q.    And could you state your business
19    address for the record.
20        A.    25 Seir Hill, two words, S-E-I-R,
21    H-I-L-L, Road, Norwalk, Connecticut 06850.
22        Q.    And could you state your
23    residential address for the record.
24        A.    1061 King Street, Greenwich,
25    Connecticut 06831.
```

[Page 275]

1                D. Trudeau

2      transaction just with Avon Capital, not

3      with Avon Insurance Trust.

4                So I'm not -- I guess I'm missing

5      something.

6         Q.    Were the transactions between

7      Avon Capital, LLC and ASG and Moran

8      documented?

9         A.    I believe so, yeah.

10        Q.    Were you involved in the

11     documentation?

12        A.    Yes.

13        Q.    Okay.

14              And at the end of the day, after

15     these wire transfers got sent to Moran and

16     ASG, who owned the policies?

17        A.    Well, Avon Capital has been

18     interest in the policies.  It's an indirect

19     interest, but they own a portion of the

20     death benefits.

21        Q.    Explain to me how the policies,

22     who owns the policies now, all direct and

23     indirect interest in them.

24        A.    What ASG does is they are a

25     receiver for, like, I don't know, the SEC

[Page 276]

1          D. Trudeau
2  and for other judicial.  So they come in.
3  They take over policies through that
4  auspices --
5     Q.    With all due respect, I'm going
6  to interrupt because your counsel wants to
7  leave at a certain point and you're telling
8  me about the business of ASG when I'm just
9  asking you a very simple question, who
10 owns, directly and indirectly, the policies
11 that were purchased with the money shown on
12 page 141?
13    A.    So I don't know is I guess the
14 answer.  At the time, and that's why I was
15 trying to give you a step-by-step answer,
16 but --
17    Q.    No.
18    A.    Yeah.  So I don't know.
19    Q.    You testified that Avon Capital,
20 LLC had an indirect interest.  Tell me what
21 you meant by that.
22    A.    Avon acquired an interest in the
23 company that holds the underlying policies.
24    Q.    What is the company that holds
25 the underlying policies?

[Page 277]

```
 1                  D. Trudeau
 2       A.    It's a company called SDM.
 3       Q.    SDM?
 4       A.    Uh-huh.
 5       Q.    Is that the full name of the
 6  company?
 7       A.    That's the full name of the
 8  company.
 9       Q.    And do you know what the SDM
10  stands for?
11       A.    I don't.
12       Q.    Okay.
13             And where -- who were the
14  principals of SDM?
15       A.    I don't know.  I mean, it might
16  be Moran's initials -- I think it is, but
17  that might be it.
18       Q.    And where is this company
19  located?
20       A.    In Oklahoma.
21       Q.    And so as I understand your
22  testimony, Avon Capital, LLC has an
23  ownership interest in a company known as
24  SDM, correct?
25       A.    That's correct.
```

[Page 278]

1          D. Trudeau
2     Q.   Okay.
3     A.   Or it had at the time of the
4  purchase.
5     Q.   Okay.
6          Do you have any information as to
7  whether Avon Capital, LLC has transferred
8  its interest in SDM?
9     A.   I don't know.
10    Q.   So as far as you know, Avon
11 Capital, LLC maintains its interest in SDM?
12    A.   Yes.
13    Q.   Well, do you have any reason to
14 believe it doesn't?
15    A.   I don't have any reason to
16 believe otherwise.
17    Q.   Okay.
18         And what are the other assets, to
19 your knowledge, other than the policies
20 that underlie the transfers on page 141 of
21 Exhibit 4, what are the other assets of
22 SDM?
23    A.   I don't think there are any, but
24 I don't know.
25    Q.   Was SDM set up for purposes of

[Page 279]

1            D. Trudeau
2    the transactions shown on page 141?
3        A.   I don't believe so.
4        Q.   Who at Avon Capital, LLC
5    authorized the investment in SDM?
6        A.   I believe I signed documents,
7    which initiated the transaction.  That's my
8    recollection.
9        Q.   The documents you signed, did you
10   sign them on behalf of Avon Capital, LLC?
11       A.   I believe so, yes.
12       Q.   In what capacity?
13       A.   As an authorized representative.
14   I don't know the exact, what it was, but as
15   some authorized --
16       Q.   Who authorized you?
17       A.   I'm not sure.  I think that the
18   development of it was that I began the
19   negotiations to take over SDM and then we
20   tried to enter into a transaction where
21   they financed it, and then instead, we had
22   Avon enter the transaction and take that
23   over as an intermediary to resell them.
24            Then from there, I mean, I don't
25   recall.  I mean, I'd go with whatever the

[Page 280]

1                    D. Trudeau

2    document says.

3              I don't remember if -- I said

4    that I signed for Avon, I'm not certain I

5    did.  If I did, I would have had to have

6    had someone with the financial wherewithal

7    to complete the transaction.  Again, I'm

8    not certain it was Dan, but I'm going to

9    say, you know, it was Dan.

10       Q.    Okay.

11             So as best you can recall,

12   Mr. Carpenter authorized you to enter into

13   the transaction shown on page 141 and make

14   this investment on behalf of Avon Capital,

15   LLC in an entity known as SDM, right?

16       A.    I think that's an accurate --

17       Q.    Okay.

18             And would I also be correct if I

19   said that Mr. Robinson assisted you in

20   documenting that investment?

21       A.    I'm going to say yes, he probably

22   reviewed the transaction, but I think it

23   probably had outside counsel that actually

24   did the transaction.

25       Q.    Would that have been Halloran &

[Page 281]

```
 1                    D. Trudeau
 2   Sage?
 3       A.    No.  I believe it was Herrick.
 4       Q.    Okay.
 5             Does SDM have anything to do with
 6   any of the Ridgewood entities?
 7       A.    No.
 8       Q.    Okay.
 9             Have you ever heard of the Paul
10   D. Carter Life Insurance Trust?
11       A.    Paul D. Carter.  I'm going to say
12   it rings a bell, but I'm not sure.
13       Q.    So do you still have Exhibit 4 in
14   front of you?  Let's take a look at page
15   150.
16       A.    150?
17       Q.    Yep.
18             This is a bank statement for the
19   Avon Capital, LLC account at TD Bank for
20   the month of May 2010.
21             Are you with me?
22       A.    Yeah.
23       Q.    Okay.
24             The first entry on there is dated
25   May 4th and it's a wire transfer in the
```