UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNIVERSITAS EDUCATION, LLC,

        Petitioner,

      -v-                          No. 11CV1590-LTS-HBP

NOVA GROUP, INC.,

        Respondent.

-------------------------------------------------------x

NOVA GROUP, INC.,

        Petitioner,

      -v-                          No. 11CV8726-LTS-HBP

UNIVERSITAS EDUCATION, LLC,

        Respondent.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

      Judgment confirming a $30 million arbitration award against Nova Group Inc.

("Nova") was entered in these cases in 2012.  (See docket entry no. 41.)[1]  Extensive post-

judgment discovery and turnover proceedings ensued.  In August 2014, the Court entered

judgment against several affiliates of Nova's former principal Daniel E. Carpenter in respect of

funds fraudulently conveyed to those affiliates.  Judgment creditor Universitas Education, LLC

("Universitas"), thereafter served restraining notices on fraudulent conveyance judgment debtor

Grist Mill Trust ("GMT") and several other entities, directing the restraint of GMT's property.

GMT and non-judgment debtor third party Sickness, Accident, Disability Indemnity Trust 2005

---

[1]    Docket entry numbers in this Memorandum Opinion and Order refer exclusively
to those in case number 11 Civ. 1590.

("SADI") filed an application for an Order to Show Cause as to why an order should not be

entered, pursuant to New York Civil Practice Law and Rules ("CPLR") section 5240 and Federal

Rule of Civil Procedure 69, limiting the restraining notices to allow them to pay certain death

benefits to beneficiaries of life insurance policies purportedly held in trust.  In the application,

GMT represented that the restraining notices were also impairing its ability to maintain ordinary

commercial banking relationships and pay operational expenses, but indicated that those issues

were being negotiated with Universitas and financial institutions and were likely to be resolved

consensually.[2]  The Court entered the order to show cause on November 14, 2014.

Non-parties Gerald H. Williams, Keith Kornovich, Mark Kornovich, and

Minneapolis Trailer Sales, Inc. (the "Beneficiaries"), who claim that they are entitled to the

transfer of certain insurance policies currently held in the name of GMT, each move separately

for a protective order and for sanctions against Universitas for allegedly unlawfully restraining

life insurance policies written by Lincoln Financial Group ("Lincoln") in which the Beneficiaries

claim interests.  Universitas moves, pursuant to CPLR section 5225(b) and Federal Rule of Civil

Procedure 69, for turnover of a certain insurance policy held by GMT, the beneficiary and

---

[2]     The Court entered a consent order modifying the restraining notices issued to allow GMT to enter into new banking relationships, subject to certain restrictions, on December 31, 2015 (docket entry no. 544).

GMT, SADI, and certain other Carpenter affiliates are apparently in the business of providing life insurance benefit arrangements under which employer entities and/or the Carpenter affiliates pay premiums on policies that are held by the Carpenter affiliates and death benefits payable on the policies are subject to certain claims of the affiliates.  The arbitration award and judgment in Universitas' favor arise from one such arrangement.

SADI, which is not a judgment debtor, claims that third parties are refusing to deal with it because of its affiliation with judgment debtors and/or Carpenter affiliates whose names are similar to those of fraudulent conveyance judgment debtors.  It requests an instruction or other clarification that it is not the subject of Universitas' restraining orders.  This issue, which the parties have undertaken to resolve consensually, is not addressed in this Memorandum Opinion and Order.

insurer of which are not parties to this action.

Upon review of the submissions in connection with the applications and motions, it became clear to the Court that the resolution of the controversies concerning the insurance policies would require determinations as to the nature and extent of the rights of GMT, relevant beneficiaries, and possibly other parties in those policies.  The various participants in these proceedings take diverse positions as to the extent, if any, to which the subject insurance policies and/or their proceeds constitute property of GMT that is subject to execution in aid of collection of the judgment in favor of Universitas.  Prior to the hearing on the Order to Show Cause, the Court entered an order directing GMT, SADI, and the various movants to "address [at the hearing] whether motions for protective orders modifying restraining notices and for turnover of assets are appropriate vehicles in this federal action for determination of interests of judgment debtor Grist Mill Trust, the other movants, and unrepresented third parties in the disputed assets. Specifically, the movants should address whether the pending summary proceedings concerning disputed legal and factual issues should be dismissed without prejudice to plenary proceedings in appropriate fora with all necessary parties joined."  (Docket entry no. 532.)

The Court held a hearing on December 16, 2014.  Post-hearing submissions were filed on December 19, 2015.  The Court has carefully considered the submissions and arguments of the Beneficiaries, GMT, SADI, and Universitas and, for the following reasons, the motions are dismissed and the order to show cause is withdrawn to the extent it concerns the payment of insurance proceeds, without prejudice to appropriate separate proceedings in fora of competent jurisdiction concerning the parties' respective rights and obligations in connection with the disputed insurance policies.

<u>DISCUSSION</u>

It is well settled that, because the federal courts are of limited jurisdiction, the Court may, at any stage of the proceedings, raise the question of subject matter jurisdiction and

dismiss pending litigation if such jurisdiction is found to be lacking.  Fed. R. Civ. P. 12(h)(3);

John Birch Soc'y v. National Broadcasting Co., 377 F.2d 194, 199 (2d Cir. 1967).

   The pending order to show cause and motions, having been initiated in these

cases after judgment was entered and in connection with collection efforts, invoke the court's

ancillary jurisdiction.  The principal questions before the Court are whether such ancillary

judgment enforcement jurisdiction extends to the determination of disputes as to whether

particular property belongs to the judgment debtor and, if such jurisdiction exists, whether the

Court will exercise that jurisdiction where potentially interested parties are absent and other fora

and procedural mechanisms are available.

   The Supreme Court recognized in Peacock v. Thomas that, without "the use of

ancillary jurisdiction in subsequent proceedings for the exercise of a federal court's inherent

power to enforce its judgments . . . the judicial power would be incomplete and entirely

inadequate to the purposes for which it was conferred by the Constitution."  516 U.S. 349, 356

(1996) (internal quotation omitted).  In Peacock, the Court nonetheless held that a post-judgment

determination that a non-party individual was liable for the obligation of the judgment-proof

corporate debtor on the basis of veil-piercing was beyond the proper scope of ancillary

jurisdiction in aid of judgment enforcement.  Id., at 358-59.  The Court characterized attachment,

mandamus and garnishment proceedings involving third parties as falling within a federal

court's ancillary enforcement jurisdiction, id., at 356, but "cautioned against the exercise of

jurisdiction over proceedings . . . where the relief [sought is] of a different kind or on a different

principle than that of the prior decree," id., at 358 (internal quotation omitted).

   In Epperson v. Entertainment Express, Inc., 242 F.3d 100 (2d Cir. 2001), the

Second Circuit concluded that "fraudulent conveyance actions operate as simple collection

mechanisms; they do not present a substantive theory seeking to establish liability on the part of

a new party not otherwise liable."  Id., at 107.  The Circuit thus held that "claims for fraudulent

conveyance were within the scope of the enforcement jurisdiction of the district court"
notwithstanding the limited parameters of such jurisdiction as delineated by the Peacock Court.
Id.

   In this case, prior to the instant motion practice, the Court entertained post-
judgment fraudulent conveyance-based claims initiated as turnover motions against GMT and
other entities closely related to the judgment debtor Nova, in which the funds that were the
subject of the judgment against Nova were traced to GMT and its affiliates, and judgment was
entered against GMT and other affiliates for the amounts of funds fraudulently conveyed to or
through each of them.  (See docket entry nos. 341 and 474.)  The judgments did not rely upon
any separate bases for liability of the transferee entities, and no issues of competing claims of
ownership of particular assets were implicated.  By contrast, the instant motions and applications
for the turnover of insurance proceeds, protective orders, sanctions, and transfers of policies are
premised on the assertion of rights based on trust agreements, insurance policies, and other
contracts that were not involved in the underlying arbitration and original judgment enforcement
proceedings, nor implicated in the subsequent fraudulence conveyance proceedings.  The
movants' theories for recovery from the subject property are wholly separate from the theories
upon which judgments were entered previously.  Not only are there disputes among the parties
before the Court, but it appears that other beneficiaries, insurance companies, and policy
premium payors who are not involved in these proceedings may have interests in or concerning
the policies at issue here.

   Such attenuated proceedings are well beyond the scope of the ancillary
jurisdiction that is necessary and appropriate to ensure that the Court can "function successfully,
that is, to manage its proceedings, vindicate its authority, and effectuate its decrees."  See
Peacock, 516 U.S. at 354 (internal punctuation and citation omitted); Estate of Ungar v. Orascom
Telecom Holding S.A.E., 578 F. Supp. 2d 536, 548-51 (S.D.N.Y. 2008) (exercise of ancillary

enforcement jurisdiction inappropriate where determination sought is in the nature of alter-ego theory).

Accordingly, the Court will dismiss without prejudice the motions and will withdraw the order to show cause insofar as they are dependent on the determination of competing claims of rights in assets or the rights of absent parties.  Specifically, the protective order motions of the Beneficiaries will be dismissed, as they seek judicial approval of stipulations providing for the relinquishment of GMT's claims of rights in insurance policies for consideration that Universitas argues is inadequate.  Universitas' turnover motion will also be dismissed, as it turns on the premise that insurance policy proceeds currently in the hands of a third party insurance company under a policy with a named beneficiary other than GMT are the property of GMT and thus subject to execution.

The Beneficiaries' applications for sanctions must likewise be dismissed, as their assertions of impropriety rest on the same legal assertions concerning rights in the policies.

Even if ancillary enforcement jurisdiction is pliable enough to empower the Court to determine these competing claims to the insurance policies and proceeds, the Court declines to exercise the jurisdiction, as state court and separate federal proceedings (to there extent there are independent bases for federal jurisdiction) are available to the interested parties, and it appears that necessary parties have not been joined in at least some of the instant proceedings. Furthermore, given the scope of GMT's business and similar business issues of affiliated judgment debtors, engagement of the substance of disputes regarding the judgment debtors' rights in particular assets would portend extensive litigation unrelated to the original subject matter of the captioned actions, which would be an inappropriate use of scarce judicial resources insofar as such controversies were presented as ancillary enforcement disputes in connection with the captioned actions.  See, e.g., Priestley v. Panmedix Inc., 18 F. Supp. 3d 486, 496 (S.D.N.Y. 2014) (declining, on grounds of judicial efficiency, to resolve complex post-judgment

fee dispute where debtor claimed state law allowed it to proceed against 20 creditors, in part

because the debtor was not precluded from proceeding against creditors in state court).

The question of the effect of the restraining notices on GMT's ability to conduct

banking operations has, as noted above, been resolved by consent order.  The Court will consider

any stipulation or proposed order concerning the relationship of SADI to the instant proceedings

that may be presented to the Court in the future.  Similarly, the Court will consider any consent

application concerning the scope and effect of the restraining order served on The Penn Mutual

Life Insurance Company (see docket entry no. 543).

CONCLUSION

For the foregoing reasons, GMT and SADI's applications for protective orders,

the Beneficiaries' motions for protective orders and for sanctions, and Universitas' motion for

turnover are each denied, and the Court's Order to Show Cause is withdrawn, without prejudice

to appropriate proceedings in fora of competent jurisdiction.

The Order resolves docket entry numbers 498, 502, 507, and 517.

SO ORDERED.

Dated: New York, New York
       January 5, 2015

_____/s/ Laura Taylor Swain_____
LAURA TAYLOR SWAIN
United States District Judge