## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNIVERSITAS EDUCATION, LLC,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **11 CIVIL 1590 (LTS) (HPB)** |
| | § | **11 CIVIL 8726 (LTS) (HPB)** |
| **NOVA GROUP, INC,** | § | |
| **Respondent.** | § | |

### MOTION TO VACATE TURNOVER JUDGMENT PURSUANT TO RULE 60(b)(4)

TO THE HONORABLE JUDGE LAURA TAYLOR SWAIN, MAY IT PLEASE THE COURT:

NOW COMES the Petitioner, Daniel Carpenter, a Turnover Judgment Debtor in this case ("Petitioner"), complaining of Plaintiff and Judgment Creditor Universitas Education, LLC ("Universitas"), and files this Motion to Declare the Judgment Void and Vacate the Turnover Judgment in favor of Universitas pursuant to Rule 60(b)(4), or in the alternative, Rule 60(b)(6). Respectfully, this Court did not have jurisdiction over Petitioner pursuant to the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014), and therefore the Turnover Judgment as to Petitioner should be vacated by the Court as required by Federal Rules of Civil Procedure Rule ("F.R.C.P.") 60(b)(4) because it was void as a matter of law. Additionally, the Turnover Judgment was not signed by the Court, and was entered as a "Clerk's Order," so it does not satisfy the strict requirements of F.R.C.P. Rule 58(b)(2) as a final order signed by a Judge as opposed to the Clerk. For that reason as well, the Order was void as a matter of law.

Petitioner was recently released from prison only to find that Universitas had filed motions with this Court eight years after this Court entered its judgment confirming an arbitration award against Nova Group, Inc., [see Case No. 11-cv-1590 at Dkt. 41] and six years after Universitas obtained a Turnover Judgment against Petitioner and other entities that was signed by the Clerk and not by Your Honor to indicate Your Honor's approval as required by Rule 58. The only reason

that Petitioner discovered this error was because of this Court's March 31, 2020 ruling [See Case No. 11-cv-1590 at Dkt. 661] summarily dismissing the Universitas letter motion and citing *Peacock v. Thomas*, 516 U.S. 349 (1996). Universitas made a subsequent "copy-cat" filing in the District Court of Connecticut that is still pending before the Honorable Jeffery A. Meyer accusing Petitioner of being a thief and running a criminal enterprise while going after wholly innocent parties, including Petitioner's Wife, Daughter, and Sister. Not only were the filings defamatory; they were frivolous, vexatious, and sanctionable. The newly-filed Universitas claims are also time-barred based on the ERISA three-year statute of limitations, as well as the Doctrines of r*es judicata* and Waiver & Laches. But, it was these new filings which led Petitioner to read this Court's decision citing *Peacock* and the fact that the Charter Oak Trust was clearly an ERISA Plan, which led Petitioner to read the Supreme Court's decision in *Walden* and then to review both Dockets to discover that this Court did not sign the Turnover Judgment Order, which means it was void as a matter of law pursuant to Rule 58(b).

On August 12, 2014, Universitas obtained a Judgment against Petitioner (the "Turnover Judgment") [Dkt. 475] granting turnover relief for a specified sum and also resolving other pending matters. Upon inspection of the August 12, 2014 Turnover Judgment, Petitioner noticed it was labeled as a "Clerk's Order" signed by the Clerk rather than the District Court Judge as *required* by Rule 58(b), and therefore the Judgment was void from inception as a matter of law. Not only was the Turnover Judgment lacking as to the Petitioner, the Judgment should be voided for all Turnover Judgment Debtors as well by order of this Court *sua sponte*, but this Motion is by the Petitioner *pro se* for the Petitioner's benefit only.

Therefore, Petitioner is entitled to relief under Rule 60(b)(4) because the judgment was void *ab initio* and relief is justified, and this Motion is being filed "within a reasonable time"

because there is no time limit to oppose a judgment that was, in fact, "void" at the time it was issued. Petitioner was just released from prison, and there are several recent cases from the Supreme Court and the Second Circuit which make clear that this Court did not have personal jurisdiction over Petitioner as a matter of law at the time of this Court's judgment. This means that the judgment was void and should be vacated pursuant to Rule 60(b)(4) and it is appropriate to reconsider the judgment as to Petitioner pursuant to Rule 60(b)(6) and also vacate the judgment in the interests of justice.

## RELIEF REQUESTED

WHEREFORE Petitioner prays that this Motion to Declare Void the Turnover Judgment be granted, the Court enter an order declaring the Turnover Judgment void and vacating the Turnover Judgment as to the Petitioner, and that this Court award Petitioner such other and further relief, at law and in equity, to which Petitioner may be entitled and this Court deems proper in the interests of justice.

Respectfully submitted,

/s/ Daniel Carpenter
Daniel Carpenter
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT 06092

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of October, 2020, a copy of the foregoing was served by First Class mail to the attorneys for Universitas, Ilan Markus and Michael Caldwell at Barclay Damon, LLP, 545 Long Wharf Drive, Ninth Floor, New Haven, CT 06511.

/s/ Daniel Carpenter
Daniel Carpenter

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNIVERSITAS EDUCATION, LLC,** | § | |
| Petitioner, | § | |
| | § | |
| **v.** | § | **11 CIVIL 1590 (LTS) (HPB)** |
| | § | **11 CIVIL 8726 (LTS) (HPB)** |
| **NOVA GROUP, INC,** | § | |
| Respondent. | § | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE TURNOVER
JUDGMENT PURSUANT TO RULE 60(b)(4)**

Daniel E. Carpenter
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT 06092

## PRELIMINARY STATEMENT

Petitioner respectfully asks the Court to recall the 113 page submission with exhibits that Petitioner sent to the Court that was posted June 19, 2014 on the dockets of both Case No. 11-cv-1590 [Dkt. 465] and Case No. 11-cv-8726 [Dkt. 300], the day before he reported to USP Canaan on June 20, 2014. Petitioner was recently released from MDC Brooklyn due to his age and COVID-19 susceptibility on June 3, 2020. Upon his release, he was shocked to find that Universitas had filed a frivolous and vexatious motion with this Court to expand the Turnover Judgment to other innocent parties eight years after the original judgment of this Court in 2012. This Court summarily dismissed that frivolous action citing a lack of jurisdiction pursuant to *Peacock v. Thomas*, 516 U.S. 349 (1996). See this Court's decision attached as Exhibit 1.

Not satisfied with this Court's answer, Universitas brought the exact same frivolous and vexatious action against Petitioner's Wife, Daughter, and Sister in the District of Connecticut claiming that Petitioner was a thief and ran a criminal enterprise. See excerpt of Universitas Reply Motion in front of the Honorable Judge Jeffery A. Meyer attached as Exhibit 2. Not only is this totally untrue and defamation *per se*, Petitioner has been virtually under constant investigation, pretrial release, incarceration, and supervised release by the federal government since 2001. His offices were raided by the IRS-CID in April of 2010 and by the DOL in May of 2011. If Petitioner truly ran a large criminal enterprise, the Government would have surely discovered evidence of that by now. Moreover, the money-laundering charges in Petitioner's Connecticut indictment are based on the very same Sash Spencer death proceeds at issue in this case as actually being the "proceeds of fraud" because Sash Spencer and his broker, Bruce Mactas, lied on the Lincoln applications; not Petitioner. And, contrary to the decade-long spurious accusations by Universitas, Grist Mill Capital was always the intended and designated beneficiary of the Sash Spencer policies,

and nothing was "stolen" by anyone. See Sash Spencer Beneficiary Designation Form designating Grist Mill Capital as the primary beneficiary of the insurance proceeds attached as Exhibit 3.

Because Sash Spencer and his broker Bruce Mactas clearly lied on all of the Charter Oak Trust applications, Universitas is not entitled to any of the proceeds that were procured by fraud. Clearly this is newly-discovered evidence that warrants vacating the Turnover Judgment of August 12, 2014 pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure. But, more importantly, as it is beyond cavil that both the Petitioner and the Charter Oak Trust were domiciled in Connecticut and the adjudication of the Sash Spencer proceeds began and ended in the District of Connecticut, this Court lacked personal jurisdiction over Petitioner and subject matter jurisdiction over the Sash Spencer proceeds that were subject to ERISA litigation involving an ERISA Plan, namely the Charter Oak Trust. Sash Spencer died in June of 2008, and Universitas made a deal with the widow Mary Spencer (who knew absolutely nothing of the $30 million in insurance proceeds) in July of 2008 in which Universitas disclaimed the $30 million in death benefits in exchange for a charitable gift from Mary Spencer of $5 million. Therefore, the original Turnover action was untimely as well. See Motion to Dismiss in front of Judge Thompson in the District of Connecticut, filed in July of 2012, attached as Exhibit 4.

The insurance proceeds were not paid by Lincoln until May of 2009 after the Charter Oak Trust's Trustee, Wayne Bursey, sued Lincoln in the District of Connecticut. The Charter Oak Trust, and not Petitioner, denied the benefit claim for the Sash Spencer death proceeds in 2008 and in 2009. Therefore, by this Court's own decision in 2020, this Court lacked subject matter jurisdiction over the proceeds because of the Supreme Court's ruling in *Peacock* and the three year statute of limitations for bringing a claim against an ERISA Plan. Additionally, it is important to point out that Universitas dismissed Grist Mill Capital from the Arbitration proceedings before the

Arbitration began. See Letter by Paula Colbath attached as Exhibit 5. More importantly, Petitioner was dismissed voluntarily from the Arbitration by Universitas immediately following the Arbitration. See dismissal of Daniel Carpenter and Don Trudeau from the Arbitration attached as Exhibit 6.

In Petitioner's case, the fact that he was voluntarily dismissed from the Arbitration action is doubly important. First, the Arbitration action dealt with an ERISA action, and therefore not only do the rules of *Peacock* apply, so too does the three year statute of limitations rule under ERISA, and the Petitioner was dismissed in 2011 before this Court affirmed the Arbitration. Secondly, the law of the Second Circuit is very clear that, for Universitas to bring a fraudulent conveyance action as they did in October of 2013 five years after the ERISA litigation began, they had to bring a totally separate and new action because they were now introducing Petitioner as a new party as he had been dismissed from the underlying Arbitration action. This is exactly the situation the Second Circuit discussed in *Epperson v. Entertainment Express, Inc.,* 242 F.3d 100 (2d Cir. 2001), where it distinguished the Supreme Court's decision in *H.C. Cook Co. v. Beecher,* 217 U.S. 497, 498–99 (1910), which opinion was done by Justice Oliver Wendell Holmes from Judge Learned Hand's decision in *Empire Lighting v. Practical Lighting*, 20 F.2d 295 (2d Cir. 1927). The key point made in *Beecher* was that, in a subsequent action to go after a new third party, jurisdiction had to be established on a separate basis and the two cases could not be linked as was done in *Empire,* because the case in *Empire* was just a continuation of the original action against the same parties. Therefore, not only does the Supreme Court's decision in *Peacock* support Petitioner, the Supreme Court's decision in *Beecher* is even more directly on point and is also supported by the Second Circuit in *Epperson*.

The impact of *Epperson* is undeviating, not in just that Universitas added new parties under the fraudulent conveyance action in the Turnover Motion, but it also forbids the exact same conduct that Universitas did in this case under the doctrines of *res judicata* and collateral estoppel. This is what the Second Circuit had to say in *Epperson*:

> "Collateral estoppel "applies when (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *United States v. Hussein*, 178 F.3d 125, 129 (2d Cir. 1999)…Under the traditional rule of res judicata, a valid, final judgment, rendered on the merits, constitutes ***an absolute bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand***. It operates to bind the parties both as to issues actually litigated and determined in the first suit, and as to those grounds or issues which might have been, but were not, actually raised and decided in that action. The first judgment, when final and on the merits, thus puts an end to the whole cause of action. *Saylor v. Lindsley*, 391 F.2d 965, 968 (2d Cir. 1968)." *Epperson* at 108-09 (emphasis added).

Therefore, respectfully, this Court must follow the teachings of *Peacock* ([the Supreme Court] had "never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Id.* at 357) and *Beecher* ("The [Supreme] Court also…immediately gave definition to the phrase "***person not already liable for that judgment***" by describing the veil-piercing claims in *Beecher* and concluding that [the Second] Circuit's holding that veil-piercing claims in a subsequent action require an independent jurisdictional basis." *Id.* at 498-99 (emphasis added)). Petitioner wishes to submit that the Universitas Turnover Motion was both untimely and that this Court lacked personal jurisdiction over Petitioner and subject matter jurisdiction over the action itself, and clearly it was barred by the dual doctrines of *res judicata* and collateral estoppel as was noted in *Epperson*.

Therefore, for the purposes of this Motion, Petitioner respectfully submits that under the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014), this Court lacked personal

jurisdiction over Petitioner because he was not a party in the original underlying action as required in both *Peacock* and *Beecher*, and was never served properly with the new Turnover Summons and Complaint in the new action at his domicile in Connecticut, but rather the counsel for Universitas merely repeatedly sent new motions and complaints to attorneys that had appeared for other parties in other actions, and just assumed that because Petitioner "owned and controlled everything," that such careless service of process would be able to invoke the jurisdiction of this Court. Clearly, that does not satisfy Due Process under the Constitution, or the personal jurisdiction requirements of the Supreme Court's unanimous decision in *Walden*, or the separate subject matter jurisdiction requirements of *Peacock* that this Court pointed to in its recent decision in this case.

Respectfully, Petitioner suggests that if this Court did not have jurisdiction pursuant to *Peacock* in 2020, it also did not have personal jurisdiction over Petitioner or subject matter jurisdiction over the Sash Spencer proceeds in August 2014, which is more than six years after Sash Spencer's untimely death and the adjudication of his death claim by an ERISA Plan in 2008, and the contract between Mary Spencer and Universitas where Universitas disclaimed any call on the Sash Spencer insurance proceeds in July of 2008 in exchange for a $5 million gift from Mary Spencer. See Agreement between Mary Spencer and Universitas of July 2008 attached as Exhibit 7. For all of these reasons as more thoroughly discussed below, Petitioner respectfully requests this Court vacate the August 12, 2014 Turnover Judgment pursuant to Rules 60(b)(4) as it was clearly void, or in the alternative, to reconsider the Turnover Judgment pursuant to Rule 60(b)(6), and vacate it as to the Petitioner for the reasons discussed in this Memorandum of Law.

# I.    LEGAL STANDARD

A court may vacate a previous judgment under Rule 60(b) for any of six reasons:

(1)    mistake, inadvertence, surprise, or excusable neglect;

(2)    newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3)    fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4)    the judgment is void;

(5)    the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6)    any other reason that justifies relief. Fed R. Civ. P. 60(b).

In relevant part, Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party ... from a final judgment, order, or proceeding [if] ... the judgment is void." Fed. R. Civ. P. 60(b)(4). "[A] judgment ... is void ... if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." *In re Texlon Corp.*, 596 F.2d 1092, 1099 (2d Cir. 1979). "While other motions to vacate under Rule 60(b) are left to the district court's discretion, a 60(b)(4) motion must be granted if it is found that the court initially lacked jurisdiction." *Grady v. Grady*, 2015 WL 5052663, at *1 (S.D.N.Y. Aug. 26, 2015). *See, also, Grace v. Bank Leumi Trust Co.*, 443 F.3d 180, 193 (2d Cir. 2006) (*quoting Texlon Corp.* at 1099, *cert. denied*, 549 U.S. 1114 (2007).

While the rule appears to offer courts some discretion in determining whether to vacate a judgment that is void, the Second Circuit has determined that: "A motion under Rule 60(b) is unique ... in that relief is not discretionary and a meritorious defense is not necessary as on motions made pursuant to other 60(b) subsections." *Orix Fin. Servs., Inc. v. Cline*, 369 Fed. Appx. 174 (2d Cir. 2010). *See, also, Covington Industries, Inc. v. Resintext A.G.*, 629 F.2d 730, 732 n. 3 (2d Cir. 1980); *Pitbull Prods. v. Universal Netmedia, Inc.*, 2008 U.S. Dist. LEXIS 30633 (S.D.N.Y.2008); *Am. Inst. Of Certified Pub. Accountants ("AICPA") v. Affinity Card, Inc.*, 8 F.Supp.2d 372, 375

(S.D.N.Y. 1998). Accordingly, if the judgment here is void because this Court lacked proper jurisdiction over Petitioner, this Court must vacate the judgment as a matter of law. *See Kao Hwa Shipping Co. v. China Steel Corp.,* 816 F.Supp. 910, 913 (S.D.N.Y. 1993) ("Unlike motions pursuant to other subsections of 60(b), the Court has no discretion regarding motions to vacate void judgments under Rule 60(b)(4)."). *See, also, City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 138 (2d Cir.2011) ("A judgment is void under Rule 60(b)(4) of the Federal Rules of Civil Procedure ... if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law."). "To satisfy due process ... a foreign defendant 'generally must have certain minimum contacts ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *See Walden v. Fiore*, 571 U.S. 277, 283 (2014).

"Of these grounds for vacating judgment, Rule 60(b)(4) is 'unique' because 'relief is not discretionary and a meritorious defense is not necessary.'" *Global Gold Mining, LLC v. Ayvazian,* 983 F.Supp.2d 378, 384 (S.D.N.Y. 2013). The Second Circuit has stated that "if the underlying judgment is void for lack of jurisdiction, 'it is a *per se* abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4).'" *Id.* (*quoting Burda Media, Inc. v. Viertel,* 417 F.3d 292, 298 (2d Cir. 2005)). For a district court to exercise personal jurisdiction, "the plaintiff's service of process upon the defendant must have been procedurally proper." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).

"[V]oidness of a judgment for lack of personal jurisdiction can be asserted on a collateral challenge after entry of a default judgment." *"R" Best Produce, Inc. v. DiSapio*, 540 F.3d 115, 123 (2d Cir. 2008); *In re Choez*, 2017 WL 5604109, at *6 (E.D.N.Y. Nov. 20, 2017) ("[P]recedent exists supporting the proposition that Rule 60(b)(4) may be invoked in the registration court to

obtain relief from a foreign default judgment attacked as void for lack of personal jurisdiction over the parties against whom it was rendered." Courts have found that "the non-appearing defendant might someday wish to bring a subsequent challenge to the default judgment in the distant forum where it was entered, but will usually be permitted to present the challenge defensively, or offensively, in a local forum if the judgment is sought to be enforced against him or his property." *"R" Best* at 123. This applies even to non-appearing parties who have received proper service of process. *Id.*

Furthermore, although a Rule 60(b)(4) motion must be made within a reasonable time, courts have been exceedingly lenient in defining the term "reasonable time, and have refused to apply the doctrine of laches as a bar to relief under the rule," *Velez v. Vassallo,* 203 F.Supp.2d 312, 318 (S .D.N.Y. 2002) (*quoting Beller & Keller v. Tyler,* 120 F.3d 21, 23-24 (2d Cir. 1997)); *Cent. Vermont Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 189 (2d Cir. 2003); *see, also, Crosby v. The Bradstreet Co.,* 312 F.2d 483, 485 (2d Cir. 1963) (judgment vacated as void despite it being thirty years after entry of the judgment). The Second Circuit "has been exceedingly lenient in defining the term reasonable time, with respect to voidness challenges. In fact, it has been oft-stated that, for all intents and purposes, a motion to vacate a default judgment as void may be made at any time." *"R" Best* at 123–24. *See, also, Rodd v. Region Constr. Co.,* 783 F.2d 89, 91 (7th Cir. 1986) ("The reasonable time criterion of Rule 60(b) as it relates to void judgments means no time limit."). Accordingly, although this motion to vacate the judgment is being made almost six years after entry of the judgment, the motion is still timely.

## II.    THE SUPREME COURT'S DECISION IN *WALDEN v. FIORE* REQUIRES THIS COURT TO VACATE THE TURNOVER JUDGMENT IN THIS CASE

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014). "[T]he touchstone due process principle has been that, before a court may exercise jurisdiction over a person or an organization, such as a bank, that person or entity must have sufficient minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014) (*quoting Inter'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

As an initial matter, ***the "minimum contacts" inquiry principally protects the liberty of the nonresident defendant, not the interests of the plaintiff***. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980) (emphasis added). The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts. *World–Wide* at 291. Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have "certain minimum contacts ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Inter'l Shoe* at 316 (*quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant "focuses on the relationship among the defendant, the forum, and the litigation." *See Walden* at 283-84. For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State. First, the relationship must arise out of contacts that the "defendant himself" creates with the forum State. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Due process limits on the State's

adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties. *See World–Wide Volkswagen* at 291-92.

The Supreme Court has consistently rejected attempts to satisfy the defendant-focused "minimum contacts" inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction"). The Court has thus rejected a plaintiff's argument that a Florida court could exercise personal jurisdiction over a trustee in Delaware based solely on the contacts of the trust's settlor, who was domiciled in Florida and had executed powers of appointment there. *Hanson v. Denckla*, 357 U.S. 235, 253-54 (1958). It has likewise held that Oklahoma courts could not exercise personal jurisdiction over an automobile distributor that supplies New York, New Jersey, and Connecticut dealers based only on an automobile purchaser's act of driving it on Oklahoma highways. *World–Wide Volkswagen* at 298.

Second, the "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there. *See, e.g., Inter'l Shoe* at 319 (Due process "does not contemplate that a state may make binding a judgment *in personam* against an individual ... with which the state has no contacts, ties, or relations"); *Hanson* at 251 ("However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him").

But the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the

basis for its jurisdiction over him. *See Burger King* at 478 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot"); *Kulko v. Superior Court of Cal., City and County of San Francisco*, 436 U.S. 84, 93 (1978) (declining to "find personal jurisdiction in a State ... merely because [the plaintiff in a child support action] was residing there"). The requirements of *International Shoe* must be met as to each defendant over whom a court exercises jurisdiction. Due process requires that, for a defendant be haled into court, the "minimum contacts" must be based on his own affiliation with the State, not based on the "random, fortuitous, or attenuated" contacts he makes by interacting with other persons affiliated with the State. *Burger King* at 475.

For specific jurisdiction, "there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017) (*quoting Goodyear* at 919). Put differently, "[s]pecific jurisdiction ... permits adjudicatory authority only over issues that 'aris[e] out of or relat[e] to the [entity's] contacts with the forum.'" *Gucci Am.* at 134 (*quoting Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). In principle, the two-step analysis is well established: First, the court must decide if the individual or entity has "purposefully directed his activities at ... the forum and the litigation ... arise[s] out of or relate[s] to those activities." *Burger King* at 472. Second, the court must "determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Id.* at 476. But "[t]he Supreme Court has not ... addressed specific jurisdiction over nonparties." *See Gucci Am.* at 136.

In *Gucci America*, the Second Circuit suggested the following framework for nonparties: (1) "first assess the connection between the nonparty's contacts with the forum and the order at

issue" and (2) "then decide whether exercising jurisdiction for the purposes of the order would comport with fair play and substantial justice." *Id.* at 137. In the liability context, "[t]he exercise of specific jurisdiction depends on in-state activity that gave rise to the episode-in-suit." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016); *see also Bristol-Myers Squibb* at 1781 (holding that unrelated contacts cannot diminish the required showing of an affiliation between the forum and the underlying controversy).

### III.     THIS COURT LACKED PERSONAL JURISDICTION OVER PETITIONER

To exercise personal jurisdiction lawfully, three requirements must be met. "First, the plaintiff's service of process upon the defendant must have been procedurally proper. Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective.... Third, the exercise of personal jurisdiction must comport with constitutional due process principles." *Waldman v. Palestinian Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016). Constitutional due process assures that an individual will only be subjected to the jurisdiction of a court where the maintenance of a lawsuit does not offend "traditional notions of fair play and substantial justice." *Id.* at 326 (*quoting Inter'l Shoe* at 316). Personal jurisdiction is "a matter of individual liberty" because due process protects the individual's right to be subject only to lawful power. *Id.*at 328 (*quoting J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011) (*quoting Ins. Corp. of Ir.* at 702)).

"To determine whether a defendant has the necessary 'minimum contacts,' a distinction is made between 'specific' and 'general' personal jurisdiction." *Id.* at 331, (*citing Metro. Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 567-68 (2d Cir. 1996)). "A court may assert general jurisdiction over a foreign defendant to hear any and all claims against that defendant only when the defendant's affiliations with the State in which the suit is brought are so constant and pervasive

so as to render it essentially at home in the forum State." *Waldman* at 331 (*quoting Daimler AG v. Bauman*, 134 S.Ct. 746, 751 (2014)). "Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and therefore subject to the State's regulation." *Id.* (*quoting Goodyear v. Brown*, 564 U.S. 915, 919 (2011)); *see also Licci* at 170 ("Where the claim arises out of, or relates to, the defendant's contacts with the forum—*i.e.*, specific jurisdiction [is asserted]—minimum contacts [necessary to support such jurisdiction] exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there.") *Id.* (*quoting Brussels Lambert* at 127).

Specific personal jurisdiction is predicated on "an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum." *Goodyear* at 919. "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* A plaintiff must plead personal jurisdiction with respect to each claim asserted. *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (*citing SAS Group, Inc. v. Worldwide Inventions, Inc.*, 245 F. Supp.2d 543, 548 (S.D.N.Y. 2003)). "[T]he relationship must arise out of contacts that the defendant *himself* creates with the forum...." *Walden* at 284 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "The activities of plaintiffs or third parties alone will not confer jurisdiction, and the court's analysis is directed to the defendant's contacts with the forum itself and 'not the defendant's contacts with persons who reside there." *Sullivan v. Barclays*, 2017 WL 685570, at *43 (S.D.N.Y. Feb. 21, 2017) (*quoting Walden* at 284).

In addition, the underlying "suit-related conduct must create a substantial connection with the forum State." *Walden* at 284. "[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285-86. Therefore, the analysis necessarily includes consideration of the claims' elements and where the conduct occurred. *Waldman* at 335-39. The forum must be the "focal point" or "nucleus" of plaintiff's alleged harm. *Id.* at 340. Continuous presence in the forum does not confer specific jurisdiction unless that presence involves "suit-related conduct." *Id.* at 335; *see also 7 W. 57th Realty Co.*, 2015 WL 1514539, at *10 (S.D.N.Y. March 31, 2015) ("Plaintiff must demonstrate that the Foreign Banks' suit-related conduct creates minimum contacts with New York, however, not simply that the Foreign Banks have a presence here or conduct business activities here in general.").

If the contacts are not sufficient, the due process inquiry ends. *See Metro. Life Ins*. at 568-69. If the court has either general or specific jurisdiction, it must turn to the second step of the due process inquiry, and determine "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice' - that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Licci* at 60 (*citing Chloe* at 164). The "reasonableness" analysis requires district courts to evaluate the following five factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Chloe* at 164-65 (*citing Asahi Metal Indus. v. Superior Court of Cal*., 480 U.S. 102, 109 (1987)).

Therefore, based on the Supreme Court's decision in *Walden,* and the Second Circuit's decisions in *Gucci* and *Waldman*, Petitioner respectfully submits that this Court did not have personal jurisdiction over Mr. Carpenter and therefore the judgment was void as a matter of law and should be vacated pursuant to Rule 60(b)(4), or in the interests of justice pursuant to Rule 60(b)(6) as Judge Allyne Ross did in *Cobb v. United States*, 2019 WL 2607002 (E.D.N.Y. Jan. 11, 2019) in vacating the 20-year sentence of a *pro se* petitioner:

> In the Second Circuit, a district court has the authority to vacate its own judgment *sua sponte* under Federal Rule of Civil Procedure 60(b)(6). *See, e.g., Fort Knox Music, Inc. v. Baptiste*, 257 F.3d 108, 111 (2d Cir. 2001); *Matter of Perras*, 2010 WL 11627295, at *6 (E.D.N.Y. Nov. 3, 2010); *Economist's Advocate, LLC v. Cognitive Arts Corp.*, 2004 WL 728874, at *11 (S.D.N.Y. Apr. 6, 2004). The rule, which permits a court to "relieve a party ... from a final judgment" for "any ... reason that justifies relief," Fed. R. Civ. P. 60(b)(6), "confers broad discretion ... to grant relief when appropriate to accomplish justice." *Matter of Perras* at *6 (*quoting United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009)). Relief is appropriate "where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship, and should be liberally construed when substantial justice will thus be served." *Id.* (*quoting United Airlines* at 176). Courts in this circuit have relied on 60(b)(6) to *sua sponte* vacate a denial of habeas and reopen the proceeding. *See Walker v. Conway*, 2007 WL 2027911, at *1 (N.D.N.Y. July 11, 2007); *Cole v. United States*, 2003 WL 21909758, at *1 (E.D.N.Y. July 30, 2003).

> Although a district court must provide notice to the parties before granting 60(b)(6) relief *sua sponte*, "[a]dequate notice ... does not require the court to formally notify parties of its intention to grant such relief, nor does it require the court specifically to request briefing on Rule 60(b)(6) relief." *Matter of Perras* at *6 (*citing Fort Knox* at 111). In *Fort Knox*, the court vacated its prior judgment under Rule 60(b)(6) on the grounds that it lacked personal jurisdiction over the defendant. *Id.* at 111. There, the Second Circuit found that the district court's request that the parties brief issues of personal jurisdiction provided "ample notice that the court's original assumption that it had personal jurisdiction ... would be revisited." *Id.*

# IV. THE JUDGMENT WAS VOID AS TO PETITIONER BECAUSE THIS COURT LACKED PERSONAL JURISDICTION OVER HIM

"A judgment obtained in the absence of *in personam* jurisdiction is void." *Orix Fin. Servs. v. Phipps,* 2009 WL 2486012, at *2 (S.D.N.Y. Aug. 14, 2009) (*quoting China Mariners Assur. Corp. v. M.T. W.M. Vacy Ash,* 1999 WL 126921, at *3 (S.D.N.Y. Mar. 9, 1999) (*citing Jaffe & Asher v. Van Brunt,* 158 F.R.D. 278, 279 (S.D.N.Y. 1994)). "Valid service of process is a prerequisite to a district court's assertion of personal jurisdiction over a defendant." *Am. Inst. of Certified Pub. Accountants v. Affinity Card, Inc.,* 8 F.Supp.2d 372, 375 (S.D.N.Y. 1998).

A court lacks *in personam* jurisdiction where a judgment has been "obtained by defective service." *Omni Capital Inter'l v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 103 (1987). Accordingly, a judgment obtained by way of defective service is void for lack of personal jurisdiction and must be set aside as a matter of law." *Id.* (*citing Howard Johnson v. Wang,* 7 F.Supp.2d 336 (S.D.N.Y. 1998)). Rule 4(e) governs the procedure for service of individuals. This rule states that proper service may be effected by, *inter alia*, "following state law for serving a summons ... in the state where the district court is located or where service is made." Fed. R. Civ. P. 4.

Here, Universitas purported to have served Petitioner with the Turnover summons and complaint by sending it to Attorney Tony Siano in New York. *See* Ex. 1 of Dkt. 466, dated June 20, 2014 in Case No. 11-cv-1590. Universitas did not effect proper service on Petitioner. Since Universitas did not effect proper service under the Rules of the State of Connecticut, this Court did not have personal jurisdiction over Petitioner. Accordingly, the judgment entered is void, and this Court must grant this Motion to Vacate under Rule 60(b)(4). *See United States v. Crosland,* 2018 WL 3029038 (E.D.N.Y. June 18, 2018).

The Court's Order dated August 12, 2014 should be vacated as proper service of process in this case was non-existent as Petitioner was incarcerated and was never served or made aware

of the filings and Judgment. Even assuming Petitioner had proper notice of the action, which clearly he did not, the Second Circuit has rejected the argument that "actual notice" is sufficient to cure improper service. *See National Development Co. v. Triad Holding Corp.,* 930 F.2d 253, 256 (2d Cir. 1991); *GMA Accessories v. BOP, LLC,* 2008 U.S. Dist. LEXIS 26120, *7 (S.D.N.Y. 2008). Further, it is well-settled in courts both in this district and throughout the nation that the doctrine of equitable estoppel does not apply to Rule 60(b)(4) motions. *See Kao Hwa Shipping* at 913 (doctrine of "laches," *i.e.,* that the opposing party has slept on its rights, is not a valid defense to a motion made under Rule 60(b)(4)); *Triad Energy Corp. v. McNeil,* 110 F.R.D. 382, 385 (S.D.N.Y. 1986) (same). *See, also, Ins. Corp. of Ireland v. Compagnie Des Bauxites de Guinee,* 456 U.S. 694, 702 (1982) (regarding a federal court's acquisition of subject-matter jurisdiction, holding that the "consent of the parties is irrelevant, principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings."). Therefore, this Court lacked personal jurisdiction and subject matter jurisdiction.

Since service of process is the means by which a court asserts jurisdiction to adjudicate the rights of a party, especially when the defendant was not a party to the original arbitration, a judgment is void if the defendant was not properly served because the court is powerless to enter judgment against that defendant. *See Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84-87 (1988). Moreover, the fact that Petitioner may have had actual notice of the underlying action does not suffice to confer jurisdiction in the absence of proper service. *See, e.g., Macchia v. Russo*, 67 N.Y.2d 592 (1986); *Bank of America v. Herrick*, 233 A.D.2d 351 (1996). This Motion must be granted if service of process was insufficient because "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital* at 104. Service of process must satisfy not only the rule under which

service is made but also the constitutional requirement of due process. *Ackermann v. Levine*, 788 F.2d 830, 838 (2d Cir. 1986). To satisfy due process, the serving party must provide "notice reasonably calculated*, **under all circumstances**, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust, Co.*, 339 U.S. 306, 314 (1950) (emphasis added). This, clearly, Attorneys Colbath and Barnett failed to do because they did not serve Mr. Carpenter in prison.

The requirement to direct the mailing to the attention of "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process" "is intended to ensure that the summons and complaint expeditiously reaches the appropriate decision maker in the organization." *Gowan v. HSBC Mortg. Corp. (USA) (In re Dreier LLP)*, 2011 WL 3047692, at *2 (Bankr. S.D.N.Y. July 22, 2011). Moreover, even if Universitas provided actual notice of the adversary proceeding, ***it did not cure the insufficient service of process*** and confer personal jurisdiction. *See Triad Holding Corp.* at 256 (emphasis added).

## V. BECAUSE RULE 58 DOES NOT AUTHORIZE A CLERK TO SIGN JUDGMENTS AWARDING INJUNCTIVE RELIEF, THE TURNOVER JUDGMENT IS VOID AND MUST BE VACATED

On June 5, 2012, this Court entered its Memorandum Order confirming an arbitration award against Nova Group, Inc. [Case No. 11-cv-1590 Dkt 40] On June 7, 2012, this Court entered its Judgment confirming an arbitration award against Nova Group, Inc. [Case No. 11-cv-1590 Dkt 41]. But, unlike the previous orders, Plaintiff's Turnover Judgment against Petitioner and other identified entities is merely a Clerk's Order that was signed by the Clerk and not approved or signed by the District Judge as required by Rule 58 to indicate the District Judge's approval. See Dkt. 475 attached as Exhibit 8.

Rule 58 of the Federal Rules of Civil Procedure limits a clerk's authority to execute judgments without the Court's approval, and requires the Judge to sign when:

> (A) the jury returns a special verdict or a general verdict with answers to written questions; or
> (B) the court grants other relief not described in this subdivision (b).

FED. R. CIV. P. 58(b)(2).

The Turnover Judgment was not signed by the District Judge in this case, and thus was not approved by the Court. [Dkt. 475] Additionally, the Turnover Judgment contained more than an award of costs and a sum certain, as the Turnover Judgment: (1) denied the request for permanent injunction, (2) denied the request for equitable relief, (3) terminated the temporary injunction; and (4) denied the request to modify the temporary injunction. [Dkt. 475] As a result, and as discussed in greater detail below, the Turnover Judgment is void and relief is justified, so that the Turnover Judgment must be vacated.

The Rule 58 requirements sought to relieve the kind of uncertainty "where the opinion or memorandum has not contained all the elements of a judgment, or where the judge has later signed a formal judgment," and "it has become a matter of doubt whether the purported entry of a

judgment was effective, starting the time running for post-verdict motions and for the purpose of appeal." *Bankers Trust Co. v. Mallis,* 435 U.S. 381, 384-85, 98 (1978). "The reason for adhering to the formalism of the separate document requirement is to avoid confusion as to when the clock starts for the purpose of an appeal." *Cooper* at 33.

The August 12, 2014 order did not meet the requirements of Federal Rule of Civil Procedure 58 and was not labeled a "judgment." *See* Fed.R.Civ.P. 58(a). The question is whether a "self-executing order can, without the subsequent entry of a Rule 58 final judgment, and by the passage of time alone, deprive a would-be appellant of its opportunity to seek review. As the Supreme Court made clear….it cannot." *In re Litas Inter'l, Inc.,* 316 F.3d 113, 118 (2d Cir. 2003) *(citing Mallis* and *United States v. Indrelunas,* 411 U.S. 216 (1973)). The Rule 58 requirement has never been waived. *See Cooper v. Town of East Hampton,* 83 F.3d 31, 33-34 (2d Cir. 1996). As the Second Circuit stated in *Litas*:

> In the case before us, whatever uncertainty was created by the bankruptcy court's conditional order could easily have been eliminated. Thus, when docketing the supplemental order, the clerk of the court could have entered a "tickler" marking as crucial the date on which the conditions were to have been fulfilled. And if Appellant did not comply with the conditions on that date, the clerk could then have entered a judgment pursuant to Rule 58 without any further direction from the court. In addition, PNL, for whom finality of the decision was perhaps of greatest importance, could easily have asked the court on August 17, 2000, to enter a final (Rule 58) judgment. *See Otis,* 29 F.3d at 1167("Victorious litigants wishing to write *finis* to the case would do well to ensure that the district court adheres to Rule 58."). *Litas* at 119.

Therefore, since this Court lacked subject matter jurisdiction in this case pursuant to *Peacock, Beecher,* and *Epperson* and lacked personal jurisdiction over Petitioner, and because the Turnover Judgment was not signed by a District Court Judge but merely a Clerk, and because the Petitioner was not properly served either in prison or in the State of Connecticut by the time of the Clerk's Order on August 12, 2014, the Turnover Order [Dkt. 475] was void and should be vacated by this Court pursuant to Rule 60(b)(4) or, in the alternative, Rule 60(b)(6).

## CONCLUSION

WHEREFORE, Petitioner prays that this Motion to Declare Void the Turnover Judgment Clerk's Order of August 12, 2014 [Dkt. 475] be granted, the Court enter an order declaring the Turnover Judgment void and vacating the Turnover Judgment as to the Petitioner, and that this Court award Petitioner such other and further relief, at law or in equity, to which Petitioner may be entitled and this Court deems proper in the interests of justice.

Respectfully submitted,
/s/ Daniel Carpenter
Daniel Carpenter
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT 06092

# EXHIBIT
# 1

The following transaction was entered on 4/1/2020 at 9:48 AM EDT and filed on 3/31/2020

**Case Name:**        Universitas Education, LLC v. Nova Group, Inc.

**Case Number:**      1:11-cv-01590-LTS-HBP

**Filer:**

**WARNING: CASE CLOSED on 06/07/2012**

**Document Number:** 661

**Docket Text:**
**ORDER: The Court has received and reviewed in their entirety Plaintiff's March 23, 2020, letter motions requesting entry of judgment against Moonstone Partners, LLC, Benistar Admin Services, Inc. ("BASI"), and Molly Carpenter, (Docket Entry Nos. 658, 659), as well as the March 30, 2020, letter from counsel for those entities opposing entry of judgment (Docket Entry No. 660). Plaintiff's letter motions request relief that is not enumerated in NYSD Local Civil Rule 7.1(d), which describes applications which may be brought by letter motion. Accordingly, the motions are DENIED without prejudice to formal motion practice in compliance with the relevant federal, local, and individual procedural rules of Court. Any such motion must address the legal basis, if any, for the Court's exercise of personal jurisdiction over the non-party entities named in the above-referenced letter motions, whether such a motion is the appropriate procedural mechanism by which the Court can enforce its Memorandum Order confirming the arbitration award in this case (Docket Entry No. 40) against non-parties to the underlying litigation, and whether such motion practice is consistent with the limitations of ancillary jurisdiction as described in Peacock v. Thomas, 516 U.S. 349 (1996), and the Court's order interpreting Peacock and denying Plaintiff's prior turnover motion in this case. See Docket Entry No. 545. Any such motion must also address the legal and factual basis for the requested judgment amount in light of any recoveries Plaintiff has already obtained. (Signed by Judge Laura Taylor Swain on 3/31/2020) (mro)**

# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNIVERSITAS EDUCATION, LLC<br><br>                         *Plaintiff,*<br><br>v.<br><br>BENISTAR, ET AL.<br><br>                         *Defendants.* | CASE NO. 3:20-cv-00738-JAM<br><br>OCTOBER 9, 2020 |

**PLAINTIFF'S MEMORANDUM IN FURTHER SUPPORT OF CONTINGENT
MOTION TO AMEND THE COMPLAINT**

Daniel Carpenter controls a criminal enterprise (hereinafter "Benistar"), that stole $30.6 million from Universitas Education, LLC ("Universitas"). *See United States v. Carpenter*, 190 F. Supp. 3d 260 (D. Conn. 2016). The defendants in the above-captioned proceeding are Mr. Carpenter's co-conspirators and alleged alter egos. Universitas filed a Contingent Motion to Amend the Complaint in order to bring new claims against additional parties and an existing defendant should the Court instruct Universitas to replead its claims in conjunction with the defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b). (Plf.'s Mot. [#88].) The defendants acknowledge that (with a single exception) they are unaffected by Universitas' proposed claims. (Def.'s Mem. [#93] at 4-5; Defs. Mem. [#95] at 3-4.) Nonetheless, every single defendant chose to spend valuable resources opposing the proposed claims.

The defendants' arguments in opposition to Universitas' Contingent Motion to Amend are specious. The defendants argue that:

> As a result of [Universitas'] failure to include the proposed the amended complaint to its motion, the Defendant Trusts cannot address any specific amendments the Plaintiff may be contemplating because is not clear what claims or parties the Plaintiff may seek to add in any future amended complaint.

arguments are necessarily inapplicable, and thus these arguments are entirely irrelevant.

IV.    <u>Conclusion</u>

For the reasons stated above, Universitas respectfully requests that this Court grant its

Contingent Motion to Amend the Complaint in all respects should Universitas be instructed to

replead its claims in response to the defendants' motions to dismiss.

Dated:  New Haven, CT
        October 9, 2020

PLAINTIFF UNIVERSITAS EDUCATION,
LLC,

By: <u>/s/ Michael G. Caldwell            /</u>
Ilan Markus, ct 26345
Michael G. Caldwell, ct 26561
Barclay Damon, LLP
545 Long Wharf Drive
New Haven, CT 06511
Ph. (203) 672-2658
Fax (203) 654-3265
IMarkus@barclaydamon.com


*Admitted Pro Hac Vice:*
Joseph L. Manson III
Law Offices of Joseph L. Manson III
600 Cameron Street
Alexandria, VA 22314
Tel. 202-674-1450
Em. jmanson@jmansonlaw.com


*Its Attorneys*

# EXHIBIT
# 3

**LINCOLN # 7320809**
**$20,000,000**



CHARTER OAK TRUST

## ELECTION OF PARTICIPATION &
## BENEFICIARY DESIGNATION FORM

NAME OF EMPLOYER: HOLDINGS CAPITAL GROUP, INC.

NAME OF COVERED EMPLOYEE: SASH A. SPENCER          SSN: 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

To: Administrator of the CHARTER OAK PLAN & TRUST

To participate in the Plan, place your initials in the space provided next to "A" below and insert the names of your beneficiaries. To make such beneficiary designation irrevocable, place your initials in the space next to "B" below and insert the names of your beneficiaries. Please do not forget to designate at least one beneficiary.

A. _____ I wish to participate in the Plan and name the following persons or entities as the Beneficiaries of any death benefit payable under the Plan:

Name of Beneficiaries: _____

Contact Person: _____        Phone: _____
Address: _____
I understand that I may change this designation at any time by submitting a new Beneficiary Designation Form to the Plan Administrator, and that such new designation will become effective when accepted by the Plan Administrator.

B. ✓ I wish to participate in the Plan and name the following persons or entities as the Irrevocable Beneficiaries of any death benefit payable under the Plan:

Name of Beneficiaries: UNIVERSITAS EDUCATION, LLC

Contact Person: SHARON SIEBERT        Phone: 212-826-0056
Address: 404 E. 55th STREET, SUITE 13A, NY NY
I hereby elect that the foregoing designation of my beneficiary or beneficiaries of any death benefit that becomes payable pursuant to the Plan is irrevocable and non-amendable, and I shall have no right whatsoever to change such beneficiary designation for any reason. (If you have chosen option B, your signature must be notarized.)

NOTE: I hereby designate Grist Mill Capital, LLC as primary beneficiary of any sums which remain unpaid pursuant to any other agreements I might have with Nova Group, Inc. and acknowledge that my beneficiaries as designated above will receive all death benefit proceeds in excess of the sums payable to Grist Mill Capital, LLC.

X _____        X _____
Signature of Employer's Authorized Person        Signature of Covered Employee

SASH A. SPENCER, CEO        SASH A. SPENCER
Name and Title of Authorized Person (Print or Type)        Name of Employee (Print or Type)

May 9th 2008        The foregoing instrument was acknowledged
Date of this Designation        before me this 9th day of May 2008
                                Notary Public
                                Commission Expires: 10/31/2010

COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07

BARBARA A. KNIFFEN
Notary Public, State of New York
No. 31-4826643
Qualified in New York County
Commission Expires 2010
10/31

# EXHIBIT
# 4

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

--------------------------------------------------------------------
UNIVERSITAS EDUCATION, LLC,             :
                                  :    No.:  12-mc-00102-AWT
                  Petitioner,      :
                                    :
                -v-               :
                                    :
NOVA GROUP, INC., as Trustee, Sponsor    :
and Named Fiduciary of the CHARTER OAK  :
TRUST WELFARE BENEFIT PLAN,        :    JULY 25, 2012
                                    :
                  Respondent.     :
-------------------------------------------------------------------- :

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
## FOR LACK OF SUBJECT MATTER JURISDICTION

Pursuant to Fed. R. Civ. P. 12(b)(1) and 28 U.S.C. § 1963, respondents Nova Group, Inc. ("Nova") and the Charter Oak Trust Welfare Benefit Plan ("Charter Oak Trust") hereby submit this memorandum in support of their motion to dismiss this action for lack of subject matter jurisdiction.

Subject matter jurisdiction is lacking because petitioner Universitas Education, LLC ("Universitas") "jumped the gun" and prematurely and improperly registered a foreign judgment in this Court in flagrant violation of 28 U.S.C. § 1963.  Assuming the action is not dismissed on this basis alone, the action should be dismissed for the additional reason that the rendering court lacked subject matter jurisdiction over the original action.

Furthermore, because counsel for Universitas failed to comply with the strict requirements of 28 U.S.C. § 1963, Nova and the Charter Oak Trust seek an award of their attorneys' fees and costs incurred in this action to be paid by counsel for Universitas *personally* as required by 28 U.S.C. § 1927.

## BACKGROUND

Nova, as the Plan Sponsor and Named Fiduciary of the Charter Oak Trust, denied Universitas' claim for death benefits from the Charter Oak Trust.  As required by the express provisions of the Charter Oak Trust, the parties submitted their dispute to binding arbitration.  On January 24, 2011, the arbitrator issued an award ("Award") finding that Universitas was entitled to death benefits from the Charter Oak Trust.[1]

On January 25, 2011, Nova (for and on behalf of the Charter Oak Trust) commenced an action to vacate the Award in Connecticut state court.  Universitas subsequently removed that action to the District of Connecticut based *solely* on diversity of citizenship.  See Universitas Education, LLC v. Nova Group, Inc., No. 11-cv-00342-AWT, Dkt. No. 1 (D. Conn. Mar. 3, 2011).  In its Notice of Removal, Universitas alleged that Nova is a Delaware corporation with its principal place of business in Connecticut (meaning that Nova is a citizen of both Delaware and Connecticut) and that all members of Universitas reside and are domiciled in New York (meaning that Universitas is a citizen of New York).  Id. at 2.  However, and not recognized by the parties at that time, Universitas failed to address the citizenship of the Charter Oak Trust.

On February 11, 2011, Universitas commenced a separate action to confirm the Award in New York state court.  Relying on the representations made by Universitas in its removal papers

---

[1]  Universitas and its affiliate Destination Universitas Foundation both comprise a sham and now defunct charity, as Universitas has recently admitted that Destination Universitas lost its 501(c)(3) federal tax exempt status.  Universitas is headed by the former mistress of decedent S.A. "Sash" Spencer, a successful hedge fund manager who died unexpectedly in June 2008 at the time that he was a participant in the Charter Oak Trust.  When Mr. Spencer's widow, Mary Spencer, discovered that a "charity" operated by her late husband's mistress was slated to split a substantial death benefit with Mr. Spencer's former employer Holding Capital Group, Inc. ("Holding Capital"), Mary Spencer threatened to sue Universitas, the former mistress, and Holding Capital.  As a result, Mrs. Spencer, Universitas and Holding Capital negotiated a settlement agreement in July 2008 *that they requested the Charter Oak Trust to sign* whereby Mary Spencer would receive the *entire* death benefit in return for making a comparatively small "charitable contribution" to Universitas.

# EXHIBIT
# 5



PAULA K. COLBATH
Partner

345 Park Avenue
New York, NY 10154

**Direct** 212.407.4905
**Main** 212.407.4000
**Fax** 212.937.3189
pcolbath@loeb.com

Via E-mail

August 19, 2010

Ms. Karen Fontaine
Manager of ADR Services
American Arbitration Association
950 Warren Avenue
East Providence, RI 02914

Re:   13 195 Y 1558 10, Universitas Education, LLC v. Nova Group, Inc., Wayne Bursey,
      Benistar Admin. Services, Inc., Donald Trudeau, Grist Mill Capital, LLC and Daniel E.
      Carpenter

Dear Ms. Fontaine:

As you know, we represent Universitas Education, LLC ("Universitas") in the above matter.

Pursuant to Rule R-6, Universitas is dropping all claims against and involving Grist Mill Capital
LLC for, among other reasons, no arbitration agreement exists between Universitas and Grist
Mill Capital.

 We will be filing an amended statement reflecting this change shortly.

Sincerely,

Paula Collath /ga

Paula K. Colbath
Partner


cc:    William McGrath, Esq.
       Joseph Pastore III, Esq.
       Paul Dehmel, Esq.
       Richard S. Order, Esq.

A limited liability partnership including professional corporations

# EXHIBIT
# 6



**PAULA K. COLBATH**
Partner

345 Park Avenue      **Direct**  212.407.4905
New York, NY 10154   **Main**    212.407.4000
                     **Fax**     212.937.3189
                     pcolbath@loeb.com

Via E-mail

March 22, 2011

Peter Altieri, Esq.
Epstein Becker & Green, P.C.
250 Park Avenue, 14th Floor
New York, NY 10177

Re:   <u>AAA No. 13 195 Y 1558 10 — Universitas Education, LLC v. Nova Group, Inc., et. al.</u>

Dear Arbitrator Altieri:

We write on behalf of Universitas Education, LLC ("Universitas") to report that Nova Group, Inc. ("Nova Group") failed to deposit $26,525,535.98 into escrow (by March 19), as required by your January 24, 2011 Arbitration Award (the "Award"). We thus request that you begin Phase II of the Arbitration.

As you will recall, your Award required Nova Group to "deposit $26,525,535.98 in escrow with the law firm of Updike Kelly and Spellacy on or before the later of 30 days following the date of [the] Award or 30 days after determination of any motion for reconsideration under Rule 46[.]" 1/24/11 Award at 13. Universitas submitted a motion for reconsideration, that your Honor denied on **February 17, 2011** (Nova Group did not submit a motion for reconsideration). Nova Group was thus required to comply with the Award's escrow deposit requirement by no later than March 19, 2011.

Yesterday I wrote to Richard Order, Nova Group's counsel, requesting that he provide me with documentary proof of Nova Group's compliance with the escrow deposit provision. 3/21/11 E-mail from Paula Colbath, attached as Ex. 1. Mr. Order did not provide any proof that the monies were deposited, as required by the Award.

Pursuant to your Honor's Order of December 1, 2010 (attached as Ex. 2), Universitas plans to contact TD Bank and request the immediate production of the originally subpoenaed documents for Phase II of this Arbitration.

*Further, in view of Nova Group's failure to deposit the required monies into escrow, Universitas* requests that you:

> 1.  Set a date for an Initial Scheduling Conference for Phase II of this Arbitration, in which Universitas will proceed against (a) Benistar Administrative Services, Inc. ("BASI"); (b) Nova Benefit Plans, LLC; and (c) Wayne Bursey ("Bursey").[1]

---

[1] Universitas withdraws its arbitration claims against Daniel Carpenter ("Carpenter") and Donald Trudeau ("Trudeau") without prejudice.



2.  Allow Universitas to submit a Second Amended Statement of Claim against Nova Group, Inc., BASI, Bursey and Nova Benefit Plans -- including a claim of statutory theft under Connecticut law -- within two (2) weeks following the occurrence of the Initial Scheduling Conference for Phase II of this Arbitration.

3.  Determine whether BASI, Nova Benefit Plans and Bursey are bound to arbitrate (as you will recall, they claim they are not). This issue has already been fully briefed.[2] Universitas also requests that your Honor take judicial notice of the testimony at the December 2010 hearings pertaining to the activities of BASI, Nova Benefit Plans and Bursey in administering and operating the Charter Oak Trust. See pp. 469-479, 484-490, 674-675, 704-705, 760, 814-815, 830-831 and 1055-1056 of the Hearing Transcript. Should your Honor require additional briefing on this issue, Universitas would be happy to supplement its prior submissions.

4.  Dismiss Carpenter's pending motion to strike, which is moot in view of Universitas' decision not to proceed against Carpenter in this Arbitration.

5.  Authorize Universitas to immediately take the depositions of Nova Group, Inc. and the Phase II Parties on Phase II issues.

We are prepared to participate in a telephone conference at your earliest convenience so that Phase II can begin expeditiously.

Respectfully submitted,

Paula K. Colbath

Attachments

cc:  Richard S. Order, Esq. (via e-mail w/ attachments)
     Joseph M. Pastore III, Esq. (via e-mail w/ attachments)
     Daniel P. Scapellati, Esq. (via email w/ attachments)
     Karen Fontaine (AAA) (via e-mail w/ attachments)

---

[2] Universitas refers your Honor to Respondents' 10/6/10 Motion to Dismiss; Universitas' 10/15/10 Opposition to Respondents' Motion to Dismiss; Respondents' 10/22/10 Reply; and Universitas' 12/16/10 Post-Hearing Legal Brief at 35-36.

# EXHIBIT
# 7

## SETTLEMENT AGREEMENT AND RELEASES

This SETTLEMENT AGREEMENT AND RELEASES is made as of the ___ day of July, 2008 by and among Mary M. Spencer, residing at 251 Crandon Boulevard, Unit 164, Key Biscayne, Florida 33149 ("Mary"), Mary M. Spencer as named Executrix of the Estate of Sash A. Spencer (the "Estate"), Holding Capital Group, Inc., having an office at 630 Third Avenue, 7th Floor, New York, New York ("Holding Capital"), Universitas Education, LLC, having an office c/o Sharon Siebert, 404 East 55th Street, Suite 13A, New York, New York (the "Charity"), Donna Silvo, residing at _____, New York, New York, administrator of the charity ("Administrator"), Grist Mill Capital, LLC, having an office at 100 Grist Mill Road, Simsbury, Connecticut 06070 ("Grist Mill") and Charter Oak Trust, having an office at 100 Grist Mill Road, Simsbury, Connecticut 06070 by Wayne Bursey, Trustee (the "Trust").

A.  Background – which all parties hereto acknowledge:

1.  Through the offices of Bruce Mactas, on or about December 22, 2006, life insurance in the principal amount of approximately $30,000,000 issued by The Lincoln National Life Insurance Company ("Lincoln National") was purchased by the Trust on the life of Holding Capital's principal, the late Sash A. Spencer, who passed away on June 10, 2008.

2.  The Trust is the owner and beneficiary of those policies (hereinafter the "Policies").



EXHIBIT
414
AAA Case no
13A5Y1558 10
ALL-STATE LEGAL®

NOVA000005

3. The Charity is the named beneficiary of the Trust in respect of the Policies, having been so designated by the participant, Sash A. Spencer, for consideration which has been questioned by Mary and the Estate.

4. Mary, the Estate, the Charity and Holding Capital have settled all such questions and all differences, and have agreed as follows.

B. Agreement:

1. The designated beneficiary of the Trust shall be "Hofheimer Gartlir & Gross, LLP as escrow agent" (the "escrow agent"). The parties shall execute and deliver such documentation as shall be necessary for that purpose, with copies thereof provided to the Trust. An escrow agreement shall be executed contemporaneously herewith requiring the escrow agent to disburse such proceeds of the policies as it may receive, only in accordance with this agreement.

2. The net proceeds of the policies shall belong to and be disbursed to Mary subject to the reductions and offsets set forth in paragraph "3" below.

3. If and only if proceeds of the policies are received in the amount of $30,000,000 (less expenses which had been agreed upon between Holding Capital and Grist Mill and less reasonable legal and administrative expenses), there shall be paid to the charity the sum of $5,000,000. As this sum is intended as a charitable contribution by Mary, it is contemplated that the sum may be disbursed by the escrow agent to Mary with contemporaneous arrangements satisfactory to the charity for the contribution by Mary of that sum to the charity.

4. Subject to the terms of this agreement, all parties hereto, for themselves and on behalf of their heirs, successors, members, partners, employees, shareholders, officers, agents, trustees, beneficiaries, sponsors, administrators, attorneys and assigns, and any others claiming by, from or through them, hereby release, remise and discharge all other parties, their heirs,

- 2 -

successors, employees, agents, assigns and attorneys (together with Arnold Broser, Bruce Mactas, Mactas, Alper Szrolovits, Inc., Arthur M. Michaelson, Esq. and the escrow agent, hereinafter collectively the "Additional Releasees"), from all claims, demands, causes of action, damages, judgments and executions which any of them have or may have, known and unknown, foreseen or unforeseen, in connection with the subject matter of this agreement. The Additional Releasees and their firms and affiliates shall be jointly and severally fully held harmless and indemnified against any and all claims, liabilities and related costs and expenses arising out of the subject matter of this agreement, such indemnifications to be paid as joint and several obligations of the recipients of the net proceeds of the policies (as between them, in proportion to the proceeds received).

5. Each of the parties to this agreement has had access to the advice of counsel in entering into this agreement, and each of the parties acknowledges that it has received the benefit of access to such advice or has declined same and requires no further access to counsel incident to agreeing to being bound by this agreement.

6. Upon the reasonable request of any party hereto, following the date hereof, any other party hereto will: (a) execute and deliver to the requesting party such other documents, releases, assignments and other instruments as may be required to give effect to this agreement and consummate the transactions contemplated hereby; and (b) take all other reasonable actions to fulfill the intent and purpose of this agreement and the transactions contemplated hereby.

7. This agreement may be executed in counterparts by the parties.

8. This agreement may be modified only in writing signed by the parties to be bound by such modification.

- 3 -

9.     This agreement shall be enforced only in, governed by, and construed in accordance with, the laws of the State of New York. The undersigned hereby consents to the jurisdiction of the courts of the State of New York and agrees that any action or proceeding in connection with this guaranty shall be brought in New York County.


Dated: _____, 2008          _____
                                                                Mary M. Spencer


Dated: _____, 2008          _____
                                                           Mary M. Spencer as named Executrix
                                                           of the Estate of Sash A. Spencer


Dated: _____, 2008          HOLDING CAPITAL GROUP, INC.


                                                           By: _____


Dated: _____, 2008          UNIVERSITAS EDUCATION, LLC


                                                           By: _____


Dated: _____, 2008          _____
                                                                Donna Silvo


Dated: _____, 2008          GRIST MILL CAPITAL, LLC


                                                           By: _____


Dated: _____, 2008          CHARTER OAK TRUST


                                                           By: _____
                                                                Wayne Bursey, Trustee


- 4 -

NOVA000008

# EXHIBIT
# 8

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
UNIVERSITAS EDUCATION, LLC,

                        Petitioner,

            -against-

NOVA GROUP, INC.,

                    Respondent.
-----------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED 08/12/2014

11 **CIVIL** 1590 (LTS) (HBP)
11 **CIVIL** 8726 (LTS) (HBP)

## JUDGMENT

       Whereas following entry of judgment in its favor in the above captioned-actions, Universitas Education, LLC ("Petitioner") having moved seeking, pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") section 5225(b) and Federal Rules of Civil Procedure 69, the turnover of assets by respondent Daniel E. Carpenter and his affiliated entities Grist Mill Capital, LLC, Grist Mill Holdings, LLC, the Grist Mill Trust Welfare Benefit Plan, Avon Capital, LLC, Hanover Trust Company, Carpenter Financial Group and Phoenix Capital Management, LLC (with Carpenter, the "Turnover Respondents"), as well as permanent injunctive relief barring the transfer by the Turnover Respondents of money and assets, including certain specified insurance policies, until Petitioner's judgment against Nova Group, Inc., has been satisfied (Docket entry no. 308 in case number 11 Civ. 1590); Mr. Carpenter and certain third parties having moved to modify the temporary injunction to allow transactions between themselves and certain of the Turnover Respondents (See docket entry nos. 409, 412, and 448 in 11 Civ. 1590), and the matter having come before the Honorable Laura Taylor Swain, United States District Judge, and the Court, on August 7, 2014, having rendered its Memorandum Opinion and Order granting Petitioner's turnover motion, granting Petitioner money judgments as follows: against Daniel E. Carpenter in the amount of $30,600,000.00; against Grist Mill Capital, LLC, in the amount of $30,600,000.00; against Grist Mill Holdings, LLC, in the amount of $21,000,000.00; against Carpenter Financial Group, in the amount of $ 11,140,000.00;

against Avon Capital, LLC, in the amount of $6,710,065.92; against Phoenix Capital Management, LLC, in the amount of $5,000,000.00; against Grist Mill Trust Welfare Benefit Plan, and any trustees and plan sponsors thereto insofar as they hold Grist Mill Trust assets, in the amount of $4,487,007.81; and against Hanover Trust Company, in the amount of $1,200,000.00; directing the Clerk of the Court to enter judgment against the Turnover Respondents accordingly; Liability under the judgment is joint and severally; denying as moot Petitioner's request for permanent injunctive relief; denying each of the third-party motions to modify the preliminary injunction, docket entry numbers 409, 412, and 448 in 11 Civ. 1590, as the primary injunction is hereby terminated pursuant to the provisions of the January Order, because Petitioner's motion for turnover has been resolved, it is,

**ORDERED, ADJUDGED AND DECREED:**  That for the reasons stated in the Court's Memorandum Opinion and Order dated August 7, 2014, Petitioner's turnover motion is granted; Petitioner is hereby granted money judgments against the Turnover Respondents as follows: against Daniel E. Carpenter in the amount of $30,600,000.00; against Grist Mill Capital, LLC, in the amount of $30,600,000.00; against Grist Mill Holdings, LLC, in the amount of $21,000,000.00; against Carpenter Financial Group, in the amount of $11,140,000.00; against Avon Capital, LLC, in the amount of $6,710,065.92; against Phoenix Capital Management, LLC, in the amount of $5,000,000.00; against Grist Mill Trust Welfare Benefit Plan, and any trustees and plan sponsors thereto insofar as they hold Grist Mill Trust assets, in the amount of $4,487,007.81; and against Hanover Trust Company, in the amount of $1,200,000.00; liability under the judgments is jointly and severally; Petitioner's request for permanent injunctive and other equitable relief are denied; each of the third-party motions to modify the preliminary injunction, docket numbers 409, 412, and 448 in 11 Civ. 1590 are denied as moot, as the preliminary injunction is hereby terminated pursuant

to the provisions of the January Order, because Petitioner's motion for turnover has been resolved.

**Dated:** New York, New York
August 12, 2014

**RUBY J. KRAJICK**

_____
**Clerk of Court**

**BY:**    *K. Mango*

_____
**Deputy Clerk**