

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **UNIVERSITAS EDUCATION, LLC,** | § | |
| Petitioner, | § | |
| | § | |
| **v.** | § | **11 CIVIL 1590 (LTS) (HPB)** |
| | § | **11 CIVIL 8726 (LTS) (HPB)** |
| **NOVA GROUP, INC,** | § | |
| Respondent. | § | |

**REPLY IN SUPPORT OF MOTION TO VACATE**
**TURNOVER JUDGMENT PURSUANT TO RULE 60(b)(4)**

Daniel E. Carpenter
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT 06092

## ARGUMENT

### I. UNIVERSITAS HAS NEVER ESTABLISHED SUBJECT MATTER JURISDICTION IN THIS CASE

In docket entry ("Dkt.") #464 of this case, the Court asked all parties to come prepared to brief and discuss the Court's subject matter jurisdiction over the issues, and personal jurisdiction over the parties based on these four cases: *Peacock v. Thomas*, 516 U.S. 349 (1996); *Epperson v. Entm't Express, Inc.*, 242 F.3d 100 (2d Cir. 2001); *Estate of Ungar v. Orascom Telecom Holding S.A.E.*, 578 F. Supp. 2d 536 (S.D.N.Y. 2008); and *Alliance Bond Fund, Inc. v. Grupo Mexicano De Desarrollo*, 190 F.3d 16 (2d Cir. 1998).

As the Court is well aware, the Petitioner, Daniel Carpenter, reported to prison literally the next day. See letter dated June 19, 2014 posted by the court as Dkt. #465. Shortly thereafter, an attorney for Universitas posted the proof of affidavit of service, which is glaringly deficient because it doesn't show that Mr. Carpenter was served with process as he was not only in prison at the time, but the previous attorneys were no longer working for Mr. Carpenter or Grist Mill Capital ("GMC"). See, e.g., Dkt. #442, the letter to the Court from Carol Bernstein stating that she was released as an attorney representing Avon Capital and GMC as of March 31, 2014 and was traveling in Europe at the time the court wanted to explore the issues of subject matter jurisdiction and personal jurisdiction over the defendants. So, clearly, the service of process that counsel for Universitas is talking about is not effective in Connecticut or New York.

More importantly, for the purpose of this motion, nobody ever explained that this Court lacked subject matter jurisdiction based on *Peacock*, and obviously Mr. Carpenter was in prison so there was nobody left to defend him, GMC, or any of the other third parties. The reason for this is clear: According to Universitas, Petitioner controls a number of entities including the parties that were listed as judgment debtors, so for all intents and purposes the lack of subject matter

1

jurisdiction and lack of personal service that he complains about could be equally raised by any of the other parties including Carpenter Financial Group, Avon Capital, and the other judgment debtors listed in the Clerk's Judgment of August 12, 2014.

Significantly, in a related decision in the string of litigation by Universitas against innocent parties, this Court ruled that it did not have subject matter jurisdiction in the attempt by Universitas to go after the policies held by Minnesota Trailer Sales. See Dkt. #545, where this Court mentions both *Peacock v. Thomas*, 516 U.S. 349 (1996); *Epperson v. Entm't Express, Inc.*, 242 F.3d 100 (2d Cir. 2001) in stating it must dismiss the case due to lack of subject matter jurisdiction citing *John Birch Soc'y v. National Broadcasting Co.*, 377 F.2d 194, 199 (2d Cir. 1967). As already discussed, Mr. Carpenter was in prison during this time period, and there are at least seven other cases involving insurance policies where Universitas tried to establish subject matter jurisdiction and/or personal jurisdiction over parties in the Southern District of New York, but were not allowed to by various judges. See, for example, Judge Koetl referring the case against SDM out to Oklahoma (Case No. 13-cv-03735-JGK) and Judge Scheindlin dismissing the Universitas lawsuit against T.D. Bank that was allegedly brought on behalf of the Charter Oak Trust (Case No. 15-cv-05643-SAS).

Judge Scheindlin's order is particularly instructive and it should also be noted that Universitas tried to do a motion for reconsideration that Judge Scheindlin denied. There were also several other law firms that Universitas had hired in these cases, but in their filing with Judge Scheindlin, they literally claimed they were acting on behalf of Charter Oak Trust in the Southern District of New York and that they had jurisdiction over T.D. Bank, which is a Canadian bank, thereby ignoring the clear holding of *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014), where even though the Chinese bank had branches in New York, there was no personal jurisdiction

in the Southern District of New York. Notably, the case in front of Judge Scheindlin was also after the landmark cases of *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014) and *Walden v. Fiore*, 571 U.S. 277 (2014), which Universitas seems to slough over. But, in any event, not only has this Court rejected subject matter jurisdiction pursuant to Rule 12(h)(3), so too has Judge Scheindlin.

Contrary to the response by Universitas, the Second Circuit's instructions for an appeal refer to both Orders and Judgments so that Universitas' argument that Petitioner came up with the word "order" is nonsensical as "order" and "judgment" are used throughout not just the law but the docket as well. This Court noticed that all of these third party defendants were all residents of Delaware and none had any business or minimum contacts as required by law. *See Waldman v. PLO*, 835 F.3d 317 (2d Cir. 2016), *citing Walden*. The glaring omission from the table of authorities and table of contents in the latest submission by the team of Manson and Chernow are the cases the Court expressly requested that they address in Dkt. #464 of June 18, 2014: *Peacock v. Thomas*, 516 U.S. 349 (1996); *Epperson v. Entm't Express, Inc.*, 242 F.3d 100 (2d Cir. 2001); *Estate of Ungar v. Orascom Telecom Holding S.A.E.*, 578 F. Supp. 2d 536 (S.D.N.Y. 2008); and *Alliance Bond Fund, Inc. v. Grupo Mexicano De Desarrollo*, 190 F.3d 16 (2d Cir. 1998).

Also missing is any discussion of how Universitas can survive the Second Circuit's clear decisions in *Waldman* and *Gucci*, where the Second Circuit explains that "before a court may exercise jurisdiction over a person or an organization, such as a bank, that person or entity must have sufficient minimum contacts with the forum," which begs the question of how personal jurisdiction could be extended to an individual like Mr. Carpenter who had absolutely no contacts in the state of New York, let alone the minimum necessary to establish jurisdiction. Assuming *arguendo* that the PLO terrorist organization is far more evil than Petitioner (even in the eyes of Universitas), just being a bad person does not establish personal jurisdiction in the United States

3

or anywhere else for that matter. So, as the Second Circuit has made clear in adopting *Peacock* and *Epperson*, federal courts are courts of limited jurisdiction, and if there is no federal question involved then Universitas should have sued Petitioner in the state of Connecticut and certainly not in the federal courts of New York where both subject matter jurisdiction and personal jurisdiction over Petitioner were lacking. The Universitas reply brief does not answer any of these important legal questions, but rather continues to make spurious and scurrilous accusations against Petitioner.

Assuming, *arguendo* that, unlike the terrorists of *Waldman* and *Ungar* Mr. Carpenter hasn't killed anyone (and not even Universitas has claimed he is a terrorist), it is hard to see how Universitas can disregard the clear holdings regarding personal jurisdiction of *Waldman*, which comes directly from the line of cases beginning with the *Estate of Ungar*; which again is one of the cases this Court asked Universitas to specifically address. The law of the Second Circuit is crystal clear: a court must determine whether it has subject matter jurisdiction, and once it discovers it does not, it must dismiss the case pursuant to Rule 12(h)(3). Therefore, this Court would be well within its rights to dismiss this case either for lack of subject matter jurisdiction and/or personal jurisdiction over Petitioner through Rule 12(h)(3), Rule 60(b)(4), or the unlimited "catch-all" provision of Rule 60(b)(6).

## II.   *PEACOCK* IS DISPOSITIVE OF THIS CASE

As stated above, nowhere does Universitas deal with the impact of *Peacock* and the lack of a federal question regarding subject matter jurisdiction. In *Peacock,* Thomas filed an ERISA claim against Tru-Tech for benefits due under the corporation's ERISA benefits plan alleging that Tru–Tech breached its fiduciary duties. After obtaining a judgment against Tru-Tech, but failing to collect on it, Thomas sued both Tru-Tech and Peacock in federal court claiming that Peacock had entered into a conspiracy to siphon assets from Tru–Tech to prevent satisfaction of the ERISA judgment alleging various alter-ego and fraudulent conveyance claims. Therefore, *Peacock* is on all fours with this case, as Universitas blames Petitioner for "theft of money" where GMC was always the intended beneficiary and the Charter Oak Trust owed GMC $60 million at the time it paid the proceeds to GMC. Universitas also does not mention the fact that Wayne Bursey was the actual trustee of the Charter Oak Trust (and not Mr. Carpenter), and this Court granted Mr. Bursey's motion for reconsideration. See Dkt. #533.

Further, Universitas fails to acknowledge the fact that it received $12 million from Christiana Bank, the Insurance Trustee of the Charter Oak Trust, or any of the various amounts paid by the other third party entities that should be used as set-offs, which Universitas refuses to credit under the "One Satisfaction Rule" of *Singer v. Olympia Brewing Co.*, 878 F.2d 596 (2d Cir. 1989). Consequently, if Mr. Bursey was the Administrative Trustee of the Charter Oak Trust and was dismissed from these actions, and Christiana Bank was the Insurance Trustee of the Charter Oak Trust, how is it possible that Mr. Carpenter – who was never a fiduciary or trustee - could be held liable for the debts of the Charter Oak Trust under any set of circumstances based on the Supreme Court's holding in *Peacock*?

The essential part is that, as the Supreme Court says in *Peacock*, it has never allowed that a third party can be held liable for the debt of another party. *See Peacock* at 350, *citing H.C. Cook Co. v. Beecher*, 217 U.S. 497 (1910). Therefore, for more than a century, the Supreme Court has never allowed what Universitas is seeking in this case: that it should collect anything from Petitioner or any parties he may be affiliated with based solely on its judgment against only Nova Benefits; and therefore this Court lacks subject matter jurisdiction under *Peacock* and also lacked personal jurisdiction over Petitioner pursuant to *Walden*. Therefore, the Clerk's Judgment should be vacated as being void under Rule 60(b)(4) or under Rule 12(h)(3).

The Clerk's Judgment dated August 12, 2014 should also be vacated as proper service of process in this case was non-existent as Petitioner was incarcerated and was never served or made aware of the filings and Judgment. Even assuming Petitioner had proper notice of the action, which clearly he did not because he was in prison, the Second Circuit has rejected the argument that "actual notice" is sufficient to cure improper service. *See, e.g., National Development Co. v. Triad Holding Corp.,* 930 F.2d 253, 256 (2d Cir. 1991); *GMA Accessories v. BOP, LLC,* 2008 U.S. Dist. LEXIS 26120, *7 (S.D.N.Y. 2008). Further, it is well-settled in courts both in this district and throughout the nation that the doctrine of equitable estoppel does not apply to Rule 60(b)(4) motions. *See Kao Hwa Shipping* at 913 (doctrine of "laches," *i.e.*, that the opposing party has slept on its rights, is not a valid defense to a motion made under Rule 60(b)(4)); *Triad Energy Corp. v. McNeil,* 110 F.R.D. 382, 385 (S.D.N.Y. 1986) (same). *See, also, Ins. Corp. of Ireland v. Compagnie Des Bauxites de Guinee,* 456 U.S. 694, 702 (1982) (regarding a federal court's acquisition of subject-matter jurisdiction, holding that the "consent of the parties is irrelevant, principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings."). Therefore, this Court lacked personal

6

jurisdiction over Petitioner and the other related parties, and lacked subject matter jurisdiction over all of the spurious claims.

Since service of process is the means by which a court asserts jurisdiction to adjudicate the rights of a party, especially when the defendant was not a party to the original arbitration, a judgment is void if the defendant was not properly served because the court is powerless to enter judgment against that defendant. *See Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84-87 (1988). Moreover, the fact that Petitioner may have had actual notice of the underlying action does not suffice to confer jurisdiction in the absence of proper service. *See, e.g., Macchia v. Russo*, 67 N.Y.2d 592 (1986); *Bank of America v. Herrick*, 233 A.D.2d 351 (1996). This Motion must be granted if service of process was insufficient because "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital* at 104. Service of process must satisfy not only the rule under which service is made but also the constitutional requirement of due process. *Ackermann v. Levine*, 788 F.2d 830, 838 (2d Cir. 1986). To satisfy due process, the serving party must provide "notice reasonably calculated, ***under all circumstances***, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust, Co.*, 339 U.S. 306, 314 (1950) (emphasis added). This, clearly, Attorneys Colbath and Barnett failed to do because they did not serve Mr. Carpenter in prison, nor did they actually serve by hand or by mail any of his companies or the other parties.

The requirement to direct the mailing to the attention of "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process" "is intended to ensure that the summons and complaint expeditiously reaches the appropriate decision maker in the organization." *Gowan v. HSBC Mortg. Corp. (USA) (In re Dreier LLP)*, 2011 WL

3047692, at *2 (Bankr. S.D.N.Y. July 22, 2011). Moreover, even if Universitas provided actual notice of the adversary proceeding, ***it did not cure the insufficient service of process*** and confer personal jurisdiction. *See Triad Holding Corp.* at 256 (emphasis added). This provides yet one more reason for vacating the Clerk's Judgment for failure of effective and legitimate service of process.

### III. THE CLERK'S JUDGMENT DID NOT SATISFY THE REQUIREMENTS OF RULE 58

While Mr. Carpenter would like to take credit for the term "Clerk's Order," it has been used for a century by both the Supreme Court and the Second Circuit. *See, e.g., Armstrong v. Fernandez*, 208 U.S. 324, 325-26 (1908) ("…the court set aside the **clerk's order** of reference and ordered the case back for further proceedings.") (Emphasis added). *See, also, L-3 Commc'ns Corp. v. OSI Sys., Inc.*, 607 F.3d 24, 27 (2d Cir. 2010) ("OSI appealed the **clerk's order** to the district court….") (Emphasis added). Mr. Carpenter also cannot take credit for being the first one to notice that the Clerk's Order of August 12, 2014 was deficient because it was the attorneys arguing against Universitas in Oklahoma who first discovered that the Order was not valid because it was *only* signed by the Clerk and not by the Judge as required by Rule 58. See the extensive briefing done by the attorneys in Oklahoma including John Stiner, Alan Rupe, and Jeff Sandberg in the Western District of Oklahoma See, e.g., Dkt. Nos. 133 & 195 in Case No. 14-fj-00005, Hon. Joe Heaton, regarding Universitas trying to seize the SDM Policies based on the clearly deficient Clerk's Judgment of August 12, 2014. See, also, Dkt. #493 in this case, stating that there was no objection when the truth was that nobody received any service of process and Michael Barnett never filed an affidavit of service on the docket.

The August 12, 2014 order did not meet the requirements of Rule 58 because it dealt with issues other than those that can be found in an order signed by a Clerk. *See* Fed.R.Civ.P. 58(a) and

8

(b). The question is whether a "self-executing order can, without the subsequent entry of a Rule 58 final judgment not properly signed by a Judge, be effective by the passage of time alone, and thereby deprive a would-be appellant of its opportunity to seek review. As the Supreme Court made clear....it cannot." *In re Litas Inter'l, Inc.,* 316 F.3d 113, 118 (2d Cir. 2003) *(citing Mallis* and *United States v. Indrelunas,* 411 U.S. 216 (1973)). Furthermore, the Rule 58 requirements have never been waived. *See, e.g., Cooper v. Town of East Hampton,* 83 F.3d 31, 33-34 (2d Cir. 1996). Additionally, as the Second Circuit stated in *Litas*:

> In the case before us, whatever uncertainty was created by the bankruptcy court's conditional order could easily have been eliminated. Thus, when docketing the supplemental order, the clerk of the court could have entered a "tickler" marking as crucial the date on which the conditions were to have been fulfilled. And if Appellant did not comply with the conditions on that date, the clerk could then have entered a judgment pursuant to Rule 58 without any further direction from the court. In addition, PNL, for whom finality of the decision was perhaps of greatest importance, could easily have asked the court on August 17, 2000, to enter a final (Rule 58) judgment. *See Otis,* 29 F.3d at 1167 ("Victorious litigants wishing to write *finis* to the case would do well to ensure that the district court adheres to Rule 58."). *Litas* at 119.

In fact, the case that Universitas mentions, *Jackson v. Pfau,* 2012 WL 12883375, at *1-2 (N.D.N.Y. Jan. 10, 2012), *aff'd,* 523 F. App'x 736 (2d Cir. 2013), actually supports Mr. Carpenter's argument that if a judgment is void, it can be vacated under Rule 60(b)(4) and also set aside pursuant to Rule 60(b)(6). In *Jackson,* the clerk had a separate order but forgot to sign it, and the amendment to Rule 58 that Universitas speaks of only added 150 days to give certainty for when someone could file an appeal. In this case, the Clerk did sign the Order, and it was a separate order as required by Rule 58. However, because it dealt with more than just a monetary judgment, it was required to be signed by a Judge; a Clerk's signature would not be enough pursuant to the clear and specific mandate of Rule 58. The Second Circuit and Supreme Court rulings on Rule 58 cannot be clearer. This case is not about the separate order doctrine or the timing of an appeal, but it is about the fact of who ***must*** sign an Order that covers more than monetary issues.

9

## IV.  THE COURT MUST DISMISS THE CASE WHEN IT DISCOVERS IT HAS NO SUBJECT MATTER JURISDICTION PURSUANT TO RULE 12(h)(3)

Rule 12(h)(3) of the Federal Rules of Civil Procedure states, "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). *See United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009); *Competex, S.A. v. Labow*, 783 F.2d 333, 335 (2d Cir. 1986); *Grace v. Leumi Trust Co. of N.Y.*, 443 F.3d 180, 190 (2d Cir. 2005); *Graves v. Smith*, 2011 WL 4356083, at *6 (E.D.N.Y. Sept. 16, 2011). *See, also, Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 59 (2d Cir. 2002); *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986). *Jackson v. Pfau*, 2012 WL 12883375, at *1–2 (N.D.N.Y. Jan. 10, 2012), *aff'd*, 523 F. App'x 736 (2d Cir. 2013). *Jackson* is especially significant because it is the case Attorney Chernow cites for his totally inappropriate and erroneous conclusions. *Jackson* supports Mr. Carpenter's motion to vacate the judgment pursuant to Rules 60(b)(4) and 12(h)(3), as well as Rule 60(b)(6).

If subject matter jurisdiction is absent, the district court must dismiss the complaint regardless of the merits of the underlying action. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F. 3d 1182, 1188 (2d Cir. 1996); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Federal subject matter jurisdiction is governed by 28 U.S.C. §§1331 and 1332. Under §1331, federal courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." *Gallego v. Northland Grp. Inc.*, 814 F.3d 123, 126 (2d Cir. 2016) (*quoting* §1331). A plaintiff properly invokes federal question jurisdiction under §1331 when she pleads a colorable claim of a federal question "arising under" the Constitution or laws of the United States. *Id.* For a federal court to exercise diversity jurisdiction, there must be complete diversity of citizenship between the plaintiff and defendants. *See Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117-18 (2d Cir. 2014) (jurisdiction

based on §1332 "requires complete diversity, i.e. all plaintiffs must be citizens of states diverse from those of all defendants.").

As the Supreme Court reiterated, whenever a district court discovers that it lacks subject matter jurisdiction it *shall* dismiss the case pursuit to Rule 12(h)(3). Accordingly, subject-matter delineations must be policed by the courts on their own initiative even at the highest level. *See Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 94-95 (1998); 28 U.S.C. §1447(c) (1994 ed., Supp. III) ("If at any time before final judgment [in a removed case] it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). Personal jurisdiction, on the other hand, "represents a restriction on judicial power...as a matter of individual liberty." *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 (1982). Therefore, a party may insist that the limitation be observed, or he may forgo that right, effectively consenting to the court's exercise of adjudicatory authority. See F.R.C.P. Rule 12(h)(1) (defense of lack of jurisdiction over the person waivable); *Insurance Corp. of Ireland* at 703 (same). *See Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583-84 (1999):

> "subject-matter delineations must be policed by the courts on their own initiative even at the highest level. *See Steel Co.* at 94–95; Rule 12(h)(3) ("Whenever it appears...that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."); 28 U.S.C. §1447(c) (1994 ed., Supp. III) ("If at any time before final judgment [in a removed case] it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

In this case, Universitas is wrong on all fronts. Federal courts are courts of limited jurisdiction and may not hear cases if they lack subject matter jurisdiction. *Singh v. U.S. Citizenship and Immigration Servs.,* 878 F.3d 441, 445 (2d Cir. 2017); *Doe v. United States,* 833 F.3d 192, 196 (2d Cir. 2016). The lack of subject matter jurisdiction cannot be waived and may be raised at any time by a party or by the court *sua sponte. See Henderson ex rel. Henderson v. Shinseki,* 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure

that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.").

"[F]ailure of subject matter jurisdiction is not waivable and may be raised...by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000); *see also* Rule 12(h)(3). Federal subject matter jurisdiction is available only when a case "aris[es] under the Constitution, laws, or treaties of the United States," or when plaintiffs and defendants have complete diversity of citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. §§1331, 1332. The former, known as "federal question jurisdiction," "may be properly invoked only if the plaintiff's complaint necessarily draws into question the interpretation or application of federal law." *State of New York v. White*, 528 F.2d 336, 338 (2d Cir. 1975). Relevant here, even where a plaintiff has paid the court's filing fee, a district court may dismiss the case, *sua sponte*, if it determines that the Court lacks subject matter jurisdiction. *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000); *see also Hawkins-El III v. AIG Federal Savings Bank,* 334 Fed. Appx. 394, 395 (2d Cir. 2009) (affirming district court's *sua sponte* dismissal of fee-paid frivolous complaint). Indeed, "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson* at 434.

## V.   THE COURT MAY ALSO VACATE A JUDGMENT *SUA SPONTE* PURSUANT TO RULE 60(B)(6)

Contrary to Attorney Chernow's brief, in the Second Circuit, a district court has the authority to vacate its own judgment ***sua sponte*** under Rule 60(b)(6) in the interests of justice. *See, e.g., Fort Knox Music, Inc. v. Baptiste*, 257 F.3d 108, 111 (2d Cir. 2001); *Matter of Perras*, 2010 WL 11627295, at *6 (E.D.N.Y. Nov. 3, 2010); *Economist's Advocate, LLC v. Cognitive Arts Corp.*, 2004 WL 728874, at *11 (S.D.N.Y. Apr. 6, 2004). The rule, which permits a court to "relieve a party ... from a final judgment" for "any ... reason that justifies relief," Rule 60(b)(6), "confers broad discretion ... to grant relief when appropriate to accomplish justice." *Matter of Perras*, 2010 WL 11627295, at *6 (quoting *United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009)). Relief is appropriate "where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship, and should be liberally construed when substantial justice will thus be served." *Id.* (*quoting United Airlines* at 176). Courts have relied on Rule 60(b)(6) to *sua sponte* vacate a denial of habeas and reopen the proceeding. *See Cobb v. United States*, 2019 WL 2607002, at *2 (E.D.N.Y. Jan. 11, 2019). *See, also, Walker v. Conway*, 2007 WL 2027911, at *1 (N.D.N.Y. July 11, 2007); *Cole v. United States*, 2003 WL 21909758, at *1 (E.D.N.Y. July 30, 2003).

Furthermore, Rule 60(b)(6) "constitutes a grand reservoir of equitable power to do justice in a particular case; *Matarese v. Lefevre*, 801 F.2d 98, 106 (2d Cir. 1986) *citing United States v. Cirami*, 563 F.2d 26, 32 (2d Cir. 1977))," and "is designed to balance the sanctity of final judgments and the command that justice be done in light of all the facts." *Paddington v. Bouchard*, 34 F.3d 1132, 1144 (2d Cir. 1994). It has often been noted that Rule 60(b)(6) confers broad discretion upon the trial court to grant relief when appropriate to accomplish justice. A district court's discretion is "especially broad under subdivision (6)." *Int'l Controls Corp. v. Vesco*, 556

F.2d 665, 670 (2d Cir. 1977). The Second Circuit has long recognized that a Rule 60(b)(6) Motion

is appropriate in both criminal and civil cases. *See, e.g., United States v. Becker*, 502 F.3d 122 (2d

Cir. 2007).

A motion for reconsideration pursuant to Rule 60(b)(6) also serves a valuable function

where the court "*has patently misunderstood a party*," or..."has made an error not of reasoning

but of apprehension." *Caisse Nationale v. CBI*, 90 F.3d 1264, 1269-70 (7th Cir. 1996). A court

may also "reconsider an earlier decision when it is confronted with an intervening change of

controlling law, the availability of new evidence, or the need to correct a clear error or prevent

manifest injustice." *Becker* at 127, *quoting United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000).

All three of these factors are amply present in this case. "[W]hen reconsideration of an earlier

ruling is requested, the district court should place great emphasis on the interests of justice." *United*

*States v. Siciliano*, 578 F.3d 61, 72 (1st Cir. 2009)("When faced with a motion for reconsideration,

district courts should apply an interests-of-justice test"). "This is so...because such requests for

reconsideration rely, in the last analysis, on the trial court's inherent power to afford relief from

interlocutory decisions as justice requires." Alternatively, the Court can also amend a judgment

pursuant to Rule 60(b)(6) – the catch-all provision of Rule 60(b) – which "allows courts to vacate

judgments whenever necessary to accomplish justice...." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d

Cir. 2009) (*citing Liljeberg* at 863).

Moreover, most courts have long recognized the "inherent equitable powers of courts of

law over their own process, to prevent abuses, oppression, and injustices." *Seattle Times Co. v.*

*Rhinehart*, 467 U.S. 20, 35 (1984). It seems beyond peradventure that those inherent powers of the

court must include a judge's power to change his mind and/or correct his own decisions when, as

in this case, they are clearly based on misrepresentations of the law and/or the facts of any given

situation. The intervening change in controlling law and the "extraordinary circumstances" present in this case warrants reconsideration by this Court of the Clerk's Judgment of August 12, 2014. *See Pichardo v. Ashcroft*, 374 F.3d 46, 52 (2d Cir. 2004) (reversing district's court's denial of post-judgment motion for reconsideration and reversing deportation order based on an intervening change in the law).

## VI.    *RES JUDICATA* REQUIRES VACATING THE CLERK'S JUDGMENT AS WELL

Mr. Carpenter would like to respectfully direct the Court's attention to two Opinions and Orders in the case entitled *Universitas Education, LLC, and on behalf of the Charter Oak Trust v. T.D. Bank, N.A.* See Judge Scheindlin's Opinion (Dkt. #23) in Case No. 13-cv-5643-(SAS). Once again, this case was presented, argued, and decided on while Mr. Carpenter was in prison, but what is critical to his argument now is that Judge Scheindlin clearly points out the latest date Universitas knew it was not getting the money was October 2009, and that the latest Universitas could sue anybody – including Petitioner – was October 2012. Therefore, there is no way that the fraudulent conveyance claim should have gone against anybody, including Mr. Carpenter.

Amazingly, in its Motion for Reconsideration where somehow Universitas claims that nobody else is allowed to do motions for reconsideration except themselves, they also claim they did not know the money was "stolen" until sometime in November 2012. Judge Scheindlin ridiculed that claim, and pointed out all the documents showing that Universitas certainly knew the Charter Oak Trust would not be paying the Sash Spencer death benefit by sometime in 2009. Judge Scheindlin then goes over the cash flow, showing that Mr. Bursey sued Lincoln and received the funds in May of 2009, and once the funds were received, GMC was then reimbursed. See Dkt. #23. Therefore, Attorney Chernow continues a decade-long pattern of lying to the Court and committing outright frauds not only on the Court, but on his own clients as well, since the only

possible reason to bring these frivolous and vexatious actions against Mr. Carpenter and his family is so that he can continue to drain the monies Universitas has received in various settlements with various parties totaling over $19 million. Granted, most of the money has gone to the Universitas' attorneys, that is not Petitioner's fault.

Therefore, based on Judge Scheindlin's in-depth analysis saying that under New York Law, the latest Universitas could have made a claim against Petitioner, T.D. Bank, or anyone else for that matter was October 2012, the Clerk's Judgment of 2014 should also be vacated under the doctrines of *res judicata*, collateral estoppel, and waiver and laches. The Court need only view Attorney Chernow's discussion of *res judicata* and collateral estoppel to realize that it applies to Universitas, and certainly not to Petitioner.

In addition to these flaws in Attorney Chernow's persistent arguments, there lies the fact that he says newly-discovered evidence does not allow the Court to vacate a judgment in the interests of justice. Not only is that not even remotely true, but the agreement made between the Widow Mary Spencer and the two ladies that run Universitas clearly shows that Ms. Spencer had no idea her husband purchased an insurance policy with the intent to pay the proceeds to two women she had no knowledge of whatsoever, which is why it was her attorneys that threatened Wayne Bursey and Jack Robinson to not pay the death claim to anyone, otherwise she would sue the Charter Oak Trust. It needs to be noted that nobody every threatened Mr. Carpenter during this process, only Mr. Robinson and Mr. Bursey, and this Court has already granted the motion for reconsideration for Mr. Bursey, and both he and Mr. Robinson are deceased. Christiana Bank has already settled their claim, and obviously if Mr. Carpenter truly stole the money, there would be no reason for T.D. Bank or Christina Bank to be liable for any funds.

16

Therefore, the existence of an agreement between Mary Spencer, Sash Spencer's broker Bruce Mactas, and the two principals of Universitas, where Universitas was willing to take a charitable "gift" of $5 million from Ms. Spencer and disclaim the $30 million in death proceeds is also dispositive of this case because it shows that Universitas knew it wasn't getting any money in 2008. And, under Judge Scheindlin's scholarly analysis of the situation, Universitas realized in July 2009 that they were not entitled to the funds because of the agreement with Ms. Spencer, because they knew Lincoln was not paying death claim, or because Mr. Robinson and Mr. Bursey would deny the benefit. Petitioner was not privy to any of these discussions, and therefore once again should never have been party to proceeding and this Court therefore laced personal and clearly lacked subject matter jurisdiction over the entire case pursuant to the Supreme Court in *Peacock* and Second Circuit in *Epperson*.

Mr. Carpenter regrets that he could not have presented this documentary evidence to the Court sooner, but he was in prison and unable to get access to PACER documents or have anyone to type this information for the Court. Petitioner would also respectfully request the Court order an accounting of all funds received by Universitas by all parties, and to have Attorney Chernow answer an Order to Show Cause so he may show his clients how he has defrauded them over the past few years. Petitioner can show that Universitas has received over $19 million, and in an affidavit presented in a Boston Court in an action against the estate of Jack Robinson, Sharon Siebert says that Universitas has only received $4 million while owing $10 million in legal bills, so the thief, liar, and fraudster here is not Mr. Carpenter, but Attorneys Manson and Chernow. See the September 2019 Affidavit of Sharon Siebert attached as Exhibit One. This Court should make sure that the two women who run Universitas and who are allegedly citizens of New York be protected from the fraud of Attorneys Manson and Chernow. Please see Scheindlin's two excellent

decisions, and perhaps Attorney Chernow should ask the ladies of Universitas how they have the right to represent the Charter Oak Trust in an action against T.D. Bank.

Finally, Mr. Carpenter wants to let the Court to know how much he appreciates the opportunity to address these issues, because when this situation occurred, most of the time he was in prison unable to defend himself. The reason why he wants to submit the September 2019 affidavit by Ms. Siebert was that again, under penalty of perjury, she admitted that Universitas knew all about the amending of the Charter Oak Trust in January 2007 and that Sash Spencer entered the Trust sometime in 2006. So, even assuming the entry to the plan was at latest December 2006, that means Universitas, Sash Spencer's attorneys, his company's attorneys, and certainly Mary Spencer's attorneys, all knew about the documentation Sash Spencer signed in 2007 and again in 2008 designating GMC the primary beneficiary of the insurance proceeds. Petitioner has had to bear the slings and arrows of various attorneys for Universitas claiming he stole the proceeds when, in 2019, it became clear they knew all along the language contained in the documents that were signed and that not Sash Spencer, his company, nor the Widow put any money into the policies, but all of the money was contributed by Mr. Carpenter's company GMC. With this in mind, Mr. Carpenter respectfully asks the Court to order a full accounting of funds received by Universitas and held by Attorneys Manson & Chernow, as well as the billing by Attorneys Manson & Chernow since 2018 similar to a bankruptcy proceeding, so that all attorney fees may be returned to Universitas, and the Court issue an Order to Show Cause to show the women of Universitas they are being defrauded by their attorneys and not Mr. Carpenter.

## CONCLUSION

For the reasons above, the Court should vacate the Judgment of August 12, 2014 for lack

of subject matter jurisdiction pursuant to Rule 60(b)(4), Rule 12(h)(3), and/or *sua sponte* via Rule

60(b)(6), and any other relief this Court deems proper.


Respectfully submitted,

/s/ Daniel E. Carpenter
Daniel E. Carpenter
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT 06092

## CERTIFICATION

I hereby certify that on this 11th day of December, 2020, a copy of the foregoing was served by FedEx to the Clerk of the Court. Notice of this filing was also sent by USPS to Attorneys Chernow, Manson, Caldwell & Markus.

By: */s/ Daniel E. Carpenter*
Daniel E. Carpenter
Petitioner, *pro se*

# EXHIBIT
# ONE

**Sharon Siebert Affidavit**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSSETTS

| | |
|---|---|
| UNIVERSITAS EDUCATION, LLC<br><br>Plaintiff,<br><br>v.<br><br>JACK E. ROBINSON, III a/k/a JACK E. ROBINSON,<br><br>Defendant. | Civil Action No.<br>1:15-CV-11848 (DPW) |

### AFFIDAVIT OF SHARON E. SIEBERT

SHARON E. SIEBERT, under penalty of perjury, declares and says as follows:

1.      My name is Sharon E. Siebert, and I am a founder and member of Universitas Education, LLC ("Universitas"). I have personal knowledge of the facts set forth herein.

2.      Universitas is a Delaware limited liability company, with its headquarters at 404 East 55th Street, Apartment 13A, New York, New York 10022.

3.      Universitas was previously the research and development arm of the now-defunct Destination Foundation Universitas ("Destination Universitas").

4.      Destination Universitas was a charitable foundation based in New York. Destination Universitas had its charitable designation administratively revoked because Universitas was unable to continue to fund it. Universitas's hardships were a direct result of the costly litigation efforts to enforce Universitas' judgment against the Charter Oak Trust and Nova Group.

5.      Universitas aims to develop and provide programs for leaders and educators around the world to support global philanthropic and humanitarian efforts.

6.      Universitas is operated by myself and my colleague, Donna Vassar.

7.      Ms. Vassar and I are Universitas' only members.

8.      In 2007, Universitas had negotiated for, and had prepared a letter of intent for the purchase of land for the development of a sanctuary on 69.59 acres in Lake Las Vegas, Nevada, for global leaders to gather and recharge during multi-day retreats.

9.      Universitas had discussed the purchase of the Lake Las Vegas property, solicited and selected a design proposal, completed a strategic development plan, and was in the process of finalizing proposals.

10.     One contributor to the project was Mr. Sash Spencer. Mr. Spencer chaired a private investment firm and was a financial partner to Universitas and Destination Universitas. Mr. Spencer died unexpectedly in June 2008. Prior to his death, he named Universitas the sole irrevocable beneficiary of two life insurance policies worth $30,000,000.

11.     Universitas has still not obtained the life insurance proceeds that Mr. Spencer endowed it.

12.     I received and reviewed the correspondence from Jack E. Robinson, Wayne Bursey, and others sent on behalf of the Charter Oak Trust ("COT") and its affiliates. I discussed these communications with Universitas' various representatives, including its attorney when appropriate.

13.     I initially believed that COT's accurately conveyed the provisions of the COT Declaration of Trust and would abide by the provisions thereof. I believed that the COT Declaration of Trust as amended in January 2007 included a provision within Section 6.01 that allowed COT to retain twenty percent of the death benefits of a participant who dies while participating in COT. However, I did not believe that the provision applied to Universitas'

2

circumstances because Mr. Spencer enrolled in COT prior to this alleged amendment, and COT never notified myself or anybody else about this alleged change in the Trust document.

14.     Universitas also undertook the arbitration against COT and its affiliates in good faith. Universitas relied upon Mr. Bursey's affidavit and Mr. Robinson's declaration asserting that COT had the assets to satisfy a judgement against it. Had I known that the proceeds from Mr. Spencer's life insurance proceeds had already been disbursed and spent on things such as a vacation home for Daniel Carpenter, Universitas would have altered its litigation strategy and would likely have sought civil remedies against Carpenter and his affiliates sooner. Universitas likewise would have adopted a much different litigation strategy had I known that the money in dispute had been improperly conveyed and used for criminal purposes. Instead, the misrepresentations and continuing bad faith by Robinson (before his death), Carpenter, and the rest of their affiliates have forced us to engage in protracted litigation that eventually contributed to the dissolution of Destination Universitas.

15.     The arbitration awarded Universitas a judgment against COT and its trustee, Nova Group, Inc. for $26,525,535.98.[1] Universitas' received this award on January 24, 2011, and the award remains largely unsatisfied.

16.     Universitas' effort to enforce its judgement has caused Universitas to become involved in numerous cases across the country. Attached as **Exhibit A** is a list of cases wherein Universitas has made filings concerning its award.

17.     The cost of this litigation has been high. To date, Universitas been billed for legal fees in excess of $10,000,000.

---

[1] This award was broadened during the subsequent litigation to confirm and enforce the award. The court provided Universitas with a money judgment on August 7, 2014. The money judgment is for $30,181,880.30, to account for interest on the unpaid judgment. The judgment is also enforceable against Daniel Carpenter and some of his companies, in addition to the original judgment debtors.

18.     The judgment debtors and their affiliates have been recalcitrant and obstructive. To date, Universitas has recovered only $4,703,621.64 of its $30,181,880.30 judgment.

19.     The judgment debtors' refusal to satisfy Universitas' judgment has caused Universitas hardship. Universitas has had difficulty paying the excessive legal fees accrued in trying to recover the proceeds from the Spencer policies, and this has led to disputes with former counsel regarding fees.

Dated: New York, New York   *West Palm Beach, Fla.*
September 6, 2019

Sharon E. Siebert

Sworn to me on this 6 day
of September, 2019

Notary Public

DARLENE A. BROWN
MY COMMISSION # GG 213385
EXPIRES: May 11, 2022
Bonded Thru Notary Public Underwriters

4

ORIGIN ID:EHTA   (860) 408-7000
JOSEPH CASTAGNO

35 TOWER LANE

AVON, CT 06001
UNITED STATES US

SHIP DATE: 11DEC20
ACTWGT: 1.00 LB
CAD: 5508595/INET4280

BILL SENDER

TO  HON. JUDGE LAURA T. SWAIN

DANIEL PATRICK MOYNIHAN

UNITED STATES COURTHOUSE

500 PEARL STREET

NEW YORK CITY NY 10007

(212) 805-0424          REF:
INV:
PO:                          DEPT:



FedEx
Express

MON - 14 DEC 4:30P

STANDARD OVERNIGHT

TRK#
0201   7723 4618 2538

10007

E3 PCTA          NY-US  EWR



2020 DEC 22  AM11:06

SDNY PRO SE OFFICE
RECEIVED