

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNIVERSITAS EDUCATION, LLC, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 11 CIVIL 1590 (LTS) (HPB) |
| | § | 11 CIVIL 8726 (LTS) (HPB) |
| NOVA GROUP, INC, | § | |
| Respondent. | § | |

## LETTER MOTION FOR THE COURT TO TAKE JUDICIAL NOTICE

TO THE HONORABLE JUDGE LAURA TAYLOR SWAIN, MAY IT PLEASE THE COURT:

NOW COMES the Petitioner, Daniel Carpenter, to ask this Honorable Court to take judicial notice of a letter from Attorney Manson on behalf of Universitas threatening a motion to strike that was delivered on my family's doorstep on Christmas Eve. This is especially surprising because they only seem to know where I live now but not during crucial junctures in this case six years ago. In this most recent letter, not only do Attorneys Manson and Chernow cite cases that don't stand for what they say they do, Attorney Manson also mistakenly believes that my reply filing was late because it was due December 14, was over the 10 page limit, and that the Attorneys in Connecticut did not receive service. All of these statements are incorrect and demonstrably false. See letter from Attorney Manson attached as Exhibit One.

First, as is evidenced from the Reply (Dkt. #672) on PACER, page 27 shows that the FedEx was sent December 11 and was received by the Court on December 14 and therefore was clearly timely filed. See FedEx attached as Exhibit Two. Also, as Your Honor's Clerks have been working remotely because of COVID, it doesn't really matter when the Reply was docketed as it was clearly received within the time limitations. Second, Your Honor's Clerks have been tremendously supportive of me in being a *pro se* defendant, and at no time have they ever criticized the length of any of my filings. Please see, for example, the opening brief for this case, which asked this

Court to review my June 19, 2014 113-page filing. At no time has anyone from Your Honor's office criticized the length of my briefs, which is greatly appreciated and should not be held against me. Please notice the case Attorneys Manson and Chernow cite to, *P&G Auditors & Consultants, LLC v. Mega Int'l Commer. Bank Co.*, 2019 U.S. Dist. LEXIS 169750 (S.D.N.Y. Sep. 30, 2019), where it says a court may decide to accept the brief even if it is untimely and over the page limit, which is what the court did in *P&G Auditors* at page 8. See Exhibit One pages 3-4. Attorney Manson does not even mention the fact that the Court in *P&G* upheld the filing in that case, despite the fact that it was untimely and over the page limit.

Third, there is no doubt that the Attorneys in Connecticut have received copies of the filings here as well as in front of Judge Meyer, because they have already responded to my petitions to have them disbarred and/or sanctioned, so it is very easy to review the filings in front of Judge Meyer that are based on Attorneys Manson and Chernow trying to circumvent the rulings of this Court based on *Peacock v. Thomas*, 516 U.S. 349 (1996). But, for the purposes of this motion, the only important thing to point out is that the Attorneys are incorrect because neither Caldwell nor Markus has filed an appearance in front of this Court, so there is no reason for me to copy them even though I have done so as a courtesy. They have not filed an appearance in this case, so they are not required to receive notice.

But, in the event that Attorney Manson and Chernow follow through with their frivolous and vexatious motion to strike, I will leave it up to Your Honor to decide whether to impose Rule 1927 sanctions against them. However, even if sanctions are appropriate, I do not wish to receive any of the money and would urge the Court to give the money to the ladies at Universitas because they are the ones being defrauded by the filing of these baseless and unwarranted motions that they continue to harass my family and friends with. Needless to say, Your Honor, I will not be honoring

2

Attorney Manson or Chernow with any phone calls, but would like the Court to issue an injunction so that they may never contact me or my family again. I have followed the rules of the Court, I have made a strong case with this Honorable Court that it lacked subject matter jurisdiction pursuant to *Peacock*, and certainly did not have personal jurisdiction over me in accordance with *Walden v. Fiore*, 571 U.S. 277 (2014).

That brings us to the most serious claim against Universitas and its Attorneys. In searching PACER, I happen to notice a case entitled *Universitas, individually and on behalf of the Charter Oak Trust v. TD Bank, N.A.*, 2015 WL 9304551 (S.D.N.Y. DEC. 21, 2015). I have included a copy of Judge Scheindlin's decision attached as Exhibit Three for the ease of this Court's perusal. In her decision, Judge Scheindlin makes an excellent case that any claim filed by Universitas after October 2012 would be time-barred by the Statute of Limitations that started to run in October 2009. Judge Scheindlin based her decision for the most part on an affidavit done by Sharon Seibert from March 2011 attached as Exhibit Four. The most important thing about Ms. Seibert's 2011 affidavit is that there is no mention of Daniel Carpenter or anyone "stealing" the Sash Spencer proceeds. To the contrary, Ms. Seibert gives a long description of all of the litigation and negotiations done by her Attorney Ivan Schinderman and Donna Vassar's insurance advisor Alex Sgoutas. That affidavit was submitted in this case originally, and was used by the Attorneys of TD Bank to make clear that action brought by Universitas on behalf of anyone was time-barred.

I just wanted this Court to take judicial notice of the fact that Universitas took it upon itself to bring an action against TD Bank, without notifying me because I was in prison or anyone else involved with the Charter Oak Trust, and they certainly did not give notice to Wayne Bursey who died in March 2015. Furthermore, they certainly did not have the permission of the Insurance Trustee of the Charter Oak Trust, Christiana Bank, who they were also suing in Connecticut.

3

Obviously there must have been a change in Ms. Seibert's point of view, because in 2011 she doesn't mention Mr. Carpenter being a thief and that it would be too costly to litigate in or travel to Connecticut. See Exhibit Four at paragraphs 14-15.

With this in mind, I respectfully ask this Court's permission to ignore discussing anything with Attorneys Manson or Chernow as they have been harassing my family for the past several years and I certainly have no desire to ever speak with them. Hopefully, since Your Honor said that you would be deciding this dispute over jurisdiction based on the papers, there will be no need for any further submissions in this case as Judge Scheindlin made a very cogent calculus as to why all of the Universitas claims have long since expired under the Statute of Limitations, and have no jurisdictional support. Therefore, since it is clear from Judge Scheindlin's decision that Universitas' claims are time-barred by the Statute of Limitations, and since they brought an action on the behalf of the Charter Oak Trust, that means the doctrines of *res judicata* and collateral estoppel certainly apply to the Clerk's Judgment. Therefore, any further filings or actions by Attorneys Manson and Chernow can only be to run up frivolous bills against their client Universitas. So, this Court should use its inherent authority to sanction them for their frivolous and vexatious actions and order any money left in their trust account to be turned over to the principals of Universitas immediately, in the interests of justice.

As for me, I would just like this Court to recognize that the initial action in 2014 was time-barred, lacked subject matter jurisdiction, and this Court certainly lacked personal jurisdiction over me as a defendant who had been dismissed from the underlying arbitration. That is all that this Petitioner is asking for, as well as any other relief this Court deems proper in the interests of justice.

4

Respectfully submitted,

<u>/s/ Daniel E. Carpenter</u>
Daniel E. Carpenter
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT 06092

## CERTIFICATION

I hereby certify that on this 28th day of December, 2020, a copy of the foregoing was served by FedEx to the Clerk of the Court. Notice of this filing was also sent by USPS to Attorneys Chernow and Manson.

By: /s/ *Daniel E. Carpenter*
    Daniel E. Carpenter
    Petitioner, *pro se*

# EXHIBIT
# ONE

**Threat of Motion to Strike by Attorney Manson citing**
***P&G Auditors & Consultants, LLC v. Mega Int'l Commer. Bank***
***Co.*, 2019 U.S. Dist. LEXIS 169750 (S.D.N.Y. Sep. 30, 2019)**

# Law Offices of Joseph L. Manson III

Joseph L. Manson III, Esq.
600 Cameron St.
Alexandria, VA 22314

December 23, 2020

VIA FEDERAL EXPRESS

Daniel Carpenter
18 Pond Side Lane
West Simsbury, CT 06092

>       Re:     *Universitas Education, LLC v. Nova Group, Inc.*, Case No. 11-1590-LTS and
>               consolidated Case No. 11-8726-LTS (S.D.N.Y.) – **Planned Motion to Strike**

Dear Mr. Carpenter,

As you know, we represent Universitas Education, LLC ("Universitas") in the post-judgment proceedings pending before Hon. Judge Swain in the Southern District of New York. Please note that we intend to move to strike your reply memorandum in support of your motion to vacate.

Your reply brief was due on December 14, 2020. (Docket entry no. 666.) Your reply is fatally late. This is grounds for striking the brief in its entirety. *See P&G Auditors & Consultants, LLC v. Mega Int'l Commer. Bank Co.*, No. 18-CV-9232 (JPO), 2019 U.S. Dist. LEXIS 169750, at *11 (S.D.N.Y. Sep. 30, 2019) (explaining that courts may strike untimely briefs in their entirety).

Your reply brief also exceeds the page limitations. Pursuant to Rule 2(h) of Hon. Judge Swain's Individual Rules, reply memoranda are limited to ten pages. Your reply is nineteen pages. Your decision to exceed the court's length requirements is also grounds for striking the brief in its entirety. *See P&G Auditors & Consultants*, 2019 U.S. Dist. LEXIS 169750 at *11 (explaining that courts may strike briefs that exceed the court's length requirements).

In accordance with Local Civil Rule 7.2, we have provided you with a copy of the case cited in this letter. Please note that Judge Swain's Individual Practice Rule requires that you provide us with a letter overviewing your position on the proposed motion to strike, and that we have a telephonic discussion on the motion. Accordingly, please let us know your availability for a telephonic discussion to discuss our proposed motion to strike. It is our hope that you will comply with Judge Swain's Individual Practice Rule and discuss this motion with us in good faith. However, please note that we will move the court to strike your reply memorandum if we do not hear from you.

Nothing in the foregoing constitutes a waiver of any right or remedy that Universitas has, all of which are reserved.

Sincerely,

/s/ Joseph L. Manson III
Joseph L. Manson III
Law Offices of Joseph L. Manson III
600 Cameron Street
Alexandria, VA 22314
Telephone: 202-674-1450
Email: jmanson@jmansonlaw.com

enclosures

🄰 Neutral
As of: December 22, 2020 6:07 PM Z

## *P&G Auditors & Consultants, LLC v. Mega Int'l Commer. Bank Co.*

United States District Court for the Southern District of New York

September 30, 2019, Decided; September 30, 2019, Filed

18-CV-9232 (JPO)

**Reporter**
2019 U.S. Dist. LEXIS 169750 \*; 2019 WL 4805862

P&G AUDITORS AND CONSULTANTS, LLC, d/b/a P&G Associates, Plaintiff, -v- MEGA INTERNATIONAL COMMERCIAL BANK CO., LTD., Defendant.

**Subsequent History:** Dismissed by, Without prejudice, Motion denied by, As moot, Without prejudice *P&G Auditors & Consultants, LLC v. Mega Int'l Commer. Bank Co., 2020 U.S. Dist. LEXIS 213831 (S.D.N.Y., Nov. 16, 2020)*

## Core Terms

motion to dismiss, allegations, terminate, communicated, definite statement, breach of contract claim, Engagement, tortious interference, good faith, defamation, covenant, breach of contract, reply brief, auditing, exhibits, damages, notice, unjust enrichment, additional hour, fair dealing, budgeted, parties, motion to *strike*, fraud claim, misrepresentation, implied-covenant, duplicative, promissory, customize, deadline

**Counsel:** [\*1] For P&G Auditors and Consultants, LLC, d/b/a P&G Associates, Plaintiff: Paul S. Grossman, Friedman & Wittenstein, A Professional Corporation, New York, NY; Clark Evan Alpert, Alpert Goldberg Butler Norton & Peach, P.C, West Orange, NJ.

For Mega International Commercial Bank Co., Ltd., Defendant: Stewart W. Lee, LEAD ATTORNEY, Gottesman, Wolgel, Secunda, New York, NY.

**Judges:** J. PAUL OETKEN, United States District Judge.

**Opinion by:** J. PAUL OETKEN

## Opinion

### OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff P&G Auditors and Consultants, LLC ("P&G") brings this action against Defendant Mega International Commercial Bank, Co., Ltd. ("Mega"), in connection with auditing work P&G performed for Mega beginning in 2016. Invoking this Court's diversity jurisdiction, P&G asserts claims for breach of contract, unjust enrichment, quantum meruit, promissory estoppel, breach of the implied covenant of good faith and fair dealing, breach of confidentiality, fraud, tortious interference with contract, tortious interference with pecuniary advantage, defamation, and misappropriation of trade secrets. Mega moves to dismiss most of the complaint for failure to state a claim under *Federal Rule of Civil Procedure 12(b)(6)*, or, in the alternative, for a more definite statement [\*2] pursuant to *Rule 12(e)*. P&G moves to *strike* certain of Mega's filings. For the reasons that follow, the motion to dismiss is granted in part and denied in part, the motion for a more definite statement is denied, and the motions to *strike* are denied as moot.

### I. Background

client of P&G. (Compl. ¶ 29.) Shortly thereafter, P&G was informed by Hua Nan Bank that it was being replaced on that engagement. (Id.)

## B. Procedural History

P&G filed the complaint on October 9, 2018, asserting eleven causes of action. (See Compl. ¶¶ 32-93.) The motions to dismiss and for a more definite statement — which attack only some of the asserted claims — followed on February 26, 2019. (See Dkt. No. 18.)

## C. Legal Standard

### 1. Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))*. A court assessing such a motion must "accept[ ] as true the factual allegations in the complaint and draw[ ] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006)* (quoting *Scutti Enters., LLC v. Park Place Entm't Corp., 322 F.3d 211, 214 (2d Cir. 2003))*. In considering a motion to dismiss for failure to state a claim under *Rule 12(b)(6)*, a court may "look[ ] only to the complaint; documents that are attached as exhibits to, incorporated by reference, or integral to the complaint; and [*7] matters of which judicial notice may be taken." *Rhee-Karn v. Burnett, No. 13 Civ. 6132, 2014 U.S. Dist. LEXIS 128199, 2014 WL 4494126, at *3 (S.D.N.Y. Sept. 12, 2014)*. "On a motion to dismiss for breach of contract, courts look . . . at the contract itself, which by definition is integral to the complaint." *Axiom Inv. Advisors, LLC by & through Gildor Mgmt., LLC v. Deutsche Bank AG, 234 F. Supp. 3d 526, 533 (S.D.N.Y. 2017)*.

*Rule 9(b)* creates a heightened pleading standard for claims alleging fraud or mistake, requiring that the party alleging fraud "state with particularity the circumstances constituting fraud." *Fed. R. Civ. P. 9(b)*. To survive a motion to dismiss on such a claim, the party alleging fraud must "(1) specify the statements that [it] contends were fraudulent, (2) identify the speaker, (3) state where

and when the statements were made, and (4) explain why the statements were fraudulent." *U.S. ex rel. Kester v. Novartis Pharm. Corp., 23 F. Supp. 3d 242, 251-52 (S.D.N.Y. 2014)* (quoting *Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004))*.

### 2. Motion for a More Definite Statement

*Federal Rule of Civil Procedure 12(e)* allows a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." *Fed. R. Civ. P. 12(e)*. A *Rule 12(e)* motion is appropriate in narrow circumstances, namely, where a pleading is "sufficiently intelligible for the district court to make out one or more potentially viable legal theories on which the claimant might proceed" — thus precluding dismissal under *Rule 12(b)(6)* — but [*8] where the pleading is "so vague or ambiguous that the opposing party cannot respond to it . . . with a pleading that can be interposed in good faith or without prejudice to himself." *Pelman ex rel. Pelman v. McDonald's Corp., 396 F. Supp. 2d 439, 443 (S.D.N.Y.2005)* (quoting 5C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1376 (3d ed. 2004)). *Rule 12(e)* "is designed to remedy unintelligible pleadings, not to correct for lack of detail." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 233 F.R.D. 133, 134 (S.D.N.Y.2005)* (quoting *Dunlop McCullen v. Local 1-SRWDSU—AFL—CIO, No. 94 Civ. 1254, 1994 U.S. Dist. LEXIS 12245, 1994 WL 478495, at *1 (S.D.N.Y. Sept. 1, 1994))* (internal quotation marks omitted). The party seeking the more definite statement is required to point out the flaws in the pleading and the details sought. See *Fed. R. Civ. P. 12(e)*.

## II. Discussion

### A. Motions to *Strike*

At the outset, several ancillary matters require resolution. P&G argues that most of the materials attached to Mega's motion to dismiss — which include, *inter alia*, various written communications between the parties and the termination notice (see Dkt. No. 19) — cannot be considered at the motion to dismiss stage and thus should be *struck*. (Dkt. No. 22 at 6-7.) (P&G concedes that the Agreement itself, also included in these exhibits, is integral to the complaint and thus can

be considered on the motion to dismiss, even though P&G did not attach **[*9]** the document to its submissions. (See Dkt. No. 22 at 9 n.3); see also DeSouza v. Andy Frain Servs., Inc., No. 12 Civ. 1308, 2012 U.S. Dist. LEXIS 110345, 2012 WL 3245496, at *2 (S.D.N.Y. Aug. 6, 2012).)

Whether the Court considers these documents, however, is an entirely academic question, because the arguments raised by Mega in its opening brief in support of its motion to dismiss are purely legal arguments that are unaffected by the contents of the exhibits. See Dkt. No. 21 at 11-16 (arguing that the complaint fails to allege a breach of contract); id. at 17-20 (arguing that the breach of implied covenant of good faith, promissory estoppel, quantum meruit, and unjust enrichment claims are duplicative of or precluded by the contract claims); id. at 20-23 (arguing that the complaint fails to allege a defamation claim); id. at 23-24 (arguing that the complaint fails to state a claim for fraud); id. at 23 (arguing that the complaint fails to state a claim for tortious interference). To the extent the arguments raised only in the reply brief rely on the attached exhibits, "a court should not consider arguments that are raised for the first time in a reply brief." Aviva Trucking Special Lines v. Ashe, No. 18 Civ. 11180, 400 F. Supp. 3d 76, 2019 U.S. Dist. LEXIS 157405, 2019 WL 4387339, at *4 (S.D.N.Y. Sept. 13, 2019) (citation omitted). The Court's resolution of this motion to dismiss is unaffected by the presence or lack thereof of the exhibits. Accordingly, the Court denies as moot the request to **strike** these **[*10]** attachments.

Next, P&G urges the court to **strike** Mega's reply brief. (See Dkt. No. 28.) The brief was both untimely and overlength. (See id.; see also Dkt. No. 26.) Moreover, Mega's delinquency followed several missed deadlines and extensions and an admonition by this Court that "[n]o further extensions of [the] deadline [would] be granted absent a showing of extraordinary circumstances." (Dkt. No. 26.) In response, Mega argues that the delay has caused P&G no prejudice and moves for an extension of the deadline and leave to file a brief in excess of the Court's **page limits** nunc pro tunc. (See Dkt. No. 29.)

"[D]istrict courts may grant extensions of time in purely procedural matters like these upon a showing of 'excusable neglect.'" LoSacco v. City of Middletown, 71 F.3d 88, 93 (2d Cir. 1995) (quoting Fed. R. Civ. P. 6(b)(2)). "'[E]xcusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of [the] movant." Id. (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs., 507 U.S. 380, 392, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)). Thus, a court may extend a lapsed deadline in purely procedural matters, "at least when the delay was not long, there is no bad faith, there is no prejudice to the opposing party, and movant's excuse has some merit." Id.

Here, there has been no suggestion of bad faith **[*11]** and there is no discernible prejudice to P&G. See Minitti v. Speiser, Krause, Nolan & Granito, P.C., No. 04 Civ. 7976, 2006 U.S. Dist. LEXIS 91986, 2006 WL 3740847, at *11 n.6 (S.D.N.Y. Dec. 19, 2006) (Chin, J.) ("[I]t is unclear why any [prejudice] would result from the late filing of reply papers to which [the opposing party] had no right of rejoinder."). Yet the delay was substantial (one week), and Mega's justifications for these lapses are thin. In the main, they consist of vague allusions to a busy work schedule and the burdens of juggling personal and professional obligations. (See Dkt. No. 29 at 2.) They are thus not perceptibly different than the everyday demands most lawyers face, most of the time. It would therefore be within the Court's discretion to **strike** the brief in its entirety as untimely, or to **strike** the overlength pages of the brief for exceeding the court's length requirements. But, again, to do so would be a purely academic exercise. The arguments in Mega's reply brief are (a) aired fully by the opening brief, (b) related to the moot issue just addressed regarding the motion to **strike** the exhibits, or (c) new to the reply brief and therefore not properly considered by the Court. Because the brief is therefore immaterial to the determination of the pending motions, the motion to **strike** the reply brief is also **[*12]** denied as moot and the motions to extend the deadline and for leave to file an overlength brief nunc pro tunc are granted.

## B. Motion to Dismiss

### 1. Breach of Contract

On the merits, Mega begins by arguing that P&G fails to state a claim for breach of contract with respect to the First Period. "Under New York law, the elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages. . . . Stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract." Berman v. Sugo LLC, 580 F. Supp. 2d 191,

statement of fact concerning [it]; 2) publication to a third party; 3) fault . . . ; 4) falsity of the defamatory statement; and 5) special damages or *per se* actionability." *Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163, 176 (2d Cir. 2000)*. A statement is defamatory *per se* if it "tend[s] to injure [the plaintiff] in his or her trade, business or profession." *Stern v. Cosby, 645 F. Supp. 2d 258, 273 (S.D.N.Y. 2009)* (Chin, J.) (quoting *Liberman v. Gelstein, 80 N.Y.2d 429, 435, 605 N.E.2d 344, 590 N.Y.S.2d 857 (1992))*.

Mega does not challenge P&G's allegations as deficient with respect to any particular element of the claim, but rather argues more generally that "[a] defamation claim is only sufficient if it adequately identifies the purported communications, and an indication of who made the communication, when it was made, and to whom it was communicated." **[*23]** (Dkt. No. 21 at 20 (quoting *Biro v. Condé Nast, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012)*.) P&G, Mega complains, has therefore failed to articulate its complaint with the requisite specificity. Again, however, the allegations with respect to Hua Nan are sufficiently detailed to withstand the motion to dismiss. Though not alleging the very hour or minute that the communications were made, nor the particular employees involved, the allegations regarding the dates, corporate entities, and contents of the communications "afford defendant sufficient notice of the communications complained of to enable [it] to defend [it]self." *Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986)*.

Mega also urges the Court to dismiss the defamation claim because Navigant, rather than Mega, originated the allegedly libelous statements. (*See* Dkt. No. 21 at 22.) But under longstanding principles of New York law, "where words are spoken to one person and he repeats them to another, in consequence of which the party of whom they are spoken sustains damages, the repetition is, as a general rule, a wrongful act, rendering the person repeating them liable in like manner as if he alone had uttered them." *Terwilliger v. Wands, 17 N.Y. 54, 57 (1858)*; *see also Biro, 883 F. Supp. 2d at 461* ("[T]he Second Circuit has expressly embraced the 'widely recognized' rule that 'one who republishes a libel is **[*24]** subject to liability just as if he had published it originally." (quoting *Cianci v. New Times Pub. Co., 639 F.2d 54, 60-61 (2d Cir.1980))*. That the allegedly defamatory statements originated with Navigant, then, does not negate Mega's liability for their alleged repetition.

## C. Motion for a More Definite Statement

Finally, the Court denies Mega's motion for a more definite statement in its entirety. *Rule 12(e)* requires that a movant "point out the defects complained of and the details desired." *Fed. R. Civ. P. 12(e)*. Mega provides no argument in support of its motion whatsoever, instead simply appending the request for a more definite statement to its briefing otherwise entirely oriented toward defending its *Rule 12(b)(6)* motion. Accordingly, Mega has not carried its burden under *Rule 12(e)*, and the motion is denied.

## III. Conclusion

For the foregoing reasons, Mega's motion to dismiss is GRANTED in part and DENIED in part. Its motion for a more definite statement is DENIED. P&G's motions to **strike** Mega's exhibits and reply briefs are DENIED. Mega shall file an answer to the remaining claims on or before October 21, 2019.

The Clerk of Court is directed to close the motions at Docket Number 18.

SO ORDERED.

Dated: September 30, 2019

New York, New York

/s/ J. Paul Oetken

J. PAUL OETKEN

United States District Judge **[*25]**

End of Document

# EXHIBIT
# TWO

**FedEx Label Showing Delivery of December 14, 2020**



RECEIVED
SDNY PRO SE OFFICE

# IN THE UNITED STATES DISTRICT COURT~~~~ DEC 22 AH II: 05
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| UNIVERSITAS EDUCATION, LLC, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 11 CIVIL 1590 (LTS) (HPB) |
| | § | 11 CIVIL 8726 (LTS) (HPB) |
| NOVA GROUP, INC, | § | |
| Respondent. | § | |

## REPLY IN SUPPORT OF MOTION TO VACATE
## TURNOVER JUDGMENT PURSUANT TO RULE 60(b)(4)

Daniel E. Carpenter
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT 06092

ORIGIN ID:EHTA     (860) 408-7000
JOSEPH CASTAGNO

35 TOWER LANE

AVON, CT 06001
UNITED STATES US

SHIP DATE: 11DEC20
ACTWGT: 1.00 LB
CAD: 5508595/INET4280

BILL SENDER

TO  HON. JUDGE LAURA T. SWAIN
    DANIEL PATRICK MOYNIHAN
    UNITED STATES COURTHOUSE
    500 PEARL STREET
    NEW YORK CITY NY 10007
(212) 805-0424          REF:
NV:
PO:                    DEPT:




**FedEx**
Express

MON - 14 DEC 4:30P
STANDARD OVERNIGHT

TRK#  7723 4618 2538
0201



10007
NY-US  EWR

E3 PCTA



2020 DEC 22  AM 11: 06

SDNY PRO SE OFFICE
RECEIVED

# EXHIBIT THREE

**Judge Scheindlin's Order in**

*Universitas Education, LLC, individually and on behalf of the Charter Oak Trust v. TD Bank, N.A., 2015 WL 9304551 (S.D.N.Y. Dec. 21, 2015)*

2015 WL 9304551
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

## UNIVERSITAS EDUCATION, LLC, Plaintiff,

v.

## T.D. BANK, N.A., Defendant.

15-cv-5643 (SAS)
|
Signed 12/21/2015

**Attorneys and Law Firms**

Annie E. Causey, Esq., Napoli Shkolnik PLLC, 1301 Avenue of The Americas, New York, NY 10019, (212) 397-1000, Marie E. Napoli, Esq., Napoli Law, PLLC, 1301 Avenue of The Americas, New York, NY 10019, (212) 397-1000, Paul J. Napoli, Esq., Napoli Bern Ripka & Associates, 350 Fifth Avenue, New York, NY 10118, (212) 267-3700, for Plaintiff.

Jeffrey J. Chapman, Esq., Aaron F. Jaroff, Esq., McGuire Woods LLP, 1345 Avenue of the Americas, 7th Floor, New York, NY 10105, (212) 548-7060, for Defendant.

## MEMORANDUM OPINION AND ORDER

SHIRA A. SCHEINDLIN U.S.D.J.

\*1 Plaintiff Universitas Education, LLC ("Universitas") brings this diversity action against defendant T.D. Bank alleging the aiding and abetting of conversion and related claims stemming from the alleged misappropriation of certain assets by a non-party actor, using T.D. Bank as its financial institution. Defendant moves to dismiss, arguing that plaintiff's claims are time-barred. For the following reasons, defendant's motion is GRANTED.

## I. BACKGROUND[1]

On May 15, 2009, the Lincoln National Life Insurance Company issued two checks to the Charter Oak Trust totaling $30,677,276.85, representing the life insurance proceeds for two life insurance policies issued on the life of Mr. Sash Spencer.[2] Mr. Spencer, now deceased, named Universitas as the sole beneficiary of the Charter Oak Trust.[3] Nova Group, Inc. served as the trustee.[4]

Contemporaneous with the Charter Oak Trust's receipt of the life insurance proceeds, Nova Group sought to open a new bank account for the Trust.[5] It applied for this account with at least three major banking institutions, and was declined by at least Bank of America due to Nova Group's failure to satisfy certain due diligence protocols.[6] T.D. Bank accepted Nova Group's application, and opened an account for Charter Oak Trust on May 12, 2009.[7]

On May 20 and May 21, 2009, T.D. Bank accepted applications for and opened business checking accounts for Nova Group and several related entities.[8] From May 21, 2009 to October 27, 2009, Nova Group transferred Charter Oak Trust proceeds to and

between its business checking accounts, and directly withdrew \$19.8 million from the Charter Oak Trust account.[9] Universitas was aware that Nova Group did not intend to remit the Charter Oak Trust's proceeds to it by October 2009.[10]

Plaintiff filed a demand for arbitration against the Nova Group on June 17, 2010.[11] The arbitrator awarded plaintiff damages in the amount of \$26,558,308.26 plus interest on January 24, 2011.[12] The award was confirmed on June 5, 2012.[13] In the meantime, T.D. Bank closed all accounts associated with Nova Group, which has yet to pay any of the arbitration award to plaintiff.[14] On July 17, 2015, plaintiff brought this action against T.D. Bank accusing it of aiding and abetting in this conversion, and bringing several related claims.

## II. LEGAL STANDARD

*2 In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept[ ] all factual allegations in the complaint as true and draw[ ] all reasonable inferences in the plaintiff's favor."[15] The court evaluates the sufficiency of the complaint under the "two-pronged approach" set forth by the Supreme Court in *Ashcroft v. Iqbal*.[16] Under the first prong, a court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[17] For example, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[18] Under the second prong of *Iqbal*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[19] A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20] Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[21]

When deciding a 12(b)(6) motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[22] " '[I]t is 'axiomatic that the Complaint cannot be amended by briefs in opposition to a motion to dismiss.' "[23]

## III. DISCUSSION

When sitting in diversity, a federal court applies New York's statutes of limitations to state law claims.[24] Under New York law, causes of action accrue at the time and in the place of the injury.[25] Applying these principles to the instant case, each of plaintiff's causes of action is time-barred, and must be dismissed.

### A. Aiding and Abetting Conversion Claim

Allegations for conversion, and aiding and abetting of conversion, are subject to a three-year statute of limitations.[26] A conversion occurs when one exercises unauthorized dominion over the property of another to the exclusion of the rights of the lawful owner.[27] Here, the alleged conversion took place no later than October 2009, when Nova Group formally refused to remit the proceeds of the Charter Oak Trust to plaintiff.[28] Thus, plaintiff's conversion claim was time-barred as of October 2012.

### B. Fraud Claims

Claims for fraud and the aiding and abetting of fraud are normally governed by New York's six-year statute of limitations.[29] However, a "[c]ourt will not apply the six-year statute of limitations if the claim of fraud is merely incidental to another claim with a shorter limitations period."[30] To determine whether a fraud claim is "merely incidental" to other claims in an action, courts examine the "gravamen," or basic essence, of a plaintiff's claims.[31] In order to not be "merely incidental," a fraud claim

must be distinct from a plaintiff's other claims — it must be a claim in its own right, and not merely recast the same facts as other claims in order to obtain the benefit of the longer limitations period.[32]

**\*3** The gravamen of plaintiff's fraud claims are that Nova Group converted Charter Oak Trust funds meant for Universitas, and that defendant — by opening accounts and approving transfers between them — aided and abetted in that conversion. The facts underlying the fraud and conversion claims are the same. The injuries are the same. The relief sought is identical. Both the fraud and the aiding and abetting fraud claims are identical, for all intents and purposes, to the aiding and abetting conversion claim, and are merely incidental thereto. "Time barred claims cannot be revitalized by tricks of pleading";[33] the six-year statute of limitations does not apply to plaintiff's claim of aiding and abetting fraud. Plaintiff's claims for fraud and aiding and abetting fraud are subject to the three-year statute of limitations governing plaintiff's conversion claim, and are time-barred.

### C. Fiduciary Duty Claims

New York does not prescribe a statute of limitations for claims based on the breach of a fiduciary duty, and instead determines the applicable limitations period based on the substantive remedy sought.[34] Where a plaintiff seeks only money damages — as is the case here — a three-year statute of limitations applies.[35] For the same reasons described above, plaintiff's claims accrued in October 2009, and were time-barred as of October 2012.

### D. Unjust Enrichment Claim

Claims for unjust enrichment are generally governed by a six-year statute of limitations.[36] However, as with claims for fraud and breach of a fiduciary duty, if an unjust enrichment claim is merely incidental to a claim governed by a shorter statute of limitations, "the Court will not allow a plaintiff to avail himself of a longer limitations period."[37] Here, plaintiff's unjust enrichment claim recites the same facts and circumstances as its conversion claim, and is just as incidental to the conversion claim as the fraud claims. The three-year statute of limitations therefore applies, and plaintiff's claim was time-barred as of October 2012.

### E. Negligence Claims

New York applies a three-year statute of limitations to all negligence claims, including claims for negligent hiring and negligent supervision.[38] As with conversion claims, the limitations period begins to run at the time and place of injury, "even though the injured party may be ignorant of the existence of the wrong or injury."[39] The injury alleged in support of the negligence claims is the same injury as alleged for the conversion claim and claims incidental to the conversion. Plaintiff's negligence claims were therefore time-barred as of October 2012.

### F. Racketeer Influenced and Corrupt Organizations Act ("RICO") Claim

Civil RICO claims are subject to a four-year statute of limitations.[40] The four-year limitations period begins to run "upon the discovery of the injury alone."[41] As with all of plaintiff's claims, the only injury alleged in plaintiff's civil RICO claim is the conversion of the Charter Oak Trust funds, of which plaintiff had actual notice in October 2009 when Nova Group formally denied plaintiff's claim to the trust funds. Plaintiff's civil RICO claim was therefore time-barred as of October 2013.

### IV. CONCLUSION

**\*4** For the foregoing reasons, defendant's motion is GRANTED. The Clerk of the Court is directed to close this motion (Dkt. No. 12) and this case.

SO ORDERED.

# EXHIBIT FOUR

**Sharon Siebert's Affidavit**
**March 24, 2011**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

UNIVERSITAS EDUCATION, LLC,

                Petitioner,            :

         -against-              :    **CASE NO: 11 CV 01590-LTS-HBP**

NOVA GROUP, INC., AS TRUSTEE, NAMED  :    **AFFIDAVIT OF**
FIDUCIARY, PLAN SPONSOR AND               **SHARON SIEBERT**
ADMINISTRATOR OF THE CHARTER OAK  :
TRUST WELFARE BENEFIT PLAN,

               Respondent.
-------------------------------------------------------------------X

STATE OF FLORIDA      )
                     )    SS.
COUNTY OF PALM BEACH )

      I, Sharon Siebert, being duly sworn, state:

      1.      I am a member of Universitas Education, LLC ("Universitas"), a limited

liability company organized to provide research and support for a related non-profit

charity organization, Destination Universitas Foundation (the "Foundation"). The

Foundation is a charitable foundation dedicated to providing a center for the spiritual and

physical healing of world leaders.   I have personal knowledge of all of the following

facts.

      2.      Universitas is a Delaware limited liability company with its principal place

of business in New York, NY. Universitas has two members, myself and Donna Vassar,

and both of us reside and are domiciled in New York, NY.

3. Universitas docs not maintain any offices in Connecticut, nor does it transact any business in Connecticut. In addition, Universitas has no employees in Connecticut or elsewhere.

4. Universitas does not own nor rent any property in Connecticut, nor does it maintain a bank account in Connecticut.

5. Universitas derives no revenue from business dealings within Connecticut, nor does it advertise in Connecticut.

6. In fact, the only contact Universitas has ever had with Connecticut was as a direct result of Nova Group, Inc.'s ("Nova Group") wrongful withholding of certain trust benefits owed to Universitas as the sole, irrevocable beneficiary of Sash Spencer.

7. Mr. Spencer was a long time supporter of the Foundation's work and accordingly named Universitas as the sole, irrevocable beneficiary of the Charter Oak Trust Welfare Benefit Plan (the "Plan"), so that upon his death, Universitas would receive approximately $30 million (the result of two insurance policies on Mr. Spencer's life placed in the Plan), less certain expenses to which Mr. Spencer and the Plan representatives agreed.

8. Mr. Spencer died in June 2008, and in May 2009, the Plan received approximately $30 million in life insurance proceeds. However, the Plan failed and refused to pay over the monies owed to Universitas as the sole, irrevocable beneficiary. Instead, the Plan claimed that it was entitled to keep Universitas' monies for its own purposes.

9.    When the Plan failed to pay over the Plan benefits to Universitas, Universitas necessarily had a representative reach out to the Plan to find out why it was not paying over the monies as Mr. Spencer had directed it to do.

10.    First, this representative was Universitas' New York-based lawyer Ivan Schinderman, Esq.  Because Mr. Schinderman unfortunately passed away before the parties could resolve the dispute and Universitas had not yet obtained new counsel, an informal business advisor of Universitas, Alex Sgoutas, met twice in Connecticut during the summer of 2009 with Plan representative Donald Trudeau to discuss payment to Universitas.  Nothing ever came of these settlement meetings.  Nova Group and its affiliates have still not paid any of the monies to Universitas, despite an arbitration award in Universitas' favor.

11.    Mr. Sgoutas, a personal acquaintance of Universitas member Donna Vassar for more than 20 years, made these communications to the Plan as a favor and without any payment by Universitas.

12.    At the Plan's request, in July 2009, I submitted a form for benefits on behalf of Universitas to the Plan, which the Plan stated I must do or Universitas would forfeit the entire $30 million.

13.    Universitas received notice on January 25, 2011 from the American Arbitration Association that it had won an arbitration award against Nova Group in the amount of $26,525,535.98.  On February 8, 2011, Universitas first learned that Nova Group had filed an action in Connecticut Superior Court to vacate the arbitration award.

14.    Connecticut is not a convenient forum for Universitas, owing in part to Nova Group's refusal for almost two (2) years to pay the required death benefits to Universitas.  At the arbitration's outset, Universitas applied for and received from the American Arbitration Association (AAA) a deferral of its share of the arbitration fees.  In order to obtain this deferral, Universitas needed to document and establish its limited financial means to the AAA, which it did.

15.    Universitas is not in a financial position to pay for a protracted legal battle in Connecticut (which requires the additional costs of local counsel), especially while continuing to incur legal fees in the ongoing Phase Two arbitration in New York.

_____
SHARON SIEBERT

Sworn to before me this
24th day of March, 2011

_____
Notary Public
Signature only

JULISSA HERNANDEZ
Notary Public - State of Florida
My Commission Expires Apr 10, 2011
Commission # DD 658489
Bonded Through National Notary Assn.

NY2890878.1