UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNIVERSITAS EDUCATION, LLC,

                    Plaintiff,

v.

NOVA GROUP, INC., et al.,

                    Defendants.

Case Nos. 11-1590-LTS and
11-8726-LTS

**<ins>PETITIONER'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS AGAINST DANIEL CARPENTER PURSUANT TO FED. R. CIV. P. 11</ins>**

## TABLE OF CONTENTS

I.     **INTRODUCTION**..................................................................................................1

II.    **FACTUAL BACKGROUND**...............................................................................2

    a.  **The Underlying Arbitration**.....................................................................2

    b.  **The Cross-Motion for Vacatur**...............................................................2

    c.  **The Motion for Reconsideration**.............................................................3

    d.  **Additional Sanctions Against Nova**........................................................3

    e.  **The Turnover Proceedings**.......................................................................4

        i.   Carpenter's Opposition Filings.......................................................5

        ii.  Carpenter Controlled Entities' Opposition Filings........................5

        iii. The Court's Rulings.......................................................................6

            1.  The Preliminary Injunction...................................................6

            2.  The Second Turnover Motion...............................................6

            3.  Entry of Judgment Against the Turnover Respondents.....................6

        iv.  The Motion for Reconsideration.....................................................7

    f.  **The Motion to Vacate**...............................................................................7

    g.  **Attorneys' Fees**........................................................................................7

III.   **LEGAL STANDARD**..............................................................................................8

    a.  **Rule 11**.......................................................................................................8

        i.   Rule 11(b)(2) ...................................................................................8

        ii.  Rule 11(b)(3) ...................................................................................8

        iii. Relevant Factors..............................................................................9

    b.  **Injunctive Sanctions**................................................................................9

        i.  Standard.................................................................................................10

        ii.  Relevant Factors....................................................................................10

        iii.  Types of Injunctive Sanctions................................................................11

IV.    **ARGUMENTS**...................................................................................................11

    a.  **Carpenter's Argument Concerning Fed. R. Civ. P. 58 Violates
        Rule 11(b)(3)**....................................................................................11

    b.  **All of Carpenter's Arguments Violate Rule 11(b)(2)**.........................12

        i.  The Rule 58 Argument Relies Entirely Upon Outdated Caselaw................12

        ii.  Every Other Argument is Barred by Res Judicata and/or
            Collateral Estoppel...............................................................................13

    c.  **The Court Should Sanction Carpenter**............................................13

        i.  The Motion to Vacate is Objectively Unreasonable and in Bad Faith.........14

            1.  Substantive Bad Faith.......................................................................15

            2.  Procedural Bad Faith.........................................................................15

        ii.  Sanctions Are Warranted Under Rule 11..................................................16

            1.  Carpenter's Improper Conduct was Willful...................................16

            2.  Carpenter's Improper Conduct is Part of a Pattern.........................16

            3.  Carpenter's Improper Conduct Infected the Entire Motion
                to Vacate........................................................................................17

            4.  Carpenter has Engaged in Similar Conduct in Other Litigation......17

            5.  Carpenter's Improper Conduct is Intended to Injure Universitas....17

            6.  Carpenter Negatively Affected the Litigation Process....................18

            7.  Carpenter is Trained in the Law......................................................18

            8.  Carpenter Will Not Be Deterred by Monetary Sanctions................19

         iii.  Injunctive Sanctions are Necessary.........................................................19

1.  Carpenter has a History of Vexatious, Harassing,
    and Duplicative Litigation...............................................................20

2.  The Motion to Vacate was Filed in Bad Faith.................................21

3.  Carpenter is a Sophisticated *Pro Se* Litigant with Counsel
    Making Identical Arguments on his Behalf in Other Matters..........22

4.  Carpenter Has Caused Needless Expense to Universitas
    and Unnecessarily Burdened this Court.........................................23

5.  Other Sanctions Would Not Adequately Protect Universitas
    and/or the Court............................................................................23

V.   **CONCLUSION**........................................................................................25

# <u>TABLE OF AUTHORITY</u>

**Cases:**

*Allen v. Stark State Coll.*, No. 5:17CV02706,
 2019 U.S. Dist. LEXIS 125004 (N.D. Ohio July 26, 2019)..........................15, 16

*Cahaly v. Benistar Prop. Exch. Tr. Co.*, 451 Mass. 343 (2008).......................18

*Carpenter v. Baltazar*, No. 3:16-cv-2327,
 2018 U.S. Dist. LEXIS 11628 (M.D. Pa. Jan. 24, 2018)...............................17, 22

*Colida v. Nokia Inc.*, 2008 U.S. Dist. LEXIS 129521 (S.D.N.Y. May 6, 2008).................8, 19, 22

*Cooper v. Town of E. Hampton*, 83 F.3d 31 (2d Cir. 1996)...........................11

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)...............................8

*Durant v. Traditional Invest., Ltd.*, 135 F.R.D. 42 (S.D.N.Y. 1991)........................19, 22

*Eliahu v. Jewish Agency for Israel*, 919 F.3d 709 (2d Cir. 2019)...........................21, 22

*Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264 (6th Cir. 1998)........................9

*Galin v. Hamada*, 283 F. Supp. 3d 189 (S.D.N.Y. 2017)..........................12, 14

*In re Hartford Textile Corp.*, 681 F.2d 895 (2d Cir. 1982).................................11, 14, 19

*In re Martin-Trigona*, 737 F.2d 1254 (2d Cir. 1984)....................................9

*In re Martin-Trigona*, 9 F.3d 226 (2d Cir. 1993)....................................10, 11

*In re Pennie & Edmonds LLP*, 323 F.3d 86 (2d Cir. 2003).........................8, 11

*Israel v. Carpenter*, Case No. 95-civ.-2703 (DAB)(JCF),
 2001 U.S. Dist. LEXIS 15571 (S.D.N.Y. Oct. 1, 2001)....................................17

*Jeffers v. City of N.Y.*, No. 14-cv-5659 (BMC),
 2014 U.S. Dist. LEXIS 164818 (E.D.N.Y. Nov. 25, 2014)...............................22

*Jones v. City of Buffalo*, 96-CV-0739E(F),
 1998 U.S. Dist. LEXIS 6070 (W.D.N.Y. Apr. 22, 1998)..............................10, 20

*King v. Sears Roebuck & Co.*, Civil Action No. 1:10-cv-1024,
 2013 U.S. Dist. LEXIS 24887 (S.D. W. Va. Feb. 22, 2013)...............................15

*Kovaco v. Rockbestos-Surprenant Cable Corp.*, No. 3:11CV377 (WWE),
2014 U.S. Dist. LEXIS 53277 (D. Conn. Apr. 17, 2014)................................................9, 12

*McWilliams v. N.Y.C. Bd. of Educ.*, Nos. 99-7877, 99-7880,
2000 U.S. App. LEXIS 5205 (2d Cir. Mar. 27, 2000)...............................................11, 13, 14

*Neshewat v. Salem*, 365 F. Supp. 2d 508 (S.D.N.Y. 2005)..............................................14

*Paganucci v. City of New York*, 993 F.2d 310 (2d Cir. 1993)........................................13

*Perez v. Posse Comitatus*, 373 F.3d 321 (2d Cir. 2004)....................................................8

*Perkinson v. Gilbert/Robinson, Inc.*, 821 F.2d 686 (D.C. App. 1987).....................19, 24

*Polur v. Raffe*, 912 F.2d 52 (2d Cir. 1990)...............................................................10, 20

*Safir v. United States Lines, Inc.*, 792 F.2d 19 (2d Cir. 1986).............................9, 10, 21

*Sassower v. Abrams*, No. 91-8063, 1992 U.S. App. LEXIS 38245 (3d Cir. Feb. 12, 1992)............14

*Saulsbury v. Bank of Am.*, No. 11-00138 JMS/KSC,
2011 U.S. Dist. LEXIS 123231 (D. Haw. Sep. 27, 2011)...............................................16

*Shields v. Shetler*, 120 F.R.D. 123 (D. Colo. 1988)........................................................13

*Stone v. Baum*, 409 F. Supp. 2d 1164 (D. Ariz. 2005).....................................................18

*Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370 (2d Cir. 2003)..........................................9

*Thomas v. Girardi*, 611 F.3d 1027 (9th Cir. 2010)..........................................................15

*Tracy v. Freshwater*, 623 F.3d 90 (2d Cir. 2010)............................................................18

*United States v. Carpenter*, 190 F. Supp. 3d 260 (D. Conn. 2016)..............................2, 24

*Universitas Educ., LLC v. Nova Grp., Inc.*, 784 F.3d 99 (2d Cir. 2015).........................16

*Weinraub v. Glen Rauch Sec., Inc.*, 419 F. Supp. 2d 507 (S.D.N.Y. 2005).........8, 13, 15

*Weisberg v. Webster*, 749 F.2d 864 (D.C. App. 1984)....................................................18

**Federal Rules of Civil Procedure:**

FED. R. CIV. P. 11.............................................................................................................11

FED. R. CIV. P. 11(b)..........................................................................................................8

FED. R. CIV. P. 11(c).......................................................................................................8, 19

FED. R. CIV. P. 11 Advisory Committee Notes (1993 amendments)......................................9

FED. R. CIV. P. 58 Advisory Committee Notes (2002 amendments).............................................12

Universitas Education, LLC ("Universitas"), respectfully submits this Memorandum of Law in support of its Motion for Sanctions against Daniel Carpenter ("Carpenter") pursuant to Fed. R. Civ. P. 11.

## I.   INTRODUCTION

The Court has already found eleven different motions filed on Carpenter's behalf to be sanctionable, and Carpenter's Motion to Vacate is a continuation of his vexatious litigation strategy. Carpenter claims the judgment is labelled as a "Clerk's Order" and thus is void – Carpenter invented the phrase "Clerk's Order;" it does not exist anywhere in this proceeding. Every other argument asserted by Carpenter is barred by res judicata and/or collateral estoppel. The motion is thus entirely frivolous.

This is not the first time Carpenter created a false factual basis to attempt to support his legal arguments – Nova Group, Inc. ("Nova") was previously sanctioned for this same practice. Likewise, Nova was previously sanctioned for re-asserting issues conclusively determined by the Court. These sanctions failed to deter Carpenter's misconduct, as Carpenter continues to file frivolous motions for improper purposes.

Universitas requests that the Court impose the following sanctions to deter continued misconduct from Carpenter:

- Expand the scope of the current sanction requiring Nova to obtain permission from the Court before filing any motion to encompass Carpenter and the entities identified in Universitas' Motion for Rule 11 Sanctions

- Expand the scope of the current judgment for Universitas' attorneys' fees to encompass Carpenter and the entities identified in Universitas' Motion for Rule 11 Sanctions

- Stay any further litigation in this matter, including an appeal for any denial of any Motion to Vacate, until the monetary sanction imposed upon Nova is paid

1

## II.   FACTUAL BACKGROUND

This case concerns the Charter Oak Trust ("COT") and proceeds received in connection with two insurance policies on the life of Sash Spencer. This Court is familiar with the facts of this case, and thus Universitas provides only a brief overview of the pertinent facts.[1]

### a.   The Underlying Arbitration

This dispute began as an arbitration proceeding between Nova and Universitas. During this arbitration, Nova argued that Universitas should not be entitled to any of the Spencer insurance proceeds, *inter alia*, because Mr. Spencer "committed fraud" upon COT, and there was an allegedly "illegal" settlement involving Mr. Spencer's widow and employer. (Docket entry no. 6-11 at 13-18, 34-39.)[2] The arbitrator denied these arguments and found that, to the extent either of these allegations were true, they did not constitute grounds for denying Universitas' claim to the Spencer insurance proceeds. (Docket entry no. 6-14 at 4-6.) The arbitrator also permitted Universitas to bring claims under state law and found that Universitas' claims were timely. (Docket entry no. 6-14 at 3-7.)

### b.   The Cross-Motion for Vacatur

Carpenter moved to vacate the arbitrator's award by arguing, *inter alia*, that: (i)

---

[1] This synopsis concerns both Nova and Carpenter. Carpenter controlled Nova such that Carpenter was a privy of Nova. (Docket entry no. 366 at 11-13.) Likewise, this Court found Carpenter in contempt of court for Nova's failure to comply with a court order because "Mr. Carpenter is responsible for the conduct of Nova Group." (Docket entry no. 278 at 23-24.) The court presiding over Mr. Carpenter's subsequent criminal proceedings similarly found that Mr. Carpenter controlled COT, for which Nova was the sole trustee, sponsor and fiduciary. *See United States v. Carpenter*, 190 F. Supp. 3d 260, 273-74 and 298-99 (D. Conn. 2016). Thus, Universitas attributes Nova's behavior to Mr. Carpenter and uses these terms interchangeably when discussing the proceedings before this Court.

[2] Unless otherwise indicated, docket entry numbers in this brief refer to those in case number 11 Civ. 1590. Citations to page numbers refer to the electronic case filing pagination (blue numbers at top of page).

Universitas' claim was not timely, (ii) Mr. Spencer committed fraud upon COT, (iii) there was an allegedly "illegal" settlement involving Mr. Spencer's widow and employer, and (iv) the arbitrator failed to apply ERISA rather than state law. (Docket entry no. 15.) This Court denied the motion to vacate in its entirety, and specifically found Carpenter's argument that the arbitrator disregarded the law by permitting Universitas to assert state law claims rather than ERISA claims to be "meritless." (Docket entry no. 40.)

### c.   The Motion for Reconsideration

Carpenter then moved for reconsideration of the denial of his motion to vacate the arbitration award by arguing, *inter alia*, that: (i) Universitas' claims should be subject to ERISA instead of state law, (ii) Universitas' claim was not timely, (iii) there was an allegedly "illegal" agreement involving Mr. Spencer's employer, and (iv) Mr. Spencer committed fraud upon COT. (Docket entry no. 46.) This Court summarily dismissed this motion as "meritless." (Docket entry no. 109.) The Court also sanctioned Nova for this motion. Judge Pitman issued a Report and Recommendation ("R&R") providing that the motion was "plainly without merit" and merely an "attempt to relitigate the same issues by invoking a different procedural vehicle." (Docket entry no. 253 at 20, 27.) The Court adopted the R&R and "concur[red] in the Report's conclusions with respect to the lack of merit." (Docket entry no. 293 at 3.)

### d.   Additional Sanctions Against Nova

The Court also sanctioned Nova in response to nine motions to quash and a motion to dismiss for lack of subject matter jurisdiction. (Docket entry nos. 293 and 295.) These sanctions were designed to deter both "meritless collateral attacks[s] … [upon] a validly entered judgment" and "frivolous motions designed to delay the proceedings." (Docket entry no. 295 at 6-9.) These sanctions included a monetary sanction of $25,000. (Docket entry no. 598.) That sanction was

never paid. (Docket entry no. 594.) The Court also imposed an injunctive sanction requiring Nova to obtain permission from the Court prior to filing any future motions. (Docket entry no. 295 at 10.) The filing injunction was in response to the motion to dismiss for lack of subject matter jurisdiction, which was filed "in bad faith and with a motive to delay, harass, or needlessly increase the cost of litigation." (Docket entry no. 295 at 6.) Nova's motion to dismiss for lack of subject matter jurisdiction "added Charter Oak Trust to the signature blocks of the papers in support of [the] motion to dismiss in an apparent attempt to create the appearance that the trust was a named party in this action." (Docket entry no. 295 at 4 n. 2.) Judge Pitman elaborated that Nova's actions were intended to "create a false factual basis for [its] argument that the citizenship of Charter Oak Trust should be considered for the purposes of diversity jurisdiction." (Docket entry no. 252 at 24.) The Court likewise imposed sanctions for violating Fed. R. Civ. P. 11(b)(2) because Nova's argument concerning lack of subject matter jurisdiction was "based on the specious contention that the Charter Oak Trust was a 'real and substantial party in interest' such that its citizenship had to be considered." (Docket entry no. 252 at 20.) This argument was "foreclosed by a more than 30-year old decision of the Supreme Court." (Docket entry no. 295 at 4.)

e. **The Turnover Proceedings**

Universitas then initiated two turnover proceedings: (i) one seeking insurance proceeds owed for damage to property purchased with fraudulently conveyed Spencer insurance proceeds, and (ii) one seeking the fraudulently defalcated Spencer proceeds. (Docket entry nos. 219 and 308.) Universitas also sought a preliminary injunction to enjoin further dissipation of assets pending the outcome of the second turnover proceeding. (Docket entry no. 303.) The second turnover proceeding sought judgment against Carpenter. (Docket entry no. 308.)

i.   Carpenter's Opposition Filings

Carpenter filed a brief in opposition to the second turnover motion which argued, *inter alia*, that the Court lacked subject matter jurisdiction over the turnover proceeding as a result of the Supreme Court's decision in *Peacock v. Thomas*.[3] (Docket entry no. 319 at 6-7, 10.) Carpenter then filed a brief concerning collateral estoppel and/or res judicata which argued that GMC and/or Carpenter should not be bound by the arbitrator's award because they were dismissed from the arbitration. (Docket entry no. 346.) Carpenter also filed two affidavits in opposition to the second turnover motion. The first affidavit explained that Carpenter controlled numerous Turnover Respondents, including Grist Mill Capital, LLC ("GMC"), Phoenix Capital Management Group, LLC ("Phoenix"), and Carpenter Financial Group, Inc. ("CFG"). (Docket entry no. 320 ¶¶ 4, 19-22.) The second affidavit explained that he controlled additional Turnover Respondents, including Avon Capital, LLC ("Avon"). (Docket entry no. 338 ¶¶ 1-2.)

ii.   Carpenter Controlled Entities' Opposition Filings

Numerous Respondents under Carpenter's explicit control, including GMC, Avon, Phoenix, and CFG, filed a brief in opposition to the second turnover motion which argued, *inter alia*, that: (i) the Court lacked personal jurisdiction over the Respondents, (ii) Universitas' claims were barred by the statute of limitations, (iii) GMC was the primary beneficiary of the Spencer insurance policies, and (iv) GMC and Carpenter were dismissed from the arbitration proceeding. (Docket entry no. 339.) Numerous Respondents, including CFG, Avon, and Phoenix, then filed a supplemental brief in opposition to the second turnover motion, which argued that the Respondents had not been served with process and that the Court lacked personal jurisdiction over the

---

[3] Carpenter also testified during the turnover proceedings. (Docket entry no. 357.) Carpenter testified, *inter alia*, that Grist Mill Capital, LLC ("GMC") was the primary beneficiary of the Spencer insurance policies. (Docket entry no. 357 at 37-40.)

Respondents. (Docket entry no. 460.)

    iii.  <u>The Court's Rulings</u>

The Court subsequently ruled on the relevant motions. The Court's Order concerning the first turnover proceeding is not relevant to this motion for sanctions.

    1.  The Preliminary Injunction

The Court granted Universitas' motion for a preliminary injunction. (Docket entry no. 366.) The Court found that Carpenter was the architect and financier of Nova's claims and defenses throughout the arbitration and thus was bound by the arbitration award. (Docket entry no. 366 at 4-5.) The Court clearly articulated that the doctrines of res judicata and collateral estoppel preclude arguments previously made by a party as well as their privies. (Docket entry no. 366 at 9-13.) Thus the Court found that Carpenter's claim that GMC was the beneficiary of the Spencer proceeds was barred by res judicata. (Docket entry no. 366 at 10.)

    2.  The Second Turnover Motion

The Court granted Universitas' turnover motion against Carpenter. (Docket entry no. 474.) In so doing, the Court rejected Carpenter's argument concerning *Peacock v. Thomas* and found that it had subject matter jurisdiction over the turnover proceeding. (Docket entry no. 474 at 2.) The Court likewise rejected the Respondents' arguments concerning service of process, personal jurisdiction, and statute of limitations.[4] (Docket entry no. 474 at 10-17.)

    3.  Entry of Judgment Against the Turnover Respondents

The Clerk of Court then entered judgment against Carpenter and the other Turnover

---

[4] Specifically, the Court found that "each Turnover Respondent has waived the service requirements under Federal Rule of Civil Procedure 4 and accepted service of the motion for turnover via e-mail." (Docket entry no. 474 at 5.) The Court further found that Carpenter's fraudulent actions designed to render the prospective New York judgment unenforceable provided the necessary minimum contacts for personal jurisdiction. (Docket entry no. 474 at 10-15.)

Respondents. (Docket entry no. 475.) The judgment is listed on the docket as "Clerk's Judgment." The judgment itself is labelled a "Judgment." The phrase "Clerk's Order" does not appear anywhere on the docket, and Universitas has been unable to identify a single filing, other than Carpenter's Motion to Vacate, that contains the phrase "Clerk's Order."

iv.   The Motion for Reconsideration

Numerous Respondents under Carpenter's explicit control, including CFG, Avon, and Phoenix, moved the Court to reconsider its order granting Universitas' second turnover motion. (Docket entry no. 481.) The motion to reconsider argued that: (i) GMC was the beneficiary of the Spencer policies, (ii) only Carpenter waived service of process, and (iii) the Court lacked personal jurisdiction over the Respondents. (Docket entry no. 481.) The Court denied this motion in its entirety.[5] (Docket entry no. 492.)

f.   **The Motion to Vacate**

Carpenter did not communicate with Universitas prior to moving to vacate the judgment, and Carpenter's Motion to Vacate does not comply with the Court's pre-motion meet and confer requirements. (Docket entry no. 665.) The Court ordered that any reply brief be filed by December 14, 2020. (Docket entry no. 666.) Carpenter filed his reply brief on December 22, 2020, and the reply brief almost doubles the Court's page limitation. (Docket entry no. 672.)

g.   **Attorneys' Fees**

The Court previously entered judgment in Universitas' favor for attorneys' fees in the

---

[5] With regard to personal jurisdiction, the Court found that the Respondents were merely attempting to "improperly relitigate the issue." (Docket entry no. 492 at 2.) The Court rejected the Respondents' arguments concerning service of process because "Universitas filed an affidavit on June 20, 2014, attesting to service as to each Respondent and Respondents participated in the turnover proceeding and never subsequently contested Universitas' factual proffers as to service." (Docket entry no. 492 at 2.)

amount of $1,131,472.84 . (Docket entry no. 491.) These attorneys' fees remain unpaid.

### III. **LEGAL STANDARD**

Sanctions are intended to deter future improper conduct and prevent a party from benefitting from its own improper conduct. (Docket no. 592 at 6.)

#### a. **Rule 11**

The standard for sanctions under Rule 11 is objective unreasonableness. *See In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003). The imposition of sanctions rests in the Court's sound discretion. *See Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004). Rule 11 is intended to deter baseless filings and curb abusive litigation practices. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Sanctions should thus be designed to deter future noncompliance with Rule 11, and courts may impose nonmonetary sanctions when appropriate. *See* FED. R. CIV. P. 11(c)(4); *see Colida v. Nokia Inc.*, 2008 U.S. Dist. LEXIS 129521, at *29-*32 (S.D.N.Y. May 6, 2008) (explaining that Rule 11 authorizes injunctive sanctions), *adopted in relevant part* 2008 U.S. Dist. LEXIS 75450.

##### i.  Rule 11(b)(2)

Fed. R. Civ. P. 11(b)(2) requires that legal arguments be meritorious. *See* FED. R. CIV. P. 11(b)(2). Arguments violate Rule 11(b)(2) when they have "no chance of success." (Docket entry no. 252 at 11.) Arguments barred by res judicata and/or collateral estoppel have "no chance of success" and warrant sanctions. *See Weinraub v. Glen Rauch Sec., Inc.*, 419 F. Supp. 2d 507, 514 & n. 39 (S.D.N.Y. 2005) (collecting cases).

##### ii.  Rule 11(b)(3)

Fed. R. Civ. P. 11(b)(3) requires that contentions have evidentiary support. *See* FED. R. CIV. P. 11(b)(3). Factual assertions violate Rule 11(b)(3) when they are "utterly lacking in

support." *See Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003) (citing *O'Brien v. Alexander*, 101 F.3d 1479 (2d Cir. 1996)). Courts impose sanctions pursuant to Rule 11(b)(3) when a filing contains "direct falsehood." *See Kovaco v. Rockbestos-Surprenant Cable Corp.*, No. 3:11CV377 (WWE), 2014 U.S. Dist. LEXIS 53277, at *15 (D. Conn. Apr. 17, 2014).

iii.  Relevant Factors

When determining whether to impose sanctions, courts should consider: (i) whether the improper conduct was willful, or negligent, (ii) whether it was part of a pattern of activity, or an isolated event, (iii) whether it infected the entire pleading, or only one particular count or defense, (iv) whether the person has engaged in similar conduct in other litigation, (v) whether it was intended to injure, (vi) what effect it had on the litigation process in time or expense, (vii) whether the responsible person is trained in the law, (viii) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case, and (ix) what amount is needed to deter similar activity by other litigants. *See* FED. R. CIV. P. 11 Advisory Committee Notes (1993 amendments).

b.  **Injunctive Sanctions**

Courts can enjoin a party's ability to file as a sanction for improper conduct. *See Safir v. United States Lines, Inc.*, 792 F.2d 19, 23-24 (2d Cir. 1986) ("That the district court possessed the authority to enjoin [litigant] from further vexatious litigation is beyond peradventure.") (internal citations omitted); *see also In re Martin-Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984) ("A district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation."); *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998) ("There is nothing unusual about imposing prefiling restrictions in matters with a history of repetitive or vexatious litigation.").

i.  Standard

Injunctive sanctions should be imposed when a litigant would otherwise continue to abuse the judicial system and harass other parties. *See Safir*, 792 F.2d at 24; *see also In re Martin-Trigona*, 9 F.3d 226, 230 (2d Cir. 1993) ("Litigants … who abuse the judicial system forfeit their right to the full panoply of procedures available in the conduct of normal litigation."). Injunctive sanctions do not require satisfaction of the traditional standards for injunctive relief. *See Polur v. Raffe*, 912 F.2d 52, 57 (2d Cir. 1990) ("The traditional standards for injunctive relief, *i.e.* irreparable injury and inadequate remedy at law, do not apply to the issuance of an injunction against a vexatious litigant."); *see also Jones v. City of Buffalo*, 96-CV-0739E(F), 1998 U.S. Dist. LEXIS 6070, at *14-*15 (W.D.N.Y. Apr. 22, 1998) ("The traditional standards for injunctive relief, *i.e.* irreparable injury and inadequate remedy at law, do not apply to the issuance of an injunction against a vexatious litigant. A history of litigation entailing 'vexation, harassment and needless expense to other parties' and 'an unnecessary burden on the courts and their supporting personnel' is enough.") (internal citations omitted).

ii.  Relevant Factors

Courts should consider the following factors when contemplating injunctive sanctions: (i) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (ii) the litigant's motive in pursuing the litigation (iii) whether the litigant is represented by counsel; (iv) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (v) whether other sanctions would be adequate to protect the courts and other parties. *See Safir*, 792 F.2d at 24.

iii.   <u>Types of Injunctive Sanctions</u>

Courts can impose a "leave of court" requirement upon a party's future filings. *See In re Martin-Trigona*, 9 F.3d at 228-29. Courts can similarly enjoin a party's ability to file appeals. *See McWilliams v. N.Y.C. Bd. of Educ.*, Nos. 99-7877, 99-7880, 2000 U.S. App. LEXIS 5205, at *6-*7 (2d Cir. Mar. 27, 2000) (explaining that imposing "leave of court" requirement upon filing appeals is an appropriate sanction for duplicative and vexatious litigation). Courts can also stay future litigation in a proceeding when a party "has failed to pay a judgment for costs entered against him in the same matter." *See In re Hartford Textile Corp.*, 681 F.2d 895, 897 n. 1 (2d Cir. 1982).

## IV.   **ARGUMENTS**

Carpenter provides ten reasons for vacating the judgment: (i) Mr. Spencer committed fraud upon COT, (ii) Universitas' claims were untimely and barred by the statute of limitations, (iii) there was a settlement with Mr. Spencer's widow, (iv) Carpenter was dismissed from the arbitration, (v) the Court lacked subject matter jurisdiction over the turnover proceedings, (vi) the Court lacked personal jurisdiction over Carpenter, (vii) Carpenter was not served with process, (viii) GMC was the beneficiary of the insurance policies, (ix) Universitas' claims were barred by res judicata and/or collateral estoppel, and (x) the judgment is void pursuant to Fed. R. Civ. P. 58. (Docket entry no. 665 (hereinafter "Carpenter Mem.").) Every single one of these arguments is sanctionable. *See* Fed. R. Civ. P. 11.

### a.   **Carpenter's Argument Concerning Fed. R. Civ. P. 58 Violates Rule 11(b)(3).**

Carpenter's argument concerning Rule 58 is sanctionable because it is based on a false factual basis. *See In re Pennie & Edmonds*, 323 F.3d at 90 (explaining that sanctions may be imposed when claims of evidentiary support are not objectively reasonable). Rule 58 requires that judgments be labelled "judgment." *See Cooper v. Town of E. Hampton*, 83 F.3d 31, 34 (2d Cir.

1996). Carpenter argues that the judgment against him violates Rule 58 because it is labelled as a "Clerk's Order." (Carpenter Mem. at 1-2, 24-25.) This is false – the judgment is labelled as a judgment and was entered on the docket as "Clerk's Judgment." (Docket entry no. 475.) Moreover, the phrase "Clerk's Order" does not appear anywhere on the docket and/or in any previous filings in this proceeding – Carpenter simply invented this phrase. Making false factual assertions to provide a basis for an otherwise meritless argument is "plainly fraudulent and runs afoul of Rule 11's requirement that 'factual contentions have evidentiary support.'" (Docket entry no. 252 at 24-25 (citing FED. R. CIV. P. 11(b)(3)).) *see also Kovaco*, 2014 U.S. Dist. LEXIS 53277 at *15 (explaining that sanctions are warranted when they contain a "direct falsehood").

b. **All of Carpenter's Arguments Violate Rule 11(b)(2).**

i. <u>The Rule 58 Argument Relies Entirely Upon Outdated Caselaw.</u>

Carpenter's argument that the judgment against him is void, and thus must be vacated, is predicated upon outdated legal authority. Rule 58 was amended in 2002, and no longer concerns the efficacy of judgments:

> Rule 58(b) replaces the definition of effectiveness with a new provision that defines the time when judgment is entered. If judgment is promptly set forth on a separate document, as should be done when required by Rule 58(a)(1), the new provision will not change the effect of Rule 58. But in the cases in which court and clerk fail to comply with this simple requirement, the motion time periods set by Rules 50, 52, 54, 59, and 60 begin to run after expiration of 150 days from entry of the judgment in the civil docket as required by Rule 79(a).

FED. R. CIV. P. 58 Advisory Committee Notes (2002 amendments). The entirety of Carpenter's legal authority concerns an outdated version of the Rule 58. (Carpenter Mem. at 24-25.) Carpenter's reliance on outdated caselaw is objectively unreasonable and a violation of Rule 11. *See Galin v. Hamada*, 283 F. Supp. 3d 189, 202 n. 5 (S.D.N.Y. 2017) (explaining that relying

entirely on cases analyzing pre-amended version of Federal Rules of Civil Procedure is "in itself a basis for Rule 11 sanctions") (internal citations omitted).

        ii.  <u>Every Other Argument is Barred by Res Judicata and/or Collateral Estoppel.</u>

Carpenter's other nine arguments were previously litigated in this proceeding and are now barred by res judicata and/or collateral estoppel. Carpenter is clearly aware of the preclusive effect of these doctrines – Carpenter argues that the judgment should be vacated because Universitas' claims were barred by res judicata and/or collateral estoppel. (Carpenter Mem. at 9.) Given that Carpenter's arguments are barred, they stand "no chance of success" and warrant sanctions under Rule 11(b)(2). *See Weinraub*, 419 F. Supp. 2d at 514 & n. 39; *see also Paganucci v. City of New York*, 993 F.2d 310 (2d Cir. 1993) (imposing sanctions for arguments barred by res judicata); *Shields v. Shetler*, 120 F.R.D. 123 (D. Colo. 1988) (finding motion to be "unreasonable and vexatious" when it was "a nearly verbatim reiteration of his earlier arguments").

        c.  **The Court Should Sanction Carpenter.**

The Motion to Vacate is Carpenter's fifth attempt to vacate the award in Universitas' favor,[6] and is merely another "attempt to relitigate the same issues by invoking a different procedural vehicle." (*See* docket entry no. 253 at 27.) The Court should sanction Carpenter. *See McWilliams*, 2000 U.S. App. LEXIS 5205 (explaining that "the pursuit of duplicative and

---

[6] Carpenter initially moved to vacate the arbitration award in Connecticut. (Docket entry no. 252 at 3.) The court found this to be an "improper anticipatory filing" and transferred the action to the Southern District of New York. (Docket entry no. 22 in Case No. 11-8726-LTS at 7-8.) Carpenter then moved this Court to vacate the arbitration award, and subsequently moved this Court to reconsider its denial of his motion to vacate the arbitration award. (Docket entry nos. 15 and 46.) Carpenter then moved to vacate the Charging Order against CFG in Connecticut by arguing, *inter alia*, that the judgment lacks Hon. Judge Swain's signature and this Court lacked subject matter jurisdiction to enter judgment against Mr. Carpenter. (*See* (Mot. to Vacate [docket entry no. 11]) *Universitas Education, LLC v. Nova Group, Inc.*, No. 3:14-mc-125-RNC (D. Conn. Nov. 13, 2020)).

vexatious litigation" is sanctionable). The Court should preclude Carpenter from further abusive litigation by requiring that Carpenter, and the Turnover entities under his control, obtain the Court's permission for any future filings. *See Sassower v. Abrams*, No. 91-8063, 1992 U.S. App. LEXIS 38245, at *3 (3d Cir. Feb. 12, 1992) (explaining that injunctive sanctions are warranted "in the interests of repose, finality of judgments, protection of defendants from unwanted harassment, and concern for maintaining order in the court's dockets."). The Court should also stay any additional litigation in this action, including an appeal for any denial of any Motion to Vacate, until Nova's outstanding monetary sanction is paid. *See McWilliams*, 2000 U.S. App. LEXIS 5205 at *6-*7 (explaining that imposing "leave of court" requirement upon filing appeals is an appropriate sanction for duplicative and vexatious litigation); *In re Hartford Textile Corp.*, 681 F.2d at 897 n. 1 (explaining that courts can stay future litigation when a party "has failed to pay a judgment for costs entered against him in the same matter."). The Court should also broaden the current judgment for Universitas' attorneys' fees and costs, (docket entry no. 491,) to encompass Carpenter and the Turnover entities under his control. (*See* docket entry no. 295 at 8 (explaining that courts have broad discretion to determine appropriate sanction);) *see also Neshewat v. Salem*, 365 F. Supp. 2d 508, 528 (S.D.N.Y. 2005) ("Rule 11 sanctions must be tailored to the particular facts and circumstances of the specific case, in the discretion of the court. Rule 11 does not, in any way, limit a court's choices with respect to an appropriate sanction.") (internal citations omitted).

i.   The Motion to Vacate is Objectively Unreasonable and in Bad Faith.

All of Carpenter's arguments are either outdated or barred by res judicata and/or collateral estoppel – every argument is thus objectively unreasonable. *See Galin*, 283 F. Supp. 3d at 202 n. 5 (providing that argument based on outdated Federal Rules of Civil Procedure is sanctionable);

14

*Weinraub*, 419 F. Supp. 2d at 514 & n. 39 (providing that argument barred by res judicata and/or collateral estoppel have "no chance of success").

### 1.   Substantive Bad Faith

The frivolousness of Carpenter's legal arguments is evidence of his bad faith in filing the Motion to Vacate. (*See* docket entry no. 252 at 11 ("[C]ourts will generally infer bad faith 'when the [party's] actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'") (internal citations omitted).) Carpenter's misrepresentation of the judgment as a "Clerk's Order" is further evidence of his bad faith motive for filing the motion to vacate. (*See* docket entry no. 252 at 26 ("…misrepresentations are strongly probative of … bad faith.");) *see also Thomas v. Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010) (explaining that "recklessly or intentionally misrepresenting facts constitutes … bad faith ….") (internal citations omitted). Carpenter's bad faith motives can further be inferred from the fact that his motion was filed in the wake of an arbitration. (*See* docket entry no. 253 at 29-31.)

### 2.   Procedural Bad Faith

Filing the reply brief in disregard of the Court ordered deadline demonstrates Carpenter's bad faith. *See Allen v. Stark State Coll.*, No. 5:17CV02706, 2019 U.S. Dist. LEXIS 125004, at *24-*29 (N.D. Ohio July 26, 2019) (explaining that willful noncompliance with court orders constitutes bad faith); *see also King v. Sears Roebuck & Co.*, Civil Action No. 1:10-cv-1024, 2013 U.S. Dist. LEXIS 24887, at *29-*31 (S.D. W. Va. Feb. 22, 2013) (providing that disregard for court ordered deadlines may constitute bad faith). Carpenter's violation of the Court's pre-motion meet and confer requirements and the Court's page limitations further demonstrates bad faith. *See*

*Saulsbury v. Bank of Am.*, No. 11-00138 JMS/KSC, 2011 U.S. Dist. LEXIS 123231, at *8-*12 (D. Haw. Sep. 27, 2011) (explaining that repeated violation of court rules may indicate bad faith).[7]

ii.   <u>Sanctions Are Warranted Under Rule 11.</u>

The Motion to Vacate warrants sanctions. *See Universitas Educ., LLC v. Nova Grp., Inc.*, 784 F.3d 99 (2d Cir. 2015) ("[T]here is no disagreement that a sanction aimed at deterring Nova's persistent and abusive litigation conduct is appropriate and necessary."). The motion is an apparent continuation of Carpenter's "willful [and] persistent" misconduct intended to delay Universitas' collection efforts. (*See* docket no. 592 at 13.)

1.   Carpenter's Improper Conduct was Willful.

This Court previously determined that Carpenter's frivolous motions are the result of willful misconduct. (Docket no. 592 at 9.) Moreover, Carpenter's claim that the judgment is a "Clerk's Order" further demonstrates his willfulness – Carpenter invented this phrase and thus its use cannot be the result of negligence or confusion. (*See* docket no. 592 at 9.)

2.   Carpenter's Improper Conduct is Part of a Pattern.

Carpenter's Motion to Vacate is "part of a pattern of activity in the post-judgment proceedings … aimed at frustrating Universitas' efforts to enforce the judgment." (Docket no. 592 at 9.) Carpenter previously filed eleven motions determined to be "baseless … attempt[s] to avoid the consequences of an unfavorable court finding." (Docket entry no. 252 at 27.) Carpenter's Motion to Vacate utilizes the same "tactics" as his previous frivolous motions. (*See e.g.*, docket entry no. 492 at 2 ("Respondents merely seek to improperly relitigate the issue…");) (docket no.

---

[7] Carpenter's violation of multiple rules and Court ordered deadlines is not excused by his *pro se* status. *See Allen*, 2019 U.S. Dist. LEXIS 125004, at *25-*26 ("A *pro se* litigant should not be given any special consideration when []he fails to abide by 'readily comprehended court deadlines of which []he is well-aware.'").

16

592 at 4 ("Nova … violated Rule 11(b)(3) by attempting to … 'create a false factual basis' for Nova's baseless challenge …."). Carpenter's misconduct has defined this entire proceeding – "[t]his case has been marked by Nova Group's diversionary and dilatory motion and discovery practices, all of which are aimed at frustrating any efforts by Universitas to enforce the judgment." (Docket entry no. 197 at 2.)

### 3. Carpenter's Improper Conduct Infected the Entire Motion to Vacate.

All of the arguments asserted in Carpenter's Motion to Vacate stand "no chance of success." Thus, Carpenter's misconduct infected the entire motion rather than a single argument. (*See* docket entry no. 592 at 10.)

### 4. Carpenter has Engaged in Similar Conduct in Other Litigation.

Carpenter has filed frivolous Rule 60(b) motions in other litigations. *See Israel v. Carpenter*, Case No. 95-civ.-2703 (DAB)(JCF), 2001 U.S. Dist. LEXIS 15571 (S.D.N.Y. Oct. 1, 2001) ("This motion is entirely frivolous. It is devoted primarily to challenges to the determination of liability, a determination that has already been affirmed by the Second Circuit."); *see also Carpenter v. Baltazar*, No. 3:16-cv-2327, 2018 U.S. Dist. LEXIS 11628 (M.D. Pa. Jan. 24, 2018) (denying Carpenter's Rule 60(b) motion in its entirety).

### 5. Carpenter's Improper Conduct is Intended to Injure Universitas.

Carpenter's entire litigation strategy is intended to injure Universitas. (*See* docket entry no. 592 at 11 ("The persistence and baselessness of Nova's abusive tactics suggest that Nova intended to injure Universitas' rights to collect the judgment…. Nova's conduct was intended to injure because the 'sanctionable conduct at issue … was symptomatic of Nova Group's stubborn and baseless efforts to impede Universitas' collection of the judgment.'") (internal citations omitted).)

The vexatious and redundant nature of the Motion to Vacate further evidences Carpenter's intent to harm Universitas:

> Because the action filed here involves the same parties and the same transactional nucleus of facts as the prior suits, and because Plaintiffs have been repeatedly informed that such repetitive suits are barred by res judicata, there can be no conclusion except that Plaintiffs filed this case for an improper purpose, such as to harass … and/or cause … undue litigation costs.

*Stone v. Baum*, 409 F. Supp. 2d 1164, 1171 (D. Ariz. 2005).

### 6.   Carpenter Negatively Affected the Litigation Process.

Carpenter's Motion to Vacate consumed unnecessary resources from both Universitas and the Court. (*See* docket entry no. 592 at 11 ("Nova's frivolous motion has, no doubt, increased Universitas' legal fees, delayed Universitas' collection of the judgment and wasted scarce judicial resources. Nova's motion to dismiss caused Judge Swain to waste time addressing a motion that never should have been made."). Carpenter also negatively affected the litigation process through his discovery misconduct. *See Weisberg v. Webster*, 749 F.2d 864, 872 (D.C. App. 1984) ("Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents.") (quoting *G-K Properties v. Redevelopment Agency*, 577 F.2d 645 (9th Cir. 1978)).

### 7.   Carpenter is Trained in the Law.

Carpenter graduated from law school and was previously a member of the Connecticut Bar. *See Cahaly v. Benistar Prop. Exch. Tr. Co.*, 451 Mass. 343, 347 (2008) ("…[Daniel] Carpenter, a tax attorney…."); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (explaining that "the degree of solicitude may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented" and that lawyers appearing *pro se* receive no solicitude at all). Carpenter's *pro se* status does not preclude sanctions against him:

> [I]t is well established that Rule 11 applies to *pro se* litigants. Proceeding *pro se* does not shield a party from Rule 11 sanctions because one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets…. [A] court may treat *pro se* litigants who have some experience with the legal system less leniently than those *pro se* litigants completely unfamiliar with the law. …The application of Rule 11 may be determined on a sliding scale according to the litigant's level of sophistication.

*Colida*, 2008 U.S. Dist. LEXIS 129521 at *25-*26 (internal citations omitted). Moreover, the leniency accorded to *pro se* litigants does not apply when the sanctions pertain to factual misrepresentations rather than legal arguments. *See Durant v. Traditional Invest., Ltd.*, 135 F.R.D. 42, 49 (S.D.N.Y. 1991).

### 8.   Carpenter Will Not Be Deterred by Monetary Sanctions.

This Court imposed substantial monetary sanctions upon a Carpenter-controlled entity. (Docket entry no. 598.) The previous sanctions have cumulatively failed to deter Carpenter's vexatious and abusive litigation practices. Moreover, Carpenter has spent millions of dollars in legal fees to repeatedly assert these sanctionable arguments. The amount that Mr. Carpenter has spent in legal fees throughout his numerous legal proceedings demonstrates that his pockets are effectively bottomless and that he will not be deterred by monetary sanctions. The Court should thus impose injunctive sanctions. *See* FED. R. CIV. P. 11(c)(4).

### iii.   Injunctive Sanctions are Necessary.

The Court should impose injunctive sanctions upon Carpenter and the Turnover entities under his control. *See In re Hartford Textile Corp.*, 681 F.2d at 897 (providing that courts can impose injunctive sanctions to relieve parties from "vexation, harassment and needless expense" and/or relieve courts of unnecessary burdens of vexatious litigation); *see also Perkinson v. Gilbert/Robinson, Inc.*, 821 F.2d 686, 689-91 (D.C. App. 1987) (affirming "severe" sanctions upon litigant who demonstrated "callous disregard of court orders and the Federal Rules" through a

"persistent pattern of abuse that pervaded every stage of the litigation."). Injunctive sanctions are particularly appropriate given that monetary sanctions have failed to deter Carpenter from abusive and/or vexatious litigation. *See Polur*, 912 F.2d at 57; *Jones*, 1998 U.S. Dist. LEXIS 6070.

> 1. Carpenter has a History of Vexatious, Harassing, and Duplicative Litigation.

This factor weighs in favor of the Court issuing an anti-filing injunction. Carpenter's Motion to Vacate is another "attempt to relitigate the same issues by invoking a different procedural vehicle." (*See* docket entry no. 253 at 27.) Carpenter's arguments concerning Mr. Spencer's fraud upon COT and Mr. Spencer's settlement with the widow were addressed in the underlying arbitration, and again in Carpenter's motion to vacate the arbitration award, and again in Carpenter's motion for the Court to reconsider its denial of the motion to vacate. (Docket entry nos. 6-11, 15, 46.) Carpenter's argument concerning personal jurisdiction and service of process, as well as his claim that GMC was the beneficiary of the Spencer policies, were addressed during the turnover proceedings, and again in the Respondents' motion for the Court to reconsider its findings during the turnover proceedings. (Docket entry nos. 339, 460, 481.) Another four arguments within the Motion to Vacate were also addressed during the turnover proceedings. (Docket entry nos. 319, 346, 339.)

Carpenter was previously sanctioned for filing a redundant and frivolous motion. (Docket entry no. 293 at 3.) Carpenter then proceeded to file an additional ten motions that the Court found sanctionable. (*See* Docket entry nos. 293 and 295.) This Court conclusively determined that Carpenter filed at least one of these motions with an intent to delay, harass, or needlessly increase the cost of litigation. (Docket entry no. 295 (adopting R&R finding that Nova violated Rule 11(b)(1) and articulating that "the motion to dismiss was [filed] in bad faith and with a motive to delay, harass, or needlessly increase the cost of litigation.").

2.   The Motion to Vacate was Filed in Bad Faith.

This factor also weighs in favor of an anti-filing injunction. Carpenter argued in the underlying arbitration that Universitas was not entitled to the Spencer proceeds because Mr. Spencer committed fraud upon COT. (Docket entry no. 6-11.) The arbitrator found in Universitas' favor. (Docket entry no. 6-14.) Carpenter then argued that the Court should vacate the arbitration award, *inter alia*, because Mr. Spencer committed fraud upon COT. (Docket entry no. 15.) The Court confirmed the arbitration award. (Docket entry no. 40.) Carpenter then moved the Court to reconsider his motion to vacate the arbitration award, *inter alia*, because Mr. Spencer committed fraud upon COT. (Docket entry no. 46.) The Court found this motion to be "so lacking in merit that the only reasonable inference is that [it was] filed for dilatory purposes" and further found the motion to be so "entirely meritless and in bad faith" that it required the Court to impose sanctions. (Docket no. 253 at 26, 34.)

Carpenter's Motion to Vacate argues that the judgment should be vacated because Mr. Spencer committed fraud upon COT. (Carpenter Mem. at 6-7.) This argument cannot have been in good faith. *See Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 714-15 (2d Cir. 2019) (providing that re-assertion of previously rejected arguments evinces lack of good faith motive for making arguments). Moreover, all but one of Carpenter's arguments have already been rejected by this Court, and thus Carpenter cannot have filed the Motion to Vacate in good faith. *See Safir*, 792 F.2d at 25 ("In light of the patently meritless nature of these motions, they can be viewed only as attempts ... to harass ….").

Carpenter's bad faith in filing the Motion to Vacate is further elucidated by Carpenter's litigation strategy. The Court previously articulated Carpenter's litigation strategy – it is a "strategy of promoting delay through the filing of meritless and frivolous motions." (Docket entry no. 252

21

at 30.) The Court then reiterated that Carpenter's litigation strategy is "motivated not by legal merit, but rather by dilatory purposes." (Docket entry no. 253 at 30.)

        3.   Carpenter is a Sophisticated *Pro Se* Litigant with Counsel Making Identical Arguments on his Behalf in Other Matters.

This factor also weighs in favor of injunctive sanctions. Anti-filing injunctions are warranted against *pro se* parties "when it becomes clear that the courts are being used as a vehicle of harassment by a knowledgeable and articulate experienced *pro se* litigant who asserts the same claims repeatedly in slightly altered guise." *See Colida*, 2008 U.S. Dist. LEXIS 129521 at *35 (explaining that "*pro se* status is not an impediment to injunctive relief" when party has "long history of meritless claims."). Carpenter is a sophisticated businessman and experienced *pro se* litigant. *See Baltazar*, 2018 U.S. Dist. LEXIS 11628 (Carpenter proceeding *pro se* in case). Thus, Carpenter is not afforded the same leniency as other *pro se* litigants. *See Durant*, 135 F.R.D. at 49 (explaining that businessman with *pro se* experience is not accorded same leniency as other *pro se* litigants); *see also Jeffers v. City of N.Y.*, No. 14-cv-5659 (BMC), 2014 U.S. Dist. LEXIS 164818, at *3-*4 (E.D.N.Y. Nov. 25, 2014) (explaining that "experienced and sophisticated *pro se* litigants" are not afforded the same leniency as other *pro se* litigants). Carpenter was also previously represented by counsel, and thus received the assistance of counsel in this proceeding. *See Eliahu*, 919 F.3d at 715. Carpenter also controls entities litigating against Universitas in other proceedings – these entities are represented by counsel and made many of the same arguments in Carpenter's Motion to Vacate.[8] Thus, Carpenter is receiving legal advice from counsel concerning these arguments despite his putative *pro se* status. *See Durant*, 135 F.R.D. at 49-50.

---

[8] (*See* (Mot. to Vacate [docket entry no. 11]) *Universitas Education, LLC v. Nova Group, Inc.*, No. 3:14-mc-125-RNC (D. Conn. Nov. 13, 2020) (arguing that claims barred by statute of limitations, Mr. Spencer committed fraud upon COT, this Court lacked subject matter jurisdiction over the turnover proceeding, and that the judgment entered against Carpenter was a "Clerk's Order" and

4.   Carpenter Has Caused Needless Expense to Universitas and Unnecessarily Burdened this Court.

Carpenter has needlessly burdened this Court throughout the entirety of these proceedings. (Docket entry no. 591 at 12 ("… Carpenter vigorously opposed Universitas' discovery efforts to aid in execution of the judgment, requiring repeated judicial intervention and wasting scarce judicial resources.").) Carpenter has also caused needless expense to Universitas – this Court likened Carpenter's conduct to "a protracted and uncompensable war of attrition" designed to "erode the value of the award …." (Docket entry no. 490 at 4.) The harm to Universitas has been magnified by Carpenter's refusal to pay Universitas' attorneys' fees as ordered by the Court.

5.   Other Sanctions Would Not Adequately Protect Universitas and/or the Court.

This Court sanctioned Nova for eleven different frivolous motions, and further sanctioned two of Carpenter's prior attorneys in relation to these motions. (Docket entry nos. 293 and 295.) The Court also found Carpenter in contempt of Court. (Docket entry 376.) None of this has deterred Carpenter from continued misconduct. The Court even went so far as to enjoin Nova from filing motions without prior permission from the Court. (Docket entry no. 295 at 10.) This sanction was designed to deter "meritless collateral attacks[s] … [upon] a validly entered judgment" and prevent "frivolous motions designed to delay the proceedings." (Docket entry no. 295 at 6-9.) The Court subsequently found that the injunctive sanctions were "not adequate on their own to deter future efforts to impede collection of the judgment" and found that a monetary sanction was also necessary to "deter Nova and … demonstrate that any further abusive misconduct will have serious consequences." (Docket entry no. 592 at 12.)

---

thus void);) (*see also* (Mot. to Dismiss [docket entry no. 74]) *Universitas Education, LLC v. Benistar*, No. 3:20-cv-738-JAM (D. Conn. Aug. 3, 2020) (arguing that GMC was beneficiary of Spencer policies).)

These sanctions have proven to be inconsequential. The monetary sanction was never paid. (Docket entry no. 594.) Carpenter circumvented the monetary sanction by rendering Nova insolvent.[9] (Docket entry no. 594.) Carpenter likewise circumvented the injunctive sanction by filing through other corporate entities and/or his person rather than filing through Nova. The sanctions thus failed to serve their intended purpose. The Court should thus impose the sanctions requested by Universitas. *See Perkinson*, 821 F.2d at 691 (holding that severe sanctions were justified "[i]n light of defendants' callous disregard of court orders and the Federal Rules.").

The Court previously sanctioned Nova for making an outdated legal argument predicated on "a false factual basis" – what the Court characterized as "the essence of what Rule 11 seeks to deter." (Docket entry no. 252 at 28.) Carpenter's Motion to Vacate utilizes this same litigation "tactic" – Carpenter misrepresents the judgment against him as a "Clerk's Order" and uses an outdated version of the Federal Rules of Civil Procedure to argue that this "fact" renders the judgment void. (Carpenter Mem. at 24-25.)

Carpenter's use of the corporate form to evade the Court's sanctions is consistent with Carpenter's history of interchangeable and self-serving use of the corporate form. *See Carpenter*, 190 F. Supp. 3d at 274 ("[T]he formal corporate structure of the various Benistar Entities had little meaning for the people involved…. [C]orporate entities were created and discarded at Mr. Carpenter's direction when it suited his purposes."). Thus, sanctioning any individual party is futile – Carpenter will manipulate the corporate form to evade the sanctions and continue his vexatious litigation practices. Furthermore, as demonstrated by Carpenter's Motion to Vacate, sanctioning

---

[9] Nova's counsel continued to receive payment for contesting Universitas' collection efforts. Carpenter arranged for Nova's counsel to receive payment from an entity other than Nova. (Docket entry no. 594 at 2 n. 2.) No explanation was provided why these same funds could not be used to satisfy the sanction against Nova.

any individual party will not deter "meritless collateral attacks[s] … [upon] a validly entered judgment" and/or "frivolous motions designed to delay the proceedings." (Docket entry no. 295.) This Court found that Carpenter dominates all of the entities identified in Universitas' Motion for Rule 11 Sanctions. (Docket entry no. 474.) The Court should thus impose the sanctions requested by Universitas in order to demonstrate that sanctions cannot be skirted through manipulation of the corporate form and to reiterate that "further abusive misconduct will have serious consequences." (Docket entry no. 592 at 12.)

V.    **CONCLUSION**

For the aforementioned reasons, Universitas respectfully requests that the Court impose the requested sanctions and any additional relief this Court deems just and equitable.

Dated: January 4, 2021

LAW OFFICES OF JOSEPH L. MANSON III

*/s/* Benjamin Chernow                              /
Benjamin Chernow
NYS Bar No. 5597786
Law Offices of Joseph L. Manson III
600 Cameron Street
Alexandria, VA 22314
(301) 633-2163
bchernow@jmansonlaw.com

*Attorney for Universitas Education, LLC*