**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNIVERSITAS EDUCATION, LLC,<br><br>      Petitioner,<br><br>  v.<br><br>NOVA GROUP, INC, as trustee, sponsor, and fiduciary of THE CHARTER OAK TRUST WELFARE BENEFIT PLAN, et al.<br><br>      Respondent. | No.: 1:11-cv-1590-LTS-HBP<br><br>Hon. Laura Taylor Swain<br><br>**ORAL ARGUMENT REQUESTED** |
| NOVA GROUP, INC, as trustee, sponsor, and fiduciary of THE CHARTER OAK TRUST WELFARE BENEFIT PLAN, et al.<br><br>      Petitioner,<br><br>  v.<br><br>UNIVERSITAS EDUCATION, LLC,<br><br>      Respondent. | No.: 1:11-cv-8726-LTS-HBP |

**RESPONDENT GRIST MILL CAPITAL, LLC'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION UNDER RULE 60(b) FOR RELIEF FROM JUDGMENTS**

**MINTZ & GOLD LLP**

Roger Stavis
Kevin M. Brown
600 Third Avenue, 25th Floor
New York, New York 10016
(212) 696-4848 (t)
(212) 696-1231 (f)
stavis@mintzandgold.com
brown@mintzandgold.com
*Attorneys for respondent Grist Mill Capital, LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................. 1

FACTS & PROCEDURAL BACKGROUND ............................................................ 3

ARGUMENT.............................................................................................................. 9

I.      The Court should grant GMC relief under Rule 60 because
        GMC never had a chance to present its defenses to this Court's
        jurisdiction ...................................................................................... 10

        A.      The Court should relieve GMC of the Turnover
                Judgments because GMC never presented its defenses to
                this Court's exercise of subject matter jurisdiction ................ 11

        B.      The Court should relieve GMC of the Turnover Judgments
                because GMC never presented its defenses to the Court's
                exercise of personal jurisdiction ............................................. 11

        C.      The Court should relieve GMC of the Turnover Judgments
                because due process demands it ............................................. 13

II.     The Court should grant GMC relief under Rule 60 because GMC
        never got a chance to appeal ............................................................ 16

III.    If the Court grants the Carpenter Motion on any grounds, GMC
        would also be entitled to the same relief............................................17

CONCLUSION ....................................................................................................... 18

# TABLE OF AUTHORITIES

<u>Cases</u>

*Americold Realty Tr. v. Conagra Foods, Inc.,*
   136 S. Ct. 1012 (2016) ................................................................................6

*Bissonnette v. Podlaski,*
   138 F. Supp. 3d 616 (S.D.N.Y. 2015) ................................................... 13

*Buck v. Davis,*
   137 S. Ct. 759 (2017) .............................................................................. 16

*Carpino v. Nat'l Store Fixtures Inc.,*
   275 A.D.2d 580 (3d Dep't 2000) ........................................................... 13

*Charles Schwab Corp. v. Bank of Am. Corp.,*
   883 F.3d 68 (2d Cir. 2018) ..................................................................... 12

*Crosby v. Bradstreet Co.,*
   312 F.2d 483 (2d Cir. 1963) ................................................................... 10

*CSX Transp., Inc. v. Island Rail Terminal, Inc.,*
   879 F.3d 462 (2d Cir. 2018) ............................................................ 5, 12

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014) ..................................................................................6

*Exch. Comm'n v. Allaire,*
   2019 WL 6114484 (S.D.N.Y. Nov. 18, 2019) ...................................... 10

*Gonzalez v. Crosby,*
   545 U.S. 524 (2005) ............................................................................... 16

*Handelsman v. Bedford Vill. Assocs. Ltd. P'ship,*
   213 F.3d 48 (2d Cir. 2000) .......................................................................6

*Kotlicky v. U.S. Fidelity & Guar. Co.,*
   817 F.2d 6 (2d Cir. 1987) ..........................................................................9

*LaBarbera v. Audax Const. Corp.,*
   971 F. Supp. 2d 273 (E.D.N.Y. 2013) ................................................... 12

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  673 F.3d 50 (2d Cir. 2012) ................................................................. 12

*Medinol Ltd. v. Cordis Corp.*,
  2019 WL 1428342 (S.D.N.Y. Mar. 29, 2019) ................................... 16

*Peacock v. Thomas*,
  516 U.S. 349 (1996) ...................................................................... 7, 11

*Pridgen v. Andresen*,
  113 F.3d 391 (2d Cir. 1997) ............................................................. 15

*Shapiro, Bernstein & Co. v. Continental Record Co.*,
  386 F.2d 426 (2d Cir. 1967) ............................................................. 15

*Stevens v. Miller*,
  676 F.3d 62 (2d Cir. 2012) ................................................................. 9

*U.S. v. One Toshiba Color Television*,
  213 F.3d 147 (3d Cir. 2000) ............................................................. 14

*United Student Aid Funds v. Espinosa*,
  559 U.S. 260 (2010) ......................................................................... 10

*Universitas Educ., LLC v. T.D. Bank, N.A.*,
  2015 WL 9304551 (S.D.N.Y. Dec. 21, 2015) .................................... 17

*Walden v. Fiore*,
  571 U.S. 277 (2014)...................................................................... 13, 14

*Waldman v. Palestine Liberation Org.*,
  835 F.3d 317 (2d Cir. 2016) ............................................................. 12

## Rules

Fed. R. App. P. 4 ....................................................................................... 8

Fed. R. Civ. P. 2 ....................................................................................... 5

Fed. R. Civ. P. 60(b) ...................................................................... Passim

Fed. R. Civ. P. 69 ................................................................................. 5, 12

N.Y. C.P.L.R. § 302 ............................................................................... 13

N.Y. C.P.L.R. § 5225 ...................................................................... 5, 11, 12

## Other Authorities

11 Wright & Miller, Federal Practice and Procedure § 2857 (1973) .................. 9, 16

Fed. Prac. & Proc. Civ. § 2862 (3d ed.).................................................. 10

Respondent Grist Mill Capital, LLC ("GMC") moves under Rule 60(b) for relief from two identical judgments ("Turnover Judgments") entered against GMC and in favor of Universitas Education, LLC ("Universitas")—one in each of the two above-captioned actions.[1]

### PRELIMINARY STATEMENT

An entity, by its nature, can speak only through a natural person. But when this Court issued opinions awarding petitioner Universitas more than $30 million in damages against GMC—an entity—GMC had no natural person to speak for it. By this motion, GMC asks the Court to restore its voice by vacating the resulting judgments in Universitas's favor.

GMC is a bit player in these actions stemming from the alleged misappropriation of life insurance benefits. Alleging that it was the intended beneficiary of those proceeds, Universitas brought an arbitration against Nova Group, Inc. ("Nova")—which had retained the proceeds—leading to an arbitral award in Universitas's favor of $30 million. Universitas then brought one of these actions to confirm the arbitral award, while Nova brought the other to vacate the award. After this Court confirmed the arbitral award, Universitas sought turnover judgments against the entities and individuals to whom Nova had allegedly transferred the life insurance proceeds, including GMC. That motion led to the

---

[1] The Clerk entered the Turnover Judgment on the *Universitas Educ., LLC v. Nova Group, Inc.*, No. 1:11-cv-1590-LTS-HBP docket ("1590 ECF") at No. 475 and on the *Nova Group, Inc. v. Universitas Educ., LLC*, No. 1:11-cv-8726-LTS-HBP docket ("8726 ECF") at No. 304.

entry of the judgments from which GMC now seeks relief: the Turnover Judgments. But when the Court considered Universitas's turnover motion, GMC could not oppose that relief because it lacked a lawyer, and its principal—in prison at the time—could not direct GMC's actions. Confronted with a GMC that had been effectively struck dumb, Universitas could have sought a default. Instead, Universitas chose to exploit GMC's plight, pushing forward on the merits of its motion for turnover, effectively treating GMC as if it could proceed pro se.

GMC should be granted relief under Rule 60(b) for two reasons. First, under Rule 60(b)(4), a Court must relieve a party from a judgment rendered void because of: (i) lack of subject matter jurisdiction; (ii) lack of personal jurisdiction; or (iii) due process errors relating to the party's ability to defend itself. The Turnover Judgments suffer from each of those deficiencies. Lacking counsel and cut off from its incarcerated principal, GMC never had a chance to advance its defenses to this Court's subject matter jurisdiction. GMC also could not argue its defenses to this Court exercising personal jurisdiction over GMC. In fact, GMC could not raise any defense—a status that flouts traditional notions of due process. As the Turnover Judgments are thus void, the Court should grant GMC's motion under Rule 60(b)(4).

Second, the Court should relieve GMC from the Turnover Judgments under Rule 60(b)(6). Courts regularly find that parties with no notice of their time to appeal meet the "extraordinary circumstances" requirement for relief under Rule 60(b)(6). Without counsel or access to its imprisoned principal, GMC had no one

to tell it when the time for its appeal ran. Unsurprisingly then, that time came and went, and GMC did nothing. The Court, therefore, should relieve GMC of the Turnover Judgments under Rule 60(b)(6).

Third and finally, GMC's principal—recently-released respondent Daniel Carpenter—has moved for relief from the Turnover Judgments as entered against him. Should this Court grant Mr. Carpenter relief, GMC would presumably be entitled to relief on the same grounds.

The Court entered the Turnover Judgments against GMC at a time when that entity found itself adrift. As a result, considerations of justice warrant allowing GMC relief from those judgments. Rule 60(b) provides the Court with a mechanism to do so. We, therefore, request that the Court grant GMC relief under that rule.

## FACTS & PROCEDURAL BACKGROUND

GMC is a Connecticut-based limited liability company organized under the laws of the State of Delaware.[2] (*See* January 6, 2020 Declaration of Daniel Carpenter ("Carpenter Dec.") ¶ 1, Exh. A.) GMC loaned funds to the Charter Oak Trust Welfare Benefit Plan ("Charter Oak"), which Charter Oak used to pay the premiums on life insurance policies it held. (*See* Carpenter Dec. ¶ 4.) In return,

---

[2]    Two entities own 100% of the membership interest in GMC: Caroline Financial Group, Inc. ("Caroline")—a Delaware corporation with its principal place of business in Connecticut; and (ii) Grist Mill Holdings LLC ("Holdings"). (*See* Carpenter Dec. ¶ 2.) For its part, Caroline and five charitable trusts hold 100% of the membership interest in Holdings. (*See id.* at ¶ 3.) The trustee for each of those charitable trusts is domiciled in Connecticut.

GMC was to receive a portion of the proceeds from such policies upon the death of the insured to reimburse GMC for its premium advances. (*See* Carpenter Dec. ¶ 4.)

The circuitous path leading to the present motion began with the 2008 death of a man named Sash Spencer, the founder and chair of Holding Capital Group, a private investment firm. (*See* Carpenter Dec. ¶ 5.) Charter Oak held a life insurance policy for Mr. Spencer and received the benefits after his passing. (*See* Carpenter Dec. ¶ 6.) Universitas approached Nova—Charter Oak's sponsor and trustee—claiming entitlement to the proceeds from Mr. Spencer's life insurance policies. Nova refused to remit the proceeds to Universitas, prompting Universitas to bring an arbitration against Nova. In its arbitration, Universitas originally named GMC as a party but dismissed GMC before the arbitration began. (*See* Carpenter Dec. ¶ 7.) Thus, GMC did not participate in the arbitration and the resulting arbitral award did not name GMC as a party—only Nova. (*See* Carpenter Dec. ¶ 8.)

By June 2012, through these actions, Universitas had converted its 2011 arbitral award against Nova into judgments ("Underlying Judgments"). (*See* 1590 ECF No. 41; 8726 ECF No. 34.) As with the arbitration, GMC did not participate in these actions before entry of the Underlying Judgments. (*See* 1590 ECF No. 1; 8726 ECF No. 1.) The Clerk, therefore, entered the Underlying Judgments against Nova—and Nova alone. (*See* 1590 ECF No. 41; 8726 ECF No. 34.)

GMC's direct involvement[3] in these actions began in the fall of 2013 when Universitas filed turnover motions against GMC under Fed. R. Civ. P. 69 and N.Y. C.P.L.R. § 5225 ("Turnover Motions"),[4] seeking what eventually became the Turnover Judgments. (*See* 1590 ECF Docs. No. 308–310; 8726 ECF Docs. No. 214–216.) Those motions sought recovery from GMC, among others (collectively with GMC, "Turnover Respondents"), as an alleged downstream recipient of benefits from the Spencer life insurance policy. (*See* 1590 ECF No. 309; 8726 ECF No. 215.) Universitas's Turnover Motions effectively asserted—via motion practice—a new claim against GMC (and others) for return of allegedly fraudulently conveyed funds.

Though Universitas's motion sought to bring GMC into these actions as a new party defending against a new claim, Universitas neglected to serve GMC with any form of formal process to establish this Court's jurisdiction over GMC. (*See* Carpenter Dec. ¶ 10.) Such papers had particular importance here as GMC holds

---

[3]     Earlier in this proceeding, Universitas had sought post-judgment, non-party discovery from GMC as a purported affiliate of Nova, (*see* 1590 ECF Doc. No. 41; 8726 ECF Doc. No. 34) and had served GMC with a restraining notice. (*See* Carpenter Dec. ¶ 9.)

[4]     Under Fed. R. Civ. P. 69, in enforcing a judgment from this Court, a party follows New York state law procedures. Under New York law, Universitas, as a judgment creditor claiming to have an interest in property no longer in Nova's possession, would have begun a special proceeding. N.Y. C.P.L.R. § 5225(b). As the Federal Rules do not recognize special proceedings, *see* Fed. R. Civ. P. 2, a judgment creditor before this Court seeks turnover by filing a motion. *See CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 468–70 (2d Cir. 2018).

Connecticut and Delaware citizenship for personal jurisdictional purposes.[5] Instead, Universitas's then-counsel emailed the papers to a lawyer named Carole Bernstein, believing she might represent GMC. (*See* 1590 ECF No. 466, at ¶ 6.)[6] Ms. Bernstein responded that she represented GMC, accepting email service of the Turnover Motions. (*See* 1590 ECF No. 466, at ¶ 10, and Exhs. 6–7.) In doing so, Ms. Bernstein did not waive any defenses related to personal jurisdiction. (*See id.*)

In her capacity as GMC's then-counsel, Ms. Bernstein did not file a stand-alone opposition to the Turnover Motions. Instead, Ms. Bernstein merely signed on to an opposition brief filed by Nova's counsel. (*See* 1590 ECF No. 339; 8726 ECF No. 236.) Then, the Court ordered that GMC and others file supplemental briefing and appear for oral argument relating to the Turnover Motions. (*See* 1590 ECF No. 441; 8726 ECF No. 288.) In response, Ms. Bernstein informed the Court that her firm had been "discharged from representing GMC[.]" (*See* 1590 ECF No. 442; 8726 ECF No. 289.) Ms. Bernstein stated that she would not attend oral argument.

---

[5]   As a limited liability company, GMC holds citizenship (for jurisdictional purposes) in each state in which its members hold citizenship. *See Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51–52 (2d Cir. 2000). Meanwhile, the ultimate holders of membership in GMC hold citizenship in Delaware and Connecticut. *See Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (noting that a corporation is a citizen of its state of incorporation and the state in which its principal place of business is located); *Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1016 (2016) (noting that trusts are not distinct legal entities, and the relevant "citizenship" question is where the trustee is a citizen). Thus, GMC holds citizenship not in New York, but in Connecticut and Delaware. *See* note 2, above.

[6] Universitas's counsel at first merely affirmed that he "served" the Turnover Motions papers "by electronic transmission to" GMC's then-counsel Carole Bernstein. (*See* 1590 ECF No. 308-1; 8726 ECF No. 214-1.)

(*See id.*) And she communicated her belief that counsel for another Turnover Respondent would represent GMC. (*See id.*) But no substitute counsel ever appeared on GMC's behalf.

Despite GMC being left without representation—effectively proceeding pro se—the Court continued with proceedings related to the Turnover Motions. Other Turnover Respondents filed the requested supplemental briefing. (*See* 1590 ECF Docs. No. 459–60; 8726 ECF Docs. No. 297–98.) GMC did not file a brief or join in a brief filed by another Turnover Respondent. Then, on the eve of oral argument, the Court entered an order directing Universitas and the Turnover Respondents to be prepared to discuss during that argument: (i) whether the Court had subject matter jurisdiction over the turnover dispute considering the limitations recognized in *Peacock v. Thomas*, 516 U.S. 349, 357 (1996) and decisions applying that precedent; and (ii) whether the Court had personal jurisdiction over each Turnover Respondent. (*See* 1590 ECF No. 464; 8726 ECF No. 299). At that oral argument, no one appeared for GMC to present GMC's defenses relating to subject matter and personal jurisdiction. (*See* 1590 ECF No. 471 at pp. 1–2 (listing appearances).)

The same week the Court heard oral argument on Turnover, (*see* 1590 ECF No. 471 (setting the date for oral argument)), GMC's principal Daniel Carpenter reported to prison. (*See* 1590 ECF No. 465; 8726 ECF No. 300 (stating that Mr. Carpenter would report to prison the same week as oral argument).) Thus, at the very time that GMC lacked representation and effectively proceeded pro se, Mr.

Carpenter could not direct GMC's affairs or select substitute counsel. As a result, GMC had no advocate to represent it as the Court considered its own jurisdiction over GMC.

Without having heard from GMC on jurisdiction (through briefing or oral argument), the Court found GMC jointly and severally liable to Universitas for $30,600,000.00, entering orders to that effect ("Turnover Orders"). (*See* 1590 ECF No. 474 at pp. 23–24; 8726 ECF No. 303 at pp. 23–24.) In doing so, the Court acknowledged that GMC is a non-New York domiciliary. (*See* 1590 ECF No. 474 at p. 5; 8726 ECF No. 303 at p. 5.) But the Court still concluded it had personal jurisdiction over GMC. (*See* 1590 ECF No. 474 at pp. 10–14; 8726 ECF No. 303 at pp. 10–14.) The Court did not address subject matter jurisdiction over the turnover dispute under *Peacock*. The Clerk entered the Turnover Judgments against GMC for the amount set forth in the Turnover Orders. (*See* 1590 ECF No. 475; 8726 ECF No. 304.) Thirty days later, with GMC still unrepresented and Mr. Carpenter languishing in prison, GMC's time to appeal from the Turnover Judgments expired. *See* Fed. R. App. P. 4.

Following entry of the Turnover Judgments, several Turnover Respondents moved for reconsideration of the Turnover Orders contending, in part, that the Court lacked personal jurisdiction over them. (*See* 1590 ECF Docs. No. 481–83; 8726 ECF Docs. No. 308–10.) GMC, still without counsel, did not join in those motions or file a motion of its own. Again, the Court considered arguments relating to personal jurisdiction over Turnover Respondents without hearing from one of

those respondents, GMC. The Court later denied the motion. (*See* 1590 ECF No. 492; 8726 ECF No. 317.)

In November 2020, Mr. Carpenter, no longer incarcerated, moved to vacate the Turnover Judgments as entered against him ("Carpenter Motion"). (*See* 1590 ECF No. 665; 8726 ECF No. 401.) Soon after the undersigned appeared representing GMC.

## ARGUMENT

For more than six years, GMC—an entity—appeared here without counsel while its principal remained incarcerated, unable to effectively direct GMC's conduct. During GMC's rudderless period, the Court issued an opinion finding GMC jointly and severally liable for more than $30 million. In the lead up to and aftermath from that decision, GMC had no one to present to the Court GMC's defenses to this Court's jurisdiction. GMC was effectively in default, but the action proceeded against GMC on the merits. For the reasons below, the resulting judgments—the Turnover Judgments—should be vacated under Rule 60(b).

"In deciding a Rule 60(b) motion, a court must balance the policy in favor of hearing a litigant's claims on the merits against the policy in favor of finality." *Kotlicky v. U.S. Fidelity & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987) (citing 11 Wright & Miller, Federal Practice and Procedure § 2857 (1973)). "The decision whether to grant a party's Rule 60(b) motion is committed to the sound discretion of the district court." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012).

## I.   The Court should grant GMC relief under Rule 60 because GMC never had a chance to present its defenses <u>to this Court's jurisdiction</u>.

Rule 60(b)(4) authorizes this Court to relieve GMC from the Turnover Judgments if those judgments are void. Fed. R. Civ. P. 60(b)(4). A judgment is void "if it is 'so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final.'" *Sec. & Exch. Comm'n v. Allaire*, No. 03CV4087 (DLC), 2019 WL 6114484, at *2 (S.D.N.Y. Nov. 18, 2019) (quoting *United Student Aid Funds v. Espinosa*, 559 U.S. 260, 270 (2010)). Because Rule 60(b)(4) authorizes relief from defective judgments, a party may seek relief under that rule at any time. *See Crosby v. Bradstreet Co.*, 312 F.2d 483, 485 (2d Cir. 1963) (granting relief from a 30-year-old judgment).

Courts have recognized three categories of void judgments: (i) judgments entered despite a lack of subject matter jurisdiction over the claim; (ii) judgments entered despite a lack of personal jurisdiction over the party; and (iii) judgments entered without the party being afforded due process of law because the party could not be heard. *See generally* 11 Wright & Miller, Fed. Prac. & Proc. Civ. § 2862 (3d ed.); *see also Espinosa*, 559 U.S. 260 at 271 (noting that Rule 60(b)(4) applies when "a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard"). As discussed below, the Turnover Judgments are void under each of those categories, entitling GMC to relief.

**A.    The Court should relieve GMC of the Turnover Judgments because GMC never presented its defenses to this Court's exercise of subject matter jurisdiction.**

While it considered Universitas's Turnover Motions, the Court specifically directed each Turnover Respondent to prepare to discuss at oral argument whether the Court had subject matter jurisdiction to resolve claims against it under *Peacock v. Thomas*, 516 U.S. 349 357, and decisions applying *Peacock*. (*See* 1590 ECF No. 464; 8726 ECF No. 299.) But, at the time the Court held oral argument on that issue, GMC lacked counsel and GMC did not appear at the oral argument. Even worse, GMC's principal, Daniel Carpenter, simultaneously could not direct GMC's conduct or, at a minimum, select substitute counsel. Thus, GMC never had the chance to argue that this Court lacked subject matter jurisdiction under *Peacock* and its progeny. And the Court did not address the issue in its resulting Turnover Orders. (*See* 1590 ECF No. 475; 8726 ECF No. 304.) Thus, the Turnover Judgments may be void for lack of subject matter jurisdiction. The Court should therefore relieve GMC of those judgments under Rule 60(b)(4).

**B.    The Court should relieve GMC of the Turnover Judgments because GMC never presented its defenses to the Court's exercise of personal jurisdiction.**

The lack of both counsel and access to its principal also prevented GMC from raising any defenses to this Court's exercise of personal jurisdiction. GMC had such defenses.

We do not dispute that Rule 69 and N.Y. C.P.L.R. § 5225(b) authorize Universitas to enforce a judgment against a non-party before this Court by merely

filing a motion. *See CSX Transp., Inc v. Island Rail Terminal, Inc.*, 879 F.3d 462, 468–70 (2d Cir. 2018). But neither C.P.L.R. § 5225 nor any of the decisions applying that provisions (via Rule 69) relieve Universitas of the obligation to establish this Court's personal jurisdiction over a non-party like GMC. *See LaBarbera v. Audax Const. Corp.*, 971 F. Supp. 2d 273, 282–83 (E.D.N.Y. 2013) (analyzing requirements for service of process for a motion brought under N.Y. C.P.L.R. § 5225). While GMC's then-counsel, Carole Bernstein, apparently waived formal service of process, (s*ee* 1590 ECF No. 466 at ¶ 10, and Exhs. 6–7), Ms. Bernstein did not waive GMC's defenses to personal jurisdiction. And, for jurisdictional purposes, GMC holds non-New York citizenship.

Universitas's Turnover Motions effectively asserted a claim against GMC for fraudulent conveyance. When a party, like Universitas, asserts such a state law claim against an out-of-state party, federal courts engage in a two-step personal jurisdictional analysis. First, they ask whether there is a statutory basis for jurisdiction under the laws of the forum state—here, New York. *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). If such a basis exists, federal courts then ask whether asserting personal jurisdiction over the party would comport with constitutional due process. *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016) (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012)).

Without hearing from GMC, the Court held that it could exercise personal jurisdiction over GMC under Section 302(a)(3)(ii) of New York's long arm statute.

(*See* 1590 ECF No. 474 at pp. 10–15; 8726 ECF No. 303 at pp. 10–15.) Under that provision, a court may decide claims arising from conduct happening outside New York that causes injury within that state, but only when the non-domiciliary "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § Section 302(a)(3)(ii). In determining that it had jurisdiction, the Court's analysis largely turned on the foreseeability of the harm to Universitas within New York—that GMC knew accepting transfers of the proceeds from Charter Oak would have consequences in New York.

The Court erred. Under *Walden v. Fiore*, 571 U.S. 277 (2014)—decided earlier the same year the Court issued the Turnover Orders—the United States Supreme Court narrowed the scope of specific jurisdiction under provisions like Section 302(a)(3)(ii). Following *Walden*, for an exercise of jurisdiction to comply "with Section 302(a)(3)(ii)—and, significantly, with due process more generally— mere knowledge is not enough." *Bissonnette v. Podlaski*, 138 F. Supp. 3d 616, 628 (S.D.N.Y. 2015) (citing *Walden* and collecting cases applying *Walden*'s holding). To be subject to jurisdiction, a party "must purposefully avail itself of the privileges of doing business in New York." *Id.* (citing *Carpino v. Nat'l Store Fixtures Inc.*, 275 A.D.2d 580 (3d Dep't 2000)). Universitas never alleged any such connection between GMC and New York. (*See* 1590 ECF No. 309 at pp. 16–17; 8726 ECF No. 214 at pp. 16–17.) As a result, the Court should have concluded it could not exercise personal jurisdiction over GMC.

With Ms. Bernstein effectively withdrawn and Mr. Carpenter unable to actively direct GMC, GMC never got a chance to argue against this Court's exercise of personal jurisdiction and invoke *Walden*. Regrettably, the other Turnover Respondents failed to cite that decision both in their opposition to the exercise of personal jurisdiction and in moving to reconsider the Turnover Orders. (*See* 1590 ECF Docs. No. 460 & 482; 8726 ECF Docs. No. 298 & 309.) As a likely result, the Court did not address *Walden* in the Turnover Orders. (*See* 1590 ECF No. 474 at pp. 10–15; 8726 ECF No. 303 at pp. 10–15.) In any event, GMC's lost chance to present a potentially outcome-determinative defense to this Court's exercise of personal jurisdiction renders the resulting Turnover Judgments void, entitling GMC to relief under Fed. R. Civ. P. 60(b)(4). The Court should relieve GMC of the Turnover Judgments.

### C.  The Court should relieve GMC of the Turnover Judgments because due process demands it.

The Court should also relieve GMC from the Turnover Judgments because GMC's unrepresented nature deprived it of a chance to oppose the Turnover Motions. GMC was in default. But Universitas asked the Court to resolve the Turnover Motion on the merits—depriving GMC of any mechanism to attack this Court's jurisdiction. Due process, therefore, demands that GMC should have such an opportunity.

Decisions relieving parties of judgment based on considerations of due process typically arise out of defective notice. *See, e.g., U.S. v. One Toshiba Color*

*Television*, 213 F.3d 147 (3d Cir. 2000) (relieving incarcerated defendant from judgment because of insufficient notice).

Here, though Universitas never bothered to serve the Turnover Respondents with formal service of process, GMC does not dispute that it had actual knowledge of the dispute, having accepted electronic service. But at a critical juncture in these proceedings, GMC found itself unable to act. Its counsel withdrew. Its principal went to prison. At that point, GMC effectively proceeded pro se.

In legal usage, appearing pro se means "appearance for one's self." *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997). Because of the essentially fictional nature of an entity such as GMC, a limited liability company, it cannot appear pro se and no individual layperson can appear on its behalf. *See id.* (citing *Shapiro, Bernstein & Co. v. Continental Record Co.*, 386 F.2d 426, 427 (2d Cir. 1967)). Courts, therefore, regularly stay actions when an entity's counsel withdraws to ensure that there is someone to speak for the entity's interests. But, after Ms. Bernstein told the Court she no longer represented GMC, the Court took no steps to ensure GMC retained new counsel. At the same time, being incarcerated curtailed Mr. Carpenter's ability to direct GMC or monitor this action. GMC was left in a conundrum—appearing in the action, but without counsel.

Meanwhile, Universitas chose to overlook GMC's lack of counsel. Rather than move to default GMC, Universitas seized on GMC's lack of representation proceeding on the merits. In the ensuing six years the Court issued the Turnover Orders holding GMC liable to Universitas for more than $30 million and GMC's

deadline to appeal the resulting Turnover Judgments came and went with GMC effectively unable to file an appeal. Like a party who, because of defective notice, had no ability to oppose a claim against her, GMC had no means to voice its opposition. A party unable to defend itself on the merits offends traditional notions of due process. Thus, the Court should hold that the Turnover Judgments are void and relieve GMC from those judgments under Rule 60(b)(4).

## II.    The Court should grant GMC relief under Rule 60 because GMC never got a chance to appeal.

Under Rule 60(b)(6) a court may "relieve a party . . . from a final judgment" for any "reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Relief under Rule 60(b)(6) requires a showing of "extraordinary circumstances." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). In determining whether such circumstances exist, "a court may consider a variety of factors, including, but not limited to, 'the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process.'" *Medinol Ltd. v. Cordis Corp.*, No. 13-CV-1408 (ALC), 2019 WL 1428342, at *2 (S.D.N.Y. Mar. 29, 2019), *aff'd*, 817 F. App'x 973 (Fed. Cir. 2020) (quoting *Buck v. Davis*, 137 S. Ct. 759, 778 (2017)).

The most common "extraordinary circumstance" justifying relief under Rule 60(b)(6) "is when the losing party fails to receive notice of the entry of judgment in time to file an appeal." 11 Wright & Miller Fed. Prac. & Proc. Civ. § 2864 (3d ed.). Here, GMC effectively failed to receive notice of the entry of judgment against it because no one was protecting GMC's interests. By the time the Clerk entered the Turnover Judgments in August 2012, (*see* 1590 ECF No. 475; 8726 ECF No. 304),

GMC had been without counsel for more than four months and Mr. Carpenter had been in prison for nearly two months. GMC had no one to file an appeal from those judgments. Thus, the deadline for GMC to appeal came and went with nothing filed on GMC's behalf. Only when Mr. Carpenter returned home from prison did he examine the dockets and learn that GMC had failed to appeal. (*See* Carpenter Decl. 11.) This motion promptly followed.[7]

In sum, this action involves the sort of "extraordinary circumstance" justifying relief under Rule 60(b)(6). As a result, the Court should relieve GMC of the Turnover Judgments.

## III.   If the Court grants the Carpenter Motion on any grounds, GMC would also be entitled to the same relief.

GMC's principal, Daniel Carpenter, moved for relief under Rule 60(b). (*See* 1590 ECF No. 665; 8726 ECF No. 401.) Should the Court grant the Carpenter Motion and relieve Mr. Carpenter from the Turnover Judgments, GMC should be granted the same relief on the same grounds. Thus, if the Court grants Mr. Carpenter relief, GMC requests that it be granted the same relief for the same reason.[8]

---

[7]       During the ensuing six years, Universitas continued to exploit GMC's lack of representation, seeking relief against GMC. (*See* 1590 ECF No. 493 (granting 1590 ECF No. 485 because "[n]o opposition to the Motion was filed.").) Once again, there was no one to appear for GMC or any other entity controlled by Mr. Carpenter.

[8]       Mr. Carpenter has also filed what he styled as a "letter motion" asking the Court to take judicial notice of Judge Scheindlin's decision in *Universitas Educ., LLC v. T.D. Bank, N.A.*, No. 15-CV-5643 (SAS), 2015 WL 9304551, at *1 (S.D.N.Y. Dec. 21, 2015) and conclude that the Turnover Motion was untimely. (*See*

## CONCLUSION

Justice requires that GMC receive relief from the Turnover Judgments. We respectfully submit that GMC is entitled to that relief under Rules 60(b)(4) and 60(b)(6).

Dated:   New York, New York
         January 5, 2021

Respectfully submitted,

**MINTZ & GOLD LLP**

 /s/ Roger Stavis
  Roger Stavis
  Kevin M. Brown
  600 Third Avenue, 25th Floor
  New York, New York 10016
  (212) 696-4848 (t)
  (212) 696-1231 (f)
  stavis@mintzandgold.com
  brown@mintzandgold.com
  *Attorneys for respondent Grist Mill
  Capital, LLC*

---

1590 ECF No. 675). If the Court grants Mr. Carpenter relief on those grounds, GMC should be granted the same relief.