**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNIVERSITAS EDUCATION, LLC, | |
| Petitioner, | |
| v. | No.: 1:11-cv-1590-LTS-HBP |
| NOVA GROUP, INC., as trustee, sponsor, and fiduciary of THE CHARTER OAK TRUST WELFARE BENEFIT PLAN, et al. | Hon. Laura Taylor Swain |
| Respondent. | **ORAL ARGUMENT REQUESTED** |
| NOVA GROUP, INC., as trustee, sponsor, and fiduciary of THE CHARTER OAK TRUST WELFARE BENEFIT PLAN, et al. | No.: 1:11-cv-8726-LTS-HBP |
| Petitioner, | |
| v. | |
| UNIVERSITAS EDUCATION, LLC, | |
| Respondent. | |

**RESPONDENT GRIST MILL CAPITAL, LLC'S**
**MEMORANDUM OF LAW IN SUPPORT OF**
**ITS MOTION UNDER RULE 60(b) FOR RELIEF FROM JUDGMENTS**

**MINTZ & GOLD LLP**

Roger L. Stavis
Kevin M. Brown
600 Third Avenue, 25th Floor
New York, New York 10016
(212) 696-4848 (t)
(212) 696-1231 (f)
stavis@mintzandgold.com
brown@mintzandgold.com

*Attorneys for respondent Grist Mill Capital, LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ii

PRELIMINARY STATEMENT ................................................................................. 1

FACTS AND PROCEDURAL BACKGROUND ....................................................... 3

ARGUMENT ............................................................................................................. 8

    I.    The Court should relieve GMC from the judgments under Rule 60(b)(4).........9

        A.  Universitas's unilateral decision to pursue a judgment on the merits against an unrepresented and defaulting GMC denied GMC due process entitling GMC to relief under Rule 60(b)(4)..............................................................10

        B.  The Court should vacate the Turnover Judgments under Rule 60(b)(4) as void for lack of personal jurisdiction under Walden v. Fiore.......................13

    II.    The Court should grant GMC relief under Rule 60(b)(6) because GMC never got a chance to appeal..........................................................................16

CONCLUSION.........................................................................................................17

# TABLE OF AUTHORITIES

## Cases

*"R" Best Produce, Inc.* v. DiSapio,
  540 F.3d 115 (2d Cir. 2008)...................................................................... 10, 11

*Americold Realty Tr. v. Conagra Foods, Inc.*,
  136 S. Ct. 1012 (2016) ................................................................................. 5, 6

*Au Bon Pain Corp. v. Artect, Inc.*,
  653 F.2d 61 (2d Cir.1981) ...............................................................................11

*Beata Music LLC v. Danelli*,
  No. 18 CV 6354 (JGK), 2021 WL 195708 (S.D.N.Y. Jan. 20, 2021) ....................11

*Bissonnette v. Podlaski*,
  138 F. Supp. 3d 616 (S.D.N.Y. 2015) ............................................................... 14

*Buck v. Davis*,
  137 S. Ct. 759 (2017) ..................................................................................... 16

*Carpino v. Nat'l Store Fixtures Inc.*,
  275 A.D.2d 580 (3d Dep't 2000) ...................................................................... 14

*Charles Schwab Corp. v. Bank of Am. Corp.*,
  883 F.3d 68 (2d Cir. 2018) ............................................................................. 14

*City of New York v. Mickalis Pawn Shop, LLC*,
  645 F.3d 114 (2d Cir. 2011) ............................................................................ 12

*Crosby v. Bradstreet Co.*,
  312 F.2d 483 (2d Cir. 1963) .............................................................................9

*CSX Transp., Inc. v. Island Rail Terminal, Inc.*,
  879 F.3d 462 (2d Cir. 2018) ..............................................................................5

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)..........................................................................................5

*Exch. Comm'n v. Allaire*,
  No. 03-CV-4087 (DLC), 2019 WL 6114484 (S.D.N.Y. Nov. 18, 2019) ................9

*Gonzalez v. Crosby*,
  545 U.S. 524 (2005)...........................................................................16

*Hamilton v. Atlas Turner, Inc.*,
  197 F.3d 58 (2d Cir. 1999) ...............................................................12

*Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*,
  213 F.3d 48 (2d Cir. 2000) ..................................................................5

*Hood v. Ascent Med. Corp.*,
  No. 13-cv-0628 (RWS) (DF), 2016 WL 1366920 (S.D.N.Y. Mar. 3, 2016) ........10

*Johnson & Johnson v. Azam Int'l Trading*,
  No. 07 -CV-4302 (SLT) (SMG), 2013 WL 4048295 (E.D.N.Y. Aug. 9, 2013)....10

*Kotlicky v. U.S. Fidelity & Guar. Co.*,
  817 F.2d 6 (2d Cir. 1987) .....................................................................8

*LaBarbera v. Audax Const. Corp.*,
  971 F. Supp. 2d 273 (E.D.N.Y. 2013) .................................................13

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  673 F.3d 50 (2d Cir. 2012).................................................................14

*Medinol Ltd. v. Cordis Corp.*,
  No. 13-CV-1408 (ALC), 2019 WL 1428342 (S.D.N.Y. Mar. 29, 2019) ..............16

*Pridgen v. Andresen*,
  113 F.3d 391 (2d Cir. 1997) ...............................................................12

*Shapiro, Bernstein & Co. v. Continental Record Co.*,
  386 F.2d 426 (2d Cir. 1967)...............................................................12

*Stevens v. Miller*,
  676 F.3d 62 (2d Cir. 2012)....................................................................9

*United Student Aid Funds v. Espinosa*,
  559 U.S. 260 (2010)..............................................................................9

*Walden v. Fiore*,
  571 U.S. 277 (2014) ....................................................................6, 13, 14, 15

*Waldman v. Palestine Liberation Org.*,
  835 F.3d 317 (2d Cir. 2016) ..............................................................14

## Rules

Fed. R. App. P. 4 ...................................................................................8

Fed. R. Civ. P. 2 ....................................................................................5

Fed. R. Civ. P. 11(c)(2) ..........................................................................8

Fed. R. Civ. P. 12(h) .............................................................................11

Fed. R. Civ. P. 60(b) ....................................................................1, 3, 12

Fed. R. Civ. P. 60(b)(4) ................................................................ passim

Fed. R. Civ. P. 69 ...................................................................................5

Fed. R. Civ P 55....................................................................................11

N.Y. C.P.L.R. § 302(a)(3)(ii)..........................................................14, 15

N.Y. C.P.L.R. § 5225 .................................................................5, 13, 14

N.Y. C.P.L.R. § 5225(b) .........................................................................5

Rule 60(b)(4) or 60(b)(6).......................................................................3

Rule 60(b)(6)..................................................................................16, 17

Rules 60(b)(4) and 60(b)(6) ................................................................ 17

## Other Authorities

11 Wright & Miller, Federal Practice and Procedure § 2857 (1973) ........................8

Fed. Prac. & Proc. Civ. § 2862 (3d ed.)................................................9

Respondent Grist Mill Capital, LLC ("GMC") slipped through the cracks of these proceedings for turnover. Silenced at a critical juncture—effectively proceeding pro se—GMC found itself unable to oppose Universitas Education, LLC's ("Universitas") request for turnover. The Court, without hearing from GMC, then entered identical judgments ("Turnover Judgments") against GMC and in favor of Universitas in each of the two above-captioned actions.[1] Because GMC deserves a chance to speak, GMC now moves under Fed. R. Civ. P. 60(b) for relief from those Turnover Judgments.

## PRELIMINARY STATEMENT

An entity, by its nature, can speak only through a natural person. But when this Court issued its decisions awarding petitioner Universitas more than $30 million in damages against GMC—an entity—GMC had no natural person through which to speak. With this motion, GMC asks the Court to restore GMC's voice by vacating the resulting judgments in Universitas's favor.

In the larger scheme of these actions—actions that stem from the alleged misappropriation of life insurance benefits—GMC is no more than a bit player. Universitas contended in its underlying claims that Universitas was the intended beneficiary of individual life insurance proceeds retained—not by GMC—but by

---

[1]    The Clerk entered the Turnover Judgment on the *Universitas Education, LLC v. Nova Group, Inc.*, No. 1:11-cv-1590-LTS-HBP docket at No. 475 and on the *Nova Group, Inc v. Universitas Educ., LLC*, No. 1:11-cv-8726-LTS-HBP docket at No. 304. All later references to an "ECF No." in this document are references to the docket in *Universitas Educ., LLC v. Nova Group, Inc.*, No. 1:11-cv-1590-LTS-HBP.

Nova Group, Inc. ("Nova"). Thus, Universitas brought an arbitration against Nova, leading to an arbitral award in Universitas's favor for $30 million. These actions followed: one to confirm the arbitral award, the other to vacate it.

GMC's involvement here began when Universitas sought post-judgment turnover relief from entities and individuals Universitas believed had received the life insurance proceeds from Nova, including GMC. But GMC could not meaningfully participate in the proceeding on the turnover motions. GMC's counsel had been discharged; its principal had recently been incarcerated. As a result, GMC had lost the ability to speak.

This motion focuses on what Universitas chose to do next—what Universitas did once it learned that GMC had lost the ability to speak. Entities cannot proceed pro se. GMC failed to submit papers opposing Universitas's requested relief. At that point, Universitas should have sought a default judgment against the functionally unrepresented GMC. Instead, Universitas treated GMC as if GMC could proceed pro se. By the time the Court (overlooking GMC's lack of counsel) issued orders granting turnover, GMC had been proceeding in these actions without counsel or guidance for months. The Clerk then entered the Turnover Judgments without the Court ever hearing from the silenced GMC.

Unless the Court grants GMC relief, Universitas's unilateral decision to ignore GMC's predicament will seal GMC's fate. Courts do not ordinarily afford default judgments preclusive effect on questions of jurisdiction. Thus, had Universitas sought a default, GMC could now challenge the resulting default

judgments on jurisdictional grounds under Rule 60(b). Instead, Universitas proceeded against the silenced GMC nominally on the merits. And Universitas will now presumably contend that the Court should give the resulting Turnover Judgments preclusive effect. In doing so, Universitas will seek to deny GMC the opportunity to ever speak to jurisdictional issues. At best, Universitas ignored GMC's predicament. At worst, Universitas exploited GMC's unrepresented status intending to gain the benefit of preclusion. The Court should not reward Universitas's conduct either way. The Court should relieve GMC from the Turnover Judgments.

Having retained new counsel after more than six years of silence, GMC asks this Court to restore GMC's voice. The Court should grant GMC relief from the Turnover Judgments either under Rule 60(b)(4) or 60(b)(6).[2]

## FACTUAL & PROCEDURAL BACKGROUND

GMC is a Connecticut-based limited liability company organized under the laws of the State of Delaware.[3] (*See* Feb. 19, 2021, Declaration of Daniel Carpenter

---

[2]     After his recent release from prison, GMC's principal, Dan Carpenter, also moved for relief under Rule 60(b). (*See* ECF Nos. 665, 675.) GMC moves on grounds distinct from those put forth by Mr. Carpenter—who as an individual could proceed pro se. But, should the Court grant Mr. Carpenter relief on any of his proposed grounds, GMC presumably would be entitled to such relief as well.

[3]     Two entities own 100% of the membership interest in GMC: (i) Caroline Financial Group, Inc. ("Caroline")—a Delaware corporation with its principal place of business in Connecticut; and (ii) Grist Mill Holdings LLC ("Holdings"). (*See* Carpenter Dec. ¶ 2.) For its part, Caroline and five charitable trusts hold 100% of the membership interest in Holdings. (*See id.* ¶ 3.) The trustee for each of those charitable trusts is domiciled in Connecticut. (*See id.*)

("Carpenter Dec.") ¶ 1, Exh. A.) GMC had a business relationship with Charter Oak Trust Welfare Benefit Plan ("Charter Oak") under which GMC loaned money to Charter Oak. Charter Oak then used those funds to pay the premiums on life insurance policies it held. (*See* Carpenter Dec. ¶ 4.) In return, GMC received a portion of the proceeds from such policies upon the insured's death to repay GMC for the premiums advanced. (*See* Carpenter Dec. ¶ 4.) Nova served as Charter Oak's sponsor and trustee.

Charter Oak held a life insurance policy for a man named Sash Spencer and received the benefits from that policy after Mr. Spencer's 2008 passing. (*See* Carpenter Dec. ¶ 5–6.) Universitas then approached Nova, Charter Oak's sponsor, claiming that Universitas was the beneficiary of Mr. Spencer's policy and asking Nova to remit the proceeds. When Nova refused, Universitas began an arbitration against Nova. Though Universitas originally named GMC as a party to the arbitration, Universitas dismissed GMC before the arbitration started. (*See* Carpenter Dec. ¶ 7.) Thus, GMC did not participate in the arbitration. The resulting arbitral award did not name GMC as a party—only Nova. (*See* Carpenter Dec. ¶ 8.)

By June 2012, through these actions, Universitas had converted its 2011 arbitral award against Nova into judgments ("Underlying Judgments"). (*See* ECF No. 41.) As with the arbitration, GMC did not participate in these actions before the entry of the Underlying Judgments. (*See* ECF No. 1.) Thus, the Clerk entered the Underlying Judgments against Nova—and Nova alone. (*See* ECF No. 41.)

GMC's direct involvement[4] in these actions began in the fall of 2013 when Universitas filed turnover motions against GMC under Fed. R. Civ. P. 69 and N.Y. C.P.L.R. § 5225 ("Turnover Motions").[5] Those motions sought recovery from GMC, among others (collectively with GMC, "Turnover Respondents"), as an alleged downstream recipient of benefits from the Spencer life insurance policy. (*See* ECF No. 309.) Universitas's Turnover Motions effectively asserted—via motion practice—a new claim against GMC (and others) for the return of allegedly fraudulently conveyed funds.

GMC holds Connecticut and Delaware citizenship for personal jurisdictional purposes.[6] Universitas should have served GMC with formal service of process to

---

[4]     Earlier in this proceeding, Universitas had sought post-judgment, non-party discovery from GMC as a purported affiliate of Nova, (*see* ECF No. 41), and had served GMC with a restraining notice. (*See* Carpenter Dec. ¶ 9.)

[5]     Under Fed. R. Civ. P. 69, in enforcing a judgment from this Court, a party follows New York state law procedures. Under New York law, Universitas, as a judgment creditor claiming to have an interest in property no longer in Nova's possession, would have begun a special proceeding. N.Y. C.P.L.R. § 5225(b). As the Federal Rules do not recognize special proceedings, *see* Fed. R. Civ. P. 2, a judgment creditor before this Court may seek turnover by filing a motion. *See CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 468–70 (2d Cir. 2018).

[6]     As a limited liability company, GMC holds citizenship (for jurisdictional purposes) in each state in which its members have citizenship. *See Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51–52 (2d Cir. 2000). Meanwhile, the ultimate holders of membership in GMC hold citizenship in Delaware and Connecticut. *See Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (noting that a corporation is a citizen of its state of incorporation and the state of its principal place of business); *Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1016 (2016) (noting that trusts are not distinct legal entities, and the relevant "citizenship" question is where the trustee is a citizen). Thus, GMC holds citizenship, not in New York, but Connecticut and Delaware. *See* note 3 above.

establish this Court's jurisdiction over GMC, but Universitas never did. (*See* Carpenter Dec. ¶ 10.) Instead, Universitas's then-counsel emailed the claim-initiating papers to a lawyer named Carole Bernstein. Universitas believed Ms. Bernstein might represent GMC and another Turnover Respondent, Avon Capital LLC ("Avon"). (*See* ECF No. 466 ¶ 6.) Ms. Bernstein responded that she represented GMC and Avon, accepting service by email of the Turnover Motions. (*See* ECF No. 466 ¶ 10, and Exhs. 6–7.) In doing so, Ms. Bernstein did not waive any defenses related to personal jurisdiction. (*See id.*)

When the time came for GMC to file its response to Universitas's Turnover Motions, Ms. Bernstein did not file a stand-alone opposition. Instead, Ms. Bernstein merely signed on to an opposition brief filed by Nova's counsel. (*See* ECF No. 339.) As discussed below, months later, the Court asked for supplemental briefing from Universitas and the Turnover Respondents on jurisdictional issues.

Meanwhile, in February 2013—after Ms. Bernstein joined the November 2013 opposition brief, (ECF No. 339), but before this Court took up the jurisdictional issues in mid-2014, (*see* ECF No. 441)—the Supreme Court of the United States released its opinion in *Walden v. Fiore*, 571 U.S. 277 (2014). That decision addressed the various states' ability to exercise personal jurisdiction over out-of-state defendants who allegedly caused harm in the forum state—like GMC here.

But GMC never had a chance to speak to the Court about *Walden v. Fiore*'s effect on this Court's assertion of jurisdiction over GMC. In May 2014, the Court

ordered the Turnover Respondents to file supplemental briefing addressing jurisdictional issues and appear for a hearing relating to the Turnover Motions. (*See* ECF No. 441.) In response, Ms. Bernstein filed a letter informing the Court that her firm had been "discharged from representing GMC and Avon[.]" Ms. Bernstein stated that another of the Turnover Respondent's counsel would represent GMC and Avon. (ECF No. 442.)

Ms. Bernstein never formally withdrew as counsel for GMC. After filing her May 2014 letter, she never participated here again on GMC's behalf as GMC defaulted. The other Turnover Respondents—including Ms. Bernstein's other former client Avon—filed the Court-requested supplemental briefing on jurisdictional issues. (ECF Nos. 459–60.) GMC neither filed its own brief nor joined that of any other Turnover Respondent. The Court then entered an order directing Universitas and the Turnover Respondents to be prepared to discuss during oral argument whether the Court had personal jurisdiction over each Turnover Respondent. (ECF No. 464). No one appeared at that oral argument on GMC's behalf. (ECF No. 471 at pp. 1–2 (listing appearances).)

Meanwhile, as the Court held that oral argument on turnover, (*see* ECF No. 471), GMC's principal, Daniel Carpenter, reported to prison. (*See* ECF No. 465.) With no advocate to represent it on any issue just as the Court considered its jurisdiction over GMC, GMC defaulted.

Universitas, at best, then ignored GMC's default. Universitas never sought a default judgment against GMC. And the Court never directed GMC to obtain

substitute counsel. Instead, the Court proceeded effectively on the merits. It entered the orders finding GMC jointly and severally liable to Universitas for $30,600,000.00. (ECF No. 474 at pp. 23–24.) The Clerk then entered the Turnover Judgments against GMC. (ECF No. 475.) And thirty days after that, with GMC still unrepresented and Mr. Carpenter in prison, GMC's time to appeal from the Turnover Judgments expired. *See* Fed. R. App. P. 4.[7]

In November 2020, Mr. Carpenter, no longer incarcerated, moved to vacate the Turnover Judgments as entered against him ("Carpenter Motion"). (*See* ECF No. 665.) Soon after, the undersigned appeared, representing GMC.[8]

## ARGUMENT

GMC should be relieved of the Turnover Judgments under either Rule 60(b)(4) or 60(b)(6).

"In deciding a Rule 60(b) motion, a court must balance the policy in favor of hearing a litigant's claims on the merits against the policy in favor of finality." *Kotlicky v. U.S. Fidelity & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987) (citing 11 Wright

---

[7]     Following entry of the Turnover Judgments, several Turnover Respondents moved for reconsideration of the Turnover Orders arguing, among other things, that the Court lacked personal jurisdiction over them. (ECF No. 481–83.) GMC, still without counsel, neither joined those motions nor filed a motion of its own.

[8]     Following GMC's original motion for relief under Rule 60(b) (ECF No. 678–81), counsel for Universitas informed GMC that Universitas would seek sanctions against GMC's counsel. Universitas's counsel stated it would seek such sanctions even if GMC corrected its motion under Rule 11's safe harbor provision. Fed. R. Civ. P. 11(c)(2). To be safe, GMC elected to withdraw its prior motion and submit this motion in its place.

& Miller, Federal Practice and Procedure § 2857 (1973)). "The decision whether to grant a party's Rule 60(b) motion is committed to the sound discretion of the district court[.]" *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012). As discussed below, the Court should exercise that discretion here.

## I.   The Court should relieve GMC from the judgments under Rule 60(b)(4).

Rule 60(b)(4) authorizes this Court to relieve GMC from the Turnover Judgments if those judgments are void. Fed. R. Civ. P. 60(b)(4). "A judgment is void if it is 'so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final.'" *Sec. & Exch. Comm'n v. Allaire*, No. 03-CV-4087 (DLC), 2019 WL 6114484, at *2 (S.D.N.Y. Nov. 18, 2019) (quoting *United Student Aid Funds v. Espinosa*, 559 U.S. 260, 270 (2010)). Because Rule 60(b)(4) authorizes relief from defective judgments, a party may seek relief under that rule at any time. *See Crosby v. Bradstreet Co.*, 312 F.2d 483, 485 (2d Cir. 1963) (granting relief from a 30-year-old judgment). Courts have recognized various deficiencies rendering a judgment void, including that the court lacked personal jurisdiction over a party and for an absence of due process. *See generally* 11 Wright & Miller, Fed. Prac. & Proc. Civ. § 2862 (3d ed.); *see also Espinosa*, 559 U.S. 260 at 271 (noting that Rule 60(b)(4) applies when "a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard"). GMC seeks relief from the void Turnover Judgments because Universitas chose to proceed as if GMC could appear pro se. In doing so, Universitas denied GMC a chance to oppose this Court's

assertion of personal jurisdiction over GMC. Thus, no matter if the Court determines that GMC was denied due process or that the Court lacked personal jurisdiction over GMC, it should grant GMC relief.

### A. Universitas's unilateral decision to pursue a judgment on the merits against an unrepresented and defaulting GMC denied GMC due process entitling GMC to relief under Rule 60(b)(4).

Universitas's decision to proceed against GMC on the merits—rather than seek a default—effectively denied GMC due process. It denied GMC the opportunity ever to raise an argument based on lack of personal jurisdiction. The Court, therefore, should grant GMC relief.

In applying Rule 60(b)(4) to arguments based on lack of personal jurisdiction, courts distinguish between judgments entered on a default and judgments entered on the merits. An out-of-state defendant, like GMC, may always "ignore judicial proceedings and challenge any ensuing default judgment in a collateral proceeding[,]" under Rule 60(b)(4). *Hood v. Ascent Med. Corp.*, No. 13-cv-0628 (RWS) (DF), 2016 WL 1366920, at *6 (S.D.N.Y. Mar. 3, 2016), report and recommendation adopted, No. 13 CIV. 628 (RWS), 2016 WL 3453656 (S.D.N.Y. June 20, 2016), *aff'd*, 691 F. App'x 8 (2d Cir. 2017) (quoting *Johnson & Johnson v. Azam Int'l Trading*, No. 07 -CV-4302 (SLT) (SMG), 2013 WL 4048295, at *4 (E.D.N.Y. Aug. 9, 2013)); *see also "R" Best Produce, Inc. v. DiSapio*, 540 F.3d 115, 123 (2d Cir. 2008) ("[V]oidness of a judgment for lack of personal jurisdiction can be asserted on a collateral challenge after entry of a default judgment.") But a party that participates in an action waives any defense based on personal jurisdiction

under Fed. R. Civ. P. 12(h) if the party does not timely assert such a defense. *DiSapio*, 540 F.3d at 123 (noting that "an appearing party is deemed to waive lack of personal jurisdiction by not properly asserting it in a timely motion or pleading, but a non-appearing party with notice may suffer a default judgment and later seek relief under Rule 60(b)(4)"). Thus, as a practical matter, meritorious collateral attacks to a court's personal jurisdiction under Rule 60(b)(4) arise almost exclusively from default judgments.

This matter presents what should be an exception to that rule. GMC neither ignored these actions entirely nor participated in the actions on the merits. GMC appeared and effectively joined in an answer asserting a personal jurisdiction defense—preserving that defense for purposes of Rule 12(h). (*See* ECF No. 339). But GMC then failed to defend these actions when it did not submit the Court-requested supplemental briefing on personal jurisdiction. (*See* ECF Nos. 459–60). It failed to appear for oral argument on personal jurisdiction. (*See* ECF No. 471 at 1–2 (listing appearances).). Thus, GMC defaulted under Fed. R. Civ P 55. *See, e.g.*, *Beata Music LLC v. Danelli*, No. 18 CV 6354 (JGK), 2021 WL 195708, at *4 (S.D.N.Y. Jan. 20, 2021) (holding that a party defaulted post-answer after failing to defend an action); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981) (holding that defendant failed to "otherwise defend" by "failing to appear for a deposition, dismissing counsel, giving vague and unresponsive answers to

interrogatories, and failing to appear for trial").[9] But Universitas never sought a default judgment against GMC—a move that would have preserved GMC's ability to collaterally challenge the Court's personal jurisdiction under Rule 60(b)(4).

Universitas unilaterally chose to proceed against GMC on the merits. Unless the Court grants GMC relief, Universitas's decision will prevent GMC from ever raising a personal jurisdiction defense on the merits. GMC could not present such a defense in these actions because it had been silenced by the departure of its counsel and its principal's incarceration. As a result, GMC effectively proceeded pro se. In legal usage, appearing pro se means "appearance for one's self." *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997). Because of the essentially fictional nature of an entity such as GMC, it cannot appear pro se. And no individual layperson can appear on its behalf. *See id.* (citing *Shapiro, Bernstein & Co. v. Continental Record Co.*, 386 F.2d 426, 427 (2d Cir. 1967)). Thus, courts regularly stay actions when an entity's counsel withdraws to ensure that someone speaks for the entity's interests. But, after Ms. Bernstein told the Court she no longer represented GMC, the Court took no steps to ensure GMC retained new counsel. At the same time, being incarcerated curtailed Mr. Carpenter's ability to direct

---

[9] A defaulting party's ability to challenge personal jurisdiction via Rule 60(b) after participating in the litigation depends on the extent of the party's participation. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 138–42 (2d Cir. 2011). But merely answering—and participating no further—does not rise to the level of a waiver of defenses based on personal jurisdiction. *See Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 62 (2d Cir. 1999) (finding a waiver after four years of participation on the merits by the defendant).

GMC or monitor this action. GMC was left in a conundrum—appearing in the action but without counsel. GMC had no means to raise a defense of lack of personal jurisdiction.

Universitas's decision to pursue a judgment on the merits against an effectively mute party cannot be squared with notions of due process. If the Court does not vacate the Turnover Judgments, GMC would never have a chance to challenge this Court's assertion of personal jurisdiction. Thus, the Court should hold that the Turnover Judgments are void. The Court should relieve GMC from those judgments under Rule 60(b)(4)—allowing GMC to assert its defense of lack of personal jurisdiction now.

### B.   The Court should vacate the Turnover Judgments under Rule 60(b)(4) as void for lack of personal jurisdiction under *Walden v. Fiore*.

Universitas's decision to pursue a judgment on the merits against a silenced GMC, standing alone, is a basis for the Court to relieve GMC from the Turnover Judgments. But the timing of GMC's decision, coming just months after the Supreme Court of the United States released its opinion in *Walden v. Fiore*, 571 U.S. 277 (2014), offers another basis for relief because under *Walden v. Fiore*, this Court lacked personal jurisdiction. As a result, the Turnover Judgments are void, and the Court should vacate those judgments under Rule 60(b)(4).

Neither C.P.L.R. § 5225 nor any of the decisions applying that provision (via Rule 69) relieve Universitas of the obligation to establish this Court's personal jurisdiction over an out-of-state non-party like GMC. *See LaBarbera v. Audax*

*Const. Corp.*, 971 F. Supp. 2d 273, 282–83 (E.D.N.Y. 2013) (analyzing requirements for service of process for a motion brought under N.Y. C.P.L.R. § 5225). When a party, like Universitas, asserts a state law claim against an out-of-state party, federal courts engage in a two-step personal jurisdictional analysis. First, they ask whether there is a statutory basis for jurisdiction under the forum state's laws—here, New York. *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). If such a basis exists, federal courts then ask whether asserting personal jurisdiction over the party would suit constitutional due process. *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016) (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012)).

Under *Walden v. Fiore*, 571 U.S. 277 (2014), the United States Supreme Court narrowed the permissible scope of specific jurisdiction under provisions like N.Y. C.P.L.R. § 302(a)(3)(ii). Following *Walden*, for an exercise of jurisdiction to comply "with Section 302(a)(3)(ii)—and, significantly, with due process more generally—mere knowledge is not enough." *Bissonnette v. Podlaski*, 138 F. Supp. 3d 616, 628 (S.D.N.Y. 2015) (citing *Walden* and collecting cases applying *Walden*'s holding). To be subject to jurisdiction, a party "must purposefully avail itself of the privileges of doing business in New York." *Id.* (citing *Carpino v. Nat'l Store Fixtures Inc.*, 275 A.D.2d 580 (3d Dep't 2000)). Universitas never alleged any such connection between GMC and New York. (*See* ECF No. 309 at pp. 16–17.) As a

result, the Court should have concluded it could not exercise personal jurisdiction over GMC.

But GMC never had a chance to speak to the Court about *Walden v. Fiore*'s effect on this Court's assertion of jurisdiction over GMC. In May 2014—after the decision in *Walden v. Fiore*—the Court ordered the Turnover Respondents to file supplemental briefing addressing jurisdictional issues and appear for a hearing relating to the Turnover Motions. (*See* ECF No. 441). GMC, rendered mute, never participated in those proceedings.

Without hearing from GMC, the Court held that it could exercise personal jurisdiction over GMC under Section 302(a)(3)(ii) of New York's long-arm statute. (*See* ECF No. 474 at pp. 10–14.) Under that provision, a court may decide claims arising from conduct happening outside New York that causes injury within that state only when the non-domiciliary "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. §302(a)(3)(ii). In determining that it had jurisdiction, the Court's analysis essentially turned on the foreseeability of the harm to Universitas within New York—that GMC knew accepting transfers of the proceeds from Charter Oak would have consequences in New York. As that analysis cannot be squared with *Walden v. Fiore*, the Court erred.

With Ms. Bernstein effectively withdrawn and Mr. Carpenter unable to actively direct GMC, GMC never got a chance to argue against this Court's exercise of personal jurisdiction and invoke *Walden v. Fiore*. And the other Turnover

Respondents did not cite that decision in their various papers opposing the Court's assertion of personal jurisdiction over them. (*See* ECF Nos. 460 & 482.) As a likely result, the Court did not address *Walden* in the Turnover Orders. (*See* ECF No. 474 at pp. 10–15.) In any event, GMC's lost chance to present a potentially outcome-determinative defense to this Court's exercise of personal jurisdiction renders the resulting Turnover Judgments void. The Court should grant GMC relief under Fed. R. Civ. P. 60(b)(4). The Court should relieve GMC of the Turnover Judgments.

## II.   The Court should grant GMC relief under Rule 60(b)(6) because GMC never got a chance to appeal.

Under Rule 60(b)(6), a court may "relieve a party . . . from a final judgment" for any "reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Relief under Rule 60(b)(6) requires a showing of "extraordinary circumstances." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). In determining whether such circumstances exist, "a court may consider a variety of factors, including, but not limited to, 'the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process.'" *Medinol Ltd. v. Cordis Corp.*, No. 13-CV-1408 (ALC), 2019 WL 1428342, at *2 (S.D.N.Y. Mar. 29, 2019), *aff'd*, 817 F. App'x 973 (Fed. Cir. 2020) (quoting *Buck v. Davis*, 137 S. Ct. 759, 778 (2017)).

The most common "extraordinary circumstance" justifying relief under Rule 60(b)(6) "is when the losing party fails to receive notice of the entry of judgment in time to file an appeal." 11 Wright & Miller Fed. Prac. & Proc. Civ. § 2864 (3d ed.). GMC effectively failed to receive notice of the entry of judgment against it because no one was protecting GMC's interests. By the time the Clerk entered the Turnover

Judgments in August 2012, (*see* ECF No. 475), GMC had been without counsel for more than four months. And Mr. Carpenter had been in prison for nearly two months. GMC had no one to file an appeal from those judgments. Thus, the deadline for GMC to appeal came and went with nothing filed on GMC's behalf. When Mr. Carpenter returned home from prison, he examined the dockets and learned that GMC had failed to appeal. (*See* Carpenter Dec. ¶ 11.) This motion promptly followed.[10]

In sum, this action involves the sort of "extraordinary circumstance" justifying relief under Rule 60(b)(6). As a result, the Court should relieve GMC of the Turnover Judgments.

## CONCLUSION

Justice requires that GMC receive relief from the Turnover Judgments. We respectfully submit that GMC is entitled to that relief under Rules 60(b)(4) and 60(b)(6).

Dated:   New York, New York
          Feb. 19, 2021

Respectfully submitted,

**MINTZ & GOLD LLP**

 /s/ Roger Stavis   
   Roger Stavis
   Kevin M. Brown

---

[10]      Universitas continued to exploit GMC's lack of representation during the ensuing six years, seeking relief against GMC. (*See* ECF No. 493 (granting ECF No. 485 because "[n]o opposition to the Motion was filed").) Once again, there was no one to appear for GMC.

600 Third Avenue, 25th Floor
New York, New York 10016
(212) 696-4848 (t)
(212) 696-1231 (f)
stavis@mintzandgold.com
brown@mintzandgold.com
*Attorneys for respondent Grist Mill
Capital, LLC*