RECEIVED
SDNY PRO SE OFFICE

2021 FEB 26  AM 9: 51

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNIVERSITAS EDUCATION, LLC, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | **11 CIVIL 1590 (LTS) (HPB)** |
| | § | **11 CIVIL 8726 (LTS) (HPB)** |
| NOVA GROUP, INC, | § | |
| Respondent. | § | |

### NOTICE OF MOTION TO VACATE PLAINTIFF'S JUDGMENT PURSUANT TO RULE 60(d)(3) FOR FRAUD ON THE COURT

PLEASE TAKE NOTICE that upon the Declaration of Petitioner *pro se*, Daniel E. Carpenter, dated February 23, 2021 and all attached exhibits that are accompanying Petitioner's Memorandum of Law, the Petitioner will move this Court at a date and time determined by this Court and pursuant to the Court's inherent authority under Fed.R.Civ.P. Rule 60(d)(3) and Rule 60(b)(5) to vacate the Turnover Motion and the Clerk's Judgment of August 7, 2014 (Dkt. #475 in 1590), and to dismiss all of Plaintiff's frivolous and vexatious claims against innocent parties, and for such other and further relief that this Court deems just and proper.

Dated: February 23, 2021

Respectfully submitted,

/s/ Daniel E. Carpenter
Daniel E. Carpenter
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT 06092

**NO ORAL ARGUMENT REQUESTED**

## CERTIFICATION

I hereby certify that on this 23rd day of February, 2021 a copy of the foregoing was served by FedEx to the Clerk of the Court. Notice of this filing was also sent by USPS First Class to Counsel for Plaintiffs, Attorneys Joseph Manson, Benjamin Chernow, Ilan Markus, and Michael Caldwell, and Counsel for Judgment Debtor Grist Mill Capital, Roger Stavis and Kevin Brown.

By: _/s/ Daniel E. Carpenter_
Daniel E. Carpenter
Petitioner, *pro se*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNIVERSITAS EDUCATION, LLC, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | **11 CIVIL 1590 (LTS) (HPB)** |
| | § | **11 CIVIL 8726 (LTS) (HPB)** |
| NOVA GROUP, INC, | § | |
| Respondent. | § | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE PLAINTIFF'S TURNOVER JUDGMENT FOR FRAUD ON THE COURT PURSUANT TO RULE 60(d)(3)

## NO ORAL ARGUMENT REQUESTED

1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNIVERSITAS EDUCATION, LLC, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 11 CIVIL 1590 (LTS) (HPB) |
| | § | 11 CIVIL 8726 (LTS) (HPB) |
| NOVA GROUP, INC, | § | |
| Respondent. | § | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE PLAINTIFF'S
TURNOVER JUDGMENT FOR FRAUD ON THE COURT
PURSUANT TO RULE 60(d)(3)**

Petitioner *pro se* Daniel E. Carpenter respectfully submits this Memorandum of Law in

support of his Motion to Vacate the Turnover Motion in the above-captioned case pursuant to this

Court's inherent authority under Fed.R.Civ.P. Rule 60(d)(3) for Fraud on the Court, and/or in the

alternative, to rule that the Judgment has been paid in full and settled pursuant to Rule 60(b)(5) in

the interests of justice.

**NO ORAL ARGUMENT REQUESTED**

## PRELIMINARY STATEMENT

As Tom Cruise, in the role of attorney Mitch McDeere, explained to both the mobsters and the prosecutors in the film <u>The Firm</u> that an attorney overbilling his clients for frivolous motions is subject to prosecution under 18 U.S.C. §1349 for Conspiracy to Commit Mail and Wire Fraud:

> Mitch McDeere: I got mine, Wayne, you get the rest of them.
>
> Wayne Tarrance: Get 'em with what? Overbilling, mail fraud? Oh, that's exciting.
>
> Mitch McDeere: It's not sexy, but it's got teeth! Ten thousand dollars and five years in prison. That's ten and five for each act. Have you really looked at that? You've got every partner in the firm on overbilling. There's two hundred fifty acts of documented mail fraud there. That's racketeering! That's minimum one thousand, two hundred fifty years in prison and half a million dollars in fines. That's more than you had on Capone.

The attorneys for Universitas have for the past year been in a conspiracy with local attorneys across the country to commit the same mail and wire fraud under 18 U.S.C. §1349 that the attorneys for the mobsters in <u>The Firm</u> were accused of by excessively billing their clients, and this Court is being abused the same way. This Court should not countenance these actions by attorneys Manson and Chernow as they are constantly defrauding the principals of Universitas through frivolous filings and by threatening sanctions against innocent parties in Massachusetts, Oklahoma, and especially in Connecticut and this Court. Notably, all of these frivolous and vexatious actions are against innocent parties in violation of *Peacock v. Thomas*, 516 U.S. 349 (1996) and six years after the honorable Judge Shira Scheindlin said that any action brought after October 2012 was untimely and would be barred by the Statute of Limitations.

Moreover, attorneys Manson and Chernow have no problems ignoring the Supreme Court's decision for personal jurisdiction in *Walden v. Fiore*, 571 U.S. 277 (2014), and anyone who disagrees with them is threatened with sanctions. Every threat of sanctions is an abuse using this Court's name and referring to the Clerk's Judgment, which by its own words is in violation of

Rule 58. If this Court recognizes that Universitas has been paid well over $19 million and made an agreement with Mary Spencer to disclaim all of the Sash Spencer proceeds in exchange for a contribution for $5 million, then Universitas is certainly being paid more than it is entitled to under its own agreement. But, if the Court only recognizes the $19 million as being paid, then the only two judgment debtors left are Petitioner Daniel Carpenter and Grist Mill Capital, which is represented by counsel. Throughout litigation spanning various states, the attorneys for Universitas have played fast and loose and have not provided any accounting of what they have been paid, and in her Affidavit of September 2019, Sharon Siebert says Universitas had only been paid $4 million but had paid the attorneys $10 million. So, the truth is the principals of Universitas are not being defrauded by Petitioner, but rather they are being defrauded by their own attorneys who are using this Court to effectuate their mail and wire fraud conspiracy.

Therefore, this Court should put an end to attorneys Manson and Chernow's bullying of attorneys across the country with threats of sanctions in the name of this Court. This Court should not only put a stop to this by vacating the Turnover Judgment, it should also report attorneys Manson and Chernow to the local authorities in the Southern District of New York for criminal prosecution. Clearly they have been in a conspiracy to defraud their clients with attorneys Ilan Markus and Michael Caldwell in Connecticut, who are also guilty of illegal conduct in overbilling Universitas for frivolous and vexatious motions. If the Court is interested, Petitioner would be happy to provide volumes of evidence of the crimes committed by attorneys Manson, Chernow, Markus, and Caldwell, so that this Court may refer them for disbarment proceedings. But, in any event, enough is enough, and Judge Scheindlin said that any of the actions after October 2012 should have been time-barred, and clearly the Turnover Action was also barred by *Peacock* and the lack of jurisdiction under *Walden*. Tellingly, this Court denied a motion for the exact same

4

action that attorneys Manson and Chernow brought against innocent parties in Connecticut, and never once did they explain how they are getting around *Peacock* or the Statute of Limitations in Judge Scheindlin's Order. See this Court's Order attached as Exhibit One asking Universitas how much it has been paid to date, and Judge Scheindlin's Order of 2015 attached as Exhibit Two.

Most importantly, at the bottom of this Court's Order, the Court expressed concern that Universitas had not said how much it has collected thus far, because any party under that amount should be removed from judgment pursuant to Rule 60(b)(5). Needless to say, the attorneys want to keep billing their client and bringing false claims against anyone that might have been associated with Petitioner or GMC. But, their motive is not to collect from the "uncollectable" but rather to overbill their clients, because as even Judge Scheindlin pointed out, the money from the Charter Oak Trust was all gone in October of 2009. More than a decade later, attorneys Manson and Chernow want to keep spending their client's money by drilling "dry holes," while at the same draining their client's trust account. All of this is easily provable and Petitioner will expose this Fraud on the Court with the enclosed Declaration and Exhibits.

Therefore, pursuant to the "One Satisfaction Rule" of *Singer v. Olympia Brewing Co.*, 878 F.2d 596 (2d Cir. 1989), the Petitioner respectfully asks this Court to vacate the Turnover Judgment for the flagrant Fraud on the Court pursuant to Rule 60(d)(3) by the attorneys for Universitas and to show that the Judgment has been paid in full pursuant to Rule 60(b)(5) as well as any other relief that this Court deems proper to protect innocent parties.

## I.    LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) codifies the post-judgment remedies available to a party seeking relief from a final judgment and specifically contemplates the situation where "the judgment has been satisfied, released, or discharged." Fed.R.Civ.P. 60(b)(5). A court may amend its prior judgment to the extent it "has been satisfied, released, or discharged." Rule 60(b)(5) dictates that when one defendant in a multi-defendant action settles, the non-settling defendants are entitled to credit the amount of the settlement against any remaining judgment. *See, e.g., Gerber v. MTC Elec. Techs. Co.,* 329 F.3d 297, 303 (2d Cir. 2003) (*citing Singer* at 600).

Notwithstanding whether a debtor expressly delegates an obligation to a third party, "a performance rendered by [a] third person that is bargained for and received by [a] claimant in satisfaction of [a] claim operates as a discharge of the debtor." 13 Corbin on Contracts §70.6; *accord Mathias v. Jacobs,* 238 F.Supp.2d 556, 571-72 (S.D.N.Y. 2002) ("[The claimant] is entitled to the benefit of only one full performance and one  satisfaction of a contractual debt; he cannot collect twice to discharge the same obligation, whether payment is made by the promisor himself, by a third person, or by both."). "This common-sense precept of contract law does not require action by the debtor; if a third party negotiates with an obligee to pay the debt of an obligor, and the obligee accepts that payment, the obligor's debt is discharged. The obligee, as a matter of law and equity, is not entitled to double performance on the same contract." *In re Lehman Brothers Inc., Debtor,* 2016 WL 417594 at *6 (S.D.N.Y. Aug. 8, 2016). Rule 60(b) motions are particularly ripe for summary judgment when there are no facts in dispute. *See, e.g., Okemo Mountain, Inc. v. U.S. Sporting Clays Ass'n,* 376 F.3d 102, 105 (2d Cir. 2004).

6

## II. UNIVERSITAS HAS RECEIVED ABOUT $19,000,000 FROM VARIOUS DEBTORS

Currently, attorneys Manson and Chernow are suing a dozen innocent parties in Connecticut, four innocent parties in Oklahoma, and even the non-existent Estate of Jack Robinson in Massachusetts, despite the fact he died in 2017 without an estate. All of these frivolous and vexatious actions against innocent parties are using the Clerk's Judgment and this Court's name to extort payments from innocent parties to run up bills from the Manson Attorney Trust Account after Universitas received $12,000,000 from WSFS/Christiana Bank, the Insurance Trustee of the Charter Oak Trust. See a copy of the press release from WSFS attached as Exhibit Three. As this Court knows, Universitas also received $4,487,007.81 from the Grist Mill Trust. See Satisfaction of Judgment attached as Exhibit Four. Universitas' attorneys also extorted a payment of $900,333.61 from BPETCO's settlement with Merrill Lynch while Petitioner was in prison. See BPETCO payment attached as Exhibit Five. Attached as Exhibit Six-A is a payment from USAA for $343,031.52. Attached as Exhibit Six-B shows the Court turning over $450,000 to Universitas from funds USAA placed in the Court. There are a number of smaller payments made by attorneys Joe Pastore and Jack Robinson and by the various owners of insurance policies that were held up by the Universitas Restraining Notices that put the total amount received by Universitas at over $19,000,000.

But, where did all that money go? According to Sharon Siebert's September 2019 Affidavit in suing Jack Robinson's Estate attached as Exhibit Seven, she says that Universitas had only received $4,703,621.64 (Exhibit Seven, paragraph 18). She also said that the attorneys had billed them over $10,000,000 (paragraph 17). (Petitioner wonders who the thief really is in this affair?). The answer to where all the money went can be found in Attorney Manson's Interpleader of the WSFS Funds attached as Exhibit Eight. Of the $12,000,000, $4,000,000 off the top went to

7

Attorney Manson and another $3,800,000 went to Paula Colbath of Loeb & Loeb from the $8 million wired to attorney Manson's Trust Account. Several Texas attorneys were left to deal with Universitas over the remaining amount while attorneys Chernow and Manson billed the Attorney Trust Account for frivolous and vexatious litigation from Oklahoma to Massachusetts.

Attached as Exhibit Nine is an exhibit that the Government produced at Petitioner's trial showing that Petitioner intended to pay Universitas $19,800,000. Attached as Exhibit Ten is the Sash Spencer Beneficiary Designation Form showing Grist Mill Capital, LLC as **ALWAYS** being the primary and only beneficiary of the insurance proceeds. This Court never learned about that because Grist Mill Capital was dismissed as a party to the Arbitration before it began (see Exhibit Eleven). Similarly, Exhibit Twelve shows Petitioner being dismissed from the Arbitration after it was over. Exhibit Thirteen is an excerpt from the Motion to Dismiss in Connecticut showing that Universitas was never a real charity. Finally, Exhibit Fourteen shows that the Widow Mary Spencer never knew about the insurance policies and/or Universitas.

In fact, the Agreement attached shows that Universitas disclaimed the entire Sash Spencer death benefit proceeds in exchange for a gift from Mary Spencer in the amount of $5,000,000. All things considered, Universitas – the fraudulent charity – has been paid in full, and this Court should put an end to attorneys Manson and Chernow's Fraud on the Court pursuant to Rule 60(d)(3) by vacating the Turnover Judgment or by issuing a Rule 60(b)(5) order saying that the Turnover Judgment has been paid in full as to all parties except Petitioner and Grist Mill Capital. Petitioner expects to be successful on his Rule 60(b)(4) motion, and believes that Grist Mill Capital will be successful on its Rule 60(b)(6) motion, so the only thing that this Court needs to do to protect innocent parties who are not judgment debtors in Connecticut, Massachusetts, and Oklahoma, is to issue an order pursuant to Rule 60(b)(5) in the interests of justice.

8

### III.   THE JUDGMENT SHOULD BE VACATED UNDER RULE 60(b)(5) AS THE JUDGMENT HAS BEEN SATISFIED UNDER THE ONE SATISFACTION RULE

A non-settling defendant is "entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the nonsettling defendant as long as both the settlement and judgment represent common damages." *Singer* at 600; *In re Masters Mates & Pilots Pension Plan*, 957 F.2d 1020, 1031 (2d Cir. 1992), and 15 U.S.C. §78u-4(f)(7)(B). In such cases, the Second Circuit has applied a "One Satisfaction Rule" rather than a "proportionate responsibility rule," affording a non-settling defendant a reduction equal to the amount of a prior settlement. *Singer* at 600. *See, also, In re Facebook, Inc.,* 674 F. App'x 37, 39-40 (2d Cir. 2016).

A judgment creditor must give nonsettling defendants credit for at least the amount of ***any*** settlement of common damages, because if it did not, plaintiffs could recover from both the settling and nonsettling defendants for the same damages. "A plaintiff may not recover twice for the same injury." *Phelan v. Local 305*, 973 F.2d 1050, 1063 (2d Cir. 1992), *citing Ostano Commerzanstalt v. Telewide Systems*, 880 F.2d 642, 649 (2d Cir. 1989) (double recovery puts plaintiffs in better position than had they not been injured). The "One Satisfaction Rule" also requires that nonsettling defendants receive credit for any amount actually paid by settling defendants for common damages. Thus, the Second Circuit has struck down a judgment reduction provision that gave credit for the lesser of the amount paid or the proportion of fault. *Masters Mates* at 1031. "Absent a showing that damages are not common, a nonsettling defendant whose rights against settling defendants are to be barred is entitled to judgment reduction at least in the amount paid by all settling parties." *Id.*

The Second Circuit's "one satisfaction rule ... prohibits a plaintiff from recovering more than one satisfaction for each injury." *Gerber* at 303 (*quoting Singer* at 600); *see also BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1277 (11th Cir. 2008)("The one-satisfaction rule ... operates to prevent double recovery, or the overcompensation of a plaintiff for a single injury."). The Supreme Court has stated the same: "If two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the plaintiff recover only once for the full amount. *See* Restatement (Second) of Torts §875 (1977)." *Honeycutt v. United States*, 137 S. Ct. 1626, 1631 (2017).

As an example of the "One Satisfaction Rule" in action, the Private Securities Litigation Reform Act of 1995 ("PSLRA") specifically requires that nonsettling parties receive a judgment credit consistent with these common-law requirements. If a covered person enters into a settlement with the plaintiff prior to final verdict or judgment, the verdict or judgment shall be reduced by the greater of: (i) an amount that corresponds to the percentage of responsibility of that covered person; or (ii) the amount paid to the plaintiff by that covered person. §78u-4(f)(7)(B). Thus, the PSLRA in essence requires that nonsettling defendants receive a judgment credit according to the "capped proportionate share" formula discussed above. *See In re Refco, Inc.*, 2007 WL 57872, at *2-3 (S.D.N.Y. Jan. 9, 2007). *See, also, U.S. Industries, Inc. v. Touche Ross & Co.*, 854 F.2d at 1236, 1261-62; *Harris* at 485; *Ratner* at 803; N.Y.Gen.Oblig.Law §15–108 (McKinney 1989). The rule has also been approved in the Restatement (Second) of Torts §885(3) (1979).

A series of cases in the Second Circuit have explained that the "One Satisfaction Rule" requires that nonsettling defendants receive credit for settling defendants' share of common damages, that is, damages for which both the settling and nonsettling defendants are responsible. Settlements have been approved when they provided a judgment reduction formula that gave

nonsettling defendants credit for the greater of (1) "the settlement amount for common damages," or (2) the "proportionate share" of the settling defendants' fault as proven at trial. *Gerber* at 303. This "capped proportionate share" formula is acceptable because it "ensures that a judgment credit is at *least* the amount of the settlement for common damages" and therefore complies with the one satisfaction rule. *Id.* (emphasis in original). *See, also, In re Facebook, Inc.,* 674 F. App'x 37 (2d Cir. 2016). In such cases, the Second Circuit has applied a "One Satisfaction Rule" rather than a "proportionate responsibility rule," affording a non-settling defendant a reduction equal to the amount of a prior settlement. *Id., quoting Singer* at 600.

A payment by any person made in compensation of a claim for a harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, at least to the extent of the payment made, whether or not the person making the payment is liable to the injured person and whether or not it is so agreed at the time of payment or the payment is made before or after judgment. Under this rule, when a plaintiff receives a settlement from one defendant, a nonsettling defendant is entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the nonsettling defendant. *See, e.g., Hess Oil v. UOP, Inc.,* 861 F.2d 1197, 1208 (10th Cir. 1988); *U.S. Industries* at 1236; Restatement (Second) of Torts §885(3), cmts e & f.

**CONCLUSION**

WHEREFORE, Petitioner respectfully requests that this Court grant Petitioner's Motion to Vacate Plaintiff's Turnover Judgment due to Fraud on the Court pursuant to the Court's inherent authority under Fed.R.Civ.P. Rule 60(d)(3) and Rule 60(b)(5), and to dismiss all of Plaintiff's frivolous and vexatious claims against innocent parties, and for such other and further relief that this Court deems just and proper..

Dated: February 23, 2021

Respectfully submitted,

/s/ Daniel E. Carpenter
Daniel E. Carpenter
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT 06092

12

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNIVERSITAS EDUCATION, LLC, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 11 CIVIL 1590 (LTS) (HPB) |
| | § | 11 CIVIL 8726 (LTS) (HPB) |
| NOVA GROUP, INC, | § | |
| Respondent. | § | |

### DECLARATION OF DANIEL E. CARPENTER IN SUPPORT OF PETITIONER'S MOTION TO VACATE PLAINTIFF'S TURNOVER JUDGMENT FOR FRAUD ON THE COURT PURSUANT TO RULE 60(d)(3) AND RULE 60(b)(5)

Pursuant to 28 USC §1746, Petitioner Daniel E. Carpenter declares as follows:

I am the Petitioner *pro se* bringing this Motion to Vacate the Turnover Motion and Clerk's Judgment of August 7, 2014 and I submit this Declaration in the hopes that the Court will realize the attorneys for Universitas are costing innocent parties thousands of dollars in legal fees just so they can defraud the principals of Universitas in a conspiracy in violation of 18 U.S.C. §1349 to commit mail and wire fraud using the auspices of this Court to deprive their clients of money and property by committing a fraud on the Court pursuant to Rule 60(d)(3). This warrants the vacating of Plaintiff's Judgment pursuant to Rule 60(b)(5) in the interests of justice, as well as the vacating of their judgments in the above-captioned actions. Attached to this Declaration are true and correct copies of the following documents:

1.      Attached hereto as **Exhibit One** is a copy of the March 31, 2020 Order from Judge Swain denying relief to Universitas because she lacked subject matter jurisdiction over the parties citing the Supreme Court's decision in *Peacock v. Thomas*, 516 U.S. 349 (1996).

2.      Attached hereto as **Exhibit Two** is a copy of Judge Scheindlin's Order in *Universitas Education, LLC, individually and on behalf of the Charter Oak Trust v. TD Bank, N.A.*, 2015 WL 9304551 (S.D.N.Y. Dec. 21, 2015).

1

3.      Attached hereto as **Exhibit Three** is a copy of a press release showing WSFS Bank paying $12 million to Universitas to settle all claims on behalf of Christiana Bank, which was the Insurance Trustee of the Charter Oak Trust.

4.      Attached hereto as **Exhibit Four** is a copy of the Satisfaction of Judgment for the payments made from the Grist Mill Trust in the amount of $4,487,007.81.

5.      Attached hereto as **Exhibit Five** is a copy of an email from counsel for Universitas, acknowledging an amount of $900,333.61 paid to Universitas from BPETCO.

6.      Attached hereto as **Exhibit Six A** is a copy of funds received by Universitas from USAA for $343,031.52.

7.      Attached hereto as **Exhibit Six B** is a copy of funds received by Universitas from USAA for $450,000.

8.      Attached hereto as **Exhibit Seven** is a copy of an affidavit submitted by Sharon Siebert in *Universitas v. Jack Robinson*, Case No. 15-cv-11848.

9.      Attached hereto as **Exhibit Eight** is a copy of the Motion for Interpleader filed by Attorney Manson.

10.     Attached hereto as **Exhibit Nine** is a copy of Government Exhibit 2225 showing Dan Carpenter's Handwritten Calculations.

11.     Attached hereto as **Exhibit Ten** is a copy of the Sash Spencer Beneficiary Designation Form.

12.     Attached hereto as **Exhibit Eleven** is a copy of the letter dismissing Grist Mill Capital before the Arbitration action commenced.

13.     Attached hereto as **Exhibit Twelve** is a copy of the letter dismissing Petitioner after the Arbitration action concluded.

2

14.     Attached hereto as **Exhibit Thirteen** is a copy of the Motion to Dismiss in front of Judge Thompson.

15.     Attached hereto as **Exhibit Fourteen** is a copy of the Agreement by and between Mary Spencer and Universitas showing Universitas disclaiming the insurance proceeds in exchange for a $5 million contribution from Ms. Spencer.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23rd day of February, 2021, in West Simsbury, CT.

Respectfully submitted,

/s/ Daniel E. Carpenter
Daniel E. Carpenter
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT 06092

# EXHIBIT ONE

**Judge Swain March 31, 2020 Order**

The following transaction was entered on 4/1/2020 at 9:48 AM EDT and filed on 3/31/2020

Case Name:        Universitas Education, LLC v. Nova Group, Inc.

Case Number:      1:11-cv-01590-LTS-HBP

Filer:

WARNING: CASE CLOSED on 06/07/2012

Document Number: 661

Docket Text:

ORDER: The Court has received and reviewed in their entirety Plaintiff's March 23, 2020, letter motions requesting entry of judgment against Moonstone Partners, LLC, Benistar Admin Services, Inc. ("BASI"), and Molly Carpenter, (Docket Entry Nos. 658, 659), as well as the March 30, 2020, letter from counsel for those entities opposing entry of judgment (Docket Entry No. 660). Plaintiff's letter motions request relief that is not enumerated in NYSD Local Civil Rule 7.1(d), which describes applications which may be brought by letter motion. Accordingly, the motions are DENIED without prejudice to formal motion practice in compliance with the relevant federal, local, and individual procedural rules of Court. Any such motion must address the legal basis, if any, for the Court's exercise of personal jurisdiction over the non-party entities named in the above-referenced letter motions, whether such a motion is the appropriate procedural mechanism by which the Court can enforce its Memorandum Order confirming the arbitration award in this case (Docket Entry No. 40) against non-parties to the underlying litigation, and whether such motion practice is consistent with the limitations of ancillary jurisdiction as described in Peacock v. Thomas, 516 U.S. 349 (1996), and the Court's order interpreting Peacock and denying Plaintiff's prior turnover motion in this case. See Docket Entry No. 545. Any such motion must also address the legal and factual basis for the requested judgment amount in light of any recoveries Plaintiff has already obtained. (Signed by Judge Laura Taylor Swain on 3/31/2020) (mro)

# EXHIBIT TWO

**Judge Scheindlin's Order in**
*Universitas Education, LLC, individually and on behalf of the Charter Oak Trust v. TD Bank, N.A., 2015 WL 9304551 (S.D.N.Y. Dec. 21, 2015)*

Universitas Education, LLC v. Bank, Not Reported in Fed. Supp. (2015)

2015 WL 9304551

2015 WL 9304551
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

## UNIVERSITAS EDUCATION, LLC, Plaintiff,

v.

## T.D. BANK, N.A., Defendant.

15-cv-5643 (SAS)
|
Signed 12/21/2015

**Attorneys and Law Firms**

Annie E. Causey, Esq., Napoli Shkolnik PLLC, 1301 Avenue of The Americas, New York, NY 10019, (212) 397-1000, Marie E. Napoli, Esq., Napoli Law, PLLC, 1301 Avenue of The Americas, New York, NY 10019, (212) 397-1000, Paul J. Napoli, Esq., Napoli Bern Ripka & Associates, 350 Fifth Avenue, New York, NY 10118, (212) 267-3700, for Plaintiff.

Jeffrey J. Chapman, Esq., Aaron F. Jaroff, Esq., McGuire Woods LLP, 1345 Avenue of the Americas, 7th Floor, New York, NY 10105, (212) 548-7060, for Defendant.

## MEMORANDUM OPINION AND ORDER

SHIRA A. SCHEINDLIN U.S.D.J.

**\*1** Plaintiff Universitas Education, LLC ("Universitas") brings this diversity action against defendant T.D. Bank alleging the aiding and abetting of conversion and related claims stemming from the alleged misappropriation of certain assets by a non-party actor, using T.D. Bank as its financial institution. Defendant moves to dismiss, arguing that plaintiff's claims are time-barred. For the following reasons, defendant's motion is GRANTED.

## I. BACKGROUND[1]

On May 15, 2009, the Lincoln National Life Insurance Company issued two checks to the Charter Oak Trust totaling $30,677,276.85, representing the life insurance proceeds for two life insurance policies issued on the life of Mr. Sash Spencer.[2] Mr. Spencer, now deceased, named Universitas as the sole beneficiary of the Charter Oak Trust.[3] Nova Group, Inc. served as the trustee.[4]

Contemporaneous with the Charter Oak Trust's receipt of the life insurance proceeds, Nova Group sought to open a new bank account for the Trust.[5] It applied for this account with at least three major banking institutions, and was declined by at least Bank of America due to Nova Group's failure to satisfy certain due diligence protocols.[6] T.D. Bank accepted Nova Group's application, and opened an account for Charter Oak Trust on May 12, 2009.[7]

On May 20 and May 21, 2009, T.D. Bank accepted applications for and opened business checking accounts for Nova Group and several related entities.[8] From May 21, 2009 to October 27, 2009, Nova Group transferred Charter Oak Trust proceeds to and

between its business checking accounts, and directly withdrew $19.8 million from the Charter Oak Trust account.[9] Universitas was aware that Nova Group did not intend to remit the Charter Oak Trust's proceeds to it by October 2009.[10]

Plaintiff filed a demand for arbitration against the Nova Group on June 17, 2010.[11] The arbitrator awarded plaintiff damages in the amount of $26,558,308.26 plus interest on January 24, 2011.[12] The award was confirmed on June 5, 2012.[13] In the meantime, T.D. Bank closed all accounts associated with Nova Group, which has yet to pay any of the arbitration award to plaintiff.[14] On July 17, 2015, plaintiff brought this action against T.D. Bank accusing it of aiding and abetting in this conversion, and bringing several related claims.

## II. LEGAL STANDARD

 **\*2** In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept[ ] all factual allegations in the complaint as true and draw[ ] all reasonable inferences in the plaintiff's favor."[15] The court evaluates the sufficiency of the complaint under the "two-pronged approach" set forth by the Supreme Court in *Ashcroft v. Iqbal*.[16] Under the first prong, a court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[17] For example, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[18] Under the second prong of *Iqbal*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[19] A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20] Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[21]

When deciding a 12(b)(6) motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[22] " '[I]t is 'axiomatic that the Complaint cannot be amended by briefs in opposition to a motion to dismiss.' "[23]

## III. DISCUSSION

When sitting in diversity, a federal court applies New York's statutes of limitations to state law claims.[24] Under New York law, causes of action accrue at the time and in the place of the injury.[25] Applying these principles to the instant case, each of plaintiff's causes of action is time-barred, and must be dismissed.

### A. Aiding and Abetting Conversion Claim

Allegations for conversion, and aiding and abetting of conversion, are subject to a three-year statute of limitations.[26] A conversion occurs when one exercises unauthorized dominion over the property of another to the exclusion of the rights of the lawful owner.[27] Here, the alleged conversion took place no later than October 2009, when Nova Group formally refused to remit the proceeds of the Charter Oak Trust to plaintiff.[28] Thus, plaintiff's conversion claim was time-barred as of October 2012.

### B. Fraud Claims

Claims for fraud and the aiding and abetting of fraud are normally governed by New York's six-year statute of limitations.[29] However, a "[c]ourt will not apply the six-year statute of limitations if the claim of fraud is merely incidental to another claim with a shorter limitations period."[30] To determine whether a fraud claim is "merely incidental" to other claims in an action, courts examine the "gravamen," or basic essence, of a plaintiff's claims.[31] In order to not be "merely incidental," a fraud claim

must be distinct from a plaintiff's other claims — it must be a claim in its own right, and not merely recast the same facts as other claims in order to obtain the benefit of the longer limitations period.[32]

**\*3** The gravamen of plaintiff's fraud claims are that Nova Group converted Charter Oak Trust funds meant for Universitas, and that defendant — by opening accounts and approving transfers between them — aided and abetted in that conversion. The facts underlying the fraud and conversion claims are the same. The injuries are the same. The relief sought is identical. Both the fraud and the aiding and abetting fraud claims are identical, for all intents and purposes, to the aiding and abetting conversion claim, and are merely incidental thereto. "Time barred claims cannot be revitalized by tricks of pleading";[33] the six-year statute of limitations does not apply to plaintiff's claim of aiding and abetting fraud. Plaintiff's claims for fraud and aiding and abetting fraud are subject to the three-year statute of limitations governing plaintiff's conversion claim, and are time-barred.

### C. Fiduciary Duty Claims

New York does not prescribe a statute of limitations for claims based on the breach of a fiduciary duty, and instead determines the applicable limitations period based on the substantive remedy sought.[34] Where a plaintiff seeks only money damages — as is the case here — a three-year statute of limitations applies.[35] For the same reasons described above, plaintiff's claims accrued in October 2009, and were time-barred as of October 2012.

### D. Unjust Enrichment Claim

Claims for unjust enrichment are generally governed by a six-year statute of limitations.[36] However, as with claims for fraud and breach of a fiduciary duty, if an unjust enrichment claim is merely incidental to a claim governed by a shorter statute of limitations, "the Court will not allow a plaintiff to avail himself of a longer limitations period."[37] Here, plaintiff's unjust enrichment claim recites the same facts and circumstances as its conversion claim, and is just as incidental to the conversion claim as the fraud claims. The three-year statute of limitations therefore applies, and plaintiff's claim was time-barred as of October 2012.

### E. Negligence Claims

New York applies a three-year statute of limitations to all negligence claims, including claims for negligent hiring and negligent supervision.[38] As with conversion claims, the limitations period begins to run at the time and place of injury, "even though the injured party may be ignorant of the existence of the wrong or injury."[39] The injury alleged in support of the negligence claims is the same injury as alleged for the conversion claim and claims incidental to the conversion. Plaintiff's negligence claims were therefore time-barred as of October 2012.

### F. Racketeer Influenced and Corrupt Organizations Act ("RICO") Claim

Civil RICO claims are subject to a four-year statute of limitations.[40] The four-year limitations period begins to run "upon the discovery of the injury alone."[41] As with all of plaintiff's claims, the only injury alleged in plaintiff's civil RICO claim is the conversion of the Charter Oak Trust funds, of which plaintiff had actual notice in October 2009 when Nova Group formally denied plaintiff's claim to the trust funds. Plaintiff's civil RICO claim was therefore time-barred as of October 2013.

## IV. CONCLUSION
**\*4** For the foregoing reasons, defendant's motion is GRANTED. The Clerk of the Court is directed to close this motion (Dkt. No. 12) and this case.

SO ORDERED.

**Universitas Education, LLC v. Bank, Not Reported in Fed. Supp. (2015)**

2015 WL 9304551

**All Citations**

Not Reported in Fed. Supp., 2015 WL 9304551

Footnotes

1       All facts recited herein are taken from the Amended Complaint ("Compl.") unless otherwise noted.

2       *See* Compl. ¶ 38.

3       *See id.*

4       *See id.* ¶ 39.

5       *See id.* ¶ 44.

6       *See id.* ¶ 45.

7       *See id.* ¶ 50.

8       *See id.* ¶¶ 53-54.

9       *See id.* ¶¶ 57-66.

10      *See* Petition to Confirm Arbitration Award ("Petition"), Exhibit 1 to 9/11/15 Declaration of Jeffrey J. Chapman, counsel for defendant, in Support of Defendant's Motion to Dismiss the Amended Complaint ("Chapman Dec.") ¶ 7 ("Nova Group formally rejected Universitas' claim to the Death Benefit twice, initially in October 2009, and on appeal in February 2010."); Affidavit of Sharon Sieber, member of Universitas Education, LLC, Exhibit 4 to Chapman Dec. ¶¶ 8-12 (outlining steps taken by plaintiff to secure Charter Oak Trust monies in 2009).

11      *See* Compl. ¶ 68.

12      *See id.* ¶ 70.

13      *See id.* ¶ 71.

14      *See id.* ¶ 72.

15      *Grant v. County of Erie*, 542 Fed. App'x 21, 23 (2d Cir. 2013).

16      *See* 556 U.S. 662, 678-79 (2009).

17      *Id.* at 679.

18      *Id.* at 678 (citation omitted).

19      *Id.* at 679.

20      *Id.* at 678 (citation omitted).

21      *Id.* (quotations omitted).

22      *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

23      *Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F. Supp. 3d 436, 451 (S.D.N.Y. 2014) (quoting *O'Brien v. National Prop. Analysts Partners*, 719 F.Supp. 222, 229 (S.D.N.Y. 1989)).

24      *See, e.g., Thea v. Kleinhandler*, No. 14-3201, 2015 WL 6684322, at *4 (2d Cir. Nov. 3, 2015).

25      *See id.*

26      *See* N.Y. Civil Practice Law and Rules ("C.P.L.R.") § 214(3).

27      *See Kirschner v. Bennett*, 648 F. Supp. 2d 252, 240 (S.D.N.Y. 2009).

28      *See* Petition ¶ 7.

29      *See* N.Y. C.P.L.R. § 213(8).

30      *Malmsteen v. Berdon, LLP*, 447 F. Supp. 2d 655, 663 (S.D.N.Y. 2007).

31      *See Marketxt Holdings Corp. v. Engel & Reiman, P.C.*, 693 F. Supp. 2d 387, 394 (S.D.N.Y. 2010) (holding a fraud claim to be incidental to related claims where "the gravamen of plaintiff's claims is that [defendant] stole funds from [plaintiff], not that he lied about doing so").

32      *See Midwest Mem'l Grp., LLC v. International Fund Servs. (Ireland) Ltd.*, No. 10 Civ. 8860, 2011 WL 4916407, at *5 (S.D.N.Y. Oct. 17, 2011).

33      *Id.*

34      *See Ciccone v. Hersh*, 530 F. Supp. 2d 574, 579 (S.D.N.Y. 2008).

2015 WL 9304551

35      *See Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 942 (2d Cir. 1998). Claims for breach of a fiduciary duty based on allegations of fraud may be subject to a six-year statute of limitation, but only in instances where the fraud is not incidental to another claim. *See Marketxt*, 693 F. Supp. 2d at 398. As described above, plaintiff's fraud claims are incidental to its conversion claim, and the three-year statute of limitations applies.

36      *See* N.Y. C.P.L.R. § 213(1).

37      *Malmsteen*, 447 F. Supp. 2d at 667.

38      *See* N.Y. C.P.L.R. § 214(4); *Coleman & Co. Sec., Inc. v. Giaquinto Family Tr.*, 236 F. Supp. 2d 288, 299, 303 (S.D.N.Y. 2002).

39      *Fritzhand v. Discover Fin. Servs., Inc.*, 800 N.Y.S. 2d 319, 319 (Sup. Ct. Nassau Co. 2005). *Accord Midwest Mem'l Grp.*, 2011 WL 4916407, at *3 (holding that New York "does not apply a 'discovery rule' to extend accrual [of a claim] until a plaintiff discovers that injury").

40      *See Rotella v. Wood*, 528 U.S. 549, 552 (2000).

41      *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 150 (2d Cir. 2012).

---

**End of Document**                                                     © 2021 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT THREE

**WSFS Pays $12 Million to Universitas for
Christiana Bank being Insurance Trustee of
Charter Oak Trust**



Banking     Borrowing     Wealth                                    Login ▾

Business Services    About    Help & Guidance                 Open an Account

🔍

# Press Release

f  g  in  t  ℼ

<< Back

Feb 27, 2018

## WSFS Reaches Settlement with Universitas Education, LLC

WILMINGTON, Del., Feb. 27, 2018 (GLOBE NEWSWIRE) — WSFS Financial Corporation (NASDAQ:WSFS), the parent company of WSFS Bank, announced today that it has entered into a settlement agreement with Universitas Education, LLC (Universitas), to resolve claims related to services provided by Christiana Bank & Trust Company (Christiana Trust) prior to WSFS' acquisition of Christiana Trust in December 2010.  WSFS previously disclosed the claims in its quarterly filings on Forms 10-Q in 2017.

The claims relate to Christiana Trust's role as "insurance trustee" of the Charter Oak Trust Welfare Benefit Plan (Charter Oak), and Universitas' alleged loss after funds from certain life insurance benefits were misappropriated by certain individuals unaffiliated with Christiana Trust or WSFS. Universitas sought damages in excess of $54.0 million.

WSFS settled the case for $12.0 million to avoid the uncertainties of arbitration and to end the expense of ongoing litigation.  Separately, WSFS will pursue all of its rights and remedies to recover this settlement payment and all related costs, including by enforcing the indemnity right in the 2010 Stock Purchase Agreement by which WSFS acquired Christiana Trust.  Additionally, WSFS has already taken measures to recover expenses from various insurance carriers.  WSFS intends to pursue all claims it has for full restitution for this settlement.

"We are pleased to have reached an agreement on this years-old matter involving events alleged to have occurred prior to WSFS' acquisition of Christiana Trust," said Rodger Levenson, Executive Vice President and Chief Operating Officer, WSFS Bank.  "With this agreement completed, we will focus on pursuing a full reimbursement for these costs."

The settlement for $12.0 million requires WSFS to update its previously reported fourth quarter 2017 earnings, reducing reported after-tax earnings by approximately $9.3 million, or $0.29 per share for the fourth quarter.  The settlement will be reflected in the upcoming filing of our 2017 Form 10-K.

**About WSFS Financial Corporation**
WSFS Financial Corporation is a multi-billion dollar financial services company. Its primary subsidiary, WSFS Bank, is the oldest and largest locally-managed bank and trust company headquartered in Delaware and the Delaware Valley. As of December 31, 2017, WSFS Financial Corporation had $7.0 billion in assets on its balance sheet and $18.9 billion in assets under management and administration. WSFS operates from 76 offices located in Delaware (46), Pennsylvania (28), Virginia (1) and Nevada (1) and provides comprehensive financial services including commercial banking, retail banking, cash management and trust and wealth management. Other subsidiaries or divisions include Christiana Trust, WSFS Wealth Investments, Cypress Capital Management, LLC, West Capital Management, Powdermill Financial Solutions, Cash Connect®, WSFS Mortgage and Arrow Land Transfer. Serving the Delaware Valley since 1832, WSFS Bank is one of the ten oldest banks in the United States continuously operating under the same name. For more information, please visit wsfsbank.com.

**Investor Contact:** Dominic C. Canuso
302-571-6833
dcanuso@wsfsbank.com

**Media Contact:** Jimmy A. Hernandez
302-571-5254
jhernandez@wsfsbank.com



# EXHIBIT FOUR

**Satisfaction of Judgment for the Grist Mill Trust in the Amount of $4,487,007.81**

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____               │
│ DATE FILED: 6/19/18                  │
└─────────────────────────────────────┘
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
                                    :

UNIVERSITAS EDUCATION, LLC,       :

         Plaintiff,           :     No. 11-CV-01590 (LTS)(HBP)

       -against-           :

                                       :     **SATISFACTION OF JUDGMENT**

NOVA GROUP, INC.,             :     **ONLY AS TO JUDGMENT DEBTOR**
                                       :     **GRIST MILL TRUST WELFARE**

         Defendants.        :     **BENEFIT PLAN**

                                       :
-------------------------------------------------------X

        **WHEREAS**, a Judgment was entered in the above action on August 12, 2014 in favor of Judgment Creditor UNIVERSITAS EDUCATION LLC ("Universitas") and against Judgment Debtor Grist Mill Trust Welfare Benefit Plan ("GMT"), in the amount of $4,487,007.81 (the "GMT Judgment"), and said GMT Judgment having been fully paid; and it is certified that there are no outstanding executions with any Sheriff or Marshall as to said GMT Judgment; and

        **WHEREAS**, to the extent Universitas issued restraining notices to third party garnishees directed at the assets of Judgment Debtor GMT, such restraining notices are hereby immediately lifted, but only insofar as such restraining notices related to the assets of GMT. **All restraining notices served by Universitas to third-party garnishees remain in full force and effect as to all Judgment Debtors, except GMT.**

        **THEREFORE**, full and complete satisfaction of said GMT Judgment is hereby acknowledged, and the Clerk of the Court is hereby authorized and directed to make an entry of the full and complete satisfaction on the docket of ONLY said GMT Judgment.

Dated: June 19, 2018
        New York, New York

                               LOEB & LOEB LLP

                               By: _____
                                   Paula K. Colbath
                                   345 Park Avenue
                                   New York, New York  10154

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF NEW YORK         )

     On the 19th day of June, 2018, before me personally came Paula K. Colbath, to me known and known to be a member of the law firm of Loeb & Loeb LLP, attorneys for Universitas Education, LLC in the above entitled action, and to be the same person described in and who executed the within satisfaction of judgment and acknowledged to me that she executed the same.

_____
Notary Public

ANTOINETTE PEPPER
Notary Public, State of New York
No. 01PE4973833
Qualified in Nassau County
Certificate filed in New York County
Commission Expires January 7, 2019

16386931.2

2

# EXHIBIT
# FIVE

**Email Showing Universitas Receipt of
$900,333.61 from BPETCO**

**From:** Paul S Samson [mailto:PSamson@riemerlaw.com]
**Sent:** Monday, December 28, 2015 5:30 PM
**To:** Elkind, Thomas I.; Tony Zelle (tzelle@zelmcd.com); tevans@zelmcd.com; 'Paula Colbath' (pcolbath@loeb.com) (pcolbath@loeb.com); Lindsay Feuer (lfeuer@loeb.com) (lfeuer@loeb.com)
**Subject:** RE: Satisfaction of Judgment

Universitas has been paid $900,333.06 as a result of the settlement and that amount will be credited against the Universitas judgment against Mr. Carpenter in accordance with Universitas' agreement with BPETCO and Mr. Carpenter.

Regards, have a happy and healthy New Year.  Paul.

Paul S. Samson
(admitted in MA and NY)
Riemer & Braunstein LLP
psamson@riemerlaw.com

From: TElkind@foley.com [mailto:TElkind@foley.com]
Sent: Monday, December 28, 2015 5:25 PM
To: Tony Zelle (tzelle@zelmcd.com); tevans@zelmcd.com; Paul S Samson; 'Paula Colbath' (pcolbath@loeb.com) (pcolbath@loeb.com); Lindsay Feuer (lfeuer@loeb.com) (lfeuer@loeb.com)
Subject: Satisfaction of Judgment

Counsel:

      Attached is a copy of the Satisfaction of Judgment that was filed today in the original Cahaly action pursuant to Section 11 of the Release and Settlement Agreement.

      The settlement between the Cahalys and BPETCO has now been completed. The settlement documents have all been signed and the $125,000 payment from BPETCO has been wired to counsel for the Cahalys.

      Please let me know the total amount that is paid to Universitas, including interest, pursuant to its settlement with the Cahalys, as this is the amount that will be credited against the judgment held by Universitas against Dan Carpenter and others.

      Thank you for your cooperation regarding this matter.

Regards,

Thomas I. Elkind
Foley & Lardner LLP
111 Huntington Avenue
Boston, MA 02199
Tel:  617-342-4010
Fax: 617-342-4001
telkind@foley.com

1

# EXHIBIT
# SIX-A

**Funds Received by Universitas from USAA
in the amount of $343,031.52**

USAA NR: 00168 93 58
CHECK NR:   35-00928045

POL HOLDER:  DANIEL E CARPENTER
PAYEE:   LOEB & LOEB, ATTORNEY TRUST

LOB/CLAIM NR: FL   / 000000
USAA DATE:   12/04/13

LOSS DATE: 10/29/12
USAA REP:   00050

UNIT:  00962

| EXPLANATION OF PAYMENT | AMOUNT |
|---|---|
| FLOOD BUILDING<br>PAYMENT C/O<br>ABRAMS, GORELICK, FR<br>IEDMAN<br>ATTN:<br>MICHAEL GOERLI | |
| | |
| TOTAL PAYMENT AMOUNT | $155,782.92 |



USAA NR: **00166-95-36**
POL HOLDER: **DANIEL E CARPENTER**
LOB/CLAIM NR: **FL    / 000000**
LOSS DATE: **10/29/12**
UNIT: **00962**

CHECK NR: **35-00928130    XXXXXX**
PAYEE: **LOEB & LOEB, ATTORNEY TRUST AC**
USAA DATE: **12/04/13**
USAA REP: **00050**

UNITED SERVICES AUTOMOBILE ASSOCIATION
PO BOX 33490
SAN ANTONIO, TX 78265

| EXPLANATION OF PAYMENT | AMOUNT |
|---|---|
| **FLOOD BUILDING**<br>**PAYMENT**<br>**C/O ABRAMS, GORELICK**<br>**FIEDMAN**<br>**ATTN:**<br>**MICHAEL GORELICK** | |
| TOTAL PAYMENT AMOUNT | **$187,248.60** |



# EXHIBIT
# SIX-B

**Funds Received by Universitas from USAA
in the amount of $450,000**

```
     D59FUNIH                    Hearing

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
     UNIVERSITAS EDUCATION, LLC,
 3
                    Plaintiff,
 4
            v.                            11 CV 1590 (LTS)
 5
     NOVA GROUP, INC. et al,
 6
                    Defendants.
 7   ------------------------------x
                                         New York, N.Y.
 8                                       May 9, 2013
                                         9:30 a.m.
 9
     Before:
10                     HON. LAURA TAYLOR SWAIN,

11                                       District Judge

12                          APPEARANCES

13   LOEB & LOEB LLP
            Attorneys for Plaintiff
14   PAULA K. COLBATH, ESQ.

15   BRYAN I. REYHANI, ESQ.
            Attorney for Plaintiff
16
     ANTHONY J. SIANO, ESQ.
17          Attorney for Defendant D. Carpenter and Moonstone Partners
     LLP
18
     HALLORAN & SAGE LLP
19          Attorneys for Defendant M. Carpenter
     DAN E. LaBELLE, ESQ.
20
     BRIEF CARMEN & KLEIMAN, LLP
21          Attorneys for Defendant Nova Group
     IRA KLEIMAN, ESQ.
22
     CAROLE R. BERNSTEIN, ESQ.
23          Attorney for Defendant Grist Mill Capital

24   ABRAMS, GORELICK, FRIEDMAN & JACOBSON, LLP
            Attorneys for Defendant USAA
25   ALEXANDRA E. RIGNEY, ESQ.
```

D59FUNIH                              Hearing

1    Trust to purchase of this home.

2          So the relief that we seek here is we would like the

3    insurance proceeds and we were told before we filed this

4    application, we were told by USAA, the casualty insurer

5    involved, that they were imminently ready to pay approximately

6    $450,000 to Moonstone Partners LLC and Mr. Carpenter who owned

7    the property in South Kingstown.  We also seek a turnover of

8    that property, the ownership of that property to our client

9    since our client's funds were used to purchase it.

10         Since the claim, at Mr. Carpenter's deposition he

11   advised us that he had not officially filed a claim for damage

12   yet.  We would also ask that that claim be assigned to

13   Universitas so we could step into his shoes and have direct

14   contact with the carrier in resolving that claim.

15         THE COURT:  Now, the order to show cause that I signed

16   referred to insurance proceeds in connection with, quote, "any

17   structure or property owned at any point in time by Moonstone,

18   Daniel Carpenter and/or Molly Carpenter or any entity owned by

19   the Carpenters including any properties at a Cards Pond Road

20   address in South Kingstown, Rhode Island and it seeks a

21   constructive trust on such insurance proceeds in Universitas'

22   favor.  So this is the first I'm hearing of a request that this

23   Court also order turnover of real property or an assignment of

24   the claim.

25         MS. COLBATH:  Your Honor, I believe the TRO that you

# EXHIBIT

# SEVEN

## Sharon Siebert Affidavit of September 2019

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNIVERSITAS EDUCATION, LLC <br><br> Plaintiff, <br><br> v. <br><br> JACK E. ROBINSON, III a/k/a JACK E. ROBINSON, <br><br> Defendant. | Civil Action No. <br> 1:15-CV-11848 (DPW) |

## AFFIDAVIT OF SHARON E. SIEBERT

SHARON E. SIEBERT, under penalty of perjury, declares and says as follows:

1.     My name is Sharon E. Siebert, and I am a founder and member of Universitas Education, LLC ("Universitas"). I have personal knowledge of the facts set forth herein.

2.     Universitas is a Delaware limited liability company, with its headquarters at 404 East 55th Street, Apartment 13A, New York, New York 10022.

3.     Universitas was previously the research and development arm of the now-defunct Destination Foundation Universitas ("Destination Universitas").

4.     Destination Universitas was a charitable foundation based in New York. Destination Universitas had its charitable designation administratively revoked because Universitas was unable to continue to fund it. Universitas's hardships were a direct result of the costly litigation efforts to enforce Universitas' judgment against the Charter Oak Trust and Nova Group.

5.     Universitas aims to develop and provide programs for leaders and educators around the world to support global philanthropic and humanitarian efforts.

6.      Universitas is operated by myself and my colleague, Donna Vassar.

7.      Ms. Vassar and I are Universitas' only members.

8.      In 2007, Universitas had negotiated for, and had prepared a letter of intent for the purchase of land for the development of a sanctuary on 69.59 acres in Lake Las Vegas, Nevada, for global leaders to gather and recharge during multi-day retreats.

9.      Universitas had discussed the purchase of the Lake Las Vegas property, solicited and selected a design proposal, completed a strategic development plan, and was in the process of finalizing proposals.

10.     One contributor to the project was Mr. Sash Spencer. Mr. Spencer chaired a private investment firm and was a financial partner to Universitas and Destination Universitas. Mr. Spencer died unexpectedly in June 2008. Prior to his death, he named Universitas the sole irrevocable beneficiary of two life insurance policies worth $30,000,000.

11.     Universitas has still not obtained the life insurance proceeds that Mr. Spencer endowed it.

12.     I received and reviewed the correspondence from Jack E. Robinson, Wayne Bursey, and others sent on behalf of the Charter Oak Trust ("COT") and its affiliates. I discussed these communications with Universitas' various representatives, including its attorney when appropriate.

13.     I initially believed that COT's accurately conveyed the provisions of the COT Declaration of Trust and would abide by the provisions thereof. I believed that the COT Declaration of Trust as amended in January 2007 included a provision within Section 6.01 that allowed COT to retain twenty percent of the death benefits of a participant who dies while participating in COT. However, I did not believe that the provision applied to Universitas'

2

circumstances because Mr. Spencer enrolled in COT prior to this alleged amendment, and COT never notified myself or anybody else about this alleged change in the Trust document.

14.     Universitas also undertook the arbitration against COT and its affiliates in good faith. Universitas relied upon Mr. Bursey's affidavit and Mr. Robinson's declaration asserting that COT had the assets to satisfy a judgement against it. Had I known that the proceeds from Mr. Spencer's life insurance proceeds had already been disbursed and spent on things such as a vacation home for Daniel Carpenter, Universitas would have altered its litigation strategy and would likely have sought civil remedies against Carpenter and his affiliates sooner. Universitas likewise would have adopted a much different litigation strategy had I known that the money in dispute had been improperly conveyed and used for criminal purposes. Instead, the misrepresentations and continuing bad faith by Robinson (before his death), Carpenter, and the rest of their affiliates have forced us to engage in protracted litigation that eventually contributed to the dissolution of Destination Universitas.

15.     The arbitration awarded Universitas a judgment against COT and its trustee, Nova Group, Inc. for $26,525,535.98.[1] Universitas' received this award on January 24, 2011, and the award remains largely unsatisfied.

16.     Universitas' effort to enforce its judgement has caused Universitas to become involved in numerous cases across the country. Attached as **Exhibit A** is a list of cases wherein Universitas has made filings concerning its award.

17.     The cost of this litigation has been high. To date, Universitas been billed for legal fees in excess of $10,000,000.

---

[1] This award was broadened during the subsequent litigation to confirm and enforce the award. The court provided Universitas with a money judgment on August 7, 2014. The money judgment is for $30,181,880.30, to account for interest on the unpaid judgment. The judgment is also enforceable against Daniel Carpenter and some of his companies, in addition to the original judgment debtors.

3

18.     The judgment debtors and their affiliates have been recalcitrant and obstructive. To date, Universitas has recovered only $4,703,621.64 of its $30,181,880.30 judgment.

19.     The judgment debtors' refusal to satisfy Universitas' judgment has caused Universitas hardship. Universitas has had difficulty paying the excessive legal fees accrued in trying to recover the proceeds from the Spencer policies, and this has led to disputes with former counsel regarding fees.

Dated: New York, New York West Palm Beach, Fla.
September 6, 2019

_Sharon E. Siebert_
Sharon E. Siebert

Sworn to me on this 10 day
of September, 2019.

_Darlene A. Brown_
Notary Public

DARLENE A. BROWN
MY COMMISSION # GG 213365
EXPIRES: May 11, 2022
Bonded Thru Notary Public Underwriters

4

# EXHIBIT EIGHT

**Attorney Manson Motion for Interpleader**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |  |
|---|---|---|
| JOSEPH L. MANSON III,<br>d/b/a LAW OFFICES OF<br>JOSEPH L. MANSON III | ) ) ) |  |
|  | ) |  |
| Plaintiff/Stakeholder, | ) |  |
|  | ) |  |
| v. | ) | CA No. 1:18-cv-219-CMH/JFA |
|  | ) |  |
| UNIVERSITAS EDUCATION, LLC, et al. | ) |  |
|  | ) |  |
| Defendants/Claimants. | ) |  |

## FIRST AMENDED COMPLAINT FOR INTERPLEADER

Interpleader-Plaintiff Joseph L. Manson, III, d/b/a Law Offices of Joseph L. Manson III, by and through counsel, pursuant to F.R.Civ.P. 15(a)(1)(B)[1], files this First Amended Complaint for Interpleader against Interpleader-Defendants Universitas Education, LLC ("Universitas"); Loeb & Loeb, LLP ("Loeb"); Sturm Law PLLC ("Sturm"); and Lang & Associates, PLLC ("Lang"). This Complaint for Interpleader is brought pursuant to Rule 22 of the Federal Rules of Civil Procedure, and, in the alternative, pursuant to 28 U.S.C. § 1335.

As and for his Complaint, Interpleader-Plaintiff pleads as follows:

1. Interpleader-Plaintiff is an attorney doing business as the Law Offices of Joseph L. Manson III. He is a citizen of Virginia.

---

[1] Rule 15(a)(1)(B) allows a party to amend a pleading within 21 days after service of a responsive pleading or Rule 12 motion. All defendants except Sturm filed answers on May 18, 2018, and Sturm filed a Rule 12 motion on that same date. Accordingly, this amendment is timely and filed as a matter of right.

2.      Universitas is a Delaware limited liability company with its principal place of business in New York.  Its only members, Sharon Siebert and Donna Vassar, are both citizens of New York.

3.      Loeb is a law firm and a California limited liability partnership.  Upon information and belief at the time of the filing of the original complaint, Plaintiff understood Loeb's partners to be citizens of California, Illinois, New York, Tennessee, and Washington, D.C.  Loeb has denied these allegations in its Answer to the original Complaint, but has not specified on what grounds.

4.      Sturm is a law firm and a Texas professional limited liability company located at 712 Main Street, Suite 900, Houston, Texas 77002.  Upon information and belief, Sturm's sole member, Charles A. Sturm, is a citizen of Texas.

5.      Lang is a law firm and a Texas professional limited liability company located at 440 Louisiana Street, Suite 900, Houston, Texas 77002.  Upon information and belief, all Lang's members, including Shannon A. Lang, are citizens of Texas.

6.      Universitas is the beneficiary of the proceeds of two life insurance policies issued by Lincoln Life Insurance Company ("Lincoln") on the life of Sash A. Spencer. The Charter Oak Trust (the "COT") was the beneficiary of the Spencer policies, which were held in the COT.

7.      Mr. Spencer died in June of 2008. In May of 2009, Lincoln paid the Spencer policy proceeds, plus interest, to the COT.  The COT denied Universitas's claims to the proceeds.

8.      Universitas subsequently commenced an arbitration against Nova Group, Inc. ("Nova"), the Named Trustee of the COT.

2

9.      Universitas obtained an arbitration award against Nova, which was confirmed by the United States District Court for the Southern District of New York, Case No. 1:11-cv-01590-LTS-HBP.  Nova failed to pay the award, prompting Universitas to engage in collection efforts.  Universitas was represented by Loeb in the arbitration against Nova and in the related collection efforts.

10.     On or about April 6, 2015, Universitas also commenced arbitration against Wilmington Savings Fund Society, FSB ("WSFS"), the Insurance Trustee of the COT, with the American Arbitration Association, Case No. 01-15-003-1194 (the "Arbitration"). At the time, Universitas was represented by Shannon A. Lang and Charles A. Sturm. Universitas subsequently terminated that representation and engaged the Law Offices of Joseph L. Manson III.

11.     On or about February 26, 2018, Universitas and WSFS reached a full and final settlement of the Arbitration.  Universitas agreed to dismiss its claims against with WSFS with prejudice in exchange for, among other things, compensation in the amount of Twelve Million Dollars ($12,000,000.00 USD).

12.     As described therein, the Settlement Agreement required WSFS to wire the sum of Eight Million Dollars (the "Settlement Payment") to an escrow account at Branch Bank & Trust in the name of Interpleader-Plaintiff (Account Number 0000258221575, the "Escrow Account").[2]

---

[2] The Settlement Agreement also required WSFS to wire the additional sum of Four Million Dollars ($4,000,000.000), which constitute Interpleader-Plaintiff's attorneys' fees for representing Universitas in the Arbitration, to a trust account in the name of Interpleader-Plaintiff. These funds are not the subject of this dispute.

13.     Within two days of receiving the Settlement Payment to the Escrow

Account, the Settlement Agreement required Interpleader-Plaintiff to commence this

interpleader action naming all lienholders who may have a claim to any portion of the

Settlement Payment.

14.     All Defendants have asserted a claim to some portion of the Settlement

Payment funds.

15.     Sturm has claimed an attorneys' lien against 35% of the proceeds, if any,

recovered in the Arbitration.  As alleged by Sturm, Sturm's claim to the Settlement

Payment amounts to $4,200,000.00.

16.     Loeb has also asserted a claim to the Settlement Payment.  As alleged by

Loeb, Loeb's claim to the Settlement Payment amounts to at least $4,109,906.52.

17.     Lang has asserted a claim to the proceeds, if any, recovered in the

Arbitration.  On information and belief, Lang's alleged claim to the Settlement Payment

amounts to at least $200,000.00.

18.     On information and belief, Universitas also has a substantial claim to the

Settlement Payment.

19.     Pursuant to the Settlement Agreement, on February 27, 2018, the

Settlement Payment was wired to the Escrow Account.

20.     Pursuant to the Settlement Agreement, and because Interpleader-Plaintiff

reasonably believes that the competing claims for payment exceed the amount of the

Settlement Payment, Interpleader-Plaintiff brings this Complaint for Interpleader.

21.     Interpleader-Plaintiff believes that Interpleader-Defendants' collective

claims exceed the Settlement Payment, so that any attempt to make payment may result

4

in multiple litigation and expose Interpleader-Plaintiff to conflicting and multiple liabilities.

22.     Interpleader-Plaintiff is neutral regarding each party's entitlement to the Settlement Payment, including the entitlement of the Interpleader-Defendants, and therefore seeks discharge from this action and from any liability with respect to the Settlement Payment.

## COUNT I
### (Rule Interpleader Pursuant To F.R.Civ.P. 22)

23.     Interpleader-Plaintiff incorporates the allegations of Paragraphs 1 through 22 above.

24.     In the event that there are no Interpleader-Defendants that are citizens of Virginia by virtue of the citizenship of one of their members, this Court has jurisdiction pursuant to 28 U.S.C. § 1332, as there is complete diversity between the Interpleader-Plaintiff and the various Interpleader-Defendants, and the amount in controversy exceeds $75,000.

25.     Venue is proper under 28 U.S.C. § 1391, because the property that is the subject of this dispute, the Settlement Payment, is situated in Interpleader-Plaintiff's escrow account in the City of Alexandria in this judicial district.

## COUNT II
### (Statutory Interpleader Pursuant To 28 U.S.C § 1335)

26.     Pleading in the alternative, Interpleader-Plaintiff incorporates the allegations of Paragraphs 1 through 22 above.

27. There are two or more adverse claimants of diverse citizenship who are claiming or may claim to be entitled to the Settlement Payment, which exceeds $500 in value.

28. This Court has jurisdiction pursuant to 28 U.S.C. § 1335, which requires only diversity between any two of the Interpleader-Defendants (which exists, for example, between Universitas, a citizen of New York, and Lang, a citizen of Texas).

29. In the event that an Interpleader-Defendant, such as Loeb, is a citizen of Virginia by virtue of the citizenship of one of its members, then a claimant resides in this district, and this matter may be brought in this court under 28 U.S.C. § 1379.

30. Interpleader-Plaintiff prays the Court issue an Order granting leave to deposit the entirety of the Settlement Payment pursuant to 28 U.S.C § 1335, amounting to $8,000,000.00, into the registry of the Court.

## PRAYER FOR RELIEF

WHEREFORE, Interpleader-Plaintiff respectfully requests this Court:

a. issue an Order requiring the Interpleader-Defendants to interplead all of their claims under or with respect to the Settlement Payment;

b. issue an Order granting the Interpleader-Plaintiff leave to have the entirety of the Settlement Payment, amounting to $8,000,000.00, deposited into the registry of the Court, and providing that, upon such deposit, the Interpleader-Plaintiff and its employees and agents shall be discharged from all liability to the Interpleader-Defendants under or in connection with the Settlement Payment;

c.  enter a preliminary and permanent injunction enjoining the Interpleader-
Defendants from instituting or prosecuting any action in any court, state or
federal, against the Interpleader-Plaintiff and its agents or employees asserting
any claims, rights, causes of action, or demands of any nature, known or
unknown, under or in connection with the Settlement Payment;

d.  enter judgment discharging the Interpleader-Plaintiff and its agents and
employees from all further liability relating in any way to the Settlement
Payment or any demands that may be made in connection with the Settlement
Payment;

e.  award to Interpleader-Plaintiff his costs and attorneys' fees; and

f.  grant any further relief as this Court may deem just and proper.

Dated: May 23, 2018

LAW OFFICES OF JOSEPH L. MANSON III
By Counsel

_____/dib/_____
David I. Bledsoe
VSB 29826
600 Cameron Street, Suite 203
Alexandria, VA  22314
703-379-9424
703-684-1851(fax)
bledsoelaw@earthlink.net

# EXHIBIT NINE

**Government Exhibit 2225**
**Carpenter Handwritten Calculations**

| | |
|---|---|
| From: | DCarpenter US Benefits <FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=DCUS> |
| Sent: | Tuesday, May 26, 2009 8:55 AM |
| To: | Wayne Bursey; RobinsonEsq@aol.com |
| Cc: | Dan Carpenter US Benefits |
| Subject: | Sash Spencer |
| Attachments: | Sbizhub09052608380.pdf |

Please check my math......

Jack let's think of letter.....

100GMR_CMP_SVR1-0573283

SASH  SPENCER
DEATH  CLAIM

Insurance Proceeds   Policy 7305475          Policy 7320809

Death Benefit
Death Benefit        10,000,000            20,000,000
(80% (Section 6))     8,000,000            16,000,000
  of Proceeds
Premiums Paid         779,000              1,543,105.79

Origination Fee
(20% of Premium)      155,840              @ 308,621.16

Placement Fee
(2% of Death Benefit)   N/A                @ 400,000

Placement Fee
(6% of Death Benefit) 600,000              N/A

Premium Funding Fee
(3% of Death Benefit) 300,000              N/A

Termination Fee
(1% of Death Benefit) 100,000              N/A

Total Fees and Charges  1,934840          2,251,726.95

                      6,065,160           13,749,273.05
                                            6,065,160.00
                                          19,813,433.05

100GMR_CMP_SVR1-0573284

# EXHIBIT TEN

**Sash Spencer Beneficiary Designation Form showing Grist Mill Capital as Primary Beneficiary**

Apr 26 08 01:55p                        212-319-6823                 p.2



LINCOLN # 7320809
$20,000,000



CHARTER OAK TRUST

## ELECTION OF PARTICIPATION & BENEFICIARY DESIGNATION FORM

NAME OF EMPLOYER: __HOLDINGS CAPITAL GROUP, INC.__

NAME OF COVERED EMPLOYEE: __SASH A. SPENCER__   SSN: __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__

To: Administrator of the CHARTER OAK PLAN & TRUST

To participate in the Plan, place your initials in the space provided next to "A" below and insert the names of your beneficiaries. To make such beneficiary designation irrevocable, place your initials in the space next to "B" below and insert the names of your beneficiaries. Please do not forget to designate at least one beneficiary.

A. _____   I wish to participate in the Plan and name the following persons or entities as the Beneficiaries of any death benefit payable under the Plan:

Name of Beneficiaries: _____

Contact Person: _____   Phone: _____
Address: _____

I understand that I may change this designation at any time by submitting a new Beneficiary Designation Form to the Plan Administrator, and that such new designation will become effective when accepted by the Plan Administrator.

B. ___✓___   I wish to participate in the Plan and name the following persons or entities as the Irrevocable Beneficiaries of any death benefit payable under the Plan:

Name of Beneficiaries: __UNIVERSITAS EDUCATION, LLC__

Contact Person: __SHARON SIEBERT__   Phone: __212-826-0056__
Address: __404 E. 55TH STREET  SUITE 13A, NY NY__

I hereby elect that the foregoing designation of my beneficiary or beneficiaries of any death benefit that becomes payable pursuant to the Plan is irrevocable and non-amendable, and I shall have no right whatsoever to change such beneficiary designation for any reason. (If you have chosen option B, your signature must be notarized.)

NOTE: I hereby designate Grist Mill Capital, LLC as primary beneficiary of any sums which remain unpaid pursuant to any other agreements I might have with Nova Group, Inc. and acknowledge that my beneficiaries as designated above will receive all death benefit proceeds in excess of the sums payable to Grist Mill Capital, LLC.

X _____                          _____
Signature of Employer's Authorized Person                Signature of Covered Employee

__SASH A. SPENCER, CEO__                          __SASH A. SPENCER__
Name and Title of Authorized Person (Print or Type)        Name of Employee (Print or Type)

__May 9th, 2008__                          The foregoing instrument was acknowledged
Date of this Designation                              before me this 9th day of May 2008.

                                               _____
                                               Notary Public

                                               Commission Expires: __10/31/2010__

COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07

BARBARA A. KNIFFEN
Notary Public, State of New York
No. 31-4826643
Qualified in New York County
Commission Expires __2010__

10/31

# EXHIBIT ELEVEN

**Letter from Counsel for
Universitas Dismissing Grist Mill
Capital before the Arbitration**



PAULA K. COLBATH
Partner

345 Park Avenue
New York, NY 10154

Direct  212.407.4905
Main  212.407.4000
Fax  212.937.3189
pcolbath@loeb.com

Via E-mail

August 19, 2010

Ms. Karen Fontaine
Manager of ADR Services
American Arbitration Association
950 Warren Avenue
East Providence, RI 02914

Re:  13 195 Y 1558 10, Universitas Education, LLC v. Nova Group, Inc., Wayne Bursey,
      Benistar Admin. Services, Inc., Donald Trudeau, Grist Mill Capital, LLC and Daniel E.
      Carpenter

Dear Ms. Fontaine:

As you know, we represent Universitas Education, LLC ("Universitas") in the above matter.

Pursuant to Rule R-6, Universitas is dropping all claims against and involving Grist Mill Capital
LLC for, among other reasons, no arbitration agreement exists between Universitas and Grist
Mill Capital.

We will be filing an amended statement reflecting this change shortly.

Sincerely,

Paula Colbath /sw

Paula K. Colbath
Partner

cc:  William McGrath, Esq.
     Joseph Pastore III, Esq.
     Paul Dehmel, Esq.
     Richard S. Order, Esq.

A limited liability partnership including professional corporations

NY859848.1
214560-10001

# EXHIBIT TWELVE

**Letter from Counsel for Universitas Dismissing
Daniel Carpenter after the Arbitration**



**PAULA K. COLBATH**
Partner

345 Park Avenue          **Direct**  212.407.4905
New York, NY  10154      **Main**    212.407.4000
                         **Fax**     212.937.3189
                         pcolbath@loeb.com

Via E-mail

March 22, 2011

Peter Altieri, Esq.
Epstein Becker & Green, P.C.
250 Park Avenue, 14th Floor
New York, NY 10177

Re:   AAA No. 13 195 Y 1558 10 — Universitas Education, LLC v. Nova Group, Inc., et. al.

Dear Arbitrator Altieri:

We write on behalf of Universitas Education, LLC ("Universitas") to report that Nova Group, Inc. ("Nova Group") failed to deposit $26,525,535.98 into escrow (by March 19), as required by your January 24, 2011 Arbitration Award (the "Award"). We thus request that you begin Phase II of the Arbitration.

As you will recall, your Award required Nova Group to "deposit $26,525,535.98 in escrow with the law firm of Updike Kelly and Spellacy on or before the later of 30 days following the date of [the] Award or 30 days after determination of any motion for reconsideration under Rule 46[.]" 1/24/11 Award at 13.  Universitas submitted a motion for reconsideration, that your Honor denied on **February 17, 2011** (Nova Group did not submit a motion for reconsideration).  Nova Group was thus required to comply with the Award's escrow deposit requirement by no later than March 19, 2011.

Yesterday I wrote to Richard Order, Nova Group's counsel, requesting that he provide me with documentary proof of Nova Group's compliance with the escrow deposit provision.  3/21/11 E-mail from Paula Colbath, attached as Ex. 1.  Mr. Order did not provide any proof that the monies were deposited, as required by the Award.

Pursuant to your Honor's Order of December 1, 2010 (attached as Ex. 2), Universitas plans to contact TD Bank and request the immediate production of the originally subpoenaed documents for Phase II of this Arbitration.

*Further, in view of Nova Group's failure to deposit the required monies into escrow, Universitas* requests that you:

> 1.  Set a date for an Initial Scheduling Conference for Phase II of this Arbitration, in which Universitas will proceed against (a) Benistar Administrative Services, Inc. ("BASI"); (b) Nova Benefit Plans, LLC; and (c) Wayne Bursey ("Bursey").[1]

---

[1] Universitas withdraws its arbitration claims against Daniel Carpenter ("Carpenter") and Donald Trudeau ("Trudeau") without prejudice.

Los Angeles   New York   Chicago   Nashville   www.loeb.com

A limited liability partnership including professional corporations



Peter Altieri, Esq.
March 22, 2011
Page 2

2.  Allow Universitas to submit a Second Amended Statement of Claim against
    Nova Group, Inc., BASI, Bursey and Nova Benefit Plans -- including a claim
    of statutory theft under Connecticut law -- within two (2) weeks following the
    occurrence of the Initial Scheduling Conference for Phase II of this
    Arbitration.

3.  Determine whether BASI, Nova Benefit Plans and Bursey are bound to
    arbitrate (as you will recall, they claim they are not).  This issue has already
    been fully briefed.[2]  Universitas also requests that your Honor take judicial
    notice of the testimony at the December 2010 hearings pertaining to the
    activities of BASI, Nova Benefit Plans and Bursey in administering and
    operating the Charter Oak Trust.  See pp. 469-479, 484-490, 674-675, 704-
    705, 760, 814-815, 830-831 and 1055-1056 of the Hearing Transcript. Should
    your Honor require additional briefing on this issue, Universitas would be
    happy to supplement its prior submissions.

4.  Dismiss Carpenter's pending motion to strike, which is moot in view of
    Universitas' decision not to proceed against Carpenter in this Arbitration.

5.  Authorize Universitas to immediately take the depositions of Nova Group, Inc.
    and the Phase II Parties on Phase II issues.

We are prepared to participate in a telephone conference at your earliest convenience so that
Phase II can begin expeditiously.

Respectfully submitted,

Paula K. Colbath

Attachments

cc:   Richard S. Order, Esq. (via e-mail w/ attachments)
      Joseph M. Pastore III, Esq. (via e-mail w/ attachments)
      Daniel P. Scapellati, Esq. (via email w/ attachments)
      Karen Fontaine (AAA) (via e-mail w/ attachments)

---

[2] Universitas refers your Honor to Respondents' 10/6/10 Motion to Dismiss; Universitas'
10/15/10 Opposition to Respondents' Motion to Dismiss; Respondents' 10/22/10 Reply; and
Universitas' 12/16/10 Post-Hearing Legal Brief at 35-36.

# EXHIBIT THIRTEEN

**Motion to Dismiss in front of Judge Thompson**

## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

-----------------------------------------------------------------------

| | | |
|---|---|---|
| UNIVERSITAS EDUCATION, LLC, | : | |
| | : | No.: 12-mc-00102-AWT |
| Petitioner, | : | |
| | : | |
| -v- | : | |
| | : | |
| NOVA GROUP, INC., as Trustee, Sponsor | : | |
| and Named Fiduciary of the CHARTER OAK | : | |
| TRUST WELFARE BENEFIT PLAN, | : | JULY 25, 2012 |
| | : | |
| Respondent. | : | |

----------------------------------------------------------------- :

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
### FOR LACK OF SUBJECT MATTER JURISDICTION

Pursuant to Fed. R. Civ. P. 12(b)(1) and 28 U.S.C. § 1963, respondents Nova Group, Inc. ("Nova") and the Charter Oak Trust Welfare Benefit Plan ("Charter Oak Trust") hereby submit this memorandum in support of their motion to dismiss this action for lack of subject matter jurisdiction.

Subject matter jurisdiction is lacking because petitioner Universitas Education, LLC ("Universitas") "jumped the gun" and prematurely and improperly registered a foreign judgment in this Court in flagrant violation of 28 U.S.C. § 1963. Assuming the action is not dismissed on this basis alone, the action should be dismissed for the additional reason that the rendering court lacked subject matter jurisdiction over the original action.

Furthermore, because counsel for Universitas failed to comply with the strict requirements of 28 U.S.C. § 1963, Nova and the Charter Oak Trust seek an award of their attorneys' fees and costs incurred in this action to be paid by counsel for Universitas *personally* as required by 28 U.S.C. § 1927.

**BACKGROUND**

Nova, as the Plan Sponsor and Named Fiduciary of the Charter Oak Trust, denied Universitas' claim for death benefits from the Charter Oak Trust. As required by the express provisions of the Charter Oak Trust, the parties submitted their dispute to binding arbitration. On January 24, 2011, the arbitrator issued an award ("Award") finding that Universitas was entitled to death benefits from the Charter Oak Trust.[1]

On January 25, 2011, Nova (for and on behalf of the Charter Oak Trust) commenced an action to vacate the Award in Connecticut state court. Universitas subsequently removed that action to the District of Connecticut based *solely* on diversity of citizenship. See Universitas Education, LLC v. Nova Group, Inc., No. 11-cv-00342-AWT, Dkt. No. 1 (D. Conn. Mar. 3, 2011). In its Notice of Removal, Universitas alleged that Nova is a Delaware corporation with its principal place of business in Connecticut (meaning that Nova is a citizen of both Delaware and Connecticut) and that all members of Universitas reside and are domiciled in New York (meaning that Universitas is a citizen of New York). Id. at 2. However, and not recognized by the parties at that time, Universitas failed to address the citizenship of the Charter Oak Trust.

On February 11, 2011, Universitas commenced a separate action to confirm the Award in New York state court. Relying on the representations made by Universitas in its removal papers

---

[1] Universitas and its affiliate Destination Universitas Foundation both comprise a sham and now defunct charity, as Universitas has recently admitted that Destination Universitas lost its 501(c)(3) federal tax exempt status. Universitas is headed by the former mistress of decedent S.A. "Sash" Spencer, a successful hedge fund manager who died unexpectedly in June 2008 at the time that he was a participant in the Charter Oak Trust. When Mr. Spencer's widow, Mary Spencer, discovered that a "charity" operated by her late husband's mistress was slated to split a substantial death benefit with Mr. Spencer's former employer Holding Capital Group, Inc. ("Holding Capital"), Mary Spencer threatened to sue Universitas, the former mistress, and Holding Capital. As a result, Mrs. Spencer, Universitas and Holding Capital negotiated a settlement agreement in July 2008 *that they requested the Charter Oak Trust to sign* whereby Mary Spencer would receive the *entire* death benefit in return for making a comparatively small "charitable contribution" to Universitas.

2

# EXHIBIT FOURTEEN

**Agreement between Universitas and Mary Spencer**

DRAFT – 7/10/08

<u>SETTLEMENT AGREEMENT AND RELEASES</u>

This SETTLEMENT AGREEMENT AND RELEASES is made as of the ___ day of July, 2008 by and among Mary M. Spencer, residing at 251 Crandon Boulevard, Unit 164, Key Biscayne, Florida 33149 ("Mary"), Mary M. Spencer as named Executrix of the Estate of Sash A. Spencer (the "Estate"), Holding Capital Group, Inc., having an office at 630 Third Avenue, 7th Floor, New York, New York ("Holding Capital"), Universitas Education, LLC, having an office c/o Sharon Siebert, 404 East 55th Street, Suite 13A, New York, New York (the "Charity"), Donna Silvo, residing at _____, New York, New York, administrator of the charity ("Administrator"), Grist Mill Capital, LLC, having an office at 100 Grist Mill Road, Simsbury, Connecticut 06070 ("Grist Mill") and Charter Oak Trust, having an office at 100 Grist Mill Road, Simsbury, Connecticut 06070 by Wayne Bursey, Trustee (the "Trust").

A.     Background – which all parties hereto acknowledge:

1.     Through the offices of Bruce Mactas, on or about December 22, 2006, life insurance in the principal amount of approximately $30,000,000 issued by The Lincoln National Life Insurance Company ("Lincoln National") was purchased by the Trust on the life of Holding Capital's principal, the late Sash A. Spencer, who passed away on June 10, 2008.

2.     The Trust is the owner and beneficiary of those policies (hereinafter the "Policies").



EXHIBIT
414
AAA Case no
13A5Y1558 10
ALL-STATE LEGAL®

NOVA000005

3.     The Charity is the named beneficiary of the Trust in respect of the Policies, having been so designated by the participant, Sash A. Spencer, for consideration which has been questioned by Mary and the Estate.

4.     Mary, the Estate, the Charity and Holding Capital have settled all such questions and all differences, and have agreed as follows.

B.     Agreement:

1.     The designated beneficiary of the Trust shall be "Hofheimer Gartlir & Gross, LLP as escrow agent" (the "escrow agent"). The parties shall execute and deliver such documentation as shall be necessary for that purpose, with copies thereof provided to the Trust. An escrow agreement shall be executed contemporaneously herewith requiring the escrow agent to disburse such proceeds of the policies as it may receive, only in accordance with this agreement.

2.     The net proceeds of the policies shall belong to and be disbursed to Mary subject to the reductions and offsets set forth in paragraph "3" below.

3.     If and only if proceeds of the policies are received in the amount of $30,000,000 (less expenses which had been agreed upon between Holding Capital and Grist Mill and less reasonable legal and administrative expenses), there shall be paid to the charity the sum of $5,000,000. As this sum is intended as a charitable contribution by Mary, it is contemplated that the sum may be disbursed by the escrow agent to Mary with contemporaneous arrangements satisfactory to the charity for the contribution by Mary of that sum to the charity.

4.     Subject to the terms of this agreement, all parties hereto, for themselves and on behalf of their heirs, successors, members, partners, employees, shareholders, officers, agents, trustees, beneficiaries, sponsors, administrators, attorneys and assigns, and any others claiming by, from or through them, hereby release, remise and discharge all other parties, their heirs,

-2-

NOVA000006

successors, employees, agents, assigns and attorneys (together with Arnold Broser, Bruce Mactas, Mactas, Alper Szrolovits, Inc., Arthur M. Michaelson, Esq. and the escrow agent, hereinafter collectively the "Additional Releasees"), from all claims, demands, causes of action, damages, judgments and executions which any of them have or may have, known and unknown, foreseen or unforeseen, in connection with the subject matter of this agreement. The Additional Releasees and their firms and affiliates shall be jointly and severally fully held harmless and indemnified against any and all claims, liabilities and related costs and expenses arising out of the subject matter of this agreement, such indemnifications to be paid as joint and several obligations of the recipients of the net proceeds of the policies (as between them, in proportion to the proceeds received).

5.    Each of the parties to this agreement has had access to the advice of counsel in entering into this agreement, and each of the parties acknowledges that it has received the benefit of access to such advice or has declined same and requires no further access to counsel incident to agreeing to being bound by this agreement.

6.    Upon the reasonable request of any party hereto, following the date hereof, any other party hereto will: (a) execute and deliver to the requesting party such other documents, releases, assignments and other instruments as may be required to give effect to this agreement and consummate the transactions contemplated hereby; and (b) take all other reasonable actions to fulfill the intent and purpose of this agreement and the transactions contemplated hereby.

7.    This agreement may be executed in counterparts by the parties.

8.    This agreement may be modified only in writing signed by the parties to be bound by such modification.

- 3 -

{ 60017/010/01169259:1-MTP}

NOVA000007

9.    This agreement shall be enforced only in, governed by, and construed in accordance with, the laws of the State of New York.  The undersigned hereby consents to the jurisdiction of the courts of the State of New York and agrees that any action or proceeding in connection with this guaranty shall be brought in New York County.


Dated: _____, 2008          _____
                                                          Mary M. Spencer


Dated: _____, 2008          _____
                                     Mary M. Spencer as named Executrix
                                     of the Estate of Sash A. Spencer


Dated: _____, 2008          HOLDING CAPITAL GROUP, INC.

                                     By: _____


Dated: _____, 2008          UNIVERSITAS EDUCATION, LLC

                                     By: _____
                                                          Donna Silvo

Dated: _____, 2008          GRIST MILL CAPITAL, LLC


                                     By: _____


Dated: _____, 2008          CHARTER OAK TRUST


                                     By: _____
                                                 Wayne Bursey, Trustee


– 4 –

{ 60017/010/01169259:1-MTP}

NOVA000008



ORIGIN ID:EHTA        (860) 408-7000
JOSEPH CASTAGNO
LEGAL DEFENSE FUND, LLC
10 TOWER LANE
SUITE 100
AVON, CT 06001
UNITED STATES US

SHIP DATE: 23FEB21
ACTWGT: 1.00 LB
CAD: 5508595/INET4340

BILL SENDER

TO RUBY J. KRAJICK, CLERK OF COURT
U.S. DISTRICT COURT, S.D.N.Y.
THURGOOD MARSHALL U.S. COURTHOUSE
40 FOLEY SQUARE
NEW YORK CITY NY 10007
(212) 857-8500        REF:
INV:
PO:                   DEPT:

FedEx
Express

E

WED - 24 FEB 4:30P

STANDARD OVERNIGHT

TRK#
0201   7729 8239 6203

E3 PCTA

10007
NY-US   EWR

RECEIVED
FEB 25 2021
CLERK'S OFFICE S.D.N.Y.

2021 FEB 26  AM 9: 51
SDNY PRO SE OFFICE
RECEIVED