UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNIVERSITAS EDUCATION, LLC,

          Petitioner,

   -v-                            No.  11-CV-1590-LTS

NOVA GROUP, INC.,

          Respondent.
-------------------------------------------------------x

NOVA GROUP, INC.,

          Petitioner,

   -v-                            No.  11-CV-8726-LTS

UNIVERSITAS EDUCATION, LLC,,

          Respondent.
-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

          Judgment confirming a $30 million arbitration award against Nova Group Inc.

("Nova") was entered in these cases in 2012.  (<u>See</u> docket entry no. 41.[1])   Extensive post-

judgment discovery and turnover proceedings ensued.  In August 2014, the Court entered

judgment against Nova's former principal Daniel E. Carpenter and several affiliates he

controlled, including Grist Mill Capital, LLC ("Grist Mill"), in respect of funds fraudulently

conveyed to those affiliates, at Mr. Carpenter's direction, in a scheme to prospectively render the

arbitration award and the judgment issued against Nova in these actions unrecoverable.  (<u>See</u>

docket entry nos. 474 ("Turnover Opinion"), 475 ("Turnover Judgment").)

---

[1]     Docket entry numbers in this Memorandum Opinion and Order refer to those in case
number 11-CV-1590, unless otherwise noted.

Now before the Court are motions to vacate the Turnover Judgment, filed by Mr. Carpenter (docket entry no. 665) and Grist Mill (docket entry no. 696), pursuant to Federal Rules of Civil Procedure 60(b)(4) and 60(b)(6).  Both motions argue principally that the Court lacked personal jurisdiction over Mr. Carpenter and Grist Mill at the time of the Turnover Judgment.  Also pending before the Court are Mr. Carpenter's "letter motion for the Court to take judicial notice" of certain facts related to Mr. Carpenter's motion to vacate (docket entry no. 675), and the motion of Petitioner Universitas Education, LLC ("Universitas" or "Petitioner") (docket entry no. 676), pursuant to Federal Rule of Civil Procedure 11, seeking sanctions against Mr. Carpenter for having filed his motion to vacate.[2]

The Court has considered all of the submissions and arguments of the parties carefully.  For the following reasons, the motions to vacate filed by Mr. Carpenter and Grist Mill are denied in their entirety, Mr. Carpenter's request that the Court take judicial notice is granted in part and denied in part, and Petitioner's motion for sanctions against Mr. Carpenter is granted in part and denied in part, as set forth below.

## BACKGROUND

The factual and procedural history of these actions is detailed at length in the Court's prior decisions, familiarity with which is assumed.  (See generally docket entry nos. 341, 366, 474.)  As the Court has previously explained:

> This case is part of a lengthy and ongoing dispute over the disposition of the $30 million in proceeds of two life insurance policies obtained by the late Sash A. Spencer, who was the Chief Executive Officer of Holding Capital Group, Inc.  Mr. Spencer placed the two life insurance policies into the Charter Oak Trust Welfare Benefit Plan ("Charter Oak Trust")

---

[2]   Also pending in these actions is Universitas's motion for sanctions against the attorneys who filed Grist Mill's motion to vacate.  (Docket entry no. 707.)  This Memorandum Opinion and Order does not resolve that motion, which remains under advisement.

which was "established to provide for the acquisition of and investment in various types of insurance policies to provide a welfare benefit fund or estate planning benefits," pursuant to a Funding Obligation Agreement and Power of Attorney.  [ ].  Mr. Spencer named Petitioner the sole, irrevocable beneficiary of a Charter Oak Trust death benefit comprising the proceeds payable under two life insurance policies, whose face values totaled $30 million (the "Life Insurance Proceeds").  [ ].  Mr. Spencer died in June 2008, and Petitioner made a valid and timely claim to the Life Insurance Proceeds.  (Ex. 18 at 3-4.)

Nova Group, Inc. ("Nova") and the Charter Oak Trust Welfare Benefit Plan ("Charter Oak Trust") are two of the hundreds of business entities organized and controlled, directly or indirectly, by respondent Mr. Carpenter.  [ ].  Nova is the corporate trustee of the Charter Oak Trust.  [ ]. After Petitioner made its death beneficiary claim, [the president of Nova] sought payment from the insurer, acknowledging in writing that Nova had "a fiduciary responsibility and legal obligation to carry out Mr. Spencer's wishes as he intended in a timely fashion to pay those death proceeds to a charity that he established prior to his death."  [ ].  The insurer paid Charter Oak Trust $30.67 million in Life Insurance Proceeds[.] . . . In May 2009, after receiving payment of the Life Insurance Proceeds, Nova denied Petitioner's death benefit claim.  Petitioner challenged the denial through a demand for arbitration filed on June 17, 2010; a binding arbitration award against Nova . . . was issued on January 24, 2011 in the amount of $26,525,535.98. . . .

(Docket entry no. 341 at 2-3.)

After Nova failed to pay the arbitration award, Petitioner filed an action seeking to enforce it; that action was removed to this Court and consolidated with a separate action Nova had brought to vacate the award in the District of Connecticut, which had been transferred to this Court pursuant to 28 U.S.C. section 1404(a).  On June 7, 2012, judgment was entered in favor of Petitioner upon the arbitration award in the amount of $30,181,880.30, comprising the $26,525,535.98 arbitration award and prejudgment interest.  (Docket entry no. 41.)

Petitioner employed a variety of mechanisms in an effort to collect on that judgment, leading to, among other things, the three decisions of this Court which are the most relevant to the pending motions.

First, on November 20, 2013, the Court granted Petitioner's request for an order directing the United Services Automobile Association ("USAA") to turn over to Petitioner the USAA insurance proceeds claimed in connection with property owned by Mr. Carpenter, among others.  (Docket entry no. 341, the "Nov. 20 Op. & Ord.")  In that Opinion and Order, the Court found, as relevant here, that Mr. Carpenter controlled both Respondent Nova and "hundreds" of other companies, including Grist Mill, and that "a large portion of the Life Insurance Proceeds" at issue in this case were fraudulently conveyed "from the Charter Oak Trust through Grist Mill and to other entities that Mr. Carpenter controls, and that some of those proceeds were ultimately applied to purchase and insure a vacation property" for the benefit of Mr. Carpenter and his wife.  (Id. at 2-7.)  The November 20 Opinion and Order followed a bench trial which took place on May 9, 2013.  At that bench trial, Grist Mill—which was not a respondent to the turnover application—was present through attorney Carole R. Bernstein.  (Docket entry no. 249 at 1, 3, 14.)  Mr. Carpenter—who was a named respondent to the application—also appeared through counsel, and testified.  Before he did so, counsel for certain of Mr. Carpenter's co-respondents confirmed that all of the named respondents waived any objections they might have had to this Court's exercise of personal jurisdiction over them.  (Id. at 16:7-18 ("[T]he named respondents are not raising any personal jurisdiction issues.  We've conferred with our clients on that. Legally there might be an issue by we're consciously waiving it.").)

Second, on January 13, 2014, the Court granted Petitioner's motion for a preliminary injunction prohibiting "Mr. Carpenter, his and his entities' officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with them" from "directly or indirectly causing, making, permitting or suffering any sale, assignment or transfer of, or any interference with, any asset or property of Mr. Carpenter, and any asset or

property of any company, corporation or other entity (including any trusts) in which Mr.

Carpenter has a direct or indirect interest or control," pending the Court's resolution of a

turnover motion (discussed in more detail below) that Petitioner had filed in October 2013.

(Docket entry no. 366, the "Preliminary Injunction Op. & Ord.")  That decision was based, in

part, on the Court's findings that "Mr. Carpenter's entities have continued to seek to transfer

assets from the judgment-debtor to Grist Mill, despite the Judgment and the service of restraining

notices."  (Id. at 14.)  The Preliminary Injunction Opinion and Order followed an evidentiary

hearing at which Mr. Carpenter testified and at which he did not argue that the Court lacked

personal jurisdiction over him.  (See docket entry no. 357.)[3]  Although Grist Mill was not a

respondent to Petitioner's preliminary injunction application, attorney Bernstein again attended

on Grist Mill's behalf.

Third, on August 7, 2014, the Court issued the Turnover Opinion.  That decision

resulted from a motion filed by Petitioner on October 21, 2013, seeking an order directing that

Mr. Carpenter, Grist Mill, and other affiliated entities (together, the "Turnover Respondents")

turn over specified amounts of "money and/or assets that were improperly transferred to them,

directly or indirectly," from Nova as trustee of the Charter Oak Trust.  (Docket entry no. 308, the

"Turnover Motion.")  As relevant here, attorney Bernstein filed a notice of appearance on behalf

of Grist Mill (docket entry no. 335) and signed on to a joint opposition to the Turnover Motion

---

[3]     The Court found much of Mr. Carpenter's testimony at the hearing not credible.  It also
found that "Mr. Carpenter's testimony, to the extent that it is credible, demonstrates that
he frequently engages, directly or indirectly, in inter-company transfers between entities
that he creates and controls," that "[d]ocumentation of the transfers, and the business
justifications if any therefor, is more often than not nonexistent," and that "[t]he evidence
received by this Court concerning the actions of Mr. Carpenter and his affiliates
demonstrates an absence of respect for distinctions among his business entities, for his
obligations to creditors, and for the orders of this Court."  (Id. at 7.)

filed on November 20, 2013.  (Docket entry no. 339, the "Joint Turnover Opp.")  The Joint

Turnover Opposition opposed the Turnover Motion on various grounds, including that the Court

"lack[ed] personal jurisdiction over non-party transferees [Grist Mill Holdings, LLC], Hanover

[Trust Company], [Carpenter Financial Group], and Phoenix [Capital Management]."  (Id. at 11,

13.)  The opposition made quite clear the Turnover Respondents' position that that the Court

lacked personal jurisdiction over only "some of the Respondents-non-party transferees."  (Id. at

10 (emphasis added).)  It did not argue that the Court lacked personal jurisdiction over Grist

Mill.  Similarly, Mr. Carpenter did not argue that the Court lacked personal jurisdiction over

him.  (See Turnover Opinion at 10.)

On May 23, 2014, the Court issued an order (docket entry no. 441) scheduling

oral argument on the Turnover Motion for June 4, 2014.  Two days later, attorney Bernstein filed

a letter regarding her representation of Grist Mill (and co-respondent Avon Capital, LLC):

> I write to advise the Court of certain developments in connection
> with my representation of Grist Mill Capital, LLC ("GMC") and
> Avon Capital, LLC ("Avon") in the referenced action.  By letter
> dated March 31, 2014, we were discharged from representing
> GMC and Avon.  I have been advised that Michael Taylor, Esq.,
> current counsel for Carpenter Financial Group, will be representing
> GMC and Avon.
>
> In any event, I will be out of the country on a long-standing
> planned vacation beginning Monday May 26, 2014 and returning
> June 6, 2014.

(Docket entry no. 442.)  Ms. Bernstein did not file an application to withdraw pursuant to Local

Civil Rule 1.4 (or any application to substitute attorney Taylor) and therefore remained counsel

of record for Grist Mill.

On June 18, 2014—after an adjournment of oral argument—the Court issued an

order directing the parties to be prepared, at oral argument, to discuss the Court's authority to

grant the Turnover Motion consistent with the holdings in <u>Peacock v. Thomas</u>, 516 U.S. 349, 357

(1996) and <u>Epperson v. Entm't Express, Inc.</u>, 242 F.3d 100 (2d Cir. 2001)—in which the Second

Circuit confirmed that district courts may exercise ancillary enforcement jurisdiction over a

judgment creditor's fraudulent conveyance claims against fraudulent transferees who were not

parties to an underlying action, <u>id.</u> at 103-107—as well as the issue of "whether personal

jurisdiction must be established with respect to each third-party respondent against whom or

which relief is sought[.]" (Docket entry no. 464.) The Court then held oral argument, at which

Mr. Carpenter's counsel was present. (Docket entry no. 471.) Neither attorney Bernstein nor

any other attorney appeared on behalf of Grist Mill. (<u>Id.</u>)

On August 7, 2014, the Court issued the Turnover Opinion. The Court found that

it had subject matter jurisdiction of the Turnover Motion (<u>see</u> Turnover Opinion at 2) and that it

could exercise personal jurisdiction over the Turnover Respondents—though they were not New

York domiciliaries—consistent with New York law and the Due Process Clause, because the

Turnover Respondents participated in intentional fraudulent conveyances designed to render the

New York arbitration award and New York judgment unrecoverable:

> [T]he situs of the injury is New York, because the fraudulent conveyances
> impeded Petitioner's ability to enforce its New York judgment. During
> the time period in which the conveyances at issue occurred, Mr. Carpenter
> both controlled the Turnover Respondents and acted as their principal or
> agent in accomplishing the transfers. As the Court found in the November
> Order, the conveyances were accomplished at a time when Mr. Carpenter
> knew that Petitioner was asserting a right to the proceeds of the insurance
> policies and was considering litigation. [ ]. Mr. Carpenter was also aware
> that Petitioner would be required to arbitrate any claims arising from a
> dispute over the Insurance Proceeds in New York, and that any confirmed
> award would result in a New York judgment. The conveyances were thus
> actions taken on behalf of the Turnover Respondents by Mr. Carpenter and
> designed fraudulently to render the prospective New York judgment
> unrecoverable, despite the fact that the actions may have been performed
> in Connecticut. Therefore, the Turnover Respondents should reasonably
> have expected their actions to create an injury in New York.

(Turnover Opinion at 11-12; <u>see also</u> <u>id.</u> at 12 ("The conduct of tortious activity targeted at a New York entity and a New York judgment suffices to demonstrate that the Turnover Respondents should reasonably have anticipated being haled into court here.").)

   Having found that the Court had jurisdiction and that all of the other prerequisites to a Turnover Judgment were met, the Court granted Petitioner's application and directed the Clerk of Court to enter money judgments in specified amounts ("representing the amount of Insurance Proceeds that was fraudulently conveyed, directly or indirectly, to each") against Mr. Carpenter, Grist Mill, and the other Turnover Respondents.  (Turnover Opinion at 23-24.)  On August 12, 2014, as directed by the Court, the Clerk of Court entered the associated judgment in a separate document.  (Turnover Judgment.)

   Neither Grist Mill nor Mr. Carpenter—who reported to federal prison on or about June 20, 2014, to serve a three-year sentence for mail and wire fraud, <u>see</u> <u>United States v. Carpenter</u>, No. 1:04-CR-10029-GAO (D. Mass.)—appealed the Turnover Judgment.  However, both continued to litigate matters in other courts throughout the remainder of 2014 and beyond. <u>See</u>, <u>e.g.</u>, <u>United States v. Carpenter</u>, No. 14-1641 (1st Cir. 2014); <u>Daniel Carpenter and Grist Mill Capital LLC v. Allen et al.</u>, No. 3:14-cv-00741-SRU (D. Conn. 2014); <u>Daniel Carpenter and Grist Mill Capital LLC v. Shulman et al.</u>, No. 3:13-cv-563-SRU (D. Conn. 2013); <u>Daniel Carpenter and Grist Mill Capital, LLC v. Shuman et al.</u>, No. 18-2152 (2d Cir. 2018).[4]

---

[4]  Separate criminal proceedings against Mr. Carpenter also continued while Mr. Carpenter was in custody.  On June 6, 2016, following a bench trial, Mr. Carpenter was found guilty of money laundering, conspiracy to commit money laundering, and conspiracy to defraud life insurance companies, arising in part out of Mr. Carpenter's illegal monetary transactions involving the Sash Spencer life insurance proceeds through, among other entities, Grist Mill.  <u>See</u> <u>United States v. Carpenter</u>, 190 F. Supp. 3d 260, 274 (D. Conn. 2016) ("The evidence also shows that corporate entities were created and discarded at

<u>D<small>ISCUSSION</small></u>

<u>Motions to Vacate</u>

"On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" if "the judgment is void," Fed. R. Civ. P. 60(b)(4), or if there exists "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).

Under Rule 60(b)(4), a judgment is void "'only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.'"  <u>Grace v. Bank Leumi Tr. Co. of NY</u>, 443 F.3d 180, 193 (2d Cir. 2006) (quoting <u>Texlon Corp. v. Mfrs. Hanover Commercial Corp.</u>, 596 F.2d 1092, 1099 (2d Cir. 1979)).  "Federal courts considering Rule 60(b)(4) motions that assert a judgment is void because of a jurisdictional defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction."  <u>United Student Aid Funds, Inc. v. Espinosa</u>, 559 U.S. 260, 271 (2010) (citations omitted).  In a collateral challenge to the Court's exercise of personal jurisdiction over a party under Rule 60(b)(4), "the burden of establishing lack of personal jurisdiction is properly placed on a defendant who had notice of the original lawsuit."  <u>"R" Best Produce, Inc. v. DiSapio</u>, 540 F.3d 115, 126 (2d Cir. 2008); <u>accord</u> <u>Gater Assets Ltd. v. AO Moldovagaz</u>, 2 F.4th 42, 53 (2d Cir. 2021).

Rule 60(b)(6), which authorizes a court to relieve a party from a final judgment for "any other reason that justifies relief," may be properly invoked only if "Rules 60(b)(1) through (5) do not apply, and if extraordinary circumstances are present or the failure to grant

---

Mr. Carpenter's direction when it suited his purposes."), <u>aff'd sub nom.</u> <u>United States v. Bursey</u>, 801 F. App'x 1 (2d Cir. 2020).

relief would work an extreme hardship on the movant." <u>ISC Holding AG v. Nobel Biocare Fin. AG</u>, 688 F.3d 98, 108 (2d Cir. 2012).

Motions to vacate pursuant to Rule 60(b) must be "made within a reasonable time." Fed. R. Civ. P. 60(c)(1).

<u>Personal Jurisdiction: Waiver and Forfeiture</u>

Mr. Carpenter and Grist Mill first argue that the Turnover Judgment should be vacated because the Court lacked personal jurisdiction over them. The Court disagrees.

As an initial matter, both Mr. Carpenter and Grist Mill forfeited any personal jurisdiction defense they may have had. "Personal jurisdiction, unlike subject-matter jurisdiction, can . . . be purposely waived or inadvertently forfeited." <u>City of New York v. Mickalis Pawn Shop, LLC</u>, 645 F.3d 114, 133 (2d Cir. 2011). The defense may be waived if a party fails to raise the defense by motion or by inclusion in a "responsive pleading," <u>see</u> Fed. R. Civ. P. 12(h)(1)(b), or forfeited where "[t]he actions of the defendant [during the litigation] . . . amount to a legal submission to the jurisdiction of the court, whether voluntary or not." <u>Mickalis Pawn Shop, LLC</u>, 645 F.3d at 134 (citations omitted). "[I]n determining whether waiver or forfeiture of objections to personal jurisdiction has occurred," the Court considers "'all of the relevant circumstances.'" <u>Id.</u> at 133 (citations omitted).

Mr. Carpenter waived any personal jurisdiction defense he might have had explicitly, in open court. (Docket entry no. 249 at 16:7-18.) He also forfeited the defense by vigorously litigating against Petitioner's various collation-related motions without objection on the basis of personal jurisdiction over a period of more than one year. (<u>See</u> Turnover Opinion at 10.) Considering "all of the relevant circumstances," the Court concludes that those circumstances weigh overwhelmingly in favor of a conclusion that Mr. Carpenter waived any

objections he might have had to this Court's exercise of personal jurisdiction over him.   See

Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 62 (2d Cir. 1999) ("These circumstances establish a

forfeiture.").

> While Grist Mill's circumstances present a closer question, the Court concludes

on the specific facts of this case that it, too, forfeited any objection it had to the Court's exercise

of specific personal jurisdiction over it in connection with the Turnover Motion.   First, though

Grist Mill appeared and joined the other Turnover Respondents' Joint Turnover Opposition,

Grist Mill notably failed to argue that the Court lacked jurisdiction over it in that brief—Grist

Mill's first significant defensive move—even though other of the Turnover Respondents raised

that defense in the same brief.   See Transaero, Inc. v. La Fuerza Aerea Boliviana, 162 F.3d 724,

730 (2d Cir. 1998) ("Rule 12(h)(1) 'advises a litigant to exercise great diligence in challenging

personal jurisdiction . . . or service of process.   If he wishes to raise [either] of these defenses he

must do so at the time he makes his first significant defensive move[.]'" (quoting 5A Charles

Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1391 (1990)).

> Second, even assuming that Grist Mill's "first significant defense move" (an

opposition brief) did not constitute a "responsive pleading" sufficient without more to waive its

personal jurisdiction defense under Rule 12(h)(1)(B), Grist Mill's peculiar conduct in this case

amounted to a forfeiture of that defense.   While Grist Mill's formal activity in these actions was

relatively limited, its counsel—who had appeared in court for the bench trial conducted on May

9, 2013 (docket entry no. 249), at which she witnessed several respondents waive any personal

jurisdiction defense they had, and for the evidentiary hearing conducted on November 22, 2013

(docket entry no. 357)—was nonetheless quite familiar with the facts of this case and the

personal jurisdiction issues it might present.   She also knew that other Turnover Respondents

were challenging this Court's exercise of personal jurisdiction over them (see docket entry no. 339), but nonetheless failed to raise that objection in the very same brief, or to otherwise alert Petitioner or the Court that Grist Mill wished to lodge such an objection.  Grist Mill then proceeded to sit on its hands for the following several months—even before attorney Bernstein alerted the Court that she had been discharged—while it knew the Turnover Motion was under consideration.  Based on all of the circumstances, on the unique facts of this case, this conduct amounted to a forfeiture of any personal jurisdiction objection Grist Mill might have had.

Personal Jurisdiction: Merits

Even if Mr. Carpenter and Grist Mill had not waived and forfeited their personal jurisdiction defenses, the Court would conclude that they have each failed to meet their burden to show that the Court lacked specific personal jurisdiction over them so as to warrant relief under Rule 60(b)(4).  See DiSapio, 540 F.3d at 126 ("[T]he burden of establishing lack of personal jurisdiction is properly placed on a defendant who had notice of the original lawsuit.").

As set forth in the Turnover Opinion (at 10-14), when considering whether the Court may exercise personal jurisdiction over a nonresident, the Court must first determine whether that nonresident is "subject to jurisdiction under the law of the forum state" and, if he or she is, "whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution."  State Farm Fire & Cas. Co. v. Swizz Style, Inc., 246 F. Supp. 3d 880, 886 (S.D.N.Y. 2017) (quoting Sonera Holding B.V. v. Cukurova Holding A.S., 750 F.3d 221, 224 (2d Cir. 2014)).  "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Walden v. Fiore, 571 U.S. 277, 283 (2014) (citation

and internal quotation marks omitted).  The minimum contacts inquiry focuses on "the relationship among the defendant, the forum, and the litigation."  Id. (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984)).

Mr. Carpenter and Grist Mill seek to vacate the Turnover Judgment on the ground that the Court lacked minimum contacts over each of them pursuant to the Supreme Court's decision in Walden v. Fiore, 571 U.S. 277 (2014).  (See docket entry no. 665 at 5-6, 10-16; docket entry no. 697 at 13-16.)[5]  The Court disagrees.

The Supreme Court in Walden held that a federal court in Nevada lacked personal jurisdiction over an agent of the Drug Enforcement Administration in Atlanta, Georgia, who had seized the cash of two airline passengers who had passed through the Atlanta airport for a layover before taking a connecting flight to Las Vegas, Nevada.  The agent's contacts with Nevada—essentially, the fact that the seizure of plaintiffs' cash in Atlanta ultimately injured the plaintiffs in Nevada—were "random" and "fortuitous," and arose exclusively out of plaintiffs' contacts with that State, and were therefore insufficient to satisfy the minimum contacts standard set forth in International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945), and its progeny.  In so holding, Walden explained that "[t]he proper focus of the minimum contacts inquiry in intentional-tort cases is the relationship among the defendant, the forum, and the litigation," and "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State."  Id. at 291 (internal citation and quotation marks omitted).

---

[5]     The federal specific jurisdiction inquiry has two prongs: "minimum contacts" and "reasonableness."  Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010).  Mr. Carpenter and Grist Mill do not appear to challenge the Turnover Opinion's reasonableness analysis.  (See Turnover Opinion at 13-14.)  To the extent they do, they have identified no defect in that analysis warranting vacatur.

Walden does not compel a conclusion that Mr. Carpenter or Grist Mill lacked the constitutionally-requisite minimum contacts with New York State in these cases.  Their contacts with New York were not random, fortuitous, or created only by Petitioner: instead, the Court found that Mr. Carpenter and Grist Mill fraudulently conveyed tens of millions of dollars in a scheme designed to prospectively render unrecoverable an arbitration award and related judgment they knew would be issued in New York.  (Turnover Opinion at 10; id. at 12 ("The conduct of tortious activity targeted at a New York entity and a New York judgment suffices to demonstrate that the Turnover Respondents should reasonably have anticipated being haled into court here.") (emphasis added).)[6]  Given that Mr. Carpenter and Grist Mill "aimed [their] conduct at the forum," Charles Schwab Corp. v. Bank of Am. Corp., 883 F.3d 68, 87 (2d Cir. 2018), the Court permissibly exercised personal jurisdiction over them.[7]

Mr. Carpenter's and Grist Mill's motions to vacate, to the extent they seek vacatur based on the Court's purported lack of personal jurisdiction over them, are therefore denied.

---

[6]    Mr. Carpenter and Grist Mill each failed to appeal the Court's factual findings underlying the Court's personal jurisdiction conclusion, and have proffered no basis for the Court to reconsider those findings on these motions.

[7]    Indeed, several courts since Walden have found that they could properly exercise personal jurisdiction over nonresident transferees where, as here, those transferees knowingly participated in fraudulent transfers designed to frustrate a party's ability to collect on an in-state judgment.  See, e.g., Seward v. Richards, No. 2020-0259, 2021 WL 4075940, at *5 (N.H. Sept. 8, 2021) (collecting cases); Warren Hill, LLC v. Neptune Invs., LLC, No. 20-CV-0452-HB, 2020 WL 2126798, at *3 (E.D. Pa. May 5, 2020) (collecting cases); Ocean Garden Prod. Inc. v. Blessings Inc., No. 18-CV-00322-TUC-RM, 2019 WL 4736928, at *5 (D. Ariz. Sept. 27, 2019); AKH Co., Inc. v. Universal Underwriters Ins. Co., No. 13-2003-JAR-KGG, 2018 WL 4111717, at *8 (D. Kan. Aug. 29, 2018); In re Akbari–Shahmirzadi, No. 11-15351-T11, 2016 WL 6783245, at *3 (Bankr. D.N.M. Nov. 14, 2016) (collecting cases).

<u>Service of Process</u>

Mr. Carpenter and Grist Mill each further argue that the Turnover Judgment is void because "Universitas should have served GMC [and Mr. Carpenter] with formal service of process[.]" (Docket entry no. 697 at 5-6; docket entry no. 665 at 17-18.) The Court previously rejected the same argument as meritless, because "each of the Turnover Respondents agreed to accept, and accepted, service by e-mail." (Turnover Opinion at 5, 14; <u>see also</u> docket entry no. 492 at 1-2); <u>Zherka v. Ryan</u>, 52 F. Supp. 3d 571, 577 (S.D.N.Y. 2014) ("The defense of insufficient service of process may be waived.").[8] Mr. Carpenter and Grist Mill have failed to carry their burden to show that such service did not occur, was not authorized, or was not waived. <u>Burda Media, Inc. v. Viertel</u>, 417 F.3d 292, 299 (2d Cir. 2005) ("[O]n a motion to vacate a default judgment based on improper service of process where the defaulting defendant had actual notice of the original proceeding but delayed in bringing the motion, the defendant bears the burden of proof to establish that the purported service did not occur."). Their motions, to the extent they seek vacatur based on inadequate service of process, are therefore denied.

<u>Subject Matter Jurisdiction</u>

Mr. Carpenter argues that the Turnover Judgment should be vacated under Rule 60(b)(4) for lack of subject matter jurisdiction under <u>Peacock</u> and <u>Epperson</u>. The Court has previously considered and rejected this argument (made by Mr. Carpenter and/or entities under his control) in these actions (<u>see</u> docket entry nos. 161, 319, 464, 471, 474; <u>see also</u> docket entry no. 545 at 4-5), and Mr. Carpenter has proffered no basis for the Court to revisit those

---

[8] In Mr. Carpenter's case, he was also served with the Turnover Motion (and the Turnover Opinion and Turnover Judgment) via ECF notification to his counsel.

determinations on this motion.  Mr. Carpenter's motion to vacate, to the extent it seeks vacatur based on the Court's purported lack of subject matter jurisdiction, is therefore denied.

Due Process (Grist Mill)

Grist Mill also moves to vacate on the theory that, because attorney Bernstein alerted the Court on the eve of the Turnover Judgment that Grist Mill had discharged her, but failed to file a motion to withdraw pursuant to Local Civil Rule 1.4, Grist Mill's due process rights to participate in the turnover proceedings and to appeal the Turnover Judgment were violated.  (See docket entry no. 697 at 10 ("It denied GMC the opportunity ever to raise an argument based on lack of personal jurisdiction."); at 12 ("[A]fter Ms. Bernstein told the Court she no longer represented GMC, the Court took no steps to ensure GMC retained new counsel."); at 16-17 ("GMC had no one to file an appeal[.]").)

While Rule 60(b)(4) may provide relief "where a judgment is premised" on "a violation of due process that deprives a party of notice or the opportunity to be heard," Espinosa, 559 U.S. at 271, the record does not support a conclusion that Grist Mill was deprived due process in connection with the Turnover Judgment.  Instead, Grist Mill both received notice of Petitioner's Turnover Motion and had an opportunity to be heard in response, as evidenced by its joinder of the Joint Turnover Opposition.  That was all due process required.

No due process violation resulted from Grist Mill's later decision to discharge its counsel after the Turnover Motion had been pending for several months.  Grist Mill's argument that it was "silenced by the departure of its counsel and its principal's incarceration" (docket entry no. 697 at 12) is belied by Mr. Carpenter's and Grist Mill's continued litigation efforts in other matters, in other fora, during the same time period.  See Daniel Carpenter and Grist Mill Capital LLC v. Allen et al., No. 3:14-cv-00741-SRU (D. Conn.), ECF Nos. 9, 11, 15; Daniel

Carpenter and Grist Mill Capital LLC v. Shulman et al., No. 3:13-cv-563-SRU (D. Conn.), ECF

Nos. 33, 34, 43, 45, 46, 51.  Moreover, several other nonresident transferees also controlled by

Mr. Carpenter participated in the supplemental briefing and oral argument as to the Turnover

Motion.[9]  In sum, Grist Mill's decision to discharge its counsel shortly before the Court's

Turnover Judgment does not entitle Grist Mill to relief under Rule 60(b)(4).  See Mickalis Pawn

Shop, 645 F.3d at 139 ("The defendants overlook the critical distinction between defendants who

'appear' in court . . . and those who do not.").

        Finally, Grist Mill is not entitled to relief under any provision of Rule 60(b) based

on the fact that attorney Bernstein did not formally withdraw as its counsel in compliance with

Local Civil Rule 1.4.  Initially, the Court notes that attorney Bernstein's letter dated May 25,

2014, suggests that she understood that her letter (without more) did not relieve her of her

obligations as counsel; otherwise, there would have been no need to inform the Court of her

upcoming vacation schedule.  (Docket entry no. 442.)  Even assuming attorney Bernstein

intended to file a formal motion to withdraw before the Court's adjudication of the Turnover

Motion, and failed to do so as a result of her own error, that attorney error would not entitle Grist

Mill to relief from a judgment it had sufficient notice of, an opportunity to respond to, and a say

in opposing, six years later.  Cyan Contracting Corp. v. Nat'l Grange Mut. Ins. Co., 257 F.R.D.

626, 628 (S.D.N.Y. 2009) ("Attorney error rarely is a ground for relief under Rule 60(b)(1) and

---

[9]     Several of those entities sought reconsideration of the Turnover Opinion (see docket entry no. 481), despite Mr. Carpenter having reported to prison.  Considering this fact alongside Mr. Carpenter's and Grist Mill's continued active litigation in other fora in the second half of 2014, the Court also rejects Grist Mill's argument that it "never got a chance to appeal" and should be relieved from the Turnover Judgment pursuant to Rule 60(b)(6)—an application which is, in any event, untimely.  Marshak v. Sheppard, 381 F. Supp. 3d 261, 264 (S.D.N.Y. 2019) ("[F]ive years is not a reasonable time to wait to bring a Rule 60(b)(6) motion."), aff'd, 803 F. App'x 555 (2d Cir. 2020).

is a ground under Rule 60(b)(6) only where the attorney's conduct is grossly negligent and extraordinary circumstances are present."); <u>Marshak</u>, 381 F. Supp. 3d at 264 ("[F]ive years is not a reasonable time to wait to bring a Rule 60(b)(6) motion.").

Grist Mill's motion to vacate, to the extent it seeks vacatur based on its alleged "unrepresented and defaulting" status as of May 2014, is therefore denied.

<u>Rule 58 (Mr. Carpenter)</u>

Mr. Carpenter argues the Turnover Judgment is void because it is merely a "Clerk's Order" signed by the Clerk and not by a district judge, as purportedly "required by Rule 58." (Docket entry no. 665 at 20-21.) Rule 58 (as amended in 2002) requires at most, and only in certain circumstances, that the Court "approve the form" of a separately-entered judgment. Fed. R. Civ. P. 58(b)(2). Here, the Turnover Judgment was entered as a separate document with the approval of and at the direction of the Court. (<u>See</u> Turnover Opinion at 23-24.) <u>See also</u> 10 Charles Allen Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 2652 (4th ed. 2021) ("[I]t has been held that a judgment need not be signed by the judge to be effective."). In any event, even if the signature of a district judge had been required on the Turnover Judgment, such a procedural defect would not render the judgment void, <u>In re Texlon Corp.</u>, 596 F.2d at 1099 ("[a] judgment is not void merely because it is erroneous" (citation omitted)), especially in light of the 2002 amendments to Rule 58, which set a 150-day outside cap on a judgment becoming "entered" and therefore appealable, even where the Court fails to comply with the "separate document" requirement of that Rule. <u>See Burnley v. City of San Antonio</u>, 470 F.3d 189, 197 (5th Cir. 2006) (explaining the 2002 amendments to Rule 58 and finding the appellant's argument "that the clerk's entry of a judgment on the verdict on February 2, 2004 was a nullity" for lack of approval by the district judge "to be without merit"); <u>Harmston v. City & Cty. of San</u>

Francisco, 627 F.3d 1273, 1280 (9th Cir. 2010) ("Congress has decided that ensuring finality

eventually becomes more important than strictly enforcing Rule 58's separate document

requirement.").

Remaining Arguments

The Court has considered the various other arguments raised by Mr. Carpenter in

his motion to vacate and reply in support of that motion.  For the reasons set forth in Petitioner's

opposition brief (see docket entry no. 667 at 14-16), those arguments are each untimely, barred

by the doctrines of claim or issue preclusion, and/or meritless, and they certainly do not meet Mr.

Carpenter's burden to show an entitlement to vacatur of the Turnover Judgment under Rule

60(b).  See Kotlicky v. U.S. Fid. & Guar. Co., 817 F.2d 6, 9 (2d Cir. 1987) ("Generally, courts

require that the evidence in support of the motion to vacate a final judgment be 'highly

convincing,' that a party show good cause for the failure to act sooner, and that no undue

hardship be imposed on other parties." (internal citations omitted)).

Motion to Take Judicial Notice

Mr. Carpenter separately moves (docket entry no. 675) requesting that the Court

take judicial notice of (1) "a letter from Attorney Manson on behalf of Universitas threatening a

motion to strike that was delivered on my family's doorstep on Christmas Eve [2020]," and (2)

the case Universitas Educ., LLC v. T.D. Bank, No. 15-CV-5643-SAS, 2015 WL 9304551

(S.D.N.Y. Dec. 21, 2015).  Mr. Carpenter also asks that the Court issue an injunction to stop two

of Petitioner's attorneys in this matter from contacting him or his family, and grant him

permission to "ignore discussing anything" with those attorneys.

Petitioner does not oppose Mr. Carpenter's request that the Court take judicial

notice of Petitioner's threatened motion to strike, or of Judge Scheindlin's 2015 decision in T.D.

<u>Bank</u>.  The Court therefore grants that portion of Mr. Carpenter's request as unopposed and has considered those proffers in deciding the motions addressed in this Memorandum Opinion and Order.  To the extent Mr. Carpenter seeks an injunction prohibiting communications to him from Petitioner's attorneys—who not only may but in some circumstances must communicate with him, given his <u>pro se</u> status in these actions, in order to comply with this Court's Individual Practices—that request is denied.

<u>Motion for Sanctions</u>

Petitioner moves, under Federal Rule of Civil Procedure 11, for sanctions against Mr. Carpenter arising out of Mr. Carpenter's filing of his motion to vacate.  (Docket entry no. 676.)  Petitioner served Mr. Carpenter with its Rule 11 papers more than twenty-one days before filing its motion (docket entry no. 676-1), and upon filing those papers (docket entry no. 682).  Mr. Carpenter did not file any response.[10]

Rule 11 requires that motions and other papers presented to the Court not be "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," that "the claims, defenses, and other legal contentions" presented "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and that the factual contentions in such motions and other papers "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(1), (b)(2), (b)(3).  The Court may sanction a party for violation of Rule 11 "after notice and a reasonable opportunity to respond."  Fed. R. Civ. P. 11(c)(1)-(2).  <u>Pro se</u>

---

[10]     Grist Mill filed a response (docket entry no. 686), opposing the motion to the extent it sought relief against Grist Mill.

parties such as Mr. Carpenter are bound by the requirements of Rule 11.  Sorenson v. Wolfson, 170 F. Supp. 3d 622, 626 (S.D.N.Y. 2016), aff'd, 683 F. App'x 33 (2d Cir. 2017).  Sanctions should only be imposed, however, "if 'it is patently clear that a claim has absolutely no chance of success,' and all doubts should be resolved in favor" of the filing party.  K.M.B. Warehouse Distributors, Inc. v. Walker Mfg. Co., 61 F.3d 123, 131 (2d Cir. 1995) (citation omitted).  The "main purpose of Rule 11 is to deter improper behavior, not to compensate the victims of it or punish the offender."  Universitas Educ., LLC v. Nova Grp., Inc., 784 F.3d 99, 103 (2d Cir. 2015) (quoting 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1336.3 (3d ed. 2004)).

In considering whether to impose Rule 11 sanctions, the Court must determine whether Mr. Carpenter has violated Rule 11, and, if so, what sanctions are appropriate.[11]

Petitioner argues that each of Mr. Carpenter's "ten reasons for vacating the judgment" is sanctionable under Rule 11.  However, while Mr. Carpenter's motion to vacate does repeat a number of questionable arguments in passing, its principal bases are that the Court lacked personal jurisdiction over Petitioner under Walden, that service of process was insufficient, that the Court lacked subject matter jurisdiction, and that the Turnover Judgment did not comply with Rule 58.  Mr. Carpenter's first argument—that the Turnover Judgment's jurisdictional analysis was inconsistent with Walden—is without merit, but is not entirely

---

[11]     In weighing "whether to impose a sanction or what sanctions would be appropriate in the circumstances," the Court considers, among other factors, "[w]hether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; [and] whether the responsible person is trained in the law."  Fed. R. Civ. P. 11 advisory committee note to the 1993 amendment.

frivolous, and is not an argument that had been previously and explicitly rejected by the Court.

However, Mr. Carpenter's arguments concerning service of process and subject matter

jurisdiction are not only without merit, but have been considered and rejected by this Court on

prior occasions.  (See Turnover Opinion at 2, 5, 14; docket entry no. 492 at 1-3.)  See also

Adams v. New York State Educ. Dep't, 752 F. Supp. 2d 420, 457 n.43 (S.D.N.Y. 2010)

("Because this Court previously rejected Adams' and Cruz's argument that abolishing the three

member panel violated due process. . . . [their counsel] is subject to Rule 11 sanctions for re-

asserting the claim without new facts or legal arguments."), aff'd sub nom. Ebewo v. Fairman,

460 F. App'x 67 (2d Cir. 2012).  Moreover, this Court has located no existing case law

supporting Mr. Carpenter's argument that a separate judgment signed by the Clerk of Court may

be declared void, pursuant to Rule 60(b)(4) or (b)(6), several years after that judgment is issued,

for lack of a district judge's signature, and Mr. Carpenter proffered no nonfrivolous argument to

interpret the law in that fashion.  The Court therefore concludes that Mr. Carpenter's inclusion of

those arguments in his motion to vacate warrants the imposition of sanctions under Rule 11.

>        As proposed sanctions, Petitioner requests that the Court (1) "[e]xpand the scope

of the current Court order [see docket entry no. 295 at 10] requiring that [Nova] obtain

permission from the Court before filing any motion to encompass" Mr. Carpenter, Grist Mill,

and the other Turnover Respondents, (2) "[e]xpand the scope of the current judgment against

Nova for Universitas' attorneys' fees and costs [see docket entry no. 491] to encompass" the

same entities, and (3) "[s]tay any additional litigation in this matter, including an appeal for any

denial of any Motion to Vacate, until the monetary sanction imposed upon Nova is paid."

(Docket entry no. 676.)

On this record, the Court concludes that Mr. Carpenter's motion, which was filed on his own behalf rather than on behalf of any of the other Turnover Respondents, and which raised a combination of sanctionable and non-sanctionable arguments, does not warrant the extensive sanctions requested by Petitioner.  Instead, a narrower and more tailored sanction, requiring Mr. Carpenter to obtain permission from the Court before filing any further motion in these cases, is warranted for the reasons set forth below.[12]

First, Mr. Carpenter has at least a twenty-year history of raising questionable arguments, including some bearing similarity to certain of those in his motion to vacate, before this Court and others.[13]  Second, though Mr. Carpenter is pro se, he is trained in the law.  See Curcio v. Comm'r, 99 T.C.M. (CCH) 1478 (T.C. 2010), aff'd, 689 F.3d 217 (2d Cir. 2012) ("Carpenter is a lawyer with experience in tax and employee benefits law.").  Third, Mr.

---

[12]   Several factors are "to be considered in restricting a litigant's future access to courts: '(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.'" Iwachiw v. New York State Dep't of Motor Vehicles, 396 F.3d 525, 528 (2d Cir. 2005) (citation omitted).

[13]   See, e.g., Universitas Educ., LLC v. Benistar, No. 3:20-CV-00738-JAM, 2021 WL 965794, at *18 (D. Conn. Mar. 15, 2021) ("This second motion is based on essentially the same argument as the first motion to dismiss: that the Defendant Trusts' sole trustee [Mr. Carpenter] was not personally served, rendering service of process ineffective, and more than 90 days have passed since the complaint was filed.  I will deny the Defendant Trusts' second motion to dismiss for the same reasons that I am rejecting their failure to properly serve process argument [ ]."); United States v. Carpenter, No. 04-CR-10029-GAO, 2019 WL 722631, at *4 (D. Mass. Feb. 20, 2019) (rejecting argument made by Mr. Carpenter as frivolous); Carpenter v. Comm'r, Internal Revenue Serv., No. 3:13-CV-563-SRU, 2018 WL 1902583, at *14 n.38 (D. Conn. Apr. 20, 2018) (same) (subsequent history omitted); Israel v. Carpenter, No. 95-CV-2703-DAB-JCF, 2001 WL 1159631, at *1 (S.D.N.Y. Oct. 1, 2001) (denying Mr. Carpenter's motion pursuant to Rule 60(b)(1) as "entirely frivolous").

Carpenter's motive appears to have been at least in part to cause unnecessary expense on Universitas and an undue burden on the Court, given that during the pendency of Mr. Carpenter's motion to vacate, he filed a second motion to vacate pursuant to other subsections of Rule 60 (docket entry no. 700), rather than incorporating all of his proffered bases for vacatur into a single Rule 60 motion.[14]  Finally, Mr. Carpenter has so far not been deterred by financial sanctions against the entities he controls in this actions.  (See, e.g., docket entry no. 491.) Having considered these factors, as well as Mr. Carpenter's conduct (and the conduct of the entities he controls) in these actions, the Court will require Mr. Carpenter to obtain permission from the Court before filing any further motions in these actions, pursuant to Rule 11.

CONCLUSION

For the reasons set forth above, Mr. Carpenter's motion to vacate (docket entry no. 665) is denied, Grist Mill's motion to vacate (docket entry no. 696) is denied, Mr. Carpenter's motion for the Court to take judicial notice (docket entry no. 675) is granted in part and denied in part, and Petitioner's motion for sanctions (docket entry no. 676) is granted in part and denied in part.

Mr. Carpenter is hereby prohibited from filing any further motions in these cases without prior permission from the Court.  Mr. Carpenter may seek such permission by way of filing a letter-motion, not to exceed three pages, identifying the basis of the motion he seeks

---

[14]    Mr. Carpenter's second motion to vacate did not include a certification that Mr. Carpenter had complied with this Court's Individual Practices requiring pre-motion communications between the parties before a party makes a motion of any type, leading to the Court denying it without prejudice to reinstatement.  (See docket entry no. 701.)

permission to file, and certifying, pursuant to this Court's Individual Practices, that Mr.

Carpenter has consulted with all opposing parties regarding the relief he proposes to seek.

This Memorandum Opinion and Order resolves docket entry nos. 665, 675, 676, and 696 in case no. 11-CV-1590, and docket entry nos. 401, 406, and 419 in case no. 11-CV-8726.

Chambers will mail a copy of this Memorandum Opinion and Order to Mr.

Carpenter.

SO ORDERED.

Dated: New York, New York
            September 28, 2021

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

**Copy mailed to:**

Daniel E. Carpenter
18 Pond Side Lane
West Simsbury, CT 06092