UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNIVERSITAS EDUCATION, LLC,

        Petitioner,

-v-                                                                       No. 11-CV-1590-LTS

NOVA GROUP, INC.,

        Respondent.
-------------------------------------------------------x

## MEMORANDUM ORDER

Before the Court is Petitioner Universitas Education, LLC's ("Petitioner" or "Universitas") Motion for the Imposition of Rule 11 Sanctions Against Roger Stavis, Esq., and Mintz & Gold LLP ("M&G", and together, the "Stavis Parties"), former counsel for Respondent Grist Mill Capital, LLC ("GMC") in this action. (Docket entry no. 707 (the "Sanctions Motion").) The Court has carefully considered all of the submissions and arguments in connection with the instant motion. For the following reasons, the Sanctions Motion is denied in its entirety.

## BACKGROUND

The factual and procedural history of these actions is detailed at length in the Court's prior decisions, familiarity with which is assumed. (See generally docket entry nos. 341, 366, 474, 722.) As the Court has previously explained:

> This case is part of a lengthy and ongoing dispute over the disposition of the $30 million in proceeds of two life insurance policies obtained by the late Sash A. Spencer, who was the Chief Executive Officer of Holding Capital Group, Inc. Mr. Spencer placed the two life insurance policies into the Charter Oak Trust Welfare Benefit Plan ("Charter Oak Trust") which was "established to provide for the acquisition of and investment in

> various types of insurance policies to provide a welfare benefit fund or estate planning benefits," pursuant to a Funding Obligation Agreement and Power of Attorney.  [ ].  Mr. Spencer named Petitioner the sole, irrevocable beneficiary of a Charter Oak Trust death benefit comprising the proceeds payable under two life insurance policies, whose face values totaled $30 million (the "Life Insurance Proceeds").  [ ].  Mr. Spencer died in June 2008, and Petitioner made a valid and timely claim to the Life Insurance Proceeds.  (Ex. 18 at 3-4.)
>
> Nova Group, Inc. ("Nova") and the Charter Oak Trust Welfare Benefit Plan ("Charter Oak Trust") are two of the hundreds of business entities organized and controlled, directly or indirectly, by respondent Mr. Carpenter.  [ ].  Nova is the corporate trustee of the Charter Oak Trust.  [ ].  After Petitioner made its death beneficiary claim, [the president of Nova] sought payment from the insurer, acknowledging in writing that Nova had "a fiduciary responsibility and legal obligation to carry out Mr. Spencer's wishes as he intended in a timely fashion to pay those death proceeds to a charity that he established prior to his death."  [ ].  The insurer paid Charter Oak Trust $30.67 million in Life Insurance Proceeds[.] . . . In May 2009, after receiving payment of the Life Insurance Proceeds, Nova denied Petitioner's death benefit claim.  Petitioner challenged the denial through a demand for arbitration filed on June 17, 2010; a binding arbitration award against Nova . . . was issued on January 24, 2011 in the amount of $26,525,535.98. . . .

(Docket entry no. 341 at 2-3.)

After Nova failed to pay the arbitration award, Petitioner filed an action seeking to enforce it; that action was removed to this Court, and consolidated with a separate action Nova had brought to vacate the award in the District of Connecticut, which had been transferred to this Court pursuant to 28 U.S.C. section 1404(a).  On June 7, 2012, judgment was entered in favor of Petitioner upon the arbitration award in the amount of $30,181,880.30, including prejudgment interest.  (Docket entry no. 41.)

As relevant here, extensive post-judgment discovery and turnover proceedings ensued.  In August 2014, the Court entered judgment against Nova's former principal Daniel E. Carpenter and several affiliates he controlled, including Respondent GMC, in respect of funds fraudulently conveyed to those affiliates, at Mr. Carpenter's direction, in a scheme to

prospectively render the arbitration award and the judgment issued against Nova in these actions unrecoverable.[1]  (See docket entry nos. 474 ("Turnover Opinion"), 475 ("Turnover Judgment").)

Over six years later, Mr. Carpenter, on November 13, 2020, and GMC, on February 19, 2021[2], moved, pursuant to Federal Rules of Civil Procedure 60(b)(4) and 60(b)(6), to vacate the Turnover Judgment.  (See docket entry nos. 666, 696.)  Both motions argued principally that the Court lacked personal jurisdiction over Mr. Carpenter and GMC at the time of the Turnover Judgment.  Universitas then moved, pursuant to Federal Rule of Civil Procedure 11, seeking sanctions against Mr. Carpenter (docket entry no. 676) and against counsel for GMC, for having filed the motions to vacate.

On April 20, 2021, approximately one month after Universitas filed the Sanctions Motion against Mr. Stavis and M&G, the latter filed their opposition, and separately moved to withdraw as counsel for GMC, citing an irreparable breakdown of the attorney-client relationship due to a disagreement regarding litigation strategy.  (See docket entry no. 714 ("Opp."); docket entry no. 710 (the "Withdrawal Motion").)  Universitas did not oppose the Withdrawal Motion,

---

[1] Neither GMC nor Mr. Carpenter—who reported to federal prison on or about June 20, 2014, to serve a three-year sentence for mail and wire fraud, see United States v. Carpenter, No. 1:04-CR-10029-GAO (D. Mass.)—appealed the Turnover Judgment. However, both continued to litigate matters in other courts throughout the remainder of 2014 and beyond.  See, e.g., United States v. Carpenter, No. 14-1641 (1st Cir. 2014); Daniel Carpenter and Grist Mill Capital LLC v. Allen et al., No. 3:14-cv-00741-SRU (D. Conn. 2014); Daniel Carpenter and Grist Mill Capital LLC v. Shulman et al., No. 3:13-CV-563-SRU (D. Conn. 2013); Daniel Carpenter and Grist Mill Capital, LLC v. Shuman et al., No. 18-2152 (2d Cir. 2018).

[2] Mr. Stavis, at the time and presently employed by Mintz & Gold LLP, entered his notice of appearance on behalf of Grist Mill on December 23, 2020.  (Docket entry no. 674.) Mr. Stavis originally filed a Rule 60(b) motion on behalf of GMC on January 5, 2021, but subsequently withdrew that motion and filed a revised one seeking vacatur on narrower grounds, after being "formally threatened with sanctions."  (See docket entry nos. 678, 696; docket entry 740 at 1.)

although Mr. Carpenter, as GMC's principal, did and argued that M&G had failed to comply with the Court's individual rules in using their best efforts to informally resolve the dispute. (See generally docket entry no. 718.)  On June 2, 2021, the Court granted M&G's Withdrawal Motion, finding that M&G had proffered satisfactory reasons for withdrawal, and that, because GMC's motion to vacate was fully briefed and it had filed its opposition to the Sanctions Motion, withdrawal would not stall the case.  (See docket entry no. 721 at 3-4.)

On September 28, 2021, in a Memorandum Opinion and Order, the Court denied in their entirety Mr. Carpenter's and GMC's motions to vacate the Turnover Judgment, and granted in part and denied in part Petitioner's motion for sanctions against Mr. Carpenter. (Docket entry no. 722 (the "Rule 60 Order").)   The Court imposed sanctions on Mr. Carpenter for raising in his motion arguments concerning lack of subject matter jurisdiction, improper service of process, and noncompliance with Federal Rule of Civil Procedure 58, that were frivolous and/or had previously and explicitly been rejected by the Court.[3]  (Rule 60 Order at 21-22.)  The Court, however, declined to impose sanctions in connection with Mr. Carpenter's

---

[3]  The Court also observed that Mr. Carpenter "has at least a twenty-year history of raising questionable arguments, including some bearing similarity to certain of those in his motion to vacate, before this Court and others."  (Rule 60 Order at 23; see also e.g., Universitas Educ., LLC v. Benistar, No. 3:20-CV-00738-JAM, 2021 WL 965794, at *18 (D. Conn. Mar. 15, 2021) ("This second motion is based on essentially the same argument as the first motion to dismiss: that the Defendant Trusts' sole trustee [Mr. Carpenter] was not personally served, rendering service of process ineffective, and more than 90 days have passed since the complaint was filed. I will deny the Defendant Trusts' second motion to dismiss for the same reasons that I am rejecting their failure to properly serve process argument [ ]."); United States v. Carpenter, No. 04-CR-10029-GAO, 2019 WL 722631, at *4 (D. Mass. Feb. 20, 2019) (rejecting argument made by Mr. Carpenter as frivolous); Israel v. Carpenter, No. 95-CV-2703-DAB-JCF, 2001 WL 1159631, at *1 (S.D.N.Y. Oct. 1, 2001) (denying Mr. Carpenter's motion pursuant to Rule 60(b)(1) as "entirely frivolous").)

personal jurisdiction argument, finding that it was not "entirely frivolous" and had not been previously rejected by the Court.  (Id.)

    Mr. Carpenter and GMC, through new counsel, appealed the Rule 60 Order.  (See docket entry no. 725.)   On January 20, 2022, the Court, in light of the pending appeal, deferred resolution of Petitioner's pending motion for sanctions as against the Stavis Parties until the Court of Appeals had resolved the appeal.  (See docket entry no. 735.)  On February 23, 2023, the Second Circuit affirmed the Rule 60 Order, characterizing the "numerous" challenges that Appellants raised as "baseless" and, in particular, Appellants' challenge to this Court's subject matter jurisdiction as "frivolous."  Universitas Educ., LLC v. Grist Mill Capital, LLC, No. 21-2690, 2023 WL 2170669, at *3 (2d Cir. Feb. 23, 2023) (summary order).  The panel also reminded counsel for Appellants "to be mindful stewards of judicial resources and taxpayer dollars," and that "they are duty-bound to avoid pursuing frivolous appeals and presenting clearly meritless arguments to [the Court of Appeals]."  See id. at *3 n.3.

    Following the Second Circuit's affirmance, Universitas submitted a reply in support of its Sanctions Motion (docket entry no. 740 (the "Pet. Reply")), and GMC, through its new counsel, filed additional opposition papers (docket entry no. 741).  These submissions supplemented the briefing on the Sanctions Motion that had been completed prior to the Court's decision to defer resolution of the motion.  The Court also received a letter submission from Mr. Stavis, who noted that the new opposition was filed by new counsel, that neither he nor his firm joined in or were involved in drafting that submission, and that they would rely instead on their earlier submissions.  (See docket entry no. 742.)

DISCUSSION

Petitioner moves, pursuant to Federal Rule of Civil Procedure 11, for sanctions against the Stavis Parties, arising out of their filing of their motion to vacate, arguing principally that the motion raised frivolous and duplicative arguments. The thrust of the Sanctions Motion is that the Stavis Parties were complicit in Mr. Carpenter's (and thus, GMC's) yearslong "war of attrition" against Universitas, which was calculated to shrink its financial resources and render it prohibitive costly to continue its collection efforts. (Sanctions Motion at 13.)

Rule 11 requires that motions and other papers presented to the Court not be "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," that "the claims, defenses, and other legal contentions" presented "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and that the factual contentions in such motions and other papers "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(1), (b)(2), (b)(3). The Court may sanction a party for violation of Rule 11 "after notice and a reasonable opportunity to respond." Fed. R. Civ. P. 11(c)(1)-(2).

Sanctions should only be imposed, however, "if it is patently clear that a claim has absolutely no chance of success, and all doubts should be resolved in favor" of the filing party. K.M.B. Warehouse Distributors, Inc. v. Walker Mfg. Co., 61 F.3d 123, 131 (2d Cir. 1995) (citation and internal quotation marks omitted). The "main purpose of Rule 11 is to deter improper behavior, not to compensate the victims of it or punish the offender." Universitas Educ., LLC v. Nova Grp., Inc., 784 F.3d 99, 103 (2d Cir. 2015) (quoting 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1336.3 (3d ed. 2004)).

Finally, in considering "whether to impose a sanction or what sanctions would be appropriate in the circumstances," the Court weighs, among other factors, "[w]hether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; [and] whether the responsible person is trained in the law." Fed. R. Civ. P. 11 advisory committee note to the 1993 amendment.

After considering the goals of Rule 11 and the above factors, the Court concludes that sanctions against the Stavis Parties are not warranted under these circumstances. First, the Court notes that the Stavis Parties' representation of GMC spanned just four months, during which they litigated two motions—one to vacate the Turnover Judgment and one to withdraw their representation. Second, Mr. Stavis proffers in his declaration in support of his opposition to the Sanctions Motion that the Stavis Parties were aware that the Court had previously sanctioned Respondent Nova and one of its former counsel for making duplicative arguments with respect to the Turnover Judgement, and that they sought to determine—and in their view, did determine—that a separate, colorable argument existed in favor of vacating the Turnover Judgment as to GMC. (See docket entry no. 715 ("Stavis Decl.") ¶¶ 10-15.)

Third, after Petitioner first served its Rule 11 papers on the Stavis Parties, they withdrew their initial motion to vacate, and submitted a revised version based on narrower grounds—removing a challenge as to the Court's subject matter jurisdiction, and principally focusing on the Court's purported lack of personal jurisdiction over GMC, and an alleged

deprivation of due process in that GMC lacked counsel at entry of the Turnover Judgment.[4]  (See id. ¶¶ 12-13; see generally docket entry no. 697.)  Fourth, as the Court indicated in its subsequent Rule 60 Order, GMC's "circumstances [as opposed to Mr. Carpenter's] present[ed] a closer question" with respect to the personal jurisdiction issue, and the only argument that GMC raised that had been previously rejected was with respect to service of process.  (Rule 60 Order at 11, 15.)  Fifth, and significantly, the Stavis Parties' insistence on narrowly tailoring GMC's arguments in its revised motion to vacate "ultimately opened a rift between the Stavis Parties and GMC," causing a breakdown in the attorney-client relationship, and the eventual filing of the Withdrawal Motion.  (Stavis Decl. ¶¶ 31, 33-34.)  And finally, sixth, given that the Court permitted the Stavis Parties to withdraw as GMC's counsel, it was GMC's substitute counsel that appealed the Rule 60 Order and was thereafter admonished by the Court of Appeals.

        Taken together, these considerations weigh against awarding sanctions as against the Stavis Parties.  The Court notes that, even if it "determines that Rule 11(b) has been violated, it may in its discretion impose sanctions."  Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc., 186 F.3d 157, 166 (2d Cir.1999) (emphasis added).   With respect to Rule 11 violations, based on the record, the Court cannot find that the Stavis Parties filed their second, revised motion to vacate for an "improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" or that their claims and legal contends were not "warranted by existing law" or a "nonfrivolous argument" for extension of law.  Fed. R. Civ. P. 11(b)(1)-(2).  To be sure, the Stavis Parties ought to have been aware of Mr. Carpenter's well-documented history of avoiding collection efforts through persistent litigation, including as

---

[4]    While Petitioner contends that withdrawal of the initial motion should not preclude sanctions, it does not argue that such withdrawal was defective under Rule 11's safe harbor provision. (See Sanctions Motion at 14-16.)

memorialized in opinions in his criminal matters.  That said, the Stavis Parties' motion to vacate principally advanced a personal jurisdiction argument that, while still unsuccessful, was a "closer call" than Mr. Carpenter's corresponding challenge.  The Court notes that it previously denied Petitioner's motion to sanction Mr. Carpenter based on his personal jurisdiction challenge, which, although "without merit," was "not entirely frivolous."  (Rule 60 Order at 21-22.)  The Stavis Parties' principal challenge, then, does not rise to Rule 11's "objectively unreasonable" threshold, under which sanctions should only be imposed where "it is patently clear that a claim has absolutely no chance of success."  K.M.B. Warehouse Distributors, Inc., 61 F.3d at 131.

    Moreover, only one of the arguments—as to improper service of process—in the Stavis Parties' motion had been previously and explicitly rejected by the Court.  To the extent that raising that claim alone warrants a finding that Rule 11 has been violated, the Court exercises its discretion to not impose sanctions based on that violation.  As explained above, the Court credits the Stavis Parties for revising their motion, and as the advisory committee's notes to Rule 11 explain, "corrective action [e.g., withdrawal of a claim or defense] . . . should be taken into account in deciding what—if any—sanction to impose if . . . the court concludes a violation has occurred."  Fed. R. Civ. P. 11 advisory committee note to 1993 amendment.  Short of that revision, the operative motion would have also included a challenge to the Court's subject matter jurisdiction—a challenge that Mr. Carpenter did bring, and was sanctioned for, and which the Court of Appeals later characterized as "frivolous."  (See Rule 60 Order at 22; Universitas Educ., LLC v. Grist Mill Capital, LLC, No. 21-2690, 2023 WL 2170669, at *3 (2d Cir. Feb. 23, 2023) (summary order).)

    Finally, the Court also concludes that the Stavis Parties' Withdrawal Motion— which stemmed from a disagreement with GMC as to whether to revise and narrow the

challenges embodied in the initial motion to vacate—weighs against a finding that their conduct was "willful" or otherwise "intended to harm." Fed. R. Civ. P. 11 advisory committee note to 1993 amendment. To the contrary, the Withdrawal Motion suggests that the Stavis Parties resisted efforts to raise meritless claims or engage in the kind of conduct that Rule 11 is designed to deter. Thus, even assuming <u>arguendo</u> that the Stavis Parties committed one or more violations of Rule 11(b), the Court exercises its discretion to deny sanctions. See, e.g., <u>Perez v. Posse Comitatus</u>, 373 F.3d 321, 326 (2d Cir. 2004) (affirming denial of sanctions where district court "indicat[ed] either that there had been a violation, for which the court was exercising its discretion to deny sanctions, or that the court saw no need to decide definitively whether there had been a violation because even if there had been, the court would exercise its discretion to deny sanctions"); <u>Coakley v. Jaffe</u>, 72 F. Supp. 2d 362, 365 (S.D.N.Y. 1999), <u>aff'd</u>, 234 F.3d 1261 (2d Cir. 2000) (noting that in deciding whether to impose sanctions, the Court resolves "all doubts in favor of the part[y] facing sanctions").

## CONCLUSION

For the reasons set forth above, Petitioner's Sanctions Motion (docket entry no. 707) is denied. This Memorandum Order resolves docket entry no. 707 in case no. 11-CV-1590.

SO ORDERED.

Dated: New York, New York
September 18, 2023

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge